IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Afraaz R. Irani, M.D., )<br>　　　　　　　　　　　　　　　　　　　)<br>　　　　　　Plaintiff, 　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　)<br>　v.　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　)<br>Palmetto Health; University of South Carolina　)<br>School of Medicine; David E. Koon, Jr., M.D., in )<br>his individual capacity; and John J. Walsh, IV, 　)<br>M.D., in his individual capacity, 　　　　　　)<br>　　　　　　　　　　　　　　　　　　　)<br>　　　　　　Defendants. 　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　) | C.A. No. 3:14-cv-3577-CMC-KDW<br><br>**UNIVERSITY DEFENDANTS'<br>OBJECTIONS TO, AND MOTION TO<br>RECONSIDER, APRIL 3, 2015 ORDER<br>PERMITTING PLAINTIFF TO FILE<br>AN AMENDED COMPLAINT** |

Pursuant to 28 U.S.C. § 636(b)(1), University of South Carolina School of Medicine ("USC-SOM" or "University"), David E. Koon, Jr., M.D., and John J. Walsh, IV, M.D. (collectively, the "University Defendants") object to, and move for reconsideration of, the Magistrate Judge's Order of April 3, 2015 [ECF No. 47], which granted Plaintiff's motion for leave of Court to file an amended complaint and effectively denied Defendants Koon and Walsh's qualified immunity defense. The basis for these objections and this motion, as explained below, is that the Order [ECF No. 47] is clearly erroneous and contrary to law.[1]

### A.  *Procedural history.*

Plaintiff filed this lawsuit on June 13, 2014 – over ten months ago. Plaintiff Afraaz Irani is a former medical resident of the Palmetto Health Orthopaedic Surgery Residency Program,

---

[1] 28 U.S.C. § 636 sets forth the duties and powers of United States magistrate judges. To the extent the Magistrate Judge's Order of April 3, 2015 constitutes a *de facto* denial of Defendants' Koon and Walsh's qualified immunity defenses argued in their motion for judgment on the pleadings (as addressed herein), Defendants Koon and Walsh object to the Order pursuant to 28 U.S.C. § 636 (b)(1)(C), as they would file objections to an unfavorable Report and Recommendation on their motion for judgment on the pleadings. Defendants otherwise move the Court to reconsider the Order of April 3, 2015, pursuant to 28 U.S.C. § 636 (b)(1)(A).

which is jointly operated by Palmetto Health and USC-SOM. In relevant part, the Complaint Plaintiff filed June 13, 2014, asserts a breach his Resident Agreement [*see* ECF No. 31-3], which allegedly incorporates Palmetto Health's policies and Accreditation Council for Graduate Medical Education (ACGME) standards. [Complaint, ¶¶ 51-59] The Complaint also asserts a claim based on allegations that Plaintiff is a third-party beneficiary of an alleged contract USC-SOM and/or Palmetto Health had with ACGME. [*Id*., ¶¶ 60-67] The Complaint further alleges a claim against Palmetto Health and USC-SOM for alleged wrongful termination of Plaintiff's employment. [*Id*., ¶¶ 68-76]

In their Answer, the University Defendants expressly pointed out – as Plaintiff and his attorney were already well aware[2] – that Plaintiff's Resident Agreement was between Plaintiff and Palmetto Health, not USC-SOM. The University Defendants further repeatedly asserted in their Answer that Plaintiff was not employed by USC-SOM. [Answer, ¶¶ 54, 9, 10, 15, 31-76] In addition to expressly pointing out these facts in their Answer, the University Defendants' answers to the Court's Rule 26.03 interrogatories, filed October 24, 2014, expressly educated Plaintiff, his attorney, and the Court as follows: "Plaintiff is a former orthopedic surgery resident whose one-year contractual term of employment *with Palmetto Health* was terminated for cause in April 2012" and "*the University never employed Plaintiff*. Further, there is no contract on which to base Plaintiff's contract-based claims against the University." [ECF No. 17 (emphasis added)]

On December 4, 2014, Defendants Koon and Walsh filed a motion for partial judgment

---

[2]Plaintiff – and his attorney – have at all times been aware that the Resident Agreements Plaintiff signed (1) are contracts Plaintiff had with Palmetto Health, not the University, (2) refer expressly to Plaintiff's employment by Palmetto Health, not the University, and (3) nowhere suggest that Plaintiff would be employed by the University. Plaintiff's Resident Agreements are in the record as ECF #31-3, and Plaintiff did not feign ignorance of the Resident Agreements in response to that filing.

on the pleadings, on the grounds that (1) the Complaint lacks allegations against Defendant Walsh that could constitute a claim, and (2) Defendants Koon and Walsh are entitled to qualified immunity on the § 1983 claims asserted in the Complaint. [ECF No. 18]

On January 5, 2015, Defendant Koon filed a motion for summary judgment as to the two state law claims alleged against him. The grounds for the motion included the undisputed facts that (1) Plaintiff, as part of his application for a California medical license, signed an authorization releasing the Defendants from liability for providing information to the Medical Board of California and (2) Plaintiff and his attorney begged and demanded that Defendants provide the information to the California Medical Board that Plaintiff now sues them for providing. [ECF No. 22]

In response to Defendant Koon's motion for summary judgment, Plaintiff's counsel, David Rothstein, made arguments suggesting Plaintiff was a "public employee" while in the residency program, when in fact he never was. On January 16, 2015, Kathryn Thomas, counsel for the University Defendants, provided the affidavit of R. Caughman Taylor[3] to Mr. Rothstein, as part of conferring about what she considered misrepresentations in Plaintiff's court filings (i.e., Mr. Rothstein's representations that Plaintiff was a "public employee"), as a courtesy before addressing those misrepresentations in a reply brief. [See Kathryn Thomas affidavit, ¶¶ 9-12, and Ex. K and L, filed herewith] Ms. Thomas pointed out that the issue related not just to Defendants Koon and Walsh's motion for judgment on the pleadings, but also to the claims

---

[3]Undersigned counsel obtained Dr. Taylor's affidavit to file in support of USC-SOM's motion for summary judgment. Plaintiff's claims against the University are that the University terminated his "employment," that Plaintiff had a contract with the University, and that the University had a contract with the ACGME to which Plaintiff was a third-party beneficiary. As set forth herein, the University Defendants' Answer and Rule 26.03 answers filed months earlier expressly set forth what is in Dr. Taylor's affidavit, but the University had to present those facts in evidentiary form as threshold support for its summary judgment motion.

3

asserted against the University. In their email communications on the matter, Mr. Rothstein did not express surprise at the contents of Dr. Taylor's affidavit or with the Defendants' position on the matters asserted; rather, he stated he disagreed with the position and stood by his representations. [*Id*.]

On Friday, January 23, 2015, Mr. Rothstein called Ms. Thomas seeking consent to his request to extend the deadline for Plaintiff to name experts. Ms. Thomas consented and informed Mr. Rothstein that the University was just about to file its motion for summary judgment,[4] the last of the University Defendants' dispositive motions, and expected to have dispositive rulings on behalf of all of her clients without the need for expert witnesses. [*Id*.] A few hours later, Mr. Rothstein filed a motion to amend the complaint to add a new cause of action against the University Defendants (without first sharing the contents of his proposed pleading with Ms. Thomas).

At no time before filing his motion to amend did Mr. Rothstein claim to be surprised by the contents of Dr. Taylor's affidavit; nor could he when he had known those facts, and the University Defendants' positions on the allegations of the Complaint, from the University Defendants' Answer and Rule 26.03 filing months earlier. [*Id*.]

Pursuant to the Court's scheduling order for this case, the deadline for filing motions to amend the pleadings was December 16, 2014. [ECF No. 13] Plaintiff's motion to amend on January 23, 2015, was manifestly untimely. As the purported excuse for the untimeliness of Plaintiff's motion to amend, Mr. Rothstein in court filings feigned surprise at the contents of Dr. Taylor's affidavit. Dr. Taylor's affidavit adds nothing new to the case, however; it simply confirms what the University Defendants had stated in their Answer and Rule 26.03 answers

---

[4]On Friday, January 23, the undersigned were finalizing the University's summary judgment motion, which was filed Monday, January 26, 2015.

4

*months earlier.* Plaintiff is using it as an excuse to circumvent rulings on the dispositive motions filed by the University Defendants.

Plaintiff's proposed Amended Complaint included a new proposed "Seventh Cause of Action," alleging tortious interference with contract (pled in the alternative to the fourth, fifth and sixth causes of action), placed ahead of the six causes of action that Defendants Koon and Walsh had already presented for ruling by the Court in their motion for judgment on the pleadings and in Defendant Koon's motion for summary judgment. Clearly, Plaintiff meant to stall rulings on the pending motions.

In response to Plaintiff's motion to amend, Defendants argued Plaintiff's motion to amend was unjustifiably untimely,[5] is prejudicial to the Defendants, was made in bad faith to thwart dispositive rulings, and presented a time-barred claim that would be subject to immediate dismissal and thus futile. Defendants argued Plaintiff's motion failed to satisfy the requirements of Rules 16 or 15, Fed.R.Civ.P., because it was made in response to the Defendants' dispositive motions; it was based on information that had been known to Plaintiff's counsel for months, rather than based on new information; and the proposed amendment would be futile because the proposed new cause of action would be time-barred by the two-year statute of limitations of the South Carolina Tort Claims Act, and thus subject to immediate dismissal. In support of the futility argument, Defendants cited Flateau v. Harrelson, 355 S.C. 197, 584 S.E.2d 413 (Ct. App. 2003), in which the South Carolina Court of Appeals, interpreting the South Carolina Tort Claims Act, held that actions filed against individual government employees, based on actions taken by them while performing their governmental duties, were subject to the two-year statute

---

[5]*See, e.g.,* Jordan v. E.I. du Pont de Nemours, 867 F. Supp. 1238, 1250 (D.S.C. 1994) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

of limitations of the South Carolina Tort Claims Act "even if the [individual defendants] acted outside the scope of their official duties or if their actions constituted fraud, actual malice, intent to cause harm, or a crime involving moral turpitude." *Id*. at 209, 419.  As in <u>Flateau v. Harrelson</u>, Plaintiff's proposed pleading alleges individual government employees, while performing the duties of their governmental employment, committed a tort against him. Specifically, Plaintiff alleges University employees Koon and Walsh, while performing their University duties as Program Director and Department Chair, respectively, tortiously harmed Plaintiff more than two years before this lawsuit was filed.  As in <u>Flateau v. Harrelson</u>, Plaintiff cannot maintain a claim based on such time-barred allegations.  <u>Flateau v. Harrelson</u> remains binding law on this Court.

In reply, Plaintiff conceded that the two-year statute of limitations would bar the tort claim against the University, but contended a three-year statute of limitations would apply to tort claims against Defendants Koon and Walsh.  Plaintiff utterly failed to address the South Carolina Court of Appeals case of <u>Flateau v. Harrelson</u>, which is binding on this Court.

On April 3, 2015, the Magistrate Judge issued an Order granting Plaintiff's motion to amend, and delaying rulings on the Defendants' previously filed motions.  The Order recognized that Defendants Koon and Walsh had previously filed a motion for judgment on the pleadings (based on qualified immunity) prior to Plaintiff's motion to amend, and that the remaining claims against the University Defendants were also the subject of pending dispositive motions.  The Order indicated rulings on those motions would be delayed.  The Order granted Plaintiff leave to file an Amended Complaint asserting a new "Seventh Cause of Action" for tortious interference ahead of six causes of action that were the subject of Defendants Koon and Walsh's first-filed dispositive motions.  The Order, which delayed ruling on Defendant Koon and Walsh's motion for judgment on the pleadings, and permitted Plaintiff to re-plead his constitutional claims that

6

are subject to pending qualified immunity challenges, is erroneous and contrary to law. Pearson v. Callahan, 555 U.S. 223, 232 (2009) ("'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'") (citation omitted).

In the April 3, 2015 Order, the Magistrate Judge noted that grounds to deny leave to amend a pleading include: (1) if the amendment would be prejudicial to the opposing party, (2) if there has been bad faith on the part of the moving party, *or* (3) if the amendment would be futile. [Order p. 7, citing Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)]. The Magistrate Judge erroneously determined that none of the three circumstances applied. While any one of these circumstances would serve as a basis to deny a motion to amend, all three circumstances apply in this case.

(1) Defendants *Koon and Walsh*, who did nothing whatsoever to prompt Plaintiff's motion to amend, are most definitely prejudiced by the belated motion.[6]

(2) Plaintiff's counsel has clearly acted unjustifiably and in bad faith, on behalf of his client, in filing a belated motion to amend based on facts *known to him from court filings in*

---

[6] As set forth herein, the University Defendants' Answer and Rule 26.03 answers, filed in September and October 2014, respectively, clearly set forth the facts that Mr. Rothstein feigns were news to him months later in January 2015. *Defendant University's* January 2015 discovery responses, cited by Plaintiff and the Court as justification for Plaintiff's raising a new cause of action against *Defendants Koon and Walsh*, are not discovery responses from *Defendants Koon and Walsh*, who have been sued in their individual capacities. Moreover, the undersigned *counsel* obtained the affidavit of Dr. Taylor to provide in support of *the University's* imminent motion for summary judgment. [Thomas affidavit ¶ 10, filed herewith] Defendants *Koon and Walsh*, sued in their individual capacities, (1) had no involvement in the preparation of the *University's* discovery responses, (2) had nothing to do with legal counsel's obtaining an affidavit to support the *University's* summary judgment motion, and (3) are not to blame for Mr. Rothstein's belated realization and decision "out of an abundance of caution" to assert a belated, conditional cause of action against them in the face of their pending dispositive motions. Defendants *Koon and Walsh*, against whom the belated cause of action is asserted, are most definitely prejudiced by a decision to allow Plaintiff to assert an additional cause of action against them in their individual capacities late in the litigation after they have filed dispositive motions, particularly when the new cause of action may require that they engage in discovery efforts in their individual capacities. *See also* Thomas Affidavit, ¶ 16.

7

*September and October 2014* [*see* University Defendants' Answer and Rule 26.03 answers], in efforts to thwart rulings on pending dispositive motions.

(3)  The proposed new tort claim on its face objectively points to specific actions taken by University employees Koon and Walsh, while acting as Program Director and Department Chair, respectively.  A tort claim against them for such actions – regardless of their alleged capacity or motives – is clearly barred by the two-year statute of limitations of the Tort Claims Act, under the binding authority of the South Carolina Court of Appeals ruling in <u>Flateau v. Harrelson</u>, 355 S.C. 197, 584 S.E.2d 413 (Ct. App. 2003).  Defendants cited and addressed the case of <u>Flateau v. Harrelson</u> in response to Plaintiff's motion to amend.  Plaintiff utterly failed to address it in reply, and the Magistrate Judge failed to address it as well.  Plaintiff and the Court may disagree with the reasoning of the South Carolina Court of Appeals in <u>Flateau v. Harrelson</u>, but it is binding state court authority that this Court cannot disregard or overrule.  The Court's failure to apply the two-year statute of limitations in light of the ruling of <u>Flateau v. Harrelson</u> was erroneous and contrary to law.

> **B.     *The Order granting Plaintiff's motion to amend acted as a* de facto *denial of Defendants Koon and Walsh's qualified immunity defenses raised in their earlier-filed motion for judgment on the pleadings.***

In issuing the Order of April 3, 2015, the Magistrate Judge delayed ruling on Defendants Koon and Walsh's first-filed motions, including their qualified immunity arguments set forth in their December 4, 2014, motion for judgment on the pleadings. [ECF No. 18]  The Order, which expressly states in its footnote 2 that rulings on the Defendants' previously-filed motions would be considered separately, and which granted approval to Plaintiff to file an Amended Complaint that would reallege the constitutional claims that are the very subject of Defendants Koon and Walsh's qualified immunity defenses, acts as a *de facto* denial of Defendants Koon and Walsh's qualified immunity defenses.  The Court's delay in ruling on Defendants Koon and Walsh's

8

motion for judgment on the pleadings, and instead granting Plaintiff's later-filed motion to amend, is clearly erroneous and contrary to law. DiMeglio v. Haines, 45 F.3d 790, 803 (4th Cir. 1995) ("In failing to resolve this question and permitting discovery to proceed, the district court erred. Had the district court addressed the threshold immunity question, it would have found that Haines was entitled to qualified immunity.").

In the event the Court did not intend to deny Defendants Koon and Walsh the defense of qualified immunity, Defendants respectfully request a prompt ruling granting them qualified immunity. Otherwise, Defendants Koon and Walsh intend to appeal the *de facto* denial of their qualified immunity defense within 30 days of the Order of April 3, 2015 (*i.e.* on or before May 3, 2015). *See* Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997) (an order rejecting qualified immunity is immediately appealable at any stage of the litigation).

### C.     *Granting Plaintiff's motion to amend was clearly erroneous and contrary to law.*

28 U.S.C. § 636(b)(1)(A) permits a party to request reconsideration of any ruling by a magistrate judge that "is clearly erroneous or contrary to law." As an initial matter, it was clearly erroneous for the Magistrate Judge to grant Plaintiff's motion to file an amended complaint that included § 1983 claims against Defendants Koon and Walsh, as those claims should have been addressed by a ruling on Defendants Koon and Walsh's previously-filed motion for judgment on the pleadings.  Defendants Koon and Walsh are entitled to rulings on their qualified immunity defenses raised in that motion, and the Court is expected to grant qualified immunity at the earliest possible stage of litigation. Pearson, 555 U.S. at 232.

The Magistrate Judge also erroneously concluded that Plaintiff's counsel presented "new evidence" that justified an untimely and belated motion to amend. Plaintiff ingenuously argued in his January 23, 2015, motion to amend that "Plaintiff's counsel has only recently become aware" of a "newly articulated theory" that Plaintiff was not employed by the University, did not

9

have a contract with the University, and was not a third-party beneficiary of a contract with the University. Plaintiff's counsel pointed to the affidavit of Dr. Caughman Taylor, and the University's discovery responses, as alleged "new" evidence that the Defendants were presenting a "newly articulated theory" that Plaintiff was not employed by the University, Plaintiff had no contract with the University, and the University had no contract with the ACGME that could serve as a basis for a claim by Plaintiff. [ECF No. 27, ¶ 1, 3].

There was no "newly articulated theory" that justified Plaintiff's motion to amend, and it is simply untrue that "Plaintiff's counsel only recently became aware" of a "newly articulated theory." Plaintiff's counsel had known of Defendants' position for months, but was facing dispositive motions on meritless claims.[7] With the filing of the University Defendants' Answer in September 2014 [ECF No. 6], and the filing of their Rule 26.03 answers in October 2014 [ECF No. 17], the University Defendants clearly set out the facts supporting their defenses – including the fact that Plaintiff was never employed by the University, Plaintiff never had a contract with the University, and that the University did not have a contract with the ACGME that would benefit Plaintiff. [ECF 6: (Answer, ¶¶ 9, 10, 15, 31-76; ECF No. 17 (University Defendants' Rule 26.03 answers)]

In response to the Complaint's allegation that USC-SOM was an "employer" under Title VII, the University Defendants asserted: "Denied. Defendants further deny the suggestion that

---

[7]At the time of his motion to amend, Plaintiff was facing dispositive motions, which the University Defendants filed because the natural defendants are so clearly entitled to qualified immunity, the pleadings were set, and all claims are clearly subject to prompt rulings. On January 23, 2015, when Plaintiff filed his motion to amend, Defendants Koon and Walsh had already filed their dispositive motions, and Plaintiff's counsel filed his motion to amend the very day the undersigned told him the University was about to file its summary judgment motion. [*See* Thomas affidavit, filed herewith] Plaintiff's counsel was well aware at that time that he had absolutely no evidence to support Plaintiff's allegations against the University Defendants. Even today, more than ten months into this litigation, Plaintiff has failed to present any evidence to withstand the pending motions. Clearly, Plaintiff's motion to amend was filed as part of attempts to withstand the dispositive motions or delay ruling on them.

10

USC-SOM was Plaintiff's employer." [Answer, ¶ 9] In response to the Complaint's allegation that Plaintiff's Resident Agreement was "entered into . . . with Defendants Palmetto Health and USC-SOM," the University Defendants asserted: "Plaintiff entered into two one-year agreements *with Palmetto Health*. Otherwise, denied." [Complaint, ¶ 52; Answer, ¶ 52; *see also* Answer, ¶¶53-54 ("Plaintiff's agreements *with Palmetto Health*") (emphasis added)] In response to the Complaint's allegation that ACGME standards "amount to a contract between Defendants Palmetto Health/USC-SOM and the ACGME," the University Defendants asserted: "The Orthopedics Residency Program must comply with certain requirements to retain accreditation, but *Defendants have never had a contract with ACGME based on the Program's accreditation*. Otherwise, denied." [Answer, ¶62]

If Plaintiff's counsel failed to read and comprehend the University Defendants' September 2014 Answer to his 26-page Complaint, surely he read and comprehended – or was expected to read and comprehend – the University Defendants' October 2014 Rule 26.03 filing [ECF No. 17], in which the University Defendants outlined their defenses and statement of the case, including the following: "Plaintiff is a former orthopedic surgery resident whose one-year contractual term of employment with Palmetto Health was terminated for cause in April 2012" and "the University never employed Plaintiff.  Further, there is no contract on which to base Plaintiff's contract-based claims against the University." [ECF No. 17]  What could be more clear?  How could Plaintiff's counsel reasonably claim not to have been aware of Defendants' articulated theory when this document was filed in October 2014?  The University clearly set forth its position in its Court filings in September and October 2014.  Plaintiff's counsel is presumed to have knowledge of Court filings.

In January 2015, when the case was then more than seven months old, the undersigned had already filed dispositive motions on behalf of Defendants Koon and Walsh, and were

11

preparing a summary judgment motion on behalf of the University based on the clearly articulated theories set forth in prior Court filings. As support for the motion, the undersigned necessarily obtained an affidavit from the highest figure at the University of South Carolina School of Medicine, at that time Interim Dean Caughman Taylor, who confirmed the facts set forth in the University Defendants' Answer and Rule 26.03 answers, to wit: Plaintiff was never employed by the University of South Carolina School of Medicine; Plaintiff never had a contract with the University of South Carolina School of Medicine; and the University of South Carolina School of Medicine does not have a contract with the ACGME that would benefit Plaintiff. Once again, none of this could be considered a "new theory" that was withheld from Plaintiff or his attorney.

It is not sufficient excuse for a belated motion to amend that Plaintiff's counsel has just realized that he might have another cause of action based on information that has been available to him for months, or even years.[8] It was clearly erroneous for the Magistrate Judge, in the Order of April 3, 2015, to conclude that Dr. Taylor's affidavit (or Defendant University's discovery responses with similar statements that Plaintiff was not *employed* by the University) presented a "new" defense theory that justified Plaintiff's belated motion to assert a new cause of action against Defendants Koon and Walsh. Accordingly, the University Defendants request the Court reconsider the Order of April 3, 2015.

### D.     *The Order granting Plaintiff's motion to amend is contrary to law.*

---

[8]As the undersigned are drafting this filing, Plaintiff's counsel is suggesting he might want to file yet another amended pleading because he is just getting around to reviewing documents that he has had for months – which were also produced to him during two previous lawsuits he filed against these same defendants – that he has just realized might give rise to new theories of liability. Is it this Court's new standard to allow a party to amend his pleadings to add new causes of action whenever his attorney gets around to paying attention to his case? Are court rules and scheduling orders rendered meaningless?

> *1. Plaintiff's amendment is futile based on the two-year statute of limitations of the South Carolina Tort Claims Act, as interpreted in the binding authority of <u>Flateau v. Harrelson</u>, 355 S.C. 197, 584 S.E.2d 413 (Ct. App. 2003).*

If a proposed amended complaint could not withstand a motion to dismiss, then a motion to file the amended complaint should be denied as futile. <u>Perkins v. U.S.</u>, 55 F.3d 910, 916-917 (4th Cir. 1995) (citation omitted); <u>Woods v. Boeing Co.</u>, 841 F.Supp.2d 925, 930 (D.S.C. 2012) (citation omitted). Thus, when the allegations of the proposed amended complaint fail to show that the plaintiff is entitled to relief, the court should deny the motion for leave to amend. *Id.* (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)). The University Defendants argued Plaintiff's proposed new tortious interference with contract cause of action is objectively time-barred under the two-year statute of limitations set forth in the Tort Claims Act and would not withstand a motion to dismiss. [ECF No. 33] The Tort Claims Act governs all tort claims against governmental entities and is the exclusive civil remedy available in an action against a governmental entity or its employees. *See* <u>Murphy v. Richland Mem'l Hosp.</u>, 317 S.C. 560, 455 S.E.2d 688 (1995); <u>Wells v. City of Lynchburg</u>, 331 S.C. 296, 501 S.E.2d 746 (Ct. App. 1998). The Tort Claims Act is intended to cover those actions committed by a governmental employee within the scope of the employee's official duty. S.C. Code § 15-78-20(f). The Tort Claims Act defines "scope of official duty" to mean "(1) acting in and about the official business of a governmental entity and (2) performing official duties." S.C. Code § 15-78-30(i).

Plaintiff's Amended Complaint alleges University employees (i.e., government employees) Koon and Walsh – as Program Director and Department Chair, respectively – committed the following "tortious" acts:  They terminated Plaintiff's employment from Palmetto Health, both generally and without due process; they disciplined Plaintiff and subjected him to remediation; they dismissed Plaintiff from the residency program; they required Plaintiff to work

13

excessive hours; they failed to adequately supervise Plaintiff; they harassed Plaintiff through the manner in which they operated the residency program; they failed to properly educate residents; they failed to properly inform residents of policies; and they failed to provide residents with due process.  [ECF No. 49, ¶¶ 84 and 86].  All of the actions alleged are objectively, on the face of the Amended Complaint –  within the scope of the official duties performed by Dr. Koon (as Program Director of the Orthopaedic Surgery Residency Program) and Dr. Walsh (as Chair of the Orthopaedic Surgery Department of Defendant USC-SOM) as part of their University (i.e., government) employment.

In Flateau v. Harrelson, 355 S.C. 197, 584 S.E.2d 413 (Ct. App. 2003), the South Carolina Court of Appeals considered the dismissal, based on the two-year statute of limitations of the Tort Claims Act, of claims asserted against individual government employees who were alleged to have acted with malicious intent in committing tortious acts while serving as board members of a government agency.  The Court of Appeals upheld the dismissal of the plaintiffs' complaints on grounds that their tort claims were barred by the two -year statute of limitations of the Tort Claims Act – regardless of the personal intent of the defendant board members while performing their board functions.  The Court of Appeals concluded its holding as follows:

> The complaints assert tort claims against Commission board members who acted on behalf of the Commission in commanding Commission employees, including Flateau and Fielding, to attend a hearing for the purpose of being interviewed by the Board. The pleadings clearly and unequivocally allege that the Board members were meeting and acting together as the South Carolina Commission for the Blind, discussing matters in executive session, and voting in their capacity as Commissioners to take the actions in question – all official duties and actions that are about the official business of the Commission, which is a public body established by the General Assembly . . . Requiring Flateau and Fielding to attend a hearing and holding them there, as Flateau and Fielding maintain in their complaints, may be argued to go beyond the *authority* of the Commission, but it does not bring the Commissioners' actions outside the scope of their official duty. *See* Crittenden v. Thompson-Walker Co., 288 S.C. 112, 341 S.E.2d 385 (Ct. App.1986) (distinguishing scope of servant's employment from scope of servant's authority and holding acts outside servant's authority are still

> within his scope of duty if done in furtherance of master's business).
>
> The complaints of Flateau and Fielding allege torts committed by the Board members while acting within the scope of their official duty. The Tort Claims Act explicitly provides the sole and exclusive remedy for torts committed by employees of a governmental entity. We find the claims of Flateau and Fielding are subject to the Tort Claims Act.

355 S.C. 197, 205-206, 584 S.E.2d 413, 417 (Ct. App. 2003). Similarly, the actions of Drs. Koon and Walsh that the Amended Complaint alleges tortiously interfered with Plaintiff's employment contract with Palmetto Health or interfered with Palmetto Health's contract with ACGME, are *on the face of the Amended Complaint* actions taken by Drs. Koon and Walsh in their roles as University employees (Program Director and Department Chair, respectively). As such, the clear *and binding* precedent of Flateau v. Harrelson demands that the two-year statute of limitations bars the tort claim asserted against Defendants Koon and Walsh, just as the two-year statute of limitations bars any tort claim asserted against the University.

"The Tort Claims Act contains a general two-year statute of limitations . . . ." Joubert v. South Carolina Dep't of Soc. Servs., 341 S.C. 176, 186, 534 S.E.2d 1, 6 (Ct. App. 2000). This lawsuit was filed on June 13, 2014, more than two years after the events on which Plaintiff's proposed new tort claim is based. Therefore, Plaintiff's proposed new tort claim, based on the actions of University employees Koon and Walsh, is manifestly time-barred and subject to immediate dismissal. Flateau, 355 S.C. at 207-209, 584 S.E.2d at 418-419 (Ct. App. 2003) ("The Tort Claims Act controls the instant case . . . the Act's two-year statute of limitations barred the causes of action"). Because Plaintiff's new seventh cause of action is subject to immediate dismissal based on a statute of limitations defense, his amendment was futile, and the Order of April 3, 2015 was contrary to law.

> **2.    *Plaintiff's amendment is futile to the extent Defendants Koon and Walsh are alleged to have interfered with any contract relating in any way to the Orthopaedic Surgery Residency Program.***

15

Neither Defendant Koon nor Defendant Walsh could have tortiously interfered with the Residency Agreement between Palmetto Health and Plaintiff, any alleged contract between the Orthopaedic Surgery Residency Program and Plaintiff, or any other contract alleged to have benefitted Plaintiff that in any way relates to the Orthopaedic Surgery Residency Program. This is so because Defendant Koon at all times served as the Program Director of the Orthopaedic Surgery Residency Program, and Defendant Walsh at all times served as the Chair of the University of South Carolina School of Medicine's Orthopaedic Surgery Department affiliated with the Orthopaedic Surgery Residency Program. The Complaint and the Amended Complaint clearly acknowledge these facts, as well as that fact that the Orthopaedic Surgery Residency Program is a program "jointly operated by Defendants Palmetto Health and USC-SOM." [Complaint and Am. Complaint, ¶¶ 4-5, 14] In fact, Defendant Koon, in his capacity as Program Director of the Orthopaedic Surgery Residency Program, actually signed Plaintiff's Palmetto Health Residency Agreements as Program Director. [ECF No. 31-3] Because Defendants Koon and Walsh were directly affiliated with the Orthopaedic Surgery Residency Program, they are not third parties that could be considered to have interfered with any contractual benefit Plaintiff may claim to have as relates to the Orthopaedic Surgery Residency Program. The Fourth Circuit has recognized such:

> Plaintiffs also appeal the district court's dismissal of their state law claim for tortious interference with contract. As the district court found, however, Arthur was acting within the scope of his employment in terminating Brooks and Hamlette. Because Arthur was an agent of the VDOC, he was not a third party capable of interfering with the contract between plaintiffs and the VDOC . . . We therefore affirm the district court's dismissal of this count.

Brooks v. Arthur, 685 F.3d 367, 375 n.2 (4th Cir. 2012).

Because Defendants Koon and Walsh had direct involvement and affiliation with the Orthopaedic Surgery Residency Program, they cannot have interfered with Plaintiff's Residency

16

Agreement or any other contract that may be considered to relate to the Orthopaedic Surgery Residency Program.  Thus, Plaintiff's tortious interference claim would not survive a motion to dismiss, and he should not be permitted to maintain such a claim.  It is thus contrary to law to permit Plaintiff to maintain such a claim.  Perkins, 55 F.3d at 916-917; Woods, 841 F.Supp.2d at 930.  Defendants ask the Court to reconsider its ruling and deny Plaintiff's motion to amend.

|  |  |
|---|---|
|  | s/ Fred A. Williams |
|  | Kathryn Thomas (DCID No. 5134) |
|  | Fred A. Williams (DCID No. 9934) |
|  | GIGNILLIAT, SAVITZ & BETTIS, LLP |
|  | 900 Elmwood Avenue, Suite 100 |
|  | Columbia, South Carolina 29201 |
|  | Ph: (803) 799-9311 / Fax: (803) 254-6951 |
| April 20, 2015 | kthomas@gsblaw.net; fwilliams@gsblaw.net |
|  |  |
|  | UNIVERSITY OF SOUTH CAROLINA SCHOOL OF MEDICINE; DAVID E. KOON, JR., M.D.,; AND JOHN J. WALSH, IV, M.D., |

3:14-cv-03577-CMC     Date Filed 04/20/15     Entry Number 59     Page 18 of 18