IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Afraaz R. Irani, M.D., ) | C/A No. 3:14-cv-03577-CMC-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **PLAINTIFF'S MEMORANDUM OF** |
| ) | **LAW IN RESPONSE TO UNIVERSITY** |
| Palmetto Health; University of South ) | **DEFENDANTS' OBJECTIONS TO,** |
| Carolina School of Medicine; David E. ) | **AND MOTION TO RECONSIDER,** |
| Koon, Jr., M.D., in his individual ) | **APRIL 3, 2015 ORDER PERMITTING** |
| capacity; and John J. Walsh, IV, M.D., ) | **PLAINTIFF TO FILE AN AMENDED** |
| in his individual capacity, ) | **COMPLAINT** |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff, Afraaz R. Irani, M.D., by and through his undersigned attorney, hereby files this Memorandum of Law in Response to University Defendants' Objections to, and Motion to Reconsider, April 3, 2015 Order Permitting Plaintiff to File an Amended Complaint. As set forth herein, the magistrate judge's order of April 3, 2015 properly granted Plaintiff leave to file an amended complaint under Rule 15's liberal standard for amending pleadings. Accordingly, Defendants' objections and motion to reconsider should be denied.

This lawsuit arises out of Plaintiff's termination from the orthopaedic surgery residency program jointly operated by Defendants Palmetto Health and USC School of Medicine. The original complaint includes causes of action against both Defendants Palmetto Health and USC-SOM for breach of contract, both directly as an intended third-party beneficiary. On or about September 8, 2014, Defendants removed the case to federal court based on Plaintiff's causes of action arising under federal law, thereby waiving any sovereign immunity defense that Defendant USC-SOM might

have had under the Eleventh Amendment.

On December 4, 2014, approximately three months after Defendants removed the case to federal court and filed their answers, and after discovery had already commenced in earnest, the individual Defendants, Koon and Walsh, filed a motion for partial judgment on the pleadings based on qualified immunity and the adequacy of the factual pleadings against Defendant Walsh. On January 5, 2015, Defendant Koon filed a motion for partial summary judgment as to two state-law claims asserted against him individually (libel and tortious interference with contract). Three weeks later, on January 26, 2015, Defendant USC-SOM filed yet a third substantive motion–for partial summary judgment, arguing that there was no privity of contract or an employment relationship between Defendant USC-SOM and Plaintiff and that there is no contract between Defendant USC-SOM and any other party for which Plaintiff would have rights as an intended third-party beneficiary. Defendant USC-SOM's most recent motion for partial summary judgment relied heavily on an Affidavit of Dr. Caughman Taylor, then interim dean of the medical school, who testified that Plaintiff was never employed by Defendant USC-SOM, that Plaintiff never had a contract with Defendant USC-SOM, and that Defendant USC-SOM has no contract with the Accreditation Council for Graduate Medical Education ("ACGME") that could benefit Plaintiff as a third-party beneficiary.

As soon as Plaintiff's counsel learned of Dr. Taylor's Affidavit, Plaintiff sought to amend the complaint to include a cause of action for tortious interference with contract, out of an abundance of caution. The theory behind the new cause of action is that if Dr. Taylor were correct–that there was technically no employment contract between Plaintiff and Defendant USC-SOM–then Defendants Koon and Walsh at least knew about the contract between Plaintiff and Defendant

Palmetto Health and could be held liable for tortious interference with that contract. Although the original scheduling order established a deadline of December 16, 2014, for filing motions to join parties and amend the pleadings, Plaintiff did not perceive any need to amend the pleadings until after a courtesy copy of Dr. Taylor's Affidavit was provided to the undersigned on or about January 16, 2015. Plaintiff immediately requested consent of all Defendants to amend the complaint, but the USC Defendants would not consent to the proposed amendment. Plaintiff's Motion for Leave to Amend the Complaint was filed on January 23, 2015, within one week of Plaintiff's counsel's first learning of the Taylor Affidavit.

At the time Plaintiff filed the Motion for Leave to Amend the Complaint, there were still over four months left in the discovery period, which deadline is currently June 8, 2015. (Amended Scheduling Order, Dkt. No. 13, ¶ 5). The proposed Amended Complaint was not prejudicial to Defendants because there was ample time remaining to conduct discovery on these issues, and the scope of discovery was essentially the same as that required for the claims from the original Complaint. The Magistrate Judge in this case properly granted Plaintiff's Motion for Leave to File the Amended Complaint on April 3, 2015. Thereafter, on April 6, 2015, Plaintiff filed his Amended Complaint, as modified in accordance with the Magistrate Judge's Order.

As an initial matter, Plaintiff's counsel is astounded that the University Defendants would continue to rely on Dr. Taylor's Affidavit, which is nothing more than a string of unsubstantiated, proffered legal conclusions, not a statement of factual material based on personal knowledge or direct observation. During his deposition, Dr. Taylor plainly admitted that he was merely parroting back what the University's Counsel told him about Plaintiff's legal status or relationship with USC-SOM and that he (Dr. Taylor) did nothing to confirm the assertions made in his Affidavit. See

3

Taylor Depo., at 16 ("Q: What did you to do confirm that the statements in this affidavit are true? A. Discussed with legal counsel. Q. . . . Other than discussions with legal counsel, did you do anything else in terms of making yourself familiar with this situation or researching the situation in preparing your affidavit? A. No, sir."); id. at 21 ("Q. Now looking at paragraph four of your affidavit, what did you do to confirm that Dr. Irani never had a contract with the University of South Carolina School of Medicine? A. Confirmed with legal counsel. Q. Anything other than talking to the lawyers from the USC School of Medicine? A. No, sir."); id. at 22-23 ("Q. . . . So when you said there was no contract between Dr. Irani and the University of South Carolina School of Medicine, you didn't consider the possibility that this document [i.e., the USC Orthopaedic Surgery Department Resident Manual] could create an employment contract, did you? A. Again, I discussed it all with legal counsel. Q. My question is when you made the statement in your affidavit you didn't consider whether the residency manual or residency handbook could create an employment contract between USC and Dr. Irani, did you? A. I would have no reason to know that or expect that.") (excerpts of Dr. Taylor's Deposition attached hereto as Exhibit A).[1]

---

[1] Although the legal merits of Plaintiff's contractual claims are not at issue at this phase of the case, Plaintiff strongly disagrees with Defendant USC-SOM's naked assertions that Plaintiff was solely an employee of Palmetto Health, not USC-SOM; that there was no employment contract between Plaintiff and USC-SOM; and that USC-SOM was not a party to any contract that might benefit Plaintiff. Although discovery in this case is still on-going, Plaintiff has already identified at least three crucial documents that amply support his breach of contract claims against Defendant USC-SOM: (1) the Affiliation Agreement for Medical Education, Research and Other Related Activities between Defendants Palmetto Health and USC-SOM; (2) the Department of Orthopaedic Surgery Residency Manual; and (3) the Program Letter of Agreement between Defendant Palmetto Health and the University Specialty Clinics–Orthopedic Surgery. These documents all expressly incorporate the accreditation requirements of the ACGME or more specifically the ACGME's orthopaedic surgery Residency Review Committee requirements for Defendants' residency program in orthopaedic surgery. Accordingly, all three documents provide support for Plaintiff's contract-related causes of action, either directly or as a third-party beneficiary. These documents were not produced in discovery in this case until after Plaintiff

Next, because Plaintiff's motion for leave to amend the complaint is not a dispositive motion, the applicable standard of review for this matter is the deferential "clearly erroneous" standard. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Pagano v. Frank, 983 F.2d 343, 346 (1st Cir. 1993) ("Under ordinary circumstances a motion to amend a complaint is 'a pretrial matter not dispositive of a claim or defense of a party' within the purview of Fed. R. Civ. P. 72(a)."). Of course, the standard under Rule 15(a) for amending a pleading prior to trial is very liberal: "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

Defendant USC-SOM unjustifiably attacks Plaintiff's counsel's motivation for seeking to amend the complaint in this case. The motion to amend the complaint was not "meant to stall rulings on the pending motions" as alleged by the University Defendants. (Defs.' Objections, at 5). Indeed, Plaintiff had already taken the position that two of the University Defendants' dispositive motions were pre-mature, as set forth in Plaintiff's Counsel's Rule 56(d) Affidavits. The motion to amend the complaint had nothing to do with the Magistrate Judge's time-frame for ruling on those motions.

Nor did Plaintiff's counsel file the motion in bad faith to seek a de facto ruling on the qualified immunity defense raised by the individual Defendants, as asserted by the University Defendants. (Defs.' Objections, at 1, n. 1). As soon as Plaintiff's counsel became aware that Defendant USC-SOM was taking the position that only Palmetto Health could be liable as a potential employer of Plaintiff or under any of Plaintiff's contractual theories, Plaintiff timely sought to amend the complaint to include the tortious interference claim. Had Defendant USC-SOM's counsel consented to the proposed amendment back in January 2015, as requested, the Amended Complaint

---

filed his motion for leave to amend the complaint.

5

could have been filed almost three months earlier than it was, still with plenty of time left for discovery under the scheduling order.

The case of Flateau v. Harrelson, 584 S.E.2d 413 (S.C. Ct. App. 2003), which forms the core of Defendants' objections, simply does not render the Amended Complaint futile in this case as barred by the statute of limitations. The Flateau case is plainly distinguishable from the facts presented here. In Flateau, the plaintiffs' complaint contained no allegations regarding the individual defendants that would have taken the case out of the S.C. Tort Claims Act under S.C. Code Ann. § 15-78-70(b). Flateau, 528 S.E.2d at 417 ("[N]owhere in their complaints do [plaintiffs] Flateau and Fielding allege that the Board members' actions were outside the scope of their official duty."). The court noted that all of the allegations in the complaint "clearly and unequivocally" involved only official acts by the individual defendants in their capacities as members of the S.C. Commission for the Blind. Id.

Here, by contrast, both the original Complaint and the Amended Complaint contain allegations that Defendants Koon and Walsh acted deliberately, maliciously, with intent to harm Plaintiff, and outside the lawful course and scope of their employment with Defendant USC-SOM. See Complaint, ¶¶ 4, 5, 13, 86, 93, 104, 112, 120, 127; Amended Complaint, ¶¶ 84, 86, 88 (under new, Seventh cause of action, in addition to the same paragraphs referenced in the original Complaint). In this regard, this case is very similar to the South Carolina Supreme Court's case of Frazier v. Badger, 603 S.E.2d 587 (S.C. 2004). In Frazier, the court noted that where a governmental employee defendant's conduct "was a product of personal, not occupational, motives," the S.C. Tort Claims Act may not shield that defendant from individual liability. Id. at 591. The court further stated, "The principle of governmental immunity is not intended to protect a defendant . . . who has

6

used his authority for nothing more than to personally retaliate against an employee. In addition, section 15-78-70(b) denies governmental immunity for defendants whose actions involve actual malice and an intent to harm." Id. Here, Plaintiff has alleged that the actions cout the individual Defendants Koon and Walsh were improperly motivated by racial discrimination, unlawful retaliation, and malicious intent to harm Plaintiff. These allegations, if proven at trial, would be sufficient to avoid the reach of the South Carolina Tort Claims Act, and Defendants Koon and/or Walsh could be held individually liable to Plaintiff.

Next, the language from the Flateau case quoted by Defendant USC-SOM is merely dicta, which is not binding precedent under South Carolina law for purposes of the Erie doctrine. In Smith v. City of Greenwood, C/A No. 8:09-cv-2061-HFF-BHH, 2010 WL 2430952 (D.S.C. May 13, 2010), then-Magistrate Judge Bruce H. Hendricks described the exact language from the Flateau case[2] as a "stray remark" that is "frankly, hard to understand." Id. at *2 (copy of unpublished decision attached hereto as Exhibit B). In the Smith case, Judge Hendricks reasoned that "courts have been generally consistent in concluding that intentional acts of a governmental employee, intended to do harm to others, are deemed outside the scope of their employment and, therefore, constitute an exception to South Carolina's waiver of immunity under the Tort Claims Act." Id. Judge Hendricks cited a collection of cases from the S.C. Court of Appeals, the Fourth Circuit, and from other Judges within the District of South Carolina, most of them subsequent to the Flateau court's decision in

---

[2]The language at issue from the Flateau decision appears in the "Conclusion" section of the opinion: "We rule the two-year statute of limitations applies even if the Board members acted outside the scope of their official duties or if their actions constituted fraud, actual malice, intent to cause harm, or a crime involving moral turpitude." 584 S.E.2d at 419. This language is dicta because it was not necessary for the court's ruling that the plaintiffs' complaint did not contain any allegations that the named defendants acted outside the course and scope of their official duties or otherwise acted with fraud, actual malice, or intent to cause harm.

7

2003, where the courts reached conclusions that appear to be at odds with that suggested by the language of Flateau. Id. Judge Hendricks also noted that the Flateau decision specifically turned on the plaintiffs' failure in that case to plead any facts that would have brought the claim outside of the S.C. Tort Claims Act. Smith, at *3. Accordingly, Judge Hendricks concluded, "the Court finds that the SCTCA, and its concomitant [two-year] statute of limitations, inapplicable. Instead the general three-year statute of limitations applies to the civil conspiracy claim pursuant to S.C. Code Ann. § 15-3-530(5).

Similarly, in Moody v. Darnell, C/A No. 6:09-cv-702-MBS-WMC, 2010 WL 297810 (D.S.C. Jan. 21, 2010), Judge Seymour adopted the magistrate's report and recommendation, which held that plaintiff's causes of action alleging that defendants' actions were "intentional, gross and malicious and in complete disregard of [plaintiff's] well being" were governed by general 3-year statute of limitations, rather than 2-year statute of limitations under the SCTCA because of the exception in S.C. Code Ann. § 15-78-70(b). Id. * 3 (copy of unpublished decision attached hereto as Exhibit C).

There is no indication that the South Carolina General Assembly intended for the enactment of the South Carolina Tort Claims Act to supplant the general statute of limitations with regard to claims against individual governmental employees when those individuals act outside the course and scope of their employment or when their acts constitute actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. In fact, the operative language of Section 15-78-70(b) provides, "Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime

involving moral turpitude." S.C. Code Ann. § 15-78-70(b) (emphasis added). This sub-section has not changed since its enactment in 1986. See 1986 S.C. Act No. 463, § 1. The three-year general statute of limitations was enacted in South Carolina in 1988, two years after the enactment of the SCTCA. 1988 S.C. Act No. 432, § 1 (codified at S.C. Code Ann. § 15-3-530). The two-year statute of limitations under the S.C. Tort Claims Act applies only to actions brought "pursuant to this chapter." S.C. Code Ann. § 15-78-110. When the legislature stated, "Nothing in this chapter may be construed" to provide immunity to, or limit the liability of, a governmental employee who acts outside the course and scope of his official duties or who acts with the requisite level of bad intent, S.C. Code Ann. § 15-78-70(b), it clearly intended to remove such claims from the shield of the SCTCA. Plaintiff's claims in this case against Defendants Koon and Walsh in their individual capacities were not brought pursuant to the SCTCA and should not be governed by that statute's 2-year limitations period.

The broad reading of the Flateau decision urged by Defendant USC-SOM in this case would have undoubtedly required the South Carolina Court of Appeals to engage in extensive analysis and discussion about the legislative histories of the SCTCA and the general statute of limitations. One would expect that such a sweeping pronouncement on this significant issue of law would not be contained only in a single sentence in the "Conclusion" section of the opinion, without any further discussion or supporting citation.

In any event, this issue is clearly too important to be decided on a motion to amend the complaint, where the Court is only looking at whether or not the newly proffered cause of action would be futile. The Court also should bear in mind that the matter presently before it involves a very deferential review of a very lenient standard to begin with. To the extent that the Court has any

9

concerns about the ultimate viability of the claims in the Amended Complaint under South Carolina law, those concerns would be more appropriately addressed at the summary judgment stage of this case or at trial, after the benefit of complete discovery. Whether the individual Defendants acted outside of the course and scope of their employment or acted with actual malice or intent to harm is a question of fact that should only be determined after all discovery is completed. See Frazier v. Badger, 603 S.E.2d at 590 ("Immunity under the statute [i.e., the SCTCA] is an affirmative defense that must be proved by the defendant at trial."). The Court should not feel bound by the loose language used by the South Carolina Court of Appeal in dicta in the Flateau case, which is almost 12 years old and which has since been discredited by two well-respected judges of this Court.

For all of the foregoing reasons, Plaintiff respectfully requests that the Court affirm the Magistrate Judge's order granting Plaintiff leave to file the Amended Complaint, and overrule the University Defendants' objections in this matter.

Respectfully submitted,

 s/ David E. Rothstein
David E. Rothstein, Fed. ID No. 6695
ROTHSTEIN LAW FIRM, PA
1312 Augusta Street
Greenville, South Carolina 29605
(864) 232-5870 (O)
(864) 241-1386 (Facsimile)
derothstein@mindspring.com

Attorney for Plaintiff, Afraaz R. Irani, M.D.

May 7, 2015

Greenville, South Carolina.