# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Afraaz R. Irani, M.D., ) | C.A. No.: 3:14-cv-03577-CMC-KDW |
| ) | |
| Plaintiff, ) | |
| ) | **PLAINTIFF'S ANSWERS TO DEFENDANT** |
| vs. ) | **PALMETTO HEALTH'S FIRST** |
| ) | **INTERROGATORIES** |
| Palmetto Health; University of ) | |
| South Carolina School of Medicine; ) | |
| David E. Koon, Jr., M.D., in his ) | |
| individual capacity; and John J. ) | |
| Walsh, IV, M.D., in his individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, Afraaz R. Irani, M.D., by and through his undersigned counsel, hereby provides the following Answers to Defendant Palmetto Health's First Interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure.

1. List all witnesses and provide a short description of the facts to which each is expected to testify.

**ANSWER:** Plaintiff anticipates calling the following witnesses:

(a) Afraaz R. Irani, M.D.

Dr. Irani is the Plaintiff in this matter. He is expected to testify about the allegations in the Complaint and about the damages he has suffered as a direct and proximate result of Defendants' unlawful conduct.

(b) Attending physicians in orthopaedic surgery residency program (including Drs. Koon, Walsh, Voss, Guy, Mazoue, Grabowski, Abell, Maginnis, and Iaquinto) can testify about Plaintiff's

job performance in the residency program and the various rotations he completed.

(c)    Attending physicians in other residency programs (including Drs. Brown, Joyce, Friedman, Morrison, Chen, Troyer, Aitchison, Ford, Watson, and Fann) can testify about Plaintiff's job performance as an intern or in trauma rotations.

(d)    Co-residents in orthopaedic residency program (including Drs. Andrew Duffee, Gene Massey, Mary Finn, Justin Hoover, Jennifer Wood, Greg Herzog, Kenny Lindley, Justin Walker, William Whiteside, Harrison Goodno, Kristin Nathe, and Michael Kamwisher) can testify about Plaintiff's job performance, communication skills, interactions with patients, and interactions with attending physicians.

(e)    Residents in other residency programs (including Drs. Catherine Loflin, Amy Voci, Henrik Berdel, Dustin Huynh, William Ross, Jeremy Reeves, Emily Krodel, Zubair-Chau, Joe Kim, Elizabeth Edwards, Diego Pabon-Romero, Nate Simms, Katie Dudas, Elmira Basaly, Richard Basaly, Amanda Goodno, Jeff Mullins, Kate Matriani, Reema Kar, Zack Brock, Joshua Skaggs, and Simon Tanksley) can testify about Plaintiff's job performance as an intern or in trauma rotations.

(f)    Cast techs in orthopaedic surgery department (including Angela Robinson, Leonard (last name not recalled), and Antoinette Pettiford-Smith) can testify about Plaintiff's job performance during residency.

(g)    Other staff members at Palmetto Health (including Greg Anderson, PA, Mariana Petulak, ACNP-BC, Peggy Fields, Deborah T. Floyd, Magan Blizzard, Donna Brierley, Charmaine Reed, and Tonya Hamby) can testify about Plaintiff's job performance during residency and the way that Plaintiff was treated by the attending physicians.

(h)    Kathy Stephens

2

Ms. Stephens is the DIO of the Palmetto Health residency programs and can testify about the resident contracts, handbooks, and other policies and procedures of the Palmetto Health/USC School of Medicine.

(i)     Charles D. Beaman, Jr.

Mr. Beaman is the CEO of Palmetto Health. He can testify about the circumstances surrounding Plaintiff's termination.

(j)     Lynn Hearn

Ms. Hearn is the Human Resources contact assigned to assist Plaintiff with his grievance. She can testify about her advice to Plaintiff about what to expect during the grievance hearing.

(k)     D. Chad Lamoreaux, M.D.

Dr. Lamoreaux is a graduate of the Palmetto Health/USC School of Medicine residency program in orthopaedic surgery. He can testify about the vindictive nature of Defendants Koon and Walsh and about retaliation he encountered after he complained about various aspects of the program.

(l)     John L. Eady, M.D.

Dr. Eady is a former program director of the Palmetto Health/USC School of Medicine residency program in orthopaedic surgery, and the department chair of the USC Department of Orthopaedic Surgery. He is also the Chief of Orthopaedic Surgery at the Dorn VA Medical Center. He can testify about Plaintiff's job performance during his internship year. He can also testify about the level of performance expected of a second-year resident in orthopaedic surgery.

Plaintiff reserves the right to call as a witness any of the individual Defendants and any individual identified as a witness by Defendants. Further, Plaintiff reserves the right to supplement

this witness list during and after discovery in this case.

2.  List any and all individuals with whom you have discussed the Palmetto Health USC-SOM residency programs and the issues generally related to the causes of action raised in this litigation since July 1, 2011.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is not relevant to any claim or defense in this lawsuit or that is not reasonably calculated to lead to the discovery of admissible evidence at trial. Subject to the foregoing objections, Plaintiff states that the individuals with whom Plaintiff has discussed the Palmetto Health/USC-SOM residency program include all of the co-residents in the program, all attending physicians and adjunct faculty, all of the witnesses identified in response to Interrogatory No. 1 above, nurses, cast techs, administrators at Palmetto Health, and members of the GMEC grievance committee. Such individuals would also include Plaintiff's attorneys (both the undersigned counsel and Plaintiff's attorneys in California), the participants in the California administrative licensing proceeding, former and current professors at the Stanford University Medical School, Plaintiff's expert witnesses, attending physicians and colleagues at the Emergency Medicine Residency program at Kern County/UCLA, and Plaintiff's family members.

3.  When does Plaintiff contend that he was terminated from the residency program?

**ANSWER:** Plaintiff was terminated from the Palmetto Health/USC-SOM Orthopaedic Surgery Residency Program on or about June 1, 2012, when he was notified in writing by Charles D. Beaman, Jr. CEO of Palmetto Health, that his termination was finalized.

4.  Describe in detail all evidence of malice or intent to specifically harm Dr. Irani by Palmetto Health, the specific actor, and the date.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to the foregoing objection, such evidence of malice or intent to harm Plaintiff includes the following: (a) During the first disciplinary meeting on or about August 15, 2011, Dr. Koon intimidated Plaintiff by mentioning the termination of Dr. Chad Lamoreaux from the program. Dr. Koon also provided a list of seven alleged deficiencies, but when Plaintiff requested clarification or examples of the alleged deficiencies, Dr. Koon refused, stating, "That just shows you lack insight." (b) Dr. Walsh informed Plaintiff on or about September 11, 2011, that Plaintiff was free to file a grievance, but that Dr. Walsh was a busy orthopaedic surgeon, that Plaintiff was a busy orthopaedic surgery resident, and that they both had better things to do with their time than to be involved in a grievance proceeding. (c) During the faculty meeting in early December 2011, Dr. Koon asked Plaintiff in an intimidating manner why he had been meeting with Kathy Stephens. Dr. Koon also attacked Plaintiff's patient care by accusing him of not ordering an MRI as instructed by an attending physician, without warning and without providing Plaintiff with a fair and reasonable opportunity to defend himself. Dr. Koon questioned Plaintiff about whether he even wanted to be in orthopaedics or be in Columbia. Dr. Koon made numerous other accusations and denigrating comments about Plaintiff's commitment to the program, alleged insubordination, inappropriate communication with other residents and staff, even accusing Plaintiff of breaking the law in tape recording a phone conversation with Dr. Abell. (d) Dr. Walsh notified Plaintiff that he was being suspended pending investigation into Plaintiff's treatment of a trauma patient. Plaintiff was formally suspended by letter before he was even interviewed or allowed to provide a written rebuttal of what happened with regard to the trauma patient. (e) While Plaintiff was considering whether or not to file a grievance over his suspension, Dr. Walsh told Plaintiff that

he (Walsh) would look into whether Plaintiff's suspension could be expunged or whether Plaintiff could make up the missed time so as not to delay his graduation date and so the suspension would not have to be reported by Plaintiff after graduation; Dr. Walsh intentionally did not respond to Plaintiff before deadline to file a grievance. (f) Kathy Stephens would not accept Plaintiff's grievance over his suspension, stating that it was not timely because the Martin Luther King, Jr. Holiday was counted as a "business day," despite the fact that Palmetto Health's written policy is silent about that issue and despite the fact that the policy allows Palmetto Health to extend the deadline under certain circumstances. (g) Dr. Koon recommended Plaintiff's termination without affording him a fair and reasonable opportunity to defend himself or to provide his side of the story. (h) Dr. Koon refused to provide the California Medical Board requested information in a timely manner in connection with Plaintiff's application for a medical license in California. (i) Thereafter, Dr. Koon specifically added a Memorandum for Record into Plaintiff's employment file over a year after his termination, knowing that the file would be sent to the California Medical Board in connection with Plaintiff's new residency in California. In addition, see response to Interrogatory No. 5 below.

5.     Detail the date, location, and witnesses of each instance where Dr. Koon allegedly referred to Dr. Irani as "Acmed [sic] the Terrorist" and each and every other offensive remark made to Dr. Irani on the basis of race or religion on which he bases his claim of discrimination and hostile environment in the workplace. Detail any and all individuals other than Dr. Koon who are alleged to have made the comments detailed or otherwise discriminated against Dr. Irani or made the workplace hostile because of race or religion and not job performance.

**ANSWER:**     Plaintiff objects to this interrogatory on the grounds that it is overly broad and

unduly burdensome. Dr. Koon's offensive comments about Plaintiff's race and Middle Eastern heritage were pervasive throughout Plaintiff's tenure in the residency program. Dr. Koon referred to Plaintiff as "Achmed the Terrorist" on several occasions in 2011 and 2012. Witnesses to those incidents include Plaintiff, Dr. Koon, Harrison Goodno, Justin Hoover, and Frannie (last name not recalled–nurse at prison clinic). Dr. Koon also stated in front of Plaintiff, "Dr. Irani might come in one day and blow the place up." Other residents picked up on Dr. Koon's statements towards Plaintiff and repeated those statements or similar comments in an ironic or sarcastic way, attempting to make light of Dr. Koon's inappropriate remarks. No other individuals besides Dr. Koon made such insensitive and inflammatory remarks or created a hostile work environment based on Plaintiff's race or national origin.

6. Identify specifically those individuals who Dr. Irani claims where similarly situated but treated more favorably than he because of race or religion and the specific instances in which that individual was more favorably treated.

**ANSWER:** All of the other residents in the Orthopaedic Surgery Residency Program were similarly situated, but treated more favorably than Plaintiff because of their race or religion. Plaintiff is not aware of any other resident whose race, religion or national origin was mocked or made fun of by Dr. Koon or by any of the other attending physicians in the department.

7. Describe each instance in which Dr. Irani complained of Palmetto Health requiring him to violate the duty hours policy specifically stating for each instance how he complained (verbally or in writing), to whom, and on what date.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to the foregoing objections, Plaintiff states that he did not keep track

7

of specific dates when he made such complaints. Plaintiff has produced copies of at least two e-mails in which he complained of perceived duty-hour violations: one to Kathy Stephens and one to Dr. Whiteside, because taking the OITEs after being on call is a duty hour violation. Plaintiff also complained to the ACGME, which included specific duty hour violations, before his termination was finalized.

8.     Describe each instance in which Dr. Irani complained of Palmetto Health not providing proper supervision of his work as a resident while in the Orthopaedic Residency Program specifically stating for each whether he complained in writing or orally, to whom, and on what date.

**ANSWER:**     Plaintiff objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to the foregoing objections, Plaintiff states that he did not keep track of specific dates when he made such complaints. Plaintiff frequently complained to his colleagues about the lack of resident supervision by attendings, mainly during Monday clinics, when Dr. Koon, Dr. Walsh, and Dr. Guy would frequently show up an hour or two late, and on morning rounds, when attending physicians would not round on their own patients. Plaintiff sent text messages to Kenny Lindley about Dr. Abell, and Plaintiff recorded a telephone call with Dr. Abell in which Plaintiff requested his assistance or supervision, but Dr. Abell refused the request. At the VA on weekends and on call, the residents would see patients and would never talk to an attending.

9.     State specifically each instance in which Dr. Irani was required to provide patient care without proper supervision.

**ANSWER:**     See Answer to Interrogatory No. 8 above.  In addition, such instances included VA call, VA weekend call, morning rounds, Monday clinic, PH call (both intern year and PGY-2 year) with no in-house, senior resident supervision or availability.  On several occasions

8

when Dr. Mazoue and Dr. Walsh were on call, they would not respond to multiple pages, text, or cell phone calls.

10.   State specifically each instance that Dr. Irani worked in excess of the duty hours policy providing the following:

a)   The attending physician who required him to exceed the duty hour policy;

b)   Whether Dr. Irani properly reported his hours and the fact that he violated the duty hours policy;

c)   State whether the violation was ever addressed by the faculty; and

d)   Whether any identifiable harm resulted to a patient.

**ANSWER:**   Plaintiff and his co-residents routinely violated the duty hour restrictions almost every week. Plaintiff was specifically told not to report duty hour violations. Plaintiff submitted approximately six months of data to the ACGME showing specific dates and attending physicians involved where residents violated duty hours by being in the operating room post call. Plaintiff is not aware of any direct harm that resulted to a patient from his (or another resident's) violation of the duty hour restrictions.

11.   State with specificity and separately as to each alleged complaint the manner in which Palmetto Health retaliated against Dr. Irani 1) for filing a grievance; 2) for grieving his termination; and 3) for filing a Charge with the EEOC.

**ANSWER:**   After Plaintiff filed his initial grievance over his first academic remediation, he was strongly discouraged from pursuing the matter past the first step by Dr. Walsh, who stated that Plaintiff was free to file a grievance, but that Dr. Walsh was a busy orthopaedic surgeon, that Plaintiff was a busy orthopaedic surgery resident, and that they both had better things to do with their

9

time than to be involved in grievance proceedings. In December 2011, Dr. Koon confronted Plaintiff about contacting Kathy Stephens. With regard to the second academic remediation, while Plaintiff was considering whether or not to file a grievance over his suspension, Dr. Walsh told Plaintiff that he (Walsh) would look into whether Plaintiff's suspension could be expunged or whether Plaintiff could make up the missed time so as not to delay his graduation date and so the suspension would not have to be reported by Plaintiff after graduation. Dr. Walsh intentionally did not respond to Plaintiff before deadline to file a grievance. Kathy Stephens would not accept Plaintiff's grievance over his suspension, stating that it was not timely because the Martin Luther King, Jr. Holiday was counted as a "business day," despite the fact that Palmetto Health's written policy is silent about that issue and despite the fact that the policy allows Palmetto Health to waive the deadline under certain circumstances. Dr. Koon refused to provide the California Medical Board requested information in a timely manner in connection with Plaintiff's application for a medical license in California. Finally, Dr. Koon specifically added a Memorandum for Record into Plaintiff's employment file over a year after his termination, knowing that the file would be sent to the California Medical Board in connection with Plaintiff's new residency in California.

12.     Detail the specific manner in which Palmetto Health breached the 2011-2012 Resident Agreement of Appointment with Dr. Irani citing the specific provisions in the Agreement that were breached and the exact actions that caused the breach.

**ANSWER:**     Plaintiff objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to the foregoing objections, see the allegations in Paragraphs 53-57 and Paragraphs 63-65 of the Amended Complaint, which paraphrase or quote the applicable provisions of the resident contract and resident handbook.

13.    State specifically what evidence there is of any contract between Palmetto Health and the ACGME and what evidence it would intend to cover Dr. Irani separately from other residents in the Orthopaedic Residency Program.

**ANSWER:**    The ACGME has common program-requirements and specialty-specific program requirements that apply to the Palmetto Health/USC-SOM Orthopaedic Surgery Residency Program, because that program has applied for and received accreditation through the ACGME. The ACGME requirements are specifically referenced by, and incorporated into, the Resident Handbook, the resident contracts, and the contracts between Palmetto Health, USC-SOM, and all affiliated entities, sites, or practices involved in the Orthopaedic Surgery Residency Program. Plaintiff has never alleged that he is covered by any contract separately from other residents in the Orthopaedic Surgery Residency Program.

14.    Describe in detail whether Dr. Irani accessed and reviewed patient records when he was no longer treating patients at Palmetto Health. Include when he did this, how he did it, for what purpose, and whether he obtained patient or physician permission to do so.

**ANSWER:**    Prior to Plaintiff's termination from the Orthopaedic Surgery Residency Program, he had the authority and ability to access patient medical records (EMR or scanned paper records) on patients whose care he was involved in. Plaintiff is informed and believes that all of his access to protected health information was appropriate and lawful under HIPAA, which allows access to such patient records for purposes of physician defense. Whenever Plaintiff disclosed information relating to specific patients, such as to the California Medical Board or the ACGME, Plaintiff did his best properly to redact all patient identifying information prior to disclosing such records.

15. For each type of monetary damages that Plaintiff claims in this lawsuit, state the dollar amount sought and explain how each amount was calculated. If Plaintiff contends the dollar amount of any type of monetary damages is not presently known, state the method by which Plaintiff intends to calculate the amount at a later date.

**ANSWER:** This information is set forth in detail in the expert report of Charles Alford, Plaintiff's expert economist. In addition to the amounts set forth in the economic analysis of Dr. Alford, Plaintiff has incurred additional damages for attorney's fees, job search expenses, travel expenses, COBRA, continuing medical education courses, and residency match application/service fees, which are detailed in a spreadsheet provided to Dr. Alford.

16. State all social media on which you have had a presence since 2010 and your specific screen name or account ID by which you are identified in that particular mode of social media. Note specifically the dates for which you have had an account with each entity. State specifically whether you have ever discussed Palmetto Health and on which social media.

**ANSWER:** Plaintiff has not had any active social media accounts since 2010. Plaintiff has never discussed Palmetto Health on any social media site.

17. State whether you have sued the ACGME since your dismissal from the Palmetto Health USC-SOM Orthopaedic Residency Program or filed any formal complaint against the ACGME. If so, please provide the forum and the complaint number.

**ANSWER:** Plaintiff has not sued the ACGME or filed any type of formal complaint against the ACGME.

18. During his residency did Dr. Irani complain of any member of the faculty other than Dr. Koon? If so, specifically for what, when, and to whom.

**ANSWER:** Plaintiff complained to Kathy Stephens about Dr. Walsh's attempts to discourage him from proceeding with the grievance process in September 2011. Plaintiff also complained to Kathy Stephens in late 2011 or early 2012 about the reviews he received from Drs. Voss and Guy. In addition, Plaintiff complained to Dr. Guy in January 2012, about Dr. Voss's review.

19. Is Plaintiff eligible for or has he applied for or enrolled in Medicare? If yes, were any medical bills, invoices, or charges for which damages are sought in this lawsuit submitted to or paid for by Medicare?

**ANSWER:** Plaintiff has never applied for or been enrolled in Medicare. Plaintiff has never received any payments from Medicare.

20. Has Plaintiff applied to the Social Security Administration for Social Security Disability Insurance ("SSDI") benefits?

**ANSWER:** Plaintiff has never applied to the Social Security Administration for any type of disability benefits.

21. Identify all sources of income for Plaintiff since January 1, 2011, including the total amount of income received from each source and the time frame during which it was received.

**ANSWER:** Plaintiff objects to this interrogatory to the extent that it seeks information regarding Plaintiff's earnings from Palmetto Health, because that information is already in the possession of Defendants. Subject to the foregoing objection, since Plaintiff's termination from the Palmetto Health/USC-SOM Orthopaedic Surgery Residency Program, he has held the following positions:

(1) Emergency Medicine Resident

13

    Kern Medical Center
    1700 Mount Vernon Avenue
    Bakersfield, CA 93306
    (661) 326-2168

Plaintiff was employed in this position from June 2013 until September 22, 2013, when he was forced to resign because of the denial of his California medical license. His W-2 indicates that he earned $11,053.19 in salary from Kern Medical Center in 2013. He worked 60-80 hours per week during his residency there.

  (2)  Lyft/Uber/Sidecar

Plaintiff attempted to drive his own, personal car for the above ride-sharing services/apps starting in late 2013. Ultimately, this proved to be unprofitable because he had to drive to San Francisco to drive, which was about 100 miles from his home, and also he had to drive between rides and to pick up passengers. Factoring in the cost of gas, maintenance, and wear and tear on his vehicle, Plaintiff quickly determined that he could not continue. He earned gross revenue of less than $1,000.00 in 2013 and approximately $3,500.00 in 2014, but once expenses are included, he either barely broken even or had no profit at all. Plaintiff does not have any address or phone number for these services, because they were done entirely on-line.

  (3)  Plaintiff also made some additional money by fixing broken glass on mobile electronic devices, starting in early 2013. He earned less than $1,000 cash, and worked less than 5 hours per week on average during the year. He would advertise for these service on craigslist.

  (4)  Plaintiff has also accepted a management consulting position with McKinsey & Company, which starts on or about July 8, 2015. Plaintiff received a $25,000.00 signing bonus with McKinsey, which was paid in late 2014.

22.     Reviewing Palmetto Health Bates Nos. 00001-000130, the documents Palmetto Health submitted to the California Medical Board at Dr. Irani's insistence, please identify specifically each and every document Dr. Irani takes issue with being provided to the California Medical Board and the reason and basis that Palmetto Health should have known not to provide it given the authority provided by Dr. Irani.

**ANSWER:**     Plaintiff objects to this interrogatory on the grounds that it improperly characterizes his request for Defendant Palmetto Health or any of its employees, officers, or agents to provide information to the California Medical Board. Plaintiff also does not know whether the referenced documents were, in fact, the same documents (or the entirety of such documents) provided to the California Medical Board by Defendant Palmetto Health. Furthermore, the phrase "takes issue with" is vague. Subject to the foregoing objections, Plaintiff asserts that Dr. Koon's Memorandum of Record dated June 26, 2013, is libelous because it contains several defamatory allegations about Plaintiff that are inaccurate and untrue.

23.     State specifically whether greater harm would have been provided by providing Palmetto Health Bates Nos. 00001-000130 or by providing no response whatsoever?

**ANSWER:**     Plaintiff objects to this interrogatory on the grounds that it calls for complete speculation. Plaintiff has no way to know what, if anything, the California Medical Board would have done if Defendants had completely refused to provide the information requested as part of Plaintiff's application packet.

24.     Identify those Dr. Irani asserts were treated more favorably than he was.

**ANSWER:**     See Answer to Interrogatory No. 6 above.

25.     With regard to the allegations contained in Paragraph 42, describe in detail the basis

15

for Dr. Irani's allegations that Palmetto Health's actions were intentional and reckless.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it seeks information that is protected by the attorney work product doctrine as the litigation strategies and legal theories of Plaintiff's counsel. Furthermore, the factual allegations regarding Plaintiff's cause of action for unlawful discrimination based on race are adequately set forth in the Complaint. Subject to the foregoing objections, Plaintiff states that the conduct complained of was intentional because Defendant Koon, acting as an agent for Defendant Palmetto Health, knew that Plaintiff was of Middle Eastern descent and ethnicity and deliberately treated Plaintiff differently because of his race, religion, ethnicity, or national origin. See also Answers to Interrogatories Nos. 4 and 5 above.

Respectfully submitted,

/s/ David E. Rothstein

David E. Rothstein, Fed. ID No. 6695
Michael G. Corley, Fed. ID No. 10590
ROTHSTEIN LAW FIRM, PA
1312 Augusta Street
Greenville, SC 29605
(864) 232-5870 (Office)
(864) 241-1386 (Facsimile)
drothstein@rothsteinlawfirm.com

Attorneys for Plaintiff Afraaz R. Irani, M.D.

April 13, 2015

Greenville, SC.

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served the foregoing **PLAINTIFF'S ANSWERS TO DEFENDANT PALMETTO HEALTH'S FIRST INTERROGATORIES** upon counsel of record for Defendants by e-mail and by depositing a copy of the same in the United States mail, proper first-class postage pre-paid, this 13th day of April, 2015, addressed as follows:

> Kathy Dudley Helms, Esq. (kathy.helms@ogletreedeakins.com)
> Ogletree Deakins Nash Smoak & Stewart, P.C.
> 1320 Main Street, Suite 600
> Columbia, SC 29201
>
> Kathryn Thomas, Esq. (Kthomas@gsblaw.net)
> Gignilliat, Savitz & Bettis, LLP
> 900 Elmwood Avenue, Suite 100
> Columbia, SC 29201

_____
David E. Rothstein

Greenville, South Carolina.