IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Afraaz R. Irani, M.D., | ) | C.A. No. 3:14-cv-3577-CMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | Order on Motions for |
| Palmetto Health; University of South Carolina | ) | Judgment on the Pleadings |
| School of Medicine; David E. Koon, Jr., M.D., in | ) | and Summary Judgment |
| his individual capacity; and John J. Walsh, IV, | ) | |
| M.D., in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report"), ECF No. 60, which addresses the following potentially dispositive motions: (1) Motion for Partial Summary Judgment filed by Defendant David E. Koon, Jr. M.D. ("Dr. Koon"), ECF No. 22; (2) Motion for Summary Judgment filed by Defendant University of South Carolina School of Medicine ("USC-SOM"), ECF No. 31; and (3) Motion for Judgment on the Pleadings filed by Dr. Koon and Defendant John J. Walsh, IV, M.D. ("Dr. Walsh"), ECF No. 18.[1] The Report recommends that all three motions be denied without prejudice to renewal following completion of discovery.

Dr. Koon, Dr. Walsh, and USC-SOM (collectively "University Defendants") object to most aspects of the recommended denial of their motions. ECF Nos. 62, 67, 68. For the reasons set forth below, the court adopts the Report as to USC-SOM's motion for summary judgment and Dr. Koon's motion for partial summary judgment and denies both motions. The court adopts the Report in part as to Drs. Koon and Walsh's motion for judgment on the pleadings, which seeks

---

[1] The court lists the motions in the order addressed below, rather than in the order filed.

dismissal of four claims for constitutional deprivations under 42 U.S.C. § 1983 ("Section1983"). The court does not adopt the Report's recommendation as to either the Section 1983 substantive due process claim to the extent asserted against either Drs. Koon or Walsh or any Section 1983 claim to the extent asserted against Dr. Walsh. Instead, the court finds that Dr. Walsh is entitled to dismissal of all Section 1983 claims against him and Dr. Koon is entitled to dismissal of the Section 1983 claim for substantive due process. In all other respects, the court adopts the Report's recommendations on the motion for judgment on the pleadings based on the rationale set forth below.

The Report also addresses Dr. Irani's Motion to Strike exhibits Drs. Koon and Walsh filed with their reply in support of judgment on the pleadings. ECF No. 30. The Report recommends this motion be denied because the documents were not considered.[2] Neither party objects to this recommendation, which the court also adopts in light of its rulings below.

## STANDARD

**Review of Report and Recommendation.** The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The

---

[2] In its conclusion, the Report recommends the Motion to Strike be "*dismissed as moot*." ECF No. 60 at 15. An earlier reference to this motion states that it should be "*denied*" because the exhibits were not considered. *Id.* at 11 ("In considering the Motion for Judgment on the Pleadings, the court did not rely on any exhibits included in the reply brief. Accordingly, the Motion to strike should be *denied*."). The undersigned finds that the motion should be denied both because the documents were not considered and because they would not make a difference at this stage of the proceedings if they were considered.

2

court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of a specific objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

**Summary Judgment.** The court adopts the Report's statement of the standard for summary judgment. *See* Report at 11-12.

**Judgment on the Pleadings.** The court adopts the Report's statement of the standard for judgment on the pleadings (Fed. R. Civ. P. 12(c)). *See* Report at 7. In addition, the court considers *McCleary-Evans v. Maryland Dept. of Trans.*, 780 F.3d 582 (4th Cir. 2015), which affirmed dismissal of a claim for employment discrimination where the plaintiff's allegations left "open to speculation the cause for the [challenged decision] and the cause [plaintiff asked the court] to infer (invidious discrimination) [was] not plausible in light of the obvious alternative explanation[.]" *Id.* at 588 (internal marks omitted).

## ALLEGATIONS

The court adopts the Report's summary of the Amended Complaint as supplemented in Section III below. *See* Report at 2-5.

**DISCUSSION**

**I.      Motion for Summary Judgment by Defendant Dr. Koon**

The Report recommends that Dr. Koon's motion for partial summary judgment (ECF No. 22) be denied without prejudice to renewal following the completion of discovery. ECF No. 60 at 12-13. This motion is directed to Dr. Irani's state law causes of action for libel per se and tortious interference with contract. These state law causes of action rest on allegations that Dr. Koon made intentionally false statements about Dr. Irani in his communications with (or documents he prepared with an intent they be provided to) the California Medical Board. Dr. Irani alleges these statements led to denial of Dr. Irani's application for a medical license and related loss of educational and employment opportunities.

In support of his motion, Dr. Koon relies on his own affidavit regarding his communications with the California Medical Board, copies of related correspondence, and a release signed by Dr. Irani authorizing disclosure of certain information to the California Medical Board. In his objections, Dr. Koon argues this evidence suffices to support an award of summary judgment and Dr. Irani has failed to adequately explain his need for further discovery prior to a ruling on the motion.

As the Report notes, Dr. Irani opposed Dr. Koon's motion for partial summary judgment as premature and proffered his counsel's affidavit regarding discovery needed before he could adequately respond to the motion. ECF No. 60 at 13. Counsel's supporting affidavit noted the need to seek discovery from the "California Medical Board to explore what communications Defendant Koon [and other agents of USC-SOM] had with the California Medical Board[.]" ECF No. 25-1 ¶ 4. The affidavit also pointed to arguable discrepancies in Dr. Koon's affidavit,

4

including his statement that he had not submitted any other documents to the Medical Board of California, despite having placed a "Memorandum of Record" in Dr. Irani's file "over a year after [Dr. Irani's] termination was finalized and within 10 days after [Dr.] Koon's second letter to the California Medical Board about Plaintiff." *Id.* ¶ 5.c-e. This document was allegedly placed in the file knowing it would be forwarded to the California Medical Board and stated that Dr. Irani had "failed in the competencies of patient care, interpersonal skills and communication, and professionalism."

While Dr. Koon's evidence may ultimately prove determinative, the court agrees that it would be premature to grant summary judgment based on Dr. Koon's proffered evidence without first allowing Dr. Irani an opportunity to test that evidence through appropriate discovery, including, most critically, Dr. Koon's deposition.[3] The court, therefore, adopts the Report's recommendation that Dr. Koon's motion for partial summary judgment be denied without prejudice to renewal after discovery is complete.

## II.     Motion for Summary Judgment by Defendant USC-SOM

The Report recommends that Defendant USC-SOM's motion for summary judgment be denied without prejudice to renewal following the close of discovery. In its objection to this recommendation, USC-SOM argues that Dr. Irani has failed to demonstrate the need for discovery before this motion is resolved.

The court disagrees and overrules this objection. Dr. Irani has made an adequate showing of a need for discovery on the underlying issues before the claims against USC-SOM are resolved

---

[3] Filings as of the date of this order indicate that Dr. Koon has yet to be deposed. *See* ECF No. 9 (extending discovery for limited purposes including, *inter alia*, the deposition of Dr. Koon).

on the merits. The critical issues include not only the formal and informal agreements, but also the functional relationships between residents, USC-SOM, Palmetto Health, and the Accreditation Counsel for Graduate Medical Education. The court, therefore, adopts the Report's recommendation that USC-SOM's motion for summary judgment be denied without prejudice to renewal after discovery is complete.

**III.     Motion for Judgment on the Pleadings by Drs. Koon and Walsh**

The motion for judgment on the pleadings filed by Drs. Koon and Walsh addresses Dr. Irani's claims for violation of 42 U.S.C. § 1983. Dr. Walsh argues that the Section 1983 claims should be dismissed as to him because the facts alleged fail to support an inference that he was sufficiently involved in the challenged actions to be subject to liability under Section 1983. In addition, Drs. Koon and Walsh argue that they are entitled to qualified immunity as to the Section 1983 claims because the facts alleged do not state a plausible claim that these Defendants violated clearly established federal law.

**A.     Dr. Walsh's Individual Argument**

The Report recommends denial of the motion for judgment on the pleadings as to Dr. Walsh's argument that the Section 1983 claims "do not affirmatively demonstrate his personal involvement." Report at 8. This recommendation is based on Dr. Irani's argument that "he has reason to believe that Defendant Walsh, as Chair of the Department of Orthopaedic Surgery at USC-SOM, 'was integrally involved in the process' that led to Plaintiff's termination." Report at 8 (quoting ECF No. 23 at 8). The Report found this argument, and the Amended Complaint's underlying allegations of joint responsibility for the alleged constitutional deprivations, sufficient to state a claim as to Dr. Walsh.

6

The court disagrees. Neither Dr. Irani's argument nor, more critically, any factual allegations in his Amended Complaint support a plausible inference that Dr. Walsh was personally responsible for any alleged constitutional deprivation. Instead, these sources suggest, at most, a speculative belief that Dr. Walsh may have been involved in the alleged deprivations (in some unspecified way) due to his supervisory responsibilities. This is not enough to state a claim under Section 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). While Dr. Irani includes allegations within his Section 1983 claims attributing the alleged violations to both Drs. Koon and Walsh, these allegations are conclusory in nature and, therefore, are not considered in determining whether he has "nudged [his] claims across the line from conceivable to plausible[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007); *see also Iqbal*, 556 U.S. at 680-81 (2009) (applying *Twombly* in rejecting similar conclusory allegations). The court, therefore, grants the motion for judgment on the pleadings to the extent it seeks dismissal of Dr. Walsh as a Defendant in all Section 1983 claims.[4]

### B.    Qualified Immunity

The Report also recommends denial of the motion for judgment on the pleadings to the extent it rests on the assertion of qualified immunity. This recommendation relies on the flexible approach to the qualified immunity analysis authorized by *Pearson v. Callahan*, 555 U.S. 223

---

[4] Although not set out as a separate objection, Dr. Walsh arguably objects to this aspect of the Report by objecting to the recommendation on qualified immunity. This is because the first step in the qualified immunity analysis requires the court to review each claim independently as to each Defendant to determine whether the factual allegations support a claim. Even without an objection, the court would reach the same conclusion under a clear error standard of review.

(2009), which modified a previously strict two-step approach announced in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). *See infra*, this section, "Qualified Immunity Inquiry." Reasoning that the court would be in a better position to determine the sequence of the two-step qualified immunity analysis after discovery is complete, the Report recommends denial of this aspect of the motion without prejudice to renewal after the close of discovery.

Dr. Koon[5] challenges this recommendation, arguing that he is "entitled to a ruling on the merits of [his] qualified immunity defense, without delay." ECF No. 62 at 1. He further argues that it was error to delay ruling until after discovery is completed where "[t]he facts are not in dispute on a motion for judgment on the pleadings, because all of the facts alleged in the plaintiff's complaint are taken as true." *Id*. at 3.

For reasons explained below, the court agrees that the Report's rationale for its recommendation on qualified immunity was insufficient and suggests a failure to adequately consider the merits of this defense at the earliest stage possible. *See*, *e.g.*, *McVey v. Stacy*, 157 F.3d 271, 275 (4th Cir. 1998) ("It is incumbent on the courts to review the immunity defense critically at an early stage of the proceedings to determine the legal question of whether the plaintiff has asserted a violation of a constitutional right and, if so, whether the constitutional right allegedly violated was clearly established at the time the defendant acted.").[6] The court, nonetheless, finds

---

[5] In light of the dismissal of the Section 1983 claims as to Dr. Walsh for reasons stated above, the court refers only to Dr. Koon in addressing the qualified immunity arguments. The arguments were, however, advanced by both Drs. Koon and Walsh and the results would be the same as to both but for the ruling above as to Dr. Walsh.

[6] Despite noting the importance of deciding whether qualified immunity applies at the earliest stage possible, *McVey* affirmed the district court's decision to defer ruling on qualified immunity

that three of Dr. Irani's Section 1983 claims sufficiently allege a violation of federally protected rights to survive a motion for judgment on the pleadings as to the first inquiry in the qualified immunity analysis.  The exception is the claim for violation of substantive due process, as to which Dr. Irani fails to state a claim.  As to the second inquiry, which the court reaches as to all but the substantive due process claim, the court concludes that the particular rights on which Dr. Irani's claims depend were sufficiently established to warrant deferral of any final decision on whether the rights were clearly established in the specific context of Dr. Irani's claims until after the close of discovery.  *See Pearson*, 555 U.S. at 236 (quoted *infra* "Qualified Immunity Inquiry"). The court, therefore, adopts the Report's recommendation as to all but the substantive due process claim for reasons addressed in greater detail below.

**Qualified Immunity Inquiry.**  As the Report notes, the qualified immunity analysis entails two distinct inquiries:  (1) whether the facts alleged make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged violation.  ECF No. 60 at 9-10 (discussing *Pearson* and *Saucier*).  The second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition[.]"  *Saucier*, 533 U.S. at 201.

After *Saucier* (2001) and before *Pearson* (2009), lower courts were directed to address these questions in order, deciding first whether a violation was adequately alleged (on motion to

———————————————

until the record was better developed.  *McVey*, 157 F.3d at 279 (affirming denial of motion to dismiss and noting several open issues as to McVey's Section 1983 retaliation claim including "whether McVey's interest in [her allegedly protected speech] was outweighed by [her employer's] interests in effective and efficient management as well as public confidence" in the employer).  *McVey* also noted that the preferred approach (at that time) was to first decide whether there was a constitutional violation and then to address whether the right was clearly established.  *Id.* at 277.  This "preferred" approach was made mandatory by *Saucier* in 2001, several years after *McVey* was decided, and then made optional (though still arguably preferred) by *Pearson* in 2009.

dismiss) or supported (on motion for summary judgment), before deciding whether the right was clearly established at the time of the violation. *E.g.*, *Saucier*, 533 U.S. at 201. As *Saucier* explained, approaching the questions in this order allows "for the law's elaboration from case to case" and avoids depriving the law of this development "were a court simply to skip ahead to the question whether the law" was clearly established at the time of the challenged actions. *Id.*

*Pearson* relaxes the requirement to address the questions in any particular order, allowing the lower courts to decide on a case-by-case basis which issue to address first. *Pearson*, 555 U.S. at 235-37. As the Court noted, "[b]ecause the two-step *Saucier* procedure is often, but not always advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson*, 555 U.S. at 242.

*Pearson* acknowledged that *Saucier*'s two-step approach could aid in the development of the law. *Id.* at 236 ("the *Saucier* Court was certainly correct in noting that the two-step procedure promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable."). It, nonetheless, found that such development was not "entirely dependent on cases in which the defendant may seek qualified immunity." *Pearson*, 555 U.S. at 242. Ultimately, as noted above, *Pearson* concluded that the lower courts were in the best position to decide whether to follow or vary *Saucier*'s two-step approach. *Id.* at 242 ("Our decision does not prevent the lower courts from following the *Saucier* procedure, it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases."); *see also Raub v. Campbell*, 785 F.3d 876, 881, 884 (4th Cir. 2015) (affirming summary judgment on qualified immunity grounds based on consideration of the second inquiry and noting prior

10

recognition "that, on a defense of qualified immunity, once a state actor's conduct is established beyond dispute, the question of whether that conduct was reasonable is one of law for the court to decide").

*Pearson* also noted that the stage of the proceedings could be significant to the approach taken. *Id.* at 238-39. It explained that, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify."

### 1.     Equal Protection Violation

**Allegations.** Dr. Irani's eleventh cause of action rests on allegations Dr. Koon violated Dr. Irani's right to equal protection by treating him less favorably than similarly situated residents in the Orthopaedic Surgery Residency Program ("Program"). Am. Compl. ¶¶ 118-25.[7] Dr. Irani alleges that this disparate treatment was motivated by discriminatory animus based on his race, religion, national origin or ethnic background. Support for an inference of discriminatory animus is found in factual allegations that "Plaintiff is of Indian/Zorastrian heritage" and "[Dr.] Koon repeatedly referred to Plaintiff in front of others as 'Achmed the Terrorist' and jokingly suggested he might 'blow the place up[.]'" *Id.* ¶¶ 32-33. Dr. Irani also alleges "[Dr.] Koon . . . repeatedly singled Plaintiff out in group discussions and magnified every misstep that Plaintiff made, while similar mistakes and behaviors by his colleagues . . . were overlooked or minimized." *Id.* ¶ 35.

---

[7] The court addresses Dr. Irani's four separate Section 1983 claims in the same order as do the parties in their memoranda, rather than in the order found in the Amended Complaint, ECF No. 49 ("Am. Compl."). The court also cites here to the Amended Complaint, as it is the now-operative complaint, rather than the Original Complaint, which was in effect when the motion for judgment on the pleadings was filed. Despite differing paragraph and cause of action numbers, the Section 1983 allegations are the same in both complaints.

While the last of these allegations does not expressly state that Dr. Irani's "colleagues" were similarly situated but for differences in race, religion, national origin or ethnicity, that inference may be drawn from the Amended Complaint considered as a whole. [8]

**Dr. Koon's Arguments.** In his opening memorandum, Dr. Koon argues that Dr. Irani's allegations are not sufficient to establish a claim for violation of the Equal Protection Clause. ECF No. 18-1 at 6. Dr. Koon notes that, to establish an equal protection claim, Dr. Irani must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." ECF No. 18-1 at 6 (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

Citing one unpublished decision, Dr. Koon also argues that the right to equal protection was not clearly established in the relevant context (rights to participation in a residency program) at the time of the alleged wrongs. *Id.* (citing *Halverson v. Univ. of Utah Sch. of Med.,* 2007 WL 2892633 * 14 (D. Utah 2007). In *Halverson*, the district court dismissed a number of Section 1983 claims brought by a medical resident who challenged the *non-renewal* of her residency for the

---

[8] Additional factual allegations incorporated into Dr. Irani's Section 1983 claims include that, at times relevant to this litigation, Dr. Irani was a participant in the Program, which was jointly operated by USC-SOM and Palmetto Health and was an "employee" while participating in the Program. Am. Compl. ¶¶ 15-16; *see also id.* ¶¶ 11, 12 (alleging that both Palmetto Health and USC-SOM were "employers" for purposes of Title VII liability). The Amended Complaint further alleges that Dr, Koon began treating Dr. Irani adversely early in Dr. Irani's second year by calling him into a "hostile and intimidating meeting" during which Dr. Koon advised Dr. Irani the Program "had previously *fired* residents" including one within six months of graduating from the five-year program. *Id.* ¶ 17 (emphasis added). Dr. Koon advised Dr. Irani of deficiencies that were "very vague and contained several generalized comments." *Id.* ¶ 18. Rather than clarifying the deficiencies when Dr. Irani requested clarification, Dr, Koon chastised him further, suggesting the request itself indicated Dr. Irani lacked insight. *Id.* Dr. Irani was first placed in remediation and ultimately terminated from the Program and related employment.

following year and a related paid suspension.[9]  The entirety of the court's discussion of the equal

protection claim is as follows:

> The equal rights portion of this Cause of Action is dismissed because
> Plaintiff has failed to state such a claim.  There are no allegations in the Amended
> Complaint regarding how she was treated differently from others who were
> similarly situated. . . . In addition, she has failed to link the alleged deprivations to
> the person who allegedly caused the deprivation.  Finally, plaintiff has failed to
> show any clearly established law on this point, thus entitling the Individual
> Defendants to qualified immunity.

2007 WL 2892633 *15 (internal citation omitted).

**Discussion.**  The first two sentences quoted above distinguish *Halverson* from the present

case because Dr. Irani alleges, *inter alia*, that (1) he was singled out for harsher treatment than his

colleagues (in context, fellow residents), with his errors being magnified and their errors being

minimized; (2) Dr. Koon was directly responsible for this harsher treatment; and (3) Dr. Koon also

referred to Dr. Irani as "Achmed the Terrorist," suggesting animosity based on one or more

protected characteristics (race, religion, national origin or ethnicity).  Giving Dr. Irani the benefit

of all reasonable inferences, these allegations support a plausible inference that he was treated less

favorably than similarly situated persons by Dr. Koon because of his race, religion, national origin,

or ethnicity.   Thus, *Halverson* does not support dismissal of the equal protection claim.[10]

---

[9]   Halverson asserted claims for violation of the following rights:  procedural due process,
substantive due process, and equal protection.

[10]   In finding the inference of causation plausible, the court has considered *McCleary-Evans v.
Maryland Dept. of Trans.*, 780 F.3d 582 (4th Cir. 2015).  As noted above, *McCleary-Evans*
affirmed dismissal of a claim for employment discrimination where the plaintiff's allegations left
"open to speculation the cause for the [challenged decision] and the cause [plaintiff asked the
court] to infer (invidious discrimination) [was] not plausible in light of the obvious alternative
explanation that the decisionmakers simply judged those hired to be more qualified and better

Similarly, *Halverson*'s statement that "Plaintiff has failed to show any clearly established law on this point" is not controlling here. The wording suggests that the court is referring to Halverson's failure to *proffer* legal authority. It does not suggest a judicial finding that no such authority exists.

In contrast to Halverson's apparent failure to proffer any authority, Dr. Irani relies on *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 273 (1986), which holds that "[d]ecisions by faculties and administrators of public schools based on race or ethnic origin are reviewable under the Fourteenth Amendment." *Wygant* did not address discrimination in the specific context of a residency program. It, instead, addressed claims by non-minority school teachers who challenged preferential treatment given minority employees during layoffs. The court's ruling and discussion is, nonetheless, instructive for its clear statement of the broad reach of the Equal Protection clause. *See id.* at 273 (noting "[t]his Court has consistently repudiated distinctions between citizens solely because of their ancestry as being odious to a free people whose institutions are founded upon the doctrine of equality." (quoting *Loving v. Virginia*, 388 U.S. 1, 11 (1967) (internal marks omitted)). Many other cases apply the Equal Protection clause in the context of public education. *See*, *e.g.*, *Univ. of California Regents v. Bakke*, 438 U.S. 265 (1978) ("Racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination."); *Brown v. Board of Education of Topeka*, 349 U.S. 294 (1955) (holding racial discrimination in public

---

suited to the position." *Id.* at 588 (internal marks omitted). Here, Dr. Irani's allegations that he was singled out for less favorable treatment are enough to nudge the inference of discrimination over the line from possible to plausible, at least when considered in light of Dr. Koon's alleged references to Dr. Irani as "Achmed the Terrorist."

schools unconstitutional).  The number, breadth, and consistency of these decisions precludes any argument that a reasonable official in Dr. Koon's position could have believed he could treat a resident less favorably than other similarly-situated residents based on differences in race, religion, national origin or ethnicity without violating the resident's right to equal protection.  This is true whether the Program is treated as an educational program, employment, or both.[11]

It follows that Dr. Koon is not entitled to judgment on the pleadings based on qualified immunity as to Dr. Irani's equal protection claim.  The court does not, however, foreclose the possibility that Dr. Koon may show an entitlement to qualified immunity on motion for summary judgment following the close of discovery.  Whether the defense may be established at that point (either on the first or second qualified immunity inquiry) will depend on the nature of any allegedly discriminatory treatment that may be supported by the evidence and the availability of controlling case law applicable to allegations for which evidence is proffered.

---

[11]  Some aspects of Dr. Irani's Section 1983 (and other) claims may depend on proof that he was an "employee" of USC-SOM, a premise the University Defendants deny.  Through his reply in support of judgment on the pleadings, Dr. Koon proffers evidence that Dr. Irani was an employee of Palmetto Health, rather than USC-SOM.  This evidence includes a written employment agreement between Dr. Irani and Palmetto Health.  Dr. Irani moved to strike the proffered evidence as improperly considered on motion for judgment on the pleadings.

The Amended Complaint adequately alleges that Dr. Irani was an employee of USC-SOM. This ends the inquiry for purposes of deciding the motion for judgment on the pleadings absent a basis for treating the proffered evidence as incorporated into the complaint or, alternatively, converting the motion to one for summary judgment (with attendant consideration of additional evidence).

Ultimately, however, the court need not decide whether the proffered evidence may be considered for purposes of the present motion because it would reach the same conclusion even if the employment agreement was considered and assuming it clearly states that Palmetto Health is Dr. Irani's employer.  This is because the overlapping relationship between the residency aspects of the Program and Dr. Irani's employment, including the impact of Dr. Koon's recommendations for remediation or termination, raise sufficient questions as to Dr. Koon and USC-SOM's role to at least justify discovery on the issue before any final determination is made .

15

## 2.    Procedural Due Process

**Allegations.**  Dr. Irani's eighth cause of action alleges violation of his right to procedural due process in the decision to terminate him from the Program with resulting loss of both educational opportunities and employment (regardless of the identity of the employer).  Am. Compl. ¶¶ 89-99.  The Amended Complaint alleges a factual basis for concluding Dr. Irani had constitutionally protected property and liberty interests in his participation in the Program and related employment as well as in his professional reputation.  The allegations also support an inference that Dr. Irani had a reasonable expectation that his participation in the Program and related employment would continue at least through the end of the contract year absent sufficient cause for termination.  *See*, *e.g.*, Am. Compl. ¶¶ 53-55 (alleging existence of contract with one-year term and incorporation of specified policies and procedures).  Dr. Irani includes sixteen allegations regarding the inadequacy of the process by which he was terminated from the Program and his employment.  Dr. Irani alleges that Dr. Koon was responsible for the resulting deprivation of procedural due process.

**Dr. Koon's Arguments.**  As Dr. Koon notes in his opening memorandum, to succeed on his procedural due process claim, Dr. Irani must establish the following:  (1) he had a liberty or a property interest; (2) of which he was deprived by Dr. Koon; (3) without due process of law.  ECF No. 18-1 at 7 (citing *Sylvia Dev. Corp. v. Calvert Cnty.,* 48 F.3d 810, 826 (4th Cir. 1995)).[12]  Dr. Koon argues that Dr. Irani cannot satisfy this standard because his dismissal from the program was

---

[12]   In *Sylvia*, the court upheld summary judgment in favor of a defendant county and its commissioners arising out of denial of a special zoning designation.  Defendants challenged the denials based on alleged violations of equal protection, procedural due process and substantive due process.

16

academic rather than disciplinary in nature, requiring a lower level of process than might otherwise be due. *Id.* Dr. Koon relies on *Bd. of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 87-91 for the proposition that, "[i]n the instance of an academic dismissal, it is sufficient that the plaintiff was informed of the nature of the faculty's dissatisfaction and that the ultimate decision to dismiss was careful and deliberate").

Dr. Koon also argues that Dr. Irani's right to procedural due process was not clearly established. ECF No. 18-1 at 8. In support of this argument, Dr. Koon cites a single unpublished district court decision that found a resident had failed to allege sufficient facts to "support the notion that she had a *property interest* in the three-year residency program for purposes of procedural due process." *Id.* (citing *Nigro v. Virginia Commonwealth University Medical College of* Virginia, 2010 WL 2262539 *6 (W.D. Va. 2010)).

**Discussion.** The Amended Complaint is susceptible to a reasonable inference that the reasons for Dr. Irani's placement into remediation and his subsequent dismissal were both academic and disciplinary in nature. It is also susceptible to a reasonable inference that Dr. Irani was both a student and an employee.[13] Given these reasonable inferences, Dr. Koon errs in assuming (at this stage) that Dr. Irani's procedural due process claim must be analyzed solely under the standard applicable to dismissal of a student on academic grounds.

Even if the claim is analyzed under the deferential standard applicable to academic dismissals, it is not clear at this stage that the claim must fail. This is because Dr. Irani has alleged

---

[13] As discussed above as to the equal protection claim, there are also allegations of an entirely different motivation: animosity toward Dr. Irani due to his race, religion, national origin or ethnicity. There are also allegations suggesting Dr. Irani may have had rights as an employee as well as rights as a student participant in the Program.

facts giving rise to a reasonable inference that he never received adequate notice of his deficiencies, despite seeking clarification of the list of deficiencies provided to him, a list he describes as "very vague" and containing "several generalized comments." Am. Compl. ¶¶ 18, 94.a. He also alleges that he was not given (1) adequate notice that termination was being considered, (2) an opportunity to review evidence against him, or (3) a right to appear in person at critical hearings, and that (4) the decisionsmakers were not impartial or independent. *Id.* ¶ 94 (b, d, e, p). Collectively, Dr. Irani's allegations suggest a failure of the process due for academic dismissals, and, consequently, survive the first step in the qualified immunity analysis, at least at this stage of the proceedings.

Dr. Koon's argument that the relevant rights were not clearly established also fails. To the extent Dr. Koon reads *Nigro* to hold that a resident has *no* procedural due process rights, his reading is in error. The focus in *Nigro* was on whether a medical resident had a property interest *in continuing for the full three years* of a residency program. The court held that there was no such property right.[14] In reaching this conclusion, the court first considered the dual nature of residency programs, noting that "a medical resident is both a student and an employee" and concluding that "medical residency . . . is predominantly an academic endeavor." 2010 WL 2262539 at \*5. The court next looked to state law to determine whether a resident had a property interest in continued enrollment, and found no clear authority in support of that position. Finally, the court considered the specific residency contract, which it held did not support a right to continue for a full three years because it stated a single year term. The court did not, however, suggest that there was no right to *any* process for dismissal from a residency program. It, instead, noted that Nigro had

---

[14] In contrast, here Dr. Irani's protected interest is his right not to be dismissed in the middle of a year of residency training, which year is governed by contract.

18

received "a significant amount of process . . . , which resulted in the reversal of the nonrenewal decision." *Id.* at *6.

Other cases on which Dr. Koon relies suggest that *lower* procedural protections are due in the context of academic (rather than disciplinary) dismissals. *See*, *e.g.*, *Horowitz*, 435 U.S. at 87-91 (discussed *supra*). These cases do not suggest that residents are not entitled to *any* protections. *Id.*; *see also* ECF No. 23 at 21 (citing multiple cases finding residents have a sufficient property interest in their residencies to require appropriate process prior to removal). Further, as noted above, the Amended Complaint includes allegations of an employment relationship that may support greater procedural protections. [15]

### 3.    Substantive Due Process

In his ninth cause of action, Dr. Irani alleges Dr. Koon violated his substantive due process rights with respect to his participation in the Program, and related employment, "by acting in an unreasonable, vindictive, malicious, arbitrary, and capricious manner." Am. Compl. ¶¶ 100-06. As Dr Koon notes, to establish a substantive due process claim, Dr. Irani must show that (1) he had a liberty or property interest, (2) Dr. Koon deprived him of such interest, and (3) Dr. Koon's actions fall so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. ECF No. 18-1 at 8 (citing *Sylvia Dev. Corp.*, 48 F.3d at 827). For reasons explained below, the court finds Dr. Irani's allegations insufficient to state a claim for violation of substantive due process rights.

_____

[15]    Even if Dr. Irani fails to establish an employment relationship with USC-SOM, the interrelationship of the Program and his employment may suggest greater process is due than in a typical educational context. The precise nature of the process, by whom it was provided, and whether it implicates due process considerations, cannot be determined on the pleadings.

19

Dr. Irani's allegation that his treatment with respect to remediation and termination was "unreasonable, vindictive, malicious, arbitrary and capricious" is boilerplate and conclusory and, consequently, may be disregarded.  His earlier factual allegations, which are incorporated into this cause of action, may be adequate to allow his equal protection and due process allegations to survive but do not support an inference that Dr. Koon acted in a manner so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.

Dr. Irani has not directed the court to any case allowing a substantive due process claim to proceed under similar circumstances.  In contrast, the Supreme Court has expressed a general reluctance to expand the scope of substantive due process rights.  *See generally Collins v. Harker Heights*, 503 U.S. 115, 125 (1992) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."); *see also District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009) (relying on *Collins* in holding that the "mere novelty of . . . a claim" is reason to doubt that it is supported by substantive due process).

In the context of executive, rather than legislative, action, "the Due Process Clause was intended to prevent government officials 'from abusing [their] power, or employing it as an instrument of oppression.'"  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citations and some internal marks omitted) ("Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'").  Notably, "the cognizable level of executive abuse of power [is] that which shocks the conscience."  *Id.*; *accord Huggins v. Prince George's County, Md.*, 683 F.3d 525, 535 (4th Cir. 2012); *Wolf v. Fauquier Cnty Bd. of Supv.*, 555 F.3d 311, 323 (4th Cir. 2009).

20

Conduct that shocks the conscience refers to "conduct intended to injure in some way unjustified by any governmental interest." *Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317, 321 (4th Cir. 2012) (citation omitted).  In the voluntary employment context, deliberate indifference does not support a substantive due process violation. *Id.*  Rather, an employee plaintiff must show the defendant "intended to harm." *Id.* at 322.  Moreover, the plaintiff must allege facts giving rise to a plausible inference of constitutional arbitrariness, that is, "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 321.  Absent such allegations, the substantive due process doctrine would no longer be limited to the truly egregious cases of governmental abuse to which it is addressed.  Here, Dr. Irani's boilerplate and conclusory allegations that Dr. Koon acted "in an unreasonable, vindictive, malicious, arbitrary, and capricious manner" are insufficient to state a substantive due process claim.[16]  The court, therefore, grants Dr. Koon's motion for judgment on the pleadings as to this claim.

### 4.    First Amendment Retaliation

**Allegations.**  In his tenth cause of action, Dr. Irani alleges Dr. Koon deprived him of his right to free speech by terminating him from the residency program in retaliation for reporting two matters of public concern.  Am. Compl. ¶¶ 107-17.  Specifically, Dr. Irani alleges that he reported violations of the duty hour limitations and inadequate supervision of residents.  He maintains these were matters of public concern because they impact not only the health and well-being of residents but also patient care and learning.

---

[16]  For reasons explained in other sections, Dr. Irani's more specific factual allegations support claims for violation of his rights to equal protection, procedural due process, and freedom of speech.  To the extent the same factual allegations are incorporated into this claim, the resulting "substantive due process" claim would be duplicative of other, more clearly defined, claims.

21

**Dr. Koon's Arguments.** Dr. Koon notes that, to succeed on this cause of action, Dr. Irani must establish that (1) his speech was protected, (2) Dr. Koon's alleged retaliatory action adversely affected Dr. Irani's constitutionally protected speech; and (3) a causal relationship exists between Dr. Irani's speech and Dr. Koon's retaliatory action. ECF No. 18-1 at 10 (citing, *e.g.*, *Bretemps v. Town of Brentwood, Md.*, 9 F. Supp. 3d 571 (D. Md. 2014) (citing *Huang v. Board of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990) and *ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993)).[17]  Dr. Koon argues that Dr. Irani cannot satisfy the first element because he was complaining about factors affecting only his own circumstances.  Dr. Koon also argues that Dr. Irani cannot satisfy the third element's "rigorous" causation standard because he received a memorandum listing seven deficiencies.

Finally, Dr. Koon argues that the right at issue was not clearly established.  In support of this argument, he relies on an unpublished district court decision. ECF No. 18-1 at 11 (citing *Syed v. Board of Trustees of Southern Illinois Univ.*, 2010 WL 3283008 * 5-6 (C.D. Ill. 2010) (decided on motion to dismiss)).  In *Syed*, the court dismissed a claim for First Amendment retaliation on qualified immunity grounds because there was no clear guidance on whether a resident who was also paid to provide patient services should be treated as an employee (with fewer free speech rights) or a student (with greater free speech rights) with respect to the particular speech at issue.

---

[17]  *Bretemps* involved claims by a citizen of a small town who was targeted for hostile treatment by town officials after he opposed creation of a town police force.  *Huang* involved claims by a university professor challenging a decision to transfer him to a different department.  *Wicomico County* involved claims by a paralegal against county prison officials for limitations placed on her meetings with inmates.  All three decisions addressed motions for summary judgment and reached different conclusions based on case-specific evidence.

That speech at issue in *Syed* consisted of placing a note regarding Syed's observations of a patient's care in the patient's medical file.[18]

**Discussion.** Dr. Irani's complaint is not so narrowly worded as Dr. Koon suggests. It, instead, alleges that he complained about issues arguably affecting patient safety (residents working excessive hours and without adequate supervision). The court finds this allegation sufficient to support the first element of the First Amendment Claim because the complaints go beyond Dr. Irani's personal interests.[19]

The court also finds the allegations sufficient to support a plausible inference of causation. Dr. Koon's stated reasons for placing Dr. Irani in remediation (as well as the stated reasons for Dr. Irani's later termination) may ultimately prove determinative if it is shown that they were the true reasons for these adverse actions. Dr. Irani's allegations, however, support an inference that the reasons he was given for the adverse actions were not the true reasons for those actions.

As to the second qualified immunity question, whether the rights in question were clearly established, the court notes that the Fourth Circuit has frequently allowed First Amendment retaliation claims brought by employees to proceed (at least beyond a motion for judgment on the pleadings) despite claims of qualified immunity. *See, e.g.*, *Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292 (4th Cir. 2006) (affirming denial of motion to dismiss public employee's First Amendment retaliation claim); *McVey*, 157 F.3d at 279. In a very recent decision, a majority of

---

[18]  The *Syed* court appears to have concluded that the allegations would not support a First Amendment retaliation claim if analyzed under the law applicable to employees but might have supported a claim if analyzed under the law applicable to students.

[19]  The court notes that the analysis of this claim may vary depending on whether the complaints are deemed those of an employee or those of a student. As noted in *Syed*, the latter may receive greater protections.

the panel held that such rights were clearly established in the context of police officers complaining about matters that included but went beyond their personal concerns. *Hunter v. Town of Mocksville, N.C.*, C.A. No. 14-1081 (4th Cir. June 15, 2015) (affirming denial of summary judgment on First Amendment retaliation claim where police officers were fired after complaining about superiors' conduct, which included but was not limited to matters affecting the complaining officers). While these cases do not address the rights of students in general or residents in particular, *Syed* (on which Dr. Koon relies) suggests that the rights of students would be greater than those of an employee. *See supra* nn. 18, 19. Under these circumstances, the court believes the issue close enough to warrant deferral as to the second qualified immunity inquiry until after the first question is at least addressed, if not resolved, on summary judgment.

**Conclusion as to Motion for Judgment on the Pleadings.** For the reasons set forth above, the court grants the motion for judgment on the pleadings to the extent it seeks to dismiss the Section 1983 claims as to Dr. Walsh, and to the extent it seeks to dismiss Dr. Irani's tenth cause of action for violation of his right to substantive due process. As to these rulings, the court declines to adopt either the rationale or recommendation of the Report. The court adopts the recommendation that it deny the motion for judgment on the pleadings in other respects, based on the rationale stated above. The partial denial of the motion for judgment on the pleadings is without prejudice to renewal of the qualified immunity arguments on motion for summary judgment after the close of discovery.

## IV.    Motion to Strike

The Report recommends that Dr. Irani's motion to strike exhibits filed with Drs. Koon and Walsh's reply in support of judgment on the pleadings be denied or dismissed as moot in light of the recommended denial of the underlying motion. No objection has been made to this

recommendation.  Finding no clear error, and having resolved the motion for judgment on the pleadings without considering these exhibits, the court adopts the recommendation and denies the motion to strike as moot.

## CONCLUSION

For the reasons set forth above, the court adopts the Report's recommendation and underlying rationale as to USC-SOM's motion for summary judgment (ECF No. 31) and Dr. Koon's motion for partial summary judgment (ECF No. 22), both of which are denied without prejudice to renewal after the close of discovery.  The court adopts in part and declines to adopt in part the Report's recommendation as to Drs. Koon and Walsh's motion for judgment on the pleadings (ECF No. 18).  For the reasons set forth above, the court grants the motion for judgment on the pleadings to the extent it seeks dismissal of Dr. Irani's Section 1983 claim for substantive due process violations (ninth cause of action) and all Section 1983 claims (eighth through eleventh causes of action) to the extent pursued against Dr. Walsh.  In other respects, the motion is denied based on the rationale set forth in this order without prejudice to renewal after the close of discovery.

IT IS SO ORDERED.


s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
June 23, 2015