IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Afraaz R. Irani, M.D., | ) | |
| | ) | C.A. No. 3:14-cv-3577-CMC-KDW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM IN SUPPORT** |
| Palmetto Health; University of South Carolina | ) | **OF DEFENDANT UNIVERSITY'S** |
| School of Medicine; David E. Koon, Jr., M.D., in | ) | **MOTION FOR SUMMARY** |
| his individual capacity; and John J. Walsh, IV, | ) | **JUDGMENT** |
| M.D., in his individual capacity, | ) | **[December 2015]** |
| | ) | |
| Defendants. | ) | |
| | ) | |

In his Amended Complaint, Plaintiff Afraaz Irani ("Irani"), a former orthopaedic surgery resident of the Palmetto Health Orthopaedic Surgery Residency Program, has asserted five causes of action against Defendant University of South Carolina School of Medicine ("USC-SOM"): (1) "Title VII - Disparate Treatment and Hostile Work Environment" (first cause of action); (2) "Retaliation - Title VII and 42 U.S.C. §1981" (third cause of action); (3) "Breach of Contract" (fourth cause of action); (4) "Breach of Contract-Intended Third-Party Beneficiary of Accreditation Agreement" (fifth cause of action); and (5) "Wrongful Discharge in Violation of Public Policy" (sixth cause of action). As set forth herein, USC-SOM is an academic institution. USC-SOM never employed Irani, never had a contract with Irani, and never had a contract with ACGME to which Irani can claim to have been an intended third-party beneficiary. Discovery has concluded, and USC-SOM is entitled to summary judgment.[1]

---

[1]Defendant USC-SOM filed a similar summary judgment motion in January 2015, which the Court denied without prejudice pending further discovery. Discovery has confirmed the facts Defendants presented to the Court previously.

**STATEMENT OF FACTS**

In his Amended Complaint, Irani alleges he was employed by Palmetto Health *and USC-SOM* pursuant to a Residency Agreement of Appointment. [Amended Complaint ¶ 53] In reality, Irani's Residency Agreement of Appointment was with Palmetto Health, and clearly shows he was employed by Palmetto Health, not USC-SOM. [*See* Thomas Affidavit, Exhibits H and I (Irani's Residency Agreements with Palmetto Health)] USC-SOM never employed Irani and never had a contract with Irani. [Taylor Affidavit; Koon Affidavit ¶¶ 4-6.; Walsh Affidavit ¶¶ 4, 5 and 7]

Further, USC-SOM was not a party to any contract with the Accreditation Council for Graduate Medical Education ("ACGME") to which Dr. Irani may claim to have been a third-party beneficiary. [Taylor Affidavit]

The factual recitation of events that led to Irani's termination from the residency program are set forth in detail in the affidavits of Defendants David Koon and John Walsh. Supporting documentation referenced in those affidavits is attached to Dr. Koon's affidavit and also the affidavit of Kathryn Thomas. Defendant requests that the Court read the affidavits of Dr. Koon and Dr. Walsh now.

**ARGUMENT**

**A.    Irani cannot maintain employment discrimination claims against USC-SOM.**

In the first and third causes of action of his Amended Complaint, Irani asserts claims against USC-SOM under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII"), and a retaliatory termination claim under 42 U.S.C. §1981.[2] The Title VII and §1981 claims are based on allegations that USC-SOM *employed* Irani, and that

---

[2]The Amended Complaint's second cause of action alleging § 1981 race discrimination is asserted solely against Defendant Palmetto Health.

USC-SOM *terminated his employment*.  Irani cannot maintain such claims against USC-SOM

because, *inter alia*, USC-SOM never employed Irani.  [Taylor Affidavit; Koon Affidavit ¶¶ 4-6;

Walsh Affidavit ¶¶ 4, 5 7; Thomas Affidavit Exs. H and I (Irani's Resident Agreements with

Palmetto Health)]

### 1.    Irani cannot maintain a Title VII claim.

The Court lacks jurisdiction to entertain Irani's Title VII claims.  First, USC-SOM never

employed Dr. Irani.  [*Id*.]  "A Defendant must be an employer within the definition of Title VII

as a jurisdictional prerequisite to the maintenance of a Title VII action."  Walters v. Orangeburg

County, 2000 WL 33417008, *2 (D.S.C. Aug. 1, 2001) (J. Currie); *see also* Poloschan v. Simon,

2014 WL 1713562, *7 (D.S.C. Apr. 29, 2014) (J. Blatt), and 42 U.S.C. § 2000e-2 and § 2000e-3

("It shall be an unlawful employment practice for an employer" to discriminate or retaliate).

Moreover, to maintain a Title VII claim against one's employer, a South Carolina

plaintiff must have filed a timely administrative charge of discrimination against that employer

within 300 days of an alleged adverse employment action.  42 U.S.C. § 2000e-5(e); Forehand v.

Westinghouse Savannah River Co., 187 F.3d 629, 1999 WL 511045, *2  (4th Cir. July 20, 1999)

(unpublished table decision).  Irani did not timely file a charge of discrimination *against any*

*Defendant* before filing this lawsuit.  Pursuant to the Freedom of Information Act, the

undersigned law firm has obtained a copy of the EEOC charge file on the only charge of

discrimination filed by Irani.  [See Thomas Affidavit, Ex. K]  The EEOC's charge file shows

Irani filed a charge of discrimination against Palmetto Health more than 300 days after

termination of Irani's residency (i.e., more than 300 days after April 10, 2012), and the EEOC

accordingly dismissed the charge as untimely.  [Id.]  Thus, Irani's Title VII claim, even against

his employer, Palmetto Health, is untimely.  Irani's assertion of a Title VII claim in this lawsuit

is wholly unsupportable.

### 2.    Irani cannot maintain a §1981 retaliation claim against USC-SOM.

In the Amended Complaint's third cause of action, Irani asserts that USC-SOM, with whom he allegedly had an employment contract, took adverse employment action against him. An employee who contends his employer retaliated against him for complaining of race discrimination may sue his employer under §1981. TRI, Inc. v. Boise Cascade Office Products, Inc., 2001 WL 1230647, *7 (D.Minn. Oct. 15, 2001) ("a retaliation claim under § 1981 will lie where a former employer takes an 'adverse employment action' against its former employee (e.g., failing to rehire him or failing to provide references).") (citations omitted).

The Amended Complaint asserts that USC-SOM, as Irani's employer or former employer, took the following adverse employment actions against him:  (1) unwarranted disciplinary action, (2) termination of his employment, and (3) submission of false and defamatory information about Irani to the California Medical Board.  [Am. Complaint ¶ 48]  As established, USC-SOM never employed Irani and never had a contract with him.  [Taylor Affidavit; Koon Affidavit ¶¶ 4-6; Walsh Affidavit ¶¶ 4, 5, and 7]  Without a contractual employment relationship with USC-SOM, Irani cannot establish a § 1981 claim against USC-SOM.

Moreover, USC-SOM did not take any adverse employment action against Irani as alleged in ¶48 of the Amended Complaint.  USC-SOM's agents and employees could recommend that Palmetto Health take action against residents, but Palmetto Health, as the Sponsoring Institution, had the sole authority to approve academic remediation and to terminate its residents.   [Koon Affidavit ¶¶ 4-6; Walsh Affidavit ¶¶ 4, 5 7; Thomas Affidavit Exs. H and I (Irani's Residency Agreements with Palmetto Health), Ex. L (Affiliation Agreement), and Exs. M through Q (Program Letters of Agreement between Palmetto Health Residency Program and Participating Program Sites)]  Further, to the extent Irani complains about the Program

4

Director's submissions to the California Medical Board, Irani and his attorney authorized and

demanded that action of the Palmetto Health Residency Program.  [Koon Affidavit ¶¶ 44-47 and

Exs. C, D, E, and F; Thomas Affidavit Exs. G and J]

When USC-SOM filed its initial summary judgment motion earlier in this case, Irani

argued he might somehow show an employment relationship between Irani and USC-SOM.[3]

The facts remain that Irani entered into Resident Agreements of Appointment *with Palmetto*

*Health*, that *Palmetto Health* provided all of Dr. Irani's employment compensation and benefits,

and that Irani has never been employed by USC-SOM.   USC-SOM is an educational affiliate of

Palmetto Health, the Residency Program's Sponsoring Institution, and in that role provides

faculty involvement in the education of residents.  The faculty have no authority to bind USC-

SOM contractually, and no authority to employ residents.  While the faculty may recommend

academic action to Palmetto Health, USC-SOM does not hire, fire, or employ residents.  [Taylor

Affidavit; Koon Affidavit ¶¶ 4-6; Walsh Affidavit ¶¶ 4, 5, and 7; Thomas Affidavit Exs. H and I

(Irani's Residency Agreements with Palmetto Health), Ex. L (Affiliation Agreement), and Exs.

M through Q (Program Letters of Agreement between Palmetto Health Residency Program and

Participating Program Sites)]

Even if Irani could somehow convince the Court of the possibility that Irani was

employed by USC-SOM and the State of South Carolina without their authority or knowledge,

---

[3]Irani argued he might somehow be able to establish that Palmetto Health and USC-SOM "jointly" employed Irani.  This Court in Yee v. Palmetto Health, USC-SOM, et al., C/A 3:02-0837 (Sept. 15, 2003)(ECF # 67), agreed that USC-SOM was not a resident's employer, and that Palmetto Health was the only properly named defendant to the resident's breach of contract and Title VII claims.  Accordingly the Court granted summary judgment to USC-SOM on all claims. Similarly, in Loewen v. Grand Rapids Medical Education Partners, 2012 WL 1190145 (W.D. Mich. Apr. 9, 2012), the district court found that a medical resident was employed by the residency program's Sponsoring Institution and not its educational affiliate, Michigan State University.

Irani cannot establish the essential elements of a §1981 retaliation claim.  "The opinions of the

U.S. Court of Appeals for the Fourth Circuit in Dowe v. Total Action Against Poverty, 145 F.3d

653 (4th Cir.1998), and Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir.2001), clearly

establish that the Title VII and Section 1981 analysis for retaliation are the same."  Wang v.

Metropolitan Life Ins. Co., 334 F.Supp.2d 853, 869 n.14 (D.Md. 2004).  "To prove a prima facie

case of retaliation, Plaintiff must show that (1) [he] engaged in a legally-protected activity; (2) an

adverse employment action was taken against [him]; and (3) there was a causal connection

between the first two elements."  *Id*. at 869.  If the plaintiff establishes a *prima facie* case of

retaliation, the burden shifts to the employer to articulate a legitimate non-discriminatory reason

for the termination.  At that point, the plaintiff has the burden to establish that the articulated

reasons were not the employer's true reasons, but were a pretext for unlawful retaliation.  Heiko

v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 258 (4th Cir. 2006).  This "final pretext inquiry

merges with the ultimate burden of persuading the court that the plaintiff has been the victim of

intentional discrimination, which at all times remains with the plaintiff."  Merritt v. Old

Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir.2010) (internal quotation marks and

alteration omitted).  The plaintiff must prove that his participation in a protected activity was the

but-for cause of her termination, Univ. of Texas Sw. Med. Ctr. v. Nassar, __ U.S. __, 133 S.Ct.

2517, 2528 (2013), and he must prove "that the unlawful retaliation would not have occurred in

the absence of the alleged wrongful action or actions of the employer," *id.* 133 S.Ct. at 2533.

*See also* Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 252 (4th Cir.

2015)("[T]he McDonnell Douglas framework has long demanded proof at the pretext stage that

retaliation was a but-for cause of a challenged adverse employment action.").

   Irani cannot establish that he engaged in activity protected by §1981 (*i.e*., a complaint of

race discrimination) known to USC-SOM.  Nor can he establish a causal relationship between

any race discrimination complaint and an adverse employment action.  Nor can Irani establish that Defendants' collective reasons for their actions are a pretext for retaliation against Irani for complaining about race discrimination and that, but for Irani's alleged complaint of race discrimination, he would not have been subjected to academic remediation, termination from the residency program, and submissions to the Medical Board of California.

Defendants have demonstrated substantial legitimate, nondiscriminatory reasons for their actions.  [Koon and Walsh Affidavits, passim]  Clearly, the record is replete with legitimate, nondiscriminatory concerns about Irani's performance, many of which precede any alleged protected activity by Irani.  Irani cannot meet his burden of showing that the collective concerns of faculty, other physicians, senior residents, and hospital staff are a pretext for unlawful retaliation and that, but for Irani's alleged complaint of race discrimination, the actions of which he complains would not have occurred.

**B.**     **Irani cannot establish a breach of contract claim against USC-SOM.**

In the Amended Complaint's fourth cause of action, Irani argues USC-SOM breached his Resident Agreement of Appointment.  [Am. Complaint ¶¶ 53-57]  To maintain a breach of contract claim against USC-SOM, Irani must demonstrate that:  (1) he and USC-SOM entered into a binding contract; (2) USC-SOM breached the contract; and (3) Irani suffered damages resulting from USC-SOM's alleged breach.  Taylor v. Cummins Atlantic, Inc., 852 F. Supp. 1279, 1286 (D.S.C. 1994).

Irani cannot maintain a breach of contract claim against USC-SOM because USC-SOM was not a party to Irani's Resident Agreement of Appointment.  Rather, the Resident Agreement of Appointment is a contract between Irani and Palmetto Health.  [See Thomas Affidavit Exs. H and I]  "It is axiomatic that in order to be held liable for breach of contract, Defendant must be a party to that contract."  Center for Legal Reform v. Rakowsky, 2014 WL 6389709, *5 (D.S.C.

Nov. 14, 2014).

In Yee v. Palmetto Health, USC-SOM, et al., C/A 3:02-0837 (ECF # 67), this Court addressed a similar agreement between a resident and Palmetto Health and determined that USC-SOM was not a party to the resident agreement and was entitled to summary judgment on all claims.  USC-SOM is entitled to summary judgment in this case as well.

**C.**      **Irani cannot establish a claim of "Breach of Contract-Intended Third Party Beneficiary of Accreditation Agreement.**

In the fifth cause of action of his Amended Complaint, Irani asserts he was an intended third-party beneficiary of an alleged Accreditation Agreement between USC-SOM and the ACGME.  [Am. Complaint ¶¶ 63-64]  Irani alleges USC-SOM breached its alleged contract with ACGME, and such breach harmed Irani.  [Id. ¶¶ 65-66]

"[I]f a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person."  Bob Hammond Const. Co., Inc. v. Banks Const. Co., 312 S.C. 422, 424, 440 S.E.2d 890, 891 (Ct. App. 1994) (citations omitted).  "A third-party beneficiary is a party that the contracting parties intend to directly benefit."  Helms Realty, Inc. v. Gibson-Wall Co., 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005) *citing* Touchberry v. City of Florence, 295 S.C. 47, 48-49, 367 S.E.2d 149, 150 (1988).

Irani cannot maintain a claim based on an alleged contract between USC-SOM and the ACGME because there is no such contract.  [Taylor Affidavit]  Moreover, assuming there was an Accreditation Agreement between the Residency Program and the ACGME, Irani cannot establish that it was breached.  The Residency Program has at all times maintained its ACGME accreditation.  [Koon Affidavit ¶ 36; Walsh Affidavit ¶ 33]  Moreover, Irani presented a plethora of allegations to the ACGME after his termination, including those detailed in his Amended

Complaint, and the ACGME dismissed them as without merit.  [Koon Affidavit ¶ 36; Walsh

Affidavit ¶ 33; Thomas Affidavit Ex. S]  Accordingly, Irani cannot establish any of the essential

elements of such a claim.[4]

**D.        Irani cannot establish a claim of wrongful discharge in violation of public policy.**

The Amended Complaint's sixth cause of action alleges USC-SOM wrongfully

terminated Irani's employment.  Irani appears to assert a claim based on the authority of

Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219,225, 337 S.E.2d 213, 216 (S.C. 1985),

and its progeny.  In Ludwick, the supreme court of South Carolina recognized a cause of action

*against one's employer* for wrongful termination *of at-will employment* in violation of public

policy.

Irani cannot maintain a Ludwick claim against USC-SOM because USC-SOM never

employed Irani.  [Taylor Affidavit; Koon Affidavit ¶¶ 4-6; Walsh Affidavit ¶¶ 4, 5, and 7]

Moreover, Irani's *employment* with the Residency Program was subject to an *employment*

*contract* with Palmetto Health.  [Thomas Affidavit Exs. H and I]  Indeed, paragraph 69 of the

---

[4]Moreover, breach of contract claims based on ACGME standards – and the standards of other accrediting bodies – have been roundly rejected by courts nationwide, with good reason. ACGME standards and requirements:

> are akin to regulations established by an administrative body, rather than a contract governing a relationship between two entities. If [the hospital] fails to substantially comply with ACGME's requirements, ACGME can revoke its accreditation; that would not be a "breach" of any "contract" by [the hospital], but rather a decision by ACGME, as a regulatory institution, that [the hospital] is no longer entitled to accreditation.

Castrillon v. St. Vincent Hosp. and Health Care Center, Inc., 2014 WL 4908458, *13 (S.D. Ind. 2014), *citing* Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools & Colleges, 44 F.3d 447, 449 (7th Cir. 1994) ("[A]ccrediting bodies are not engaged in commercial transactions for which state-law contract principles are natural matches. The 'contract' the School wants to enforce is not a bargained-for exchange but a set of rules developed by an entity with many of the attributes of an administrative agency.").

Amended Complaint's fifth cause of action expressly incorporates that pleading's prior allegations that Irani's Residency Agreement of Appointment constitutes an employment contract that required cause for his termination.  See Am. Complaint ¶ 57.a. ("Palmetto Health and USC-SOM breached their obligations under the Contract . . . by terminating Plaintiff's employment prior to the end of the term without sufficient "cause" as defined by the Agreement as necessary to justify termination.")  Thus, Irani cannot maintain a claim of wrongful discharge in violation of public policy.  *See* Cunningham v. Anderson County, __ S.E.2d ___, 2015 WL 5132722 (S.C. 2015) (rehearing denied Dec. 3, 2015).  Moreover, particularly in light of substantial documentation of concerns about Irani's performance as a resident, Irani cannot establish the remaining essential elements of such a claim.

### CONCLUSION

For the foregoing reasons, USC-SOM is entitled to summary judgment and respectfully requests that summary judgment be granted in its favor on all claims.

s/ Kathryn Thomas
Kathryn Thomas (DCID No. 5134)
Fred A. Williams (DCID No. 9934)
GIGNILLIAT, SAVITZ & BETTIS, LLP
900 Elmwood Avenue, Suite 100
Columbia, South Carolina  29201
Ph: (803) 799-9311 / Fax:  (803) 254-6951
kthomas@gsblaw.net; fwilliams@gsblaw.net

ATTORNEYS FOR DEFENDANT UNIVERSITY OF
SOUTH CAROLINA SCHOOL OF MEDICINE

December 14, 2015