IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Afraaz R. Irani, M.D., | ) | |
| | ) | C.A. No. 3:14-cv-3577-CMC-KDW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **AFFIDAVIT OF** |
| Palmetto Health; University of South Carolina | ) | **KATHRYN THOMAS** |
| School of Medicine; David E. Koon, Jr., M.D., in | ) | [December 2015] |
| his individual capacity; and John J. Walsh, IV, | ) | |
| M.D., in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Kathryn Thomas, whose signature appears below, testifies under oath as follows:

1.      I am counsel of record in this case.  I have personal knowledge and am competent to testify as to the matters stated in this affidavit.  I am a custodian of records maintained by my law firm in the course of this litigation.

2.      Attached hereto as Exhibit G is a document provided to me by the Medical Board of California that constitutes Dr. Afraaz Irani's authorization for Defendants and others to release information and documents to that Board.

3.      Attached hereto as Exhibits H and I are Resident Agreements of Appointment produced by Defendant Palmetto Health in the course of this litigation.

4.      Attached hereto as Exhibit J is an email exchange with which Dr. Koon and I were involved on June 25 and 26, 2013, when Dr. Irani and his attorney were threatening litigation against these Defendants.   I have redacted portions of the email exchange that are attorney-client privileged.

5.      After this lawsuit was filed, my law firm submitted a Freedom of Information Act

request to the EEOC for a copy of its charge file relating Dr. Afraaz Irani's charge of discrimination against Palmetto Health. Attached hereto as Exhibit K are documents we received in response to that request and that we produced in the course of this litigation.

6.    Attached hereto as Exhibit L is an Affiliation Agreement for Medical Education, Research and Other Related Activities that Defendant Palmetto Health produced in the course of this litigation.

7.    Attached hereto as Exhibits M, N, O, P, and Q are Program Letters of Agreement between the Palmetto Health Graduate Medical Education Program(s) and the Participating Sites at which Palmetto Health's orthopaedic surgery residents rotated during the time Dr. Irani was a resident in the program. These documents are not bates-labeled but they were produced by Defendants in the course of this litigation.

8.    Attached hereto as Exhibit R are email communications between Dr. Irani, Dr. John Eady, and their attorney that were produced by Plaintiff in the course of this litigation.

9.    Attached hereto as Exhibit S are documented communications between the ACGME and Defendants that were produced by Defendants in the course of this litigation.

10.    Attached hereto as Exhibit T is a chronological set of documents exchanged by the parties in the course of this litigation that I believe may be relevant to events and issues to be addressed by summary judgment motions.

I testify under penalty of perjury this 14th day of December, 2015, that the foregoing statements are true and correct.

s/ Kathryn Thomas

# Thomas Affidavit Exhibit G

Exhibit G

## PHOTOGRAPH



Notice: All items in this application are mandatory. <u>Failure to provide any of the requested information will delay the processing of your application.</u> The information provided will be used to determine your qualifications for licensing per Section 2080 of the California Business and Professions Code, which authorizes the collection of this information. The information on your application may be transferred to other medical licensing authorities, the Federation of State Medical Boards, or other governmental law enforcement agencies. You have the right to review your application subject to the provisions of the Information Practices Act. The Chief of the Licensing Program is the custodian of records.

## DECLARATION

The applicant, _AFRAAZ RUSTOM IRANI_                                                , Personal Information

Please print full name (First, Middle, Last)                          Date of Birth (mm/dd/yyyy)

being first duly sworn upon his/her oath deposes and says: that I am the person herein named subscribing to this application; that I have read the complete application; know the full content thereof, and declare under penalty of perjury, that all of the information contained herein and evidence or other credentials submitted herewith are true and correct; that I am the lawful holder of the degree of Doctor of Medicine as prescribed by this application, that the same was procured in the regular course of instruction and examination, and that it, together with all the credentials submitted, were procured without fraud or misrepresentation or any mistake of which I am aware and that I am the lawful holder thereof. Further, I hereby authorize all hospitals, institutions or organizations, my references, personal physicians, employers (past, present and future), or business and professional associates (past, present, and future), and all government agencies (local, state, federal, or foreign) to release to the Medical Board of California or its successors any information, files or records, including medical records, educational records, and records of psychiatric treatment and treatment for drug, alcohol and/or substance abuse or dependency, requested by that Board in connection with this application; or any further or future investigation by that Board necessary to determine any medical competence, professional conduct, or physical or mental ability to safely engage in the practice of medicine. I further authorize the Medical Board of California or its successors to release, in any investigation or proceeding, to the organizations, individuals or groups listed above any information which is material to this application or any subsequent licensure.

*I UNDERSTAND THAT ANY OMISSION, FALSIFICATION OR MISREPRESENTATION OF ANY ITEM OR RESPONSE ON THIS APPLICATION OR ANY ATTACHMENT HERETO IS A SUFFICIENT BASIS FOR DENYING OR REVOKING A LICENSE.*

SIGNATURE: _____    DATE: _5/23/13_

## NOTARY SECTION

SIGNATURE OF APPLICANT: _____

(DO NOT SIGN EXCEPT IN THE PRESENCE OF NOTARY— Please sign full name)

State of _California_

County of _Santa Clara_

Subscribed and sworn to (or affirmed) before me on this _28th_ day of _May_, 20_13_,

by _Afraaz R. Irani_ _____ proved to me on the basis of satisfactory evidence

(Print applicant's name)

to be the person who appeared before me.

_____
SIGNATURE OF NOTARY PUBLIC

**NOTARY SEAL**

PEARL CASTILLO
COMM. # 1962141
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
MY COMM. EXP. DEC. 27, 2015

L1F

07A-100 (Rev. 10/2012)

# Thomas Affidavit Exhibit H



## PALMETTO HEALTH

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | |
| ) | **RESIDENT AGREEMENT OF APPOINTMENT** |
| COUNTY OF RICHLAND ) | |

This agreement is entered into this **1st** day of **July, 2010** between Palmetto Health or "Hospital", a multiple teaching hospital/health system, located in Columbia, South Carolina (hereinafter "Palmetto Health") and **AFRAAZ R IRANI MD** (hereinafter "House Staff Officer" or "Resident").

### 1. APPOINTMENT

The House Staff Officer is hereby employed by Palmetto Health as a PGY **1 Postgraduate** in the Department of Education for **Orthopaedics**. In this capacity, the House Staff Officer will participate in a graduate medical education program which includes, but is not limited to, classroom and lecture sessions, patient care responsibilities, and other activities as determined by House Staff Officer's specific graduate medical education program.

The House Staff Officer agrees to perform all duties and services in a competent, professional, and effective manner. The House Staff Officer agrees to abide by the policies, procedures, rules and regulations of the Hospital and its Department of Medical Education, as these policies, procedures, rules and regulations currently exist and may from time to time be amended. Specifically, the House Staff Officer agrees to abide by Medical Record provisions of the Palmetto Health Hospitals' Medical and Dental Staff Bylaws, Rules and Regulations, as they currently exist and may from time to time be amended.

The House Staff Officer agrees to abide by the Statement of Resident Responsibilities. (see below)

### 2. RESIDENT RESPONSIBILITIES

The goal of the residency program is to provide the House Staff Officer with an extensive experience in the art and science of medicine in order to achieve excellence in the diagnosis, care and treatment of patients. To achieve this goal, the House Staff Officer agrees to do the following:

1.  Under the direction of the Program Director (or designee) and supervision by the Attending physician, assume responsibilities for the safe, effective and compassionate care of patients, consistent with the resident's level of education and experience.

2.  Participate fully in the educational and scholarly activities of the residency program and, as required, assume responsibility for teaching and supervising other residents and medical students.

3.  Develop and participate in a personal program of self-study and professional growth with guidance from the teaching staff.

4.  Participate in institutional programs, committees, councils, and activities involving the medical staff as assigned by the program director, and adhere to the established policies, procedures and practices (to include standards of behavior) of the sponsoring institution and its affiliated institutions.

5.  Participate in the evaluation of the program and its faculty.

6.  Develop an understanding of ethical, socioeconomic, and medical legal issues that affect the practice of medicine.

7.  Participate in educational experiences required to achieve competence in patient care, medical knowledge, practice-based learning improvement, interpersonal and communication skills, professionalism, and systems-based practice.

8.  Keep charts, records, and reports up-to-date and signed at all times.

9.  Adhere to ACGME institutional and program requirements.

## 3. FACULTY RESPONSIBILITIES AND SUPERVISION

Faculty is responsible for and personally involved in care provided to individual patients. Faculty direct the care of the patient and provide the appropriate level of supervision based on the nature of the patient's condition, the likelihood of major changes in the management plan, the complexity of care, and the experience and judgment of the resident being supervised. (See Supervision of Resident Physician Policy)

## 4. DURATION OF APPOINTMENT

The term of this Agreement is for one (1) year beginning **July 1, 2010** and ending **June 30, 2011.**

## 5. FINANCIAL SUPPORT

The House Staff Officer shall receive as compensation for the term of this Agreement an amount equal to **$48,883.80.**

## 6. CONDITIONS FOR PROMOTION/REAPPOINTMENT OF HOUSE STAFF OFFICERS

House Staff Officers are promoted/reappointed on the basis of acceptable periodic competency-based evaluations, which may be supplemented by written or oral clinical and behavioral competency examinations or other evaluation methods; by recommendation of their department's Promotion Committee; and by final approval by the Graduate Medical Education Committee. (See Promotion/Reappointment policy)

## 7. GRIEVANCE PROCEDURES AND DUE PROCESS

Any House Staff Officer who disputes any action of any party shall have the right to appeal said action through the Graduate Medical Education Committee's due process policies, as from time to time amended. Violations of the House Staff Officer agreement may also be appealed in the same manner. Each House Staff Office will receive a copy of said policies at the time training begins and also at the time any changes or amendments are made. The Residents' Grievance Procedures and Due Process policy will be used for such disputes.

## 8. PROFESSIONAL LIABILITY INSURANCE

Palmetto Health has purchased "claims made" professional liability protection from Continental Casualty Insurance Company to protect all employees including House Staff Officers. This protection was purchased through Palmetto Healthcare Liability Insurance Program (PHLIP) that is a captive insurance program. The limit of professional liability afforded is $1,200,000 per claim that involves an employed House Staff Officer. This coverage is subject to an aggregate limit of $18,000,000. All aggregate liability limits are shared among the participating members of PHLIP. There are multiple hospital and hospital system members of PHLIP. (Coverage's are subject to periodic change by the PHLIP Board of Directors.)

Palmetto Health has also purchased high excess professional liability protection through PHLIP. The high excess limit is $20,000,000 per claim, except where it is found that the acts of the insured individual were willful, reckless, or grossly negligent, in which case the high excess per claim limit is reduced to $3,000,000. The high excess policy has a $30,000,000 annual aggregate limit which is also shared by all members of PHLIP. (Coverage's are subject to periodic change as determined by the PHLIP Board of Directors.)

It is the responsibility of Palmetto Health and not individual House Staff Officers to purchase the extended reporting period (ERP) endorsement or "tail" coverage. Employed House Staff Officers are scheduled on the Palmetto Health provider list. This provider list reflects the effective date and, as applicable, the termination or graduation date of each provider. Professional liability protection is afforded to each House Staff Officer for claims that occur within the effective date of coverage and until the graduation or termination effective date. Professional liability insurance protection is provided to each House Staff Officer within the scope of the House Staff Officer's educational program duties and does not extend to any activities outside the scope of the educational program.

This professional liability insurance will only provide coverage for the House Staff Officer in the performance of duties and obligations of this Agreement. IT IS THE SOLE RESPONSIBILITY OF THE HOUSE STAFF OFFICER TO OBTAIN AND PROVIDE FOR PROFESSIONAL AND GENERAL LIABILITY INSURANCE COVERAGE FOR ALL EMPLOYMENT OR PROFESSIONAL ACTIVITES (ie, "moonlighting") ENGAGED IN BY THE HOUSE STAFF OFFICER WHICH ARE NOT AN OFFICIAL PART OF THE HOUSE STAFF OFFICER'S TRAINING PROGRAM.

## 9. BENEFITS

Palmetto Health will provide the House Staff Officer the following benefits:

a. **Health Insurance:** Coverage for the House Staff Officer and members of his/her immediate family, (i.e., spouse and children), is available and is effective on the first day of the resident's term of agreement. There is no premium cost to House Staff Officers for individual coverage; family coverage is available, but requires premium payment by the House Staff Officer. Plans also include a prescription drug benefit. Charges for services not covered under the basic plan (or for House Staff Officer failure to complete the health screening or other enrollment requirements by designated dates) are the responsibility of the House Staff Officer.

b. **Dental Insurance:** The House Staff Officer is eligible to participate in Palmetto Health's low option dental plan provided at no charge for the House Staff Officer's individual coverage. Coverage is available for members of the House Staff Officer's immediate family, (i.e., spouse and children), but requires premium payment by the House Staff Officer. The House Staff Officer may elect to participate in the Hospital's high option dental plan with the cost of the premium difference paid by the House Staff Officer.

c. **Disability Insurance:** The House Staff Officer is eligible to participate in Palmetto Health's Long Term Disability insurance plan at no premium cost to the House Staff Officer. LTD eligibility begins 180 days after start date.

d. **Life Insurance:** The House Staff Officer is eligible to participate in Palmetto Health's life insurance plan, with one time salary life insurance coverage provided at no cost to the House Staff Officer. One or two times salary in additional life insurance may be purchased by the House Staff Officer.

e. **Vacation and Holiday Leave:** The House Staff Officer may take up to 20 days (23 days for PGY 3 and above) off for vacation and holiday leave. The House Staff officer will continue to receive his/her salary as set forth above during leave. Unused leave will not be paid as a terminal benefit. Vacation and Holiday leave must be scheduled and approved in advance by the respective Director of Education, Program Director, or his/her designee. Five of these days will be scheduled by the program near calendar year end. (See Vacation and Holiday Leave Policy)

f. **Sick Leave:** Leave (to include sick, maternity, or family medical leave) may be taken according to written GMEC and Department policies. (See Sick Leave policy)

g. **Maternity Leave:** A female House Staff Officer is entitled to be absent from the training program on maternity leave for the time period determined to be necessary and appropriate by her physician. Such leave granted may require additional training time to meet program requirements. (See Leaves of Absence policy)

h. **Family Medical Leave Act:** The House Staff Officer is eligible for applicable leave under the Family and Medical Leave Act (FMLA), once the eligibility requirements are met: (1) 12 months of service with Palmetto Health and (2) 1250 productive hours worked in the preceding 12 months. The House Staff Officer can take FML for his/her own serious health condition, care for a spouse, child, or parent that has a serious health condition, caring for a newborn, adopted or formally placed foster child. Such leave granted may require additional training time to meet program requirements (See FMLA policy)

i.   **Other Leaves of Absence:** Leave for military, disability (physical or mental), professional, personal, parental, and other approved purposes may be granted by the Director of Education/Program Director. Such leave granted may require additional training time to meet program requirements. (See Leave of Absence policy)

j.   **On-Call Quarters:** Palmetto Health will provide suitable on-call quarters.

k.   **Uniforms:** Four (4) uniforms (lab coats) are issued to House Staff Officers during their first (1st) contract year. Hospital laundering of uniforms (lab coats) issued to a House Staff Officer will be performed at no cost to the House Staff Officer.

l.   **Meals:** Meal allowances will be provided to a House Staff Officer while on duty at Palmetto Health Richland and Palmetto Health Baptist as specified in the attached policy. (See Resident Meals While on Duty policy)

## 10. DUTY HOURS

House Staff Officer duty hours and on call schedules will conform to the Accreditation Council for Graduate Medical Education (ACGME) requirements. All House Staff Officers are expected to be rested and alert during duty hours. (See Duty Hours policy)

## 11. MOONLIGHTING AND OTHER PROFESSIONAL ACTIVITIES

Graduate medical education is a full-time educational experience. Accordingly, the House Staff Officer shall neither accept nor engage in employment or professional activities (moonlighting) outside of the training program without the prior written approval of the appropriate Departmental Director of Education/Program Director and the DIO or DIO designee. If prior approval to moonlight is obtained, IT IS THE SOLE RESPONSIBILITY OF THE HOUSE STAFF OFFICER TO OBTAIN AND PROVIDE PROFESSIONAL LIABLITY INSURANCE (MALPRACTICE) COVERAGE FOR ALL EMPLOYMENT ACTIVITES WHICH ARE NOT AN OFFICIAL PART OF THE HOUSE  STAFF OFFICER'S TRAINING PROGRAM. (See Moonlighting and Other Professional Activities policy)

## 12. COUNSELING SERVICES

Palmetto Health provides confidential counseling services through the Employee Assistance program. Additional counseling, medical, and psychological services may be provided for House Staff Officers, when appropriate. (See Working Environment policy)

## 13. PHYSICIAN IMPAIRMENT AND SUBSTANCE ABUSE

Palmetto Health provides education on physician impairment (including substance abuse) to House Staff Officers. Appropriate confidential counseling services are provided in a non-punitive fashion, when necessary. (See Impairment policy)

## 14. HARASSMENT

Palmetto Health provides a work environment free from sexual and other forms of harassment and will discipline any House Staff Officer guilty of committing such conduct. (See Harassment policy)

## 15. ACCOMMODATIONS FOR DISABILITIES

Palmetto Health complies with all state and federal laws concerning qualified disabilities and does not discriminate on the basis of disability. A resident with special needs/disabilities may request reasonable accommodation(s) that will enable the resident to perform the essential functions of his/her assigned duties.

## 16. DRUG FREE WORKPLACE

The illegal manufacture, illegal distribution, illegal dispensation, illegal possession, or illegal use of narcotics, drugs, or other controlled substances is strictly prohibited by Palmetto Health. (See Substance Abuse policy)

## 17. OSHA AND CDC RECOMMENDATIONS

The House Staff Officer is required to comply with Occupational Safety and Health Act (OSHA) and Center for Disease Control (CDC) standards, which assumes that every direct contact with a patients' blood and other body substances is infectious and requires the use of protective equipment to prevent parenteral, mucous membrane and non-contact skin exposures to the healthcare provider. Palmetto Health agrees to provide, and make readily available, personal protective equipment to include gloves, face protection (masks and goggles), and cover gowns.

## 18. TERMINATION

It is the intent of the House Staff Officer and Palmetto Health that this Agreement shall be for a period of one (1) year, provided, however, the House Staff Officer has the option to terminate this Agreement, with or without cause, by giving the appropriate Departmental Director of Education/Program Director at least thirty (30) days prior written notice of intent to terminate. Palmetto Health has the option to immediately terminate this Agreement "for cause". Termination for cause includes, but is not limited to the following:

  1.1. Incapacitating illness, which in the judgment of the resident's Director of Education/Program Director precludes the resident from participation in the graduate medical education programs and in-patient care activities.

  1.2 Failure by the resident to abide by policies of Palmetto Health's teaching hospitals and participating sites, GMEC policies, departmental policies, and resident-related provisions of the Medical and Dental Staff Bylaws/Rules and Regulations of the teaching hospitals.

1.3  Failure by the resident to demonstrate, meet, or maintain satisfactory levels of academic, professional, and/or clinical performance required by the residency programs as determined by evaluations.

1.4  Failure by the House Staff Officer to comply with licensure, registration, or certification requirements and/or failure by the House Staff Officer to maintain authorization for employment in the United States.

1.5  Actions which directly violate any of the terms of the resident agreement of appointment.

1.6  Willful or inexcusable breaches of Palmetto Health rules or regulations. (See Disciplinary Action policy)

1.7  Unprofessional conduct or behavior by the House Staff Officer which in the opinion of the appropriate Departmental Director of Education and Palmetto Health, interferes with the performance of the activities provided for under this Agreement and/or which are determined by the appropriate Departmental Director of Education and the Hospital to be unsatisfactory for members of Palmetto Health's House Staff.

## 19. GOVERNING LAW

This Agreement shall be governed by the laws of the State of South Carolina.

IN WITNESS WHEREOF THIS AGREEMENT is made effective this _____7th_____ day of _____April_____, in the County of Richland, State of South Carolina.

DESIGNATED INSTITUTIONAL OFFICIAL

Katherine G. Stephens, MBA, FACHE
Vice President for Medical Education & DIO

PALMETTO HEALTH

Charles D. Beaman, Jr.
President and Chief Executive Officer

David Koon, MD
Program Director
Orthopaedics

AFRAAZ R IRANI MD
House Staff Officer

Revised 3/02/2010

# Thomas Affidavit Exhibit I



PALMETTO HEALTH

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) |
| | ) **RESIDENT AGREEMENT OF APPOINTMENT** |
| COUNTY OF RICHLAND | ) |

This agreement is entered into this **1**st day of **July, 2011** between Palmetto Health or "Hospital", a multiple teaching hospital/health system, located in Columbia, South Carolina (hereinafter "Palmetto Health") and **AFRAAZ R IRANI, MD** (hereinafter "Resident").

## 1. APPOINTMENT

The Resident is hereby employed by Palmetto Health as a PGY **2 Postgraduate** in the Department of Education for **Orthopaedics.** In this capacity, the Resident will participate in a graduate medical education program which includes, but is not limited to, classroom and lecture sessions, patient care responsibilities, and other activities as determined by Resident's specific graduate medical education program.

The Resident agrees to perform all duties and services in a competent, professional, and effective manner. The Resident agrees to abide by the policies, procedures, rules and regulations of the Hospital and its Department of Medical Education, as these policies, procedures, rules and regulations currently exist and may from time to time be amended. Specifically, the Resident agrees to abide by Medical Record provisions of the Palmetto Health Hospitals' Medical and Dental Staff Bylaws, Rules and Regulations, as they currently exist and may from time to time be amended.

The Resident agrees to abide by the Statement of Resident Responsibilities. (see below)

## 2. RESIDENT RESPONSIBILITIES

The goal of the residency program is to provide the Resident with an extensive experience in the art and science of medicine in order to achieve excellence in the diagnosis, care and treatment of patients. To achieve this goal, the Resident agrees to do the following:

1. Under the direction of the Program Director (or designee) and supervision by the Attending physician, assume responsibilities for the safe, effective and compassionate care of patients, consistent with the resident's level of education and experience.

2. Participate fully in the educational and scholarly activities of the residency program and, as required, assume responsibility for teaching and supervising other residents and medical students.

3. Develop and participate in a personal program of self-study and professional growth with guidance from the teaching staff.

4. Participate in institutional programs, committees, councils, and activities involving the medical staff as assigned by the program director, and adhere to the established policies, procedures and practices (to include standards of behavior) of the sponsoring institution and its affiliated institutions.

5. Participate in the evaluation of the program and its faculty.

6. Develop an understanding of ethical, socioeconomic, and medical legal issues that affect the practice of medicine.

7. Participate in educational experiences required to achieve competence in patient care, medical knowledge, practice-based learning improvement, interpersonal and communication skills, professionalism, and systems-based practice.

8. Keep charts, records, and reports up-to-date and signed at all times.

9. Adhere to ACGME institutional and program requirements.

## 3. FACULTY RESPONSIBILITIES AND SUPERVISION

Faculty are responsible for and personally involved in care provided to individual patients. Faculty direct the care of the patient and provide the appropriate level of supervision based on the nature of the patient's condition, the likelihood of major changes in the management plan, the complexity of care, and the experience and judgment of the resident being supervised. (See Supervision of Resident Physician Policy).

## 4. DURATION OF APPOINTMENT

The term of this Agreement is for one (1) year beginning **July 1, 2011** and ending **June 30, 2012.**

## 5. FINANCIAL SUPPORT

The Resident shall receive as compensation for the term of this Agreement an amount equal to **$52,064.06.**

## 6. CONDITIONS FOR PROMOTION/REAPPOINTMENT OF RESIDENTS

Residents are promoted/reappointed on the basis of acceptable periodic competency-based evaluations, which may be supplemented by written or oral clinical and behavioral competency examinations or other evaluation methods; by recommendation of their department's Promotion Committee; and by final approval by the Graduate Medical Education Committee. (See Promotion/Reappointment policy).

## 7. GRIEVANCE PROCEDURES AND DUE PROCESS

Any Resident who disputes any action of any party shall have the right to appeal said action through the Graduate Medical Education Committee's due process policies, as from time to time amended. Violations of the Resident agreement may also be appealed in the same manner. Each Resident will receive a copy of said policies at the time training begins and also at the time any changes or amendments are made. The Residents' Grievance Procedures and Due Process policy will be used for such disputes.

## 8. PROFESSIONAL LIABILITY INSURANCE

Palmetto Health has purchased "claims made" professional liability protection from Continental Casualty Insurance Company to protect all employees including Residents. This protection was purchased through Palmetto Healthcare Liability Insurance Program (PHLIP) that is a captive insurance program. The limit of professional liability afforded is $1,200,000 per claim that involves an employed Resident. This coverage is subject to an aggregate limit of $18,000,000. All aggregate liability limits are shared among the participating members of PHLIP. There are multiple hospital and hospital system members of PHLIP. (Coverage's are subject to periodic change by the PHLIP Board of Directors.)

Palmetto Health has also purchased high excess professional liability protection through PHLIP. The high excess limit is $20,000,000 per claim, except where it is found that the acts of the insured individual were willful, reckless, or grossly negligent, in which case the high excess per claim limit is reduced to $3,000,000. The high excess policy has a $30,000,000 annual aggregate limit which is also shared by all members of PHLIP. (Coverage's are subject to periodic change as determined by the PHLIP Board of Directors.)

It is the responsibility of Palmetto Health and not individual Residents to purchase the extended reporting period (ERP) endorsement or "tail" coverage. Employed Residents are scheduled on the Palmetto Health provider list. This provider list reflects the effective date and, as applicable, the termination or graduation date of each provider. Professional liability protection is afforded to each Resident for claims that occur within the effective date of coverage and until the graduation or termination effective date. Professional liability insurance protection is provided to each Resident within the scope of the Resident's educational program duties and does not extend to any activities outside the scope of the educational program.

This professional liability insurance will only provide coverage for the Resident in the performance of duties and obligations of this Agreement. IT IS THE SOLE RESPONSIBILITY OF THE RESIDENT TO OBTAIN AND PROVIDE FOR PROFESSIONAL AND GENERAL LIABILITY INSURANCE COVERAGE FOR ALL EMPLOYMENT OR PROFESSIONAL ACTIVITES (i.e., "moonlighting") ENGAGED IN BY THE RESIDENT WHICH ARE NOT AN OFFICIAL PART OF THE RESIDENT'S TRAINING PROGRAM.

## 9. BENEFITS

Palmetto Health will provide the Resident the following benefits:

a. **Health Insurance:** Coverage for the Resident and members of his/her immediate family, (i.e., spouse and children), is available and is effective on the first day of the resident's term of agreement. There is no premium cost to Residents for individual coverage; family coverage is available, but requires premium payment by the Resident. Plans also include a prescription drug benefit. Charges for services not covered under the basic plan (or for Resident failure to complete the health screening or other enrollment requirements by designated dates) are the responsibility of the Resident.

b. **Dental Insurance:** The Resident is eligible to participate in Palmetto Health's low option dental plan provided at no charge for the Resident's individual coverage. Coverage is available for members of the Resident's immediate family, (i.e., spouse and children), but requires premium payment by the Resident. The Resident may elect to participate in the Hospital's high option dental plan with the cost of the premium difference paid by the Resident.

c. **Disability Insurance:** The Resident is eligible to participate in Palmetto Health's Long Term Disability insurance plan at no premium cost to the Resident. LTD eligibility begins 91 days after start date.

d. **Life Insurance:** The Resident is eligible to participate in Palmetto Health's life insurance plan, with one time salary life insurance coverage provided at no cost to the Resident. One or two times salary in additional life insurance may be purchased by the Resident. Life insurance eligibility begins 91 days after start date.

e. **Vacation and Holiday Leave:** The Resident may take up to 20 days (23 days for PGY 3 and above) off for vacation and holiday leave. The Resident will continue to receive his/her salary as set forth above during leave. Unused leave will not be paid as a terminal benefit. Vacation and holiday leave must be scheduled and approved in advance by the respective Director of Education, Program Director, or his/her designee. Five of these days will be scheduled by the program near calendar year end. (See Vacation and Holiday Leave Policy)

f. **Sick Leave:** Leave (to include sick, maternity, or family medical leave) may be taken according to written GMEC and Department policies. (See Sick/Medical Leave & LTD policy)

g. **Maternity Leave:** A female Resident is entitled to be absent from the training program on maternity leave for the time period determined to be necessary and appropriate by her physician. Such leave granted may require additional training time to meet program requirements. (See Maternity Leave policy, Sick/Medical Leave & LTD policy, and Leaves of Absence policy)

h. **Family Medical Leave Act:** The Resident is eligible for applicable leave under the Family and Medical Leave Act (FMLA), once the eligibility requirements are met: (1) 12 months of service with Palmetto Health and (2) 1250 productive hours worked in the preceding 12 months. The Resident can take FML for his/her own serious health condition, care for a spouse, child, or parent that has a serious health condition, caring for a newborn, adopted or formally placed foster child. Such leave granted may require additional training time to meet program requirements. (See FMLA policy)

i.  **Other Leaves of Absence:**  Leave for military, disability (physical or mental), professional, personal, parental, and other approved purposes may be granted by the Director of Education/Program Director.  Such leave granted may require additional training time to meet program requirements. (See Leave of Absence policies)

j.  **On-Call Quarters:**  Palmetto Health will provide suitable on-call quarters.

k.  **Uniforms:** Four (4) uniforms (lab coats) are issued to Residents during their first (1st) contract year. Hospital laundering of uniforms (lab coats) issued to a Resident will be performed at no cost to the Resident.

l.  **Meals:** Meal allowances will be provided to a Resident while on duty at Palmetto Health Richland and Palmetto Health Baptist as specified in the attached policy.  (See Resident Meals While on Duty policy)

## 10. DUTY HOURS

Resident duty hours and on call schedules will conform to the Accreditation Council for Graduate Medical Education (ACGME) requirements.  All Residents are expected to be rested and alert during duty hours. (See Duty Hours policy)

## 11. MOONLIGHTING AND OTHER PROFESSIONAL ACTIVITIES

Graduate medical education is a full-time educational experience.  Accordingly, the Resident shall neither accept nor engage in employment or professional activities (moonlighting) outside of the training program without the prior written approval of the appropriate Departmental Director of Education/Program Director and the DIO or DIO designee.  If prior approval to moonlight is obtained, IT IS THE SOLE RESPONSIBILITY OF THE RESIDENT TO OBTAIN AND PROVIDE PROFESSIONAL LIABLITY INSURANCE (MALPRACTICE) COVERAGE FOR ALL EMPLOYMENT ACTIVITES WHICH ARE NOT AN OFFICIAL PART OF THE RESIDENT'S TRAINING PROGRAM.  (See Moonlighting and Other Professional Activities policy)

## 12. COUNSELING SERVICES

Palmetto Health provides confidential counseling services through the Employee Assistance program (E-Care).  Additional counseling, medical, and psychological services may be provided for Residents, when appropriate.  (See Impairment and Working Environment policy)

## 13. PHYSICIAN IMPAIRMENT AND SUBSTANCE ABUSE

Palmetto Health provides education on physician impairment (including substance abuse) to Residents. Appropriate confidential counseling services are provided in a non-punitive fashion, when necessary. (See Impairment policy)

## 14. HARASSMENT

Palmetto Health provides a work environment free from sexual and other forms of harassment and will discipline any Resident guilty of committing such conduct. (See Harassment policy)

## 15. ACCOMMODATIONS FOR DISABILITIES

Palmetto Health complies with all state and federal laws concerning qualified disabilities and does not discriminate on the basis of disability. A resident with special needs/disabilities may request reasonable accommodation(s) that will enable the resident to perform the essential functions of his/her assigned duties.

## 16. DRUG FREE WORKPLACE

The illegal manufacture, illegal distribution, illegal dispensation, illegal possession, or illegal use of narcotics, drugs, or other controlled substances is strictly prohibited by Palmetto Health. (See Substance Abuse policy)

## 17. OSHA AND CDC RECOMMENDATIONS

The Resident is required to comply with Occupational Safety and Health Act (OSHA) and Center for Disease Control (CDC) standards, which assumes that every direct contact with a patient's blood and other body substances is infectious and requires the use of protective equipment to prevent parenteral, mucous membrane and non-contact skin exposures to the healthcare provider. Palmetto Health agrees to provide, and make readily available, personal protective equipment to include gloves, face protection (masks and goggles), and cover gowns.

## 18. TERMINATION

It is the intent of the Resident and Palmetto Health that this Agreement shall be for a period of one (1) year, provided, however, the Resident has the option to terminate this Agreement, with or without cause, by giving the appropriate Departmental Director of Education/Program Director at least thirty (30) days prior written notice of intent to terminate. Palmetto Health has the option to immediately terminate this Agreement "for cause". Termination for cause includes, but is not limited to the following:

   1.1. Incapacitating illness, which in the judgment of the resident's Director of Education/Program Director precludes the resident from participation in the graduate medical education program and patient care activities.

1.2  Failure by the resident to abide by policies of Palmetto Health's teaching hospitals and participating sites, GMEC policies, departmental policies, and resident-related provisions of the Medical and Dental Staff Bylaws/Rules and Regulations of the teaching hospitals.

1.3  Failure by the resident to demonstrate, meet, or maintain satisfactory levels of academic, professional, and/or clinical performance required by the residency programs as determined by evaluations.

1.4  Failure by the Resident to comply with licensure, registration, or certification requirements and/or failure by the Resident to maintain authorization for employment in the United States.

1.5  Actions which directly violate any of the terms of the resident agreement of appointment.

1.6  Willful or inexcusable breaches of Palmetto Health rules or regulations.  (See Disciplinary Action policy)

1.7  Unprofessional conduct or behavior by the Resident which in the opinion of the appropriate Departmental Director of Education and Palmetto Health, interferes with the performance of the activities provided for under this Agreement and/or which are determined by the appropriate Departmental Director of Education and the Hospital to be unsatisfactory for members of Palmetto Health's House Staff.

## 19. GOVERNING LAW

This Agreement shall be governed by the laws of the State of South Carolina.

IN WITNESS WHEREOF THIS AGREEMENT is made effective this ___11th___ day of ___April 2011___, in the County of Richland, State of South Carolina.

DIRECTOR OF MEDICAL EDUCATON

_Katherine G. Stephens_
Katherine G. Stephens, MBA, FACHE
Vice President for Medical Education & DIO

PALMETTO HEALTH

_Charles D. Beaman, Jr._
Charles D. Beaman, Jr.
Chief Executive Officer

_DKoon  or April 11_
David Koon, MD
Program Director
Orthopaedic Surgery

_Afraaz R Irani_
AFRAAZ R IRANI, MD
Resident

Revised 1/21/2011

# Thomas Affidavit Exhibit J

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Wednesday, June 26, 2013 7:45 AM |
| **To:** | Helms, Kathy Dudley; Katherine Stephens |
| **Cc:** | Elizabeth Bradley (Elizabeth.Bradley@PalmettoHealth.org); Kathryn Thomas; Hedy Zaragoza |
| **Subject:** | RE: Afraaz Irani, M.D. |
| **Attachments:** | Calif med board Irani letter.doc |

# Attorney-Client Privileged Communication

From: Helms, Kathy Dudley [Kathy.Helms@ogletreedeakins.com]
Sent: Tuesday, June 25, 2013 10:52 PM
To: Katherine Stephens; David Koon
Cc: Elizabeth Bradley (Elizabeth.Bradley@PalmettoHealth.org); Kathryn Thomas (KThomas@gsblaw.net); Hedy Zaragoza
Subject: FW: Afraaz Irani, M.D.

# Attorney-Client Privileged Communication

Kathy Dudley Helms | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1320 Main Street, Suite 600 | Columbia, SC 29201 | Telephone: 803-252-1300 | Cell: 803-466-6411 | Fax: 803-254-6517
kathy.helms@ogletreedeakins.com<mailto:kathy.helms@ogletreedeakins.com> |
www.ogletreedeakins.com<http://www.ogletreedeakins.com/>

From: Helms, Kathy Dudley
Sent: Tuesday, June 25, 2013 10:30 PM
To: David Rothstein
Subject: Re: Afraaz Irani, M.D.

1

This is tough when you have made it clear you intend to sue everyone if the release this information. I am out of town most of the morning but have Irani overnight permission for the program to release each of these documents and I will see what can be done. I don't know what the problem with the dates was. The effort had been to try to best posture to give the information required without more in hopes it would be sufficient. Tell him to overnight to me a release for the program for these specific documents. Nothing will be released he does not specifically include. Again this is complicated because you have made it clear that you again intend to sue everyone.

I will look for the release from Irani and work on this in the meantime.
Kathy

Sent from my iPhone

On Jun 25, 2013, at 10:13 PM, "David Rothstein"
<derothstein@mindspring.com<mailto:derothstein@mindspring.com>> wrote:
Kathy. See below e-mail string between Dr. Irani and Margie Bodie re: his application for licensure in California. Apparently, the paperwork submitted by Dr. Koon was not sufficient, and the California Medical Board needs some more information or has some follow-up questions. Please see if you can do anything to help get this process completed. Dr. Irani has been told that he will receive a cease and desist letter from the California Medical Board on July 1 if this information is not provided. Delay in Dr. Irani's starting another residency could put him another year behind in his career progression. Thank you, Dave.

David E. Rothstein
Certified Specialist in Employment and Labor Law (S.C.) (Also licensed in N.C.) Rothstein Law Firm, PA
514 Pettigru Street
Greenville, SC  29601
(864) 232-5870
(864) 241-1386 (facsimile)
derothstein@mindspring.com<mailto:derothstein@mindspring.com>
www.rothsteinlawfirm.com<http://www.rothsteinlawfirm.com/>

From: Afraaz Irani [mailto:afraaz.irani@hotmail.com]
Sent: Tuesday, June 25, 2013 4:13 AM
To: Margie Bodie
Subject: RE: Afraaz Irani, M.D.

Margie,

Did you get my email below? Has this document been submitted? I received another letter today from Maria Acosta at the CA Medical Board essentially stating that the forms need to be in by the beginning of July.... Can you tell me where we are with this?

Thank you,
Afraaz
650-353-8523
_____
From: afraaz.irani@hotmail.com<mailto:afraaz.irani@hotmail.com>
To: margie.bodie@palmettohealth.org<mailto:margie.bodie@palmettohealth.org>
Subject: RE: Afraaz Irani, M.D.
Date: Fri, 21 Jun 2013 14:30:35 -0400
Margie,

2

I received an email from the California Medical Board regarding the recently submitted paperwork that arrived June 19th 2013. They stated that the letter was not clear regarding some of the dates and requested clarification as outlined below:

1.  A detailed signed and dated letter of explanation from the current program director describing the difficulty or difficulties encountered by you in the Orthopaedic program at Palmentto Health.  Letter received on June 19, 2013 was not clear regarding dates in question.  Please request that this documentation be sent directly to the Medical Board.

2.  Official documentation from the Orthopaedic program at Palmentto Health which includes a copy of the application, rotation evaluations, performance evaluations, probation and/or disciplinary documents, intervention and or diversion contracts, memos, notes to file, letters to resident (you the resident), institutional review documents and minutes, and any other documentation relative to the resident (you the resident) overall performance.  Please request that this documentation be sent directly to the Medical Board.

Please let me know if there is anything I can do to help expedite the process.

Thank you,
Afraaz
6503538523


_____

From: afraaz.irani@hotmail.com<mailto:afraaz.irani@hotmail.com>
To: margie.bodie@palmetohealth.org<mailto:margie.bodie@palmettohealth.org>
Subject: RE: Afraaz Irani, M.D.
Date: Fri, 14 Jun 2013 17:37:12 -0400
Ouch! Those can be really problematic! I am so sorry to hear that. Hope it gets better soon! :)

I'm not sure what you mean by signed authorization page? I have re attached the document that Koon needs to fill out (it does not require my signature). Please let me know.

Thank you,
Afraaz
650-353-8523

_____

From: Margie.Bodie@PalmettoHealth.org<mailto:Margie.Bodie@PalmettoHealth.org>
To: afraaz.irani@hotmail.com<mailto:afraaz.irani@hotmail.com>
Subject: RE: Afraaz Irani, M.D.
Date: Fri, 14 Jun 2013 17:38:40 +0000
Dr Irani

I sustained a severed tendon injury and am trying to catch up...Please send the request and your signed authorization page to proceed.

Thank you.


Margie S. Bodie

Margie S. Bodie, B.S., C-TAGME/Central GME Offices Administrative Director, Resident/Student Services Palmetto Health
Palmetto Health Richland - Graduate Medical Education Office
5 Medical Park (physical location: 15 Medical Park, Ste 202)

3

Columbia, SC  29203
803-434-4429 phone -  803-434-4419 fax
margie.bodie@palmettohealth.org<mailto:margie.bodie@palmettohealth.org>  http://residency.palmettohealth.org

"To be remembered by each patient as providing the care and compassion we want for our families and ourselves" -
Palmetto Health Vision Statement

<image001.jpg>

From: Afraaz Irani [mailto:afraaz.irani@hotmail.com]
Sent: Friday, June 14, 2013 11:11 AM
To: Margie Bodie
Subject: RE: Afraaz Irani, M.D.

Margie,

Were you able to get my licensing form taken care of? I haven't heard back so I am assuming you are not in charge of it?
Sorry about that. I will go ahead and forward the form to Dr. Koon to have him fill it out.

Thank you,
Afraaz
_____
From: afraaz.irani@hotmail.com<mailto:afraaz.irani@hotmail.com>
To: margie.bodie@palmettohealth.org<mailto:margie.bodie@palmettohealth.org>
Subject: FW: Afraaz Irani, M.D.
Date: Tue, 11 Jun 2013 16:43:33 -0400
Hey Margie,

I am applying for my medical license in California. The form Dr. Koon submitted to the CA Medical Board was incomplete
(please see email below). I have re-attached the form that needs to be filled out in its entirety by Dr. Koon.  If you could
please help me get this taken care of that would be really great.

I apologize if you are not the right person to help with this matter, but I was directed to contact you to get the form
taken care of -- please let me know if that is not the case!

Please let me know if you got this email and we can get this taken care of.

Please do not hesitate to contact me if I may be of further assistance.

Thanks!
Afraaz
650-353-8523

_____
From: Maria.Acosta@mbc.ca.gov<mailto:Maria.Acosta@mbc.ca.gov>
To: afraaz.irani@hotmail.com<mailto:afraaz.irani@hotmail.com>
Subject: RE: Afraaz Irani, M.D.
Date: Tue, 11 Jun 2013 17:08:36 +0000
Hello:

4

I received the L3A/B document from Palmetto Health. It turns out they did not complete all the questions on the L3A form. They will need to complete both pages of the document pages L3A/B in its entirety to be accepted.

1.    They did not answer question #5, & 9. Which if they do not applied must still be answered in the negative if it did not affect you.
2.    Also the questions that they did answer positive were not explained on a letter on letterhead signed and dated by the current program director.
3.    The ACGME code which was entered is incorrect.
4.    The Board will need a new L3A/B completed in its entirety.

If the Board does not receive the above information as requested it will delay me from submitting your file a.s.a.p to QA for final review. Please make sure to stress to the program that all questions must be answered. We must have a letter (on letterhead) of explanation for any and all positive answers to the questions, signed and dated by the current program director.

Thank you,

Maria H. Acosta
Management Service Technician
Medical Board of California
2005 Evergreen Street, Ste 1200
Sacramento, CA  95815
(916)263-2448   FAX (916)263-2944

---

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.

Unless expressly stated to the contrary herein, nothing in this message was intended or written to be used, nor may be relied upon or used: (a) to avoid any penalties that could be imposed under the Internal Revenue Code of 1986, as amended, or (b) to recommend or support the promotion or marketing of any federal tax transaction or issue discussed herein.

-------------------------------------This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

# Thomas Affidavit Exhibit K



**U.S. Equal Employment Opportunity Commission**
**Charlotte District Office**

129 W. Trade Street
Suite 400
Charlotte, NC 28202
(704) 344-6686
(704) 344-6684 TTY
(704) 344-6731 FAX

OCT   9 2014

Elizabeth H. Glasch
Gignilliat, Savitz & Bettis, LLP
900 Elmwood Avenue, Suite 100
Columbia , SC 29201

Re: FOIA No.: 4302014206519
Afraaz Irani vs. Palmetto Health
Charge No. 436-2013-00565

Dear Ms. Glasch:

Your Freedom of Information Act (FOIA) request, received in this office on September 12, 2014 has been processed.  Our search began on September 12, 2014.  All agency records in creation as of September 12, 2014 are within the scope of the EEOC's search for responsive records.  The paragraph(s) checked below apply:

[  ]        Your request does not reasonably describe the records you wish disclosed or [  ] No records fitting the description of the records you seek disclosed exist or could be located after a thorough search.  The remainder of your request is:

[  ]        Your request is granted.

[  ]        Your request is denied pursuant to the subsections of the FOIA indicated at the end of this letter.  An attachment to this letter explains the use of these exemptions in more detail.

[ X ]       Your request is granted in part and denied in part. Portions not released are being withheld pursuant to the subsections of the FOIA indicated at the end of this letter.  An attachment to this letter explains the use of these exemptions in more detail.

[  ]        You must send a check for $[  ] made payable to the United States Treasurer by mail to the above address.  Manual search and review time is billed per quarter hour based on the personnel category of the person conducting the search.  Fees for search services range from $5.00 per quarter hour to $20.00 per quarter hour.  Direct costs are billed for computer searches and in certain other circumstances.  Photocopying is billed at $.15 per page.  29 C.F.R. §1610.15.  The attached Comments page will further explain any direct costs assessed.   The fee has been computed as follows:

[  ]        Commercial use requests: [  ] pages of photocopying; [  ] quarter hour(s) of [  ] review time; and [  ] quarter hour(s) of [  ] search time; Direct costs are billed in the amount of [  ] for [  ].

[  ]        Requests by educational or noncommercial scientific institutions or representatives of the news media: [  ] pages of photocopying.  The first 100 pages are provided free of charge.

[  ]        All other requests: [  ] pages of photocopying and [  ] quarter hour(s) of [  ] search time.  Direct costs are billed in the amount of [  ] for [  ].  The first 100 pages and 2 hours of search time are provided free of charge.

[ X ]      The disclosed records are enclosed.  No fee is charged because the cost of collecting and processing the chargeable fee equals or exceeds the amount of the fee.  29 C.F.R. § 1610.15(d).

[ X ]      The disclosed records are enclosed.  Photocopying and search fees have been waived pursuant to 29 C.F.R. § 1610.14.

[ X ]      You may appeal this decision by writing within thirty days of receipt of this letter to the Office of Legal Counsel, FOIA Programs, Equal Employment Opportunity Commission, 131 M Street, N.E., Suite 5NW02E, Washington, D.C.  20507.  Your appeal will be governed by 29 C.F.R. § 1610.11.

[ X ]      See attached Comments page for further information.

Sincerely,

Reuben Daniels Jr
District Director
(704) 344-6686

Applicable Sections of the Freedom of Information Act, 5 U.S.C. § 552(b):

| | | |
|---|---|---|
| [ ] (2) | [ ] (6) | |
| [ ] (3)  (A)(i) | [ ] (7)(A) | |
|     [ ] Section 706(b) of Title VII | [ ] (7)(B) | |
|     [ ] Section 709(e) of Title VII | [ X ] (7)(C) | |
|     [ ] Section 107 of the ADA | [ ] (7)(D) | |
|     [ ] Section 207 of the GINA | [ ] Other (see attached) | |
| [ ] (3)(A)(ii) | | |
|     [ ] 41 U.S.C. §253b(m) of the | | |
|     National Defense Authorization  Act | | |
| [ ]  (4) | | |
| [ X ]  (5) | | |

USC(Irani)0436

  

Run  :  05/23/2013
Time :  15:48:36

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Charge Detail Inquiry**

Page  2  of  2

| CHARGE # 436-2013-00565C | FORMALIZED OFFICE 436 | STAFF Gregory Somers | DATE INITIAL INQUIRY 03/26/2013 |
|---|---|---|---|
| LEAD CHARGE # | ACCOUNTABLE OFFICE 436 | UNIT 1 | DATE FIRST OFFICE 03/29/2013 |
| FEPA # | | | DATE DISTRICT 03/29/2013 |
| | | | THIS OFFICE DATE 03/29/2013 |

**CHARGING PARTY INFORMATION**

Irani, Afraaz

<table>
<tr><td></td><td>Home</td><td>Race</td></tr>
<tr><td>███████████</td><td>Work</td><td>Asian</td></tr>
<tr><td></td><td>Cell ███████████</td><td></td></tr>
</table>

Santa Clara          CA  95050     Country  USA
Sex   M    Date of Birth  ███████     Nat Origin  Other Asian National Origin

**CHARGING PARTY CONTACT**

**RESPONDENT INFORMATION**

PALMETTO HEALTH
PO Box 2266

Phone
R Type  E

FAX
SMSA  1760

Columbia          SC     29202     Country   USA
Size  501+ Employees
EEO1 HDQ  L41817     EEO1 Unit  L41817
NAICS Code  622110   General Medical and Surgical Hospitals

**RESPONDENT CONTACT**

Respondent Contact Information
Gwen Hill - Vice President, Human Resource
PALMETTO HEALTH
293 Greystone Boulevard
Columbia, SC 29210   Country: USA

*(Exemption 5)*
*Redacted*

**PROCESSING INFORMATION**

| Communication Method | M | Source of Complaint | A | Processing Type | O | Processing Category | |
|---|---|---|---|---|---|---|---|
| Subpoena | | Suspense | | Transfer From: | | Deferral Office | 14C |
| Staff | Patricia Fuller | | | Staff Assigned Date | 5/23/2013 | Staff Function/Unit | I2 |
| Last Action | 05/23/2013 8 G1 Assigned To Staff Office: 436 F/U: I2 Del: A | | | | | | |
| Final Closure Action | | | | | | | |

**ALLEGATIONS**

| Alleg # | 1 | SBI: | T | AO | D2 | Cont Act? | N | Litigation? | Cause? | First DOV | 06/01/2012 | Last DOV | 06/01/2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alleg # | 1 | SBI: | T | NE | D2 | Cont Act? | N | Litigation? | Cause? | First DOV | 06/01/2012 | Last DOV | 06/01/2012 |
| Alleg # | 1 | SBI: | T | RS | D2 | Cont Act? | N | Litigation? | Cause? | First DOV | 06/01/2012 | Last DOV | 06/01/2012 |
| Alleg # | 1 | SBI: | T | OR | D2 | Cont Act? | N | Litigation? | Cause? | First DOV | 06/01/2012 | Last DOV | 06/01/2012 |
| Alleg # | 2 | SBI: | T | AO | H1 | Cont Act? | N | Litigation? | Cause? | First DOV | 06/01/2012 | Last DOV | 06/01/2012 |
| Alleg # | 2 | SBI: | T | NE | H1 | Cont Act? | N | Litigation? | Cause? | First DOV | 06/01/2012 | Last DOV | 06/01/2012 |
| Alleg # | 2 | SBI: | T | OR | H1 | Cont Act? | N | Litigation? | Cause? | First DOV | 06/01/2012 | Last DOV | 06/01/2012 |
| Alleg # | 2 | SBI: | T | RS | H1 | Cont Act? | N | Litigation? | Cause? | First DOV | 06/01/2012 | Last DOV | 06/01/2012 |

**BENEFITS**

**ACTION HISTORY**

| Date | Seq | Code | Description | Attributes | Office | F/U | Del |
|---|---|---|---|---|---|---|---|
| 03/29/2013 | 1 | AB | Formalize Charge | *(Exemption 5) Redacted* | 436 | I1 | |
| 04/01/2013 | 2 | B6 | Assign Processing Category | | 436 | I1 | |
| 04/04/2013 | 3 | G5 | Resp. Contact/Interview | | 436 | I1 | |
| 04/04/2013 | 4 | G1 | Assigned To Staff | 1:GS 2:W | 436 | I1 | |
| 05/21/2013 | 5 | G4 | CP Contact/Interview | | 436 | I1 | |
| 05/23/2013 | 6 | G8 | Pos. Statement Requested | | 436 | I1 | |
| 05/23/2013 | 7 | B4 | Send to Function/Unit | 1:I 2:2 3:P | 436 | I1 | |
| 05/23/2013 | 8 | G1 | Assigned To Staff | 1:PBF 2:A | 436 | I2 | |

**IMS NOTES**

USC(Irani)0438

CASE LOG

Page

| Charge No. 436-2013-00565C | Respondent PALMETTO HEALTH | | Charging Party Afraaz Irani | |
|---|---|---|---|---|
| Date | Action | | Entered By | Reviewed/ Approved |
| 4/4/13 | Mailed 131-No Action | | PBP | |
| 7/3/2013 | To Enf | | *(signature)* | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

EEOC Form 159 (10/94)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Greenville Local Office**

LandMark Building
301 North Main Street, 1402
Greenville, SC  29601
(864) 241-4400
FAX (864) 241-4416

Gregory B. Somers
(864) 241-4426

January 3, 2014

Afraaz Irani

███████████████████

Re:    Irani versus PALMETTO HEALTH
        EEOC Charge No.: 436-2013-00565

Dear Dr. Irana:

The processing of your charge of employment discrimination in the above referenced matter is near completion.  The purpose of this letter is to provide a summary of the evidence and allow you an opportunity to provide additional evidence in support of your claim.

You allege that you were discriminated against through harassment and discharge based on national origin, religion, and Retaliation.

Examination of the evidence reveals that the alleged harassment and the discharge occurred more than 300 days prior to you filing your charge of discrimination.  Specifically, you filed your charge on April 4, 2013 and were discharged on April 10, 2012.

In view of the facts to date, it is unlikely that further investigation of your charge will result in a finding that a violation of the law under which you filed your charge has occurred.  If there is additional evidence you wish to be considered, please provide it in writing on or before Friday, January 10, 2014.  Failure to respond may result in a determination being issued without the benefit of this evidence.

Sincerely,

Gregory Bret Somers
Bi-Lingual Investigator



**U.S. Equal Employment Opportunity Commission**
**Greenville Local Office**

301 North Main St
Suite 1402
Greenville, SC 29601
(864) 241-4401
TTY (864) 241-4403
Fax: (864) 241-4416

Respondent: PALMETTO HEALTH
EEOC Charge No.: 436-2013-00565
FEPA Charge No.:

April 25, 2013

Afraaz Irani

███████████████

Dear Mr. Irani:

This is with reference to your recent written correspondence or intake questionnaire in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

[ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]    The Age Discrimination in Employment Act (ADEA)

[ ]    The Americans with Disabilities Act (ADA)

[ ]    The Equal Pay Act (EPA)

[ ]    The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form.

To enable proper handling of this action by the Commission you should:

(1)  Review the enclosed charge form and make corrections.

(2)  Sign and date the charge in the bottom left hand block where I have made an "X". For purposes of meeting the deadline for filing a charge, the date of your original signed document will be retained as the original filling date.

(3)  Return the signed charge to this office.

Before we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court. Please be aware that after we receive your signed Form 5, the EEOC will send a copy of the charge to South Carolina Human Affairs Commission 2611 Forest Dr., Suite 200 PO Box 4490 Columbia, SC 29240 as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.

Please use the "EEOC Charge No." listed at the top of this letter whenever you call about this charge. Please also notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process.  If you have any questions, please call me at the number listed below. If you have to call long distance, please call collect.

Sincerely,

Gregory B. Somers
Investigator
(864) 241-4426

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)
    Copy of EEOC Form 5, Charge of Discrimination
    Copy of EEOC Uniform Brochure, "What You Should Know Before You File A Charge With EEOC."

USC(Irani)0443

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Ms. Gwen Hill<br>Vice President, Human Resource<br>PALMETTO HEALTH<br>PO Box 2266<br>Columbia, SC 29202 | **Afraaz Irani** |
| | THIS PERSON (check one or both) |
| | [X] Claims To Be Aggrieved |
| | [ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**436-2013-00565** |

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)    [ ] The Equal Pay Act (EPA)    [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)    [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by  a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by  to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
to
If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Gregory B. Somers,**<br>**Investigator**

*EEOC Representative*

*Telephone*    **(864) 241-4426**

**Greenville Local Office**<br>**301 North Main St**<br>**Suite 1402**<br>**Greenville, SC 29601**<br>**Fax: (864) 241-4416**

Enclosure(s):    [ ] Copy of Charge

### CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] Race  [ ] Color  [ ] Sex  [X] Religion  [X] National Origin  [ ] Age  [ ] Disability  [X] Retaliation  [ ] Genetic Information  [ ] Other

**ISSUES:** Discharge, Harassment

**DATE(S)** (on or about):  EARLIEST: 06-01-2012  LATEST: 06-01-2012

**A perfected charge (EEOC Form 5) will be mailed to you once it has been received from the Charging Party.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **April 4, 2013** | **Patricia B. Fuller,**<br>**Local Office Director** | *Patricia B. Fuller* |

USC(Irani)0444

EEOC Form 212-A (3/98)

## U.S. Equal Employment Opportunity Commission

TO:
**South Carolina Human Affairs Commission**
2611 Forest Dr., Suite 200
PO Box 4490
Columbia, SC 29240

Date      **May 23, 2013**
EEOC Charge No.
        **436-2013-00565**

FEPA Charge No.

CHARGE TRANSMITTAL

SUBJECT:

| **Afraaz Irani** | v. | **PALMETTO HEALTH** |
|---|---|---|
| *Charging Party* | | *Respondent* |

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC    ☐ _____ on  **Mar 29, 2013**
                    *Name of FEPA*              *Date of Receipt*

[X] Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

☐ EEOC requests a waiver          ☐ FEPA waives

☐ No waiver requested          ☐ FEPA will investigate the charge initially

*Please complete the bottom portion of this form to acknowledge the receipt of the charge
and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

| Typed Name and Title of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **Patricia B. Fuller, Local Office Director** | |

| **Afraaz Irani** | v. | **PALMETTO HEALTH** |
|---|---|---|
| *Charging Party* | | *Respondent* |

TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☑ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge for the following reasons:

*(stamp)* RECEIVED US EEOC GREENVILLE LOC OFC 2013 JUN 10 PM 6:12

| Typed Name and Title of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **Raymond Buxton, II, Director** | *Vicke Miller for 6:413* |

TO:
**Greenville Local Office**
301 North Main St
Suite 1402
Greenville, SC 29601

Date      **May 23, 2013**
EEOC Charge No.
        **436-2013-00565**

FEPA Charge No.

USC(Irani)0446

EEOC FORM 131 (11/09)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Ms. Gwen Hill<br>Vice President, Human Resource<br>PALMETTO HEALTH<br>293 Greystone Boulevard<br>Columbia, SC 29210 | **Afraaz Irani** |
| | THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**436-2013-00565** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)    [ ] The Equal Pay Act (EPA)    [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)    [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **24-JUN-13** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by  to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by    **06-JUN-13**
to    **Phyllis S. Jackson, ADR Coordinator, at  (864) 241-4405**
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| | |
|---|---|
| **Gregory B. Somers,**<br>**Investigator**<br>*EEOC Representative*<br>*Telephone*    **(864) 241-4426** | **Greenville Local Office**<br>**301 North Main St**<br>**Suite 1402**<br>**Greenville, SC 29601**<br>**Fax: (864) 241-4416** |

Enclosure(s):  [ ] Copy of Charge

---

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] Race  [ ] Color  [ ] Sex  [X] Religion  [X] National Origin  [ ] Age  [ ] Disability  [X] Retaliation  [ ] Genetic Information  [ ] Other

ISSUES: Discharge, Harassment

DATE(S) (on or about):  EARLIEST:  06-01-2012    LATEST:  06-01-2012

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| May 23, 2013 | Patricia B. Fuller,<br>Local Office Director | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **436-2013-00565** |

| **South Carolina Human Affairs Commission** | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Afraaz Irani** | ▮ | ▮ |

| Street Address | City, State and ZIP Code |
|---|---|
| ▮ | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PALMETTO HEALTH/USC School of Medicine** | **500 or More** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **PO Box 2266, Columbia, SC 29202** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☐ SEX   ☒ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **06-01-2010**   Latest **06-01-2012**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. I began my employment with Palmetto Health/University of South Carolina School of Medicine Department of Orthopaedic Surgery in June 2010. I performed at a standard level. My Program Director has repeatedly referred to me as "Achmed the terrorist." I received a biased evaluation and numerous false criticisms of my performance. My employment was terminated on June 1, 2012.

2. I believe I have been discriminated against based on religion, Zoroastrian, national origin, Iranian/Indian, race, and Retaliation through Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| _5/18/13_ ___Afraaz Irani___<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

 

**U.S. Equal Employment Opportunity Commission**
**Greenville Local Office**

301 North Main St
Suite 1402
Greenville, SC 29601
(864) 241-4401
TTY (864) 241-4403
Fax: (864) 241-4416

Respondent: PALMETTO HEALTH
EEOC Charge No.: 436-2013-00565
FEPA Charge No.:

April 25, 2013

Afraaz Irani



Dear Mr. Irani,

This is with reference to your recent written correspondence or intake questionnaire in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

[ X ]   Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]     The Age Discrimination in Employment Act (ADEA)

[ ]     The Americans with Disabilities Act (ADA)

[ ]     The Equal Pay Act (EPA)

[ ]     The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge.  Before we investigate your charge, however, you must sign and return the enclosed Form.

To enable proper handling of this action by the Commission you should:

(1)   Review the enclosed charge form and make corrections.

(2)   Sign and date the charge in the bottom left hand block where I have made an "X".  For purposes of meeting the deadline for filing a charge, the date of your original signed document will be retained as the original filing date

(3)   Return the signed charge to this office.

Before we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5).  Please sign and return the charge within thirty (30) days from the date of this letter.  Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court.  Please be aware that after we receive your signed Form 5, the EEOC will send a copy of the charge to South Carolina Human Affairs Commission 2611 Forest Dr., Suite 200 PO Box 4490 Columbia, SC 29240 as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.



Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please also notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process.  If you have any questions, please call me at the number listed below. If you have to call long distance, please call collect.

Sincerely,

_____

Gregory B. Somers
Investigator
(864) 241-4426

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)
    Copy of EEOC Form 5, Charge of Discrimination
    Copy of EEOC Uniform Brochure, "What You Should Know Before You File A Charge With EEOC."

USC(Irani)0453

43(2012-00565

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. **Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)**

### 1. Personal Information

Last Name: **IRANI**    First Name: **AFRAAZ**    MI: **R**

Street or Mailing Address: [redacted]    Apt or Unit #:

City: [redacted]    County: [redacted]    State: [redacted]    Zip: **95050**

Phone Numbers: Home: (    )    Work: (    )

Cell: [redacted]    Email Address: [redacted]

Date of Birth: [redacted]    Sex: ☑ Male ☐ Female    Do You Have a Disability? ☐ Yes ☐ No

**Please answer each of the next three questions.**    i. Are you Hispanic or Latino? ☐ Yes ☑ No

ii. What is your Race?  Please choose all that apply. ☐ American Indian or Alaskan Native  ☑ Asian  ☐ White

☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? **India / Iran / Zoroastrian**

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: _

Address: _ Redacted (Exemption 7(C))

Home Phone:

### 2. I believe that I was discriminated against by the following organization(s): (Check those that apply)

☑ Employer  ☐ Union  ☐ Employment Agency  ☐ Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: **PALMETTO HEALTH / UNIVERSITY OF SOUTH CAROLINA DEPARTMENT OF ORTHOPAEDICS**

Address: **Two MEDICAL PARK, SUITE LOWER LEVEL**  County: **RICHLAND**

City: **COLUMBIA**  State: **SC**  Zip: **29203**  Phone: **(803) 434-6812**

Type of Business: **HOSPITAL**  Job Location if different from Org. Address: _____

Human Resources Director or Owner Name: **AMY BARRY**  Phone: **(803) 296-5220**

**Number of Employees in the Organization at All Locations:** Please Check (✓) One

☐ Fewer Than 15  ☐ 15 – 100  ☐ 101 – 200  ☐ 201 – 500  ☑ More than 500

### 3. Your Employment Data (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☑ No

Date Hired: **6/10**  Job Title At Hire: **ORTHOPAEDIC SURGERY RESIDENT**

Pay Rate When Hired: **~$50,000/yr**  Last or Current Pay Rate: **~$50,000/yr**

Job Title at Time of Alleged Discrimination: **Orthopaedic Surgery Resident**  Date Quit/Discharged: **6/1/12**

Name and Title of Immediate Supervisor: **DR. DAVID E. KOON JR.**

**If Job Applicant,** Date You Applied for Job _____  Job Title Applied For _____

1

USC(Irani)0454

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☒Race ☐ Sex ☐Age ☐ Disability ☒National Origin ☒Religion ☒Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _Zoroastrian faith from the middle east area originally_

If you checked genetic information, how did the employer obtain the genetic information?_____

Other reason (basis) for discrimination (Explain): _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

**A. Date:** _6/1/12_   Action: _Confirmation Of Dismissal_

Name and Title of Person(s) Responsible: _Dr. David E. Koon Jr._

**B. Date:** _____   Action: _____

Name and Title of Person(s) Responsible _____

**6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.**
_(please see attachment)_

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**
_(please see attachment)_

**8. Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.**

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. Dr. Harrison Gowno | White | Orthopaedic Resident | Resident In Similar Situation And Training Not Cited |
| B. (please see attachment for addendum) | | | |

2

USC(Irani)0455

Of the persons in the same or similar situation as you, who was treated *worse* than you?

    Full Name        Race, Sex, Age, National Origin, Religion or Disability    Job Title        Description of Treatment

A._____

_____

B._____

_____

Of the persons in the same or similar situation as you, who was treated the *same* as you?

    Full Name        Race, Sex, Age, National Origin, Religion or Disability    Job Title        Description of Treatment

A._____

_____

B._____

_____

**Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.**

**9. Please check all that apply:**    ☐ Yes, I have a disability
    ☐ I do not have a disability now but I did have one
    ☐ No disability but the organization treats me as if I am disabled

**10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

_____

_____

_____

**11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
    ☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

_____

_____

**12. Did you ask your employer for any changes or assistance to do your job because of your disability?**
    ☐ Yes ☐ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

_____

Describe the changes or assistance that you asked for: _____

_____

_____

How did your employer respond to your request? _____

_____

3

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |

A. Dr. Harrison Goodno / Orthopedic Resident / Two Richland Park, Suite Lower Level, ▮▮▮▮ Richland County, Columbia, SC 29203 / Inequitable treatment, racial slurs

B. Frankie / Nurse / ▮▮▮▮▮▮▮▮▮▮▮▮ / racial slurs

**14. Have you filed a charge previously on this matter with the EEOC or another agency?** ☐ Yes ☑ No

**15. If you filed a complaint with another agency, provide the name of agency and the date of filing:** _____

_____

**16. Have you sought help about this situation from a union, an attorney, or any other source?** ☑ Yes ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

David Rothstein, Rothstein Law Firm, PA   12/12 – current
Advised to Contact EEOC.

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. **If you do not file a charge of discrimination within the time limits, you will lose your rights.** If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

---

**BOX 1** ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. **I also understand that I could lose my rights if I do not file a charge in time.**

---

**BOX 2** ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

---

_Afroz Irani_ _____          _3/10/13_ _____
**Signature**                      **Today's Date**

**PRIVACY ACT STATEMENT:** This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

**1) FORM NUMBER/TITLE/DATE.** EEOC Intake Questionnaire (9/20/08). **2) AUTHORITY.** 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a) **3) PRINCIPAL PURPOSE.** The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. **4) ROUTINE USES.** EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. **5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.** Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

4

To whom it may concern:

I was an orthopaedic surgery resident at the Palmetto Health Richland/University of South Carolina School of Medicine Orthopaedic Surgery Program in Columbia, South Carolina.

I began my training in June of 2010. I am writing to you as I am extremely concerned about the unethical behavior and harassment I was subjected to from my superiors in the department, which culminated in my termination made official June 1st 2012.

I attempted to bring my concerns before the appropriate local committees, but have been disappointed by their unwillingness to listen to my grievances. I believe that I have been denied due process.

At this point, I feel that I have nowhere else to turn. I was encouraged to contact you to help remedy this.

I have been the subject of racially based harassment by my program director and have been singled out for disciplinary actions for minor infractions.

This pattern of behavior has been evident throughout my second year in the program, when my program director -- who has repeatedly referred to me as "Achmed the terrorist" and makes constant insinuations about my cultural background – repeatedly submitted documents to the hospital which are patently false, in order to attempt to demonstrate a pattern of unsatisfactory behavior on my part. He placed me on probation only six weeks into my orthopaedic year in residency, based on several unsubstantiated allegations. Requests for clarification of these allegations have been denied, and I have been unable to get any independent verification of his allegations.

My program director has gone out of his way to attempt to discredit me in front of other faculty members, alleging improper care despite clear evidence to the contrary (including from other faculty and residents).

He has further alleged deficiencies in my knowledge base, despite evidence to the contrary. In fact, my standardized test scores easily outpaced that of my fellow co-resident.

Needless to say, this pattern of markedly unfair treatment coupled with constant harassment targeted at my cultural and religions background made it nearly impossible for me to focus on my education and patient care.

My program director has continued to present false statements to the hospital's Graduate Medical Education Committee (GMEC). For example, in one case he alleged improper care of a trauma patient. I was not involved in the patient's initial resuscitation, but was called to assist after the patient had been in the Emergency Department for over three hours.  Many of the allegations did not involve me. My program director refused to ask for my side of the story, in complete violation of, and with complete disregard for, the hospital's official written and stated

Afraaz R. Irani

USC(Irani)0458

policy. He turned over these factually incorrect complaints to the GMEC for my suspension. I was denied a fair hearing or due process.

More egregious were the multiple times I asked for documentation of the allegations of poor care, and they refused to turn over these documents.

Additionally, I was denied the chance to engage in our regularly assigned rotation at the Veteran's Affairs (VA) hospital beginning in January, and this prevented me from being educated on a rotation that all other residents are assigned. It also denied me the opportunity to get an unbiased evaluation of my performance by the Orthopaedic staff at the VA.

The actions of my department culminated with my recent termination. I am very disappointed and concerned, since their behavior has been unethical, deceitful, and illegal.

I am not confident in the checks and balances at a hospital where the department chairman and program director can regularly violate hospital policy, regularly engage in racial and cultural based discriminatory behaviour, and where my chairman assures me of the outcome of a GMEC committee meeting before any proceedings have even occurred.

I implore you to help me in this situation. Please help me investigate this pattern of racially and ethnically targeted behavior. I have worked hard and sacrificed much to become an orthopedic surgeon, and I feel that those entrusted with my education have reneged on their commitment.

Sincerely,

Afraaz Irani, M.D.

Afraaz R. Irani

USC(Irani)0459

Addendum to the US Equal Employment Opportunity Commission Intake Questionnare:

Additional Space required for #8:

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

| Full Name | Race | Job Title | Description of Treatment |
|---|---|---|---|
| Dr. Justin Walker | White | Orthopaedic Resident | Resident in similar situation and training not cited. |
| Dr. Will Whiteside | White | Orthopaedic Resident | Resident in similar situation and training not cited. |
| Dr. Kenny Lindley | White | Orthopaedic Resident | Resident in similar situation and training not cited. |
| Dr. Greg Herzog | White | Orthopaedic Resident | Resident in similar situation and training not cited. |
| Dr. Justin Hoover | White | Orthopaedic Resident | Resident in similar situation and training not cited. |
| Dr. Jennifer Wood | White | Orthopaedic Resident | Resident in similar situation and training not cited. |
| Dr. Andy Duffee | White | Orthopaedic Resident | Resident in similar situation and training not cited. |
| Dr. Mary Finn | White | Orthopaedic Resident | Resident in similar situation and training not cited. |
| Dr. Gene Massey | White | Orthopaedic Resident | Resident in similar situation and training not cited. |

Afraaz R. Irani

USC(Irani)0460





**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**

*Attorneys at Law*

1320 Main Street, Suite 600
Columbia, SC 29201-3266
Telephone: 803.252.1300
Facsimile:  803.254.6517
www.ogletreedeakins.com

Katherine Dudley Helms
*kathy.helms@ogletreedeakins.com*

June 25, 2013

Mr. Gregory B. Somers
Investigator
U.S. Equal Employment Opportunity Commission
301 North Main Street, Suite 1402
Greenville, SC  29601

RE:     Afraaz Irani v. Palmetto Health
        EEOC No. 436-2013-00565

Dear Mr. Somers:

Palmetto Health has asked that I respond to the above-referenced Charge by Dr. Irani.  Please note that to the best of my knowledge this Charge is as to Palmetto Health only and the response is on behalf of Palmetto Health only.  Palmetto Health employed Dr. Irani as a resident.  However, he was a resident in the Palmetto Health/USC-SOM residency program.

As was indicated in the original representation letter, Dr. Irani's Charge is untimely.  Dr. Irani initially filed his Charge on May 23, 2013.  He was released from the residency program on April 10, 2012.  (Attachment A.)  Accordingly, he filed his Charge more than 300 days after his termination.  The specific actions of which he complains are related directly to the events preceding his termination and his termination itself.  Accordingly, his Charge is untimely.  Dr. Irani may argue that the operative date is June 1, 2012, the date on which he received the final denial of his grievance.  However, he has not complained of the grievance process in any manner.

In the event that the EEOC incorrectly finds that the Charge was timely filed, Palmetto Health chooses to provide only this limited response.  Dr. Irani has repeatedly threatened to sue prior to, at the time of, and following his dismissal.  He and his counsel have made it very clear that even if this Charge is untimely they will in all likelihood file a lawsuit.  There is a history here and Dr. Irani's counsel and one of his supporters have been involved in multiple actions against the residency program and Palmetto Health does not intend to simply provide free discovery to Dr. Irani in preparation for a lawsuit.

It is unfortunate that a resident cannot be disciplined or removed from a residency program without the faculty, the medical school, and the sponsoring institution (Palmetto Health) being continually threatened with litigation at each turn of the process.  Dr. Irani and his attorney both

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas
Denver ▪ Detroit Metro ▪ Greenville ▪ Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ Los Angeles ▪ Memphis ▪ Miami
Minneapolis ▪ Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Orange County ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland
Raleigh ▪ St. Louis ▪ St. Thomas ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Stamford ▪ Tampa ▪ Torrance ▪ Tucson ▪ Washington

RECEIVED
U.S. EEOC
GREENVILLE LOC OFC
2013 JUL -1  PM 1:36

USC(Irani)0461

Mr. Gregory B. Somers
June 25, 2013
Page 2

expected the threat to be very clear to these parties throughout this process.  However, that threat did not make up for the skills that Dr. Irani was lacking and the faculty had no choice but to remove a resident who was not performing up to expectation.  This Charge should be dismissed immediately and should be dismissed with a "no cause" finding.

Sincerely,

*Kathy Dudley Helms*

Katherine Dudley Helms

KDH:ms
Enclosure
By Certified Mail
cc:     Lin Hearn

## Palmetto Health Employee Change of Status

Indicate what change is occurring (choose all that apply):

- ☒ Termination (Involuntary)
- ☐ Resignation (Voluntary)
- ☐ Severance
- ☐ Retirement
- ☐ Salary Change
- ☐ Transfer to another department
- ☐ Transfer to another campus
- ☐ Scheduled Hours Change
- ☐ Job Reassignment
- ☐ Other

### I. Current Information: This section must be completed

| 1. Employee Name: **IRANI, Afraaz, MD** | | 2. Employee Number: 103178 |
|---|---|---|
| 3. Department Name: **Orthopaedic Surgery** | 4. Department Number: **7130** | 5. Entity: **51- Richland** | 6. Campus: **Richland** |
| 7. Job Title: **Resident** | 8. Job Code: **602971** | 9. Job Grade: **PGY 2** | 10. Class Code: **Class Code 11- Medical Resident** |

### II. Changes in Salary, Job Title, Grade, Department, Scheduled Hours, Shift, or Campus

| 11. Salary Change: | From: | To: | Percentage Increase: |
|---|---|---|---|

| 12. Class Code Change: | New Class Code: **Click Here** |
|---|---|

| 13. Job Code Change: | New Job Code: | Salary Class: **Click Here** |
|---|---|---|

New Job Title:                                    New Job Grade:

| 14. Shift Change: | New shift: | ☐ AM | ☐ PM | ☐ Night | ☐ Rotating | ☐ 12 Hour | ☐ 8 Hour |
|---|---|---|---|---|---|---|---|

| 15. Department Change: | New Dept. Number: | New Department Name: |
|---|---|---|

| 16. Campus Change: | New Entity: **Click Here** | New Campus or Facility: **Click Here** |
|---|---|---|

17. Reason for change (s) noted above:

18. For IT System/Application Access, Submit a Multi-System Access Request Form (MSAR). YES ☐   N/A ☐

19. EFFECTIVE DATE OF THE CHANGES(S) NOTED ABOVE:   **Click Here**
The effective date should coincide with the start date of a payroll period.

### III. Resignations (Voluntary Discharge) and Terminations (Involuntary Discharge)- Choose only one, not both

| 20. Voluntary or Involuntary? **Involuntary Termination** | 21. Effective Date: **4/10/12** | 22. Proper Notice Given?  **Click Here** |
|---|---|---|
| | | 23. Would you re-employ?  **Click Here** |

*For any termination:* You must attach a disciplinary action form or detailed memo describing the incident which resulted in the termination.

24. If voluntary resignation, why? If no rehire recommendation, why?  *Terminated effective 4/10/12; evaluations and other information on file in dept and with HR*

### V. Signatures & Date

Vice President  Katherine G. Stephens, PhD, MBA, FACHE, VP Medical Education, Research & DIO
(required for pay changes exceeding normal guidelines)
Management Representative  Margie S. Bodie, BS, AD, Resident/Student Svcs, x4-4429
(please include dept name & telephone number)
Human Resources Representative

By typing my name in the appropriate area above, I certify this to be my electronic signature.

Revised 12/10

USC(Irani)0464

## Palmetto Health Employee Change of Status
### Indicate what change is occurring (choose all that apply):

- [ ] Termination (Involuntary)
- [ ] Resignation (Voluntary)
- [ ] Severance
- [ ] Retirement
- [ ] Salary Change
- [ ] Transfer to another department
- [ ] Transfer to another campus
- [ ] Scheduled Hours Change
- [ ] Job Reassignment
- [x] Other

### I. Current Information: This section must be completed

1. Employee Name: **Afraaz Irani, MD**  |  2. Employee Number: 103178

3. Department Name: **Orthopaedic Surgery**  |  4. Department Number: **7130**  |  5. Entity: **51- Richland**  |  6. Campus: **Richland**

7. Job Title: **Medical Resident**  |  8. Job Code: **602971**  |  9. Job Grade: **PGY 2**  |  10. Class Code: **Class Code 11- Medical Resident**

### II. Changes in Salary, Job Title, Grade, Department, Scheduled Hours, Shift, or Campus

**11. Salary Change:**  From:  To:  Percentage Increase:

**12. Class Code Change:**  New Class Code: **Click Here**

**13. Job Code Change:**  New Job Code:  Salary Class: **Click Here**

New Job Title:  New Job Grade:

**14. Shift Change:**  New shift:  [ ] AM  [ ] PM  [ ] Night  [ ] Rotating  [ ] 12 Hour  [ ] 8 Hour

**15. Department Change:**  New Dept. Number:  New Department Name:

**16. Campus Change:**  New Entity: **Click Here**  New Campus or Facility:  **Click Here**

17. Reason for change (s) noted above:  *Resident placed on suspension without pay as of retro 3/1/2012 and to continue until April 10, 2012- when final action by GMEC occurs.*

18. For IT System/Application Access, Submit a Multi-System Access Request Form (MSAR). YES [ ]  N/A [ ]

19. EFFECTIVE DATE OF THE CHANGES(S) NOTED ABOVE:  **Click Here**
The effective date should coincide with the start date of a payroll period.

### III. Resignations (Voluntary Discharge) and Terminations (Involuntary Discharge)- Choose only one, not both

20. Voluntary or Involuntary? **Click Here**  |  21. Effective Date:  |  22. Proper Notice Given?  **Click Here**
|  |  |  23. Would you re-employ?  **Click Here**

*For any termination: You must attach a disciplinary action form or detailed memo describing the incident which resulted in the termination.*

24. If voluntary resignation, why? If no rehire recommendation, why?

### V. Signatures & Date

Vice President  Katherine G. Stephens, PhD, MBA, FACHE, VP for Medical Education & Research
(required for pay changes exceeding normal guidelines)

Management Representative  Margie S. Bodie, AD, Resident/Student Svcs  3/2/12
(please include dept name & telephone number)

Human Resources Representative

By typing my name in the appropriate area above I certify this to be my electronic signature.

Revised 12/10

USC(Irani)0465



**Ogletree Deakins**



OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*Attorneys at Law*

1320 Main Street, Suite 600
Columbia, SC 29201-3266
Telephone: 803.252.1300
Facsimile: 803.254.6517
www.ogletreedeakins.com

Katherine Dudley Helms
kathy.helms@ogletreedeakins.com

April 22, 2013



Mr. Gregory B. Somers
Investigator
U.S. Equal Employment Opportunity Commission
301 North Main Street, Suite 1402
Greenville, SC 29601

RE:    Afraaz Irani v. Palmetto Health
       EEOC No. 436-2013-00565

Dear Mr. Somers:

Palmetto Health has received the above-reference Charge and asked that I respond on their behalf. Please forward all future correspondence and inquiries directly to me with copies to:

Ms. Gwen Hill
Palmetto Health
293 Greystone Boulevard
Columbia, SC 29210

I believe that Dr. Irani's Charge is admittedly untimely. If you note the date of the wrong-doing in his Charge, which is the date on which his grievance proceedings terminated with a denial of his grievance (06.01.12), that is more than 300 days prior to the filing of his Charge. Although it does not impact the statute of limitations, Dr. Irani has been and continues to be represented by counsel. Given the untimeliness of his filing, the Charge should be summarily dismissed.

Sincerely,

Kathy

Katherine Dudley Helms

KDH:bas
By Certified Mail
cc:    Ms. Gwen Hill

---

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas
Denver ▪ Detroit Metro ▪ Greenville ▪ Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ Los Angeles ▪ Memphis ▪ Miami
Minneapolis ▪ Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Orange County ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland
Raleigh ▪ St. Louis ▪ St. Thomas ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Stamford ▪ Tampa ▪ Torrance ▪ Tucson ▪ Washington

USC(Irani)0466

# Thomas Affidavit Exhibit L

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | |
| | ) | **AFFILIATION AGREEMENT FOR** |
| | ) | **MEDICAL EDUCATION, RESEARCH** |
| **COUNTY   OF   RICHLAND** | ) | **AND OTHER RELATED ACTIVITIES** |

**THIS AGREEMENT** is made and entered into to be effective January 1, 2009, by and between Palmetto Health (hereinafter referred to as "Palmetto Health") and the University of South Carolina, a public higher education institution of the State of South Carolina (hereinafter referred to as the "University").

### WITNESSETH:

**WHEREAS,** Palmetto Health and the University each recognize that Palmetto Health benefits from an affiliation with the University through the enrichment of its medical education, research, and other related programs and the care of certain of its patients; and

**WHEREAS,** the University and Palmetto Health each recognize that the University and its School of Medicine benefit from an affiliation with Palmetto Health by having available for their faculty and medical students opportunities for clinical education, research, patient care, and other related activities afforded by Palmetto Health, its medical education programs, and facilities;

**NOW, THERFORE,** for and in consideration of the mutual covenants and promises contained herein, the receipt and sufficiency of which are acknowledged, Palmetto Health and the University agree as follows:

1. **DEFINITIONS**

    1.1    <u>Palmetto Health</u> – The union of Richland Memorial Hospital and Baptist Health Care System of South Carolina, jointly known as "Palmetto Health".

    1.2    <u>Palmetto Health Professional and Administrative Directors</u> – Individuals appointed by Palmetto Health to direct the activities of a professional department (such as Radiology, Laboratory, Emergency Medicine, etc.) of Palmetto Health or direct an administrative or financial department of Palmetto Health.

    1.3    <u>Chief Academic Officer (CAO)</u> – The person who serves as the overall Director of Palmetto Health's graduate medical education and research programs.

    1.4    <u>Dean</u> – The person appointed by the President of the University to administer the School of Medicine.

1

1.5    DC/DE – The person who serves concurrently as the Department Chairman and Director of Education for a University School of Medicine department and the corresponding Palmetto Health graduate medical education program.

1.6    Department Chairman (DC) – The person who serves as the Chairman of a department within the University School of Medicine.

1.7    Director of Education (DE) – The person who serves as the Director of a Palmetto Health graduate medical education program.

1.8    Faculty – Person(s), to include, but not limited to, full-time faculty and private physicians with a University academic appointment, who participate in the education and training of medical students and/or residents.

1.9    Full-time Faculty – Person(s) with a University academic appointment who participate in the University Clinical Faculty Practice Plan ("Plan") and who are paid a base salary, in whole or in part, by the University or one of its affiliated institutions for participating in the education and training of medical students and/or residents.

1.10   Graduate Medical Education – The phase of medical education that prepares physicians for practice in a medical specialty or subspecialty by focusing on the development of clinical skills and professional competencies and on the acquisition of detailed factual knowledge.

1.11   Medical Education Program – Meetings, seminars, and other activities (including both clinical and classroom instruction) at Palmetto Health which make educational and training experiences available to trainees at the undergraduate, graduate, and continuing education levels.

1.12   Medical Student – Person(s) enrolled in the University's School of Medicine seeking a medical doctor degree.

1.13   Private Physician – A community or Palmetto Health-based physician who is not a full-time faculty member as defined above, who may or may not have a faculty appointment, and who may or may not receive a part-time stipend.

1.14   Resident – A licensed physician of Palmetto Health enrolled in a graduate medical education program to receive residency training in a medical specialty or fellowship training in a medical subspecialty.

1.15   Vice President for Medical Affairs – The person appointed by the President of the University to coordinate the medical affairs for the University.

2

Palmetto Health - 001808

2. **JOINT PLANNING**

2.1    The University and Palmetto Health agree that it is in their mutual best interest to participate in ongoing joint planning regarding matters of mutual concern.

To that end, the University's School of Medicine and Palmetto Health, working together in good faith, will address matters such as: identification of the facilities and equipment needs of the parties not currently available and a plan whereby these resources can be sought; projections for new programs and facilities development; and identification of efforts needed to enhance funding of patient care, medical education, research, and other related programs at Palmetto Health by local, state, federal, and other potential funding sources. The items referenced above are identified for joint planning purposes only and may be modified as circumstances warrant.

2.2    Nothing contained in this paragraph shall be construed as obligating the University or Palmetto Health to pay any amount or assume any debt or funding except as expressly provided in this Agreement.

2.3    The University endorses Palmetto Health's mission and vision statements and its commitment to maintain and develop its medical education and research programs.

2.4    Palmetto Health endorses the University School of Medicine's mission and goals as set forth in its Strategic Plan, to continue as a community-based School of Medicine and Palmetto Health shall actively cooperate with the University School of Medicine to encourage private physicians to be actively involved in the medical education programs.

3. **MEDICAL STUDENT EDUCATION AND GRADUATE MEDICAL EDUCATION PROGRAMS**

3.1    Palmetto Health shall accept University medical students for clinical experience at Palmetto Health in such specialties and in such numbers as may be agreed upon by the parties, as is required for program accreditation. Principal responsibility for education of medical students rests with the University and its full-time faculty.

3.2    Palmetto Health will work with the School of Medicine to assure that adequate space and resources such as call rooms, conference rooms, library resources, clinical learning opportunities, etc. are available for all educational requirements of medical students. Palmetto Health and the School of Medicine will share the responsibility for ensuring an appropriate learning environment and that clinical instruction occurs in an atmosphere of mutual respect and collegiality between faculty, residents, medical students and staff. The School of Medicine shall have ultimate authority for all academic affairs as they relate to medical student

3

education and the appointment and assignment of faculty responsible for medical student teaching. School of Medicine Department Chairs shall have the authority to assure faculty and student reasonable access to appropriate resources for medical student education.

3.3     Graduate medical education programs at Palmetto Health shall be under the primary sponsorship of Palmetto Health. The contribution of the University to these programs shall be recognized in the names of the programs.

3.4     Palmetto Health shall be ultimately responsible, after consultation with the University, for the program design of its graduate medical education programs and the establishment of policies and procedures relative thereto, as well as for the accreditation of those programs.

3.5     The parties agree that one person will be selected to concurrently serve as the Department Chairman of a University School of Medicine department (Department Chairman) and the Director of Education for the corresponding Palmetto Health graduate medical education program (Director of Education), hereinafter referred to as the DC/DE. This dual appointment is applicable to the following medical school departments and Palmetto Health graduate medical education programs: Family Medicine, Internal Medicine, Obstetrics and Gynecology, Orthopedics, Ophthalmology, General Surgery, Pediatrics, Psychiatry, and other joint graduate medical education programs. The DC/DE will be selected, retained and evaluated in accordance with the procedures set forth in Attachment A, "Roles, Responsibilities, and Accountability of the Department Chair (DC)/Director of Education (DE)," which is attached hereto, incorporated into, and made a part of this Agreement.

## 4.     PALMETTO HEALTH MEDICAL AND DENTAL STAFF APPOINTMENTS

Full-time faculty members will be recommended to Palmetto Health by the Dean of the University's School of Medicine for appointment to a Palmetto Health Hospital's Medical and Dental Staff; however, such membership is subject to the express approval and authorization of Palmetto Health's Board of Directors, in accordance with the applicable Palmetto Health Hospital's Medical and Dental Staff Bylaws and other policies, procedures, rules, regulations, and resolutions adopted by Palmetto Health's Board of Directors, from time to time.

## 5.     MANAGEMENT PRINCIPLES

5.1     This Affiliation Agreement shall not compromise the governance, control or operation of Palmetto Health or of the University by their respective governing bodies and chief executive officers.

5.2     Professional and administrative directors of Palmetto Health departments and clinics shall be appointed by and be responsible to Palmetto Health. Palmetto

4

Palmetto Health - 001810

Heath professional directors and their associates shall be encouraged by Palmetto Health to participate in medical education, research, and other related programs to the extent such actions will not interfere with their primary responsibilities to Palmetto Health and its patients.

5.3    There shall be at least an annual meeting of representatives of the senior management of Palmetto Health and the University to monitor implementation of, compliance with, and enforcement of this Agreement, and to discuss matters of concern which may arise under this Agreement and/or to discuss other matters of mutual interest regarding medical education, research, and other related programs.

5.4    The University shall provide for representation of Palmetto Health by at least one (1) person selected by Palmetto Health to serve on the Executive Committee of the University School of Medicine and Palmetto Health shall provide for representation of the University School of Medicine by at least one (1) person selected by the University to serve on the Medical Executive Committee of the Palmetto Health Richland Medical and Dental Staff.

## 6.    FINANCIAL PRINCIPLES

6.1    Unless otherwise agreed in writing by the CAO and the Dean, Palmetto Health shall assume its direct costs of salaries, fringe benefits, and space requirements for its residents located at Palmetto Health and shall also assume the salaries and fringe benefits of certain mutually agreed upon support personnel needed to administer the graduate medical education programs; provided, however, as set forth in Attachment A, the University and Palmetto Health have agreed to share certain costs associated with one person serving as the DC/DE of a medical school department and the corresponding Palmetto Health graduate medical education program. Palmetto Health shall assume financial responsibility only for those residents, with whom it has contracted, except as may be separately agreed on a case-by-case basis between Palmetto Health, the University, or other institutions.

6.2    The University shall continue to assume its direct costs, including salaries and fringe benefits, of faculty and support personnel and the cost of their space, supplies, and related services associated with their medical education programs at Palmetto Health; provided, however, as set forth in Attachment A the University and Palmetto Health have agreed to share certain costs associated with one person serving as the DC/DE of a medical school department and the corresponding Palmetto Health graduate medical education program.

6.3    The Commission on Higher Education ("CHE"), the Federal Government, the University and Palmetto Health recognize that there are costs to Palmetto Health in serving as a major site for the University's medical education and research programs. The amount of Seven Hundred Seventy Thousand Four Hundred Eighty ($770,480.00) Dollars as reimbursement for the indirect costs of its

5

medical education program at Palmetto Health has been approved by Palmetto Health and University for the year beginning July 1, 2008. Palmetto Health and the University agree that Palmetto Health will receive and accept as full reimbursement for indirect costs, the amounts recommended by CHE and appropriated by the South Carolina Legislature for fiscal year 2008-2009 and subsequent years of this Agreement. Both Palmetto Health and the University shall have input as to the amount to be requested by University through CHE for indirect cost reimbursement for 2009-2010; provided, however, that the University agrees to seek, in good faith, CHE approval for amounts that will be no less than the net amount requested by University through CHE for 2008-2009 (i.e., $770,480.00), plus an increment equal to the percentage increase requested by CHE for the overall High Education formula in subsequent years as applicable.

6.4    The University further agrees that all monies appropriated by the S.C. Legislature to fund Palmetto Health's indirect costs and included in the University's budget will be remitted, on a pro rata monthly basis, in approximately equal shares, or as otherwise agree in writing by the parties.

6.5    Recognizing the contributions made to medical education by the State of South Carolina through its Area Health Education Consortium, Palmetto Health and the University agree to consult and cooperate together and with appropriate state and community agencies to obtain the necessary monies to fund and the necessary resources to continue graduate medical education programs at Palmetto Health.

6.6    Palmetto Health and the University's School of Medicine will actively collaborate to ensure that Palmetto Health's graduate medical education programs operate in an effective manner and in compliance with regulatory and accreditation standards. Palmetto Health and the School of Medicine will share the responsibility for ensuring an appropriate learning environment and that residency education occurs in an atmosphere of mutual respect and collegiality between faculty, residents, medical students and staff. Palmetto Health shall make payment to the School of Medicine for teaching and supervision provided to Palmetto Health's graduate medical education programs according to separate agreements entered into by the parties. Such separate agreements shall specify the compensation paid to the School of Medicine to supply all necessary faculty to meet the requirements for the faculty to resident ratio for each specialty, as well as medical resident time spent in School of Medicine private practices.

7.    **PUBLIC RELATIONS AND PUBLICATIONS**

Palmetto Health and the University each agree to recognize the other as equal partners in their public relations activities and publications concerning joint medical education, research, and other related programs.

6

Palmetto Health - 001812

8.  **CONTINUING MEDICAL EDUCATION**

Palmetto Health and the University each agree to jointly organize and fund a single organization to be known as the University of South Carolina School of Medicine-Palmetto Health Richland Continuing Medical Education Organization (hereinafter referred to as USCSOM-PHR CME ORG). The USCSOM-PHR CME ORG will have full responsibility for the conduct of high quality CME programs on behalf of the University of South Carolina School of Medicine and Palmetto Health Richland. The USCSOM-PHR CME ORG is also responsible for ensuring its full accreditation by the Accreditation Council for Continuing Medical Education (ACCME).

The USCSOM-PHR CME ORG shall be directed by a Steering Committee (CMESC) comprised of no more than thirty, and no less than twelve, members to be appointed by mutual agreement of the Dean and the CAO.

The Dean and CAO shall serve as co-chairs of the CMESC. They shall comprise the CMESC Executive Committee, which shall be empowered to act in the name of the CMESC between CMESC meetings and in accordance with established policies.

The USCOM-PHR CME ORG shall be administered by the Assistant Dean for CME and Faculty Development, who shall be appointed by mutual agreement of the Dean and CAO with advice and consultation from the CMESC and who shall serve as an Ex-Officio member of the CMESC Executive Committee.

9.  **RESEARCH PROGRAMS**

Palmetto Health and the University will collectively work together to support research programs to foster biomedical research and provide infrastructure resources for the development of health-related research according to separate agreements entered into by the parties.

10.  **DEVELOPMENT ACTIVITIES**

Palmetto Health and the University each agree to actively collaborate together on development activities pertinent to joint medical education, research, and other related programs. Revenues generated from such activities will be deposited in the University's Educational Foundation and the foundations supporting Palmetto Health according to a formula mutually agreed upon by both the Palmetto Health and the University at the start of the development activity.

11.  **BILLING COMPLIANCE**

The University School of Medicine and Palmetto Health have a commitment to ensure that its affairs are conducted in accordance with applicable law. The University School of Medicine – Palmetto Health Billing Compliance Plan has the following key features:

7

Palmetto Health - 001813

- A jointly hired and supervised individual, who will oversee the billing compliance plan and direct its efforts;

- Incorporation of standards and policies that guide University and Palmetto Health personnel with regard to professional fee billing;

- Coordinated training of clinical staff and billing personnel concerning applicable billing requirements and University and Palmetto Health policies;

- A uniform mechanism for faculty and other employees to raise questions and receive appropriate guidelines concerning professional fee billing;

- Regular chart and billing reviews by Palmetto Health and University personnel and external consultants to assess compliance and to identify potential issues;

- A process for individuals to report instances of possible non-compliance and for such reports to be fully and independently reviewed; and

- Corrective action plans to address any instances of non-compliance with University and Palmetto Health policies or billing requirements.

## 12. **TEACHING CLINIC FACILITIES**

Palmetto Health and the University will actively collaborate to ensure the effective and efficient operation of Palmetto Health's Teaching Clinic Facilities according to the specific agreements outlined in a separate memorandum of understanding.

## 13. **MISCELLANEOUS**

13.1    Medical Student Safety: Should a medical student be exposed to an infectious, environment or other occupational hazard, during the course of his/her clinical experience at Palmetto Health, the responsibility for initial evaluation and treatment will be shared by the University (during regular office hours) and Palmetto Health (after regular office hours) as set forth in the School of Medicine Handbook. The parties acknowledge that subsequent treatment and follow-up shall be the sole responsibility of the University.

13.2    Insurance: Palmetto Health and the University shall secure and maintain insurance with respect to their respective staff, students and employees who will work at Palmetto Health during the term of this Agreement, including, but not limited to, Workers' Compensation and General and Professional Liability insurance providing minimum limits of liability as follows:

Workers' Compensation Requirements          Statutory

8

Palmetto Health - 001814

General and Professional Liability            Minimum limits equal to maximum
                                             statutory liability of Palmetto Health
                                             and the University

13.3    Disclaimer of Employment of Employees.  Except as may be agreed in the case
        of dual appointments, no person employed by Palmetto Health shall be
        considered an employee of the University, and the University shall have no
        liability for payment of their wages, payroll taxes and other expenses of
        employment; and no person employed by the University shall be considered an
        employee of Palmetto Health; and Palmetto Health shall have no liability for
        payment of wages, payroll taxes, and other expenses of employment.

13.4    Notices.  All notices, requests, demands and other communications hereunder
        shall be in writing and shall be deemed to have been duly given, if mailed by
        certified or registered mail, postage prepaid:

        If to Palmetto Health:         President and Chief Executive Officer
                                       Palmetto Health
                                       Columbia, S.C.  29203

                                       with a copy to: CAO

        If to the University:          President
                                       University of South Carolina
                                       Columbia, S.C.  29208

                                       with a copy to: Dean
                                       University of South Carolina School of Medicine

13.5    Authorization for Agreement.  The execution and performance of this Agreement
        by Palmetto Health and the University have been duly authorized by their
        respective governing bodies.

13.6    Sole Agreement.  This Agreement, including Attachment A, constitutes the entire
        Affiliation Agreement for Medical Education, Research, and Other Related
        Activities between the University and Palmetto Health.  No modification,
        amendment or supplement to this Agreement shall be effective unless reduced to
        writing and signed by both parties.

13.7    Governing Law.  This Agreement shall be construed under laws of the State of
        South Carolina.

13.8    Dispute Resolution.  Any disputes that arise as a result of matters in this
        agreement shall be resolved at the lowest organizational level possible.  Disputes
        that cannot be resolved below the level of the CAO of Palmetto Health and Dean
        of the University School of Medicine will be brought to these persons for

9

Palmetto Health - 001815

resolution. If still unresolved, the issue will be forwarded to the Chief Executive Officer of Palmetto Health and the President of the University.

14.    **TERM**

The term of this Agreement shall be for a period of two (2) years beginning January 1, 2009, and ending December 31, 2010. The parties anticipate that this Agreement will be extended beyond the anticipated expiration date. To this end, on or before July 1, 2010, the parties will agree to modify, extend or allow this Agreement to expire.

15.    **TERMINATION**

In the event either party shall breach the terms and conditions contained in this Agreement, and if such breach shall continue for a period of thirty (30) days after the breaching party shall have been served with written notice of such breach by certified or registered mail from the non-breaching party, then in such event, the non-breaching party shall have, in addition to and not in lieu of all of the rights to which it may be entitled to hereunder and/or by law, the right to terminate this Agreement; provided, however, at least twelve (12) months written notice must be given prior to the effective date of termination and termination can only occur on June 30 of any year.

**IN WITNESS WHEREOF,** the undersigned have entered into this Agreement to be effective as of the date first written above.

**PALMETTO HEALTH**

_____
Senior Vice President for Quality,
Medical Education and Research
and Chief Academic Officer
Palmetto Health

_____
President and Chief Executive Officer
Palmetto Health

_____
Chairman, Board of Directors
Palmetto Health

**UNIVERSITY OF SOUTH CAROLINA**

_____
Vice President for Medical Affairs and Dean
University of South Carolina
School of Medicine

_____
President
University of South Carolina

_____
Chairman, Board of Trustees
University of South Carolina

10

Palmetto Health - 001816

ATTACHMENT A

ROLES, RESPONSIBILITIES, AND ACCOUNTABILITY
OF THE
DEPARTMENT CHAIR (DC)/DIRECTOR OF EDUCATION (DE)

I.     **SELECTION OF THE DEPARTMENT CHAIRMAN/DIRECTOR OF EDUCATION**

The selection of one person to serve as the DC/DE for the programs set forth in Section 3.5 of this Affiliation Agreement shall be as follows:

A.     The Dean of the University of South Carolina School of Medicine ("Dean") and the Palmetto Health CAO will conduct a search for a Department Chairman/Director of Education "DC/DE" in compliance with University guidelines. If a search committee is appointed, its membership will be one-half (1/2) University and one-half (1/2) Palmetto Health. The Dean and the CAO will instruct the search committee as to the extent of the search, budget and job description (including period of appointment). Expenses of the search will be shared equally between the University and Palmetto Health.

B.     The Dean, in consultation with the University's Provost and President and the CAO, in consultation with Palmetto Health's President and Chief Executive Officer, will select a final candidate and negotiate salary, benefits, and other mutually agreed upon expenses.

C.     It is acknowledged by the parties that most persons being considered for the DC/DE position will insist on having a University tenured faculty position. It is anticipated by the parties, that unless otherwise agreed upon by Palmetto Health and the University, the DC/DE will be on the payroll of the University and the University will be reimbursed by Palmetto Health for fifty percent (50%) of the DC/DE's salary, benefits and other mutually agreed upon expenses of the DC/DE, excluding the medical school departmental budget which will be the responsibility of the University.

In general, the DC/DE is appointed for an initial maximum two (2) year term, which may be renewed by mutual agreement by the Dean and the CAO.

D.     If, after twelve (12) months, the parties cannot agree on one person to serve as the DC/DE, either party has the option to discontinue the joint search. Thereafter, the University, after consultation with the CAO, will be solely responsible for the selection, retention, and compensation of an

11

Palmetto Health - 001817

individual to serve as the Department Chairman, and Palmetto Health, after consultation with the Dean, will be solely responsible for the selection, retention, and compensation of an individual to serve as the Director of Education. Notwithstanding the above, the University agrees that its full-time faculty will continue to participate in Palmetto Health's graduate medical education program to the extent required to continue the accreditation of that program; provided, however, in their capacity as faculty for Palmetto Health's graduate medical education program the full-time faculty will be under the direction of the Director of Education selected by Palmetto Health, which Director of Education will have a University faculty appointment unless otherwise agreed to by the Dean and the CAO. Palmetto Health will continue to accept University medical students for clinical experiences at Palmetto Health as set forth in Section 3.1 of this Agreement, and authority for the education of these students will ultimately be with the University School of Medicine.

The parties agree that it is in their mutual best interest to have one person serve as the DC/DE for the medical school departments and Palmetto Health graduate medical education programs as set forth in Section 3.5 of this Affiliation Agreement. Accordingly, if for any reason, one person does not concurrently serve as the DC/DE of the programs set forth in Section 3.5, the Dean and the CAO will meet at least every six (6) months to discuss options to reestablish the DC/DE position.

E.    If the position of DC/DE becomes vacant for reasons other than as set forth in Section (IV.B) below, the Dean and the CAO will, acting in reasonable good faith, appoint an individual to serve as the Acting DC/DE and immediately implement the search for a permanent DC/DE in accordance with Section I above. If within ten (10) calendar days of a vacancy, the Dean and the CAO cannot agree on an Acting DC/DE, the Dean will appoint, and the University fully compensate, an Acting Department Chairman and the CAO will appoint, and Palmetto Health fully compensate, an Acting Director of Education. The selection of a permanent DC/DE will proceed in accordance with Section I above. Notwithstanding the above, the University agrees that its full-time faculty will continue to participate in Palmetto Health's graduate medical education program to the extent required to continue the accreditation of the program; provided, however, in their capacity as faculty for Palmetto Health's graduate medical education program the full-time faculty will be under the direction of the Acting Director of Education selected by Palmetto Health. Palmetto Health will continue to accept University medical students for clinical experiences at Palmetto Health as set forth in Section 3.1 of this Agreementand authority for the education of these students will ultimately be with the University School of Medicine.

12

Palmetto Health - 001818

## II.    ACTIVITIES AND ACCOUNTABILITY

The DC/DE will:

A.    Attend Palmetto Health and University of South Carolina School of Medicine meetings as required by the Dean and/or the CAO.

B.    Not reassign any of his/her official duties without the written consent of the Dean and the CAO.

C.    Properly oversee, as determined by the CAO, all aspects of Palmetto Health graduate medical education programs including sub specialty fellowship programs under the direction of the CAO.

D.    Maintain full and favorable accreditation of Palmetto Health graduate medical education and specialty fellowship programs under the direction of the CAO.

E.    Be responsible and accountable for all Ambulatory Care Clinic activities conducted in conjunction with Palmetto Health graduate medical education and specialty fellowship programs under his/her direction.

F.    Properly manage personnel and fiscal matters of the appropriate University School of Medicine department and Palmetto Health's graduate medical education program to the satisfaction of the Dean and the CAO.

G.    Be responsible and accountable for his/her department's adherence to the University School of Medicine-Palmetto Health Billing Compliance Plan as set forth in Section 11 of this Agreement.

H.    Properly supervise medical student experience to the satisfaction of the Dean (at all sites) and to the CAO (where educational issues overlap with Palmetto Health's Graduate Medical Education (GME) programs.

I.    Be accountable for activities and expectations outlined in the University School of Medicine missions and goals.

## III.    EVALUATION

A.    Annually, the DC/DE will be evaluated in writing by the Dean and CAO, based on mutually acceptable criteria and goals. Periodic oral evaluation(s) will be performed at the discretion of the CAO and Dean.

13

Palmetto Health - 001819

B.    At least every 6 months, the Dean and CAO will meet with each DC/DE to evaluate his/her goals.

## IV.    DISMISSAL OF THE DEPARTMENT CHAIRMAN/DIRECTOR OF EDUCATION

A.    The DC/DE may be dismissed at any time upon the mutual concurrence of the Dean and the CAO.

B.    If a dismissal is recommended by either the Dean or the CAO and they cannot agree on the recommendation within ten (10) working days, the issue will be presented to the appropriate Palmetto Health and University administrative personnel, to include Palmetto Health's President and Chief Executive Officer and the University's President, and others as determined by the respective institution, for their consideration.

If within ten (10) working days after notification the above-referenced administrative personnel cannot agree on a resolution of the issue, the DC/DE in question will immediately cease his/her functions and responsibilities with respect to the dual appointment as DC/DE. Thereafter, the University, after consultation with the CAO, will be solely responsible for the selection, retention, and compensation of an individual to serve as the Department Chairman, and Palmetto Health, after consultation with the Dean, will be solely responsible for the selection, retention, and compensation of an individual to serve as the Director of Education. Notwithstanding the above, the University agrees that its full-time faculty will continue to participate in Palmetto Health's graduate medical education program to the extent required to continue the accreditation of that program; provided, however, in their capacity as faculty for Palmetto Health's graduate medical education program the full-time faculty will be under the direction of the Director of Education, selected by Palmetto Health, which Director of Education will have a University faculty appointment unless otherwise agree to by the Dean and the CAO. Palmetto Health will continue to accept University medical students for clinical experiences at Palmetto Health as set forth in Section 3.1 of this Agreement, and authority for the education of these students will ultimately be with the University School of Medicine.

C.    If faculty are jointly recruited after the effective date of this Agreement and funded as DC/DE by Palmetto Health and the University into tenured positions within the University and subsequently are removed from or requested to resign their positions but retain their tenured faculty appointments, Palmetto Health and the University will share the cost of funding their base salaries and fringe benefits at the proportions in place prior to their removal or resignation from the position, up to the date on which the faculty member would have been in the position two (2) years.

14

Palmetto Health - 001820