# Thomas Affidavit Exhibit T

ORTHOPAEDIC APPLICANT INTERVIEW REVIEW

NAME: _Afroz Irani._

JILLIANS' IMPRESSION:     ~~EXCELLENT~~ / GOOD/ FAIR/ POOR

APPEARANCE: (PROFESSIONAL)
OK
SLOPPY

DEMEANOR: (APPROPRIATE)
NERVOUS
HAUGHTY/ ARROGANT
QUIET

_Names on
patient_

FIT WITHIN THE PROGRAM?     EXCELLENT / (GOOD)/     FAIR/     POOR

OVERALL IMPRESSION:          1  2  3  4  5  6  7  8  (9)  10

RATING:     #1 APPLICANT / TOP 10 / TOP THIRD / MIDDLE THIRD / NO GO

_Could go either way_

SIGNATURE: _____

ORTHOPAEDIC APPLICANT INTERVIEW REVIEW

NAME: _____A Fraaz Irani_____

JILLIANS' IMPRESSION:    EXCELLENT / GOOD/ FAIR/ POOR

APPEARANCE: (PROFESSIONAL)
             OK
             SLOPPY

DEMEANOR: (APPROPRIATE)
          NERVOUS
          HAUGHTY/ ARROGANT
          QUIET

FIT WITHIN THE PROGRAM?    EXCELLENT / (GOOD) / FAIR/ POOR

OVERALL IMPRESSION:    1  2  3  4  5  6  7 (8) 9  10

RATING:    #1 APPLICANT / TOP 10 / (TOP THIRD) / MIDDLE THIRD / NO GO

SIGNATURE: _____

ORTHOPAEDIC APPLICANT INTERVIEW REVIEW

NAME: _____Afer  Irani_____

JILLIANS' IMPRESSION:    (EXCELLENT) / GOOD/  FAIR/  POOR

APPEARANCE: (PROFESSIONAL)
             OK
             SLOPPY

DEMEANOR: (APPROPRIATE)
           NERVOUS
           HAUGHTY/ ARROGANT
           QUIET

FIT WITHIN THE PROGRAM?  (EXCELLENT) / GOOD/  FAIR/  POOR

OVERALL IMPRESSION:        1  2  3  4  5  6  7  8  9 (10)

RATING:    #1 APPLICANT / (TOP 10) / TOP THIRD / MIDDLE THIRD / NO GO

SIGNATURE: _____

## ORTHOPAEDIC APPLICANT INTERVIEW REVIEW

NAME: _____ Drani _____

JILLIANS' IMPRESSION:    EXCELLENT / (GOOD) / FAIR/  POOR

APPEARANCE: (PROFESSIONAL)
OK
SLOPPY

DEMEANOR: (APPROPRIATE)
NERVOUS
HAUGHTY/ ARROGANT
QUIET

FIT WITHIN THE PROGRAM? (EXCELLENT) /GOOD/  FAIR/  POOR

OVERALL IMPRESSION:    1  2  3  4  5  6  7  8 (9) 10

RATING:    #1 APPLICANT / (TOP 10) / TOP THIRD / MIDDLE THIRD / NO GO

SIGNATURE: _____

USC(Irani)0202

**From:**             Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
**Sent:**             Wednesday, August 10, 2011 10:01 AM
**To:**               David Koon; John Walsh
**Subject:**          Re: Fwd: Pt. ▓▓▓▓▓

John & David,
Pls. review for follow up.
Thank you,
Kathy
Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org


>>> Allison Turnley 8/9/2011 2:14 PM >>>
Please see concern below. I do not have an email address for Dr. Walsh.
Thanks -
Allison
Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org


>>> Edward Catalano 7/19/2011 2:46 PM >>>
Allison, This note should be forwarded to: Dr. Gretta Harper ( VP responsible for employed MDs), Dr. Walsh ( Chair of
the USC Dept. of Ortho), Kathy Stephens ( VP for education ) and Cheryl Coble. Thanks, EWC
Edward W. Catalano M.D.
VP Medical Affairs
Palmetto Health Richland Hospital
5 Richland Medical Park Drive
Columbia, SC 29203
Phone: 803 434 2819 Fax: 434 6668
e-mail: edward.catalano@palmettohealth.org

>>> Allison Turnley 7/14/2011 5:32 PM >>>
Dr. Catalano -
Please see below for information regarding a concern about an orthopedic resident and attending. Diane refers to the
resident as Dr. Orlani, however she pointed him out to me and he is actually Dr. Irani.
As a side note, I was in the trauma room before the orthopedic resident arrived, and I saw the injury to this man's arm.
It was an impressive injury. And the patient is an elderly man, I believe in his 70s or 80s.
Please let Diane or me know if you need additional information.
Allison
Allison Turnley, RN BSN MSM
Director of Nursing

1

USC(Irani)1081

Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org


>>> Diane Savage 7/11/2011 9:39 PM >>>
Mr. ▓▓▓▓ came to the ED with a traumatic partial amputation of his left forearm. His left arm was angulated, hand rotated approximately 180 degrees, muscle, bone, tendons, arteries, etc exposed. Dr. Orlani (?) from ortho was the consulting resident. He enter the trauma room and barely acknowledged the pt, did not introduce himself and proceeded to manipulate the fractured arm. Myself and Mandy, along with the ED resident asked him to wait before he moved the pt's arm so we could administer pain meds. I had to ask him twice to stop so I could give the meds. I had the meds in my hand. He showed no compassion for what the pt was experiencing. I asked Dr. Orlani to speak with the patients family and he was reluctant, but finally did speak with them. Dr. Spencer Robinson irrigated the wound with 1L of NS. When Dr. Orlani asked if the wound had been irrigated-I stated it had been irrigated with 1L. He stated "2" and I stated "no, 1L". He smiled and stated "2L" and I repeated "1". He remarked "we will say it was 2". I stated "no, it was 1. During the entire encounter I felt Dr. Orlani was not concerned for the pt, but more for himself and the work he had ahead of him. When Dr. Iaquinta entered the room, he too did not introduce himself to the pt and roughly removed the dressing and splint. The pt grimaced and moaned out in pain. Before myself or Mandy to ask about pain meds, Dr. Iaquinta grabbed the pts partially amputated extremity and twisted it to the anatomically correct position. The pt yelled out and came about a foot off of the stretcher. We had the means to make this pt comfortable and we instead inflicted undue pain and duress. Dr. Iaquinta very bluntly stated to the pt "we are going to have to cut off your arm".....a total lack of compassion or explanation. I have had many similar encounters with both of these physicians and have also heard other nurses and residents state the same. Please feel free to contact me for any needed information. Thanks, Diane
--------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)1082

**From:** John Walsh
**Sent:** Wednesday, August 10, 2011 10:04 AM
**To:** jhoov14@yahoo.com
**Subject:** Fwd: Pt. ▓▓▓▓▓

Sent from my Verizon Wireless Phone

----- Forwarded message -----
From: "Katherine Stephens" <Kathy.Stephens@PalmettoHealth.org>
Date: Wed, Aug 10, 2011 10:01 am
Subject: Fwd: Pt. ▓▓▓▓▓
To: "David Koon" <David.Koon@uscmed.sc.edu>, "John Walsh" <John.Walsh@uscmed.sc.edu>

John & David,

Pls. review for follow up.

Thank you,
Kathy

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org


>>> Allison Turnley 8/9/2011 2:14 PM >>>
Please see concern below.  I do not have an email address for Dr. Walsh.

Thanks -
Allison

Allison Turnley, RN BSN MSM
Director of Nursing

1

USC(Irani)0972

Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org


>>> Edward Catalano 7/19/2011 2:46 PM >>>
Allison, This note should be forwarded to: Dr. Gretta Harper ( VP responsible for employed MDs), Dr. Walsh ( Chair of the USC Dept. of Ortho), Kathy Stephens ( VP for education ) and Cheryl Coble. Thanks, EWC

Edward W. Catalano  M.D.
VP Medical Affairs
Palmetto Health Richland Hospital
5 Richland Medical Park Drive
Columbia, SC  29203
Phone: 803 434 2819  Fax: 434 6668
e-mail: edward.catalano@palmettohealth.org

>>> Allison Turnley 7/14/2011 5:32 PM >>>
Dr. Catalano -

Please see below for information regarding a concern about an orthopedic resident and attending.  Diane refers to the resident as Dr. Orlani, however she pointed him out to me and he is actually Dr. Irani.

As a side note, I was in the trauma room before the orthopedic resident arrived, and I saw the injury to this man's arm.  It was an impressive injury.  And the patient is an elderly man, I believe in his 70s or 80s.

Please let Diane or me know if you need additional information.

Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org


>>> Diane Savage 7/11/2011 9:39 PM >>>
Mr. ▓▓▓▓ came to the ED with a traumatic partial amputation of his left forearm.   His left arm was angulated, hand rotated approximately 180 degrees, muscle, bone, tendons, arteries, etc exposed.  Dr. Orlani (?) from ortho was the consulting resident.   He enter the trauma room and barely acknowledged the pt, did not introduce himself and proceeded to manipulate the fractured arm.   Myself and Mandy, along with the ED resident asked him to wait before he moved the pt's arm so we could administer pain meds.   I had to ask him twice to stop so I could give the meds.   I had the meds in my hand.  He showed no compassion for what the pt was experiencing.   I asked Dr. Orlani to speak with the patients family and he was reluctant, but finally did speak with them.   Dr. Spencer Robinson irrigated the wound with 1L of NS.  When Dr. Orlani asked if the wound had been irrigated-I stated it had been irrigated with 1L.   He stated "2" and I stated "no, 1L".   He smiled and stated "2L" and I repeated "1".   He remarked "we will say it was 2".   I stated "no, it was 1.   During the entire encounter I felt Dr. Orlani was not concerned for the pt, but more for himself and the work he had ahead of him.    When Dr. Iaquinta entered the room, he too did not introduce himself to the pt and roughly removed the dressing and splint.   The pt grimaced and moaned out in pain.    Before myself or Mandy to ask about pain meds, Dr. Iaquinta grabbed the pts partially amputated extremity and twisted it to the anatomically correct position.   The pt yelled out and came about a foot off of the stretcher.    We had the means to make this pt comfortable and we instead inflicted undue pain and duress.   Dr. Iaquinta very bluntly stated to the pt "we are going to have to cut off your arm".....a total lack of compassion or explanation.   I have had many similar encounters with

USC(Irani)0973

both of these physicians and have also heard other nurses and residents state the same.    Please feel free to contact me for any needed information.    Thanks, Diane

-------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.


---------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0974

**From:**               David Koon <David.Koon@uscmed.sc.edu>
**Sent:**              Wednesday, August 10, 2011 2:34 PM
**To:**                  Afraaz.irani@gmail.com; John Walsh
**Subject:**           FW: Fwd: Pt. ▓▓▓▓▓▓

Afraaz -

I'll need an explanation by the end of the day.

DK

_____
From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Wednesday, August 10, 2011 10:00 AM
To: David Koon; John Walsh
Subject: Re: Fwd: Pt. ▓▓▓▓▓▓

John & David,

Pls. review for follow up.

Thank you,
Kathy

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research ACGME Designated Institutional Official Palmetto Health Fifteen
Medical Park, Suite 202 Five Richland Medical Park Drive Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org


>>> Allison Turnley 8/9/2011 2:14 PM >>>
Please see concern below.  I do not have an email address for Dr. Walsh.

Thanks -
Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org>


>>> Edward Catalano 7/19/2011 2:46 PM >>>

1

USC(Irani)0789

Allison, This note should be forwarded to: Dr. Gretta Harper ( VP responsible for employed MDs), Dr. Walsh ( Chair of the USC Dept. of Ortho), Kathy Stephens ( VP for education ) and Cheryl Coble. Thanks, EWC

Edward W. Catalano  M.D.
VP Medical Affairs
Palmetto Health Richland Hospital
5 Richland Medical Park Drive
Columbia, SC  29203
Phone: 803 434 2819  Fax: 434 6668
e-mail: edward.catalano@palmettohealth.org

>>> Allison Turnley 7/14/2011 5:32 PM >>>
Dr. Catalano -

Please see below for information regarding a concern about an orthopedic resident and attending.  Diane refers to the resident as Dr. Orlani, however she pointed him out to me and he is actually Dr. Irani.

As a side note, I was in the trauma room before the orthopedic resident arrived, and I saw the injury to this man's arm. It was an impressive injury.  And the patient is an elderly man, I believe in his 70s or 80s.

Please let Diane or me know if you need additional information.

Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org>


>>> Diane Savage 7/11/2011 9:39 PM >>>
Mr. ▓▓▓▓ came to the ED with a traumatic partial amputation of his left forearm.  His left arm was angulated, hand rotated approximately 180 degrees, muscle, bone, tendons, arteries, etc exposed.  Dr. Orlani (?) from ortho was the consulting resident.  He enter the trauma room and barely acknowledged the pt, did not introduce himself and proceeded to manipulate the fractured arm.  Myself and Mandy, along with the ED resident asked him to wait before he moved the pt's arm so we could administer pain meds.   I had to ask him twice to stop so I could give the meds.  I had the meds in my hand.  He showed no compassion for what the pt was experiencing.  I asked Dr. Orlani to speak with the patients family and he was reluctant, but finally did speak with them.  Dr. Spencer Robinson irrigated the wound with 1L of NS.   When Dr. Orlani asked if the wound had been irrigated-I stated it had been irrigated with 1L.  He stated "2" and I stated "no, 1L".  He smiled and stated "2L" and I repeated "1".  He remarked "we will say it was 2".  I stated "no, it was 1.  During the entire encounter I felt Dr. Orlani was not concerned for the pt, but more for himself and the work he had ahead of him.   When Dr. Iaquinta entered the room, he too did not introduce himself to the pt and roughly removed the dressing and splint.  The pt grimaced and moaned out in pain.  Before myself or Mandy to ask about pain meds, Dr. Iaquinta grabbed the pts partially amputated extremity and twisted it to the anatomically correct position.  The pt yelled out and came about a foot off of the stretcher.   We had the means to make this pt comfortable and we instead inflicted undue pain and duress.   Dr. Iaquinta very bluntly stated to the pt "we are going to have to cut off your arm".....a total lack of compassion or explanation.   I have had many similar encounters with both of these physicians and have also heard other nurses and residents state the same.   Please feel free to contact me for any needed information.   Thanks, Diane

2

USC(Irani)0790

| From: | Afraaz Irani <afraaz.irani@gmail.com> |
|---|---|
| Sent: | Wednesday, August 10, 2011 6:24 PM |
| To: | David Koon |
| Cc: | John Walsh |
| Subject: | Re: FW: Fwd: Pt. ▮▮▮▮▮▮▮ |

Drs. Koon and Walsh.

I remeber this pleasant gentleman very well.

My first steps with all such traumatic wounds are the same. The patient had already been given fentanyl before my arrival. Therefore my first step is to inspect wound, and see his pain level before approving a possible overdose of narcotics to an 80+ year old male. Accordingly I inspected the wound first. He had some pain, then I waited for the additional dose of additional pain meds. All the manipulation was done by Iaquinto as was outlined in the prior email

I did introduce myself to the patient. My back was to the nurses, so not sure if they heard me. It is true that I can mumble and so that cannot be clear. Indeed the nurse here does not know the correct pronunciation of my name so I can work on better enunciation when introduction myself

I spoke with Iaquinto in the trauma bay. I called and he told me to stay at bedside he is coming down directly. The admission plan, everything was unknown, and I was instructed to say at bedside, accordingly I did not feel it appropriate to talk to the family until he had arrived as I was instructed.

Often in the setting of a traumatic injury, when the orthpaedist arrived, he/she is expected to immediately talk to family. In that situation I am less likely to jump the gun and speak to family, since it is important to wait a few extra minutes to get details correct, since this could potentially be a major surgery/life altering event.

It was a regrettable decision, but one that had to be done. Many of the staff were justifiably horrified at this, and wanted us to do more. However this was medically the correct decision. Indeed he had a heart attack during the procedure, and passed away a few days later. It is clear he could have not withstood a salvage procedure to his arm.

The patient was very thankful throughout and when I saw him on the floor we had great interactions. He remebered me from the trauma bay and shook my hand and thanked me again (although truth be told he was a real gentleman). I really did enjoy my time with him. It is a shame that he is no longer with us.

I remember we talked about how he was still able to do what he loved (metal/wood working) in his 80s. He was thankful that he was still there, and we talked about his family and how his children work with him in the shop. I do remeber ▮▮▮▮▮▮, and wish he was still with us.

Hope that clarifies things.

Thanks,
Afraaz

1

USC(Irani)0725

On Wed, Aug 10, 2011 at 2:34 PM, David Koon <David.Koon@uscmed.sc.edu> wrote:

Afraaz -

I'll need an explanation by the end of the day.

DK

_____
From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Wednesday, August 10, 2011 10:00 AM
To: David Koon; John Walsh
Subject: Re: Fwd: ▓▓▓▓▓▓▓▓

John & David,

Pls. review for follow up.

Thank you,
Kathy

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org


>>> Allison Turnley 8/9/2011 2:14 PM >>>
Please see concern below. I do not have an email address for Dr. Walsh.

Thanks -
Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org>


>>> Edward Catalano 7/19/2011 2:46 PM >>>
Allison, This note should be forwarded to: Dr. Gretta Harper ( VP responsible for employed MDs), Dr. Walsh ( Chair of the USC Dept. of Ortho), Kathy Stephens ( VP for education ) and Cheryl Coble. Thanks, EWC

USC(Irani)0726

Edward W. Catalano M.D.
VP Medical Affairs
Palmetto Health Richland Hospital
5 Richland Medical Park Drive
Columbia, SC 29203
Phone: 803 434 2819 Fax: 434 6668
e-mail: edward.catalano@palmettohealth.org

>>> Allison Turnley 7/14/2011 5:32 PM >>>
Dr. Catalano -

Please see below for information regarding a concern about an orthopedic resident and attending. Diane refers
to the resident as Dr. Orlani, however she pointed him out to me and he is actually Dr. Irani.

As a side note, I was in the trauma room before the orthopedic resident arrived, and I saw the injury to this
man's arm. It was an impressive injury. And the patient is an elderly man, I believe in his 70s or 80s.

Please let Diane or me know if you need additional information.

Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org>


>>> Diane Savage 7/11/2011 9:39 PM >>>
[redacted] came to the ED with a traumatic partial amputation of his left forearm. His left arm was angulated,
hand rotated approximately 180 degrees, muscle, bone, tendons, arteries, etc exposed. Dr. Orlani (?) from ortho
was the consulting resident. He enter the trauma room and barely acknowledged the pt, did not introduce
himself and proceeded to manipulate the fractured arm. Myself and Mandy, along with the ED resident asked
him to wait before he moved the pt's arm so we could administer pain meds. I had to ask him twice to stop so I
could give the meds. I had the meds in my hand. He showed no compassion for what the pt was experiencing. I
asked Dr. Orlani to speak with the patients family and he was reluctant, but finally did speak with them. Dr.
Spencer Robinson irrigated the wound with 1L of NS. When Dr. Orlani asked if the wound had been irrigated-I
stated it had been irrigated with 1L. He stated "2" and I stated "no, 1L". He smiled and stated "2L" and I
repeated "1". He remarked "we will say it was 2". I stated "no, it was 1. During the entire encounter I felt Dr.
Orlani was not concerned for the pt, but more for himself and the work he had ahead of him. When Dr. Iaquinta
entered the room, he too did not introduce himself to the pt and roughly removed the dressing and splint. The pt
grimaced and moaned out in pain. Before myself or Mandy to ask pain meds, Dr. Iaquinta grabbed the pts
partially amputated extremity and twisted it to the anatomically correct position. The pt yelled out and came
about a foot off of the stretcher. We had the means to make this pt comfortable and we instead inflicted undue
pain and duress. Dr. Iaquinta very bluntly stated to the pt "we are going to have to cut off your arm".....a total
lack of compassion or explanation. I have had many similar encounters with both of these physicians and have
also heard other nurses and residents state the same. Please feel free to contact me for any needed information.
Thanks, Diane
-----------------------------------------------------------------------------

USC(Irani)0727

From: Jagdr@aol.com
Subject: Re: Pt. ▮▮▮▮▮▮
Date: August 10, 2011 at 10:45 PM
To: John Walsh John.Walsh@uscmed.sc.edu

Wow

Sent from my Verizon Wireless 4GLTE smartphone

----- Reply message -----
From: "John Walsh" <John.Walsh@uscmed.sc.edu>
To: "jagdr@aol.com" <jagdr@aol.com>
Subject: Pt ▮▮▮▮▮▮
Date: Wed, Aug 10, 2011 9:18 pm


Sent from my Verizon Wireless Phone

----- Forwarded message -----
From: "Afraaz Irani" <afraaz.irani@gmail.com>
Date: Wed, Aug 10, 2011 6:23 pm
Subject: FW: Fwd: Pt. ▮▮▮▮▮▮
To: "David Koon" <David.Koon@uscmed.sc.edu>
Cc: "John Walsh" <John.Walsh@uscmed.sc.edu>

Drs. Koon and Walsh.

I remember this pleasant gentleman very well.

My first steps with all such traumatic wounds are the same. The patient had already been given fentanyl before my arrival.
Therefore my first step is to inspect wound, and see his pain level before approving a possible overdose of narcotics to an 80+
year old male. Accordingly I inspected the wound first. He had some pain, then I waited for the additional dose of additional pain
meds. All the manipulation was done by Iaquinto as was outlined in the prior email

I did introduce myself to the patient. My back was to the nurses, so not sure if they heard me. It is is true that I can mumble and
so that cannot be clear. Indeed the nurse here does not know the correct pronunciation of my name so I can work on better
enunciation when introduction myself

I spoke with Iaquinto in the trauma bay. I called and he told me to stay at bedside he is coming down directly. The admission plan,
everything was unknown, and I was instructed to say at bedside, accordingly I did not feel it appropriate to talk to the family until
he had arrived as I was instructed.

Often in the setting of a traumatic injury, when the orthpaedist arrived,  he/she is expected to immediately  talk to family. In that
situation I am less likely to jump the gun and speak to family, since it is important to wait a few extra minutes to get details
correct, since this could potentially be a major surgery/life altering event.

It was a  regrettable decision, but one that had to be done. Many of the staff were justifiably horrified at this, and  wanted us to do
more. However this was medically the correct decision. Indeed he had a heart attack during the procedure, and passed away a
few days later. It is clear he could have not withstood a salvage procedure to his arm.

The patient was very thankful throughout and when I saw him on the floor we had great interactions. He remebered me from the
trauma bay and shook my hand and thanked me again (although truth be told he was a real gentleman). I really did enjoy my time
with him. It is a shame that he is no longer with us.

I remember we talked about how he was still able to do what he loved (metal/wood working) in his 80s. He was thankful that he
was still there, and we talked about his family and how his children work with him in the shop. I do remeber Mr ▮▮▮▮▮ and wish
he was still with us.

Hope that clarifies things.

Thanks,
Afraaz

On Wed, Aug 10, 2011 at 2:34 PM, David Koon <David.Koon@uscmed.sc.edu> wrote:

Afraaz -

I'll need an explanation by the end of the day.

DK

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Wednesday, August 10, 2011 10:00 AM
To: David Koon; John Walsh
Subject: Re: Fwd: Pt ▓▓▓▓▓▓▓

John & David,

Pls. review for follow up.

Thank you,
Kathy

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Allison Turnley 8/9/2011 2:14 PM >>>
Please see concern below.  I do not have an email address for Dr. Walsh.

Thanks -
Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org>

>>> Edward Catalano 7/19/2011 2:46 PM >>>
Allison, This note should be forwarded to: Dr. Gretta Harper ( VP responsible for employed MDs), Dr. Walsh ( Chair of the USC Dept. of Ortho), Kathy Stephens ( VP for education ) and Cheryl Coble. Thanks, EWC

Edward W. Catalano  M.D.
VP Medical Affairs
Palmetto Health Richland Hospital
5 Richland Medical Park Drive
Columbia, SC  29203
Phone: 803 434 2819  Fax: 434 6668
e-mail: edward.catalano@palmettohealth.org

>>> Allison Turnley 7/14/2011 5:32 PM >>>
Dr. Catalano

Please see below for information regarding a concern about an orthopedic resident and attending.  Diane refers to the resident as Dr. Orlani, however she pointed him out to me and he is actually Dr. Irani.

As a side note, I was in the trauma room before the orthopedic resident arrived, and I saw the injury to this man's arm. It was an impressive injury. And the patient is an elderly man, I believe in his 70s or 80s.

Please let Diane or me know if you need additional information.

Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org>

>>> Diane Savage 7/11/2011 9:39 PM >>>
Mr▮▮▮▮came to the ED with a traumatic partial amputation of his left forearm.   His left arm was angulated, hand rotated approximately 180 degrees, muscle, bone, tendons, arteries, etc exposed.  Dr. Orlani (?) from ortho was the consulting resident.  He enter the trauma room and barely acknowledged the pt, did not introduce himself and proceeded to manipulate the fractured arm.  Myself and Mandy, along with the ED resident asked him to wait before he moved the pt's arm so we could administer pain meds.   I had to ask him twice to stop so I could give the meds.  I had the meds in my hand.  He showed no compassion for what the pt was experiencing.  I asked Dr. Orlani to speak with the patients family and he was reluctant, but finally did speak with them.  Dr. Spencer Robinson irrigated the wound with 1L of NS.  When Dr. Orlani asked if the wound had been irrigated-I stated it had been irrigated with 1L.  He stated "2" and I stated "no, 1L".  He smiled and stated "2L" and I repeated "1".  He remarked "we will say it was 2".  I stated "no, it was 1.  During the entire encounter I felt Dr. Orlani was not concerned for the pt, but more for himself and the work he had ahead of him.   When Dr. Iaquinta entered the room, he too did not introduce himself to the pt and roughly removed the dressing and splint.  The pt grimaced and moaned out in pain.  Before myself or Mandy to ask about pain meds, Dr. Iaquinta grabbed the pts partially amputated extremity and twisted it to the anatomically correct position.  The pt yelled out and came about a foot off of the stretcher.   We had the means to make this pt comfortable and we instead inflicted undue pain and duress.   Dr. Iaquinta very bluntly stated to the pt "we are going to have to cut off your arm".....a total lack of compassion or explanation.   I have had many similar encounters with both of these physicians and have also heard other nurses and residents state the same.   Please feel free to contact me for any needed information.   Thanks, Diane
--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

------------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

------------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0934

| From: | Diane Savage <Diane.Savage@PalmettoHealth.org> |
|---|---|
| Sent: | 12 August, 2011 8:18 PM |
| To: | Allison Turnley; David Koon |
| Cc: | wcgrsq911@mindspring.com |
| Subject: | Re: patient encounter |

All,
   I read Dr. Irani's response and wish he had displayed the compassion and care he described.   Upon his arrival to the trauma room he did not inquire about the pt's vital signs nor pain meds, so I am unsure how this could have been a concern for with holding additional doses.   ▓▓▓▓▓ had received the first dose of pain meds about 45 minutes before Dr. Irani arrived.  Dr. Irani waited on the additional dose of pain meds after I stopped him from manipulating the pts injury so the meds could be administered.   Dr. Irani was reluctant to wait on the meds and kind of smirked at me when I asked him a second time to allow us to give the meds.   Dr. Irani's response was something along the lines that it would only be painful briefly.   I did ask him to speak with the family, after he had evaluated the injury and about a half hour had passed, not to give details, but to alleviate the anxiety they were experiencing....it was about an hour before he did speak with the family.   This appeared to be a very close family and they were very anxious.    From my recollection of the time in the trauma bay, Dr. Irani only spoke briefly with the pt and when he did, it lacked compassion.   I have worked in the ED for 26 years and this was a "horrific" injury as Dr. Irani described below, but I have seen worse...I did not believe his arm would be salvagable---my angst was at the lack of sensitivity displayed by Drs. Irani and Iaquinta.

Sincerely,
   Diane Savage

>>> David Koon <David.Koon@uscmed.sc.edu> 08/11/11 7:10 AM >>>
Allison -

Please forward this to Diane. I would like to know if his explanation below matches their memory of Mr. B's care. Also, if there were others in attendance (Mandy, Dr. Robinson) I would like to have their version as well.

Thanks

David Koon

_____
From: Afraaz Irani [afraaz.irani@gmail.com]
Sent: Wednesday, August 10, 2011 6:23 PM
To: David Koon
Cc: John Walsh
Subject: Re: FW: Fwd:

Drs. Koon and Walsh.

I remeber this pleasant gentleman very well.

My first steps with all such traumatic wounds are the same. The patient had already been given fentanyl before my arrival. Therefore my first step is to inspect wound, and see his pain level before approving a possible overdose of narcotics to an 80+ year old male. Accordingly I inspected the wound first. He had some pain, then I waited for the additional dose of additional pain meds. All the manipulation was done by Iaquinto as was outlined in the prior email

I did introduce myself to the patient. My back was to the nurses, so not sure if they heard me. It is is true that I can mumble and so that cannot be clear. Indeed the nurse here does not know the correct pronunciation of my name so I can work on better enunciation when introduction myself

I spoke with Iaquinto in the trauma bay. I called and he told me to stay at bedside he is coming down directly. The

1

admission plan, everything was unknown, and I was instructed to say at bedside, accordingly I did not feel it appropriate to talk to the family until he had arrived as I was instructed.

Often in the setting of a traumatic injury, when the orthpaedist arrived, he/she is expected to immediately talk to family. In that situation I am less likely to jump the gun and speak to family, since it is important to wait a few extra minutes to get details correct, since this could potentially be a major surgery/life altering event.

It was a regrettable decision, but one that had to be done. Many of the staff were justifiably horrified at this, and wanted us to do more. However this was medically the correct decision. Indeed he had a heart attack during the procedure, and passed away a few days later. It is clear he could have not withstood a salvage procedure to his arm.

The patient was very thankful throughout and when I saw him on the floor we had great interactions. He remebered me from the trauma bay and shook my hand and thanked me again (although truth be told he was a real gentleman). I really did enjoy my time with him. It is a shame that he is no longer with us.

I remember we talked about how he was still able to do what he loved (metal/wood working) in his 80s. He was thankful that he was still there, and we talked about his family and how his children work with him in the shop. I do remeber Mr ▓▓▓▓ and wish he was still with us.

Hope that clarifies things.

Thanks,
Afraaz

On Wed, Aug 10, 2011 at 2:34 PM, David Koon <David.Koon@uscmed.sc.edu<mailto:David.Koon@uscmed.sc.edu>>
wrote:
Afraaz -

I'll need an explanation by the end of the day.

DK

_____
From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Wednesday, August 10, 2011 10:00 AM
To: David Koon; John Walsh
Subject: Re: Fwd: Pt. ▓▓▓▓

John & David,

Pls. review for follow up.

Thank you,
Kathy

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861<tel:803-434-6861> or 803-434-4476<tel:803-434-4476>

katherine.stephens@palmettohealth.org<mailto:katherine.stephens@palmettohealth.org>

2

>>> Allison Turnley 8/9/2011 2:14 PM >>>
Please see concern below. I do not have an email address for Dr. Walsh.

Thanks -
Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org><mailto:Allison.Turnley@palmettohealth
.org<mailto:Allison.Turnley@palmettohealth.org>>


>>> Edward Catalano 7/19/2011 2:46 PM >>>
Allison, This note should be forwarded to: Dr. Gretta Harper ( VP responsible for employed MDs), Dr. Walsh ( Chair of the
USC Dept. of Ortho), Kathy Stephens ( VP for education ) and Cheryl Coble. Thanks, EWC

Edward W. Catalano M.D.
VP Medical Affairs
Palmetto Health Richland Hospital
5 Richland Medical Park Drive
Columbia, SC 29203
Phone: 803 434 2819<tel:803%20434%202819> Fax: 434 6668
e-mail: edward.catalano@palmettohealth.org<mailto:edward.catalano@palmettohealth.org>

>>> Allison Turnley 7/14/2011 5:32 PM >>>
Dr. Catalano -

Please see below for information regarding a concern about an orthopedic resident and attending. Diane refers to the
resident as Dr. Orlani, however she pointed him out to me and he is actually Dr. Irani.

As a side note, I was in the trauma room before the orthopedic resident arrived, and I saw the injury to this man's arm. It
was an impressive injury. And the patient is an elderly man, I believe in his 70s or 80s.

Please let Diane or me know if you need additional information.

Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org><mailto:Allison.Turnley@palmettohealth
.org<mailto:Allison.Turnley@palmettohealth.org>>


>>> Diane Savage 7/11/2011 9:39 PM >>>
████████ came to the ED with a traumatic partial amputation of his left forearm. His left arm was angulated, hand
rotated approximately 180 degrees, muscle, bone, tendons, arteries, etc exposed. Dr. Orlani (?) from ortho was the
consulting resident. He enter the trauma room and barely acknowledged the pt, did not introduce himself and proceeded
to manipulate the fractured arm. Myself and Mandy, along with the ED resident asked him to wait before he moved the
pt's arm so we could administer pain meds. I had to ask him twice to stop so I could give the meds. I had the meds in my
hand. He showed no compassion for what the pt was experiencing. I asked Dr. Orlani to speak with the patients family

3

and he was reluctant, but finally did speak with them. Dr. Spencer Robinson irrigated the wound with 1L of NS. When Dr. Orlani asked if the wound had been irrigated-I stated it had been irrigated with 1L. He stated "2" and I stated "no, 1L". He smiled and stated "2L" and I repeated "1". He remarked "we will say it was 2". I stated "no, it was 1. During the entire encounter I felt Dr. Orlani was not concerned for the pt, but more for himself and the work he had ahead of him. When Dr. Iaquinta entered the room, he too did not introduce himself to the pt and roughly removed the dressing and splint. The pt grimaced and moaned out in pain. Before myself or Mandy to ask about pain meds, Dr. Iaquinta grabbed the pts partially amputated extremity and twisted it to the anatomically correct position. The pt yelled out and came about a foot off of the stretcher. We had the means to make this pt comfortable and we instead inflicted undue pain and duress. Dr. Iaquinta very bluntly stated to the pt "we are going to have to cut off your arm".....a total lack of compassion or explanation. I have had many similar encounters with both of these physicians and have also heard other nurses and residents state the same. Please feel free to contact me for any needed information. Thanks, Diane
--------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.
--------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0913

**From:**           Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
**Sent:**           Monday, August 15, 2011 4:54 PM
**To:**             David Koon; Michelle Wehunt
**Subject:**        Re: Irani_ Afraaz Remediation


I will take to the GMEC Executive com. for temporary action. In the meantime, I would like to see a more specific remediation plan that spells out the outcomes expected and how to measure that he has achieved the level expected. I have some examples that we expect to recommend for use in the next version of the GME policy on remediation and will get some examples to you for consideration for this plan.
Thanks,
Kathy
Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org


>>> Michelle Wehunt 8/15/2011 1:57 PM >>>
Good Afternoon Kathy,

Please see attached remediation recommendations for Dr. Irani. Should you have any questions please or suggestions please let Dr. Koon know.

Thank you,

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message. --------------
-----------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

USC(Irani)1066



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

15 AUG 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

1. Dr. Irani demonstrated significant lack of compassion and empathy in a patient's care in the initial trauma resuscitation. Mr. B. sustained a near forearm amputation and Dr. Irani failed to provide adequate pain medication and ignored nursing requests for same during his initial evaluation. During this encounter he requested the nurse to lie about the initial irrigation / debridement of the traumatic wound.
2. He has repeatedly demonstrated poor communication skills with patients, families, peers, and attending physicians.
3. He has repeatedly demonstrated poor time management with frequent tardiness to required conferences, clinics, and the operating room.
4. He does not demonstrate effective prioritization of clinical duties. This has resulted in additional duties for other residents.
5. He has provided substandard patient care (e.g. closing wounds with Vicryl suture; not evaluating a VA total joint patient with immediate post-operative cellulitis).
6. He received substandard evaluations during his internship.
7. He has displayed a significant lack of attention to detail in his initial PGY-2 rotation.

These deficiencies have persisted despite several verbal counseling sessions from his chief resident, his attending physicians, and his program director.

The attending physicians of the Department of Orthopaedic Surgery would recommend that Dr. Afraaz Irani be place on level II academic remediation from 15 AUG 11 to 01 DEC 11.

Remediation measures would include:
1. Dr. Irani would provide improved patient care, including pain management and wound management / closure.
2. He will answer his pages appropriately and immediately.
3. He will see all orthopaedic consultations as soon as possible.
4. He will display improved communication to peers, ancillary staff, and attending surgeons.
5. He will develop a Grand Rounds presentation of Effective Communication Skills.
6. He will demonstrate improved organizational skills and prioritize clinical duties effectively.
7. He will demonstrate improved attention to detail while on clinical rotations.

David E. Koon, Jr., MD
Program Director

John J. Walsh, MD
Chair, Dept. of Orthopaedics

*DEPARTMENT OF SURGERY*
*Two Richland Medical Park, Suite 402, Columbia, SC 29203*
*803-256-2657, FAX 803-933-9545*

Palmetto Health - 001284

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Tuesday, August 16, 2011 5:09 PM |
| **To:** | John Walsh; Paul Athey |
| **Subject:** | FW: Secure: Fwd: Irani_ Afraaz Remediation |

John -

Please see the approval of Dr.s Hoppman and Raymond and Kathy Stephens re: Dr. Irani's level II academic remediation.

Paul Athey and I met with Dr. Irani yesterday afternoon.  I informed him that the faculty had serious concerns regarding his performance thus far in his training.  I gave him the opportunity to share his thoughts on how his first 14 months here at PH had gone.  I informed him that we were recommending that he be placed on academic remediation and let him read the MoR dated 15 AUG 11 re: his remediation.

He stated that he did not agree with some of the points and complained that some were too vague.  He initially laughed about some of them and appeared not to take them very seriously.  He then proceeded to offer excuses or rationalize each point that was noted in his deficiencies and argue that he was misunderstood at times.  The only item with which he agreed with was item # 5 - in that he should not have closed the wound with Vicryl. He accused the ER/trauma nurse of lying about the events surrounding Mr. B's care in the trauma room.

Dr. Irani seemed to lack insight into his poor performance and failed to take any responsibility for his actions.

I informed Dr. Irani that these were the recommendations of the department to the GMEC and that the GMEC Executive Comm would probably approve these recommendations pending full GMEC voting in early September. I encouraged him to review the GME policy on academic remediation.  He was allowed to respond to each item in the MoR and ask questions. I informed him that failure to improve his performance and meet the remediation measures could result in recommendations for continued probation and/or possible termination from the training program.  I provided him a copy of the MoR dated 15 AUG 11 for his review and informed him that he could respond in writing to our recommendations.

Our meeting was concluded at 1330 hrs.

David Koon

_____
From: James Raymond [james.raymond@palmettohealth.]
Sent: Monday, August 15, 2011 7:29 PM
To: Richard Hoppmann
Cc: Katherine Stephens; David Koon
Subject: Re: Secure: Fwd: Irani_ Afraaz Remediation

Kathy,
I approve also.
Jim

Sent from my iPad

On Aug 15, 2011, at 6:44 PM, "Richard Hoppmann" <Richard.Hoppmann@uscmed.sc.edu> wrote:

1

USC(Irani)0837

> I approve Level II remediation to begin immediately – be sure to follow due process.
> Richard Hoppmann
>
> From: Katherine Stephens [mailto:Kathy.Stephens@PalmettoHealth.org]
> Sent: Monday, August 15, 2011 4:57 PM
> To: James Raymond; Richard Hoppmann
> Cc: David Koon
> Subject: Secure: Fwd: Irani_ Afraaz Remediation
>
> Jim & Dick,
>
> I will forward to you as a separate email the action that precipitated this request. I ask that the three of us as the GMEC executive committee, approve Level II remediation as a temporary action until the next GMEC mtg. I am also working with David to put the remediation plan into outcomes language with specific measures.
>
> Please let me know your approval/disapproval and any questions.
>
> Thank you,
>
> Kathy
>
> Katherine G. Stephens, MBA, FACHE
> Vice President, Medical Education and Research ACGME Designated
> Institutional Official Palmetto Health Fifteen Medical Park, Suite 202
> Five Richland Medical Park Drive Columbia, SC  29203
>
> 803-434-6861 or 803-434-4476
>
> katherine.stephens@palmettohealth.org
>
>
>>>> Michelle Wehunt <Michelle.Wehunt@uscmed.sc.edu> 8/15/2011 1:57 PM
>>>> >>>
> Good Afternoon Kathy,
>
> Please see attached remediation recommendations for Dr. Irani.  Should you have any questions please or suggestions please let Dr. Koon know.
>
> Thank you,
>
>
>
> ----------------------------------------
> This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.    --------------------------------------------------------------------------
> PALMETTO HEALTH CONFIDENTIALITY NOTICE This message is intended only
> for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended

2

Archive Manager Message Export                                                        Page 1 of 2



| **From:** | Afraaz Irani | **Sent:** | Mon, 22 Aug 2011 22:02:04 GMT |
| **To:** | Katherine Stephens | | |
| **Subject:** | Department of Orthopaedics. | | |

Ms. Stephens,

I was recently informed by Dr. Koon, that he would be taking steps to suggest I be placed on academic remediation.

I was very surprised and disappointed to hear this given the positive comments from my peers.

I was handed a sheet with specific complaints against me and told to send you an email to explain the following issues. Please allow me to explain myself regarding the seven points outlined in Dr. Koon's letter:

*1. Dr. Irani demonstrated significant lack of compassion and empathy in a patient's care in the initial trauma resuscitation. Mr B sustained a near forearm amputation and Dr. Irani failed to provide adequate pain medication and ignored nursing requests for same during his initial evaluation. During this encounter he request the nurse to lie about the initial irrigation / debridement of the traumatic wound.*

I always demonstrate the highest level of compassion and empathy in a patient's care. There are many individuals involved in the resuscitation. My job as the orthopaedic resident is to manage the orthopaedic injury in conjunction with the attending. I was consulted on Mr. B after the ER physicians had evaluated the patient and I was at the patient's bedside within 10 minutes. At the time of my evaluation the patient had already received pain medication. Given the severity of the trauma in this 82 year old gentleman, the severity of the pain would not have been controlled to a level that the nurse in question was attempting to achieve by a safe level of pain medications.

As part of my initial assessment, I unwrapped the initial dressing and given the severity of what was discovered, I immediately consulted my attending for immediate patient care and plan for OR.

Regarding the accusation about lying about patient care; this is a misinterpretation of the nurse about my comments regarding irrigation. My comments to her were meant to say that usually we irrigate with two liters and I was surprised that an ER physician would irrigate with only one liter. So my statement that it was two liters was under the assumption that routine clinical practices were being followed. I did not irrigate as we already had a plan to go to the OR. My comments to nurse are meant to reinforce what is usually done. However I was not personally involved, nor did I document any irrigation in my note as I did not perform any irrigation, nor was I present during any irrigation.

*2. He has repeatedly demonstrated poor communication with patients, families, peers, and attending physicians.*

I appreciate the fact that these issues have been brought to my attention but as the incident with the nurse above illustrates, I may have been misunderstood. Therefore I will increase my efforts to ensure I am being properly understood, including repeating what I have requested when appropriate. I appreciate the opportunity to spend time focusing on improving my communications skills with the grand rounds presentation which will be prepared in the time provided, as that is important to patient care, regardless of the care giver.

As part of my effort to improve communication, I will notify the appropriate attendings or peers regarding patients who I have been contacted about on call, so that incidents such as the VA patient (below), who I was told by the ER attending that I do not need to see, do not recur. This will also reduce interruption in patient care. This would be along the same lines as patient care/sign outs and hand-offs and understanding what has been accomplished and what remains to be done with patient care.

*3. He has repeatedly demonstrated poor time management with frequent tardiness to required conferences, clinics, and the operating room.*

*4. He does not demonstrate effective prioritization of clinical duties. This has resulted in additional duties for other residents.*

Many of these items are likely related to times when I have been required by my supervisors and/or attending to remain in one location when I am expected in another location. I frequently contact the location where I am expected to be and notify the nurses so that they may appropriately coordinate patient care. In the future, I will instead speak directly with the physician who is expecting me so that there is no confusion regarding perceived tardiness.

Regarding the additional duties for other residents. I always complete my work that's been assigned to me, often staying beyond recommended work hours, as I do not think it appropriate to burden fellow residents. No resident has brought to

this my attention and when I requested that they do so, each of them stated there was no issue. If there are specific instances, I would be happy to help out whoever the resident who was burdened with my duties.

*5. He has provided substandard care (e.g. closing wound with Vicryl suture; not evaluating a VA total joint patient with post-operative cellulitis).*

Whenever I have been notified of errors. In the future I will proactively make my supervisors/attendings aware of a plan of care, and modify as guidance is provided to insure patients never receive substandard care.

*6. He received substandard evaluation during his internship.*

Once these evaluations were made known to me, I made significant improvements based on suggestions that were provided to me. Whenever my superiors raised issues I make every effort to address them and more recent evaluations reflect that. For example in my initial evaluation with trauma, I had the opportunity to discuss my performance with Dr. Bynoe. He offered good constructive suggestions for improvement, which I was glad to receive. I implemented them on my subsequent rotation, and my evaluation seems to reflect that.

*7. He has displayed a significant lack of attention to detail in his initial PGY-2 rotation.*

This might be related to perceived forgetfulness in the OR. Although I think that this too may be related to lack of communication. I am not just leaving things lying around. I am leaving them for specific individuals. I did not however mention that to the individual involved and that gets back to my need for improved communication.

I really appreciate your help and understanding in this matter. I take these allegations seriously as there are cases where an action like this  precludes one from a fellowship, and  results in significant difficulty obtaining a job.

I hope you will consider my statements above, and if there are any questions, I would be more than happy to provide third party references to substantiate the above statements, and/or speak with you in person or over the phone.

Thank you for your kind understanding.
Afraaz

Page 1 of 3

# Katherine Stephens - Re: Department of Orthopaedics.

**From:** Katherine Stephens
**To:** Irani, Afraaz
**Date:** Friday, August 26, 2011 10:26 AM
**Subject:** Re: Department of Orthopaedics.
**CC:** Koon, David

*8/29/11 Dr. Irani stopped by office today while I was out. Returned his call. He was concerned about how his intent was received & how remediation could affec future career aspirations. I advised him to discuss his concerns with Dr. Koon and if not satisfied with response to follow grievance KZ*

Dr. Irani,

Thank you for your email and the commitment you expressed to improving in the areas identified. The goal of the academic remediation process is to ensure that a resident physician is provided an opportunity to improve in areas of concern and to achieve competence in these areas. I am certain that Dr. Koon will appreciate your positive attitude to constructive criticism with the goal of assisting you in achieving competence.

*Irani's cell #*

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 8/22/2011 10:01 PM >>>
Ms. Stephens,

I was recently informed by Dr. Koon, that he would be taking steps to suggest I be placed on academic remediation.

I was very surprised and disappointed to hear this given the positive comments from my peers.

I was handed a sheet with specific complaints against me and told to send you an email to explain the following issues. Please allow me to explain myself regarding the seven points outlined in Dr. Koon's letter:

*1. Dr. Irani demonstrated significant lack of compassion and empathy in a patient's care in the initial trauma resuscitation. Mr B sustained a near forearm amputation and Dr. Irani failed to provide adequate pain medication and ignored nursing requests for same during his initial evaluation. During this encounter he request the nurse to lie about the initial irrigation / debridement of the traumatic wound.*

I always demonstrate the highest level of compassion and empathy in a patient's care. There are many individuals involved in the resuscitation. My job as the orthopaedic resident is to manage the orthopaedic injury in conjunction with the attending. I was consulted on Mr. B after the ER physicians had evaluated the patient and I was at the patient's bedside within 10 minutes. At the time of my evaluation the patient had already received pain medication. Given the severity of the trauma in this 82 year old gentleman, the severity of the pain would not have been controlled to a level that the nurse in question was attempting to achieve by a safe level of pain medications.

As part of my initial assessment, I unwrapped the initial dressing and given the severity of what was discovered, I immediately

Palmetto Health - 001582

consulted my attending for immediate patient care and plan for OR.

Regarding the accusation about lying about patient care; this is a misinterpretation of the nurse about my comments regarding irrigation. My comments to her were meant to say that usually we irrigate with two liters and I was surprised that an ER physician would irrigate with only one liter. So my statement that it was two liters was under the assumption that routine clinical practices were being followed. I did not irrigate as we already had a plan to go to the OR. My comments to nurse are meant to reinforce what is usually done. However I was not personally involved, nor did I document any irrigation in my note as I did not perform any irrigation, nor was I present during any irrigation.

*2. He has repeatedly demonstrated poor communication with patients, families, peers, and attending physicians.*

I appreciate the fact that these issues have been brought to my attention but as the incident with the nurse above illustrates, I may have been misunderstood. Therefore I will increase my efforts to ensure I am being properly understood, including repeating what I have requested when appropriate. I appreciate the opportunity to spend time focusing on improving my communications skills with the grand rounds presentation which will be prepared in the time provided, as that is important to patient care, regardless of the care giver.

As part of my effort to improve communication, I will notify the appropriate attendings or peers regarding patients who I have been contacted about on call, so that incidents such as the VA patient (below), who I was told by the ER attending that I do not need to see, do not recur. This will also reduce interruption in patient care. This would be along the same lines as patient care/sign outs and hand-offs and understanding what has been accomplished and what remains to be done with patient care.

*3. He has repeatedly demonstrated poor time management with frequent tardiness to required conferences, clinics, and the operating room.*

*4. He does not demonstrate effective prioritization of clinical duties. This has resulted in additional duties for other residents.*

Many of these items are likely related to times when I have been required by my supervisors and/or attending to remain in one location when I am expected in another location. I frequently contact the location where I am expected to be and notify the nurses so that they may appropriately coordinate patient care. In the future, I will instead speak directly with the physician who is expecting me so that there is no confusion regarding perceived tardiness.

Regarding the additional duties for other residents. I always complete my work that's been assigned to me, often staying beyond recommended work hours, as I do not think it appropriate to burden fellow residents. No resident has brought to this my attention and when I requested that they do so, each of them stated there was no issue. If there are specific instances, I would be happy to help out whoever the resident who was burdened with my duties.

*5. He has provided substandard care (e.g. closing wound with Vicryl suture; not evaluating a VA total joint patient with post-operative cellulitis).*

Whenever I have been notified of errors. In the future I will proactively make my supervisors/attendings aware of a plan of care, and modify as guidance is provided to insure patients never receive substandard care.

*6. He received substandard evaluation during his internship.*

Once these evaluations were made known to me, I made significant improvements based on suggestions that were provided to me. Whenever my superiors raised issues I make every effort to address them and more recent evaluations reflect that. For example in my initial evaluation with trauma, I had the opportunity to discuss my performance with Dr. Bynoe. He offered good constructive suggestions for improvement, which I was glad to receive. I implemented them on my subsequent rotation, and my evaluation seems to reflect that.

*7. He has displayed a significant lack of attention to detail in his initial PGY-2 rotation.*

This might be related to perceived forgetfulness in the OR. Although I think that this too may be related to lack of communication. I am not just leaving things lying around. I am leaving them for specific individuals. I did not however mention that to the individual involved and that gets back to my need for improved communication.

Palmetto Health - 001583

I really appreciate your help and understanding in this matter. I take these allegations seriously as there are cases where an action like this precludes one from a fellowship, and results in significant difficulty obtaining a job.

I hope you will consider my statements above, and if there are any questions, I would be more than happy to provide third party references to substantiate the above statements, and/or speak with you in person or over the phone.

Thank you for your kind understanding.
Afraaz

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|---|---|
| Sent: | Saturday, August 27, 2011 9:50 AM |
| To: | Christopher Mazoue; John Walsh; Greg Grabowski; jagdr@aol.com; Frank R Voss; Paul Athey |
| Subject: | Dr. Irani |
| Attachments: | Irani MoR.docx |

Just a quick update on Dr. Irani.

He has been placed on Level II academic remediation until 01 DEC 11.  Attached is the initial MoR.

Please review his response to Kathy Stephens.

I would appreciate your attention to his clinical performance and appropriate documentation as needed, especially on his NI rotation evaluations.

I would like to discuss this during our next faculty meeting.

Thanks

DK

_____
From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Friday, August 26, 2011 10:26 AM
To: Afraaz Irani
Cc: David Koon
Subject: Re: Department of Orthopaedics.

Dr. Irani,

Thank you for your email and the commitment you expressed to improving in the areas identified.  The goal of the academic remediation process is to ensure that a resident physician is provided an opportunity to improve in areas of concern and to achieve competence in these areas.  I am certain that Dr. Koon will appreciate your positive attitude to constructive criticism with the goal of assisting you in achieving competence.

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research ACGME Designated Institutional Official Palmetto Health Fifteen Medical Park, Suite 202 Five Richland Medical Park Drive Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 8/22/2011 10:01 PM >>>
Ms. Stephens,

I was recently informed by Dr. Koon, that he would be taking steps to suggest I be placed on academic remediation.

1

I was very surprised and disappointed to hear this given the positive comments from my peers.

I was handed a sheet with specific complaints against me and told to send you an email to explain the following issues. Please allow me to explain myself regarding the seven points outlined in Dr. Koon's letter:

1. Dr. Irani demonstrated significant lack of compassion and empathy in a patient's care in the initial trauma resuscitation. Mr B sustained a near forearm amputation and Dr. Irani failed to provide adequate pain medication and ignored nursing requests for same during his initial evaluation. During this encounter he request the nurse to lie about the initial irrigation / debridement of the traumatic wound.

I always demonstrate the highest level of compassion and empathy in a patient's care. There are many individuals involved in the resuscitation. My job as the orthopaedic resident is to manage the orthopaedic injury in conjunction with the attending. I was consulted on Mr. B after the ER physicians had evaluated the patient and I was at the patient's bedside within 10 minutes. At the time of my evaluation the patient had already received pain medication. Given the severity of the trauma in this 82 year old gentleman, the severity of the pain would not have been controlled to a level that the nurse in question was attempting to achieve by a safe level of pain medications.
As part of my initial assessment, I unwrapped the initial dressing and given the severity of what was discovered, I immediately consulted my attending for immediate patient care and plan for OR.
Regarding the accusation about lying about patient care; this is a misinterpretation of the nurse about my comments regarding irrigation. My comments to her were meant to say that usually we irrigate with two liters and I was surprised that an ER physician would irrigate with only one liter. So my statement that it was two liters was under the assumption that routine clinical practices were being followed. I did not irrigate as we already had a plan to go to the OR. My comments to nurse are meant to reinforce what is usually done. However I was not personally involved, nor did I document any irrigation in my note as I did not perform any irrigation, nor was I present during any irrigation.

2. He has repeatedly demonstrated poor communication with patients, families, peers, and attending physicians.

I appreciate the fact that these issues have been brought to my attention but as the incident with the nurse above illustrates, I may have been misunderstood. Therefore I will increase my efforts to ensure I am being properly understood, including repeating what I have requested when appropriate. I appreciate the opportunity to spend time focusing on improving my communications skills with the grand rounds presentation which will be prepared in the time provided, as that is important to patient care, regardless of the care giver.
As part of my effort to improve communication, I will notify the appropriate attendings or peers regarding patients who I have been contacted about on call, so that incidents such as the VA patient (below), who I was told by the ER attending that I do not need to see, do not recur. This will also reduce interruption in patient care. This would be along the same lines as patient care/sign outs and hand-offs and understanding what has been accomplished and what remains to be done with patient care.

3. He has repeatedly demonstrated poor time management with frequent tardiness to required conferences, clinics, and the operating room.

4. He does not demonstrate effective prioritization of clinical duties. This has resulted in additional duties for other residents.

Many of these items are likely related to times when I have been required by my supervisors and/or attending to remain in one location when I am expected in another location. I frequently contact the location where I am expected to be and notify the nurses so that they may appropriately coordinate patient care. In the future, I will instead speak directly with the physician who is expecting me so that there is no confusion regarding perceived tardiness.
Regarding the additional duties for other residents. I always complete my work that's been assigned to me, often staying beyond recommended work hours, as I do not think it appropriate to burden fellow residents. No resident has brought

2

to this my attention and when I requested that they do so, each of them stated there was no issue. If there are specific instances, I would be happy to help out whoever the resident who was burdened with my duties.

5. He has provided substandard care (e.g. closing wound with Vicryl suture; not evaluating a VA total joint patient with post-operative cellulitis).

Whenever I have been notified of errors. In the future I will proactively make my supervisors/attendings aware of a plan of care, and modify as guidance is provided to insure patients never receive substandard care.

6. He received substandard evaluation during his internship.

Once these evaluations were made known to me, I made significant improvements based on suggestions that were provided to me. Whenever my superiors raised issues I make every effort to address them and more recent evaluations reflect that. For example in my initial evaluation with trauma, I had the opportunity to discuss my performance with Dr. Bynoe. He offered good constructive suggestions for improvement, which I was glad to receive. I implemented them on my subsequent rotation, and my evaluation seems to reflect that.

7. He has displayed a significant lack of attention to detail in his initial PGY-2 rotation.

This might be related to perceived forgetfulness in the OR. Although I think that this too may be related to lack of communication. I am not just leaving things lying around. I am leaving them for specific individuals. I did not however mention that to the individual involved and that gets back to my need for improved communication.

I really appreciate your help and understanding in this matter. I take these allegations seriously as there are cases where an action like this precludes one from a fellowship, and results in significant difficulty obtaining a job.

I hope you will consider my statements above, and if there are any questions, I would be more than happy to provide third party references to substantiate the above statements, and/or speak with you in person or over the phone.

Thank you for your kind understanding.
Afraaz

--------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

3

Archive Manager Message Export                                                     Page 1 of 4



| | | | |
|---|---|---|---|
| **From:** | Afraaz Irani | **Sent:** | Sun, 11 Sep 2011 21:07:23 GMT |
| **To:** | Katherine Stephens | | |
| **Subject:** | Re: Department of Orthopaedics. | | |

Ms. Stephens,

I met with Dr. Walsh this morning. I'd like to meet with you before the committe meeting, so that I can make you and whoever else is involved in the decision making process aware of a few things regarding the remediation motion.

I called and left a voicemail with Ms. Hyer today.

Thank you and look forward to seeing you soon.
Afraaz

On Thu, Sep 8, 2011 at 9:59 AM, Katherine Stephens <Kathy.Stephens@palmettohealth.org> wrote:

Dr. Irani,

Please review the Grievance and Due Process policy in the Residents manual. It is available online. Here is a direct link: http://residency.palmettohealth.org/documents/Graduate%20Medical%20Education/Resident%20Manual%202011-2012.pdf
There are also policies on Academic Remediation and the Graduate Medical Education Committee in the manual, which should provide answers to some of your questions.

It appears that you have already initiated 1.1 of the Grievance and Due Process policy and need to move to 1.2 (i.e., meet with Dr. Walsh). If you are not satisfied with his response, you should then contact my office to schedule a meeting with me. Anne Marie Hyer (434-4416) can schedule the meeting, if needed.

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 9/7/2011 10:19 PM >>>

Ms. Stephens,

Thank you for the phone call last week. As we talked about, I was able to speak with Dr. Koon this morning. He encouraged me to talk to you more and/or attempt to appeal the decision if I had concerns.

I was hoping you could help me with the next step. He mentioned an upcoming meeting where my academic remediation will be voted on. I had a few questions that I was hoping you could help me with. When is this meeting, who is involved with this, and how can I be represented? Additionally, I have had other staff willing to support my response to the perceived deficiencies. How do I make sure those letters are delivered to the appropriate faculty?

Please advise me as the next step. If you have time I would be happy to meet. If a grievance council, is the next step, then please let me know how that can be accomplished in a timely manner that would allow me to represent myself before a vote on the academic remediation process takes place. Would it make more sense to meet with the grievance council before a decision is made?

Again, for me this action came as a dramatic shock. I have taken the comments to heart, and as has been the case in the past, I have already implemented the changes outlined in my previous email to you.

Archive Manager Message Export

Page 2 of 4

Please let me know, as I take this feedback and this process very seriously.

Respectfully,

Afraaz

███████████

On Fri, Aug 26, 2011 at 10:26 AM, Katherine Stephens <Kathy.Stephens@palmettohealth.org> wrote:
Dr. Irani,
Thank you for your email and the commitment you expressed to improving in the areas identified. The goal of the academic remediation process is to ensure that a resident physician is provided an opportunity to improve in areas of concern and to achieve competence in these areas. I am certain that Dr. Koon will appreciate your positive attitude to constructive criticism with the goal of assisting you in achieving competence.
Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 8/22/2011 10:01 PM >>>
Ms. Stephens,

I was recently informed by Dr. Koon, that he would be taking steps to suggest I be placed on academic remediation.

I was very surprised and disappointed to hear this given the positive comments from my peers.

I was handed a sheet with specific complaints against me and told to send you an email to explain the following issues. Please allow me to explain myself regarding the seven points outlined in Dr. Koon's letter:

*1. Dr. Irani demonstrated significant lack of compassion and empathy in a patient's care in the initial trauma resuscitation. Mr B sustained a near forearm amputation and Dr. Irani failed to provide adequate pain medication and ignored nursing requests for same during his initial evaluation. During this encounter he request the nurse to lie about the initial irrigation / debridement of the traumatic wound.*

I always demonstrate the highest level of compassion and empathy in a patient's care. There are many individuals involved in the resuscitation. My job as the orthopaedic resident is to manage the orthopaedic injury in conjunction with the attending. I was consulted on Mr. B after the ER physicians had evaluated the patient and I was at the patient's bedside within 10 minutes. At the time of my evaluation the patient had already received pain medication. Given the severity of the trauma in this 82 year old gentleman, the severity of the pain would not have been controlled to a level that the nurse in question was attempting to achieve by a safe level of pain medications.

As part of my initial assessment, I unwrapped the initial dressing and given the severity of what was discovered, I immediately consulted my attending for immediate patient care and plan for OR.

Regarding the accusation about lying about patient care; this is a misinterpretation of the nurse about my comments regarding irrigation. My comments to her were meant to say that usually we irrigate with two liters and I was surprised that an ER physician would irrigate with only one liter. So my statement that it was two liters was under the assumption that routine clinical practices were being followed. I did not irrigate as we already had a plan to go to the OR. My comments to nurse are meant to reinforce what is usually done.

Palmetto Health - 001964

However I was not personally involved, nor did I document any irrigation in my note as I did not perform any irrigation, nor was I present during any irrigation.

*2. He has repeatedly demonstrated poor communication with patients, families, peers, and attending physicians.*

I appreciate the fact that these issues have been brought to my attention but as the incident with the nurse above illustrates, I may have been misunderstood. Therefore I will increase my efforts to ensure I am being properly understood, including repeating what I have requested when appropriate. I appreciate the opportunity to spend time focusing on improving my communications skills with the grand rounds presentation which will be prepared in the time provided, as that is important to patient care, regardless of the care giver.

As part of my effort to improve communication, I will notify the appropriate attendings or peers regarding patients who I have been contacted about on call, so that incidents such as the VA patient (below), who I was told by the ER attending that I do not need to see, do not recur. This will also reduce interruption in patient care. This would be along the same lines as patient care/sign outs and hand-offs and understanding what has been accomplished and what remains to be done with patient care.

*3. He has repeatedly demonstrated poor time management with frequent tardiness to required conferences, clinics, and the operating room.*

*4. He does not demonstrate effective prioritization of clinical duties. This has resulted in additional duties for other residents.*

Many of these items are likely related to times when I have been required by my supervisors and/or attending to remain in one location when I am expected in another location. I frequently contact the location where I am expected to be and notify the nurses so that they may appropriately coordinate patient care. In the future, I will instead speak directly with the physician who is expecting me so that there is no confusion regarding perceived tardiness.

Regarding the additional duties for other residents. I always complete my work that's been assigned to me, often staying beyond recommended work hours, as I do not think it appropriate to burden fellow residents. No resident has brought to this my attention and when I requested that they do so, each of them stated there was no issue. If there are specific instances, I would be happy to help out whoever the resident who was burdened with my duties.

*5. He has provided substandard care (e.g. closing wound with Vicryl suture; not evaluating a VA total joint patient with post-operative cellulitis).*

Whenever I have been notified of errors. In the future I will proactively make my supervisors/attendings aware of a plan of care, and modify as guidance is provided to insure patients never receive substandard care.

*6. He received substandard evaluation during his internship.*

Once these evaluations were made known to me, I made significant improvements based on suggestions that were provided to me. Whenever my superiors raised issues I make every effort to address them and more recent evaluations reflect that. For example in my initial evaluation with trauma, I had the opportunity to discuss my performance with Dr. Bynoe. He offered good constructive suggestions for improvement, which I was glad to receive. I implemented them on my subsequent rotation, and my evaluation seems to reflect that.

*7. He has displayed a significant lack of attention to detail in his initial PGY-2 rotation.*

This might be related to perceived forgetfulness in the OR. Although I think that this too may be related to lack of communication. I am not just leaving things lying around. I am leaving them for specific individuals. I did not however mention that to the individual involved and that gets back to my need for improved communication.

I really appreciate your help and understanding in this matter. I take these allegations seriously as there are cases where an action like this precludes one from a fellowship, and results in significant difficulty obtaining a job.

I hope you will consider my statements above, and if there are any questions, I would be more than happy to provide third party references to substantiate the above statements, and/or speak with you in person or over the phone.

Thank you for your kind understanding.

Afraaz ████████

--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which
it is addressed and may contain information that is privileged, confidential and
exempt from disclosure under applicable law. If the reader of this message is
not the intended recipient, you are hereby notified that any dissemination,
distribution, or copying of this communication is strictly prohibited by law. If
you have received this communication in error, please notify me immediately.


--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Monday, September 19, 2011 11:05 AM |
| **To:** | Afraaz.irani@gmail.com; Michelle Wehunt; John Walsh; katherine.stephens@palmettohealth.org |
| **Subject:** | Remediation Updates |
| | |
| **Follow Up Flag:** | Follow Up |
| **Flag Status:** | Flagged |

All -

Just to keep everyone on the same page - we will be having periodic updates re: the academic remediation measures for Dr. Irani.

15 AUG 11 - Koon / Athey / Irani -  initial meeting

07 SEP 11 - Koon / Irani - meeting re: the appeal / grievance process

10 SEP 12 - Walsh / Irani - meeting re: the appeal / grievance process

19 SEP 11 - Walsh / Grabowski / Irani - scheduled 6 month evaluation (missed 22 AUG 11 due to post-call status)

03 OCT 11 (7:45 am) - progress report re: remediation measures

07 NOV 11 (7:45 am) - progress report re: remediation measures

05 DEC 11 (7:45am) - meeting with faculty re: Level II Academic Remediation status (15 AUG - 01 DEC 11)

Thanks

DKoon

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0806



PALMETTO HEALTH

September 20, 2011                    HAND DELIVERED

Afraaz Irani, MD
Department of Orthopaedics
2 Medical Park, Suite 404
Columbia, South Carolina 29203

Dear Dr. Irani:

After carefully reviewing the information available to me, and after further discussions with several others, I have decided to uphold the decision concerning academic remediation. An action like this is never simple, and I want to make it clear that our intent is not punitive. The sole purpose is to aid you in meeting academic expectations and to have you complete your training.

If you decide to continue with the grievance process, please refer to the steps outlined in your Resident Manual. As you work toward meeting remediation expectation, I have every confidence that you will meet this challenge.

Sincerely yours,

Katherine G. Stephens, MBA, FACHE
Vice President for Medical Education and Research

KGS/amh

cc: John Walsh, MD, Department of Orthopaedics
    David Koon, MD, Department of Orthopaedics
    James Raymond, MD, Chief Medical Officer

Post Office Box 2266
Columbia, SC 29202-2266          PHONE   (803) 296-2300          palmettohealth.org

USC(Irani)1114

 UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

SEPTEMBER 22, 2011                    RE: DR. AFRAAZ IRANI
                                      (PGY-2 ORTHOPAEDIC RESIDENT)

MEMO FOR RECORD

This memo for record summarizes a meeting that Dr. Grabowski and I had with Dr. Irani on 20th of September 2011. We reviewed his progress to date over the last six months of his orthopaedic residency. At the time of his previous evaluation and scheduling it had to be postponed and so the evaluation on the 20th will serve for his evaluation of the preceding seven months. During the course of our discussion we reviewed Dr. Irani's progress overall and that specifically addressed the issues noted on the memorandum for record dated 15 August 2011.

With regards to Dr. Irani's surgical skills they are on par with his peers at this very early stage in his residency. Dr. Irani has rotated with me and I found his technical skills to be appropriate relative to wound closure and fracture fixation. He did not have the opportunity to do much with me in the area of arthroscopy. I have heard from Dr. Guy that his skills in arthroscopy are quite elementary and will require substantial growth and improvement during the course of his residency. My direct observations of his interactions with patients have been favorable. He appears to demonstrate appropriate relationships with the patients and their families while under my direct supervision. Dr. Irani demonstrates an excellent degree of interest and commitment to his own education. He carries around a small notebook while we are seeing patients in the office and if he encounters something which he is unfamiliar with he will note that for a later review. I consider this to be an excellent teaching tool. With the exceptions noted below I think that Dr. Irani's progress to date has been reasonably satisfactory.

Dr. Irani has had struggles and problems during his early phase in his orthopaedic residency. Some of these issues reflect his performance while he was a first year resident but on an orthopaedic rotation. Some of these are reflected by his behavior when he is rotating in other specialties. Some of these are noted during the first two months that he has been full-time here in the orthopaedic department. I communicated these with him during the course of our discussion. During this portion of the interview I specifically referenced the numbered topics present on the 15 August memo. With respect to point number one I am aware of the circumstances surrounding this patient's care on a firsthand basis. I had been consulted for the management of his arm injury. I am also aware of the issues surrounding the attending physician's treatment of this patient while he was in the trauma bay. I had spoken to Dr. Irani on a separate occasion about his behavior and his communication with the nurses. His central assertion is that he had a favorable relationship with the patient following his initial resuscitation. I informed him that the patient had received some sedation which also involves a certain degree of amnesia. Whether or not the patient responded to him appropriately after he was resuscitated did not in any way support proper treatment prior to that point. I also

CONTINUED

DEPARTMENT OF ORTHOPAEDIC SURGERY
Two Medical Park, Suite 404, Columbia, SC 29203
803-434-6812, FAX 803-434-7306

USC(Irani)1111



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

SEPTEMBER 22, 2011
RE: DR. AFRAAZ IRANI (PGY-2 ORTHOPAEDIC RESIDENT)
PAGE 2

addressed the fact that his communication with the nursing staff and that his behavior was unacceptable. With respect to points number 2, 3 and 4 regarding communication, prioritization and tardiness, he acknowledged that these have been issues in the past and he indicated his desire to improve them. With regards to point number 5, he acknowledged that his decision making was incorrect regarding the total joint patient at the VA Medical Center that Dr. Koon references in his memo. He recognizes his errors involving the patient were threefold: 1) He failed to recognize the urgency of an infection in a patient who had had a total joint replacement. 2) He did not go to evaluate the patient personally. 3) He relied on a physician with less expertise to communicate the level of urgency which unfortunately proved to be incorrect. He acknowledged that his behavior was substandard in this area.

Dr. Irani was clear and forthright in his response to my evaluation. He indicated that he understood that he had made mistakes, had shortcomings, and needed to improve his performance. There still appears to be a small gap in his level of insight. He seems to feel that some of the issues here have to do with an incorrect perception by others and not incorrect performance by him. He did, however, indicate that he wanted to work in such a fashion that he would not leave any room for misperception on the part of others.

Dr. Grabowski provided some feedback about prioritization of duties in the emergency room.

In summary, Dr. Irani has demonstrated some shortcomings and mistakes during his PGY-1 and PGY-2 years. I think that these are remediable in a straight forward fashion and I expect that he will grow as an orthopaedic resident and put these issues behind him. That is my full expectation and based on his response during our evaluation I think that he feels the same. We will be meeting with him on an ongoing basis over the next several months to review his progress to date and provide him feedback with the ultimate goal of re-evaluating him and hopefully removing him from a probationary status.

David E. Koon, Jr., M.D.
Program Director

John J. Walsh, IV., M.D.
Chair Department of Orthopaedics

JJW.09.22.11.cct.ORTHO

*Reviewed + Reviewed   10/3/11*
*— [signature]    (Irani).*



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

RE: VA patient
David Koon
Sent:Thursday, November 03, 2011 9:39 PM
To: Afraaz Irani [afraaz.irani@gmail.com]; jhoov14@yahoo.com; Jennifer, Wood
[jhwood23@gmail.com]; John Walsh

Dr. Irani -

I am well aware of the facts surrounding this patient's care and do not need you to remind me of the details.

I'm amazed that, as the junior resident of the PH team, you feel somehow inconvenienced by having to dictate a discharge summary on a patient that you "never actually participated" in his care. I guess that I'm supposed to be thankful that you "have gone ahead and dictated the discharge summary" for me. Absolutely incredible...I can assure you that I would have NEVER in a million years sent a response like this to my program director, especially when I was in the midst of academic remediation. I would remind you that I had asked you THREE times to get this done. Instead of saying "No sweat Dr. Koon, I'll take care of it" and getting it done, I get this dribble.

I really am at a loss for words. Jennifer / Justin - I'm open to any suggestions.

DK

From: Afraaz Irani [afraaz.irani@gmail.com]
Sent: Thursday, November 03, 2011 6:24 PM
To: David Koon
Subject: VA patient

Hey Dr. Koon,

Just to follow up regarding the VA patient. That patient was transferred from the VA. Hoover did the H&P. The patient was seen by Drs. Wood and Walker. I actually never participated in the patient's care, and am not sure how I am responsible for the discharge order. The only thing I can think of is that Dr. Wood asked me to put in the discharge order. Anyways I have gone ahead and dictated the discharge summary for your review.

Thanks,
Afraaz

USC(Irani)1110

Archive Manager Message Export                                                    Page 1 of 1

 Archive Manager

| From: | Katherine Stephens | Sent: | Mon, 07 Nov 2011 04:39:10 GMT |
|---|---|---|---|
| To: | Afraaz Irani | | |
| Subject: | Re: update on progress (Out of office) | | |

Greetings!

I will be out of the office until Thursday, November 10th and will only check e-mails sporadically during this time. If you need assistance prior to my return, please contact my assistant, Anne Marie Hyer, by phone (803-434-4416 or 803-434-6861, option 1) or via email (annemarie.hyer@palmettohealth.org).

Thank you,

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education
Palmetto Health

>>> Afraaz Irani <afraaz.irani@gmail.com> 11/07/11 04:38 >>>

Ms. Stephens,

Thank you for all your help over the past couple months.

I appreciate the opportunity to speak with you and your feedback.

I just wanted to update you on my recent meetings with Drs. Koon and Walsh. At our previous review on October 3rd, they mentioned things were progressing well, curriculum credit would not being withheld, and I am on track to complete the process by Dec 1st.

Thereafter, Dr Koon mentioned on 10/26 that he had heard some increased complaints about me. When I asked for more details, he deferred saying simply to talk to Drs. Mazoue and Wood.

I individually spoke with Dr. Mazoue on 10/27 who said I was doing fine on his service. When asked how I could improve, he suggested to try and work more quickly which I have attempted to do since. Otherwise he said I was doing fine and did not have any other suggestions.

I individually spoke with Dr. Wood on 10/28 who said she did not have any issues to raise or complaints to address.

Since this process has begun, it appears that everything is on track. At our last review on October 3rd, it was mentioned that should I wish to continue the grievance process it would strain my relationship with the chairman and program director. Accordingly, since everything is going according to schedule, and I was jeopardizing my relationship with my attendings, I suspended the grievance process based on their urging.

I appreciate feedback during my training process, and my goal is to obviously become a better resident. At this point, like most of my colleagues, I am working on becoming more efficient and knowledgeable.

Thank you for your continued support,
Afraaz

**From:** John Walsh
**Sent:** Tuesday, November 22, 2011 5:03 PM
**To:** Michelle Wehunt
**Subject:** Re: Afraaz

Ok

Sent from my Verizon Wireless Phone

----- Reply message -----
From: "Michelle Wehunt" <Michelle.Wehunt@uscmed.sc.edu>
Date: Tue, Nov 22, 2011 11:51 am
Subject: Afraaz
To: "David Koon" <David.Koon@uscmed.sc.edu>, "John Walsh" <John.Walsh@uscmed.sc.edu>
Cc: "Afraaz Irani" <afraaz.irani@gmail.com>

Would you be available to meet with Irani, to go over his progress the morning of Nov. 30th after conference?  If so I'll
add to your schedule and advise Irani as well, if not I can look at some other dates.

Thanks,

Michelle C. Wehunt
Residency Coordinator Orthopaedic Surgery
M-III, M-IV Student Rotation Coordinator
HIPAA Privacy Contact
USC School of Medicine
Two Medical Park, Ste. 404
Columbia, SC 29203
Office:  803-434-6879
Fax:    803-434-7306



1

USC(Irani)0984

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Tuesday, November 29, 2011 7:14 PM |
| **To:** | John Walsh; Jennifer, Wood; jhoov14@yahoo.com; Kathy.Stephens@PalmettoHealth.org |
| **Subject:** | Dr. Irani |
| **Attachments:** | Irani MoR 3.docx |

Please see the attached MoR.

We will meet with Dr. Irani at our next faculty meeting on Monday, 05 DEC 11.

dk

---------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

29 NOV 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr.s David Koon and Jennifer Wood (orthopaedic chief resident) met with Dr. Irani on Monday, 21 NOV 11 to discuss his remediation process. We had a very frank discussion with Dr. Irani regarding his remediation measures. Dr. Irani stated that he believed he was doing well and improving in all areas.

Dr. Wood had several instances where she believed Dr. Irani was still performing below his level of training. These included failures to complete assigned tasks (eg. morning patient list).

I informed Dr. Irani that his email to me regarding the completion of a delinquent narrative summary was inappropriate. (see below) His failure to timely complete assigned tasks, as well as his sense of entitlement, was unprofessional and inappropriate.

Dr. Irani has been verbally counseled regarding inappropriate patient care during a pain management problem with one of Dr. Walsh's post-operative patients.

Dr. Irani asked about the pending recommendations of the faculty re: his remediation. I informed him that the final decision had not been finalized, but I thought that we would transition him to level I remediation. After a long sigh and a rolling of the eyes, Dr. Irani informed us that this decision would only continue his "overhead." When questioned about this statement, he informed us that he had been "documenting" his activities and that he would have to continue this process until he was "off of probation." He appeared to be completing a "log" in order to disprove allegations of tardiness.

Dr. Irani failed to properly assess and manage a patient of Dr. Koon's with post-operative wound drainage and infection after she called twice over a three day weekend (25-27 NOV 11).

Dr. Irani failed to abide by his attending surgeon's instructions during Staff clinic (28 NOV 11) and was argumentative when confronted by his chief resident.

Dr. Irani continues to display behaviors which are inappropriate and unprofessional. His progress will be re-evaluated at our next faculty meeting on Monday, 05 DEC 11. We have asked for his presence at this meeting.

David E. Koon, Jr., MD
Program Director

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0898

| | |
|---|---|
| **From:** | Katherine Stephens <Kathy.Stephens@PalmettoHealth.org> |
| **Sent:** | Wednesday, November 30, 2011 9:39 AM |
| **To:** | David Koon |
| **Subject:** | Re: Dr. Irani |

David,

When you meet with Dr. Irani next week, be sure to approach these deficiencies in terms of specific examples of what is not acceptable and expectations. From what you've told me and my own unscientific assessment, it appears that lack of humility and maturity are underlying issues with him.

Let me know if you need further assistance in terms of outside evaluation, etc.

Kathy

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> David Koon 11/29/2011 7:14 PM >>>
Please see the attached MoR.

We will meet with Dr. Irani at our next faculty meeting on Monday, 05 DEC 11.

dk

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

----------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

**From:**           David Koon <David.Koon@uscmed.sc.edu>
**Sent:**           Wednesday, December 07, 2011 5:55 PM
**To:**              Afraaz.irani@gmail.com; John Walsh; David Koon; Kathy.Stephens@PalmettoHealth.org; Jennifer, Wood

Dr. Irani -

In an effort to better structure your academic remediation, you are required to attend an evaluation by Dr. Michele Parnell on Monday, 12 DEC at 4:30.

Her office contact information is:

Michele Marinkovic Parnell, PHD
1620 Lady Street Suite B
Columbia, SC 29201
Phone:
(803) 451-7600
Fax Number: (803) 451-7604

Her office has requested that you bring copies of any documentation that you have regarding your remediation thus far.

David Koon

---------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

## Katherine Stephens - Re: Trauma F110375

| | |
|---|---|
| **From:** | Bill Gerard MD <bgerardmd@gmail.com> |
| **To:** | Diane Savage <Diane.Savage@PalmettoHealth.org> |
| **Date:** | Friday, December 09, 2011 8:46 AM |
| **Subject:** | Re: Trauma F110375 |
| **CC:** | "Allison Turnley" <Allison.Turnley@PalmettoHealth.org> |

Gather all info and forward to Raymond and Catalano.

bg

DS use this e-mail.

On Dec 9, 2011, at 7:35 AM, Diane Savage wrote:

> Here is Marie's.
>
> ---------------------------------------------------------------------------
> PALMETTO HEALTH CONFIDENTIALITY NOTICE
> This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

**From: "Marie Brady" <Marie.Brady@PalmettoHealth.org>**
**Subject: Trauma F110375**
**Date: December 7, 2011 6:18:29 PM EST**
**To: "Diane Savage" <Diane.Savage@PalmettoHealth.org>**

I was just writing this E-mail to let you know that I was working in pod 5 when the pt. came in, I actually helped Elaine Simons, RN take care of the pt. from the trauma bay 2 and continued through her stay in pod 5... We both, Elaine and I were in the room and she was getting her ready to go to the OR and she became very nervous and looked like she wanted to say something but not sure how she could say it..... Elaine asked her what she was thinking about and she stated that she was very uncomfortable with the Ortho Residents that were just in her room.... She said that she has only gone to Baptist and that this was very unorganized and she was scared.. We tried to assure her that it was going to be ok but you could tell that she still felt very uncomfortable.... Elaine then left the room to speak with Diane about the way the pt. felt and I stayed with her for a little bit to see if I could calm her nerves a little by talking to her and she stated that she felt like she was just thrown around and it was very scary and she was very uncomfortable with the surgery doctors.... I then stated that I would let her nurse know and my charge Nurse at the time was Diane know and Im sure we would be addressing the situation and

Palmetto Health - 001572

she smiled and said thank you so much for everything you have done for me today. The Doctors names were: Dr. Irani and Dr. Natche... Elaine, Diane, and Arlene were at her bedside talking with her... The next thing I know is that  Dr. Jones the Attending was in the room and spoke with the family and the pt. and she felt better. When I went back in there Elaine, Diane and Arlene were with her and Diane was holding her hand and stated to her that she was in good hands.... She stated to me that she wanted to say thank you and that just talking was a big help... and to thank Elaine, Diane,  Arlene and myself for understanding and making her feel better...

Marie Brady

Palmetto Health - 001573

Dr Koon,

Attached is Elaine's detailed account of treatment for ▮▮▮▮▮▮ As you and I discussed yesterday, I requested Dr Irani accompany me to update patient's family following the reduction as well as talk again to ▮▮▮▮▮▮ with family present given her valid concerns about surgery and care received.  We then contacted the AOD, Mike Rawl, who paged Dr T Jones.  Dr Jones immediately came to the ED and talked with ▮▮▮▮▮▮ and her family.  He thoroughly explained all injuries, plan for care, and answered all questions.  Following this, ▮▮▮▮▮▮ was taken to the OR.

Reiterating Elaine's account, it was as if Drs Irani and Nathe were twisting and turning the limbs of a toy doll instead of a human being.  Through this entire ordeal the patient was awake, oriented and fully aware about what was going on, as well as tearful.  There were no visible or verbal compassionate efforts by either to provide comfort or lessen her fears.

If you need any further information or clarification, please do not hesitate to email or call.  Arlene Vance, RN

**Arlene Vance, RN, BSN**

From:           Arlene Vance <Arlene.Vance@PalmettoHealth.org>
Sent:           09 December, 2011 11:48 AM
To:             dkoon@sc.rr.com
Cc:             brianandelaine@gmail.com; Allison Turnley; Arlene Vance; Diane Savage
Subject:        Fwd: trauma female 375

Dr Koon,

Attached is Elaine's detailed account of treatment for ▮▮▮▮▮▮▮▮▮. As you and I discussed yesterday, I requested Dr
Irani accompany me to update patient's family following the reduction as well as talk again to Ms▮▮▮▮▮▮with family
present given her valid concerns about surgery and care received.  We then contacted the AOD, Mike Rawl, who paged
Dr T Jones.  Dr Jones immediately came to the ED and talked with Ms▮▮▮▮▮and her family.  He thoroughly explained
all injuries, plan for care, and answered all questions.  Following this, Ms▮▮▮▮▮was taken to the OR.

Reiterating Elaine's account, it was as if Drs Irani and Nathe were twisting and turning the limbs of a toy doll instead of
a human being.  Through this entire ordeal the patient was awake, oriented and fully aware about what was going on,
as well as tearful.  There were no visible or verbal compassionate efforts by either to provide comfort or lessen her
fears.

If you need any further information or clarification, please do not hesitate to email or call.  Arlene Vance, RN

**Arlene Vance, RN, BSN**
**Assistant Nurse Manager**
**Palmetto Health Richland**
**Emergency Department**
434-2220


>>> Elaine Simon <brianandelaines@gmail.com> 12/9/2011 1:35 AM >>>
To whom it may concern:

I am writing this letter because I had the privilege to provide care to the patient brave▮▮▮▮▮▮▮▮▮▮
Trauma Female 375 on Wednesday December 7, 2011. Unfortunately during her stay in the ED the treatment
provided was less than adequate and not up to Palmetto Health Richland's Policies or Standards of Care. Ms.
▮▮▮▮▮was involved in a head on collision with prolonged entrapment, was flown in by Lifenet and
sustained injuries which included: bilateral femur fractures, open right ankle fracture and open left humerus
fracture with dislocation of the left elbow.

My care started in the Trauma Bay with the patient to the CT scanner, back to the trauma bay for additional
x-rays, to my assigned room in the ED and ended in the block room in preparation of surgery. I felt that
overall the treatment of the patient in the Trauma bay was adequate. We were able to stabilize the patient's
blood pressure there with fluid boluses and control her pain as best we could with fentanyl. The CT scans
took longer than normal apparently there was an issue with the contrast dye but still the patient's vital signs
and pain was controlled. The patient was transported to trauma 1 for x-rays. At this time I met with the
patient's family and asked them if they had been updated by anyone. The mother and father of the patient
said, "no one had come and told them anything". It was at that time I explained the injuries that I knew to the
family and reassured them that she had stable vital signs and at that time and we were controlling the
patient's pain. I also told them there was a chance she might have to go to surgery that same day due to the
nature of the injuries but that the physicians would talk to them more about that. I asked Dr Loflin to update

1

USC(Irani)0732

the family and she said she couldn't till all the films were back. I asked Dr. Loflin were I could bed board the patient for and she answered with, "I can't give you an answer till all the films are back".

The problems really began happening when the orthopedic resident arrived for the consult and met the patient in the trauma bay. While we were trying to get a Foley catheter in the patient, (she desperately had to urinate). Dr. Nathe began examining the patient's right ankle by removing the splint and ace wrap in the trauma bay before even introducing herself to the patient. Blood was heavily flowing out of the patients open ankle. Bleeding had been controlled prior to removing the splint and ace wrap. Once the x-rays were completed the split was put back on and ace wrap re-applied and the patient was transferred to room 254. Shortly after the patient arrived to the ED room I became aware due that the patient's hemoglobin had dropped from 10 to 7. An order for 4 units of PRBC was obtained from Dr. Loflin and I sent a tech down to retrieve 2 units at a time. I overheard Dr. Nathe on the phone trying to get in touch with some other ortho. resident to help her with "the wash out and reduction". Apparently she got in touch with Dr. Irani. Dr Nathe asked me to gather several supplies and for the reduction of the right ankle and left elbow. I told her at that time we needed to get a consent signed. She responded "What? We are not doing a conscious sedation only a reduction". I told her that I understood that but that we still needed to obtain consent for a procedure. Dr. Nathe stated, "well I have never had to do that". I filled out the consent for with the procedures she said we were doing and left it at the patient's bedside. I gathered all the supplies and as I was coming around the corner to the room and heard Dr. Loflin tell Dr. Nathe, "just do what she says".

The patient requested that her mom be there in the room with her. I asked Dr. Nathe and she agreed it would be fine. When Dr. Irani arrived he said in front of the patient (after Dr. Nathe said it was okay) that her mom could not come back. This was all discussed at the patient's bedside.

Again I inquired about obtaining consent. Dr. Irani said, "Oh no we don't need consent for this". My consent form remained unsigned at the bedside. Dr Irani introduced himself and said to the patient, "You know you have a broken ankle right; you know your arm is broken too, right?" Ms.████████answered "yes". At this time the blood arrived and I could not get into the room to hang it. I said, "Hey can I get around so I can hang the blood". It was like I was invisible to Dr. Nathe and Dr. Irani. They had the C-arm blocking the end of the bed and doorway and had turned the patients bed so there was no way around to the pumps etc. Finally the Ortho Tech Toni pushed the C-arm so I could duck underneath it to get around. At this time the right ankle splint was removed and blood began gushing out of patient's ankle all over the C-arm and onto floor. Dr Irani asked me, "Can you get me chucks pads please". I responded, "I will as soon as I get this blood started". At this time the patients systolic was hovering in the 90's and she was obviously in need of pain meds. I continued to give patient the prn doses of fentanyl to control her pain during this procedure. Her blood pressure was too low to tolerate the Morphine PCA and Loflin told me to hold off. I was bolusing the PRBC's with a warmer. At this time I was basically trapped in and was able to witness the cruel treatment of this patient. Dr. Irani and Dr. Nathe began working on the ankle washing out the open bleeding fracture with NS and soaking the patient and all her linens in the process. The patient was shivering. As Dr. Nathe was working on the ankle Dr. Irani unwrapped with left humerus to begin working on it. He said, "Oh this is open?" Dr. Nathe said, "No one told me". Really you are the ortho. resident who has examined the patient and you aren't clear on her injuries. I was in complete shock that they were talking about the patient as if she couldn't hear them. She was totally awake, totally alert with tears in her eyes. Dr. Irani asked me if I would assist him with placing the patient's hand in the finger trap. I did so, but did not understand why Nathe or the tech did not. Post right ankle reduction (while looking at the fracture with the c-arm), Dr. Nathe said, "Uh look at this, that's not good". Dr. Irani said, "Can you turn it to the left a little". He said, "Well it's not going to get fixed down here". They were talking again like the patient was not there. I managed to transfuse 3 units of the PRBC's during this time and the patients BP was in the 120's. Once ortho. left the room I got extra staff to help turn the patient to get her off the saline and blood soaked linens.

2

USC(Irani)0733

At this time I could tell the patient was worried and I asked her what was wrong. Ms. ████████ told me, "I have always gone to Palmetto Baptist before and it just seems like everything here is disorganized, and I am worried about the people taking care of me". She said, "Not you two" speaking to Marie B. PCT and myself. She said, "The doctors, I am just worried I won't be able to walk again". I did the best I could to reassure the patient and make sure she was as comfortable as I could make her. I told her she was in good hands and I was sorry that it had felt disorganized. Although in my heart I couldn't blame or contest anything that she was saying. Directly following the reduction in the ER Vicki RN from the OR called saying they were ready for the patient to come to the block room and wait for surgery.

I couldn't believe it, an hour plus had gone by of pain and extensive bleeding for this patient in an ER room and the fractures were not even fixed and now the OR was ready to take the patient to surgery where all this should have been done in the first place. There the patient could have been unaware of the pain, not felt cold, not felt fear. She would have been comfortable. This is what I would have wanted for my family and friends. This is what our standards should be and what this facility is capable of. Don't physicians take an oath to first do no harm? Well what were they doing? I don't know but in my 5 years at PHR ER I have never felt so uneasy, so upset or like I had to help save the patient from what was going on.

Early on I had gotten the Charge RN, Arlene Vance and Diane Savage involved in what was happening. They were very supportive to me and made the appropriate phone calls. Before the patient went to the OR, Dr. Jones came down and explained the surgery and the injuries to the patient. The patient verbalized her understanding. The AOD, Mike was present as well. Before the patient left for surgery the surgery checklist was obtained, consent signed and 4th unit of PRBC's were hung.

My hope is that we can learn from this. Learn to work together for the patient. The Nurses are there to advocate for the patient and make sure things are done according to policy. Let's not forget we are caring for a person not just fixing bones. We need to look at the whole picture. Let's not forget about the family and the patients requests. I hope this never comes close to happening again.

Elaine Simon, RN

--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0734

| | |
|---|---|
| **From:** | Kristen Nathe <kristen.m.miller@gmail.com> |
| **Sent:** | Sunday, December 11, 2011 6:44 PM |
| **To:** | David Koon |
| **Subject:** | Fwd: |
| **Attachments:** | 12.7.11.docx; ATT00001.htm |

Dr. Koon, I'm sorry this is so late. I sent it to Hoover first to make sure it was in line with what was expected. There may be things that I have missed or did not over hear, but this was my recollection of events. I apologize for the situation and have certainly learned the reiterated value of communication. I will always make an effort to improve my relationships with nursing staff and my patients in the future.

Kristen

Sent from my iPhone

Begin forwarded message:

> **From:** Kristen Miller Nathe <kristen.m.miller@gmail.com>
> **Date:** December 9, 2011 4:49:16 PM EST
> **To:** "kristen.m.miller" <kristen.m.miller@gmail.com>

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

This is my understanding and knowledge of what happened on 12/7/11:

11:30 am phone call on my cell from Catherine Loflin (general surgery) about two consults in the ED with open fractures. Was on my way in from prison clinic and stopped by the OR to pick up the call pager and change. Told Dr. Jones that there were two consults and he told me to see the patients, order XR, and come back when the XR were uploaded.

11:45 saw the critical patient (TF 374) in the trauma bay and CT 2. That patient was transferred straight to STICU. Ordered the proper x-rays.

12:15 went to evaluate TF375, but patient was in CT3. Patient started in trauma bay 1 and was transferred to CT3. General surgery wanted to get bilateral lower extremity CTAs and the CT scanner was having problems, taking longer than normal. Followed the patient back into trauma bay 1 where x-rays were taken that I ordered while in CT. After x-rays, the patient was moved to ED room 254. When the patient was taken back to the trauma bay after CT is when I introduced myself to the patient.

12:30-1ish checked on results of CTs and x-rays and performed an H&P on TF375. Also went up to STICU to perform a more extensive survey of TF374. TF374 was hypotensive and her x-rays were deferred until later. Paged Whiteside. He called back and said since he was at Baptist that I should page Hoover. Paged Hoover once, no return call. Waited approximately 5 minutes then decided to talk to Dr. Jones.

1:15-1:30 when to priemer ortho clinic to discuss x-ray reads and injuries with Dr. Jones. Wood was in the clinic and overheard the injuries. She instructed me to page Irani to help with the consults. Dr. Jones gave a list of things to start with (wash out, reductions, and splinting for both patients) and check back when x-rays of TF374 were completed. Stated that depending on general surgery consent he would like to take TF375 to the OR that night. No discussion as to what would be fixed or done in the OR.

1:45ish headed back down to the ED. At that time, general surgery asked that the patient's family be removed from the ED room and placed in the consultation area. General surgery and a patient liaison asked me to speak to the patient's family to update them on the injuries and current plan. I spent approximately 10 minutes with the family, answered all questions to their satisfaction. After talking with the family, I discussed the injuries with the patient and immediate actions that would need to be taken including splinting the right ankle and left arm.

2pm Paged Irani. Called the ortho tech (Toni) and grabbed the C-arm to be used for reductions. At this point the patient's nurse, Elaine, asked me to consent the patient for the reductions. I responded that I had never consented a patient for reductions when not involving sedation. She told me it was protocol so I said I would. She went to get the forms. I never heard back about the consent paperwork. Irani introduced himself to the patient and described what needed to be done in the ED, reduce and splint her right ankle and reduce and splint her left arm.

USC(Irani)1131

The small room was set up with the c-arm at the end of the bed. In order to pass to the other side of the bed, the c-arm needed to be moved and replaced. The ortho tech was working with a small area nearest to the door, trying to help. The small room caused the ortho cart to possibly be in the way of entry of the room at times. We started by placing 4 chuck pads under the right leg with a trail into the trash can to try to minimize a mess. 10cc of 1% lidocaine was injected into the right ankle joint for pain control. The patient was also given 75mg of Fentanyl, she had received at least 150mg in the trauma bay. General surgery had instructed me not to use sedation. Irani then used 2L sterile NS to wash out the 3 cm lac over the medial malleoli after the lidocaine had time to take effect and the fentanyl was given. After the washout, the lac continued to slowly drip with a little on the floor after the trashcan had been moved. Fluoro was used to plan the reduction. Adaptec was placed over the wound with 4x4s then soft roll to keep it in place. Bulky jones was used for padding and then a short leg trilam splint was applied under fluoro. The reduction was hard to maintain. The reduction was checked after the splint dried under fluoro. I attempted the reduction and molded the splint. The sheets on the right side of the patient's bed were soaked with water even after attempts to prevent this from the washout. At some point during my molding, infusion tubing disconnected and I pointed out to the nurse, Elaine, that the patient's transfusion was leaking all over the patient and the bed. The c-arm was moved so the nurse could get to the line. During the right leg, the only comments that I can remember that could be construed badly were: Irani said "this reduction is difficult. That's as good as its gonna get, splint it there. It will be stabilized in the OR."

Next, Irani told the patient that we needed to fix the arm. He asked if she was doing ok and she said yes. As I cleaned up the right side of the room and remnants from splinting, Irani placed the patient in finger traps with no weight applied as directed by Dr. Jones to help in the left forearm and elbow reductions.

At one point, Elaine, was blocked in the back of the room by the C-arm, however, it was not asked to be moved so she could exit. No one had to crawl on the floor under the c-arm to pass. It was moved at least twice for nurses and myself to pass by.

Next, Irani placed chucks under the left arm trailing into the trash can. He used 2L NC to wash out the lateral lacerations to the elbow. We then padded the left arm and measured the long arm posterior slab. I attempted reduction of the elbow and checked it with fluoro. 2-3 attempts continued to show the elbow with subluxation of the radial head. The posterior slab was applied and I held the elbow in reduction while it hardened. Then the sugar tong splint was applied after that. I continued to hold the reduction and mold the sugar tong. At some point I said, "the elbow keeps popping back out, I am trying to hold it in with my mold."

After the left long arm splint hardened, the patient fell asleep for a few minutes while we were cleaning up the room. In regards to pain control, Irani and myself advised the patient before we started with the ankle reduction to tell us if she was having any pain and we would stop and get more pain medication. The patient never told us she was having pain, never cried out, never jerked limbs to pull away

from painful stimuli. The patient did cry when given her diagnoses and was concerned that she would not be able to run again.

The ortho tech, Toni, and I then placed the patient in bilateral knee immobilizers per Dr. Jones. The Hare traction on the left side had to be removed and the immobilizer had to be placed over her trilam splint on the right. Afterwards, we both helped the nurses roll the patient to change the bed sheets. The wet sheets were delayed being changed because the nursing staff had come in to tell us that they would prefer to only change it once and she was heading to the ICU. At that point, she had a bed but it was still occupied in the ICU. A few minutes later another nurse came in and said that she had a bed and was moving up to the ICU immediately. A few minutes after that, another nurse came to say she was going straight to the OR and we (Irani and myself) needed to consent her for surgery.  At that point, Dr. Jones had not discussed surgery with us or what procedures he would like the patient consented for. Meanwhile, the patient was asking to see her family.

After finishing the reductions and splinting, Irani went to talk to the family and escorted them into the patient's room. Irani and myself were then asked to step into the trauma bay with a nurse manager (Arlene) and Elaine. My understanding of the concerns that they expressed were: 1. that things seemed unorganized and that the patient did not seem to know what was going on  2. that the patient wanted to see her family  3. needing consent for the reductions. The nurse manager stated that the reductions and splinting was not something that should have been done in the ED. The nursing staff did not stop Irani or myself at any point to suggest that the patient may need more explanation as to what was happening during the reductions. The nurses asked what pain medication was given, however, did not seem to give concern that the patient did not have adequate pain control.

The process of splinting took 1 hour and 15 minutes to 2 hours to complete. Honestly, I never checked the clock because I continued on to the next patient in the STICU.

I was focused while holding my reductions and molding. I can sometimes be unaware of what else is going on during those times. I may have missed conversations or actions by others during that time.

In my opinion, I felt that I worked as quickly and efficiently as possible to accommodate all of the patient's injuries at my level of education while keeping the patient informed of what was going on. I realize that there may have been a lack of communication between nursing staff and myself. I would appreciate the opportunity to work with them on correcting the communication barriers. I was unaware that Dr. Jones was called down to the ED and that there was any concern over comments made around the patient. In the future, I would love to be directly notified of any concerns so that I can attempt to understand, and correct my actions.

USC(Irani)1133

| | |
|---|---|
| **From:** | Afraaz Irani <afraaz.irani@gmail.com> |
| **Sent:** | Monday, December 12, 2011 3:32 PM |
| **To:** | David Koon; Katherine Stephens |
| **Subject:** | meeting with Dr. Parnell |

Hello,

I just contacted Dr. Parnell's office. Since the events of last Friday, I'm not feeling so great today, and did not get sleep last night.

I contacted her office, and let her know that obviously I wasn't feeling well enough today to do the testing. We will reschedule soon.

Thank you for setting this up for me, and we will try and reschedule.

Thank you,
Afraaz


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0719



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

12 DEC 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG – 01 DEC 11.

The faculty of the orthopaedic department met with Dr. Irani on Monday, 05 DEC 11.
In attendance were Dr.s Walsh, Koon, Voss, Guy, Grabowski, McGown, McBryde, Hoover, and
Wood, as well as Paul Athey, MBA. We met with Dr. Irani for over one hour.

We asked Dr. Irani many questions, ranging from his desire to be in an orthopaedic training
program to patient care issues. Dr. Irani admitted to secretly recording phone calls with an
attending surgeon (Dr. Abell). He repeatedly refused to give direct answers to several questions
and failed to take responsibility for his actions in several patient care examples. Despite
attending direction and encouragement to take ownership of his actions, he steadfastly refused to
admit any wrongdoing, even when faced with overwhelming evidence to the contrary. He
appeared to consistently lack insight into these issues.

Dr. Irani could not admit agreement to any of the initial remediation issues which led to his
placement on Level II academic remediation.

Dr. Irani has displayed evidence of ongoing inadequate patient care. He has prescribed
inappropriate doses of narcotics, failed to evaluate post-operative patients with wound care
issues, and failed to abide by direct attending instructions during the care of clinic patients.

Dr. Irani has continued to display a lack of teamwork within the residency framework. He has
repeatedly shown up late for morning rounds, been ineffective in preparing the morning "list",
and has been delinquent in assigned tasks.

Dr. Irani displayed inappropriate patient care in the case of Trauma,F375. He displayed a lack of
empathy and compassion, a lack of appropriate pain management, a neglect of appropriate
informed consent, poor interpersonal communication, and a lack of appropriate teamwork with
ancillary staff.

Dr. Irani has had multiple verbal and written counseling sessions regarding these deficiencies.

It is the recommendation of the faculty of the orthopaedic department that Dr. Irani be placed on
immediate suspension from patient care (Level III Academic Remediation). This would involve
a leave of absence beginning 09 DEC 11 thru (at least) 30 JAN 12. He would be restricted from
any resident duties. He is required to attend psychological evaluation with Dr. Parnell on

USC(Irani)1105



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

Monday, 12 DEC and any follow-up appointments she deems necessary.  He would be required
to attend any psychological counseling sessions recommended by her evaluation.  Curriculum
credit will be withheld during this leave of absence.

The faculty will meet on/about 30 JAN 12 to evaluate his progress and determine the appropriate
next step in Dr. Irani's academic remediation.

A copy of this memorandum will be provided to Dr. Irani.  He is reminded of his option to
appeal this action per the Grievance and Due Process policy in the Resident Manual.


David E. Koon, Jr., MD
Program Director

John J. Walsh, MD
Chair, Dept. of Orthopaedics

DEPARTMENT OF SURGERY
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)1106

**From:**        David Koon <David.Koon@uscmed.sc.edu>
**Sent:**        Tuesday, December 13, 2011 7:04 PM
**To:**          Afraaz.irani@gmail.com; John Walsh; Kathy.Stephens@PalmettoHealth.org; Jennifer, Wood; Michelle Wehunt
**Subject:**     GMEC Meeting 13 DEC 11

Dr. Irani -

I wanted to inform you that the PH GMEC considered the recommendation of the Dept of Orthopaedic Surgery (Memorandum of Record dated 12 DEC 11) and affirmed their recommendation.

You have been placed on Level III Academic Remediation from 09 DEC 11 thru 30 JAN 12. Per the 2011-2012 PH Resident Manual, you are removed from clinical rotations and curriculum credit will be withheld.

It is unfortunate that you cancelled your initial evaluation with Dr. Michele Parnell. It is recommended that you pursue this evaluation as soon as possible.

It is suggested that you refer to the 2011-2012 PH Resident Manual for your option of appealing this decision by the GMEC (Grievance and Due Process policy).

The faculty of the Dept of Orthopaedic Surgery will meet on/about 30 JAN 12 to determine the next appropriate action.

Questions may be directed to myself or Dr. Stephens.

David Koon

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0792

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | 15 December, 2011 10:46 AM |
| **To:** | John Walsh; katherine.stephens@palmettohealth.org; Afraaz.irani@gmail.com; Jennifer, Wood |
| **Subject:** | Evaluation |

Dr. Irani-

Per the recommendations of the Executive Committee of the GMEC, you are required to have a psychological evaluation. This evaluation is to be completed by 15 JAN 2012.  This evaluation can be completed by any of the providers listed below:

Dr. Michele Parnell
451-7600

Dr. Mark Sloan
788-1440

Dr. Monica Wright
238-5239

Failure to complete this evaluation by 15 JAN 2012 will result in termination from the residency program.

Questions can be directed to myself or the GME office.

David Koon

-----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

Archive Manager Message Export                                               Page 1 of 2

 **ArchiveManager**

| | | | |
|---|---|---|---|
| **From:** | Afraaz Irani | **Sent:** | Fri, 16 Dec 2011 14:31:09 GMT |
| **To:** | Katherine Stephens | | |
| **Subject:** | Re: Residency | | |

Ms. Stephens,

Thank you for your response. Since both Dr. Walsh and Koon were at the faculty meeting and spoke with me I was not sure if you would like me to speak to Dr. Walsh again. I would be happy to do so if you feel that it is the most appropriate next step.

Please let me know what you think the next best step is, and I will act accordingly.

Thank you again for your help.
Afraaz

On Fri, Dec 16, 2011 at 10:23 AM, Katherine Stephens <Kathy.Stephens@palmettohealth.org> wrote:

Dr. Irani,

Please refer to the PH Resident Manual Grievance and Due Process policy. Step 1.2 directs you to meet with your Director of Education as your next step. In Orthopaedics, that is Dr. Walsh. If the response from Dr. Walsh is unsatisfactory to you, your next step would be to meet with me.

Once you have met with Dr. Walsh, if you wish to continue the process, please contact me again.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 12/16/2011 8:40 AM >>>

Ms. Stephens,

On December 12, 2011, I was informed that the faculty of the orthopaedic department have recommended that I be suspended and placed on Level III academic remediation at least until the end of January 2012.

As you might imagine, this was a tremendous disappointment for me as I take my commitment to my job very seriously. This action would have a devastating effect on my residency and would likely preclude me from pursuing my career goal of obtaining a fellowship after residency. Since my previous probation instituted by Dr. Koon from August 15 to December 1, I have done everything I know to do to comply with the academic remediation plan. I felt like I was making very good progress, seeking and accepting constructive criticism, and consciously taking on extra duties to support my fellow residents. As you know, I had to discontinued the grievance process over my probation so as not to further jeopardize my relationship with my attendings.

Unfortunately, my relationship with Dr. Koon appears to have become completely derailed in the past few weeks. I believe that Dr. Koon's displeasure with me started with an e-mail exchange on November 3 involving a discharge dictation for a VA patient. Dr. Koon requested that I do the discharge dictation, although I never participated in the patient's treatment or care. I was not trying to shirk my duties; my cover

letter to Dr. Koon merely explained my confusion about how I was assigned to the dictation. I believe that Dr. Koon misinterpreted my cover e-mail because he really unloaded on me in his e-mail response.

I strongly disagree with the latest allegations against me as set forth in Dr. Koon's memorandum of December 12, 2011. Please accept this letter as my request for a grievance of my suspension and the proposed disciplinary action pursuant to the Grievance and Due Process provisions in the Resident Handbook. Please also accept this letter as a request for a meeting with you, as the DIO, to discuss the grievance.

To allow me to have a better understanding of the circumstances surrounding my proposed suspension, please provide to me copies of all documents on which the proposed Level III remediation is based, including a copy of the complaint against me arising out of Trauma case F375. Although I fully understand that I am only a PGY-2 resident with much to learn, I am confident that my care of this trauma patient was appropriate, empathetic, and compassionate.

With regard to the required psychological evaluation by Dr. Parnell, as I e-mailed you before, I had to cancel the appointment on Monday afternoon, December 12, because I was feeling very ill that day. When I called Dr. Parnell's office the following day to reschedule my appointment, she informed me that her next available appointment is not until January. I am also uncertain about the nature of my upcoming visit with Dr. Parnell. Can you please provide further explanation to me about what Dr. Parnell will be evaluating and why such an evaluation was ordered by Dr. Koon? I mean no disrespect, but I am very uncomfortable with this situation and would prefer to see a provider of my own choice.

Thank you,

Afraaz

---------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

**From:**              New Innovations <support@new-innov.com>
**Sent:**                18 December, 2011 6:26 AM
**To:**                 David Koon
**Subject:**          New Innovations Daily Notifications

New Innovations
Automated Daily Email

**Items you were copied on**

**Message From:** New Innovations
**Subject:** Reminder to Log Duty Hours into New Innovations
**Reply Address:** (none)
Irani, Afraaz R, It appears that there has been no record of you logging your duty hours in New
Innovations for at least 10 days. Please use the following link to log your duty hours. https://www.new-
innov.com/Login/Login.aspx. If you have any questions or trouble logging, please notify me. Margie Malone
GME
434-2184
margie.malone@palmettohealth.org

Thank you.

Last Date Logged: 12/07/2011

New Innovations, Inc. ©1995-2011

                                                            Log In

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

USC(Irani)1134



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS℠

DECEMBER 19, 2011                    RE: AFRAAZ IRANI

MEMORANDUM FOR RECORD:

This memo is to document a conversation between Dr. Irani and Dr. Walsh on Monday, December 19, 2011. Dr. Irani and I discussed his academic progress to date. Dr. Irani had the opportunity to review his version of the events surrounding the care of a recent female trauma patient. I reviewed with him issues in general relative to his academic progress.

We specifically went through an evaluation form present on the new innovations website and discussed issues related to communication, professionalism, punctuality, and insight. I urged him to use the time period of his suspension for self-reflection as a "time-out" for him to reevaluate his performance here. I discussed with him the process of academic remediation and that the goal is restoration of him to the program here. I specifically stated it is not punitive in nature.

We also discussed the nature of the graduate medical education committee review process and the value of the external scrutiny that that provides for his academic situation here within the department. Afraaz is headed home for vacation, and I offered him the opportunity to communicate with me at any point regarding the nature of our conversation.

John J. Walsh, IV, M.D.
JJW.12.19.11.tlh.ORTHO

RECEIVED: _____          DATE: 1/18/12
Afraaz Irani

DEPARTMENT OF ORTHOPAEDIC SURGERY
Two Medical Park, Suite 404, Columbia, SC 29203
803-434-6812, FAX 803-434-7306

USC(Irani)1103

Archive Manager Message Export                                           Page 1 of 3



| | | | |
|---|---|---|---|
| **From:** | Afraaz Irani | **Sent:** | Tue, 20 Dec 2011 13:35:12 GMT |
| **To:** | Katherine Stephens | | |
| **Subject:** | Re: Residency | | |

Ms. Stephens,

I met with Dr. Walsh yesterday. I was hoping to meet with you when you have some time to go over the remediation/grievance process.

Thank you,
Afraaz

On Mon, Dec 19, 2011 at 11:02 AM, Katherine Stephens <Kathy.Stephens@palmettohealth.org> wrote:

Dr. Irani,

I see that you have contacted Dr. Walsh about meeting with him. That is the next step.


Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org


>>> Afraaz Irani <afraaz.irani@gmail.com> 12/16/2011 2:30 PM >>>
Ms. Stephens,

Thank you for your response. Since both Dr. Walsh and Koon were at the faculty meeting and spoke with me I was not sure if you would like me to speak to Dr. Walsh again. I would be happy to do so if you feel that it is the most appropriate next step.

Please let me know what you think the next best step is, and I will act accordingly.

Thank you again for your help.
Afraaz

On Fri, Dec 16, 2011 at 10:23 AM, Katherine Stephens <Kathy.Stephens@palmettohealth.org> wrote:
Dr. Irani,
Please refer to the PH Resident Manual Grievance and Due Process policy. Step 1.2 directs you to meet with your Director of Education as your next step. In Orthopaedics, that is Dr. Walsh. If the response from Dr. Walsh is unsatisfactory to you, your next step would be to meet with me.
Once you have met with Dr. Walsh, if you wish to continue the process, please contact me again.
Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

Archive Manager Message Export                                                      Page 2 of 3

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 12/16/2011 8:40 AM >>>

Ms. Stephens,

On December 12, 2011, I was informed that the faculty of the orthopaedic department have
recommended that I be suspended and placed on Level III academic remediation at least until the end of
January 2012.

As you might imagine, this was a tremendous disappointment for me as I take my commitment to my job
very seriously. This action would have a devastating effect on my residency and would likely preclude me
from pursuing my career goal of obtaining a fellowship after residency. Since my previous probation
instituted by Dr. Koon from August 15 to December 1, I have done everything I know to do to comply
with the academic remediation plan. I felt like I was making very good progress, seeking and accepting
constructive criticism, and consciously taking on extra duties to support my fellow residents. As you
know, I had to discontinued the grievance process over my probation so as not to further jeopardize my
relationship with my attendings.

Unfortunately, my relationship with Dr. Koon appears to have become completely derailed in the past
few weeks. I believe that Dr. Koon's displeasure with me started with an e-mail exchange on November
3 involving a discharge dictation for a VA patient. Dr. Koon requested that I do the discharge dictation,
although I never participated in the patient's treatment or care. I was not trying to shirk my duties; my
cover letter to Dr. Koon merely explained my confusion about how I was assigned to the dictation. I
believe that Dr. Koon misinterpreted my cover e-mail because he really unloaded on me in his e-mail
response.

I strongly disagree with the latest allegations against me as set forth in Dr. Koon's memorandum of
December 12, 2011. Please accept this letter as my request for a grievance of my suspension and the
proposed disciplinary action pursuant to the Grievance and Due Process provisions in the Resident
Handbook. Please also accept this letter as a request for a meeting with you, as the DIO, to discuss the
grievance.

To allow me to have a better understanding of the circumstances surrounding my proposed suspension,
please provide to me copies of all documents on which the proposed Level III remediation is based,
including a copy of the complaint against me arising out of Trauma case F375. Although I fully
understand that I am only a PGY-2 resident with much to learn, I am confident that my care of this
trauma patient was appropriate, empathetic, and compassionate.

With regard to the required psychological evaluation by Dr. Parnell, as I e-mailed you before, I had to
cancel the appointment on Monday afternoon, December 12, because I was feeling very ill that day.
When I called Dr. Parnell's office the following day to reschedule my appointment, she informed me that
her next available appointment is not until January. I am also uncertain about the nature of my
upcoming visit with Dr. Parnell. Can you please provide further explanation to me about what Dr. Parnell
will be evaluating and why such an evaluation was ordered by Dr. Koon? I mean no disrespect, but I am
very uncomfortable with this situation and would prefer to see a provider of my own choice.

Thank you,

Afraaz

---------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may
contain information that is privileged, confidential and exempt from disclosure under applicable law. If
the reader of this message is not the intended recipient, you are hereby notified that any dissemination,
distribution, or copying of this communication is strictly prohibited by law. If you have received this
communication in error, please notify me immediately.

Dr. Afraaz Irani's 1/3/12 grievance process meeting – notes by Dr. Katherine Stephens, DIO

I reminded Dr. Irani that today's meeting was being held as the next step in the grievance process he had initiated surrounding his suspension and asked him to describe his concerns. I told him that the meeting would be followed by an investigation by me and that I would then respond to him in writing within ten business days, per the grievance policy.

Dr. Irani asked that correspondence be sent to his personal email address of ███████████

Dr. Irani questioned what he called a "sudden change" in Dr. Koon's comments to him on Nov. 21st that he could expect to be moved from Level II remediation to Level I and being placed on Level III remediation (and suspension) on Dec. 9.

He stated that the letter he received regarding his suspension included inaccuracies. He provided the following account of these items:

- Inappropriate patient care – Dr. Irani stated that because the patient referenced did not show up at the E. R., he could not provide care to the patient.
- Repeatedly late for morning rounds – Dr. Irani stated that this had occurred only twice, and both times were in the same week. He said that his tardiness was not his fault – that there had been an issue with the alarm on his Android. He also said that Dr. Koon has told him on Nov. 21st that he was doing fine in this regard. The occurrences noted above happened after Nov. 21st.
- Patient MRI issue on contradicting his attending's recommendation – Dr. Irani stated that he had never before had to get an MRI on a patient the same day. He stated that the patient never left the clinic and ended up getting the MRI the same day, which he said was the "bottom line".
- Trauma patient issue – Dr. Irani stated that Dr. Walsh told him he was suspended pending investigation of the situation. He stated that PH didn't follow our policy on investigations and never contacted him, but instead used hearsay, which was taken to GMEC. He stated that this was illegal. He also stated that he did pain management appropriately. He gave local and systemic pain medication before touching the patient and the patient indicated the pain was being managed. He stated that the trauma team contacted him 2 hours after the patient arrived, and that the informed consent issue occurred before he arrived. He also stated that when he arrived, the nurses (Arlene/Elaine, specifically) said that they would "have to talk about how all of this was handled". He talked to the patient and to the family. He got the informed consent. Played everything "by the book" because the nurses were upset when he arrived.

Dr. Irani then reiterated that the statements made leading to his suspension are inaccurate and false and asked why complaint policy steps in the residents manual weren't followed? I responded that I was listening to him and gathering his recollection of the situations leading to his suspension at the present time as part of the grievance process and my investigation.

He said that he wanted to see what he was accused of – that he wanted to see the documentation. He said that his reputation was being damaged and even slander and libel.

He stated that communication was handled poorly in his remediation and suspension – that letters were just dropped off for him rather than a meeting.

I told him that I would investigate his account of the issues above and provide my response within the ten business day period called for in the resident grievance policy.