Archive Manager Message Export                                                    Page 1 of 1



| | | | |
|---|---|---|---|
| **From:** | Michelle Wehunt | **Sent:** | Wed, 04 Jan 2012 10:39:41 GMT |
| **To:** | Katherine Stephens | | |
| **Subject:** | Irani | | |

Good Morning Kathy,

Follow-up from our telephone conversation ... I spoke with Kim at Dr. Michele Parnell's office she stated that Dr. Irani is unable to reschedule his appointment at this time due to office policy . Dr. Irani canceled his initial appointment that was to take place on December 12th, at 4:30. Dr. Irani telephoned there office on December 12th, at 3:30pm to cancel the appointment stating he was tired, didn't sleep well.   Due to his cancelation he is being charged a $120.00 fee that must be paid before he can reschedule his appointment.  Dr. Irani has attempted to reschedule his appointment however, Kim stated that he is very adamant the he should not be responsible for the $120.00 fee that it should be Palmetto Health's/ USC Orthopaedic because he didn't make the initial appointment and didn't know why he needed the appointment.

In your meeting with Dr. Irani yesterday (1-3-12)  he stated he has an appointment scheduled at Dr. Parnell's office on the 11th of January.  I have left a message with Kim to verify this information (as of yesterday bill is still unpaid).  She will be in after 1:00 today.

Secondly, I spoke with Dr. Irani this morning regarding the payroll issue.  I explained to him that as of December 9, 2011 he was put on a leave without pay status (LWP) and that he should not have received a pay check for pay period ending 12/24/11.  Payroll asked if he could write us a check back for the net amount.  He is very reluctant to give us a check stating that "what difference does it make", he is in the middle of a grievance and if he wins the hearing we would have to reimburse him for his LWP status.  He asked when did we need it and I told him as soon as possible... he asked "what does that mean" ...I said meaning as soon as possible- sometime today.  He ended the conversation with he would need to check his bank statement and get back with me later. I'm not sure if that means today, tomorrow etc...

I'll let you know when I hear from Dr. Parnell's office and when I hear back from him

*Michelle C. Wehunt*
*Residency Coordinator Orthopaedic Surgery*
*M-III, M-IV Student Rotation Coordinator*
*HIPAA Privacy Contact*
*USC School of Medicine*
*Two Medical Park, Ste. 404*
*Columbia, SC 29203*
*Office:  803-434-6879*
*Fax:  803-434-7306*

------------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

Archive Manager Message Export

Page 1 of 1



| | | | |
|---|---|---|---|
| **From:** | Michelle Wehunt | **Sent:** | Wed, 04 Jan 2012 16:27:27 GMT |
| **To:** | Katherine Stephens | | |
| **CC:** | David Koon | | |
| **Subject:** | Irani | | |

Kathy,

I spoke with Kim at Dr. Parnell's office to inquire if Dr. Irani has an appointment scheduled for January 11, 2012 (as he stated to you  yesterday when you met with him) and she stated that Dr. Irani *does not* have an appointment scheduled with their office *(on any date)*.  He did however, call and this morning (1-4-12) about him needing to schedule one.  She is expressing concerns about him lying about the appointment.  The initial evaluation is about an hour long and if GME and the Program really want her to conduct the evaluation then she will (but only if you want her to) and if he will not pay the prior cancelation fee we would need to and be responsible for future payments.

Per Kim - Dr. Parnell stated that thus far in her professional opinion she doesn't' feel he is being or trying to be compliant with the program.  After the initial evaluation future testing session(s) can be any where from 3-4 hours in length and she is expressing  concerns that he may not be compliant with keeping appointments and not sure that he will take the process seriously and is concerned about blocking that length of time out of her schedule.  If he sets up and keeps the initial evaluation she may be able to access his willingness for future appointments.

*Michelle C. Wehunt*
*Residency Coordinator Orthopaedic Surgery*
*M-III, M-IV Student Rotation Coordinator*
*HIPAA Privacy Contact*
*USC School of Medicine*
*Two Medical Park, Ste. 404*
*Columbia, SC 29203*
*Office:  803-434-6879*
*Fax:    803-434-7306*

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

Archive Manager Message Export

Page 1 of 2



| | | | |
|---|---|---|---|
| **From:** | Katherine Stephens | **Sent:** | Thu, 05 Jan 2012 10:37:11 GMT |
| **To:** | Afraaz Irani | | |
| **Subject:** | Re: Suspension | | |

Dr. Irani,

Thank you for providing the information below. As called for in the grievance policy, I am currently investigating these issues and will respond to you within 8 business days.

On another note, I want to remind you that a psychological evaluation by January 15, 2012 is a requirement of your remediation plan. At our meeting on January 3rd, you indicated a tentative date of January 11th. Subsequent to our meeting, Michelle Wehunt contacted me concerning Dr. Parnell's policy that a $120 late cancellation fee be paid before you could reschedule and that you believe that Palmetto Health should pay the cancellation fee. Because you made the decision to cancel the previously scheduled appointment, any late cancellation fees are your responsibility - not Palmetto Health's. Note that this late cancellation fee issue does not change the January 15th deadline for a psychological evaluation, and you were provided other options for an evaluation. Also note that having begun the grievance process does not change the January 15th deadline, which is fast approaching.

As stated above, I will respond to your grievance within the 10 business day period required by the grievance policy.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 1/4/2012 12:56 PM >>>
Ms. Stephens,
Thank you for meeting with me yesterday. Just to reiterate the points of our conversation. The scheduled reviews of my performance have been for the most part positive until taking a sharp and sudden recent turn. On Nov. 21st Dr. Koon stated to me that he would recommend level I remediation. Between that time and the time of his letter, he changed his mind to level III remediation with suspension. Looking at the complaints in the most recent letter, I attempted to ascertain what caused this change. Dr. Koon's letter identified four issues in the interim that according to his letter formed the basis for his recommendation.
As I discussed with you, I provided my justification of the three more minor points. I would like to focus on the perceived major issue. I was told that the suspension was in response to the handling of TF 375 and the purpose of the suspension was to perform an investigation to get all sides of the story including mine. Unfortunately, this did not happen; no one ever solicited to my side of the story. Needless to say I am extremely disappointed with how this has been handled. Not only was my opinion never solicited, but I was never made aware of the accusations to defend myself. Furthermore, contradictions were identified during the investigation and the investigator was unable to verify statements that were inaccurately attributed to me.
Moreover, I find it more concerning that the written and stated Palmetto Health guidelines were not followed. Judgment was based on hearsay, and I was never involved. More than violating guidelines, I was not even afforded the basic human courtesy of communication or asked what happened.
I fully stand by my care of this patient. You are welcome to interview the other witnesses involved with this case (Kristin Nathe the ortho intern, Toni the cast tech, and Dr. Loflin the trauma resident). I

Palmetto Health - 002069

hold myself to a high standard. It is interesting that I have only had two complaints against me from ancillary staff: same individuals both times.

I welcome you to talk to any other staff, be it in the ER, the orthopaedics floor where I spend majority of my time, the ICU, the operating room, or my fellow residents. Please talk to these people. I'm confident they will validate that my care has been professional and appropriate. At your request I will be more than happy to provide additional references.

I would like to defend myself against these accusations which have severely and perhaps irreparably damaged my reputation throughout the hospital, so that I may take the necessary steps to defend my name against slander.

Let's as a team determine what really happened during this incident. If there is room for improvement I am always to happen listen, but I believe this case has not been handled appropriately or fairly.

I have attached my writeup of the events regarding this patient, which I typed up the day after the incident. Again, my opinion was never solicited.

To add insult to injury I received a phone call this morning saying they had mistakenly paid me, and I need me to come in and write a check for the amount of my last paycheck.

Thank you.

Afraaz

Events for 12/7/11:

**Patient arrives as trauma 911 at 11AM.**

**Called down at about 2PM by Dr. Loflin (PGY-2 trauma resident), who told me Dr Nathe (Ortho intern) needed help (Dr. Nathe said Dr. Wood told her to call me for help with patient).**

Arrive in POD 5.

Arlene (nurse) walks out of POD 5 room. Dr. Nathe in room. I have not yet seen the patient, Nathe, or anyone else. Arlene immediately turns to me and states we need to talk about how all this was handled. I asked her what was wrong, and what I needed to do. Arlene refused to provide any guidance and only said we would talk about it at the end, and ended the conversation by walking away.

I realized that the nurses were upset, and therefore played everything by the book. I met with Nathe and reviewed all films. Together we assessed all injuries and determined a game plan. She brought the c-arm and we saw the patient again together. I introduced myself to the patient, described her injuries, and what we would be doing for her in the ER. I spoke with Dr Toussaint from neurosurgery and Dr. Loflin from Trauma. I was informed sedation was not an option in this patient. I told the patient we were going to splint and reduce her right ankle. I asked the nurse for fentanyl. Fentanyl was given. Her right lower extremity was unwrapped. An intrarticular block (local lidocaine) performed. After appropriate local and systemic anesthesia given, we irrigated her wound with 2L sterile normal saline because it was an open wound, and start reduction under fluoro. (nursing charting also documents administration of pain meds and reduction of right lower extremity as described above).

Diane Savage (another assistant nurse manager) around this time, stepped in for a few seconds, but stepped back out again as we were using fluoro and there was radiation exposure. I did not see her again during rest of procedure.

Attention was then turned to left upper extremity. The room was small and I had difficulty making it around bed, but we all had to work efficiently with what we had. I again explained the injuries to the patient, and asked if she was OK, and if her pain was under control. She stated she was alright. We explained we would irrigate the arm and perform a reduction. We began reduction. During this time, Dr Nathe took some final fluoro pics of RLE in splint. I said that is a hard reduction, that's as good as we are going to get it down here, and we will have to take care of it upstairs in the OR. After reductions performed, again explained to patient exactly what had been done.

The sheets were wet, so I helped the nurses change the wet sheets.

The patient stated she wanted to see her parents. I told patient I was going to talk to her family and that I would make sure she was not going anywhere until she saw her parents. I

stepped out. I spoke with nurse (Arlene), who again said we need to talk about how situation was handled after things were finished. Again I asked what we could do. Again all that was said was that we would talk about it later. I wrote the consent and spoke with family (mother and father) in consultation room with Arlene. I made sure all questions were answered satisfactorily.

Nursing staff wanted to meet. Arlene, Elaine, Dr Nathe and myself met. Elaine states that the patient was scared and confused. When addressing informed consent, the nurse stated consent was needed not because it was indicated, but because the nurses have to "cover our assess." (Of note: this all happened before I had arrived -- I was not involved in the informed consent discussion at all). Arlene seems to take issue with our care stating that two washouts and reductions were "pretty complicated for an ER."

I thanked the nurses for their feedback. I go back to room to check on the patient. She seems to be doing fine. I step out to bring family back. I bring the family back to the ER. The patient is getting an EKG. I use that time to show the family all the xrays of their daughter's injuries on the xray viewing stations in the ER and again explain what we would be doing. I escort the family personally back to the patient's bedside.

I spoke with family and patient frankly about injuries (I was most concerned about Right ankle in terms of some long term pain) Never at any point did I tell patient or parents there is a chance she would not walk again. I spoke with the patient about each injury in detail and possible long term ramifications. Answered all questions for both the family and patient. Explained the severity of the injuries frankly and honestly, and what we were going to do in the OR. Explained the risks/benefits/alternatives of all her injuries. All questions were satisfactorily answered. I asked the nurses if they needed anything else. They said they did not. The OR was calling for the patient.

At this time Nathe and I left with the c-arm as there was another patient upstairs with an open ankle that needed an urgent reduction.

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | 05 January, 2012 11:35 AM |
| **To:** | Katherine Stephens |
| **Subject:** | RE: Re: Suspension |

Kathy -

Would you forward to me his version of the patient's care?

Thanks

DK

---

**From:** Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
**Sent:** Thursday, January 05, 2012 10:37 AM
**To:** Kathy Helms; Gwen Hill; David Koon
**Subject:** Fwd: Re: Suspension

FYI.


Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org
-------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

USC(Irani)0846

Dr. Afraaz Irani's 1/3/12 grievance

Investigational meeting with Dr. David Koon on 1/5/12 – notes by Dr. Katherine Stephens, DIO

I reminded Dr. Koon that today's meeting was part of my investigation of Dr. Irani's suspension, in keeping with the grievance policy.

Dr. Koon stated that he had provided multiple counseling sessions with Dr. Irani since issues related to patient care and professionalism were initially recognized in the fall of 2010.  His first verbal counseling with Dr. Irani occurred in December of 2010.  Additional faculty and chief resident counseling had to be done after the December counseling, and this led up to formal academic remediation that started August 15, 2011.  He noted that Level III academic remediation/suspension was recommended by the faculty after they met with Dr. Irani on December 5, 2011, and suspension was initiated on December 9, 2011.  This was followed by unanimous GMEC approval of the suspension on December 12, 2011.

 Dr. Koon said that in the December 5th meeting with faculty, Dr. Irani repeatedly refused to give direct answers to several questions and refused to take responsibility for his actions in several patient care examples.  Despite faculty direction and encouragement to take ownership of his actions, he steadfastly refused to admit any wrongdoing, even when faced with overwhelming evidence to the contrary.  He appeared to consistently lack insight into these issues.

He recounted that the Nov. 21st discussion with Dr. Irani was initiated by Dr. Irani when he asked whether he would be removed from Level II remediation while at the "prison clinic".  Dr. Koon told him that he would likely be recommended for moving to Level I remediation.  Dr. Koon said that Dr. Irani's response was inappropriate – that he sat down, rolled his eyes, sighed, and said that would mean he'd have to spend a lot more time documenting things.  Dr. Koon interpreted his reaction as not recognizing the need to continue working on remediation but rather documenting why he didn't need to make changes.

On the issue of inappropriate care to a patient, Dr. Koon stated that the patient had called the on-call doctor three times  - two of these three calls were with Dr. Irani - about post-op wound issues.  Dr. Koon said that the issues that were described were issues that should have been seen in the E.D. over the weekend.  Instead, Dr. Irani left it up to the patient on whether to come to the E.D. or not.  Dr. Irani told the patient to come see Dr. Koon the next week, which was inappropriate for such post-op wound issues.

On the trauma patient issue, Dr. Koon stated that he had discussed the situation with several involved, including nurses (Arlene/Elaine?), the ortho. tech (Toni), the other ortho. resident (Dr. Nathe), and Dr. Jones (trauma surgeon).  Toni 's and Dr. Nathe's accounts were not as caustic as were the nurses' accounts.  Dr. Jones told Dr. Koon that he thought that the technical ortho. care had been handled appropriately, but the communication had not been.  The patient had felt uncomfortable with the care provided by the ortho. residents to the point of asking to be transferred to another hospital for care after they left the room.  As a result, the Admin. on Duty called Dr. Jones and asked him to come to the E.D. and convince the patient's family that the patient's care needed to be handled at a trauma center rather than another hospital.

Dr. Koon noted that the decision to recommend suspension of Dr. Irani was made by the faculty two days prior to the trauma patient issue and that this situation was one more issue that reinforced the decision to suspend Dr. Irani.

Archive Manager Message Export                                    Page 1 of 4

 **ArchiveManager**

| | | | |
|---|---|---|---|
| **From:** | Katherine Stephens | **Sent:** | Wed, 11 Jan 2012 12:56:35 GMT |
| **To:** | Afraaz Irani | | |
| **Subject:** | Re: Suspension | | |

Dr. Irani,

I have notified Dr. Harari of the logistics for billing and reporting results to Palmetto Health.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 1/10/2012 8:30 PM >>>
Ms. Stephens,
Thank you for your email response and clarification. You raise an excellent point with Dr. McKee; it is probably in the best interested of all parties involved to avoid any possible conflict of interest as you mentioned.
I looked up several psychologists who would be able to make an appointment for me this week. I was able to make an appointment with Dr. Marc Harari, an independent psychologist who specializes in psychological testing evaluations, for this Friday at 10AM. I don't see any conflicts with him. Please let me know if there are any other issues you may foresee.
His office is on 1816 Bull Street and he may be contacted at 803-422-0017. His website is: http://www.drharari.com/.
I apologize for the confusion, and thank you for raising an excellent point that needed to be addressed.
Thank you for your help and clarification in this matter.
Afraaz

---------- Forwarded message ----------
From: **Katherine Stephens** <Kathy.Stephens@palmettohealth.org>
Date: Mon, Jan 9, 2012 at 4:52 PM
Subject: Re: Suspension
To: Afraaz Irani <afraaz.irani@gmail.com>

Dr. Irani,

In response to your e-mail of January 7, 2012, please note the following:

1) The e-mail sent to you on December 15, 2011 requiring the evaluation specified three physicians Dr. Parnell, Dr. Sloan, and Dr. Wright. This, of course, allowed you approximately one month in which to schedule and complete the evaluation. While you inquired as to the ability to obtain another physician, you never stated why this would be necessary. However, we will allow you to use Dr. Geoffrey McKee as you have requested. While we typically look for psychiatrists or psychologists outside the University of South Carolina

Palmetto Health - 002134

Archive Manager Message Export

School of Medicine to ensure there is not even an appearance of bias, it should be noted that you have chosen Dr. McKee and are doing so even though a quick search indicated that he has a USC-SOM faculty appointment.

2) If you proceed with Dr. McKee, we will require that you allow him to release the complete testing and test results to Palmetto Health. A summary report will not meet the requirements.

3) Because the evaluation is required as part of your residency, Palmetto Health will pay the cost. I will contact Dr. McKee's office concerning payment. You are only responsible for the cost to Dr. Parnell's office because you cancelled your appointment at the last minute incurring a cancellation fee.

4) Dr. McKee will know what is included in a standard psychological examination. If he has specific questions he may contact me although we generally try to limit any discussion to avoid any concerns with influencing an evaluation.

5) It is explicitly the expectations of the ACGME educational competencies, including the level of patient care that is expected, that are causing this examination to be required. The point is to ensure a high quality of care for patients and a high quality of educational achievement for you.

I believe this responds to the issues that you raised and you should be able to go forward with the evaluation without further delay. The resulting information should be forwarded to Dr. Koon directly from Dr. McKee.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 1/7/2012 12:03 AM >>>

Ms. Stephens,

Thank you for the update. I understand the circumstances regarding Dr. Parnell's visit and have called three times for clarification and rescheduling (including most recently on January 3rd) but have not heard back.

Accordingly, from our previous email, and with the timeline involved I went ahead and contacted my own provider, Dr. Geoffrey McKee, a licensed psychologist in downtown Columbia, who given the circumstances has agreed to perform and complete an evaluation this week. I will handle the payment. He just wanted to know (you can tell him directly if that is more convenient) (1) if the MMPI-2 is required or he can administer an analogous test; (2) the underlying reason or basis for the referral and what specific act or observation prompted the referral; (3) what is the issue or question that you would like answered by him. Again I can convey the message, or you may contact him directly. He may be reached at 803-251-3499.

Lastly I just wanted to address a couple issues. Regarding the nurses involved in the care of TF375, I would offer that I'm not the only one who has had less than ideal interactions with these nurses. As recently as this week, one of the other ortho residents (Dr. Goodno) received some pushback when trying to carry out orthopaedic care on a patient. Toni, the cast tech, had to essentially step in and warn him about her.

Needless to say I think it is less than an ideal situation when our primary concern as a hospital is no longer the patient's care but having to worry about other aspects.

You may also speak to the other residents in private to garner more feedback about their interactions.

Additionally, I am worried about these allegations snowballing. Dr. Koon at the faculty meeting December 5th, in front of the orthopaedic department staff made the allegation that this behaviour is a pattern. He stated he heard similar complaints about unprofessionalism and poor patient skills about me from the trauma case managers (Debra Floyd and Peggy Fields): an allegation that has been contested by the trauma case managers themselves.

I thank you for your help during this difficult time.

Thank you,

Afraaz

On Thu, Jan 5, 2012 at 10:37 AM, Katherine Stephens <Kathy.Stephens@palmettohealth.org> wrote:

Dr. Irani,

Thank you for providing the information below. As called for in the grievance policy, I am currently investigating these issues and will respond to you within 8 business days.

On another note, I want to remind you that a psychological evaluation by January 15, 2012 is a requirement of your remediation plan. At our meeting on January 3rd, you indicated a tentative date of January 11th. Subsequent to our meeting, Michelle Wehunt contacted me concerning Dr. Parnell's policy that a $120 late cancellation fee be paid before you could reschedule and that you believe that Palmetto Health should pay the cancellation fee. Because you made the decision to cancel the previously scheduled appointment, any late cancellation fees are your responsibility - not Palmetto Health's. Note that this late cancellation fee issue does not change the January 15th deadline for a psychological evaluation, and you were provided other options for an evaluation. Also note that having begun the grievance process does not change the January 15th deadline, which is fast approaching.

As stated above, I will respond to your grievance within the 10 business day period required by the grievance policy.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org
>>> Afraaz Irani <afraaz.irani@gmail.com> 1/4/2012 12:56 PM >>>
Ms. Stephens,

Thank you for meeting with me yesterday. Just to reiterate the points of our conversation. The scheduled reviews of my performance have been for the most part positive until taking a sharp and sudden recent turn. On Nov. 21st Dr. Koon stated to me that he would recommend level I remediation. Between that time and the time of his letter, he changed his mind to level III remediation with suspension. Looking at the complaints in the most recent letter, I attempted to ascertain what caused this change. Dr. Koon's letter identified four issues in the interim that according to his letter formed the basis for his recommendation.

As I discussed with you, I provided my justification of the three more minor points. I would like to focus on the perceived major issue. I was told that the suspension was in response to the handling of TF 375 and the purpose of the suspension was to perform an investigation to get all sides of the story including mine. Unfortunately, this did not happen; no one ever solicited to my side of the story.

Needless to say I am extremely disappointed with how this has been handled. Not only was my opinion never solicited, but I was never made aware of the accusations to defend myself.

Furthermore, contradictions were identified during the investigation and the investigator was unable to verify statements that were inaccurately attributed to me.

Moreover, I find it more concerning that the written and stated Palmetto Health guidelines were not followed. Judgment was based on hearsay, and I was never involved. More than violating guidelines, I was not even afforded the basic human courtesy of communication or asked what happened.

I fully stand by my care of this patient. You are welcome to interview the other witnesses involved with this case (Kristin Nathe the ortho intern, Toni the cast tech, and Dr. Loflin the trauma resident). I hold myself to a high standard. It is interesting that I have only had two complaints against me from ancillary staff: same individuals both times.

I welcome you to talk to any other staff, be it in the ER, the orthopaedics floor where I spend majority of my time, the ICU, the operating room, or my fellow residents. Please talk to these people. I'm confident they will validate that my care has been professional and appropriate. At your request I will be more than happy to provide additional references.

I would like to defend myself against these accusations which have severely and perhaps irreparably damaged my reputation throughout the hospital, so that I may take the necessary steps to defend my name against slander.

Let's as a team determine what really happened during this incident. If there is room for improvement I am always to happen listen, but I believe this case has not been handled appropriately or fairly.

I have attached my writeup of the events regarding this patient, which I typed up the day after the incident. Again, my opinion was never solicited.

To add insult to injury I received a phone call this morning saying they had mistakenly paid me, and I need me to come in and write a check for the amount of my last paycheck.

Thank you.

Afraaz

-------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


-------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

Archive Manager Message Export                                          Page 1 of 2



**From:**       Katherine Stephens                    **Sent:**   Wed, 11 Jan 2012 15:20:36 GMT

**To:**         hararipsych@aol.com

**Subject:**    Re: Dr. Irani's appointment

Dr. Harari,

Per our phone conversation today, the following information reiterates our discussion regarding Dr. Afraaz Irani's
evaluation appointment on January 13th:
* We are seeking a general psychological evaluation - not a fitness for duty test.
* A full report is needed - not raw data but also not a mere summary.
* Evaluation results of such tests are useful in designing an appropriate remediation plan.
* All medical residents must demonstrate competence in the Accreditation Council for Graduate Medical Education
(ACGME) educational competencies prior to graduation.  Those competencies are specified in Section IV.A.5. of the
ACGME common requirements at the following link:
http://www.acgme.org/acWebsite/dutyHours/dh_dutyhoursCommonPR07012007.pdf

If you need additional information, please let me know.

Thank you,

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> <hararipsych@aol.com> 1/11/2012 1:13 PM >>>
Dr. Stephens,

I left a voicemail with a request for a brief telephone conversation. I would like to have some more information
if possible regarding the purpose of this evaluation. My impression is that I will be performing a "fitness for
duty" evaluation. Additionally, I have questions regarding whether you are requesting the raw data or not.
Finally, my cost for this evaluation is $1,000.00. My office phone is 803-422-0017 and my cell phone number is
803-760-3934.

Respectfully,

Marc Harari, Ph.D.


-----Original Message-----
From: Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
To: DrHarari <DrHarari@DrHarari.com>
Sent: Wed, Jan 11, 2012 12:54 pm
Subject: Dr. Irani's appointment

Dr. Harari,

I am providing the following information in follow up to an appointment scheduled with you by Dr. Afraaz Irani.

Dr. Irani is a second year orthopaedic resident at Palmetto Health.  We are requiring that he have a
psychological evaluation conducted by January 15th, and Dr. Irani has notified us that he has scheduled an
appointment with you to conduct the evaluation on January 13th.

Palmetto Health - 002140

Because we are requiring the evaluation, Palmetto Health will pay the cost of your services.  Please have the bill sent to me at the address shown at the end of this email.

Additionally, we are requiring Dr. Irani to allow you to release the complete testing results to Palmetto Health; a summary report will not meet the requirements.  I would appreciate you having him sign a release form allowing you to do so.  If you need for us to provide such a form, please let me know.

If you have questions about the above arrangements or other specific questions, please contact me at either of the numbers shown below.

Thank you for your assistance,

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org
--------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

| From: | Katherine Stephens <Kathy.Stephens@PalmettoHealth.org> |
|---|---|
| Sent: | 11 January, 2012 4:34 PM |
| To: | Afraaz Irani |
| Cc: | James Raymond; David Koon; John Walsh |
| Subject: | Grievance Decision |
| Attachments: | AfraazIraniLtrJan112012.pdf |

Dr. Irani,

My letter of decision regarding the grievance of your academic remediation is attached.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

--------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

---------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1



January 11, 2012                    <u>DELIVERED VIA EMAIL</u>

Afraaz Irani, MD
Department of Orthopaedics
2 Medical Park, Suite 404
Columbia, South Carolina 29203

Dear Dr. Irani:

After carefully reviewing the information available to me, and after further discussions with several others, I have decided to uphold the decision concerning your December 9, 2011 academic remediation. An action like this is never simple, and I want to make it clear that our intent in initiating academic remediation is to aid you in meeting academic expectations and to have you complete your training.

If you decide to continue with the grievance process, please refer to the steps outlined in your Resident Manual.

Sincerely yours,

Katherine G. Stephens, PhD, MBA, FACHE
Vice President for Medical Education and Research

KGS/amh

cc: John Walsh, MD, Department of Orthopaedics
    David Koon, MD, Department of Orthopaedics
    James Raymond, MD, Chief Medical Officer

Post Office Box 2266
Columbia, SC 29202-2266        PHONE  (803) 296-2100        palmettohealth.org

USC(Irani)1006

Archive Manager Message Export                                                    Page 1 of 2



| From: | Katherine Stephens | Sent: | Mon, 16 Jan 2012 10:02:04 GMT |
|---|---|---|---|
| To: | Afraaz Irani | | |
| Subject: | Re: Grievance Decision | | |

Dr. Irani,

You have already seen the issues specific to the trauma patient situation and should already know what they are, including poor interpersonal communication to the point that Palmetto Health's vision - "to be remembered by each patient as providing the care and compassion we want for our families and ourselves" - was not met in this case.

Rather than focusing on gathering documents, your focus should be on meeting the terms of your remediation plan. As you know, Dr. Koon will discuss with you next steps in your remediation at the end of this month.

Dr. Stephens


Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 1/13/2012 7:43 PM >>>
Ms. Stephens,

Thank you for your prompt reply.

I need a copy of all the original documents/complaints/
allegations against me regarding Trauma F375.

I had requested these records previously; please let me know how I may get a copy so that I may understand the complaints against me and I can move forward.

Thank you,
Afraaz

On Wed, Jan 11, 2012 at 4:34 PM, Katherine Stephens <Kathy.Stephens@palmettohealth.org> wrote:
Dr. Irani,
My letter of decision regarding the grievance of your academic remediation is attached.
Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

-------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination,

Archive Manager Message Export                                        Page 1 of 1



| | | | |
|---|---|---|---|
| **From:** | Katherine Stephens | **Sent:** | Fri, 20 Jan 2012 16:56:43 GMT |
| **To:** | Gwen Hill | | |
| **CC:** | AnneMarie Hyer; Joni Glasscock; | | |
| **Subject:** | Time to meet? | | |

Gwen,

I need about 15 minutes to discuss remediation plan for Dr. Irani.  I will be at Corporate office Monday and can meet with you in person there between 10am and 10:30am, 11am and 11:30am, or 1pm and 1:30pm.  Any of those times work for you? ████████████████████████████

Kathy

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

Palmetto Health - 002167

| | |
|---|---|
| **From:** | Katherine Stephens <Kathy.Stephens@PalmettoHealth.org> |
| **Sent:** | Monday, January 23, 2012 4:05 PM |
| **To:** | David Koon |
| **Subject:** | RE: Remediation plan |

Hard to say. I'll get a copy made and brought to you later today or tomorrow morning.

>>> David Koon 1/23/2012 4:01 PM >>>
It was already on my list of topics for discussion. Was the report helpful?
DK

**From:** Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
**Sent:** Monday, January 23, 2012 3:59 PM
**To:** David Koon
**Subject:** Remediation plan

David,
I see that you, John, and I are meeting on Wednesday. I would like to take a few minutes to talk about next steps for Irani. I will bring his evaluation report to that meeting along with recommendations for next steps, which I am working on now.
Kathy
-----------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.
-----------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

USC(Irani)1028

Archive Manager Message Export                                                    Page 1 of 1



| **From:** | Katherine Stephens | | **Sent:** | Tue, 24 Jan 2012 11:27:57 GMT |
| **To:** | Gwen Hill; Lin Hearne; | | | |
| **Subject:** | Draft remediation plan for Irani | | | |

Gwen & Lin,

Here's the rough draft of a remediation plan I intend to complete with Dr. Koon tomorrow when we meet at noon.  It is in a much more structured format than we have used previously - we are currently developing guidelines and templates for implementation later this year but thought it helpful to use current version now for documentation.

You'll note that the column for the plan itself is not complete - Dr. Koon will need to work on completing that. Remediation length, as well.

Let me know what you think.

Thanks,
Kathy

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

| | |
|---|---|
| **From:** | Katherine Stephens <Kathy.Stephens@PalmettoHealth.org> |
| **Sent:** | Thursday, January 26, 2012 10:00 AM |
| **To:** | David Koon |
| **Subject:** | Updated academic action form |
| **Attachments:** | Academic-Action-Irani-Draft-January-2012.docx |

David,

See attached that was edited based on yesterday's conversation. Needs specific remediation plan inserted.
Let me know if you have questions.
Kathy
Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

--------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

From:          Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
Sent:          Friday, January 27, 2012 4:14 PM
To:            David Koon
Subject:       Re: Remediation
Attachments:   Irani 2012 Remediation draft.docx

David,
Here's my edited version that includes a few comments and questions. As noted in comments, I'll send recommendation for actual remediation plan draft separately.
Kathy
Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org


>>> David Koon 1/27/2012 6:11 AM >>>
Please review and edit.

Thanks

DK

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.


------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

31 JAN 12

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG 11 to 01 DEC 11.

Dr. Irani was placed on Level III Academic Remediation from 09 DEC 11 to 31 JAN 12.

Dr. Irani proceeded thru the Grievance Process in both instances ~~and his appeal was denied at each level.~~ through the DIO appeal level, and his appeal was denied both times. Dr. Irani did not appeal beyond the DIO level.

> **Formatted:** Strikethrough

I t is the recommendation of the faculty of the orthopaedic department that Dr. Irani be placed on Level II Academic Remediation beginning 06 FEB 12 thru ~~14 AUG 12.~~ 15 JUN 12

> **Comment [kgs1]:** I should have asked this yesterday. Do you think you can assess this adequately in 4 1/2 months? If so, let's have the length run from Feb. 1 - June 15. This would allow you to bring your recommendation to the June 12th GMEC, at which time he could be removed from Level II remediation, extended on the current plan, etc.

> **Formatted:** Strikethrough

Assessment of factors impacting resident's performance:
      Attitude of the resident
      Commitment to lifelong learning and self improvement
      Intellectual honesty with patients, colleagues, and self
      Professional ethical standards

It is our recommendation that the following remediation plan be instituted:

*I.  Review and adhere to the Palmetto Health Standards of Behavior.*

*II.  Demonstrate competence in the following:*

> **Comment [kgs2]:** This heading will cover the rest of the remediation plan.

A.  Patient Care:

1. Communicate effectively and demonstrate caring and respectful behaviors when interacting with patients and their families.
2. Make informed decisions about diagnostic and therapeutic interventions based on patient information and preferences, up-to-date scientific evidence, and clinical judgment.
3. Develop and carry out patient management plans.

      Remediation Plan
      Display empathy and compassion in all patient encounters.
      Discuss injuries with patients and families in laymen terms.
      Follow patient care plan set out by attending and/or senior resident.  If plan needs to be altered in any way, inform attending and/or senior resident immediately of changes to patient care plan.
      Read and prepare appropriately for clinics and operative cases.
      Discuss all cases preoperatively with attending.
      Discuss every consult/patient/phone call taken while on call with attending or with chief resident.
      Check out immediately if urgent; check out the next morning if not urgent.

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

Orthopaedic consults : See patient. Evaluate patient. Order appropriate imaging and/or other studies as indicated. Provide timely and appropriate management to patients, including pain management. Obtain consents when necessary, mark patient when necessary, prepare patient for OR when necessary. Devise appropriate plan of action for care. Then call senior resident or attending.

B. Medical Knowledge:

1. Resident must demonstrate knowledge of established and evolving biomedical, clinical, epidemiological and social/behavioral sciences, as well as the application of this knowledge to patient care.

    Remediation Plan
Read all assigned articles/chapters for conference. Be prepared to have interactive discussion/answer questions based on the assigned reading.
When on call over weekend, be prepared and present patients at fracture conference. Be prepared to discuss fracture classification, treatment options, outcomes, etc.

C. Systems Based Practice:

1. Identify strengths, deficiencies, and limits in one's knowledge and expertise

    Remediation Plan
Respond to constructive criticism in an appropriate and professional way. Admit and apologize for mistakes and be willing to endorse personal flaws. Take immediate action to correct deficiencies.

D. Interpersonal and Communication Skills:

1. Communicate effectively with patients, families, and the public, as appropriate, across a broad range of socioeconomic and cultural backgrounds;
2. Communicate effectively with physicians, other health professionals, and health related agencies;
3. Work effectively as a member or leader of a health care team or other professional group

    Remediation Plan:
Morning list ready by specified time daily set by chief resident. List includes up to date labs, vitals, patient plans, antibiotics, UOP, drain output, etc.
All assigned patients appropriately rounded on before morning conference.
Present to conference room by 6:25am every morning.
Report to OR and/or clinic immediately after conference is concluded.
Be on time to all assigned outpatient clinics.
Check out every day at the end of the day with chief resident regarding inpatients.
Communicate clearly and effectively with attending, ancillary staff, peers and families.
Respond appropriately to text messages and emails in a timely fashion.
Perform postoperative checks on all patients operated on, or needing postoperative checks at end of day.

DEPARTMENT OF SURGERY
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)1035



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

Perform discharge or transfer summaries in a timely fashion, including patients as instructed by chief resident and/or attending, regardless of your involvement in the patient's care.
Perform other duties as assigned by attending / senior resident with a good attitude.
If holding call pager during day, keep attending informed on whereabouts when seeing consults/attending to call issues.
Return phone calls, pages in timely fashion.
Work effectively and efficiently within the patient care team, including nurses and ancillary staff.

E.  Professionalism:

1. Commitment to excellence and ongoing professional development

       Remediation Plan:
       Commit to immediate and sustained improvement in all areas listed above.

Evaluation for each competency listed above will be accomplished by direct observation and feedback from faculty, attending(s), nurses, peers, and review of patient outcomes as applicable.

III.  Dr. Irani is also required to attend individual outpatient counseling thru the Palmetto Health E-CARE with
Dr. Janice McMeekin or other E-CARE counselor on a weekly basis.  He is responsible for arranging and attending these sessions.  He is responsible for providing electronic verification of these sessions within 48 hours to the Program Director.

**Comment [kgs3]:** Dr. McMeekin might not be available or might recommend a different counselor. Leave flexibility here.

IV.  Dr. Irani will be placed on the Total Joint service with Dr. Frank Voss beginning Monday, 06 FEB 12. He is required to arrange and attend bi-weekly meetings with Dr. Voss to review his performance.  He will also arrange and attend monthly meetings with his Program Director to review the progress with his remediation measures.

V.  Dr. Irani will be required to make up all missed call days within the remediation period.  He will adhere to all duty hour restrictions per the ACGME guidelines.

These recommendations will be reviewed with Dr. Irani on 31 JAN 12 during our faculty meeting and will be forwarded to the GMEC Executive Committee for review / temporary approval on 1 FEB 12. for review Review / approval by the GMEC will be on 14 FEB12.

**Comment [kgs4]:** Will need to take this step.
**Formatted:** Strikethrough

**Comment [kgs5]:** Faculty signatures
**Comment [kgs6]:** This is in memo format.  Add the faculty signatures here.  Okay to use similar format for actual remediation plan that will include your signature and Irani's signature – doing so separate from this memo will add clarity.  I'll send you a separate recommendation for the actual remediation plan to have Irani sign.
**Formatted:** Strikethrough
**Formatted:** Strikethrough

Program Director signature and dated

DEPARTMENT OF SURGERY
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)1036



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

*Resident verification:*

~~I have reviewed and discussed the contents of this form with my program director and understand that immediate and sustained improvement is required. Failure to correct the deficiencies noted above may result in further action up to, and including, dismissal from the residency program. I know where to get a copy of the Palmetto Health Grievance and Due Process Policy from the Palmetto Health web site at http://residenev.palmettohealth.org/documents/Graduate%20Medical%20Education/Resident%20Manual%202011-2012.pdf~~

~~Resident signature and date:~~

_____

DEPARTMENT OF SURGERY
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)1037

Archive Manager Message Export                                                    Page 1 of 1



| | |
|---|---|
| **From:** | Katherine Stephens | **Sent:** Fri, 27 Jan 2012 17:37:28 GMT |
| **To:** | David Koon | |
| **Subject:** | Recommended Irani remediation form | |

**Academic-Action-Irani-Draft-January-2012.docx** (25Kb)

David,

I basically used what you had and put it into a remediation plan form. You could have this ready to give to Afraaz on Tuesday. See what you think.

**One important difference between attachment and my previous edits to the memo:** Note at the end where I list additional remediation requirements. I changed the counseling sessions reference you had from weekly to what is recommended by E-CARE. They might recommend bi-weekly sessions, and I don't want a technicality to be an issue for us. Please edit the memo to remove "on a weekly basis" and replace it with "on the schedule recommended by E-CARE."

Have a good weekend!

Kathy

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

Palmetto Health - 002204

**From:**              David Koon <David.Koon@uscmed.sc.edu>
**Sent:**              Saturday, January 28, 2012 9:36 AM
**To:**                Katherine Stephens
**Subject:**           RE: Recommended Irani remediation form

We're going to meet with him on Tuesday...any chance I can get this form in it's final draft?

Thx

DK

---

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Friday, January 27, 2012 5:37 PM
To: David Koon
Subject: Recommended Irani remediation form

David,

I basically used what you had and put it into a remediation plan form.  You could have this ready to give to Afraaz on Tuesday.  See what you think.

One important difference between attachment and my previous edits to the memo:  Note at the end where I list additional remediation requirements.  I changed the counseling sessions reference you had from weekly to what is recommended by E-CARE.  They might recommend bi-weekly sessions, and I don't want a technicality to be an issue for us.  Please edit the memo to remove "on a weekly basis" and replace it with "on the schedule recommended by E-CARE."

Have a good weekend!

Kathy


Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research ACGME Designated Institutional Official Palmetto Health Fifteen Medical Park, Suite 202 Five Richland Medical Park Drive Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

USC(Irani)0847

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Saturday, January 28, 2012 10:00 AM |
| **To:** | David Koon; John Walsh; Frank R Voss; Kathy.Stephens@PalmettoHealth.org; jhoov14@yahoo.com; Jennifer, Wood |
| **Subject:** | RE: Remediation Plan |
| **Attachments:** | MoR 6 - 2012 Remediation final.docx |

All -

See attached for review.  Thanks for the suggestions.

dk

_____

From: David Koon
Sent: Saturday, January 28, 2012 9:37 AM
To: John Walsh; Frank R Voss; Kathy.Stephens@PalmettoHealth.org; jhoov14@yahoo.com; Jennifer, Wood;
Afraaz.irani@gmail.com
Subject: Remediation Plan

Dr. Irani -

We will meet with you on Tuesday, 31 JAN 12 in the orthopaedic conference room at 5:30 pm to review the next step in
your academic remediation.

Please acknowledge receipt of this message.  If you have any questions before then, please contact me or Kathy
Stephens.

Thanks

DK

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or
entity to whom it is addressed and may contain information, including health information, that is privileged,
confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are
hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY
PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related
message.

1

 UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

31 JAN 12

Memorandum of Record                    Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG 11 to 01 DEC 11.

Dr. Irani was placed on Level III Academic Remediation from 09 DEC 11 to 31 JAN 12.

Dr. Irani proceeded thru the Grievance Process in both instances through the DIO appeal level, and his appeal was denied both times.  Dr. Irani did not appeal beyond the DIO level.

I t is the recommendation of the faculty of the orthopaedic department that Dr. Irani be placed on Level II Academic Remediation beginning 06 FEB 12 thru 15 JUN 12.

It is our recommendation that the Palmetto Health Academic Remediation plan be instituted. (see attached)

Dr. Irani is also required to attend individual outpatient counseling thru the Palmetto Health E-CARE with Dr. Janice McMeekin on the schedule recommended by E-CARE.  He is responsible for arranging and attending these sessions.  He is responsible for providing electronic verification of these sessions within 48 hours to the Program Director.

Dr. Irani will be placed on the Total Joint service with Dr. Frank Voss beginning Monday, 06 FEB 12. He is required to arrange and attend bi-weekly meetings with Dr. Voss to review his performance.  He will also arrange and attend monthly meetings with his Program Director to review the progress with his remediation measures.

Dr. Irani will be required to make up all missed call days within the remediation period.  He will adhere to all duty hour restrictions per the ACGME guidelines.

Dr. Irani will no longer secretly record any conversation or phone calls.

These recommendations will be reviewed with Dr. Irani on 31 JAN 12 and will be forwarded to the GMEC Executive Committee for review / temporary approval on 01 FEB 12. Review / approval by the GMEC will be on 14 FEB12.

Dr. John Walsh                Dr. David Koon            Dr. Frank Voss
Chair, Dept of Orthopaedic Surgery    Program Director        Vice-Chair, Dept of
                                                              Orthopaedic Surgery

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0879



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

# Palmetto Health Academic Remediation

**Personal Data**

| Resident: Afraaz Irani, MD | Dates of Action: 2/6/12 – 6/15/12 |
|---|---|
| Program: Orthopaedic Surgery | Program Year level: 2 |
| Academic Remediation Action Proposed: | |

☐ Level I        ☒ Level II        ☐ Level III        ☐ Termination

| *History* | *Date* |
|---|---|
| Remediation, Level II | 8/15/11 – 12/1/11 |
| Remediation, Level III | 12/9/11 – 1/31/12 |

| *Procedures* | *Date* |
|---|---|
| Resident informed of recommendation | 1/31/12 |
| Projected GMEC Exec. Com. action | 2/1/12 |
| Projected date of GMEC action | 2/14/12 |
| Projected date of progress reports to GMEC | 4/10/12, 6/12/12 |

**Assessment of factors impacting Dr. Irani's performance:**

- ○ Attitude of the resident
- ○ Commitment to lifelong learning and self improvement
- ○ Intellectual honesty with patients, colleagues, and self
- ○ Professional ethical standards

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0880



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

# Remediation Plan

**Resident:** *Afraaz Irani, MD*

## Timeline

| | |
|---|---|
| Dates of Action:  2/6/12 – 6/15/12 | |
| GMEC Executive Committee Temporary Action date:  2/1/12 | |
| Projected GMEC Action date: 2/14/12 | |
| GMEC Progress report(s) on:  4/10/12, 6/12/12 | |

## Remediation plan for each competency not being met

| Competencies not being met | Remediation Plan | Evaluation Tools |
|---|---|---|
| Patient Care:<br>IV.A.5.a).(6).(a) communicate effectively and demonstrate caring and respectful behaviors when interacting with patients and their families;<br>IV.A.5.a).(6).(c) make informed decisions about diagnostic and therapeutic interventions based on patient information and preferences, up-to-date scientific evidence, and clinical judgment;<br>IV.A.5.a).(6).(d) develop and carry out patient management plans | Display empathy and compassion in all patient encounters.<br> Discuss injuries with patients and families in laymen terms.<br> Follow patient care plan set out by attending and/or senior resident.  If plan needs to be altered in any way, inform attending and/or senior resident immediately of changes to patient care plan.<br> Read and prepare appropriately for clinics and operative cases.<br> Discuss all cases preoperatively with attending.<br> Discuss every consult/patient/phone call taken while on call with attending or with chief resident. Check out immediately if urgent; check out the next morning if not urgent.<br> Orthopaedic consults:  See patient. Evaluate patient.  Order appropriate imaging and/or other studies as indicated. Provide timely and appropriate management to patients, including pain management. Obtain consents when necessary, mark patient when necessary, prepare patient for OR when necessary. | Direct observation and feedback from faculty, attending(s), nurses, peers, and patients<br><br>Review of patient outcomes |

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0881



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

| | Devise appropriate plan of action for care. Then call senior resident or attending. | |
|---|---|---|
| Medical Knowledge: IV.A.5.b) Residents must demonstrate knowledge of established and evolving biomedical, clinical, epidemiological and social behavioral sciences, as well as the application of this knowledge to patient care. | Read all assigned articles/chapters for conference. Be prepared to have interactive discussion/answer questions based on the assigned reading. When on call over weekend, be prepared and present patients at fracture conference. Be prepared to discuss fracture classification, treatment options, outcomes, etc. | Direct observation and feedback from faculty, attending(s), and peers |
| Systems Based Practice: IV.A.5.c).(1) identify strengths, deficiencies, and limits in one's knowledge and expertise | Respond to constructive criticism in an appropriate and professional way. Admit and apologize for mistakes and be willing to endorse personal flaws. Take immediate action to correct deficiencies. | Direct observation by program director and faculty |
| Interpersonal and Communication Skills: IV.A.5.d).(1) communicate effectively with patients, families, and the public, as appropriate, across a broad range of socioeconomic and cultural backgrounds; IV.A.5.d).(2) communicate effectively with physicians, other health professionals, and health related agencies; IV.A.5.d).(3) work effectively as a member or leader of a health care team or other professional group | Morning list ready by specified time daily set by chief resident. List includes up to date labs, vitals, patient plans, antibiotics, UOP, drain output, etc. All assigned patients appropriately rounded on before morning conference. Present to conference room by 6:25am every morning. Report to OR and/or clinic immediately after conference is concluded. Be on time to all assigned outpatient clinics. Check out every day at the end of the day with chief resident regarding inpatients. Communicate clearly and effectively with attending, ancillary staff, peers and families. Respond appropriately to text messages and emails in a timely fashion. Perform postoperative checks on all patients operated on, or needing postoperative checks at end of day. Perform discharge or transfer summaries in a timely fashion, including patients as instructed by chief resident and/or attending, regardless of your involvement in the patient's care. | Direct observation and feedback from faculty, attending(s), nurses, peers, and patients |

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0882



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

|  |  |  |
|---|---|---|
|  | Perform other duties as assigned by attending / senior resident with a good attitude.<br>If holding call pager during day, keep attending informed on whereabouts when seeing consults/attending to call issues.<br>Return phone calls, pages in timely fashion.<br>Work effectively and efficiently within the patient care team, including nurses and ancillary staff. |  |
| Professionalism:<br>IV.A.5.e).(6) commitment to excellence and ongoing professional development | Commit to immediate and sustained improvement in all areas listed above. | Direct observation by attending(s) and faculty |
| Practice Based Learning and Improvement: |  |  |

*Additional remediation requirements*

| Standards of Behavior | Dr. Irani to review and adhere to Palmetto Health's Standards of Behavior – available at http://residency.palmettohealth.org/documents/Graduate%20Medical%20Education/Resident%20Manual%202011-2012.pdf |
|---|---|
| Counseling support | Dr. Irani to arrange counseling sessions through PH's E-Care program; to attend sessions on schedule recommended by E-Care counselor; to provide recommended schedule of sessions to Program Director; and to provide electronic verification of attendance at each session to Program Director within 48 hours of each session. |

*Feedback on remediation progress*

| Attending feedback | Formative feedback provided by attending(s) twice per month. Dr. Irani to arrange times with attending(s). |
|---|---|
| Program Director feedback | Monthly feedback sessions with Program Director. Dr. Irani to arrange times with program Director. |

**Program Director signature and date:**

_____

USC(Irani)0883



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

***Resident verification:***I have reviewed and discussed the contents of this form with my program director and understand that immediate and sustained improvement is required.  Failure to correct the deficiencies noted above may result in further action up to, and including, dismissal from the residency program. I know where to get a copy of the Palmetto Health Grievance and Due Process Policy from the Palmetto Health web site at http://residency.palmettohealth.org/documents/Graduate%20Medical%20Education/Resident%20Manual%202011-2012.pdf

**Resident signature and date:**

_____

USC(Irani)0884

| | |
|---|---|
| **From:** | Afraaz Irani <afraaz.irani@gmail.com> |
| **Sent:** | Sunday, January 29, 2012 9:53 AM |
| **To:** | David Koon |
| **Cc:** | John Walsh; Frank R Voss; Kathy.Stephens@PalmettoHealth.org; jhoov14@yahoo.com; Jennifer, Wood |
| **Subject:** | Re: Remediation Plan |

Dr. Koon,

Sounds good. See you then.

Thank You,
Afraaz

On Sat, Jan 28, 2012 at 9:37 AM, David Koon <David.Koon@uscmed.sc.edu> wrote:
Dr. Irani -

We will meet with you on Tuesday, 31 JAN 12 in the orthopaedic conference room at 5:30 pm to review the next step in your academic remediation.

Please acknowledge receipt of this message. If you have any questions before then, please contact me or Kathy Stephens.

Thanks

DK

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.


-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0702

**From:** John Walsh
**Sent:** Sunday, January 29, 2012 10:05 PM
**To:** Afraaz Irani
**Subject:** RE: follwup

Afraaz- I made it clear when we spoke that I did not have the authority to change the wording of your suspension, and that I doubted that it could happen at all.  The deadline for the grievance committee passed last week. My comments re: punitive were intended to convey that this is a process of academic remediation, and not some form of punishment. Further progress in your residency is up to you and your willingness to demonstrate growth in the areas you are aware are concerns in your performance.

We can discuss this further on Tuesday.


John J Walsh IV
Professor and  Chairman
University of South Carolina
School of Medicine
Department of Orthopaedics


**From:** Afraaz Irani [afraaz.irani@gmail.com]
**Sent:** Thursday, January 26, 2012 10:03 PM
**To:** John Walsh
**Subject:** Re: follwup

Dr. Walsh,

I appreciate all your help with the remediation process.

Last time we spoke you had talked about having my time off recorded as a leave of absence so as not to have any punitive long term effects.

I was just hoping for a little guidance about how that works -- do I need to go through the grievance council, or can that be worked out at this stage after your meeting with Kathy Stephens?

1

USC(Irani)0940

Thanks again for your understanding and input.

Afraaz

On Tue, Jan 24, 2012 at 8:48 AM, John Walsh <John.Walsh@uscmed.sc.edu> wrote:

Thanks Afraaz

**From:** Afraaz Irani [mailto:afraaz.irani@gmail.com]
**Sent:** Tuesday, January 24, 2012 2:21 AM
**To:** John Walsh
**Subject:** follwup

Dr. Walsh,

Thank you for meeting with me last week. I have learned from the feedback, and have had time to reflect on my performance.

I was encouraged to hear that I can make up the time off without delaying my graduation.

I was also glad to hear that you do not believe this is a punitive process. I am concerned about the suspension and how that may be viewed in an increasingly competitive job market; I am hopeful that calling this time off a leave of absence may achieve the same goals, without harmful long-term effects.

My understanding of the grievance process was that the recommendations/actions are now reviewable and open to modification; I hope this option can be explored.

I look forward to incorporating the feedback of the department, working toward becoming a better resident, and rejoining my fellow residents to finish my training.

Thank you,
Afraaz

---------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

2

| | |
|---|---|
| **From:** | Katherine Stephens <Kathy.Stephens@PalmettoHealth.org> |
| **Sent:** | Monday, January 30, 2012 9:37 AM |
| **To:** | David Koon |
| **Subject:** | RE: Recommended Irani remediation form |
| **Attachments:** | Academic-Action-Irani-January-2012.docx |

Here it is.

>>> David Koon 1/28/2012 9:36 AM >>>
We're going to meet with him on Tuesday...any chance I can get this form in it's final draft?

Thx

DK

_____

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Friday, January 27, 2012 5:37 PM
To: David Koon
Subject: Recommended Irani remediation form

David,

I basically used what you had and put it into a remediation plan form. You could have this ready to give to Afraaz on Tuesday. See what you think.

One important difference between attachment and my previous edits to the memo: Note at the end where I list additional remediation requirements. I changed the counseling sessions reference you had from weekly to what is recommended by E-CARE. They might recommend bi-weekly sessions, and I don't want a technicality to be an issue for us. Please edit the memo to remove "on a weekly basis" and replace it with "on the schedule recommended by E-CARE."

Have a good weekend!

Kathy


Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me

1

| | |
|---|---|
| **From:** | Michelle Wehunt <Michelle.Wehunt@uscmed.sc.edu> |
| **Sent:** | 01 February, 2012 1:46 PM |
| **To:** | David Koon |
| **Cc:** | John Walsh; Katherine Stephens |
| **Subject:** | Irani |
| **Attachments:** | 2012_02_01_13_38_02.pdf |

FYI....

Please see attached remediation document reviewed and signed by Drs. Irani, Walsh, Koon and Voss.

*Michelle C. Wehunt*
*Residency Coordinator Orthopaedic Surgery*
*M-III, M-IV Student Rotation Coordinator*
*HIPAA Privacy Contact*
*USC School of Medicine*
*Two Medical Park, Ste. 404*
*Columbia, SC 29203*
*Office:  803-434-6879*
*Fax:    803-434-7306*



----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

USC(Irani)1117



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

31 JAN 12

Memorandum of Record                              Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG 11 to 01 DEC 11.

Dr. Irani was placed on Level III Academic Remediation from 09 DEC 11 to 31 JAN 12.

Dr. Irani proceeded thru the Grievance Process in both instances through the DIO appeal level, and his appeal was denied both times. Dr. Irani did not appeal beyond the DIO level. *(although opted to private counsel)*.

It is the recommendation of the faculty of the orthopaedic department that Dr. Irani be placed on Level II Academic Remediation beginning 06 FEB 12 thru 15 JUN 12.

It is our recommendation that the Palmetto Health Academic Remediation plan be instituted. (see attached)

Dr. Irani is also required to attend individual outpatient counseling thru the Palmetto Health E-CARE with Dr. Janice McMeekin or other E-CARE counselor on the schedule recommended by E-CARE. He is responsible for arranging and attending these sessions. The first appointment must occur by 15 FEB 12. He is responsible for providing electronic verification of these sessions within 48 hours to the Program Director.

Dr. Irani will be placed on the Total Joint service with Dr. Frank Voss beginning Monday, 06 FEB 12. He is required to arrange and attend bi-weekly meetings with Dr. Voss to review his performance. He will also arrange and attend monthly meetings with his Program Director to review the progress with his remediation measures.

Dr. Irani will be required to make up all missed call days within the remediation period. He will adhere to all duty hour restrictions per the ACGME guidelines.

Dr. Irani will no longer secretly record any conversation or phone calls.

These recommendations will be reviewed with Dr. Irani on 31 JAN 12 and will be forwarded to the GMEC Executive Committee for review / temporary approval on 01 FEB 12. Review / approval by the GMEC will be on 14 FEB12.

Dr. John Walsh
Chair, Dept of Orthopaedic Surgery

Dr. David Koon
Program Director

Dr. Frank Voss
Vice-Chair, Dept of
Orthopaedic Surgery

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

# Palmetto Health Academic Remediation

### Personal Data

| Resident: Afraaz Irani, MD | Dates of Action: 2/6/12 – 6/15/12 |
|---|---|
| Program: Orthopaedic Surgery | Program Year level: 2 |
| Academic Remediation Action Proposed: | |

☐ Level I    ☒ Level II    ☐ Level III    ☐ Termination

| *History* | *Date* |
|---|---|
| Remediation, Level II | 8/15/11 – 12/1/11 |
| Remediation, Level III | 12/9/11 – 1/31/12 |

| *Procedures* | *Date* |
|---|---|
| Resident informed of recommendation | 1/31/12 |
| Projected GMEC Exec. Com. action | 2/1/12 |
| Projected date of GMEC action | 2/14/12 |
| Projected date of progress reports to GMEC | 4/10/12, 6/12/12 |

**Assessment of factors impacting Dr. Irani's performance:**

- ○ Attitude of the resident
- ○ Commitment to lifelong learning and self improvement
- ○ Intellectual honesty with patients, colleagues, and self
- ○ Professional ethical standards

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)1119



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

# Remediation Plan

| Resident: *Afraaz Irani, MD* |
|---|

## *Timeline*

| Dates of Action:  2/6/12 – 6/15/12 |
|---|
| GMEC Executive Committee Temporary Action date:  2/1/12 |
| Projected GMEC Action date:  2/14/12 |
| GMEC Progress report(s) on:  4/10/12, 6/12/12 |

## *Remediation plan for each competency not being met*

| Competencies not being met | Remediation Plan | Evaluation Tools |
|---|---|---|
| Patient Care:<br>IV.A.5.a).(6).(a) communicate effectively and demonstrate caring and respectful behaviors when interacting with patients and their families;<br>IV.A.5.a).(6).(c) make informed decisions about diagnostic and therapeutic interventions based on patient information and preferences, up-to-date scientific evidence, and clinical judgment;<br>IV.A.5.a).(6).(d) develop and carry out patient management plans |    Display empathy and compassion in all patient encounters.<br>   Discuss injuries with patients and families in laymen terms.<br>   Follow patient care plan set out by attending and/or senior resident.  If plan needs to be altered in any way, inform attending and/or senior resident immediately of changes to patient care plan.<br>   Read and prepare appropriately for clinics and operative cases.<br>   Discuss all cases preoperatively with attending.<br>   Discuss every consult/patient/phone call taken while on call with chief resident. Check out immediately if urgent; check out the next morning if not urgent.<br>   Orthopaedic consults: See patient. Evaluate patient.  Order appropriate imaging and/or other studies as indicated. Provide timely and appropriate management to patients, including pain management. Obtain consents when necessary, mark patient when necessary, prepare patient for OR when necessary. Devise appropriate plan of action for care. | Direct observation and feedback from faculty, attending(s), nurses, peers, and patients<br><br>Review of patient outcomes |

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)1120



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

| | Then call senior resident or attending. | |
|---|---|---|
| Medical Knowledge:<br>IV.A.5.b) Residents must demonstrate knowledge of established and evolving biomedical, clinical, epidemiological and social behavioral sciences, as well as the application of this knowledge to patient care. | Read all assigned articles/chapters for conference.  Be prepared to have interactive discussion/answer questions based on the assigned reading.<br>    When on call over weekend, be prepared and present patients at fracture conference. Be prepared to discuss fracture classification, treatment options, outcomes, etc. | Direct observation and feedback from faculty, attending(s), and peers |
| Systems Based Practice:<br>IV.A.5.c).(1) identify strengths, deficiencies, and limits in one's knowledge and expertise | Respond to constructive criticism in an appropriate and professional way.  Admit and apologize for mistakes and be willing to endorse personal flaws.  Take immediate action to correct deficiencies. | Direct observation by program director and faculty |
| Interpersonal and Communication Skills:<br>IV.A.5.d).(1) communicate effectively with patients, families, and the public, as appropriate, across a broad range of socioeconomic and cultural backgrounds;<br>IV.A.5.d).(2) communicate effectively with physicians, other health professionals, and health related agencies;<br>IV.A.5.d).(3) work effectively as a member or leader of a health care team or other professional group | Morning list ready by specified time daily set by chief resident.  List includes up to date labs, vitals, patient plans, antibiotics, UOP, drain output, etc.<br>    All assigned patients appropriately rounded on before morning conference.<br>    Present to conference room by 6:25am every morning.<br>    Report to OR and/or clinic immediately after conference is concluded.<br>    Be on time to all assigned outpatient clinics.<br>    Check out every day at the end of the day with chief resident regarding inpatients.<br>    Communicate clearly and effectively with attending, ancillary staff, peers and families.<br>    Respond appropriately to text messages and emails in a timely fashion.<br>    Perform postoperative checks on all patients operated on, or needing postoperative checks at end of day.<br>    Perform discharge or transfer summaries in a timely fashion, including patients as instructed by chief resident and/or attending, regardless of your involvement in the patient's care.<br>    Perform other duties as assigned by | Direct observation and feedback from faculty, attending(s), nurses, peers, and patients |

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)1121



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

|  |  |  |
|---|---|---|
|  | attending / senior resident with a good attitude.<br>   If holding call pager during day, keep attending informed on whereabouts when seeing consults/attending to call issues.<br>   Return phone calls, pages in timely fashion.<br>   Work effectively and efficiently within the patient care team, including nurses and ancillary staff. |  |
| Professionalism:<br>IV.A.5.e).(6) commitment to excellence and ongoing professional development | Commit to immediate and sustained improvement in all areas listed above. | Direct observation by attending(s) and faculty |
| Practice Based Learning and Improvement: |  |  |

*Additional remediation requirements*

| Standards of Behavior | Dr. Irani to review and adhere to Palmetto Health's Standards of Behavior – available at http://residency.palmettohealth.org/documents/Graduate%20Medical%20Education/Resident%20Manual%202011-2012.pdf |
|---|---|
| Counseling support | Dr. Irani to arrange counseling sessions through PH's E-Care program; to attend sessions on schedule recommended by E-Care counselor; to provide recommended schedule of sessions to Program Director; and to provide electronic verification of attendance at each session to Program Director within 48 hours of each session. |

*Feedback on remediation progress*

| Attending feedback | Formative feedback provided by attending(s) twice per month. Dr. Irani to arrange times with attending(s). |
|---|---|
| Program Director feedback | Monthly feedback sessions with Program Director. Dr. Irani to arrange times with program Director. |

Program Director signature and date;

_____  ̶D̶I̶C̶O̶H̶ ₍₎ 51 Jan 12

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)1122



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

*Resident verification:* I have reviewed and discussed the contents of this form with my program director and understand that immediate and sustained improvement is required. Failure to correct the deficiencies noted above may result in further action up to, and including, dismissal from the residency program. I know where to get a copy of the Palmetto Health Grievance and Due Process Policy from the Palmetto Health web site at http://residency.palmettohealth.org/documents/Graduate%20Medical%20Education/Resident%20Manual%202011-2012.pdf

Resident signature and date:

_____    2/ 1/ 12

USC(Irani)1123

Archive Manager Message Export                                    Page 1 of 1



| From: | Katherine Stephens | Sent: | Thu, 02 Feb 2012 11:01:45 GMT |
|---|---|---|---|
| To: | Margie Bodie; Michelle Wehunt; | | |
| Subject: | COS for Irani | | |

Margie & Michelle,

I checked with H. R. on this and they agree that COS for Dr. Irani should reflect returning from suspension without pay to normal status (with pay) on 2/1/12. While his new remediation plan begins 2/6/12, the previous remediation (suspension) ended 1/31/12.

Let me know if you have questions. Otherwise, I appreciate you working together to complete COS submission.

Thanks,
Kathy

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

From: **Jeffrey Guy** jagdr@aol.com
Subject:
Date: February 2, 2012 at 10:23 PM
To: afraaz.irani@gmail.com

Bryan.Hanypsiak@Arthrex.com

Bryan T. Hanypsiak, MD

Director of Medical Education


Telephone: (239) 207-6762
1370 Creekside Blvd.
Toll-Free: (800) 933-7001
Naples, FL 34108
Fax: 239-552-2317
E-Mail:Bryan.Hanypsiak@Arthrex.com


Jeffrey Guy MD.
Assistant Professor
Dept.Orthopedics & Sports Medicine
USC School of Medicine
Team Physician, Medical Director
USC Gamecocks



USC(Irani)0923

From: **Jeffrey Guy** jagdr@aol.com
Subject: Re: Dr. Guy / USC resident question
Date: February 5, 2012 at 11:50 AM
To: Afraaz Irani afraaz.irani@gmail.com

Very Nice…

spoke with two people for you.

Michael Mcbrayer   DJO  DonJoy Orthopedics.  Very knowledgeable…  send him similar email as below. He will contact you.
Mention my name.

**Michael McBrayer**
Senior Vice President Global Business and Professional Relations

**DJO Global, Inc.**
1430 Decision Street, Vista, CA 92081

D  760.734.3573
F  760.597.8412
C  760-533-7701
michael.mcbrayer@djoglobal.com
DJOglobal.com



Phillip Bowman:  Regional guy for Arthrex.   May have a interesting offer for you while you explore the company for device
positions.  call him 803-960-0201

Philip Bowman
South Carolina Distributor for:



Peerless Surgical, Inc.
717 Lady Street
Suite H
Columbia, SC 29201
803-732-4661-o
803-781-4456-f

On Feb 3, 2012, at 11:26 AM, Afraaz Irani wrote:

Dr. Hanypsiak,

I am PGY-2 orthopaedic surgery resident at the USC program here in Columbia.

I have spent some time working with Dr. Guy, and he noticed that I am drawn toward the technology/device portion of
orthopaedics (including pouring over the arthroscopy towers). Indeed this was definitely a large part of my draw toward
orthopaedics.

USC(Irani)0924

In medical school I worked with a startup on validation studies for a prototype device (the company was later bought by medtronic), and after that I developed a new device and founded a company that is currently doing animal studies.

Given this background, Dr. Guy has encouraged me to explore what options there are beyond medicine for MDs -- specifically the use of MDs in industry -- product development or other options, or even options specific to arthrex.

We don't know if it is doable yet, but we have also toyed with the idea of my taking a year of absence to explore this side of medicine.

If you have a few minutes, I would really appreciate your insight into careers outside of medicine.

Thank you for your time,
Afraaz

On Thu, Feb 2, 2012 at 10:23 PM, Jeffrey Guy <jagdr@aol.com> wrote:
Bryan.Hanypsiak@Arthrex.com

Bryan T. Hanypsiak, MD

Director of Medical Education

Telephone: (239) 207-6762
1370 Creekside Blvd.
Toll-Free: (800) 933-7001
Naples, FL 34108
Fax: 239-552-2317
E-Mail:Bryan.Hanypsiak@Arthrex.com

Jeffrey Guy MD.
Assistant Professor
Dept.Orthopedics & Sports Medicine
USC School of Medicine
Team Physician, Medical Director
USC Gamecocks

<image001.jpg>

Jeffrey Guy MD.
Assistant Professor
Dept.Orthopedics & Sports Medicine
USC School of Medicine
Team Physician, Medical Director
USC Gamecocks



From: Jeffrey Guy <jagdr@aol.com>
Subject: Re: Dr. Guy / USC resident question
Date: March 5, 2012 7:45:33 PM EST
To: Bryan Hanypsiak <Bryan.Hanypsiak@Arthrex.com>

1 Attachment, 3 KB

Hey Bryan…. Thanks for keeping up with him. Anything in the development division or devices that would apply to his situation? Thanks for your help  Jeff

On Mar 5, 2012, at 8:40 AM, Bryan Hanypsiak wrote:

> fyi
>
> Bryan T. Hanypsiak, MD
>
> Director of Medical Education
>
>
> Telephone: (239) 207-6762
> 1370 Creekside Blvd.
> Toll-Free: (800) 933-7001
> Naples, FL 34108
> Fax: 239-552-2317
> E-Mail:Bryan.Hanypsiak@Arthrex.com
>
> -----Original Message-----
> From: Afraaz Irani [mailto:afraaz.irani@gmail.com]
> Sent: Sunday, March 04, 2012 6:22 PM
> To: Bryan Hanypsiak
> Subject: Re: Dr. Guy / USC resident question
>
> Dr. Hanypsiak,
>
> Thank you so much for the phone call the other day. I know you have a very busy schedule.  I really appreciate your help and insight. I also appreciate your offer to show me around the Arthrex facility as time permits.  Hopefully we will have time to meet at some point.
>
> Thanks again for your help and time.
>
> Afraaz
>
> On Thu, Feb 16, 2012 at 10:08 AM, Bryan Hanypsiak <Bryan.Hanypsiak@arthrex.com> wrote:
>
>> Spoke to Dr. Guy at academy. Can I call u next week?
>> Bryan
>>
>> Sent from my iPhone
>>
>> On Feb 3, 2012, at 9:26 AM, "Afraaz Irani" <afraaz.irani@gmail.com> wrote:
>>
>>
>>> Dr. Hanypsiak,

USC(Irani)0926

I am PGY-2 orthopaedic surgery resident at the USC program here in Columbia.

I have spent some time working with Dr. Guy, and he noticed that I am drawn toward the technology/device portion of orthopaedics (including pouring over the arthroscopy towers). Indeed this was definitely a large part of my draw toward orthopaedics.

In medical school I worked with a startup on validation studies for a prototype device (the company was later bought by medtronic), and after that I developed a new device and founded a company that is currently doing animal studies.

Given this background, Dr. Guy has encouraged me to explore what options there are beyond medicine for MDs -- specifically the use of MDs in industry -- product development or other options, or even options specific to arthrex.

We don't know if it is doable yet, but we have also toyed with the idea of my taking a year of absence to explore this side of medicine.

If you have a few minutes, I would really appreciate your insight into careers outside of medicine.

Thank you for your time,
Afraaz
█████████████

On Thu, Feb 2, 2012 at 10:23 PM, Jeffrey Guy <jagdr@aol.com> wrote:

Bryan.Hanypsiak@Arthrex.com

Bryan T. Hanypsiak, MD

Director of Medical Education


Telephone: (239) 207-6762 <tel:%28239%29%20207-6762>
1370 Creekside Blvd.
Toll-Free: (800) 933-7001 <tel:%28800%29%20933-7001>
Naples, FL 34108
Fax: 239-552-2317
E-Mail:Bryan.Hanypsiak@Arthrex.com



Jeffrey Guy MD.
Assistant Professor
Dept.Orthopedics & Sports Medicine
USC School of Medicine
Team Physician, Medical Director
USC Gamecocks



<image001.jpg>

USC(Irani)0927

**From:** David Koon <David.Koon@uscmed.sc.edu>
**Sent:** Monday, February 27, 2012 7:24 PM
**To:** John Walsh
**Subject:** FW:

Also ask him about his discussion with Afraaz about wrong site surgery...

dk

_____

From: Greg Grabowski
Sent: Monday, February 27, 2012 1:49 PM
To: David Koon
Subject:

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week.  He had helped me with my cases last Tuesday and as a result was following them on the floor.  On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam.  I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit; per the nursing report, his initial response to this call was "aww, she has a foot drop?"  Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me.  He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time."  I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit.  I instructed him to order a stat MRI of the lumbar spine, and call me with the results.  I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam.  At that time, however, there was no documentation from Dr. Irani regarding the patient's condition.  Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record.  The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis.  The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged,

1

USC(Irani)0833

**From:** Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
**Sent:** Wednesday, February 29, 2012 10:52 AM
**To:** David Koon
**Subject:** Re: Dr. Irani

David,
You and I are scheduled to meet in 2 weeks - a month before next GMEC. Can we discuss then, or do you want to meet sooner?
Kathy

>>> David Koon 2/29/2012 10:38 AM >>>
Kathy -
The Department of Orthopaedic Surgery will recommend to the GMEC that we not renew Dr. Irani's contract next year.
David

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.
-----------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

USC(Irani)1049

Archive Manager Message Export                                                    Page 1 of 1

 ArchiveManager

| | | |
|---|---|---|
| **From:** | David Koon | **Sent:**  Wed, 29 Feb 2012 19:34:49 GMT |
| **To:** | Katherine Stephens; John Walsh; | |
| **Subject:** | FW: Dr Irani patient encounter | |

Kathy -

Below is the email that I received from Dr. Grabowski for your review. Dr. Grabowski (with Dr. Voss) has discussed these issues with Dr. Irani. He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing. Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC. We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety. We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David



David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

---------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS®

Meeting with Dr. Greg Grabowski and Dr. Afraaz Irani

Date: Tuesday approximately two weeks ago.  [i.e., Tuesday, February 29, 2012]

Re: Review of the circumstances under which Dr. Irani was delayed in evaluation of a patient with new onset weakness after a recent spine surgery while still hospitalized.

We carefully reviewed the circumstances under which Dr. Irani was called by the nurse where she informed him that the patient had a new foot drop in the morning. Dr. Irani's initial response was somewhat flippant to the nurse and told her that he would come by a little bit later. About 1-1/2 hours later, he came by, noted some of the weakness, and then contacted Dr. Grabowski. The further evaluation revealed fluid collection near the area of the surgery that proved to be a CSF leak. A repeat surgery fortunately stopped the CSF leak and the patient gradually improved but the patient was watched extremely cautiously over the weekend after the decompression surgery and there was reliance on physicians to do very sensitive neurologic testing at regular intervals. When Dr. Irani contacted Dr. Grabowski and told him that the muscle strength had faded to 4+/5+ there was immediate anxiety on the part of Dr. Grabowski that the patient's problem was recurring. Dr. Grabowski reviewed all of these issues with Dr. Irani and wondered whether Dr. Irani had any insight into why these situations might cause anxiety for Dr. Grabowski. Ultimately, Dr. Irani did admit shortcoming in terms of the his assessment and compulsiveness about thorough patient examination but I think he failed to have any true insight into the level of concern that we would expect that he would demonstrate in the care of a patient who was at risk for becoming paralyzed. It seemed that Dr. Irani's description of the events was consistent but there failed to be recognition or demonstration of true care for the patient's condition in this situation. The discussion session was largely conducted by Dr. Grabowski with response by Dr. Irani. My sentiment and that of Dr. Grabowski was that there was a failure of recognition of the amount of care required for an orthopedic spine patient. There were still concerns about the level whether Dr. Irani could meet with the standards expected of him.

Frank R. Voss, M.D.
FRV:tlg

Cc: David Koon, M.D.

*DEPARTMENT OF ORTHOPAEDIC SURGERY*
**Two Medical Park, Suite 404, Columbia, SC 29203**
**803-434-6812, FAX 803-434-7306**

Palmetto Health - 002407

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Thursday, March 01, 2012 8:36 AM |
| **To:** | AnneMarie Hyer; Katherine Stephens; David Koon; John Walsh |
| **Subject:** | Irani Update |
| **Attachments:** | Header |

Kathy / John -

Dr. Wood approached me this morning about another patient care issue that occurred last night while we were on trauma call. A hemophiliac patient came in to be evaluated for leg pain which we thought could be a compartment syndrome (a limb threatening problem). Dr. Irani evaluated the patient and Dr. Wood came in around midnight to see the patient with him. They called me shortly thereafter to give me an update. Dr. Wood instructed Dr. Irani to evaluate the patient at 4:00 this morning to make sure that his conditioned had not worsened. During rounds this morning, he admitted to Dr. Wood that he had "forgotten" to perform this evaluation. Failure to perform this evaluation placed the patient at risk for further harm. Also, Dr. Irani failed to report early for morning rounds (one of the remediation measures) and Dr. Hoover called into the call room and actually woke him up.

Despite the department's and the GMEC's actions to provide him with a reasonable remediation plan, I think that his actions over the past few days speak for themselves and he is putting our orthopaedic patients at risk. I would recommend that we immediately suspend him from clinical duties. I would recommend that we meet with him this afternoon to hear his side of the story. If a reasonable explanation is not presented by him, I would think that we have "just cause" to begin the dismissal process.

I'll be at the VA all day in  clinic and will await your recommendations.

DK

_____
From: David Koon
Sent: Wednesday, February 29, 2012 7:34 PM
To: Kathy.Stephens@PalmettoHealth.org; John Walsh
Subject: FW:  Dr Irani patient encounter

Kathy -

Below is the email that I received from Dr. Grabowski for your review. Dr. Grabowski (with Dr. Voss)  has discussed these issues with Dr. Irani. He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing. Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC. We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety. We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David

1

USC(Irani)0865

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

---------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0866

Archive Manager Message Export                                    Page 1 of 3

 ArchiveManager

| | |
|---|---|
| **From:** | Katherine Stephens |
| **To:** | James Raymond; Richard Hoppmann; |
| **CC:** | Gwen Hill |
| **Subject:** | Fwd: Irani Update |

**Sent:** Thu, 01 Mar 2012 15:23:58 GMT

---

Jim & Dick,

I hate to handle this via email, but this needs to be addressed before I return on Sunday evening.   J Walsh had left me a voicemail message, and I talked to D Koon.  They recommend dismissal of Dr Irani due to these latest incidences where he is not meeting all terms of his remediation plan and, most importantly, is not following through on patient care needs.  Dr Koon indicated concern for patient outcomes due to delayed actions.

Given these two inappropriate patient care situations and failure to meet certain remediation measures, the three of us need to take temporary action as the GMEC Exec. Com. now, with final action by GMEC at the next mtg., which is April 10th.  We can choose either to dismiss him or to suspend him without pay.  I did talk to Gwen Hill and she recommended suspension without pay, investigation, and then presentation at GMEC for final action.  I agree with her recommendation.

Let me know your thoughts.

Kathy

Sent from my iPad

Begin forwarded message:

> **From:** David Koon <David.Koon@uscmed.sc.edu>
> **Date:** March 1, 2012 2:12:34 PM EST
> **To:** Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>, AnneMarie Hyer
> <AnneMarie.Hyer@PalmettoHealth.org>, John Walsh <John.Walsh@uscmed.sc.edu>
> **Cc:** James Raymond <James.Raymond@palmettohealth.org>
> **Subject: RE: Irani Update**
>
>
> Kathy -
>
> Dr Walsh met with Afraaz around lunchtime and got his side of the story. He admitted to not seeing the patient at 4:00 am as directed. He also stated that he had seen the patient at 2:30 am, but did not document that evaluation. Dr. Walsh can give us the remaining details, but he did state that his/the department's recommendation would be unchanged.
>
> DK
>
> ---
> From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
> Sent: Thursday, March 01, 2012 11:23 AM
> To: AnneMarie Hyer; David Koon; John Walsh
> Cc: James Raymond
> Subject: Re: Irani Update
>
> David,
>
> Pls proceed with meeting with Irani to get his side of story.  Will arrive in Orlando around 1:30.  Call me to discuss next steps after that.  We cannot continue current path and termination may be next step.
>
> (Jim, I have contracted H.R. and Labor atty already.  Will be in touch later today should GMEC Exec Com action be needed.)
>
> Kathy
> -----Original Message-----
> From: David Koon <David.Koon@uscmed.sc.edu>
> To: Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
> To: AnneMarie Hyer <AnneMarie.Hyer@PalmettoHealth.org>
> To: John Walsh <John.Walsh@uscmed.sc.edu>
>
> Sent: 3/1/2012 8:36:27 AM

Palmetto Health - 002313

Archive Manager Message Export                                              Page 2 of 3

Subject: Irani Update

Kathy / John -

Dr. Wood approached me this morning about another patient care issue that occurred last night while we were on trauma call. A hemophiliac patient came in to be evaluated for leg pain which we thought could be a compartment syndrome (a limb threatening problem). Dr. Irani evaluated the patient and Dr. Wood came in around midnight to see the patient with him. They called me shortly thereafter to give me an update. Dr. Wood instructed Dr. Irani to evaluate the patient at 4:00 this morning to make sure that his conditioned had not worsened. During rounds this morning, he admitted to Dr. Wood that he had "forgotten" to perform this evaluation. Failure to perform this evaluation placed the patient at risk for further harm. Also, Dr. Irani failed to report early for morning rounds (one of the remediation measures) and Dr. Hoover called into the call room and actually woke him up.

Despite the department's and the GMEC's actions to provide him with a reasonable remediation plan, I think that his actions over the past few days speak for themselves and he is putting our orthopaedic patients at risk. I would recommend that we immediately suspend him from clinical duties. I would recommend that we meet with him this afternoon to hear his side of the story. If a reasonable explanation is not presented by him, I would think that we have "just cause" to begin the dismissal process.

I'll be at the VA all day in  clinic and will await your recommendations.

DK

_____

From: David Koon
Sent: Wednesday, February 29, 2012 7:34 PM
To: Kathy.Stephens@PalmettoHealth.org; John Walsh
Subject: FW:  Dr Irani patient encounter

Kathy -

Below is the email that I received from Dr. Grabowski for your review.  Dr. Grabowski (with Dr. Voss)  has discussed these issues with Dr. Irani.  He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing.  Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC.  We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety.  We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David



David,

I just wanted to tell you about an experience that I had with Dr. Irani last week.  He had helped me with my cases last Tuesday and as a result was following them on the floor.  On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam.  I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit.  Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time."  I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit.  I instructed him to order a stat MRI of the lumbar spine, and call me with the results.  I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam.  At that time, however, there was no documentation from Dr. Irani regarding the patient's condition.  Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record.  The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis.  The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding

Palmetto Health - 002314

Archive Manager Message Export                                                    Page 3 of 3

this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

----------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

----------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

**From:**     David Koon <David.Koon@uscmed.sc.edu>
**Sent:**     Thursday, March 01, 2012 7:19 PM
**To:**       Andy T. McGown; Christopher Mazoue; Frank R Voss; jagdr@aol.com; Greg Grabowski
**Subject:**  Irani Update

_____

From: David Koon
Sent: Thursday, March 01, 2012 6:52 PM
To: Katherine Stephens; AnneMarie Hyer; John Walsh
Cc: James Raymond
Subject: RE: Irani Update

All -

Dr. Walsh spoke with Dr. Irani this afternoon and confirmed the facts surrounding the care of the hemophiliac patient last night.

Dr. Hoover (chief resident) and I spoke with Dr. Irani tonight. I questioned him about the events lasts night and this morning. He had no excuse for his actions and admitted that he had failed to abide by Dr. Wood's instructions, did not document appropriately, and that he had shown up late for rounds.

I informed Dr. Irani that the department's recommendation to the GMEC would be that he be dismissed from the program. In discussion with Dr. Stephens and the Exec Comm of the GMEC, he would be suspended (without pay per HR) from clinical duties immediately. Our recommendation will be brought forth to the full GMEC for their consideration on 10 APR 12.

I informed Dr. Irani that he has the opportunity to appeal this decision thru the Grievance and Due Process Policy.

David Koon

_____
From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Thursday, March 01, 2012 11:23 AM
To: AnneMarie Hyer; David Koon; John Walsh
Cc: James Raymond
Subject: Re: Irani Update

David,

Pls proceed with meeting with Irani to get his side of story. Will arrive in Orlando around 1:30. Call me to discuss next steps after that. We cannot continue current path and termination may be next step.

(Jim, I have contracted H.R. and Labor atty already. Will be in touch later today shouls GMEC Exec Com action be needed.)

Kathy
-----Original Message-----
From: David Koon <David.Koon@uscmed.sc.edu>

1

USC(Irani)0827

To: Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
To: AnneMarie Hyer <AnneMarie.Hyer@PalmettoHealth.org>
To: John Walsh <John.Walsh@uscmed.sc.edu>

Sent: 3/1/2012 8:36:27 AM
Subject: Irani Update

Kathy / John -

Dr. Wood approached me this morning about another patient care issue that occurred last night while we were on trauma call.  A hemophiliac patient came in to be evaluated for leg pain which we thought could be a compartment syndrome (a limb threatening problem).  Dr. Irani evaluated the patient and Dr. Wood came in around midnight to see the patient with him. They called me shortly thereafter to give me an update.  Dr. Wood instructed Dr. Irani to evaluate the patient at 4:00 this morning to make sure that his conditioned had not worsened.  During rounds this morning, he admitted to Dr. Wood that he had "forgotten" to perform this evaluation.  Failure to perform this evaluation placed the patient at risk for further harm.  Also, Dr. Irani failed to report early for morning rounds (one of the remediation measures) and Dr. Hoover called into the call room and actually woke him up.

Despite the department's and the GMEC's actions to provide him with a reasonable remediation plan, I think that his actions over the past few days speak for themselves and he is putting our orthopaedic patients at risk.  I would recommend that we immediately suspend him from clinical duties.  I would recommend that we meet with him this afternoon to hear his side of the story.  If a reasonable explanation is not presented by him, I would think that we have "just cause" to begin the dismissal process.

I'll be at the VA all day in  clinic and will await your recommendations.

DK
_____

From: David Koon
Sent: Wednesday, February 29, 2012 7:34 PM
To: Kathy.Stephens@PalmettoHealth.org; John Walsh
Subject: FW:  Dr Irani patient encounter

Kathy -

Below is the email that I received from Dr. Grabowski for your review.  Dr. Grabowski (with Dr. Voss)  has discussed these issues with Dr. Irani.  He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing.  Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC.  We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety.  We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David

USC(Irani)0828

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week.  He had helped me with my cases last Tuesday and as a result was following them on the floor.  On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam.  I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit.  Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me.  He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time."  I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit.  I instructed him to order a stat MRI of the lumbar spine, and call me with the results.  I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam.  At that time, however, there was no documentation from Dr. Irani regarding the patient's condition.  Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record.  The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis.  The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.


--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

USC(Irani)0829

Archive Manager Message Export                                        Page 1 of 1



| | | | |
|---|---|---|---|
| **From:** | Katherine Stephens | **Sent:** | Thu, 01 Mar 2012 21:40:52 GMT |
| **To:** | Margie Bodie | | |
| **Subject:** | Irani status | | |

Margie,

Dr Irani is being placed on suspension without pay as of today. Pls process COS and in Kronos (since Michelle has left). Okay for no pay status to begin tomorrow. Status to continue until April 10th GMEC, when final action to be taken.

K

Archive Manager Message Export                                    Page 1 of 5

 ArchiveManager

| | | |
|---|---|---|
| **From:** | Richard Hoppmann | **Sent:** Fri, 02 Mar 2012 06:16:49 GMT |
| **To:** | Katherine Stephens | |
| **Subject:** | RE: Irani Update | |

I agree –suspension without pay.

**From:** Katherine Stephens [mailto:kathy.stephens@palmettohealth.org]
**Sent:** Thursday, March 01, 2012 3:22 PM
**To:** James Raymond; Richard Hoppmann
**Cc:** Gwen Hill
**Subject:** Fwd: Irani Update

Jim & Dick,

I hate to handle this via email, but this needs to be addressed before I return on Sunday evening.   J
Walsh had left me a voicemail message, and I talked to D Koon.  They recommend dismissal of Dr
Irani due to these latest incidences where he is not meeting all terms of his remediation plan and, most
importantly, is not following through on patient care needs.  Dr Koon indicated concern for patient
outcomes due to delayed actions.

Given these two inappropriate patient care situations and failure to meet certain remediation measures,
the three of us need to take temporary action as the GMEC Exec. Com. now, with final action by
GMEC at the next mtg., which is April 10th.  We can choose either to dismiss him or to suspend him
without pay.  I did talk to Gwen Hill and she recommended suspension without pay, investigation, and
then presentation at GMEC for final action.  I agree with her recommendation.


Let me know your thoughts.


Kathy

Sent from my iPad

Begin forwarded message:

> **From:** David Koon <David.Koon@uscmed.sc.edu>
> **Date:** March 1, 2012 2:12:34 PM EST
> **To:** Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>, AnneMarie Hyer
> <AnneMarie.Hyer@PalmettoHealth.org>, John Walsh <John.Walsh@uscmed.sc.edu>
> **Cc:** James Raymond <James.Raymond@palmettohealth.org>
> **Subject: RE: Irani Update**
>
> Kathy -
>
> Dr Walsh met with Afraaz around lunchtime and got his side of the story. He admitted to
> not seeing the patient at 4:00 am as directed. He also stated that he had seen the patient at
> 2:30 am, but did not document that evaluation.  Dr. Walsh can give us the remaining

Palmetto Health - 002327

details, but he did state that his/the department's recommendation would be unchanged.

DK
_____
From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Thursday, March 01, 2012 11:23 AM
To: AnneMarie Hyer; David Koon; John Walsh
Cc: James Raymond
Subject: Re: Irani Update

David,

Pls proceed with meeting with Irani to get his side of story. Will arrive in Orlando around 1:30. Call me to discuss next steps after that. We cannot continue current path and termination may be next step.

(Jim, I have contracted H.R. and Labor atty already. Will be in touch later today shouls GMEC Exec Com action be needed.)

Kathy
-----Original Message-----
From: David Koon <David.Koon@uscmed.sc.edu>
To: Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
To: AnneMarie Hyer <AnneMarie.Hyer@PalmettoHealth.org>
To: John Walsh <John.Walsh@uscmed.sc.edu>

Sent: 3/1/2012 8:36:27 AM
Subject: Irani Update

Kathy / John -

Dr. Wood approached me this morning about another patient care issue that occurred last night while we were on trauma call. A hemophiliac patient came in to be evaluated for leg pain which we thought could be a compartment syndrome (a limb threatening problem). Dr. Irani evaluated the patient and Dr. Wood came in around midnight to see the patient with him. They called me shortly thereafter to give me an update. Dr. Wood instructed Dr. Irani to evaluate the patient at 4:00 this morning to make sure that his conditioned had not worsened. During rounds this morning, he admitted to Dr. Wood that he had "forgotten" to perform this evaluation. Failure to perform this evaluation placed the patient at risk for further harm. Also, Dr. Irani failed to report early for morning rounds (one of the remediation measures) and Dr. Hoover called into the call room and actually woke him up.

Despite the department's and the GMEC's actions to provide him with a reasonable remediation plan, I think that his actions over the past few days speak for themselves and he is putting our orthopaedic patients at risk. I would recommend that we immediately suspend him from clinical duties. I would recommend that we meet with him this afternoon to hear his side of the story. If a reasonable explanation is not presented by him, I would think that we have "just cause" to begin the dismissal process.

Palmetto Health - 002328

I'll be at the VA all day in clinic and will await your recommendations.

DK

From: David Koon
Sent: Wednesday, February 29, 2012 7:34 PM
To: Kathy.Stephens@PalmettoHealth.org; John Walsh
Subject: FW: Dr Irani patient encounter

Kathy -

Below is the email that I received from Dr. Grabowski for your review. Dr. Grabowski (with Dr. Voss) has discussed these issues with Dr. Irani. He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing. Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC. We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety. We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding

Palmetto Health - 002329

the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.


---------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.


---------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

Palmetto Health - 002330

Archive Manager Message Export

Page 1 of 1

 Archive Manager

| | | | |
|---|---|---|---|
| **From:** | Margie Bodie | **Sent:** | Sat, 03 Mar 2012 17:19:24 GMT |
| **To:** | Carolyn Stockman; Katherine Keeney; | | |
| **CC:** | Carrie Jarrard | | |
| **Subject:** | Afraaz Irani, MD [Confidential] | | |

📄 **Change of Status Irani 3.1.12–4.10.12.doc (76Kb)**

Good morning!

Kathy Stephens e-mailed me a request to create a Change of Status for Dr. Irani for additional suspension without pay from 3/1 - 4/10 .

Since Carrie, Office Mgr, Ortho Surg, is serving as interim program coordinator/has IT access for Kronos - (Michelle Wehunt is no longer there) - please assist her to be sure that Dr. Irani is down for no pay in Kronos for the next few pay periods.

I am attaching the COS that has also gone to Brenda Mikel for Monday morning - for retro 3/1 change. (So sorry that this did not arrive on 3/1, but I have been in Sumter - Mother has been very sick/hospitalized....)

Have a super week!

Margie S. Bodie
Administrative Director
Resident & Student Services GME Office
Palmetto Health Richland
15 Med Park, Ste 202
Columbia, SC 29203
Margie.Bodie@palmettohealth.org
Office (803) 434-4429 Fax (803) 434-4419
Website: http://residency.palmettohealth.org/

"To be remembered by each patient as providing the care and compassion we want for our families and ourselves."

**From:** Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
**Sent:** Monday, March 05, 2012 9:52 AM
**To:** David Koon; John Walsh
**Subject:** Re:

Appears to cover the situation.
Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org


>>> David Koon 3/5/2012 9:03 AM >>>
Please review the MoR draft.

thx

DK

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

| | |
|---|---|
| From: | David Koon <David.Koon@uscmed.sc.edu> |
| Sent: | Monday, March 05, 2012 2:40 PM |
| To: | Afraaz.irani@gmail.com; John Walsh; Kathy.Stephens@PalmettoHealth.org |
| Subject: | Level III remediation |
| Attachments: | Irani MoR 7-dismissal.docx |

Afraaz -

Please review the attached memorandum.

I would like to have your recollection of events surrounding both patients by the end of the week.

Feel free to contact any of the faculty or Dr. Stephens if you have questions.

DK

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0794



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

05 MAR 12

Memorandum of Record                              Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG 11 to 01 DEC 11.

Dr. Irani was placed on Level III Academic Remediation from 09 DEC 11 to 31 JAN 12.

Dr. Irani was placed on Level II Academic Remediation beginning 06 FEB 12.

During his first month on this Level II Remediation, Dr. Irani was involved in two patient encounters that the faculty deemed below acceptable standards.

The first encounter involved a spine patient of Dr. Grabowski's. His email to me is included below for your review. Dr.s Grabowski and Voss met with Dr. Irani and discussed the situation with him on Tuesday, 28 FEB 12.

The following day Dr. Irani admitted a hemophiliac patient to the hospital. His senior resident (Dr. Wood) evaluated the patient and instructed Dr. Irani to re-evaluate the patient at 4:00 that morning. He failed to perform this examination and failed to appropriately document an evaluation earlier that morning. Upon questioning by Dr. Wood during morning rounds, he admitted to not performing this evaluation as instructed. This failure placed the patient's limb at risk. Dr. Hoover and I discussed this situation with Dr. Irani on Thursday, 01 MAR 12. He stated that he failed to follow Dr. Wood's instructions.

I have asked Dr. Irani to provide written documentation regarding the care of these two patients.

Dr. Irani has failed to demonstrate immediate and sustained improvement as required by his remediation measures. He has failed in the competencies of patient care, interpersonal skills and communication, and professionalism and the faculty is acutely concerned with our patient's safety.

It is the recommendation of the orthopaedic faculty to place Dr. Irani immediately on Level III academic remedation (effective 01 MAR 12) and suspend him from clinical duties. We will investigate these encounters thoroughly. If no reasonable explanation can be identified for his actions, the faculty will recommend to the GMEC on 10 APR 12 that Dr. Irani be dismissed from the program.

Dr. John Walsh                    Dr. David Koon               Dr. Frank Voss
Chair, Dept of Orthopaedic Surgery    Program Director             Vice-Chair, Dept of
                                                                   Orthopaedic Surgery

USC(Irani)0795



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

Dr. Grabowski to Dr. Koon (Monday, 27 FEB 12)

"I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication."

USC(Irani)0796

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|---|---|
| Sent: | Friday, March 09, 2012 9:58 AM |
| To: | John Walsh; Kathy.Stephens@PalmettoHealth.org; Jennifer, Wood; Greg Grabowski; jhoov14@yahoo.com |
| Subject: | FW: Level III remediation |

FYI
dk

---

**From:** Afraaz Irani [afraaz.irani@hotmail.com]
**Sent:** Thursday, March 08, 2012 11:17 PM
**To:** David Koon
**Subject:** RE: Level III remediation

Dr. Koon,
Thank you for giving me the opportunity to respond to the events surrounding the two patients in question. Below is the description of events surrounding the patients:
Regarding the haemophiliac patient with LLE swelling:

The patient presented with swelling of his LLE. He had last been examined at about midnight and would be examined again at 6AM. I was asked to perform a serial exam on the patient at "about four o clock." I saw the patient for follow-up check at about halfway between the two projected exam points for possible eval for compartment syndrome (at about 2:30AM on 3/1/12). The patient was in no acute distress, but he did have a slight grimace on his face when I walked in (he was moving his left lower extremity at that time). I asked him if he was about the same, worse or better. He stated that he "felt the same." His LLE was elevated on 3 pillows. Compartments felt similar in pressure to before. Patient was able to wiggle his toes. Some pain on passive ROM of left ankle -- again unchanged from before. Mild numbness on the dorsum of foot -- similar to slightly improving from exam a few hours ago. Strong DP pulse. Foot was warm and well perfused.

Regarding L.O. (the spinal patient):

I was called sometime after 11:30AM on 2/24/12 by the nurse stating that the patient was having difficulty moving RLE with PT today. I knew the patient was having more pain of the RLE with activity, and asked the nurse to verify if there was a neuro deficit, or if this was compensation for pain (nurse had not assessed the patient, only saying what PT had said). I received repeat page from the nurse 20-30 minutes later saying the patient was unable to dorsiflex her foot. At that point I left clinic and went across the street to see the patient. She was in the restroom. I waited for several minutes, for her to finish. She remained on the toilet. I notified Dr. Grabowski that she was on the toilet and what happened. Several repeat attempts were made to see patient.
As soon as patient was done on the toilet, I personally assisted her from the bathroom to her bed. She was noted to have some difficulty dorsiflexing right foot while ambulating. She was dragging her right foot. I helped her to the bed. My exam revealed 2/5 R knee extension

1

USC(Irani)0885

strength. She was unable to flex her knee, ankle dorsiflex or plantar flex, but was able to wiggle her toes on the right. She maintained a good DP pulse. I completed my exam, and she became tearful and emotional, and I spent some time at bedside consoling and discussing my findings with her and attempting to let her know that we would do whatever needed to be done – I told her I would discuss all my findings with Dr. Grabowski and he would be by soon to see her.

I notified Dr. Grabowski of these findings. I notified him that the patient had difficulty walking and almost no motor function in the right quad/hamstring/gastroc/soleus muscle group. Dr. Grabowski informed me that my exam was incongruent with my observation of the patient walking, and that there was likely an error in my exam. Accordingly I did not write a note at that point; I had previously been directed to not write notes in the chart with findings that may be incongruent (this came up with regards to leg length discrepancy in a prior patient). Accordingly I did not write a note as I was led to believe that my physical exam findings were inaccurate, and I did not want to put something potentially damaging on the chart, until I could fully discuss this with my attending.

The patient was subsequently examined by Dr. Grabowski and he told me via phone to order a stat MRI. I placed the order for the MRI and called radiology and told them to expedite the scan as this was for a possible stat OR case. They informed me there were two patients currently in the scan or scanner area (one was a PICU patient). I told them to do whatever they could do to expedite this scan as there was potential permanent neurological damage at risk here. I stayed in touch with radiology. The scan was again slightly delayed when the patient was unable to be transferred over to the scanner from the stretcher because she required a push of IV morphine which I gave a verbal for the nurse to give. Subsequently, the scan was completed and as soon as the scan was done I communicated to Dr. Grabowski that the scan was completed, and what the findings were. The patient was then scheduled for an emergent decompression in the OR. There was obviously very real gravity to this case, and I did not ask any additional questions of the attending or say anything in addition to the information I was required to communicate. I scrubbed in on the case until Dr. Hoover scrubbed in and told me to break scrub.

Thanks,
Afraaz


> From: David.Koon@uscmed.sc.edu
> To: Afraaz.irani@gmail.com; John.Walsh@uscmed.sc.edu; Kathy.Stephens@PalmettoHealth.org
> Date: Mon, 5 Mar 2012 14:40:12 -0500
> Subject: Level III remediation
>
> Afraaz -
>
> Please review the attached memorandum.
>
> I would like to have your recollection of events surrounding both patients by the end of the week.
>
> Feel free to contact any of the faculty or Dr. Stephens if you have questions.
>
> DK
>
> ----------------------------------------

USC(Irani)0886

Archive Manager Message Export

Page 1 of 1



| | | | |
|---|---|---|---|
| **From:** | David Koon | **Sent:** | Sat, 10 Mar 2012 09:03:29 GMT |
| **To:** | Katherine Stephens | | |
| **Subject:** | FW: Recollection of events in reference to patient evaluated for possible compartment syndrome | | |

From: jennifer wood [jhwood23@gmail.com]
Sent: Friday, March 09, 2012 8:26 PM
To: David Koon; John Walsh
Subject: Recollection of events in reference to patient evaluated for possible compartment syndrome

To Whom it may concern:

The following are my recollection of events in reference to the 19 y/o hemophiliac that Orthopaedics was consulted on to rule out compartment syndrome:

I was called by Dr. Irani regarding the patient. He relayed the patient's history to me and his physical exam findings. I asked him to measure the patient's compartments so that we could have an objective number of his compartment pressures. He called me back to inform me of the patient's compartment pressures. I informed him that I thought we at least needed to admit him overnight for observation and came to evaluate the patient.

The patient was very comfortable in the ER at that time. Although his leg was swollen and I had concern for development of compartment syndrome, I did not feel he had compartment syndrome at that time. Dr Koon was the attending on call that night. I called Dr. Koon on the phone and spoke with him regarding the patient. It was agreed upon that we would admit the patient to observe him and ensure his exam did not worsen and he did not develop compartment syndrome.

I finished writing my consult note. I spoke with Dr. Irani at approximately 1:15 a.m. and informed him the patient needed to be admitted, and I would like the patient checked in a few hours, and I then further clarified to give a more specific time frame of 4a.m. I left the ER where the patient was at approximately 1:15a.m. I informed Dr. Irani of my physical exam findings and also told him that if patient had worsening of symptoms that I wanted to be contacted immediately.

At around 6am that morning I went to 8 west to check again on the patient. The patient was still comfortable and had continued to improve. I sat down at the 8 west nurses' station and opened the chart to write my note. I saw that Dr. Irani's original consult note was in the chart, my consult from earlier that morning was in the chart, a consult note from another service regarding the patient's hemophilia was in the chart, and no other notes. Since I did not see a second note from Dr. Irani in the chart, I assumed he had not reevaluated him. At that time, Dr. Irani was sitting across from me at the nurses' station on 8 west and I asked him if he had seen the patient at 4am as I had asked him to. He stated, no. I asked why not. He went on the state that he was sorry, and that he had forgotten. I informed him that this type of thing was not to ever happen again. He once again stated he was sorry. I then wrote my progress note on the patient and left the floor.

Later that morning, I spoke with Dr. Koon regarding the interaction that I had with Dr. Irani. My concern was that the patient was not reevaluated by Dr. Irani, and that this could have had serious implications if the patient had developed compartment syndrome.

I am aware that Dr. Irani was questioned about this patient encounter, and he has stated that he reevaluated the patient at 2:30a.m that morning. Dr. Irani did not indicate to me that he reevaluated the patient when I spoke to him regarding the issue. At approximately 6 a.m. when I reevaluated the patient, there was no documentation in the chart by Dr. Irani regarding a reevaluation of the patient.

Sincerely,
Jennifer Wood

--
Jennifer Wood
email:jhwood23@gmail.com<mailto:email%3Ajhwood23@gmail.com>

------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

Archive Manager Message Export                                                    Page 1 of 1

 ArchiveManager

| | | | |
|---|---|---|---|
| **From:** | David Koon | **Sent:** | Tue, 13 Mar 2012 14:39:33 GMT |
| **To:** | Katherine Stephens; Margie Bodie; Afraaz Irani; Laura Rasmussen; John Walsh; | | |
| **Subject:** | RE: Level III remediation | | |

I spoke with Afraaz this afternoon and gave him an update re: our inquiry into the two patient encounters. He has provided me with a MoR which I have forwarded to Dr.s Wood, Grabowski, and Stephens for their review.

I informed him that I had received a MoR from Dr. Wood re: the hemophiliac patient and I'm awaiting one from Dr. Grabowski re: the spine patient.

At this point, the department has not changed it's recommendation to the GMEC.

He would like to initiate the Grievance process and I would consider his discussion with me as the first step, even though it was not initiated within the five (5) business days as required (Resident Manual, Grievance and Due Process policy, 1.1).

His next step would be to meet with Dr. Walsh within the next five (5) business days and I have cc'd him (and Laura Rasmussen) on this message.

DK

From: Afraaz Irani [afraaz.irani@hotmail.com]
Sent: Tuesday, March 13, 2012 1:43 PM
To: David Koon
Subject: RE: Level III remediation

Dr. Koon,

I would like to meet to discuss the memorandum and the actions proposed. Let me know when you have some time.

Thanks,
Afraaz

> From: David.Koon@uscmed.sc.edu
> To: Afraaz.irani@gmail.com; John.Walsh@uscmed.sc.edu; Kathy.Stephens@PalmettoHealth.org
> Date: Mon, 5 Mar 2012 14:40:12 -0500
> Subject: Level III remediation
>
> Afraaz -
>
> Please review the attached memorandum.
>
> I would like to have your recollection of events surrounding both patients by the end of the week.
>
> Feel free to contact any of the faculty or Dr. Stephens if you have questions.
>
> DK
>
> ---------------------------------------
>
> This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

---------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

**From:** John Walsh
**Sent:** Tuesday, March 13, 2012 9:42 PM
**To:** afraaz.irani@hotmail.com
**Subject:** Re: meeting

You can come by tomorrow at 730 I will be done conference at 715.

Sent from my Ver izon Wireless Phone

----- Reply message -----
From: "Afraaz Irani" <afraaz.irani@hotmail.com>
Date: Tue, Mar 13, 2012 8:45 pm
Subject: meeting
To: "John Walsh" <John.Walsh@uscmed.sc.edu>

Dr. Walsh,

Was wondering if you had some time to meet up to discuss the events of the past few days. Let me know if you have some time that would work.

Thanks,
Afraaz


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0946

Archive Manager Message Export                                                    Page 1 of 1



| From: | David Koon | **Sent:** | Thu, 15 Mar 2012 07:27:34 GMT |
|---|---|---|---|
| To: | Katherine Stephens | | |
| Subject: | Irani grievance | | |

Dr. Irani has initiated the grievance process and has met with me and Dr. Walsh, so I would think he will be contacting you in the near future.

The department's recommendations are unchanged.

DK

-----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

Archive Manager Message Export                                    Page 1 of 1



| | | | |
|---|---|---|---|
| **From:** | Katherine Stephens | **Sent:** | Fri, 16 Mar 2012 09:03:34 GMT |
| **To:** | Afraaz Irani | | |
| **Subject:** | Re: mtg | | |

Best time looks like next Wed., March 21st, at 1:30.  Can you be here at that time?

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@hotmail.com> 3/16/2012 7:42 AM >>>
Ms. Stephens,

I met with Drs. Walsh and Koon recently. When would you have time to discuss things regarding the grievance process?

Thanks,
Afraaz

Archive Manager Message Export                                                                 Page 1 of 2



| | | | |
|---|---|---|---|
| **From:** | Katherine Stephens | **Sent:** | Mon, 19 Mar 2012 09:13:01 GMT |
| **To:** | Margie Bodie; Jarrard, Carrie; Koon, David; | | |
| **Subject:** | RE: paycheck | | |

Carrie,

No retro pay was involved in this situation - just payment through, and including, March 1st and suspension without pay beginning March 2nd. Not sure why the word "retro" was used. I'll ask Margie Bodie to contact you to make any necessary COS adjustments. In the meantime, Dr. Irani should be paid for March 1st.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> David Koon <David.Koon@uscmed.sc.edu> 3/16/2012 6:19 PM >>>
Carrie -

I'll forward this to Dr. Stephens and Margie Bodie for their input...

DK

From: Carrie Jarrard
Sent: Friday, March 16, 2012 12:16 PM
To: David Koon
Subject: FW: paycheck

Dr. Koon,

Sorry to bother you with this but could you confirm this is true, at least the part of when he was informed? I've spoken with Payroll and apparently the Change of Status form, or perhaps the email accompanying it, stated that he should be paid RETRO March 1st.  Basically, I just need to know if he needs to be paid for March 1st or not.

Please advise. Thanks for your help.

Carrie E. Jarrard, MBA
Business and Operations Manager
USC Dept. of Orthopaedic Surgery and Sports Medicine
(803) 434-7720 (office)
(864) 680-6718 (cell)
(803) 434-7306 (fax)

From: Afraaz Irani [mailto:afraaz.irani@gmail.com]
Sent: Thursday, March 15, 2012 3:59 PM
To: Carrie Jarrard
Subject: paycheck

Hey are you in charge of submitting the weekly work hours since Michelle is no longer in charge? My last paycheck for the pay period ending 3/3/12 only paid me for 64 hours worth of work over the two weeks. I was post call on Thursday March first and completed my work day for the first.

I was informed that evening of Thursday March 1st, that I did not need to come in the next day (Friday march 2nd). As I worked a complete shift on the 1st, I only missed one day (one eight hour shift) -- I should have been paid for 72 hours not 64. Can we correct this on the next billing cycle?

Thanks,
Afraaz

Archive Manager Message Export                                          Page 1 of 1



| | | |
|---|---|---|
| **From:** | David Koon | **Sent:** Tue, 20 Mar 2012 11:11:35 GMT |
| **To:** | Katherine Stephens | |
| **Subject:** | FW: Meeting with Dr. Irani | |

From: Greg Grabowski
Sent: Tuesday, March 20, 2012 10:55 AM
To: David Koon
Cc: Frank R Voss
Subject: Meeting with Dr. Irani

David,

I just wanted to update you from my last email.

On Wednesday, February 29th, I met with Dr. Irani to discuss the concerns that I had regarding the care of patient LO.  In addition to the concerns I outlined in my prior email, I additionally discussed with him the topic of dressing changes in this patient once her drains had been pulled.  Due to concerns of creation of a dural-cutaneous fistula in the event of an ongoing leak, I specifically spoke with Dr. Irani regarding the need for him to personally perform dressing changes on this patient on a daily basis and noting any wound drainage.  Despite these clear instructions, Dr. Irani failed to perform this duty.

Dr. Voss was present for our meeting, which went well.  At the time of the meeting, Dr. Irani did not dispute any of the patient care concerns discussed with him and simply apologized for his errors.

Please let me know if you need any more information regarding this meeting.

Thank you,
Greg

------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

Palmetto Health - 002403

Archive Manager Message Export                                        Page 1 of 1



| | | |
|---|---|---|
| **From:** | David Koon | **Sent:** Tue, 20 Mar 2012 11:11:50 GMT |
| **To:** | Katherine Stephens | |
| **Subject:** | FW: feedback | |

---

From: Greg Grabowski
Sent: Tuesday, March 20, 2012 11:06 AM
To: Afraaz Irani
Cc: David Koon
Subject: RE: feedback

Afraaz,

I apologize for the slow reply. Our patient is doing well at her follow-up visit; thank you for asking.

With regards to feedback, I must admit to being somewhat confused by your request. From my standpoint, we met on the morning of 2/29 to discuss the situation and at that time I outlined to you all of my reasons for concern surrounding the care provided for this patient. Truthfully, I have nothing more to add; as far as I am concerned, the issue is closed.

Best,
Greg Grabowski

From: Afraaz Irani [mailto:afraaz.irani@hotmail.com]
Sent: Tuesday, March 13, 2012 10:25 PM
To: Greg Grabowski
Cc: David Koon
Subject: feedback

Hey Dr. Grabowski,

Hope all is well.

Dr. Koon asked me to writeup the events surrounding our patient L.O. from a few weeks ago.

I asked him today for some feedback and he asked that I contact you directly so I can better understand the situation.

I know you're busy, but if you could provide me with your thoughts that would be very much appreciated.

Thanks,
Afraaz
█████████

PS How is Ms. O doing? Did her RLE pain ever resolve?

-------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.



| From: | David Koon | Sent: | Wed, 21 Mar 2012 16:55:04 GMT |
|-------|-----------|-------|-------------------------------|
| To: | Katherine Stephens; Carrie Jarrard; John Walsh; | | |
| Subject: | Irani memo | | |

📄 Scan 69.PDF (59Kb)

FYI

Carrie - please place this in his residency file.

thanks

DK

-----------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS®

Meeting with Dr. Greg Grabowski and Dr. Afraaz Irani

Date:  Tuesday approximately two weeks ago.    [i.e., Tuesday, February 29, 2012]

Re:  Review of the circumstances under which Dr. Irani was delayed in evaluation of a patient with new onset weakness after a recent spine surgery while still hospitalized.

We carefully reviewed the circumstances under which Dr. Irani was called by the nurse where she informed him that the patient had a new foot drop in the morning. Dr. Irani's initial response was somewhat flippant to the nurse and told her that he would come by a little bit later. About 1-1/2 hours later, he came by, noted some of the weakness, and then contacted Dr. Grabowski. The further evaluation revealed fluid collection near the area of the surgery that proved to be a CSF leak. A repeat surgery fortunately stopped the CSF leak and the patient gradually improved but the patient was watched extremely cautiously over the weekend after the decompression surgery and there was reliance on physicians to do very sensitive neurologic testing at regular intervals. When Dr. Irani contacted Dr. Grabowski and told him that the muscle strength had faded to 4+/5+ there was immediate anxiety on the part of Dr. Grabowski that the patient's problem was recurring. Dr. Grabowski reviewed all of these issues with Dr. Irani and wondered whether Dr. Irani had any insight into why these situations might cause anxiety for Dr. Grabowski. Ultimately, Dr. Irani did admit shortcoming in terms of the his assessment and compulsiveness about thorough patient examination but I think he failed to have any true insight into the level of concern that we would expect that he would demonstrate in the care of a patient who was at risk for becoming paralyzed. It seemed that Dr. Irani's description of the events was consistent but there failed to be recognition or demonstration of true care for the patient's condition in this situation. The discussion session was largely conducted by Dr. Grabowski with response by Dr. Irani. My sentiment and that of Dr. Grabowski was that there was a failure of recognition of the amount of care required for an orthopedic spine patient. There were still concerns about the level whether Dr. Irani could meet with the standards expected of him.

Frank R. Voss, M.D.
FRV:tlg

Cc:  David Koon, M.D.

*DEPARTMENT OF ORTHOPAEDIC SURGERY*
**Two Medical Park, Suite 404, Columbia, SC 29203**
**803-434-6812, FAX 803-434-7306**

Palmetto Health - 002407

| From: | Katherine Stephens <Kathy.Stephens@PalmettoHealth.org> |
|---|---|
| Sent: | Wednesday, March 28, 2012 2:30 PM |
| To: | afraaz.irani@gmail.com |
| Cc: | James Raymond; David Koon; John Walsh |
| Subject: | Grievance Decision |
| Attachments: | AfraazIraniLtrMar282012.pdf |

Dr. Irani,
My letter of decision regarding the grievance of your academic remediation is attached.
Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

-------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

USC(Irani)0997



March 28, 2012                    <u>DELIVERED VIA EMAIL</u>

Afraaz Irani, MD
Department of Orthopaedics
2 Medical Park, Suite 404
Columbia, South Carolina 29203

Dear Dr. Irani:

After carefully considering the information available to me, I have decided to uphold the decision concerning your March 1, 2012 academic remediation.

If you decide to continue with the grievance process, your next step is to appeal through Palmetto Health's Human Resources department. Note that the grievance process requires an appeal to occur within ten business days, which is April 11, 2012. Please refer to the Grievance and Due Process policy in your Resident Manual for more information if you choose to appeal further.

Sincerely yours,

Katherine G. Stephens, PhD, MBA, FACHE
Vice President for Medical Education and Research

KGS/amh

cc: John Walsh, MD, Department of Orthopaedics
    David Koon, MD, Department of Orthopaedics
    James Raymond, MD, Chief Medical Officer

USC(Irani)0998

Page 1 of 2

## Lin Hearne - RE: Grievance Council

| | |
|---|---|
| **From:** | Afraaz Irani <afraaz.irani@hotmail.com> |
| **To:** | <lin.hearne@palmettohealth.org> |
| **Date:** | 4/2/2012 7:06 PM |
| **Subject:** | RE: Grievance Council |

Ms. Hearne,

I apologize -- I just had some time to think over the weekend, and I think you raised an excellent point: let's first see what the GMEC council says, and then based on that make a decision on whether or not to proceed with the grievance council. I understand it will delay the process, and I"m fine with that. I am hoping that we could avoid extra work this way if the GMEC decides to reinstate me.

I am hoping it is not too late to change plans since we last talked on Friday. If it is possible I would love it if we could cancel the April 11th meeting, and then after the GMEC meeting April 10th, I will have to let you know April 11th whether or not I would like a grievance council (with the understanding that you have 15 business days to schedule the committee).

Thank you so much for your help, and I truly appreciate your understanding. Let me know if that sounds OK!

Thanks,
Afraaz

---

Date: Mon, 2 Apr 2012 18:44:13 -0400
From: Lin.Hearne@PalmettoHealth.org
To: afraaz.irani@hotmail.com
Subject: Re: Grievance Council

Dr. Irani,

I'm sorry, from my understanding, I was under the impression you did want to move forward with scheduling the grievance committee for April 11th at 4:00pm and I am currently in the process of scheduling committee members. Last that we talked, you were going to get back with me on a date prior to April 11th for us to meet to help you prepare. The GMEC is meeting on April 10th.

However, you have 10 business days to appeal to Palmetto Health Human Resources to file for a grievance committee. From my understanding you were notified on Wednesday, March 28th by Kathy Stephens. This means you have until April 11th to file to Human Resources to move forward with the grievance committee. Once you notify Human Resources, we have 15 business days (no more then 20 business days) to schedule the grievance committee.

Please confirm if you would like to go ahead and schedule the grievance committee for April 11th at 4:00pm or would you like to hold off on scheduling and understand the deadline to file is April 11th. Please keep in mind, the committee will be scheduled within 15 business days (no more then 20 business days) from the date you file with Human Resources.

Lin Hearne, PHR
HR Business Partner
Palmetto Health
293 Greystone Blvd

Palmetto Health - 001271

Page 2 of 2

Columbia, SC 29210
(803) 296-7883

A Modern Healthcare 100 Best Places to Work in Healthcare Award Winner, 2008, 2009 & 2010

SC Chamber of Commerce Best Places to Work for 2009, 2010 & 2011

>>> Afraaz Irani <afraaz.irani@hotmail.com> 4/2/2012 3:37 PM >>>
Ms. Hearne,

Thank you so much for speaking with me last Friday. I think you raised an excellent point; I had more time to think about what you said this past weekend. I think you are right: If we can wait until after the GMEC meets, and see what their decision is, and then based on that decide whether or not to go forward with a grievance council, that would probably be the best and most prudent move.

Sorry about the confusion. I appreciate your advice -- I think that could potentially save everyone some time and energy.

Also, and most importantly, last time I filed for grievance council, it was denied. Can you in writing please state that I have until April 11th (including April 11th) to file for a grievance council?

Thank you so much again for your help and look forward to hearing form you soon!

Afraaz
----------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

Archive Manager Message Export

Page 1 of 1



| | | | |
|---|---|---|---|
| **From:** | Lin Hearne | **Sent:** | Mon, 02 Apr 2012 19:33:10 GMT |
| **To:** | Gwen Hill; Katherine Stephens; | | |
| **Subject:** | Grievance | | |

FYI.....Dr. Irani wants to cancel the grievance committee for April 11th. He's still undecided if he wants to grieve or not. His 10 business day deadline to file a grievance to committee is April 11th and he clearly understands the deadline.

Kathy, I will notify the committee members I have already scheduled.
Sent from Blackberry

Palmetto Health - 002462

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|---|---|
| Sent: | Tuesday, April 03, 2012 6:40 AM |
| To: | Afraaz Irani; Kathy.Stephens@PalmettoHealth.org; John Walsh; annemarie.hyer@palmettohealth.org |
| Subject: | RE: documents |
| Attachments: | Irani MoR 2.docx; Irani MoR 3.docx; Wood Memo Hemo Pt.docx; Grabowski email.docx |

Dr. Irani -

Per your request I have reviewed the documents in question and have attached them to this email.

I'm not sure that I have a memo from 19 SEP, but will keep looking.

I have attached the memos from 03 OCT and 21 NOV.

I have also attached the emails from Dr.s Grabowski and Wood. I would remind you that these incidents were reviewed with you in detail and that you were given ample opportunity to provide your recollection of events.

As far as TF 375, I'll need to look over those documents in the next few days. I'm not sure how germane that incident is to the ongoing grievance process, so I saved that one for last. I'll get them to you by the end of the week.

If you have any further questions or requests, please feel free to contact me or Dr. Walsh. Dr. Stephens will be out for the rest of the week and Anne Marie will be available at the GME office.

DK

_____
From: Afraaz Irani [afraaz.irani@hotmail.com]
Sent: Friday, March 30, 2012 4:47 PM
To: David Koon
Subject: documents

Dr. Koon,

Could I get a copy of all the memorandums regarding me including regarding any of our meetings? Notably if I could get a copy of any memorandums (if there are any) regarding the following meetings: Sept. 19th 2011, Oct. 3rd 2011, and Nov. 21st 2011. Also I emailed Dr. Wood to get her memorandum, but she did not get back to me. Can you get me a copy of that? Dr. Grabowski replied saying he had nothing more to add, so I am to assume I am correct in assuming that there is no more documentation regarding the spinal patient? Also if you could furnish me with the complete set of, including nursing, accusations regarding trauma female 375 that would be great as well.

Thank you,
-Afraaz

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are

1



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

03 OCT 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr.s John Walsh and David Koon met with Dr. Afraaz Irani on Monday, 03 OCT 11 to review the progress of his Level II Academic Remediation.

Dr. Walsh reviewed his 6 month evaluation. We then solicited his opinion on the progress of his remediation measures. We reviewed each remediation measure and provided feedback.

Dr. Irani appears to have gained some insight into his deficiencies. He has received constructive advice from Dr. Guy during his September rotation and has been working hard to improve in these areas.

Dr. Irani proceeded thru the Grievance Process as outlined in the PH Resident Manual. His appeal was denied by Kathy Stephens.

We will meet with Dr. Irani again on Monday, 07 November to review his progress.

David E. Koon, Jr., MD                          John J. Walsh, MD
Program Director                                Chair, Dept. of Orthopaedics

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

University Specialty Clinics

29 NOV 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr.s David Koon and Jennifer Wood (orthopaedic chief resident) met with Dr. Irani on Monday, 21 NOV 11 to discuss his remediation process. We had a very frank discussion with Dr. Irani regarding his remediation measures. Dr. Irani stated that he believed he was doing well and improving in all areas.

Dr. Wood had several instances where she believed Dr. Irani was still performing below his level of training. These included failures to complete assigned tasks (eg. morning patient list).

I informed Dr. Irani that his email to me regarding the completion of a delinquent narrative summary was inappropriate. (see below) His failure to timely complete assigned tasks, as well as his sense of entitlement, was unprofessional and inappropriate.

Dr. Irani has been verbally counseled regarding inappropriate patient care during a pain management problem with one of Dr. Walsh's post-operative patients.

Dr. Irani asked about the pending recommendations of the faculty re: his remediation. I informed him that the final decision had not been finalized, but I thought that we would transition him to level I remediation. After a long sigh and a rolling of the eyes, Dr. Irani informed us that this decision would only continue his "overhead." When questioned about this statement, he informed us that he had been "documenting" his activities and that he would have to continue this process until he was "off of probation." He appeared to be completing a "log" in order to disprove allegations of tardiness.

Dr. Irani failed to properly assess and manage a patient of Dr. Koon's with post-operative wound drainage and infection after she called twice over a three day weekend (25-27 NOV 11).

Dr. Irani failed to abide by his attending surgeon's instructions during Staff clinic (28 NOV 11) and was argumentative when confronted by his chief resident.

Dr. Irani continues to display behaviors which are inappropriate and unprofessional. His progress will be re-evaluated at our next faculty meeting on Monday, 05 DEC 11. We have asked for his presence at this meeting.


David E. Koon, Jr., MD
Program Director

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0800

To Whom it may concern:

The following are my recollection of events in reference to the 19 y/o hemophiliac that Orthopaedics was consulted on to rule out compartment syndrome:

I was called by Dr. Irani regarding the patient. He relayed the patient's history to me and his physical exam findings. I asked him to measure the patient's compartments so that we could have an objective number of his compartment pressures. He called me back to inform me of the patient's compartment pressures. I informed him that I thought we at least needed to admit him overnight for observation and came to evaluate the patient.

The patient was very comfortable in the ER at that time. Although his leg was swollen and I had concern for development of compartment syndrome, I did not feel he had compartment syndrome at that time. Dr Koon was the attending on call that night. I called Dr. Koon on the phone and spoke with him regarding the patient. It was agreed upon that we would admit the patient to observe him and ensure his exam did not worsen and he did not develop compartment syndrome.

I finished writing my consult note. I spoke with Dr. Irani at approximately 1:15 a.m. and informed him the patient needed to be admitted, and I would like the patient checked in a few hours, and I then further clarified to give a more specific time frame of 4a.m. I left the ER where the patient was at approximately 1:15a.m. I informed Dr. Irani of my physical exam findings and also told him that if patient had worsening of symptoms that I wanted to be contacted immediately.

At around 6am that morning I went to 8 west to check again on the patient. The patient was still comfortable and had continued to improve. I sat down at the 8 west nurses' station and opened the chart to write my note. I saw that Dr. Irani's original consult note was in the chart, my consult from earlier that morning was in the chart, a consult note from another service regarding the patient's hemophilia was in the chart, and no other notes. Since I did not see a second note from Dr. Irani in the chart, I assumed he had not reevaluated him. At that time, Dr. Irani was sitting across from me at the nurses' station on 8 west and I asked him if he had seen the patient at 4am as I had asked him to. He stated, no. I asked why not. He went on the state that he was sorry, and that he had forgotten. I informed him that this type of thing was not to ever happen again. He once again stated he was sorry. I then wrote my progress note on the patient and left the floor.

Later that morning, I spoke with Dr. Koon regarding the interaction that I had with Dr. Irani. My concern was that the patient was not reevaluated by Dr. Irani, and that this could have had serious implications if the patient had developed compartment syndrome.

I am aware that Dr. Irani was questioned about this patient encounter, and he has stated that he reevaluated the patient at 2:30a.m that morning. Dr. Irani did not indicate to me that he reevaluated the patient when I spoke to him regarding the issue. At approximately 6 a.m. when I reevaluated the patient, there was no documentation in the chart by Dr. Irani regarding a reevaluation of the patient.

Sincerely,

Jennifer Wood

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

USC(Irani)0805

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Wednesday, April 04, 2012 6:12 PM |
| **To:** | Afraaz Irani |
| **Subject:** | RE: documents |
| **Attachments:** | RN Brady memo.docx; TF 375 RN memo.docx |

Afraaz-

Finally got the TF 375 documents located and have attached them to this email.

The 19 SEP memo you referenced was a MoR by Dr. Walsh dated 22 SEP. Per your signature on page 2, you received this on 03 OCT. I can send you another copy if you cannot locate your personal copy.

Let me know if you need anything else.

DK

_____

From: Afraaz Irani [afraaz.irani@hotmail.com]
Sent: Friday, March 30, 2012 4:47 PM
To: David Koon
Subject: documents

Dr. Koon,

Could I get a copy of all the memorandums regarding me including regarding any of our meetings? Notably if I could get a copy of any memorandums (if there are any) regarding the following meetings: Sept. 19th 2011, Oct. 3rd 2011, and Nov. 21st 2011. Also I emailed Dr. Wood to get her memorandum, but she did not get back to me. Can you get me a copy of that? Dr. Grabowski replied saying he had nothing more to add, so I am to assume I am correct in assuming that there is no more documentation regarding the spinal patient? Also if you could furnish me with the complete set of, including nursing, accusations regarding trauma female 375 that would be great as well.

Thank you,
-Afraaz

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0777

From: "Marie Brady" <Marie.Brady@PalmettoHealth.org>
Subject: Trauma F110375
Date: December 7, 2011 6:18:29 PM EST
To: "Diane Savage" <Diane.Savage@PalmettoHealth.org>

I was just writing this E-mail to let you know that I was working in pod 5 when the pt. came in, I actually helped Elaine Simons, RN take care of the pt. from the trauma bay 2 and continued through her stay in pod 5... We both, Elaine and I were in the room and she was getting her ready to go to the OR and she became very nervous and looked like she wanted to say something but not sure how she could say it..... Elaine asked her what she was thinking about and she stated that she was very uncomfortable with the Ortho Residents that were just in her room.... She said that she has only gone to Baptist and that this was very unorganized and she was scared.. We tried to assure her that it was going to be ok but you could tell that she still felt very uncomfortable.... Elaine then left the room to speak with Diane about the way the pt. felt and I stayed with her for a little bit to see if I could calm her nerves a little by talking to her and she stated that she felt like she was just thrown around and it was very scary and she was very uncomfortable with the surgery doctors.... I then stated that I would let her nurse know and my charge Nurse at the time was Diane know and Im sure we would be  addressing the situation and she smiled and said thank you so much for everything you have done for me today. The Doctors names were: Dr. Irani and Dr. Natche... Elaine, Diane, and Arlene were at her bedside talking with her... The next thing I know is that  Dr. Jones the Attending was in the room and spoke with the family and the pt. and she felt better. When I went back in there Elaine, Diane and Arlene were with her and Diane was holding her hand and stated to her that she was in good hands.... She stated to me that she wanted to say thank you and that just talking was a big help... and to thank Elaine, Diane,  Arlene and myself for understanding and making her feel better...

Marie Brady

USC(Irani)0778

Fwd: trauma female 375
Arlene Vance [Arlene.Vance@PalmettoHealth.org]
Sent:Friday, December 09, 2011 11:47 AM
To:  dkoon@sc.rr.com
Cc:  brianandelaine@gmail.com; Allison Turnley [Allison.Turnley@PalmettoHealth.org]; Arlene Vance
     [Arlene.Vance@PalmettoHealth.org]; Diane Savage [Diane.Savage@PalmettoHealth.org]
Dr Koon,

Attached is Elaine's detailed account of treatment for ▮▮▮▮▮▮▮. As you and I discussed yesterday,
I requested Dr Irani accompany me to update patient's family following the reduction as well as talk again
to Ms ▮▮▮▮ with family present given her valid concerns about surgery and care received.  We then
contacted the AOD, Mike Rawl, who paged Dr T Jones. Dr Jones immediately came to the ED and talked
with Ms ▮▮▮▮ and her family.  He thoroughly explained all injuries, plan for care, and answered all
questions.  Following this, Ms ▮▮▮▮ was taken to the OR.

Reiterating Elaine's account, it was as if Drs Irani and Nathe were twisting and turning the limbs of a toy
doll instead of a human being.  Through this entire ordeal the patient was awake, oriented and fully
aware about what was going on, as well as tearful.  There were no visible or verbal compassionate efforts
by either to provide comfort or lessen her fears.

If you need any further information or clarification, please do not hesitate to email or call.  Arlene Vance,
RN

Arlene Vance, RN, BSN
Assistant Nurse Manager
Palmetto Health Richland
Emergency Department
434-2220


>>> Elaine Simon <brianandelaines@gmail.com> 12/9/2011 1:35 AM >>>
To whom it may concern:

I am writing this letter because I had the privilege to provide care to the patient brave ▮▮▮▮▮▮▮,
Trauma Female 375 on Wednesday December 7, 2011. Unfortunately during her stay in the ED the
treatment provided was less than adequate and not up to Palmetto Health Richland's Policies or Standards
of Care. Ms. ▮▮▮▮ was involved in a head on collision with prolonged entrapment, was flown in by
Lifenet and sustained injuries which included: bilateral femur fractures, open right ankle fracture and
open left humerus fracture with dislocation of the left elbow.

My care started in the Trauma Bay with the patient to the CT scanner, back to the trauma bay for
additional x-rays, to my assigned room in the ED and ended in the block room in preparation of surgery. I
felt that overall the treatment of the patient in the Trauma bay was adequate. We were able to stabilize the
patient's blood pressure there with fluid boluses and control her pain as best we could with fentanyl. The
CT scans took longer than normal apparently there was an issue with the contrast dye but still the
patient's vital signs and pain was controlled. The patient was transported to trauma 1 for x-rays. At this
time I met with the patient's family and asked them if they had been updated by anyone. The mother and
father of the patient said, "no one had come and told them anything". It was at that time I explained the
injuries that I knew to the family and reassured them that she had stable vital signs and at that time and
we were controlling the patient's pain. I also told them there was a chance she might have to go to surgery
that same day due to the nature of the injuries but that the physicians would talk to them more about that.

I asked Dr Loflin to update the family and she said she couldn't till all the films were back. I asked Dr. Loflin were I could bed board the patient for and she answered with, "I can't give you an answer till all the films are back".

The problems really began happening when the orthopedic resident arrived for the consult and met the patient in the trauma bay. While we were trying to get a Foley catheter in the patient, (she desperately had to urinate). Dr. Nathe began examining the patient's right ankle by removing the splint and ace wrap in the trauma bay before even introducing herself to the patient. Blood was heavily flowing out of the patients open ankle. Bleeding had been controlled prior to removing the splint and ace wrap. Once the x-rays were completed the split was put back on and ace wrap re-applied and the patient was transferred to room 254. Shortly after the patient arrived to the ED room I became aware due that the patient's hemoglobin had dropped from 10 to 7. An order for 4 units of PRBC was obtained from Dr. Loflin and I sent a tech down to retrieve 2 units at a time. I overheard Dr. Nathe on the phone trying to get in touch with some other ortho. resident to help her with "the wash out and reduction". Apparently she got in touch with Dr. Irani. Dr Nathe asked me to gather several supplies and for the reduction of the right ankle and left elbow. I told her at that time we needed to get a consent signed. She responded "What? We are not doing a conscious sedation only a reduction". I told her that I understood that but that we still needed to obtain consent for a procedure. Dr. Nathe stated, "well I have never had to do that". I filled out the consent for with the procedures she said we were doing and left it at the patient's bedside. I gathered all the supplies and as I was coming around the corner to the room and heard Dr. Loflin tell Dr. Nathe, "just do what she says".

The patient requested that her mom be there in the room with her. I asked Dr. Nathe and she agreed it would be fine. When Dr. Irani arrived he said in front of the patient (after Dr. Nathe said it was okay) that her mom could not come back. This was all discussed at the patient's bedside.

Again I inquired about obtaining consent. Dr. Irani said, "Oh no we don't need consent for this". My consent form remained unsigned at the bedside. Dr Irani introduced himself and said to the patient, "You know you have a broken ankle right; you know your arm is broken too, right?" Ms. ▓▓▓▓▓ answered "yes". At this time the blood arrived and I could not get into the room to hang it. I said, "Hey can I get around so I can hang the blood". It was like I was invisible to Dr. Nathe and Dr. Irani. They had the C-arm blocking the end of the bed and doorway and had turned the patients bed so there was no way around to the pumps etc. Finally the Ortho Tech Toni pushed the C-arm so I could duck underneath it to get around. At this time the right ankle splint was removed and blood began gushing out of patient's ankle all over the C-arm and onto floor. Dr Irani asked me, "Can you get me chucks pads please". I responded, "I will as soon as I get this blood started". At this time the patients systolic was hovering in the 90's and she was obviously in need of pain meds. I continued to give patient the prn doses of fentanyl to control her pain during this procedure. Her blood pressure was too low to tolerate the Morphine PCA and Loflin told me to hold off. I was bolusing the PRBC's with at warmer. At this time I was basically trapped in and was able to witness the cruel treatment of this patient. Dr. Irani and Dr. Nathe began working on the ankle washing out the open bleeding fracture with NS and soaking the patient and all her linens in the process. The patient was shivering. As Dr. Nathe was working on the ankle Dr. Irani unwrapped with left humerus to begin working on it. He said, "Oh this is open?" Dr. Nathe said, "No one told me". Really you are the ortho. resident who has examined the patient and you aren't clear on her injuries. I was in complete shock that they were talking about the patient as if she couldn't hear them. She was totally awake, totally alert with tears in her eyes. Dr. Irani asked me if I would assist him with placing the patient's hand in the finger trap. I did so, but did not understand why Nathe or the tech did not. Post right ankle reduction (while looking at the fracture with the c-arm), Dr. Nathe said, "Uh look at this, that's not good". Dr. Irani said, "Can you turn it to the left a little". He said, "Well it's not going to get fixed down here". They were talking again like the patient was not there. I managed to transfuse 3 units of the PRBC's during this time and the patients BP was in the 120's. Once ortho. left the room I got extra staff

to help turn the patient to get her off the saline and blood soaked linens.

At this time I could tell the patient was worried and I asked her what was wrong. Ms. ████ told me, "I have always gone to Palmetto Baptist before and it just seems like everything here is disorganized, and I am worried about the people taking care of me". She said, "Not you two" speaking to Marie B. PCT and myself. She said, "The doctors, I am just worried I won't be able to walk again". I did the best I could to reassure the patient and make sure she was as comfortable as I could make her. I told her she was in good hands and I was sorry that it had felt disorganized. Although in my heart I couldn't blame or contest anything that she was saying. Directly following the reduction in the ER Vicki RN from the OR called saying they were ready for the patient to come to the block room and wait for surgery.

I couldn't believe it, an hour plus had gone by of pain and extensive bleeding for this patient in an ER room and the fractures were not even fixed and now the OR was ready to take the patient to surgery where all this should have been done in the first place. There the patient could have been unaware of the pain, not felt cold, not felt fear. She would have been comfortable. This is what I would have wanted for my family and friends. This is what our standards should be and what this facility is capable of. Don't physicians take an oath to first do no harm? Well what were they doing? I don't know but in my 5 years at PHR ER I have never felt so uneasy, so upset or like I had to help save the patient from what was going on.

Early on I had gotten the Charge RN, Arlene Vance and Diane Savage involved in what was happening. They were very supportive to me and made the appropriate phone calls. Before the patient went to the OR, Dr. Jones came down and explained the surgery and the injuries to the patient. The patient verbalized her understanding. The AOD, Mike was present as well. Before the patient left for surgery the surgery checklist was obtained, consent signed and 4th unit of PRBC's were hung.

My hope is that we can learn from this. Learn to work together for the patient. The Nurses are there to advocate for the patient and make sure things are done according to policy. Let's not forget we are caring for a person not just fixing bones. We need to look at the whole picture. Let's not forget about the family and the patients requests. I hope this never comes close to happening again.

Elaine Simon, RN

--------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

**From:**          Afraaz Irani <afraaz.irani@hotmail.com>
**Sent:**          Wednesday, April 04, 2012 11:31 PM
**To:**            David Koon
**Subject:**       RE: documents

Dr. Koon,

Thank you for those documents. If you could send me a copy of the memo dated 22 SEP. that would be great as well.

Thank you,
Afraaz

> From: David.Koon@uscmed.sc.edu
> To: afraaz.irani@hotmail.com
> Date: Wed, 4 Apr 2012 18:11:54 -0400
> Subject: RE: documents
>
> Afraaz-
>
> Finally got the TF 375 documents located and have attached them to this email.
>
> The 19 SEP memo you referenced was a MoR by Dr. Walsh dated 22 SEP. Per your signature on page 2, you received this on 03 OCT. I can send you another copy if you cannot locate your personal copy.
>
> Let me know if you need anything else.
>
> DK
> _____
> From: Afraaz Irani [afraaz.irani@hotmail.com]
> Sent: Friday, March 30, 2012 4:47 PM
> To: David Koon
> Subject: documents
>
> Dr. Koon,
>
> Could I get a copy of all the memorandums regarding me including regarding any of our meetings? Notably if I could get a copy of any memorandums (if there are any) regarding the following meetings: Sept. 19th 2011, Oct. 3rd 2011, and Nov. 21st 2011. Also I emailed Dr. Wood to get her memorandum, but she did not get back to me. Can you get me a copy of that? Dr. Grabowski replied saying he had nothing more to add, so I am to assume I am correct in assuming that there is no more documentation regarding the spinal patient? Also if you could furnish me with the complete set of, including nursing, accusations regarding trauma female 375 that would be great as well.
>
> Thank you,
> -Afraaz
>
> ---------------------------------------
>
> This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0711

| | |
|---|---|
| From: | David Koon <David.Koon@uscmed.sc.edu> |
| Sent: | Friday, April 06, 2012 6:07 PM |
| To: | Afraaz Irani |
| Subject: | RE: documents |
| Attachments: | Walsh 22 SEP memo.docx |

Afraaz -

Here is the final document that you requested. Please contact me if there is anything else that you need.

DK

_____
From: Afraaz Irani [afraaz.irani@hotmail.com]
Sent: Wednesday, April 04, 2012 11:31 PM
To: David Koon
Subject: RE: documents

Dr. Koon,

Thank you for those documents. If you could send me a copy of the memo dated 22 SEP. that would be great as well.

Thank you,
Afraaz

> From: David.Koon@uscmed.sc.edu
> To: afraaz.irani@hotmail.com
> Date: Wed, 4 Apr 2012 18:11:54 -0400
> Subject: RE: documents
>
> Afraaz-
>
> Finally got the TF 375 documents located and have attached them to this email.
>
> The 19 SEP memo you referenced was a MoR by Dr. Walsh dated 22 SEP. Per your signature on page 2, you received this on 03 OCT. I can send you another copy if you cannot locate your personal copy.
>
> Let me know if you need anything else.
>
> DK
> _____
> From: Afraaz Irani [afraaz.irani@hotmail.com]
> Sent: Friday, March 30, 2012 4:47 PM
> To: David Koon
> Subject: documents
>
> Dr. Koon,
>

1

USC(Irani)0782

> Could I get a copy of all the memorandums regarding me including regarding any of our meetings? Notably if I could get a copy of any memorandums (if there are any) regarding the following meetings: Sept. 19th 2011, Oct. 3rd 2011, and Nov. 21st 2011. Also I emailed Dr. Wood to get her memorandum, but she did not get back to me. Can you get me a copy of that? Dr. Grabowski replied saying he had nothing more to add, so I am to assume I am correct in assuming that there is no more documentation regarding the spinal patient? Also if you could furnish me with the complete set of, including nursing, accusations regarding trauma female 375 that would be great as well.
>
> Thank you,
> -Afraaz
>
> ---------------------------------------
>
> This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

---------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

2

USC(Irani)0783



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS∗

SEPTEMBER 22, 2011

RE: DR. AFRAAZ IRANI
(PGY-2 ORTHOPAEDIC RESIDENT)

MEMO FOR RECORD

This memo for record summarizes a meeting that Dr. Grabowski and I had with Dr. Irani on 20th of September 2011. We reviewed his progress to date over the last six months of his orthopaedic residency. At the time of his previous evaluation and scheduling it had to be postponed and so the evaluation on the 20th will serve for his evaluation of the preceding seven months. During the course of our discussion we reviewed Dr. Irani's progress overall and that specifically addressed the issues noted on the memorandum for record dated 15 August 2011.

With regards to Dr. Irani's surgical skills they are on par with his peers at this very early stage in his residency. Dr. Irani has rotated with me and I found his technical skills to be appropriate relative to wound closure and fracture fixation. He did not have the opportunity to do much with me in the area of arthroscopy. I have heard from Dr. Guy that his skills in arthroscopy are quite elementary and will require substantial growth and improvement during the course of his residency. My direct observations of his interactions with patients have been favorable. He appears to demonstrate appropriate relationships with the patients and their families while under my direct supervision. Dr. Irani demonstrates an excellent degree of interest and commitment to his own education. He carries around a small notebook while we are seeing patients in the office and if he encounters something which he is unfamiliar with he will note that for a later review. I consider this to be an excellent teaching tool. With the exceptions noted below I think that Dr. Irani's progress to date has been reasonably satisfactory.

Dr. Irani has had struggles and problems during his early phase in his orthopaedic residency. Some of these issues reflect his performance while he was a first year resident but on an orthopaedic rotation. Some of these are reflected by his behavior when he is rotating in other specialties. Some of these are noted during the first two months that he has been full-time here in the orthopaedic department. I communicated these with him during the course of our discussion. During this portion of the interview I specifically referenced the numbered topics present on the 15 August memo. With respect to point number one I am aware of the circumstances surrounding this patient's care on a firsthand basis. I had been consulted for the management of his arm injury. I am also aware of the issues surrounding the attending physician's treatment of this patient while he was in the trauma bay. I had spoken to Dr. Irani on a separate occasion about his behavior and his communication with the nurses. His central assertion is that he had a favorable relationship with the patient following his initial resuscitation. I informed him that the patient had received some sedation which also involves a certain degree of amnesia. Whether or not the patient responded to him appropriately after he was resuscitated did not in any way support proper treatment prior to that point. I also

CONTINUED

*DEPARTMENT OF ORTHOPAEDIC SURGERY*
*Two Medical Park, Suite 404, Columbia, SC 29203*
*803-434-6812, FAX 803-434-7306*

USC(Irani)0785



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

SEPTEMBER 22, 2011
RE: DR. AFRAAZ IRANI (PGY-2 ORTHOPAEDIC RESIDENT)
PAGE 2

addressed the fact that his communication with the nursing staff and that his behavior was unacceptable. With respect to points number 2, 3 and 4 regarding communication, prioritization and tardiness, he acknowledged that these have been issues in the past and he indicated his desire to improve them. With regards to point number 5, he acknowledged that his decision making was incorrect regarding the total joint patient at the VA Medical Center that Dr. Koon references in his memo. He recognizes his errors involving the patient were threefold: 1) He failed to recognize the urgency of an infection in a patient who had had a total joint replacement. 2) He did not go to evaluate the patient personally. 3) He relied on a physician with less expertise to communicate the level of urgency which unfortunately proved to be incorrect. He acknowledged that his behavior was substandard in this area.

Dr. Irani was clear and forthright in his response to my evaluation. He indicated that he understood that he had made mistakes, had shortcomings, and needed to improve his performance. There still appears to be a small gap in his level of insight. He seems to feel that some of the issues here have to do with an incorrect perception by others and not incorrect performance by him. He did, however, indicate that he wanted to work in such a fashion that he would not leave any room for misperception on the part of others.

Dr. Grabowski provided some feedback about prioritization of duties in the emergency room.

In summary, Dr. Irani has demonstrated some shortcomings and mistakes during his PGY-1 and PGY-2 years. I think that these are remediable in a straight forward fashion and I expect that he will grow as an orthopaedic resident and put these issues behind him. That is my full expectation and based on his response during our evaluation I think that he feels the same. We will be meeting with him on an ongoing basis over the next several months to review his progress to date and provide him feedback with the ultimate goal of re-evaluating him and hopefully removing him from a probationary status.

David E. Koon, Jr., M.D.
Program Director

John J. Walsh, IV., M.D.
Chair Department of Orthopaedics

JJW.09.22.11.cct.ORTHO

Reviewed & Reviewed    10/3/11
— E. Irani
(Irani).

DEPARTMENT OF ORTHOPAEDIC SURGERY
Two Medical Park, Suite 404, Columbia, SC 29203
803-434-6812, FAX 803-434-7306

USC(Irani)0786

Archive Manager Message Export                                    Page 1 of 1

| | | | |
|---|---|---|---|
| **From:** | Afraaz Irani | **Sent:** | Wed, 11 Apr 2012 09:40:11 GMT |
| **To:** | David Koon | | |
| **CC:** | Katherine Stephens | | |
| **Subject:** | RE: 10 APR 12 GMEC action | | |

Dr. Koon,

Thanks for the update. I have contacted Lin Hearne. I got your voicemail and tried to call you back this AM.

I have not received an explanation about why the use of the book money was denied. Was there an explanation of these guidelines that you could direct me toward that I may review?

Thank you,
Afraaz

> From: David.Koon@uscmed.sc.edu
> To: Afraaz.irani@gmail.com; John.Walsh@uscmed.sc.edu; Frank.Voss@uscmed.sc.edu;
Christopher.Mazoue@uscmed.sc.edu; Greg.Grabowski@uscmed.sc.edu; mcbrydea@aol.com; jhoov14@yahoo.com;
jhwood23@gmail.com; Kathy.Stephens@PalmettoHealth.org; Margie.Bodie@PalmettoHealth.org; jagdr@aol.com;
Lin.Hearne@PalmettoHealth.org; Tonya.Holmes@uscmed.sc.edu
> Date: Tue, 10 Apr 2012 17:54:18 -0400
> Subject: 10 APR 12 GMEC action
>
> Dr. Irani -
>
> The Palmetto Health Graduate Medical Education Committee met this afternoon and approved the recommendations of
the faculty regarding your dismissal from the PH Orthopaedic Residency program. Per the Dismissal of Residents policy
found in the PH Resident Manual, you are dismissed from the residency program effective immediately.
>
> Lin Hearne in the Palmetto Health Human Resources department will contact you soon for you to return to her all
Palmetto Health and Department of Orthopaedic Surgery property, including but not limited to pagers, keys, badges, etc.
She can also address any H.R. benefit questions that you may have.
>
> Per Dr. Stephens recommendations, your request for monies to acquire books is disapproved.
>
> You are reminded of your right to continue the appeals process in accordance with the Resident Grievance and Due
Process Policy found in the PH Resident Manual.
> You are again reminded that your deadline to file a grievance to committee is close of business tomorrow (April 11th).
>
> Questions should be directed to Dr. Stephens in the GME office.
>
> David Koon
>
> ---------------------------------------
>
> This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or
entity to whom it is addressed and may contain information, including health information, that is privileged, confidential,
and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified
that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have
received this e-mail in error, please notify the sender immediately and destroy the related message.

Archive Manager Message Export                                                        Page 1 of 1



| | | | |
|---|---|---|---|
| **From:** | Lin Hearne | **Sent:** | Wed, 11 Apr 2012 09:49:18 GMT |
| **To:** | Afraaz Irani | | |
| **CC:** | Katherine Stephens | | |
| **Subject:** | RE: Grievance Council | | |

Thank you for the notification. I will go ahead and start working on scheduling the committee. As soon as I have a confirmed date, I will let you know.

I will also call and follow up with you by phone.

Lin Hearne, PHR
HR Business Partner
Palmetto Health
293 Greystone Blvd
Columbia, SC 29210
(803) 296-7883

A Modern Healthcare 100 Best Places to Work in Healthcare Award Winner, 2008, 2009 & 2010

SC Chamber of Commerce Best Places to Work for 2009, 2010 & 2011

>>> Afraaz Irani <afraaz.irani@hotmail.com> 4/11/2012 9:36 AM >>>
Ms. Hearne,

I just left you a voicemail. I would like to go ahead and initiate the grievance council.

Thank you,
Afraaz

Date: Tue, 3 Apr 2012 09:21:35 -0400
From: Lin.Hearne@PalmettoHealth.org
To: afraaz.irani@hotmail.com
Subject: Fwd: Re: Grievance Council

Dr. Irani,

I did follow up with the Vice President of Human Resources and we will cancel the grievance committee for April 11th per your request. As a reminder, your 10 business day deadline to file the grievance with Human Resources is April 11th.

Please let me know if you have any further questions.

Lin Hearne, PHR
HR Business Partner
Palmetto Health
293 Greystone Blvd
Columbia, SC 29210
(803) 296-7883

A Modern Healthcare 100 Best Places to Work in Healthcare Award Winner, 2008, 2009 & 2010

SC Chamber of Commerce Best Places to Work for 2009, 2010 & 2011

Palmetto Health - 002527

Archive Manager Message Export                                      Page 1 of 3



| | | | |
|---|---|---|---|
| **From:** | John Walsh | **Sent:** | Wed, 11 Apr 2012 17:29:37 GMT |
| **To:** | Katherine Stephens; David Koon; | | |
| **Subject:** | Re: book money | | |

He did show up this afternoon and turn everything in to Paul.

Sent from my Verizon Wireless Phone

----- Reply message -----
From: "David Koon" <David.Koon@uscmed.sc.edu>
Date: Wed, Apr 11, 2012 11:48 am
Subject: book money
To: "Kathy Stephens" <kathy.stephens@palmettohealth.org>, "John Walsh" <John.Walsh@uscmed.sc.edu>

I really am at a loss for words...

I spoke with Afraaz this AM, asked him if he had any questions about my email to him or the action of the GMEC, and all he wanted to know was why his book money request got denied...

DK

**From:** Afraaz Irani [afraaz.irani@hotmail.com]
**Sent:** Wednesday, April 11, 2012 10:09 AM
**To:** Kathy Stephens
**Cc:** David Koon
**Subject:** FW: book money

Ms. Stephens,

I just got off the phone with Dr. Koon. He said to contact you for clarification about getting my books requested with my book money. Could you please provide some clarification pursuant to my email below?

Thank you,
Afraaz

**From:** Afraaz Irani [mailto:afraaz.irani@hotmail.com]
**Sent:** Thursday, April 05, 2012 9:23 AM
**To:** Carrie Jarrard
**Cc:** David Koon; John Walsh; Tonya Holmes; kathy.stephens@palmettohealth.org;
margie.bodie@palmettohealth.org
**Subject:** book money

Mr. Jarrard,

Thank you for your reply. I am a little puzzled, and hoping you can provide a little guidance as to why my request for using my educational funds was denied.

I am currently employed by Palmetto Health Richland. On page 48 of the resident manual it describes the benefits due to an employed resident, listing "education materials [including] allowances for journals, books and/or software" as one the benefits due to a resident. This same portion of the handbook makes allowances for several other benefits including, but not limited to health and dental insurance. I went ahead and checked, and it appears none of my other benefits have been similarly rescinded. Under the guidelines in the handbook, it seems I am therefore entitled to the education materials that were allocated for me at the beginning of this year.

Palmetto Health - 002544

Archive Manager Message Export                                          Page 1 of 4



| | | | |
|---|---|---|---|
| **From:** | Katherine Stephens | **Sent:** | Thu, 12 Apr 2012 15:37:40 GMT |
| **To:** | Afraaz Irani | | |
| **CC:** | David Koon | | |
| **Subject:** | Re: FW: book money | | |

Dr. Irani,

While our practice has been to reimburse residents for educational materials purchased, this is not an entitlement but rather a benefit that residents can choose to access or not. My understanding from your email is that you have not purchased the materials and were seeking clarification before doing so. Had you purchased materials while in good standing prior to your suspension, reimbursement would have been approved. Because you have not purchased these items, were under suspension at the time of request, and have been dismissed from the program, you are no longer eligible for this benefit.

Palmetto Health's human resources practices would also not allow for similar requests by any employee who was suspended. For example, had you, or any employee, asked to attend and be reimbursed for an educational conference during suspension, that request would also have been denied.

I hope this information clarifies the issue for you.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@hotmail.com> 4/11/2012 10:09 AM >>>
Ms. Stephens,

I just got off the phone with Dr. Koon. He said to contact you for clarification about getting my books requested with my book money. Could you please provide some clarification pursuant to my email below?

Thank you,
Afraaz

**From:** Afraaz Irani [mailto:afraaz.irani@hotmail.com]
**Sent:** Thursday, April 05, 2012 9:23 AM
**To:** Carrie Jarrard
**Cc:** David Koon; John Walsh; Tonya Holmes; kathy.stephens@palmettohealth.org;
margie.bodie@palmettohealth.org
**Subject:** book money

Mr. Jarrard,

Thank you for your reply. I am a little puzzled, and hoping you can provide a little guidance as to why my request for using my educational funds was denied.

Palmetto Health - 002564

I am currently employed by Palmetto Health Richland. On page 48 of the resident manual it describes the benefits due to an employed resident, listing "education materials [including] allowances for journals, books and/or software" as one the benefits due to a resident. This same portion of the handbook makes allowances for several other benefits including, but not limited to health and dental insurance. I went ahead and checked, and it appears none of my other benefits have been similarly rescinded. Under the guidelines in the handbook, it seems I am therefore entitled to the education materials that were allocated for me at the beginning of this year.

Moreover, it would seem rather odd that I, as an employed physician, may still exercise all the other benefits enumerated in the resident handbook, with the striking exception of this one item? I tried to search the resident handbook for such a provision, but was unable to find such a provision.

I have some time now and I would like to study. My livelihood and income have been stripped from me, and I would think during difficult times like these, some understanding and due process would be in order.

From reading the resident handbook, it appears that I should be entitled to the allocated education funds. If I am mistaken, please accept my sincere apologies and point me in the direction of the proper documentation so I may educate myself as to the policies. Otherwise, I have listed the books below that I would like to purchase during this time.

Thank you,

Afraaz Irani

Books:

Surgical Anatomy and Techniques to the Spine + Image bank CD-ROM

 ISBN-13: 9781416003137

($274)

Tachdjian's Pediaric Orthopaedics, 4th Edition 3-Volume Set with DVD

 ISBN-13: 9781416022213

($580)

Handbook of Fractures: 4th Edition

 ISBN-13: 9781605477602

($72)

Palmetto Health - 002565

Total is $926.

After 20% discount: $740.80

Total after 7% sales tax: $792.66

From: Carrie.Jarrard@uscmed.sc.edu
To: afraaz.irani@hotmail.com
CC: David.Koon@uscmed.sc.edu; John.Walsh@uscmed.sc.edu; Tonya.Holmes@uscmed.sc.edu
Date: Mon, 2 Apr 2012 08:25:30 -0400
Subject: RE: paycheck

Dr. Irani,

I apologize for any confusion, but I have been informed that at this time, you are suspended from use of educational funds.  If reinstated, you will again have access to these funds.  Sorry for the inconvenience and please let me know if you have any additional questions.

Carrie E. Jarrard, MBA

Business and Operations Manager

USC Dept. of Orthopaedic Surgery and Sports Medicine

(803) 434-7720 (office)

(864) 680-6718 (cell)

(803) 434-7306 (fax)

From: Afraaz Irani [mailto:afraaz.irani@hotmail.com]
Sent: Friday, March 30, 2012 1:22 PM
To: Carrie Jarrard
Subject: RE: paycheck

Hey Me. Jarrard,

Who is in charge of book money/book ordering? I spoke with the USC bookstore, since it's through the ortho department we get a 20% discount, they just need to be emailed  (weber4@mailbox.sc.edu) the titles.

I know we have $800 in book money. I wanted to purchase the following three books with my book money:

Palmetto Health - 002566

Surgical Anatomy and Techniques to the Spine + Image bank CD-ROM

ISBN-13: 9781416003137

($274)

Tachdjian's Pediaric Orthopaedics, 4th Edition 3-Volume Set with DVD

ISBN-13: 9781416022213

($580)

Handbook of Fractures: 4th Edition

ISBN-13: 9781605477602

($72)

Total is $926.

After 20% discount: $740.80

Total after 7% sales tax: $792.66

Thank you for your help.

-Afraaz

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or
entity to whom it is addressed and may contain information, including health information, that is privileged, confidential,
and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified
that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have
received this e-mail in error, please notify the sender immediately and destroy the related message.

**Katherine Stephens**

| From: | Katherine Stephens |
|---|---|
| Sent: | Monday, April 16, 2012 4:08 PM |
| To: | 'Afraaz Irani' |
| Subject: | RE: GMEC meeting |

Dr. Irani,

We will not be able to provide the requested items.  Resident issues are covered in executive session and GMEC meetings are not recorded.  You already have Dr. Koon's memo/email that provides the decision by GMEC to dismiss you from the residency program.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education & Research
ACGME Designated Institutional Official
Palmetto Health
3555 Harden Street Extension
15 Medical Park, Suite 202
Columbia, SC 29203

katherine.stephens@palmettohealth.org
Office: 803-434-6861
Fax: 803-434-4419

**From:** Afraaz Irani [mailto:afraaz.irani@hotmail.com]
**Sent:** Monday, April 16, 2012 2:26 PM
**To:** Katherine Stephens
**Subject:** GMEC meeting

Ms. Stephens,

Is there a way I could get a copy of the minutes and/or recording of the GMEC meeting from April 11th?

Thank you,
Afraaz

Palmetto Health - 001525

3:14-cv-03577-CMC    Date Filed 12/14/15    Entry Number 136-10    Page 115 of 119

| | |
|---|---|
| **From:** | Katherine Stephens <Katherine.Stephens@palmettohealth.org> |
| **Sent:** | Tuesday, April 24, 2012 9:05 AM |
| **To:** | David Koon; Lin Hearne; John Walsh |
| **Cc:** | Donna Brown; AnneMarie Hyer |
| **Subject:** | RE: Grievance Comm |

David,

Any actions throughout his residency that led up his dismissal may come up in the grievance committee mtg. I am copying Donna Brown in H.R. and Anne Marie on this email. Lin Hearne told me that Donna has been assigned to work with you, John, & me in preparing for "management" part of the grievance. Gwen Hill will have to preside as interim VP for H.R., and Lin has been assigned to assist the resident with preparation.

Donna, I had expected to see a time on my calendar for you, Drs. Koon & Walsh, and me to prepare for Monday's mtg., but Anne Marie told me that nothing has been set yet. I have asked her to contact you to get this done ASAP.

Kathy

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education & Research
ACGME Designated Institutional Official
Palmetto Health
3555 Harden Street Extension
15 Medical Park, Suite 202
Columbia, SC 29203

katherine.stephens@palmettohealth.org
Office: 803-434-6861
Fax: 803-434-4419

**From:** David Koon [mailto:David.Koon@uscmed.sc.edu]
**Sent:** Monday, April 23, 2012 1:35 PM
**To:** Katherine Stephens; AnneMarie Hyer; Lin Hearne
**Subject:** RE: Grievance Comm

Any update?

DK

**From:** David Koon
**Sent:** Tuesday, April 17, 2012 10:05 AM
**To:** Kathy.Stephens@PalmettoHealth.org; annemarie.hyer@palmettohealth.org; John Walsh; Lin.Hearne@PalmettoHealth.org
**Subject:** Grievance Comm

Kathy -

1

Just a quick question regarding the upcoming grievance hearing...

It is my understanding that Dr. Irani has requested a grievance hearing regarding the last faculty/GMEC action - specifically his dismissal from the program. That would involve the last set of remediation measures, the encounter with Dr. Grabowski's spine patient, and his encounter with the hemophiliac patient admitted for possible compartment syndrome.

The reason I bring this up is he has requested from me documentation regarding prior disciplinary actions, past patient encounters (as far back as December), and memorandums of record / emails. Are these prior actions, which he has had the opportunity to appeal, fair game for discussion at this grievance? It certianly changes the amount of my preparation for the committee meeting on the 30th.

Thanks for the help.

David


\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.
\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)1010

**AnneMarie Hyer**

| | |
|---|---|
| **From:** | Gwen Hill |
| **Sent:** | Wednesday, April 25, 2012 9:55 AM |
| **To:** | James Raymond; Katherine Stephens |
| **Subject:** | FW: Reminder - Grievance - April 30th |
| **Attachments:** | GrievanceandDueProcess20112012.pdf |

See below. We have a committee.

Thanks,

Gwen

Gwen Hill
Interim Vice President
Human Resources
Palmetto Health
PO Box 2266
Columbia, SC 29202-2266
Phone: 296-5221
Fax: 296-3363

**From:** Lin Hearne
**Sent:** Wednesday, April 25, 2012 9:34 AM
**To:** Davinder Lally; mohan8110@gmail.com; dreab2003@gmail.com; brock.zach@gmail.com; Allison.Giddings@uscmed.sc.edu
**Cc:** Gwen Hill
**Subject:** Reminder - Grievance - April 30th

Committee Members,

Thank you so much for your willingness to participate in the grievance this coming Monday, April 30th at 1:00pm in the Bagnal Board Room, Med Park 3, 2nd floor. Please arrive 10 minutes early to ensure we start on time.

The grievance policy is attached for your review, section 2 refers to the grievance committee.

Your role in this process is very important and again I appreciate your time!

Please let me know if you have any questions, otherwise, I will see you Monday.

Lin Hearne

Palmetto Health - 001522

**GRIEVANCE AND DUE PROCESS**

<u>STATEMENT OF POLICY</u>: Residents are provided a process for resolving academic and job-related complaints, to include grievances related to actions which could result in dismissal, non-renewal of a resident's agreement of appointment, non-promotion to the next level of training, or other actions that could significantly threaten a resident's intended career development, as well as complaints and grievances related to the work environment or issues related to the program or faculty.

<u>PROCEDURES</u>:

1.  <u>Grievance Steps:</u>

    1.1   A resident who has a dispute or grievance must discuss this with his/her Program Director who will make every effort to resolve the matter within five (5) business days.

    1.2   If the response is unsatisfactory to the resident, the resident must discuss the complaint or grievance with his/her Director of Education, who will make every effort to resolve the matter within five (5) business days. (If the Program Director is also the Director of Education, this step is skipped).

    1.3   If the response is unsatisfactory to the resident, the resident must immediately request a meeting with the DIO, which will be arranged by the Director of Education or his/her designee no more than ten (10) business days from the date of the request.

    1.4   The above individuals investigate and review the resident's grievance and respond with a decision in writing by the DIO to the resident within ten (10) business days from the date the meeting was held. .

    1.5   If the response is unsatisfactory to the resident, the resident may appeal through Palmetto Health Human Resources to a Dispute Resolution Committee by contacting   Human Resources within ten (10) business days from the decision of the DIO.

    1.6   If requested, Human Resources will assist the resident in preparing his/her grievance.  No attorneys will be present during any of the proceedings.

2.  <u>Grievance Committee:</u>

    2.1   The Grievance Committee proceeding will be held within fifteen (15) business days of receipt of the request by Human Resources, unless circumstances do not allow and the resident is fully informed of the circumstances. In no instance should a grievance hearing be held more than twenty (20) business days after a written request.

    2.2   Human Resources will select members of the Grievance Committee, which will be composed of two residents and three faculty members, all of whom will be selected from a program(s) other than the one from which the grievance is originating.  The Senior Vice President for Human Resources will chair the committee but will not vote on the outcome.

    2.3   In addition to the above, the Director of Education and/or the Program Director of the aggrieved resident, the DIO, the resident filing the grievance, the Human Resources employee assisting the resident in filing the grievance, if requested, and a secretary for the purpose of taking minutes will be in attendance.  The CMO may also be in attendance.

    2.4   Witnesses, other employees, written materials, or other information beneficial to either party may be requested and considered by the Committee.  All hearings will be held in executive session and will be conducted under Palmetto Health rules for resolving disputes.  The tape recording and minutes of the proceedings will be subjected to the control and disposition of the Senior Vice President for Human Resources.

Palmetto Health - 001523

2.5   All parties, except the Committee and the secretary, will be dismissed after the hearing is completed and before deliberations begin. The Committee deliberations will not be taped. Voting will be by secret ballot. The decision of the Committee is communicated to the resident immediately following the hearing through the Senior Vice President for Human Resources. A synopsis of the committee's findings is distributed in writing within five (5) business days of the hearing to the resident, Director of Education, Program Director, CMO, Senior Vice President for Human Resources or his/her designee, and the CEO.

2.6   If the resident or the DIO is not satisfied with the decision of the Grievance Committee, <u>within ten (10) business days</u> of receiving the committee's written synopsis, either may request in writing through Human Resources that the dispute be submitted to the Chief Executive Officer. The Chief Executive Officer will respond within ten (10) business days in writing providing copies to the employee, Human Resources, DIO, and CMO. The decision of the Chief Executive Officer will be final.

3.   Grievance Timelines:

3.1.  The decision to extend any deadlines will be made by an appropriate representative of Human Resources and will be made based on the extenuating circumstances.

3.2.  Approvals for a delay will be documented and communicated by e-mail or letter.

June 30, 1989
Date of Initial GMEC Approval

Signature on File
Katherine G. Stephens
Vice President, Medical Education and DIO

Signature on File
James I. Raymond, MD
CHIEF MEDICAL OFFICER

February 8, 2011
Date of Last GMEC Review