IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Afraaz R. Irani, M.D., | ) | |
| | ) | C.A. No. 3:14-cv-3577-CMC-KDW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| Palmetto Health; University of South Carolina | ) | **IN SUPPORT OF DEFENDANTS** |
| School of Medicine; David E. Koon, Jr., M.D., in | ) | **KOON AND WALSH'S MOTION** |
| his individual capacity; and John J. Walsh, IV, | ) | **FOR SUMMARY JUDGMENT** |
| M.D., in his individual capacity, | ) | **[December 2015]** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Afraaz Irani ("Irani"), a former orthopaedic surgery resident, has sued Palmetto

Health, the Sponsoring Institution of the Orthopaedic Surgery Residency Program, as well as the

University of South Carolina School of Medicine ("USC-SOM"), the educational affiliate of the

Program, and two faculty members affiliated with the Program, alleging a multitude of wrongs.

By previous Order dated June 23, 2015 (ECF #95), the Court granted Defendant Koon's motion

for judgment on the pleadings as to the by-then-Amended Complaint's ninth cause of action

titled "Substantive Due Process-42 U.S.C. § 1983" and granted Defendant Walsh's motion for

judgment on the pleadings as to all § 1983 claims asserted against him.  The Court denied the

remainder of Defendants' initial dispositive motions without prejudice pending further

discovery.

The discovery period has concluded, and Defendants are again moving for summary

judgment.  There now remain for ruling by the Court as to Defendants Koon and Walsh:  one

cause of action asserted against Defendant Walsh (Amended Complaint's seventh cause of

action alleging tortious interference with contract) and six causes of action asserted against

Defendant Koon  (Amended Complaint's seventh cause of action alleging tortious interference with contract, eighth cause of action alleging §1983 violation of procedural due process, tenth cause of action alleging §1983 First Amendment retaliation, eleventh cause of action alleging §1983 Equal Protection violation, twelfth cause of action alleging  libel *per se*, and thirteenth cause of action alleging tortious interference with contract).

## STATEMENT OF FACTS

The factual recitations of events that led to Irani's termination from the residency program are set forth in detail in the affidavits of Dr. David Koon and Dr. John Walsh. Supporting documentation referenced in their affidavits is attached to Dr. Koon's affidavit and also the affidavit of Kathryn Thomas.  The affidavits have been filed as attachments to Defendant University's motion for summary judgment (ECF #136) filed concurrently with this motion.  Defendants request that the Court read the affidavits of Dr. Koon and Dr. Walsh now. In summary form, the basic factual scenario is as follows:

Dr. Walsh is Chair and faculty member of the USC-SOM Orthopaedic Surgery Department. Dr. Koon is also a faculty member and serves as Program Director of Palmetto Health's Orthopaedic Surgery Residency Program.  Palmetto Health is the Sponsoring Institution of the Program, and USC-SOM is its educational affiliate.  As the Department Chair and as the Program Director,  Drs. Walsh and Koon serve as members of the Graduate Medical Education Committee ("GMEC") of Palmetto Health's residency programs.  Irani was a resident in the Palmetto Heath Orthopaedic Surgery Residency Program from July 1, 2010, until April 10, 2012, when the GMEC voted to terminated Irani's residency, on recommendation from the Orthopaedic Surgery faculty.  [Koon Affidavit ¶¶ 1, 5, 34; Walsh Affidavit ¶¶ 1, 2, 6, 31]

Dr. Irani was a resident in the program from July 1, 2010, until April 10, 2012.  He completed his first year of the program ("PGY-1 year").  Dr. Irani was placed on Level II

Academic Remediation from August 15, 2011, through December 1, 2011. Dr. Irani was placed on Level III Academic Remediation from December 9, 2011, until January 31, 2012. In February 2012, Dr. Irani was again placed on Level II Academic Remediation. In March 2012, Dr. Irani was again placed on Level III Academic Remediation and was suspended from clinical duties pending official action on the recommendation that he be terminated from the program. On April 10, 2012, the Graduate Medical Education Committee ("GMEC") voted to terminate Dr. Irani from the program. After the April 10, 2012 termination decision, Dr. Irani pursued an appeal to a grievance committee. Dr. Irani's grievance was heard by the resident grievance committee on April 30, 2012. The grievance committee upheld the termination decision. By letter dated June 1, 2012, Charles Beaman, CEO of Palmetto Health, notified Dr. Irani that he found the termination to be proper and that he upheld the decision of the grievance committee. [Koon and Walsh Affidavits, passim]

In May 2012, after Irani's termination and grievance hearing, Dr. Koon learned that attorney David Rothstein was threatening to file a lawsuit on behalf of Dr. Irani, and targeting Dr. Koon personally. Mr. Rothstein had previously filed suit against these same Defendants. On or about August 31, 2012, Dr. Koon learned, through legal counsel, of an email Mr. Rothstein had sent to counsel for these Defendants, again threatening litigation, this time with specific reference to Dr. Irani's attempts to enter a residency program elsewhere, and stated "I am sure you will advise your clients about their potential liability for defamation, tortious interference, and retaliation if they torpedo Dr. Irani's efforts to further his medical career." [Koon Affidavit ¶¶ 40-41 and Exs. A and B]

Dr. Koon never provided any information about Dr. Irani to any residency program. In approximately March 2013, Dr. Koon learned that Dr. Irani had been placed with a residency program. Dr. Koon was relieved because he thought that meant Dr. Irani would move on with

his life and not file a lawsuit.  [Koon Affidavit ¶¶ 42-43]

On May 28, 2013, Dr. Irani sent Dr. Koon an email ("Exhibit C" to Dr. Koon's affidavit) in which he informed Dr. Koon that he was applying for a medical license in California, and asked Dr. Koon to fill out a two-page form and mail it to the Medical Board of California.  Dr. Koon sought, obtained, and followed legal advice on the matter, and on June 4, 2013, sent documents ("Exhibit D" to Dr. Koon's affidavit) to the Medical Board of California.  Dr. Koon was trying to balance his concerns about properly performing his obligations as Program Director, being accurate in his submissions to the Medical Board of California, and avoiding a lawsuit by Dr. Irani.  [Koon Affidavit ¶¶ 44-45 and Exs. C and D]

On Monday, June 17, 2013, Dr. Koon received a letter that Dr. Irani had hand-delivered to Dr. Koon's office, in which Dr. Irani asked Dr. Koon to address some "errors" in the form he sent to the Medical Board of California on June 4, 2013.  Dr. Koon again sought, obtained, and followed legal advice on the matter, and sent documents ("Exhibit F" to Dr. Koon's affidavit) to the Medical Board of California on June 17, 2013.  At all times, Dr. Koon was trying to balance his concerns about properly performing his obligations as Program Director, being accurate in his submissions to the Medical Board of California, and avoiding a lawsuit by Dr. Irani.  [Koon Affidavit ¶ 46 and Exs. E and F]

Other than the documents attached as Exhibits D and F to Dr. Koon's affidavit, Dr. Koon has not submitted any documentation or other information to the Medical Board of California.  Dr. Koon has not submitted any documentation or other information to any other entity with whom Dr. Irani may have sought or obtained a license, residency, or employment.  [Koon Affidavit ¶ 47]

## ARGUMENT

**A.** **Irani cannot maintain a claim of tortious interference with contract.**
    **(Amended Complaint's seventh cause of action, asserted against Koon and Walsh)**

In the Amended Complaint's seventh cause of action, Irani alleges Koon and Walsh intentionally and maliciously procured a breach of Irani's Resident Agreement with Palmetto Health and an alleged contract between Palmetto Health and the ACGME that Irani contends was for his benefit. [Am. Complaint ¶¶ 79-86] With respect to the allegation of a contract between Palmetto Health and the ACGME, Defendants deny the existence or knowledge of any such contract. It is undisputed that Irani had a Resident Agreement of Appointment with Palmetto Health. [Thomas Affidavit Exs. H and I] Irani cannot establish, however, Palmetto Health breached the Resident Agreement, much less that Koon and Walsh were third parties who intentionally procured breach of the Resident Agreement. Nor can Irani establish that Koon and Walsh lacked justification for their involvement and actions in the residency program, or that they caused him damages through tortious interference.

To establish a claim of tortious interference with contract, Irani must establish: (1) the existence of a contract; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) damages. De Berry v. McCain, 275 S.C. 569, 274 S.E.2d 293 (1981). "[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful interference by third parties." Threlkeld v. Christoph, 280 S.C. 225, 227, 312 S.E.2d 14, 15 (Ct.App.1984). "Therefore, it does not protect a party to a contract from actions of the other party." Id.

In their official capacities as USC-SOM faculty employees, Drs. Walsh and Koon undertook contractual obligations, on behalf of the University and their Department's patient clinics, to Palmetto Health. Pursuant to the institutions' Affiliation Agreement and Palmetto

Health's Program Letters of Agreement with Participating Sites, the University faculty undertake obligations to Palmetto Health with respect to the residency program.  As part of the Program Letters of Agreement, Dr. Walsh agrees to supervise the faculty and residents and to refer to Palmetto Health, through Program Director Dr. Koon, any incidents that may require academic or disciplinary action.  In his role as Program Director, Dr. Koon is obligated to address resident concerns with Palmetto Health's Designated Institutional Official, Katherine Stephens.  [Koon Affidavit ¶¶ 1, 2- 5; Walsh Affidavit ¶¶ 1, 2-7; Thomas Affidavit Exs. M, N,O, P and Q]  The actions of the Program Director, and of Department Chairs and Program Site Directors who have undertaken obligations to address incidents of concern to Palmetto Health through the Program Director, cannot be considered "interference" with residents' rights.  Drs. Koon and Walsh's actions as they relate to Irani's education, training, and referral to Palmetto Health for academic remediation or suspension of clinical duties, were not interference, but rather were justified obligations pursuant to contractual agreements with Palmetto Health.  *See* De Berry, 274 S.E.2d 293.  Koon and Walsh's exercise of their legal responsibilities, even if that exercise had the consequence of adversely affecting Irani's Resident Agreement, does not afford Irani an action against Koon and Walsh for intentional interference.  Webb v. Elrod, 308 S.C. 445, 418 S.E.2d 559, 561 (Ct. App. 1992); *see also* Southern Contracting, Inc. v. H.C. Brown Constr. Co. Inc., 317 S.C. 95, 450 S.E.2d 602, 605 (Ct. App. 1994) (no factual issue exists when an actor interferes with another's contract rights if the actor is exercising an absolute right which is equal or superior to the right invaded).  "It is generally recognized that when a contract is breached by a corporation as the result of the inducement of an officer or agent of the corporation acting on behalf of the corporation and within the scope of his employment, the inducement is privileged and is not actionable."  Bradburn v. Colonial Stores, Inc., 273 S.C. 186, 188, 255 S.E.2d 453, 455 (1979).  "Thus, '[t]he actions of a principal's agent are afforded a qualified privilege from

liability for tortious interference with the principal's contract.'" Dutch Fork Development Group II, LLC v. SEL Properties, LLC, 406 S.C. 596, 605, 753 S.E.2d 840, 844 (2012) *quoting* CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 357 F.3d 375, 385 (3d Cir.2004). "'The reason for this privilege is that holding an agent liable would be like holding the principal itself liable for the tort of interfering with its own contract, instead of holding the principal liable for breach of contract.'" *Id*.; *see also* Barsoumian v. University at Buffalo, 2012 WL 930331, *9-10 (W.D.N.Y. Mar. 19, 2012) (where plaintiff had "not pointed to any action by [medical residency program's program director] in connection with the non-renewal of the employment agreement which would fall outside the scope of that authority or any evidence . . . of malice" court granted summary judgment as to plaintiff's tortious interference with contract claim against program director). Drs. Koon and Walsh cannot be held liable as "third party" interferers when they were serving as agents of the residency program.

The "particulars" of the allegations in Irani's seventh cause of action may be summarized as follows: Koon and Walsh interfered with Irani's Resident Agreement by wrongfully terminating his residency, failing to follow GMEC and ACGME policies and procedures; and failing to provide residents adequate education, supervision, and instruction. A major obstacle for Irani is that he cannot establish that Palmetto Health breached his Residency Agreement in any manner set forth in the Amended Complaint. The record is replete with evidence that Palmetto Health followed its procedures and had cause to terminate Irani's Resident Agreement. [Koon and Walsh Affidavits, passim; Thomas Affidavit Ex. T (chronological documentation of events)][1]

A second obstacle for Irani is that Koon and Walsh, both of whom are USC-SOM faculty

---

[1]Defendants incorporate Palmetto Health's summary judgment arguments as relate to Irani's allegations that Palmetto Health breached his Resident Agreement of Appointment.

members, play key roles in Palmetto Health's residency programs. It is undisputed that Palmetto

Health and USC-SOM have an Affiliation Agreement by which Palmetto Health sponsors the

Residency Program, and USC-SOM is a medical education affiliate. [Thomas Affidavit Ex. L]

Further, the Palmetto Health Residency Program has Program Letters of Agreement with USC-

SOM faculty-operated patient clinics in which residents are educated and trained. [*see, e.g.*,

Thomas Affidavit Exs. M and Q] Dr. Koon serves as the Program Director of the Palmetto

Health Orthopaedic Residency Program. Dr. Walsh is Chair of the Orthopaedic Surgery

Department and also serves as Program Site Director for the orthopaedic surgery clinics where

residents participate in educational activities and patient treatment under the supervision of

faculty physicians who report to Dr. Walsh. In their roles as Department Chair and Program

Director, Drs. Walsh and Koon also serve as members of Palmetto Health's Graduate Medical

Education Committee ["GMEC"] that governs Palmetto Health's Graduate Medical Education

programs. Thus, Drs. Walsh and Koon are agents and key participants in Palmetto Health's

residency programs and not "third parties' who can be deemed to have interfered with Irani's

participation in the residency program. [Koon Affidavit ¶¶ 1 and 3- 5; Walsh Affidavit ¶¶ 1, and

3-7] Indeed, Irani repeatedly asserts that the Residency Program is "jointly operated" by

Palmetto Health and USC-SOM.

 Moreover, the record affirmatively shows Drs. Walsh and Koon performed their

Program-affiliated responsibilities within the course and scope of their employment with USC-

SOM, a state institution. The South Carolina Tort Claims Act, S.C. Code §§ 15-78-10, *et. seq.*,

is the sole and exclusive remedy for torts committed by a governmental employee while acting

within the scope of the employee's official duties. "An employee of a governmental entity who

commits a tort while acting within the scope of his official duty is not liable therefor . . . ." S.C.

Code § 15-78-70(a). Drs. Koon and Walsh have testified in detail about their actions as

educators in their respective official roles as relates to the residency program. They have affirmed that it was never their intent to punish Irani, and they bore Irani no ill will. [Koon Affidavit ¶ 39; Walsh Affidavit ¶ 35] Thus, there was no actual malice toward Irani or an intent to harm him. Rather, their testimony and supporting evidence affirmatively shows Drs. Koon and Walsh are dedicated to their academic endeavors to educate and train promising physicians to become qualified orthopaedic surgeons. [Koon and Walsh Affidavits, passim; Thomas Affidavit Ex. T (chronological documentation of events)] Certainly any student who is academically unsuccessful may claim the teacher was mean and punitive, but there is no evidence that Drs. Koon and Walsh acted outside the normal course of academia in their efforts at addressing the undisputed concerns from various sources about Irani's performance. Drs. Koon and Walsh acted in accordance with their positions as faculty members and residency program participants, and the evidence showed they carried out their respective responsibilities and official duties in good faith in order to maintain educational and professional standards and concern for patient welfare and safety. Thus, they are entitled to immunity from suit.[2]

**B.    Irani cannot maintain a § 1983 Procedural Due Process claim against Dr. Koon.**

"Dr. Irani's eighth cause of action alleges violation of his right to procedural due process in the decision to terminate him from the Program with resulting loss of both educational opportunities and employment (regardless of the identity of the employer)." [Order, ECF No. 95,

---

[2]Defendants also reiterate their defense that the two-year statute of limitations of the Tort Claims Act bars Irani's tort claims. "The Tort Claims Act contains a general two-year statute of limitations . . . ." Joubert v. South Carolina Dep't of Soc. Servs., 341 S.C. 176, 186, 534 S.E.2d 1, 6 (Ct. App. 2000). Irani filed this lawsuit on June 13, 2014, more than two years after termination of Irani's residency. Flateau v. Harrelson, 355 S.C. 197, 207-209, 584 S.E.2d 413, 418-419 (Ct. App. 2003) ("The Tort Claims Act controls the instant case . . . the circuit court did not err in finding the Act's two-year statute of limitations barred the causes of action"); Marley v. University of South Carolina, 2010 WL 3852244, *16 (D.S.C. Aug. 20, 2010) ("Plaintiff fails to establish a claim for tortious interference with a career [and] her claims against the individual Defendants are barred by the [Tort Claims Act]."), R&R adopted by Currie, J. 2010 WL 3852175 (D.S.C. Sept. 27, 7792010).

p. 16 *citing* Am. Compl. ¶¶ 89-99]  The Amended Complaint asserts sixteen allegations of inadequacy of the process by which Irani was terminated from the residency program, and alleges Dr. Koon was responsible for the resulting deprivation of procedural due process. [*Id.*]

"[T]o succeed on his procedural due process claim, Dr. Irani must establish the following: (1) he had a liberty or a property interest; (2) of which he was deprived by Dr. Koon; (3) without due process of law."  [Order, ECF No. 95, p. 16 *citing* previous filings and Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 826 (4th Cir. 1995)]  The due process to which Irani was entitled differs based on whether he was an employee or a student participant in the residency program. [Order, ECF No. 95, p. 17 n.13]  This Court, in the matter of Yee v. Davis, C/A 3:02-0837, has previously determined that a plaintiff's employment as a resident in Palmetto Health's ophthalmology residency program was distinct from other types of "public employment."  [Yee September 6, 2002 Order (ECF #33 in that case) p. 30]  Following the guidance of the Fifth Circuit in Davis v. Mann, 882 F.2d 967 (5th Cir. 1989), this Court stated as follows:

> the primary purpose of Plaintiff's employment was to complete an academic program to become eligible for Board certification in ophthalmology.  Plaintiff's resident contract provided for a 'graduate medical educational program which includes . . . classroom and lecture sessions, patient care responsibilities, and other activities as determined by . . . [the] graduate medical education program.' *See* Plaintiff's Motion, Yee Affidavit, attachment 21 (Palmetto Health Alliance Resident Contract signed by Plaintiff on Mar. 19, 2001).  In addition, the contract required that Plaintiff abide by the requirements of the resident program.  *Id.* Plaintiff's resident contract with PHA, similar to the dental resident's contract in Davis, set forth a typical student/educational provider enrollment agreement. Even though Plaintiff's contract also furnished compensation and fringe benefits for his clinical training, Plaintiff's residency was primarily an opportunity to complete a medical education program required for academic certification in a medical surgical speciality.  Under the rationale in Davis, therefore, the procedural due process protections required here were similar to those protections provided in other academic settings, where less stringent procedural protections apply under the Fourteenth Amendment (*citing* Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78 (1978) (finding that in an academic setting, a medical student is not entitled to a formal hearing to rebut school's decision to deny her

10

graduation credit); *id*. at 96 (noting that when a school's procedures permit a meaningful exchange between officials and students and safeguard against erroneous evaluation of a student's skills, then judicial intrusions into academic decision-making should be avoided).

Yee September 6, 2002 Order pgs. 30-31; *see also* Davis, 882 F.2d 967, 974 (5th Cir. 1989)

(holding that same factors justifying "minimal procedural protections" in the Horowitz medical

school context apply with equal form to the paid residency situation); Nayak v. Pivarunas, 2011

WL 917387, *7 (W.D.N.Y. Mar. 15, 2011) ("when an institution dismisses a resident from a

medical training program for 'academic' reasons, notice and an opportunity to respond to the

institution's actions are all that is constitutionally required"); Navato v. Sletten, 560 F.2d 340,

345 (8th Cir.1997) (minimum procedural due process requires an opportunity for a hearing and

some kind of prior notice of the matter which is pending for a physician in a residency training

program). Thus, Dr. Irani's claim of alleged procedural due process violations should be

examined from the perspective of an academic setting, in which due process protections are less

stringent than with other types of "public employment."  Given these parameters, Dr, Irani

cannot provide any evidence that creates a disputed issue of material fact that he was not

provided with the required level of procedural due process.

For example, in Yee, this Court determined that in an academic setting, procedural due

process did not entitle Plaintiff to legal counsel or a representative of his choice at his grievance

hearing.  (Yee September 6, 2002 Order pgs. 29, 31, citing Henson, 719 F.2d at 73-74 (absence

of legal counsel at academic disciplinary hearing does not violate due process); *see also* Goss v.

Lopez, 419 U.S. 565, 584, 95 S. Ct. 729 (1975).  Further, there is a presumption that individuals

involved in the process are acting with honesty and integrity.  Hall v. Marion Sch. Dist. No. 2, 31

F.3d 183, 191 (4th Cir. 1994) (an administrative body is not biased simply because they have ex

parte knowledge of the dispute being adjudicated before them; rather, these administrators are

assumed to be men of conscience and intellectual discipline, capable of judging a controversy on the basis of its own circumstances); *see also* Morris v. Danville, 744 F.2d 1041, 1044 (4th Cir. 1984) (administrative decision makers are entitled to a "presumption of honesty and integrity"); United States v. Morgan, 313 U.S. 409, 61 S. Ct. 999, 1004 (1941).

The record shows Irani was provided multiple procedural due process protections through the grievance procedure of which he was aware.  Henson, 719 F.2d at 74; Goss, 419 U.S. 565; *see also* Huellmantel, 402 S.E.2d at 491, *citing* Baltimore & O. R. Co. v. United States, 298 U.S. 349 (1936), and Wolff v. McDonnell, 418 U.S. 539 (1974).  This Court in Yee reviewed Defendant Palmetto Health's policy applicable to a resident's grievance of an action and determined that the grievance procedures afforded to the plaintiff did not reflect that his termination from the residency program violated procedural due process standards.  (Yee Order p. 29, *citing* Stretten v. Wadsworth Veterans Hosp., 537 F.2d 361, 369 (9th Cir. 1976) (holding due process satisfied where terminated medical resident was provided notice of his deficiencies, an opportunity to examine the evidence against him, and the opportunity to present his side of the story)).  Specifically, this Court in Yee found that Defendant Palmetto Health's Dispute Resolution Policy and Resident Manual contained guidelines for a multi-step grievance process for a resident, and that these guidelines were afforded to Plaintiff. [Yee Order pgs. 27-29]

This Court's ultimate conclusion in Yee was that "The grievance procedures outlined above exceed constitutional due process requirements for academic dismissals." [Yee September 15, 2003 Order, p. 24 *citing* Horowitz].  As the facts in this case are indisputably similar to those in Yee, the Court should acknowledge in this case that Irani received all the process to which he was due.

More importantly, however, is that Dr. Koon is the sole defendant to Irani's procedural due process claim, and *Dr. Koon did not control Palmetto Health's grievance process.*  There is

otherwise no basis on which Irani may maintain a procedural due process claim against Dr. Koon.  Dr. Koon is entitled to qualified immunity on such a claim because there is no clearly established right at issue that Dr. Koon can be deemed to have violated.[3]  As this Court has already recognized, Courts have previously found "*lower* procedural protections are due in the context of academic (rather than disciplinary) dismissals."  [Order, ECF No. 95, p. 19 *citing* Bd. of Curators of the Univ. of Missouri v. Horowitz, 435 U.S. 78, 87-91 (1978) and Nigro v. Virginia Commonwealth University Medical College of Virginia, 2010 WL 2262539 *6 (W.D. Va. 2010)]  Given the degree of procedural due process afforded to Irani as detailed above and otherwise in Defendants' filings, Dr. Koon cannot have been expected to know his actions were a violation of Irani's right to procedural due process.

The very existence of the decision in Nigro means that the right at question in this matter was not clearly established.  *See* Wilson v. Layne, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy.").  However, Nigro is far from the only case finding a medical residency is a predominantly academic endeavor, and as such is entitled to a lesser degree of procedural due process.  *See* Davis v. Mann, 882 F.2d 967, 974 (5th Cir.1989) (" It is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification for successful completion of the program."); Shaboon v. Duncan, 252 F.3d 722, 732 (5th Cir. 2001) ("medical residents are

---

[3]Qualified immunity applies when the constitutional right alleged to have been violated is not "clearly established."  Harlow v. Fitzgerald, 457 U.S. 800, 818–19 (1982).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Preexisting law must demonstrate the unlawfulness of the act to the government official.  *Id.*  The denial of qualified immunity does not depend on the "very action in question" having been found unlawful, but it does require that "in the light of preexisting law the unlawfulness must be apparent."  *Id.*

not employees protected by the [D]ue [P]rocess [C]lause."); Fenje v. Feld, 301 F.Supp.2d 781, 801 (N.D. Ill. 2003) (finding a residency program is "primarily a learning position for which the limited due process rights afforded an academic decision about a student apply"); Allahverdi v. Regents of Univ. of New Mexico, 2006 WL 1313807, (D.N.M. Apr. 25, 2006) ("Allahverdi is entitled, as a medical resident, to the same due process rights as students receive").  Given that there is substantial authority that a residency is considered an academic position, Irani received all the process he was due, and it is not clearly established that Dr. Koon violated his constitutional rights in any manner.  Thus, Dr. Koon should be granted qualified immunity if not summary judgment.

**C.    Irani cannot maintain a § 1983 First Amendment Retaliation claim against Dr. Koon.**

"In his tenth cause of action, Dr. Irani alleges Dr. Koon deprived him of his right to free speech by terminating him from the residency program in retaliation for reporting two matters of public concern." [ECF No. 95, p. 21, *citing* Am. Compl. ¶¶ 107-17]  "Specifically, Dr. Irani alleges that he reported violations of the duty hour limitations and inadequate supervision of residents. He maintains these were matters of public concern because they impact not only the health and well-being of residents but also patient care and learning."  [Order, ECF No. 95, p. 21]

To establish a retaliation claim for exercising First Amendment rights, Irani must show: (1) his expressions which allegedly provoked the retaliatory action relate to or implicate a matter of public concern; (2) his termination deprived Dr. Irani of some valuable benefit; and (3) "but for" his protected expression, he would not have been terminated.  Goldsmith v. Baltimore, 987 F.2d 1064, 1071 (4th Cir. 1993); Botchie v. O'Dowd, 315 S.C. 130, 456 S.E.2d 403, 405 (1993), *cert. denied,* 516 U.S. 864 (1995).  Irani cannot establish that he engaged in any constitutionally protected speech and he cannot establish that, but for such speech, his residency would not have

14

been terminated.  Wagner v. Wheeler, 13 F.3d 86, 90 (4th Cir. 1993).

For speech to involve a matter of public concern, it must involve an issue of social, political, or other interest to a community.  Urofsky v. Gilmore, 216 F.3d 401, 406 (4th Cir. 2000), *cert. denied,* 531 U.S. 1070 (2001).  The essential question for the Court is one of law and focuses on "whether the public or the community is likely to be concerned with or interested in the particular expression, or whether it is more properly viewed as a private matter between employer and employee."  Edwards v. City of Goldsboro, 178 F.3d 231, 246 (4th Cir. 1999); *see also* Hall v. Marion Sch. Dist. No. 2, 860 F. Supp. 278, 287 (D.S.C. 1993), *aff'd,* 31 F.3d 183 (4th Cir. 1994) (personal grievances, complaints, and criticism are examples of speech which do not address matters of public concern); *see also* Connick v. Myers, 461 U.S. 138, 147-148, 103 S. Ct. 1684 (1983) (to determine if speech is a matter of public concern, the court must examine the form and context of the statement as revealed by the whole record and whether the employee is speaking as a citizen or about a matter of personal interest).

While Dr. Irani's alleged statements may abstractly and indirectly touch on the issues of violations of duty hour limitations and inadequate supervision of residents, his alleged statements do not implicate a matter of public concern and, at best, were his personal opinions about his belief that he *personally* was being over-worked and under-supervised.  Godon v. North Carolina Crime Control & Pub. Safety, 959 F. Supp. 284, 287-288 (E.D.N.C. 1997), *cert. denied*, 534 U.S. 813 (2001) (manner in which the plaintiff chose to communicate her concerns to her supervisor, through internal memoranda expressing private expressions of personal dissatisfaction with school policy, was not calculated to spark a public debate about discriminatory treatment and was not speech on a matter of "public concern").

This Court in the matter of Yee v. Davis, C/A 3:02-0837, held, in relation to a resident's free speech claim:

Plaintiff's statement is vague and does not draw attention to any specific problem in the ophthalmology residency program that would give rise to public debate. His statement simply does not "bring to light actual or potential wrongdoing or breach of public trust." Connick, 461 U.S. at 148. Moreover, his statement could refer to purely personal and private problems that he had as a resident or employee of PHA/USC. At the hearing, Plaintiff also conceded that he did not further discuss his concerns about the program with the ACGME Site Reviewer after the meeting. Although the court recognizes that the general public relies on ACGME accreditation for assurances as to the quality of the training provided to residents, Plaintiff's statement about the program was not likely to spark public interest as to whether PHA/USC's ophthalmology program was properly or improperly accredited.

[Yee September 6, 2002 Order p. 22]

In a case involving a medical resident who alleged her complaints about "failure to schedule medical residents work hours in accordance with the New York State Health Code is a matter of public concern," the U.S. District Court for the Western District of New York held:

Even though the public may have a concern for the number of consecutive hours a resident may work, the fact that Plaintiff's comments can be construed broadly to implicate matters of public concern does not alter the general nature of her statements. Ezekwo, 940 F.2d at 781. Given the context, form, and content of the speech, it is apparent that Plaintiff did not make these statements for the good of the public. Rather, she made them to "protect her own reputation and individual development as a doctor." Id. At the time of Plaintiff's speech, her professional reputation was on the line, and she was in danger of being put on probation. Thus, these remarks were not made for the public interest, but to justify her behavior in response to allegations of lack of professionalism and truthfulness and the possibility of probation. Plaintiff has failed to show she engaged in protected speech, thus she has not satisfied the first element of her *prima facie* case.

Nayak, 2011 WL 917387, at *11-12.

Even if Irani had made statements that touched a matter of public concern, summary judgment should still be granted to Koon because Irani cannot establish "causation," or that his statements were a "substantial" or "motivating" favor in his termination. Botchie, 456 S.E.2d at 405; Hall, 860 F. Supp. at 287; Wagner, 13 F.3d at 90; *see also* Goldsmith, 987 F.2d at 1071. Dr Koon denies knowledge of any constitutionally protected speech from Irani [Koon Affidavit ¶ 38] Without such knowledge, Koon had no reason to retaliate against Irani on that basis.

16

Johnson v. Elizabethtown, 800 F.2d 404, 406-407 (4th Cir. 1986) (finding no causation where no proof that decision makers knew of plaintiff's protected speech and only plaintiff's conjecture linked her arguably protected speech to the discharge).

Summary judgment should also be granted because the evidence shows Irani's residency would have been terminated regardless of his alleged expressions. Irani's performance issues pre-dated whatever constitutionally protected expressions he claims to have made and, further, numerous individuals who were unaware of any alleged constitutionally protected speech shared concerns about Irani's performance as a resident. *See* Wagner, 13 F.3d at 90-91 (given the extensive list of infractions and incidents of insubordination, the court declined to second guess the defendant's recommendation of the plaintiff's termination); Elizabethtown, 800 F.2d at 406-407 (the evidence overwhelmingly shows that plaintiff's discharge was based on reasons other than her arguable protected speech). Defendants have presented substantial evidence of concerns about Irani's performance from numerous sources, and there is no evidence that decisions were based on any alleged constitutionally protected speech. [Koon affidavit ¶¶ 9-32; Walsh affidavit ¶¶ 10-28); Botchie, 456 S.E.2d at 405; Wagner, 13 F.3d at 90.]

Even if Irani could establish a semblance of a First Amendment retaliation claim, Koon would be entitled to qualified immunity because the right at issue was not clearly established. As this Court has already recognized, Courts have previously dismissed claims for "First Amendment retaliation on qualified immunity grounds because there was no clear guidance on whether a resident who was also paid to provide patient services should be treated as an employee (with fewer free speech rights) or a student (with greater free speech rights) with respect to the particular speech at issue." [Order, ECF No. 95, p. 22 *citing* Syed v. Board of Trustees of Southern Illinois Univ., 2010 WL 3283008 * 5-6 (C.D. Ill. 2010)] In allowing Irani's First Amendment claim to survive a motion on the pleadings, this Court found that

despite the holding of Syed, the issue was "close enough to warrant deferral as to the second qualified immunity inquiry until after the first question is at least addressed, if not resolved, on summary judgment."  [ECF No. 95, p. 24]  Should the Court not grant Koon summary judgment on this claim, it should find Koon is entitled to qualified immunity.  The very existence of Syed means that the right at question in this matter was not clearly established.  *See* Wilson v. Layne, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy.").  Given the fact that the right Irani alleges was not clearly established, Koon should be granted qualified immunity if not summary judgment.

**D.     Irani cannot maintain a § 1983 Equal Protection claim against Dr. Koon.)**

In the Amended Complaint's eleventh cause of action, Irani alleges that, due to his "race religion, national origin, or ethnic background,"  Koon "singled [him] out for overly harsh treatment and criticism that was not provided to similarly situated individuals in the Program." [Am. Complaint ¶¶ 119-210]  In this manner, Irani alleges, Koon violated his constitutional right to Equal Protection.  [Id.]

When a plaintiff pursues "a claim for discrimination under . . . §1983 . . . pursuant to the Equal Protection Clause . . . [, the] elements of [the] claim under . . . §1983 mirror those of Title VII: A plaintiff must provide direct evidence of discriminatory treatment or proceed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). . . ."  McCray v. Pee Dee Reg'l Transp. Auth., 263 Fed. Appx. 301, 305 (4th Cir. 2008) (internal parallel citations omitted); *accord* Lightner v. City of Wilmington, N.C., 545 F.3d 260, 263 n.* (4th Cir. 2008) ("[T]he McDonnell Douglas framework applies to discrimination claims under Title VII, §1981, and §1983."); Mullen v. Princess Anne Volunteer Fire Co., Inc., 853 F.2d 1130, 1136 (4th Cir. 1988) (ruling that standard "developed in the Title VII disparate treatment context . . . is

applicable to cases, such as suits under §1981 and §1983, where proof of discriminatory intent is required"); Abasiekong v. City of Shelby, 744 F.2d 1055, 1058 (4th Cir. 1984) ("[C]laims under 42 U.S.C. §1981 and §1983 may be reviewed under the McDonnell Douglas three-step format").

Under McDonnell Douglas, Irani must first establish a *prima facie* case of unlawful discrimination. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If Irani establishes a *prima facie* case, the burden of production shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the adverse action. Gillins v. Berkeley Elec. Coop., 148 F.3d 413, 415-416 (4th Cir. 1998). Once the defendant has set forth legitimate, nondiscriminatory reasons for the adverse action, the burden shifts back to Irani to show that such reasons are pretextual or unworthy of credence. Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129-1130 (4th Cir. 1995); Williams v. Cerberonics, Inc., 871 F.2d 452, 456 n.2 (4th Cir. 1989); *citing* Burdine, 450 U.S. at 253 (the ultimate burden of persuasion remains on plaintiff to establish discrimination or a discriminatory motive).

To establish a *prima facie* case of discrimination by Koon, Irani must demonstrate that: (1) he is a member of a protected group; (2) he was qualified for his position and his performance was satisfactory; (3) despite his qualifications and performance he was terminated; and (4) individuals outside his protected class were treated more favorably than he was treated. *See* Alvarado v. Board of Trs. of Montgomery Cmty. Coll., et. al., 928 F.2d 118, 122 (4th Cir.1991).

Defendants have demonstrated substantial evidence setting forth concerns about Dr. Irani's attitude and actions throughout his residency, and concerns about patient safety, that persisted despite informal and formal remediation efforts. Koon is not the only person who was critical of Irani's performance. There was numerous sources of concern about Irani's development as a resident – including comments on Irani's evaluations from attending

physicians in other programs, concerns about Irani's actions from residents and the orthopaedic faculty, and complaints from nursing staff. There is substantial evidence that Irani was not functioning at the level expected of an orthopaedic surgery resident, that the orthopaedic surgery faculty recommended levels of remediation designed to improve Irani's performance and to help him to succeed, and that the orthopaedic faculty ultimately concluded unanimously that remediation efforts had failed and that termination was recommended. Irani attempts to overcome Defendants' assessment of his performance with his own opinion (and perhaps the opinions of others who witnessed his interactions) that his performance was on par with everyone else's. It is well established, however, that the decision-maker's perception regarding the plaintiff's performance is the relevant focus, and the perceptions and assessments of the plaintiff and other non-decisionmakers are insufficient to establish a *prima facie* case. *See* Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-961 (4th Cir. 1996), *quoting* Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); Smith v. University of N. Carolina, 632 F.2d 316, 345-46 (4th Cir. 1980) (a defendant's business decision should be given deference, especially when that decision is made within the complex world of academia).

To save his claim from dismissal, Dr. Irani may offer the affidavits he gathered from various individuals in his attempts to seek a California medical license, as evidence that those individuals felt Dr. Irani's performance as a resident was satisfactory. Neither Dr. Irani's opinion of his own performance, nor the opinions of other individuals, can establish that Dr. Irani was performing satisfactorily as a resident in the opinions of the faculty members who recommended remediation and termination from the program. It is the decision-makers' perception that remains the relevant focus. Evans at 960-961. Moreover, the speculations of individuals who were not involved in evaluating Irani's performance are unworthy of consideration when they were not involved and are merely second-guessing the opinions of

faculty and individuals who expressed concerns about Irani's performance.

Even if Irani could establish a *prima facie* case, the Defendants have articulated legitimate, nondiscriminatory reasons for their actions. *See* <u>Gillins v. Berkeley Elec. Coop.</u>, 148 F.3d 413, 416 (4th Cir. 1998); *see also* <u>EEOC v. Western Elec. Co.</u>, 713 F.2d 1011, 1014 (4th Cir. 1983). The reasons are set forth in the affidavits of Drs. Koon and Walsh and supporting documents. [See Thomas Affidavit Ex. T (chronological documentation of events)] As set forth in the presented testimony, there were unquestionably legitimate, nondiscriminatory reasons for recommending Irani's academic remediation and ultimately his termination from the residency program.

Because Defendants have articulated legitimate, nondiscriminatory reasons for their actions, it is Irani's burden to show that the stated reasons are a pretext for unlawful discrimination. To establish pretext, Irani must produce evidence that the adverse actions of which he complains were actually based on his race, national origin or religion, or that his race, national origin or religion was a determining factor. <u>Burdine</u>, 450 U.S. 248; <u>Cerberonics, Inc.</u>, 871 F.2d at 455-56; <u>Fuentes v. Perskie</u>, 32 F.3d 759, 767 (3d Cir. 1994). Irani has no such evidence. *See* <u>Mease v. Champion Int'l Corp.</u>, 76 Fair Empl. Prac. Cas. (BNA) 1727, 1731 (W.D.N.C. Feb. 11, 1998); <u>Blahut v. W.W. Grainger Inc.</u>, 65 Fair Empl. Prac. Cas. (BNA) 1858 (D. Md. Oct. 4, 1993), *aff'd,* 1994 U.S. App. LEXIS 24311 (4th Cir. Md. Sept. 8, 1994)

In <u>Sreeram v. Louisiana State Univ. Med. Ctr. Shreveport</u>, 188 F.3d 314, 319 (5th Cir. 1999), the plaintiff, a fourth-year medical resident, alleged she was discharged because of her sex and national origin in violation of Title VII. *Id.* at 316, 319. Affirming the district court's opinion, the Fifth Circuit Court of Appeals noted that the plaintiff failed to establish that she was qualified to remain in the defendant's residency program because she could not refute the bad reviews given by faculty members and she offered no evidence of a discriminatory motive. *Id.* at

319.

As in <u>Sreeram</u>, Dr. Irani cannot refute the numerous concerns expressed by various sources about his conduct, attitude, and performance.  Irani's opinion that he should not have been terminated and that other residents may have received more favorable treatment is not evidence that the Program's concerns are a pretext for race, national origin or religious discrimination.  <u>Evans</u>, 80 F.3d at 960 (a plaintiff's unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers fail to disprove [defendant's] explanation or show discrimination); *see also* <u>Cerberonics, Inc.</u>, 871 F.2d at 456; <u>Douglas v. PHH Fleetamerica Corp.</u>, 832 F. Supp. 1002, 1010 (D. Md. 1993).  Further, affidavits of praise that Irani has obtained from other sources also fail to establish pretext, as they cannot refute the numerous legitimate concerns about Irani's performance at the time of the actions at issue.

Irani points out that most of the orthopaedic surgery faculty and residents are Caucasian , and he is not.  [*cf*. Koon Affidavit ¶ 38]  Irani thus asks the Court to infer that he must have been singled out for harsh treatment because of his race, national origin, or religion, and not for any legitimate reason.  At the same time, however, Irani attempts to discredit Koon and the entire residency program on multiple grounds to suggest that the program and faculty not adequately training residents in general.  Irani has repeatedly stated that the residency program has "an unusually high attrition rate," suggesting Dr. Koon and the faculty are proud to run off the residents they have recruited and trained.  In a complaint Irani sent to the ACGME as his termination was imminent, Irani wrote:  "It is noteworthy that the program has an unusually high attrition rate:  they are trying now to get rid of a third resident over the span of about four years, a fact they seem to be proud of  (my program director emphasized this to me only six weeks into my residency.")] [Thomas Affidavit Ex. S, document "USC(Irani)0521"]  Irani thus contends the

faculty, and Dr. Koon in particular, are unjustly harsh to residents in general.

Irani's former co-resident and close friend, Dr. Harrison Goodno, has described the program, as any surgery program, as "tough." [Goodno depo. pp. 46, 56-57] Like Irani, Goodno recalls that Dr. Koon was upset with him on occasion, and was "probably was upset with...any resident." [Id. 62] Like Irani, Goodno was called before the faculty on occasion.

> If the faculty had concerns about any deficiencies that they detected they would call you first to, they would address it personally,have the chief residents address it, I don't know in which order. But if there were still deficiencies they detected, or they felt were present, they would call you in to a faculty meeting. All the faculty would be present. Upper level resident would be involved. For me it was Kenny Linley. And they would go over what they felt you needed to improve on.

[Id. 65] Dr. Goodno recalls that Dr. Koon and the rest of the faculty questioned him about whether he wanted to be a surgical resident, because his perspective and motivation had changed. [Id. 66-68] Dr. Goodno, who is Caucasian, ultimately left the orthopaedic surgery program and switched to a family practice residency program because he decided he did not want to be a surgeon and and he did not like being on call. [Id. 95-96]

Similarly, Irani points to Chad Lamoreaux, a former orthopaedic surgery resident who sued these defendants after being terminated from the residency program. Chad Lamoreaux is also Caucasion. Thus, Irani's scattershot of allegations disproves his allegation that he was singled out for harsh treatment due to discriminatory factors.

The only evidence Irani has presented of a discriminatory motive is his allegation that Dr. Koon referred to him as "Achmed the Terrorist" and suggested he might "blow the place up." Irani asks the Court to infer, without context, that such comments disparage Dr. Irani's race, national origin or religion and motivated the collective decisions to recommend his remediation

and termination.[4]  The record is replete, however, with concerns about Irani that were expressed

by various individuals.  Dr. Goodno's impression was that Irani was not well-liked by the faculty

[Goodno depo. p. 55], and from communications with Irani, that difficult relationships with

physicians outside the faculty the orthopaedic faculty as well, specifically a general surgeon and

a trauma surgeon.  [Goodno depo. pp. 46-49]  Irani would have the Court infer, not only that

Koon's motivations were discriminatory, but that all others who expressed concerns about him

were motivated by discrimination.  Irani's conclusory assertions that his race, national origin or

religion may have motivated the actions taken against him are insufficient to defeat summary

judgment.  See Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988) (plaintiff's

conclusory assertions that the defendant's state of mind and motivation are in dispute are not

enough to withstand summary judgment on discrimination claim).

It simply does not make sense that a residency program director would play a significant

role in recruiting a resident to the program only to turn around and push him out of the program

for no good reason.  The Fourth Circuit Court of Appeals and many other courts have recognized

the common sense proposition that it is extremely illogical to suggest that the same person who

hires or promotes an individual with knowledge of the individual's protected status would then

turn around and fire, demote, or otherwise discriminate against the individual a short time later

because of that status.  In this instance, Dr. Koon was among the individuals who selected Irani

---

[4]Dr. Koon has testified that there was one occasion at the prison clinic when Dr. Irani showed up sporting a beard or goatee.  One of the nurses, Fran, commented on how good he looked with the beard and Dr. Koon said "Don't tell him that.  He looks like Achmed the Terrorist."  [Koon depo. p. 236].  There is no documentation anywhere in any party's production of documents that suggests Dr. Irani took offense to the comment, or that he considered any comment to have been discriminatory, until shortly before his post-termination grievance hearing.  Irani has alleged in his pleadings that he was constantly subjected to this allegedly discriminatory epithet, but in response to interrogatories and at his deposition, Dr. Irani has been unable to describe with any level of specificity or accountability any other instance of Dr. Koon's using the phrase "Achmed the Terrorist," or any circumstances suggesting the phrase was based on Dr. Irani's race, national origin, or religion.

for an interview among many qualified candidates, highly rated Irani during his interview, and

recommended him for participation in the Orthopaedic Surgery Residency Program. [Koon

Affidavit ¶ 7]  In this situation, "there is a 'powerful inference' that [Koon] was not motivated by

discriminatory animus."  Evans v. Techs. Applications and Serv. Co., 80 F.3d 954, 959 (4th Cir.

1996), *citing and quoting* Proud v. Stone, 945 F.2d 796, 797-798 (4th Cir. 1991) ("where the

hirer and the firer are the same individual ... a strong inference exists that discrimination was not

a determining factor for the adverse action taken by the employer."), and also citing Mitchell v.

Data General Corp., 12 F.3d 1310, 1318 (4th Cir. 1993) ("employer animus in termination, but

not in hiring, would appear to be irrational").  It is highly unlikely that Koon – who in 2010 had

highly regarded and recommended Irani for participation in the residency program – was

thereafter motivated to discriminate against Irani due to his race or national origin.

Even were Irani's equal protection claim not wholly meritless, Koon is entitled to

qualified immunity on this claim because the right at issue was not clearly established.  The

Court has previously held "Dr. Koon may show an entitlement to qualified immunity on motion

for summary judgment following the close of discovery" and doing so would "depend on the

nature of any allegedly discriminatory treatment that may be supported by the evidence and the

availability of controlling case law applicable to allegations for which evidence is proffered."

[Order, ECF No. 95, p. 15]  The Court looked toward "the broad reach of the Equal Protection

clause" with citations to some of the most important cases of the civil rights era.  [Order, ECF

No. 95, p. 14-15].  However, the United States Supreme Court has recently explained that this

framing of the "clearly established" prong of qualified immunity analysis is fallacious:

> Howards contends that our cases have "settled" the rule that, "'as a general
> matter[,] the First Amendment prohibits government officials from subjecting an
> individual to retaliatory actions'" for his speech. But we have previously
> explained that the right allegedly violated must be established, "'not as a broad
> general proposition,'" but in a "particularized" sense so that the "contours" of the

right are clear to a reasonable official. Here, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause. This Court has never held that there is such a right.

Reichle v. Howards, ⸺ U.S. ⸺, 132 S.Ct. 2088, 2093-94 (2012) (citations omitted).  Given the Court's decision in Reichle, the right in question in this case should not be viewed with "such a 'high level of generality.'" Id. at n.5.  Rather, it is the specific behavior that is alleged to have taken place that the Court must analyze to determine if a reasonable official in Koon's position would have known the actions alleged would have violated Irani's rights.

The "particularized" right at issue in this case is the allegation that, due to his "race religion, national origin, or ethnic background," Koon "singled [Irani] out for overly harsh treatment and criticism that was not provided to similarly situated individuals in the Program." [Am. Complaint ¶¶ 119-210]  However, Drs. Koon and Walsh have testified that their treatment and criticism of Irani was based on Irani's deficiencies as a resident, not his race, religion, national origin or ethnic background.  [Koon Affidavit ¶ 38; Walsh Affidavit ¶ 34]  Irani cannot show that Koon was motivated by discriminatory animus when Koon was one of many individuals who found deficiencies in Irani's performance as a resident.  [Koon Affidavit ¶¶ 9-32]  It was not clearly established that Koon could not criticize a resident for legitimate performance issues that were also observed by many of his peers.  Fenje v. Feld, 398 F.3d 620, 628 (7th Cir. 2005) ("Dr. Feld's decision was reached after consultation with his peers in the anesthesiology department and was based upon a legitimate academic concern for Dr. Fenje's prospective ability to be entrusted with the care of patients. There is no evidence of spite or malignant animosity. Summary judgment dismissing this claim was appropriate.").  As the particularized right in question was not clearly established, Koon should have qualified immunity from this claim.

E.     **Irani cannot maintain a claim of libel *per se* against Dr. Koon.**

In the twelfth cause of action of his Amended Complaint, Dr. Irani asserts a claim against Dr. Koon for "Libel *Per Se*."  "In order to prove defamation, the plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  Erickson v. Jones Street Publishers, L.L.C., 368 S.C. 444, 465, 629 S.E.2d 653, 664 (2006) (citation omitted).  "Under the common law, '[l]ibel is actionable *per se* if it involves written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous.'"  *Id.* at 465-66, 664.  Whether a statement is actionable *per se* is a matter of law for the court to resolve. *Id.*  A two-year statute of limitations applies to defamation claims.  S.C. Code § 15-3-550.

The Amended Complaint alleges Dr. Koon published untrue written statements that Dr. Irani was incompetent to practice medicine, had persistent patient care issues, failed to complete remediation measures, did not provide proper patient care on at least two occasions, and had failures in several areas of competency in patient care "to third parties, including the Medical Board of California."  [Amended Complaint ¶¶ 127-33]  While the Amended Complaint suggests an allegation of publication to unspecified third parties, the only third party mentioned by name in the entirety of Dr. Irani's Amended Complaint is the Medical Board of California, and the only special damages alleged involve the denial of Dr. Irani's California medical license.  [*Id.*]  Moreover, Dr. Koon has not submitted any documentation or other information to any entity, other than the Medical Board of California, with whom Dr. Irani may have sought or obtained a license, residency, or employment.  [Koon Affidavit]

27

Dr. Irani cannot maintain a claim of libel *per se* because he specifically asked Dr. Koon to submit information to the Medical Board of California.  [Koon Affidavit ¶¶ 44-46]  Further, Dr. Irani signed a declaration specifically authorizing Dr. Koon, and all others affiliated with the residency program, to provide all requested information to the Medical Board of California.  In pertinent part, Dr. Irani's signed and notarized authorization provides:

> . . . I hereby authorize all hospitals, institutions or organizations, my references, personal physicians, employers (past, present, and future), or business and professional associates (past, present, and future), and all governmental agencies (local, state, federal, or foreign) to release to the Medical Board of California or its successors any information, files or records, including medical records, educational records . . . requested by the Board in connection with this application . . .

[Thomas Affidavit Ex. G]

Dr. Irani's signed authorization, and his requests and demands that Dr. Koon fill out forms and otherwise fully respond to the Medical Board of California's requests for information [Thomas Affidavit Ex. J], completely defeat his claim of libel *per se*.  *See, e.g.*, Martin v. Shank, 831 F.2d 1057, 1987 WL 38797, *1 (4th Cir.  Oct. 13, 1987) ("We agree with the district court that Martin authorized the release of his medical records to the Board of Law Examiners and therefore he has no action for defamation.").

Accordingly, Dr. Irani cannot establish a claim of libel *per se*, and Dr. Koon is entitled to summary judgment on the Complaint's eleventh cause of action.

**F.**    **Irani cannot maintain a tortious interference with contract claim against Dr. Koon.**

In the thirteenth cause of action of his Amended Complaint, Dr. Irani asserts a claim against Dr. Koon for "Tortious Interference with Contract."  As with his libel cause of action, Irani bases this cause of action on allegations that Koon "submitted false and defamatory comments to the Medical Board of California, causing Plaintiff's medical license in Califor'na to

be denied" and the loss of a California residency.  [Am. Complain ¶¶ 134-139]

"'The elements of a cause of action for tortious interference with contract are: (1)

existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional

procurement of its breach; (4) the absence of justification; and (5) resulting damages.'"  Dutch

Fork Development Group II, LLC v. SEL Properties, LLC, 406 S.C. 596, 604, 753 S.E.2d 840,

844 (2012) *quoting* Camp v. Springs Mortgage Corp., 310 S.C. 514, 517, 426 S.E.2d 304, 305

(1993).  Dr. Irani cannot establish Dr. Koon engaged in an unjustified and intentional

procurement of a breach of any contract Dr. Irani may have had with any third party.

As set forth above and in Dr. Koon's affidavit, Dr. Koon provided information to the

Medical Board of California, *only* at Dr. Irani's demand, request, and authorization, and only

after seeking and obtaining legal advice and wishing to avoid being sued.  Rather than an

unjustified and intentional procurement of a breach of a contract, the record shows Dr. Koon did

everything within professional and ethical bounds to be supportive of Dr. Irani's efforts to

pursue a medical career.  [*See* Koon Affidavit ¶¶ 44-46]

"Generally, there can be no finding of intentional interference with prospective

contractual relations if there is no evidence to suggest any purpose or motive by the defendant

other than the proper pursuit of its own contractual rights with a third party."  Eldeco, Inc. v.

Charleston Cty. Sch. Dist., 372 S.C. 470, 482, 642 S.E.2d 726, 732 (2007) *quoting* S.

Contracting, Inc. v. H.C. Brown Constr. Co., 317 S.C. 95, 102, 450 S.E.2d 602, 606 (Ct.

App.1994)).  As the Program Director for the residency program, Koon was obligated to

cooperate with medical boards' reasonable requests for information from the residency program.

Further, Dr. Koon was unquestionably justified in preparing the documentation about

which Irani complains because the evidence shows he did so *at Irani's own request and in*

*response to demands from Irani and his attorney.*  Dr. Irani sent the following e-mail to Margie

29

Bodie (Administrative Director of Palmetto Health's Graduate Medical Office) on June 21,

2013:

> I received an email from the California Medical Board regarding the
> recently submitted paperwork that arrived June 19th 2013. They stated
> that the letter was not clear regarding some of the dates and requested
> clarification as outlined below:
>
> 1.     A detailed signed and dated letter of explanation from the current
> program director describing the difficulty or difficulties encountered by
> [Dr. Irani] in the Orthopaedic program at Palmentto [*sic*] Health. Letter
> received on June 19, 2013 was not clear regarding dates in question.
> Please request that this documentation be sent directly to the Medical
> Board.
>
> 2.     Official documentation from the Orthopaedic program at
> Palmentto [*sic*] Health which includes a copy of the application, rotation
> evaluations, performance evaluations, probation and/or disciplinary
> documents, intervention and or diversion contracts, memos, notes to file,
> letters to resident [Dr. Irani], institutional review documents and minutes,
> and any other documentation relative to [Dr. Irani's] overall performance.
> Please request that this documentation be sent directly to the Medical
> Board.

[Thomas Affidavit Ex. J] Four days later (June 25, 2013) Irani emailed Ms. Bodie again,

demanding the above documentation be sent to the California Medical Board. [*Id.*] The same

day, Dr. Irani's attorney, David Rothstein, forwarded that email string to Kathy Helms, attorney

for Palmetto Health, stating:

> Kathy. See below e-mail string between Dr. Irani and Margie Bodie re:
> his application for licensure in California. Apparently, the paperwork
> submitted by Dr. Koon was not sufficient, and the California Medical
> Board needs some more information or has some follow-up questions.
> Please see if you can do anything to help get this process completed. Dr.
> Irani has been told that he will receive a cease and desist letter from the
> California Medical Board on July 1 if this information is not provided.
> Delay in Dr. Irani's starting another residency could put him another year
> behind in his career progression. Thank you, Dave.

[*Id.*] Ms. Helms promptly responded to Mr. Rothstein's email demand and requests as follows:

> This is tough when you have made it clear you intend to sue everyone if
> they release this information. I am out of town most of the morning but

have Irani overnight permission for the program to release each of these documents and I will see what can be done. I don't know what the problem with the dates was. The effort had been to try to best posture to give the information required without more in hopes it would be sufficient. Tell him to overnight to me a release for the program for these specific documents. Nothing will be released he does not specifically include. Again this is complicated because you have made it clear that you again intend to sue everyone. I will look for the release from Irani and work on this in the meantime.

[*Id.*]

It is thus undisputed: (1) that Irani and his attorney demanded "[a] detailed signed and dated letter of explanation from the current program director describing the difficulty or difficulties encountered by [Dr. Irani] in the Orthopaedic program at Palmentto [*sic*] Health," as requested by the California Medical Board, (2) that Irani signed an authorization for the release of the requested information, and (3) that Dr. Koon conferred and followed the advice of legal counsel in preparing the document Irani requested. [Thomas Affidavit Exs. G and J] Under the circumstances, Dr. Koon was compelled and completely justified in writing such a letter with an expectation that it would be provided to the California Medical Board, as demanded by Irani and his attorney. Further, in light of the emailed laundry list of documents that Irani demanded Margie Bodie of Palmetto Health send to the California Medical Board, the residency program was justified in sending anything in its files.[5] *See* Broach v. Carter, 399 S.C. 434, 443, 732 S.E.2d 185, 189–90 (Ct. App. 2012) (defendant must lack justification for interference with a contract in order to be liable); 86 C.J.S. Torts § 52 (2014) ("[T]he interference must be wrongful beyond the fact of the interference. In other words, only improper interference is actionable.").

---

[5]Irani previously delayed a summary judgment ruling on this claim, contending he expected to discredit Dr. Koon's prior affidavit testimony by questioning Dr. Koon and sending a subpoena to the California Medical Board. The fact remains that Dr. Koon only sent to the California Medical Board the documents he has attached to his affidavit.

## CONCLUSION

For the foregoing reasons, Defendants Koon and Walsh are entitled to summary

judgment and respectfully request that the Court enter judgment in their favor on all remaining

claims.

_____s/ Kathryn Thomas_____

Kathryn Thomas (DCID No. 5134)

Fred A. Williams (DCID No. 9934)

GIGNILLIAT, SAVITZ & BETTIS, LLP

900 Elmwood Avenue, Suite 100

Columbia, South Carolina  29201

Ph: (803) 799-9311 / Fax:  (803) 254-6951

kthomas@gsblaw.net; fwilliams@gsblaw.net

ATTORNEYS FOR DEFENDANT DAVID KOON, JR., M.D.

December 14, 2015