# Exhibit KKK

## (PART I)

**From:**       David Koon <David.Koon@uscmed.sc.edu>
**Sent:**       Wednesday, April 04, 2012 6:12 PM
**To:**         Afraaz Irani
**Subject:**    RE: documents
**Attachments:** RN Brady memo.docx; TF 375 RN memo.docx

Afraaz-

Finally got the TF 375 documents located and have attached them to this email.

The 19 SEP memo you referenced was a MoR by Dr. Walsh dated 22 SEP. Per your signature on page 2, you received this on 03 OCT. I can send you another copy if you cannot locate your personal copy.

Let me know if you need anything else.

DK

_____
From: Afraaz Irani [afraaz.irani@hotmail.com]
Sent: Friday, March 30, 2012 4:47 PM
To: David Koon
Subject: documents

Dr. Koon,

Could I get a copy of all the memorandums regarding me including regarding any of our meetings? Notably if I could get a copy of any memorandums (if there are any) regarding the following meetings: Sept. 19th 2011, Oct. 3rd 2011, and Nov. 21st 2011. Also I emailed Dr. Wood to get her memorandum, but she did not get back to me. Can you get me a copy of that? Dr. Grabowski replied saying he had nothing more to add, so I am to assume I am correct in assuming that there is no more documentation regarding the spinal patient? Also if you could furnish me with the complete set of, including nursing, accusations regarding trauma female 375 that would be great as well.

Thank you,
-Afraaz

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0777

**From:** "Marie Brady" <Marie.Brady@PalmettoHealth.org>
**Subject: Trauma F110375**
**Date:** December 7, 2011 6:18:29 PM EST
**To:** "Diane Savage" <Diane.Savage@PalmettoHealth.org>

I was just writing this E-mail to let you know that I was working in pod 5 when the pt. came in, I actually helped Elaine Simons, RN take care of the pt. from the trauma bay 2 and continued through her stay in pod 5... We both, Elaine and I were in the room and she was getting her ready to go to the OR and she became very nervous and looked like she wanted to say something but not sure how she could say it..... Elaine asked her what she was thinking about and she stated that she was very uncomfortable with the Ortho Residents that were just in her room.... She said that she has only gone to Baptist and that this was very unorganized and she was scared.. We tried to assure her that it was going to be ok but you could tell that she still felt very uncomfortable.... Elaine then left the room to speak with Diane about the way the pt. felt and I stayed with her for a little bit to see if I could calm her nerves a little by talking to her and she stated that she felt like she was just thrown around and it was very scary and she was very uncomfortable with the surgery doctors.... I then stated that I would let her nurse know and my charge Nurse at the time was Diane know and Im sure we would be  addressing the situation and she smiled and said thank you so much for everything you have done for me today. The Doctors names were: Dr. Irani and Dr. Natche... Elaine, Diane, and Arlene were at her bedside talking with her... The next thing I know is that  Dr. Jones the Attending was in the room and spoke with the family and the pt. and she felt better. When I went back in there Elaine, Diane and Arlene were with her and Diane was holding her hand and stated to her that she was in good hands.... She stated to me that she wanted to say thank you and that just talking was a big help... and to thank Elaine, Diane,  Arlene and myself for understanding and making her feel better...

Marie Brady

Fwd: trauma female 375
Arlene Vance [Arlene.Vance@PalmettoHealth.org]
Sent:Friday, December 09, 2011 11:47 AM
To:  dkoon@sc.rr.com
Cc:  brianandelaine@gmail.com; Allison Turnley [Allison.Turnley@PalmettoHealth.org]; Arlene Vance
     [Arlene.Vance@PalmettoHealth.org]; Diane Savage [Diane.Savage@PalmettoHealth.org]

Dr Koon,

Attached is Elaine's detailed account of treatment for ███████████. As you and I discussed yesterday,
I requested Dr Irani accompany me to update patient's family following the reduction as well as talk again
to Ms ██████ with family present given her valid concerns about surgery and care received.  We then
contacted the AOD, Mike Rawl, who paged Dr T Jones.  Dr Jones immediately came to the ED and talked
with Ms ██████ and her family.  He thoroughly explained all injuries, plan for care, and answered all
questions.  Following this, Ms ██████ was taken to the OR.

Reiterating Elaine's account, it was as if Drs Irani and Nathe were twisting and turning the limbs of a toy
doll instead of a human being.  Through this entire ordeal the patient was awake, oriented and fully
aware about what was going on, as well as tearful.  There were no visible or verbal compassionate efforts
by either to provide comfort or lessen her fears.

If you need any further information or clarification, please do not hesitate to email or call.  Arlene Vance,
RN

**Arlene Vance, RN, BSN**
**Assistant Nurse Manager**
**Palmetto Health Richland**
**Emergency Department**
**434-2220**


>>> Elaine Simon <brianandelaines@gmail.com> 12/9/2011 1:35 AM >>>
To whom it may concern:

I am writing this letter because I had the privilege to provide care to the patient brave ███████████,
Trauma Female 375 on Wednesday December 7, 2011. Unfortunately during her stay in the ED the
treatment provided was less than adequate and not up to Palmetto Health Richland's Policies or Standards
of Care. Ms. ███████ was involved in a head on collision with prolonged entrapment, was flown in by
Lifenet and sustained injuries which included: bilateral femur fractures, open right ankle fracture and
open left humerus fracture with dislocation of the left elbow.

My care started in the Trauma Bay with the patient to the CT scanner, back to the trauma bay for
additional x-rays, to my assigned room in the ED and ended in the block room in preparation of surgery. I
felt that overall the treatment of the patient in the Trauma bay was adequate. We were able to stabilize the
patient's blood pressure there with fluid boluses and control her pain as best we could with fentanyl. The
CT scans took longer than normal apparently there was an issue with the contrast dye but still the
patient's vital signs and pain was controlled. The patient was transported to trauma 1 for x-rays. At this
time I met with the patient's family and asked them if they had been updated by anyone. The mother and
father of the patient said, "no one had come and told them anything". It was at that time I explained the
injuries that I knew to the family and reassured them that she had stable vital signs and at that time and
we were controlling the patient's pain. I also told them there was a chance she might have to go to surgery
that same day due to the nature of the injuries but that the physicians would talk to them more about that.

USC(Irani)0779

I asked Dr Loflin to update the family and she said she couldn't till all the films were back. I asked Dr. Loflin were I could bed board the patient for and she answered with, "I can't give you an answer till all the films are back".

The problems really began happening when the orthopedic resident arrived for the consult and met the patient in the trauma bay. While we were trying to get a Foley catheter in the patient, (she desperately had to urinate). Dr. Nathe began examining the patient's right ankle by removing the splint and ace wrap in the trauma bay before even introducing herself to the patient. Blood was heavily flowing out of the patients open ankle. Bleeding had been controlled prior to removing the splint and ace wrap. Once the x-rays were completed the split was put back on and ace wrap re-applied and the patient was transferred to room 254. Shortly after the patient arrived to the ED room I became aware due that the patient's hemoglobin had dropped from 10 to 7. An order for 4 units of PRBC was obtained from Dr. Loflin and I sent a tech down to retrieve 2 units at a time. I overheard Dr. Nathe on the phone trying to get in touch with some other ortho. resident to help her with "the wash out and reduction". Apparently she got in touch with Dr. Irani. Dr Nathe asked me to gather several supplies and for the reduction of the right ankle and left elbow. I told her at that time we needed to get a consent signed. She responded "What? We are not doing a conscious sedation only a reduction". I told her that I understood that but that we still needed to obtain consent for a procedure. Dr. Nathe stated, "well I have never had to do that". I filled out the consent for with the procedures she said we were doing and left it at the patient's bedside. I gathered all the supplies and as I was coming around the corner to the room and heard Dr. Loflin tell Dr. Nathe, "just do what she says".

The patient requested that her mom be there in the room with her. I asked Dr. Nathe and she agreed it would be fine. When Dr. Irani arrived he said in front of the patient (after Dr. Nathe said it was okay) that her mom could not come back. This was all discussed at the patient's bedside.

Again I inquired about obtaining consent. Dr. Irani said, "Oh no we don't need consent for this". My consent form remained unsigned at the bedside. Dr Irani introduced himself and said to the patient, "You know you have a broken ankle right; you know your arm is broken too, right?" Ms. ▮▮▮▮▮ answered "yes". At this time the blood arrived and I could not get into the room to hang it. I said, "Hey can I get around so I can hang the blood". It was like I was invisible to Dr. Nathe and Dr. Irani. They had the C-arm blocking the end of the bed and doorway and had turned the patients bed so there was no way around to the pumps etc. Finally the Ortho Tech Toni pushed the C-arm so I could duck underneath it to get around. At this time the right ankle splint was removed and blood began gushing out of patient's ankle all over the C-arm and onto floor. Dr Irani asked me, "Can you get me chucks pads please". I responded, "I will as soon as I get this blood started". At this time the patients systolic was hovering in the 90's and she was obviously in need of pain meds. I continued to give patient the prn doses of fentanyl to control her pain during this procedure. Her blood pressure was too low to tolerate the Morphine PCA and Loflin told me to hold off. I was bolusing the PRBC's with at warmer. At this time I was basically trapped in and was able to witness the cruel treatment of this patient. Dr. Irani and Dr. Nathe began working on the ankle washing out the open bleeding fracture with NS and soaking the patient and all her linens in the process. The patient was shivering. As Dr. Nathe was working on the ankle Dr. Irani unwrapped with left humerus to begin working on it. He said, "Oh this is open?" Dr. Nathe said, "No one told me". Really you are the ortho. resident who has examined the patient and you aren't clear on her injuries. I was in complete shock that they were talking about the patient as if she couldn't hear them. She was totally awake, totally alert with tears in her eyes. Dr. Irani asked me if I would assist him with placing the patient's hand in the finger trap. I did so, but did not understand why Nathe or the tech did not. Post right ankle reduction (while looking at the fracture with the c-arm), Dr. Nathe said, "Uh look at this, that's not good". Dr. Irani said, "Can you turn it to the left a little". He said, "Well it's not going to get fixed down here". They were talking again like the patient was not there. I managed to transfuse 3 units of the PRBC's during this time and the patients BP was in the 120's. Once ortho. left the room I got extra staff

to help turn the patient to get her off the saline and blood soaked linens.

At this time I could tell the patient was worried and I asked her what was wrong. Ms. ███ told me, "I have always gone to Palmetto Baptist before and it just seems like everything here is disorganized, and I am worried about the people taking care of me". She said, "Not you two" speaking to Marie B. PCT and myself. She said, "The doctors, I am just worried I won't be able to walk again". I did the best I could to reassure the patient and make sure she was as comfortable as I could make her. I told her she was in good hands and I was sorry that it had felt disorganized. Although in my heart I couldn't blame or contest anything that she was saying. Directly following the reduction in the ER Vicki RN from the OR called saying they were ready for the patient to come to the block room and wait for surgery.

I couldn't believe it, an hour plus had gone by of pain and extensive bleeding for this patient in an ER room and the fractures were not even fixed and now the OR was ready to take the patient to surgery where all this should have been done in the first place. There the patient could have been unaware of the pain, not felt cold, not felt fear. She would have been comfortable. This is what I would have wanted for my family and friends. This is what our standards should be and what this facility is capable of. Don't physicians take an oath to first do no harm? Well what were they doing? I don't know but in my 5 years at PHR ER I have never felt so uneasy, so upset or like I had to help save the patient from what was going on.

Early on I had gotten the Charge RN, Arlene Vance and Diane Savage involved in what was happening. They were very supportive to me and made the appropriate phone calls. Before the patient went to the OR, Dr. Jones came down and explained the surgery and the injuries to the patient. The patient verbalized her understanding. The AOD, Mike was present as well. Before the patient left for surgery the surgery checklist was obtained, consent signed and 4th unit of PRBC's were hung.

My hope is that we can learn from this. Learn to work together for the patient. The Nurses are there to advocate for the patient and make sure things are done according to policy. Let's not forget we are caring for a person not just fixing bones. We need to look at the whole picture. Let's not forget about the family and the patients requests. I hope this never comes close to happening again.

Elaine Simon, RN

---------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

**From:**          David Koon <David.Koon@uscmed.sc.edu>
**Sent:**          Friday, April 06, 2012 6:07 PM
**To:**            Afraaz Irani
**Subject:**       RE: documents
**Attachments:**   Walsh 22 SEP memo.docx


Afraaz -

Here is the final document that you requested. Please contact me if there is anything else that you need.

DK
_____
From: Afraaz Irani [afraaz.irani@hotmail.com]
Sent: Wednesday, April 04, 2012 11:31 PM
To: David Koon
Subject: RE: documents

Dr. Koon,

Thank you for those documents. If you could send me a copy of the memo dated 22 SEP. that would be great as well.

Thank you,
Afraaz

> From: David.Koon@uscmed.sc.edu
> To: afraaz.irani@hotmail.com
> Date: Wed, 4 Apr 2012 18:11:54 -0400
> Subject: RE: documents
>
> Afraaz-
>
> Finally got the TF 375 documents located and have attached them to this email.
>
> The 19 SEP memo you referenced was a MoR by Dr. Walsh dated 22 SEP. Per your signature on page 2, you received this on 03 OCT. I can send you another copy if you cannot locate your personal copy.
>
> Let me know if you need anything else.
>
> DK
> _____
> From: Afraaz Irani [afraaz.irani@hotmail.com]
> Sent: Friday, March 30, 2012 4:47 PM
> To: David Koon
> Subject: documents
>
> Dr. Koon,
>

1

USC(Irani)0782

> Could I get a copy of all the memorandums regarding me including regarding any of our meetings? Notably if I could get a copy of any memorandums (if there are any) regarding the following meetings: Sept. 19th 2011, Oct. 3rd 2011, and Nov. 21st 2011. Also I emailed Dr. Wood to get her memorandum, but she did not get back to me. Can you get me a copy of that? Dr. Grabowski replied saying he had nothing more to add, so I am to assume I am correct in assuming that there is no more documentation regarding the spinal patient? Also if you could furnish me with the complete set of, including nursing, accusations regarding trauma female 375 that would be great as well.
>
> Thank you,
> -Afraaz
>
> ----------------------------------------
>
> This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.


----------------------------------------


This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0783



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

SEPTEMBER 22, 2011
RE: DR. AFRAAZ IRANI (PGY-2 ORTHOPAEDIC RESIDENT)
PAGE 2

addressed the fact that his communication with the nursing staff and that his behavior was unacceptable. With respect to points number 2, 3 and 4 regarding communication, prioritization and tardiness, he acknowledged that these have been issues in the past and he indicated his desire to improve them. With regards to point number 5, he acknowledged that his decision making was incorrect regarding the total joint patient at the VA Medical Center that Dr. Koon references in his memo. He recognizes his errors involving the patient were threefold: 1) He failed to recognize the urgency of an infection in a patient who had had a total joint replacement. 2) He did not go to evaluate the patient personally. 3) He relied on a physician with less expertise to communicate the level of urgency which unfortunately proved to be incorrect. He acknowledged that his behavior was substandard in this area.

Dr. Irani was clear and forthright in his response to my evaluation. He indicated that he understood that he had made mistakes, had shortcomings, and needed to improve his performance. There still appears to be a small gap in his level of insight. He seems to feel that some of the issues here have to do with an incorrect perception by others and not incorrect performance by him. He did, however, indicate that he wanted to work in such a fashion that he would not leave any room for misperception on the part of others.

Dr. Grabowski provided some feedback about prioritization of duties in the emergency room.

In summary, Dr. Irani has demonstrated some shortcomings and mistakes during his PGY-1 and PGY-2 years. I think that these are remediable in a straight forward fashion and I expect that he will grow as an orthopaedic resident and put these issues behind him. That is my full expectation and based on his response during our evaluation I think that he feels the same. We will be meeting with him on an ongoing basis over the next several months to review his progress to date and provide him feedback with the ultimate goal of re-evaluating him and hopefully removing him from a probationary status.

David E. Koon, Jr., M.D.
Program Director

John J. Walsh, IV., M.D.
Chair Department of Orthopaedics

JJW.09.22.11.cct.ORTHO

*Reviews + Reviewed  10/3/11*
*— F (Irani)*

DEPARTMENT OF ORTHOPAEDIC SURGERY
Two Medical Park, Suite 404, Columbia, SC 29203
803-434-6812, FAX 803-434-7306



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS»

SEPTEMBER 22, 2011                    RE:  DR. AFRAAZ IRANI
                                      (PGY-2 ORTHOPAEDIC RESIDENT)

**MEMO FOR RECORD**

This memo for record summarizes a meeting that Dr. Grabowski and I had with Dr. Irani on 20th of September 2011.  We reviewed his progress to date over the last six months of his orthopaedic residency.  At the time of his previous evaluation and scheduling it had to be postponed and so the evaluation on the 20th will serve for his evaluation of the preceding seven months.  During the course of our discussion we reviewed Dr. Irani's progress overall and that specifically addressed the issues noted on the memorandum for record dated 15 August 2011.

With regards to Dr. Irani's surgical skills they are on par with his peers at this very early stage in his residency.  Dr. Irani has rotated with me and I found his technical skills to be appropriate relative to wound closure and fracture fixation.  He did not have the opportunity to do much with me in the area of arthroscopy.  I have heard from Dr. Guy that his skills in arthroscopy are quite elementary and will require substantial growth and improvement during the course of his residency.  My direct observations of his interactions with patients have been favorable.  He appears to demonstrate appropriate relationships with the patients and their families while under my direct supervision.  Dr. Irani demonstrates an excellent degree of interest and commitment to his own education.  He carries around a small notebook while we are seeing patients in the office and if he encounters something which he is unfamiliar with he will note that for a later review.  I consider this to be an excellent teaching tool.  With the exceptions noted below I think that Dr. Irani's progress to date has been reasonably satisfactory.

Dr. Irani has had struggles and problems during his early phase in his orthopaedic residency.  Some of these issues reflect his performance while he was a first year resident but on an orthopaedic rotation. Some of these are reflected by his behavior when he is rotating in other specialties.  Some of these are noted during the first two months that he has been full-time here in the orthopaedic department.  I communicated these with him during the course of our discussion.  During this portion of the interview I specifically referenced the numbered topics present on the 15 August memo.  With respect to point number one I am aware of the circumstances surrounding this patient's care on a firsthand basis.  I had been consulted for the management of his arm injury.  I am also aware of the issues surrounding the attending physician's treatment of this patient while he was in the trauma bay.  I had spoken to Dr. Irani on a separate occasion about his behavior and his communication with the nurses.  His central assertion is that he had a favorable relationship with the patient following his initial resuscitation.  I informed him that the patient had received some sedation which also involves a certain degree of amnesia.  Whether or not the patient responded to him appropriately after he was resuscitated did not in any way support proper treatment prior to that point.  I also

CONTINUED

*DEPARTMENT OF ORTHOPAEDIC SURGERY*
Two Medical Park, Suite 404, Columbia, SC 29203
803-434-6812, FAX 803-434-7306

USC(Irani)0785



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

SEPTEMBER 22, 2011
RE: DR. AFRAAZ IRANI (PGY-2 ORTHOPAEDIC RESIDENT)
PAGE 2

addressed the fact that his communication with the nursing staff and that his behavior was unacceptable. With respect to points number 2, 3 and 4 regarding communication, prioritization and tardiness, he acknowledged that these have been issues in the past and he indicated his desire to improve them. With regards to point number 5, he acknowledged that his decision making was incorrect regarding the total joint patient at the VA Medical Center that Dr. Koon references in his memo. He recognizes his errors involving the patient were threefold: 1) He failed to recognize the urgency of an infection in a patient who had had a total joint replacement. 2) He did not go to evaluate the patient personally. 3) He relied on a physician with less expertise to communicate the level of urgency which unfortunately proved to be incorrect. He acknowledged that his behavior was substandard in this area.

Dr. Irani was clear and forthright in his response to my evaluation. He indicated that he understood that he had made mistakes, had shortcomings, and needed to improve his performance. There still appears to be a small gap in his level of insight. He seems to feel that some of the issues here have to do with an incorrect perception by others and not incorrect performance by him. He did, however, indicate that he wanted to work in such a fashion that he would not leave any room for misperception on the part of others.

Dr. Grabowski provided some feedback about prioritization of duties in the emergency room.

In summary, Dr. Irani has demonstrated some shortcomings and mistakes during his PGY-1 and PGY-2 years. I think that these are remediable in a straight forward fashion and I expect that he will grow as an orthopaedic resident and put these issues behind him. That is my full expectation and based on his response during our evaluation I think that he feels the same. We will be meeting with him on an ongoing basis over the next several months to review his progress to date and provide him feedback with the ultimate goal of re-evaluating him and hopefully removing him from a probationary status.


David E. Koon, Jr., M.D.
Program Director

John J. Walsh, IV., M.D.
Chair Department of Orthopaedics

JJW.09.22.11.cct.ORTHO

Review & Review    10/31/11
— [Irani].

DEPARTMENT OF ORTHOPAEDIC SURGERY
Two Medical Park, Suite 404, Columbia, SC 29203
803-434-6812, FAX 803-434-7306

USC(Irani)0786



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

SEPTEMBER 22, 2011                    RE:  DR. AFRAAZ IRANI
                                      (PGY-2 ORTHOPAEDIC RESIDENT)

MEMO FOR RECORD

This memo for record summarizes a meeting that Dr. Grabowski and I had with Dr. Irani
on 20th of September 2011.  We reviewed his progress to date over the last six months of
his orthopaedic residency.  At the time of his previous evaluation and scheduling it had to
be postponed and so the evaluation on the 20th will serve for his evaluation of the
preceding seven months.  During the course of our discussion we reviewed Dr. Irani's
progress overall and that specifically addressed the issues noted on the memorandum for
record dated 15 August 2011.

With regards to Dr. Irani's surgical skills they are on par with his peers at this very early
stage in his residency.  Dr. Irani has rotated with me and I found his technical skills to be
appropriate relative to wound closure and fracture fixation.  He did not have the
opportunity to do much with me in the area of arthroscopy.  I have heard from Dr. Guy
that his skills in arthroscopy are quite elementary and will require substantial growth and
improvement during the course of his residency.  My direct observations of his
interactions with patients have been favorable.  He appears to demonstrate appropriate
relationships with the patients and their families while under my direct supervision.  Dr.
Irani demonstrates an excellent degree of interest and commitment to his own education.
He carries around a small notebook while we are seeing patients in the office and if he
encounters something which he is unfamiliar with he will note that for a later review.  I
consider this to be an excellent teaching tool.  With the exceptions noted below I think
that Dr. Irani's progress to date has been reasonably satisfactory.

Dr. Irani has had struggles and problems during his early phase in his orthopaedic
residency.  Some of these issues reflect his performance while he was a first year resident
but on an orthopaedic rotation. Some of these are reflected by his behavior when he is
rotating in other specialties.  Some of these are noted during the first two months that he
has been full-time here in the orthopaedic department.  I communicated these with him
during the course of our discussion.  During this portion of the interview I specifically
referenced the numbered topics present on the 15 August memo.  With respect to point
number one I am aware of the circumstances surrounding this patient's care on a
firsthand basis.  I had been consulted for the management of his arm injury.  I am also
aware of the issues surrounding the attending physician's treatment of this patient while
he was in the trauma bay.  I had spoken to Dr. Irani on a separate occasion about his
behavior and his communication with the nurses.  His central assertion is that he had a
favorable relationship with the patient following his initial resuscitation.  I informed him
that the patient had received some sedation which also involves a certain degree of
amnesia.  Whether or not the patient responded to him appropriately after he was
resuscitated did not in any way support proper treatment prior to that point.  I also

CONTINUED

*DEPARTMENT OF ORTHOPAEDIC SURGERY*
Two Medical Park, Suite 404, Columbia, SC 29203
803-434-6812, FAX 803-434-7306

USC(Irani)0787

**From:**    David Koon <David.Koon@uscmed.sc.edu>
**Sent:**    Tuesday, April 10, 2012 5:54 PM
**To:**    Afraaz.irani@gmail.com; John Walsh; Frank R Vos
    Grabowski; mcbrydea@aol.com; jhoov14@yahoo.
    Kathy.Stephens@PalmettoHealth.org; Margie Bod
    Lin.Hearne@PalmettoHealth.org; Tonya Holmes
**Subject:**    10 APR 12 GMEC action

Dr. Irani -

The Palmetto Health Graduate Medical Education Committee met this afternoon and approved the recommendations of the faculty regarding your dismissal from the PH Orthopaedic Residency program. Per the Dismissal of Residents policy found in the PH Resident Manual, you are dismissed from the residency program effective immediately.

Lin Hearne in the Palmetto Health Human Resources department will contact you soon for you to return to her all Palmetto Health and Department of Orthopaedic Surgery property, including but not limited to pagers, keys, badges, etc. She can also address any H.R. benefit questions that you may have.

Per Dr. Stephens recommendations, your request for monies to acquire books is disapproved.

You are reminded of your right to continue the appeals process in accordance with the Resident Grievance and Due Process Policy found in the PH Resident Manual.
You are again reminded that your deadline to file a grievance to committee is close of business tomorrow (April 11th).

Questions should be directed to Dr. Stephens in the GME office.

David Koon

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0788

**From:**      David Koon <David.Koon@uscmed.sc.edu>
**Sent:**       Wednesday, August 10, 2011 2:34 PM
**To:**         Afraaz.irani@gmail.com; John Walsh
**Subject:**    FW: Fwd: Pt. ██████

Afraaz -

I'll need an explanation by the end of the day.

DK

_____

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Wednesday, August 10, 2011 10:00 AM
To: David Koon; John Walsh
Subject: Re: Fwd: Pt. ██████

John & David,

Pls. review for follow up.

Thank you,
Kathy

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research ACGME Designated Institutional Official Palmetto Health Fifteen Medical Park, Suite 202 Five Richland Medical Park Drive Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org


>>> Allison Turnley 8/9/2011 2:14 PM >>>
Please see concern below.  I do not have an email address for Dr. Walsh.

Thanks -
Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org>


>>> Edward Catalano 7/19/2011 2:46 PM >>>

1

USC(Irani)0789

Allison, This note should be forwarded to: Dr. Gretta Harper ( VP responsible for employed MDs), Dr. Walsh ( Chair of the USC Dept. of Ortho), Kathy Stephens ( VP for education ) and Cheryl Coble. Thanks, EWC

Edward W. Catalano  M.D.
VP Medical Affairs
Palmetto Health Richland Hospital
5 Richland Medical Park Drive
Columbia, SC  29203
Phone: 803 434 2819  Fax: 434 6668
e-mail: edward.catalano@palmettohealth.org

>>> Allison Turnley 7/14/2011 5:32 PM >>>
Dr. Catalano -

Please see below for information regarding a concern about an orthopedic resident and attending.  Diane refers to the resident as Dr. Orlani, however she pointed him out to me and he is actually Dr. Irani.

As a side note, I was in the trauma room before the orthopedic resident arrived, and I saw the injury to this man's arm.  It was an impressive injury.  And the patient is an elderly man, I believe in his 70s or 80s.

Please let Diane or me know if you need additional information.

Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org>


>>> Diane Savage 7/11/2011 9:39 PM >>>
Mr. ██████ came to the ED with a traumatic partial amputation of his left forearm.  His left arm was angulated, hand rotated approximately 180 degrees, muscle, bone, tendons, arteries, etc exposed.  Dr. Orlani (?) from ortho was the consulting resident.  He enter the trauma room and barely acknowledged the pt, did not introduce himself and proceeded to manipulate the fractured arm.  Myself and Mandy, along with the ED resident asked him to wait before he moved the pt's arm so we could administer pain meds.  I had to ask him twice to stop so I could give the meds.  I had the meds in my hand.  He showed no compassion for what the pt was experiencing.  I asked Dr. Orlani to speak with the patients family and he was reluctant, but finally did speak with them.  Dr. Spencer Robinson irrigated the wound with 1L of NS.  When Dr. Orlani asked if the wound had been irrigated-I stated it had been irrigated with 1L.  He stated "2" and I stated "no, 1L".  He smiled and stated "2L" and I repeated "1".  He remarked "we will say it was 2".  I stated "no, it was 1.  During the entire encounter I felt Dr. Orlani was not concerned for the pt, but more for himself and the work he had ahead of him.   When Dr. Iaquinta entered the room, he too did not introduce himself to the pt and roughly removed the dressing and splint.  The pt grimaced and moaned out in pain.  Before myself or Mandy ask about pain meds, Dr. Iaquinta grabbed the pts partially amputated extremity and twisted it to the anatomically correct position.  The pt yelled out and came about a foot off of the stretcher.  We had the means to make this pt comfortable and we instead inflicted undue pain and duress.  Dr. Iaquinta very bluntly stated to the pt "we are going to have to cut off your arm".....a total lack of compassion or explanation.   I have had many similar encounters with both of these physicians and have also heard other nurses and residents state the same.   Please feel free to contact me for any needed information.   Thanks, Diane

2

USC(Irani)0790

---------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

-----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0791

**From:** David Koon <David.Koon@uscmed.sc.edu>
**Sent:** Tuesday, December 13, 2011 7:04 PM
**To:** Afraaz.irani@gmail.com; John Walsh; Kathy.Stephens@PalmettoHealth.org; Jennifer, Wood; Michelle Wehunt
**Subject:** GMEC Meeting 13 DEC 11

Dr. Irani -

I wanted to inform you that the PH GMEC considered the recommendation of the Dept of Orthopaedic Surgery (Memorandum of Record dated 12 DEC 11) and affirmed their recommendation.

You have been placed on Level III Academic Remediation from 09 DEC 11 thru 30 JAN 12. Per the 2011-2012 PH Resident Manual, you are removed from clinical rotations and curriculum credit will be withheld.

It is unfortunate that you cancelled your initial evaluation with Dr. Michele Parnell. It is recommended that you pursue this evaluation as soon as possible.

It is suggested that you refer to the 2011-2012 PH Resident Manual for your option of appealing this decision by the GMEC (Grievance and Due Process policy).

The faculty of the Dept of Orthopaedic Surgery will meet on/about 30 JAN 12 to determine the next appropriate action.

Questions may be directed to myself or Dr. Stephens.

David Koon

------------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0792

**From:**      David Koon <David.Koon@uscmed.sc.edu>
**Sent:**      15 December, 2011 10:46 AM
**To:**        John Walsh; katherine.stephens@palmettohealth.org; Afraaz.irani@gmail.com; Jennifer, Wood
**Subject:**   Evaluation

Dr. Irani-

Per the recommendations of the Executive Committee of the GMEC, you are required to have a psychological evaluation. This evaluation is to be completed by 15 JAN 2012.  This evaluation can be completed by any of the providers listed below:

Dr. Michele Parnell
451-7600

Dr. Mark Sloan
788-1440

Dr. Monica Wright
238-5239

Failure to complete this evaluation by 15 JAN 2012 will result in termination from the residency program.

Questions can be directed to myself or the GME office.

David Koon

-----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0793

**From:**          David Koon <David.Koon@uscmed.sc.edu>
**Sent:**          Monday, March 05, 2012 2:40 PM
**To:**            Afraaz.irani@gmail.com; John Walsh; Kathy.Stephens@PalmettoHealth.org
**Subject:**       Level III remediation
**Attachments:**   Irani MoR 7-dismissal.docx

Afraaz -

Please review the attached memorandum.

I would like to have your recollection of events surrounding both patients by the end of the week.

Feel free to contact any of the faculty or Dr. Stephens if you have questions.

DK

---------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

USC(Irani)0794



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

05 MAR 12

Memorandum of Record                    Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG 11 to 01 DEC 11.

Dr. Irani was placed on Level III Academic Remediation from 09 DEC 11 to 31 JAN 12.

Dr. Irani was placed on Level II Academic Remediation beginning 06 FEB 12.

During his first month on this Level II Remediation, Dr. Irani was involved in two patient encounters that the faculty deemed below acceptable standards.

The first encounter involved a spine patient of Dr. Grabowski's. His email to me is included below for your review. Dr.s Grabowski and Voss met with Dr. Irani and discussed the situation with him on Tuesday, 28 FEB 12.

The following day Dr. Irani admitted a hemophiliac patient to the hospital. His senior resident (Dr. Wood) evaluated the patient and instructed Dr. Irani to re-evaluate the patient at 4:00 that morning. He failed to perform this examination and failed to appropriately document an evaluation earlier that morning. Upon questioning by Dr. Wood during morning rounds, he admitted to not performing this evaluation as instructed. This failure placed the patient's limb at risk. Dr. Hoover and I discussed this situation with Dr. Irani on Thursday, 01 MAR 12. He stated that he failed to follow Dr. Wood's instructions.

I have asked Dr. Irani to provide written documentation regarding the care of these two patients.

Dr. Irani has failed to demonstrate immediate and sustained improvement as required by his remediation measures. He has failed in the competencies of patient care, interpersonal skills and communication, and professionalism and the faculty is acutely concerned with our patient's safety.

It is the recommendation of the orthopaedic faculty to place Dr. Irani immediately on Level III academic remediation (effective 01 MAR 12) and suspend him from clinical duties. We will investigate these encounters thoroughly. If no reasonable explanation can be identified for his actions, the faculty will recommend to the GMEC on 10 APR 12 that Dr. Irani be dismissed from the program.

Dr. John Walsh                    Dr. David Koon              Dr. Frank Voss
Chair, Dept of Orthopaedic Surgery    Program Director          Vice-Chair, Dept of
                                                                Orthopaedic Surgery

DEPARTMENT OF SURGERY
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0795



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

Dr. Grabowski to Dr. Koon (Monday, 27 FEB 12)

"I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication."

USC(Irani)0796

**From:**      David Koon <David.Koon@uscmed.sc.edu>
**Sent:**      Tuesday, April 03, 2012 6:40 AM
**To:**        Afraaz Irani; Kathy.Stephens@PalmettoHealth.org; John Walsh;
               annemarie.hyer@palmettohealth.org
**Subject:**   RE: documents
**Attachments:**  Irani MoR 2.docx; Irani MoR 3.docx; Wood Memo Hemo Pt.docx; Grabowski email.docx

Dr. Irani -

Per your request I have reviewed the documents in question and have attached them to this email.

I'm not sure that I have a memo from 19 SEP, but will keep looking.

I have attached the memos from 03 OCT and 21 NOV.

I have also attached the emails from Dr.s Grabowski and Wood. I would remind you that these incidents were reviewed with you in detail and that you were given ample opportunity to provide your recollection of events.

As far as TF 375, I'll need to look over those documents in the next few days. I'm not sure how germane that incident is to the ongoing grievance process, so I saved that one for last. I'll get them to you by the end of the week.

If you have any further questions or requests, please feel free to contact me or Dr. Walsh. Dr. Stephens will be out for the rest of the week and Anne Marie will be available at the GME office.

DK

_____
From: Afraaz Irani [afraaz.irani@hotmail.com]
Sent: Friday, March 30, 2012 4:47 PM
To: David Koon
Subject: documents

Dr. Koon,

Could I get a copy of all the memorandums regarding me including regarding any of our meetings? Notably if I could get a copy of any memorandums (if there are any) regarding the following meetings: Sept. 19th 2011, Oct. 3rd 2011, and Nov. 21st 2011. Also I emailed Dr. Wood to get her memorandum, but she did not get back to me. Can you get me a copy of that? Dr. Grabowski replied saying he had nothing more to add, so I am to assume I am correct in assuming that there is no more documentation regarding the spinal patient? Also if you could furnish me with the complete set of, including nursing, accusations regarding trauma female 375 that would be great as well.

Thank you,
-Afraaz

------------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are

1

USC(Irani)0797

hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0798

 UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

03 OCT 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr.s John Walsh and David Koon met with Dr. Afraaz Irani on Monday, 03 OCT 11 to review the progress of his Level II Academic Remediation.

Dr. Walsh reviewed his 6 month evaluation. We then solicited his opinion on the progress of his remediation measures. We reviewed each remediation measure and provided feedback.

Dr. Irani appears to have gained some insight into his deficiencies. He has received constructive advice from Dr. Guy during his September rotation and has been working hard to improve in these areas.

Dr. Irani proceeded thru the Grievance Process as outlined in the PH Resident Manual. His appeal was denied by Kathy Stephens.

We will meet with Dr. Irani again on Monday, 07 November to review his progress.

David E. Koon, Jr., MD
Program Director

John J. Walsh, MD
Chair, Dept. of Orthopaedics

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0799



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

29 NOV 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr.s David Koon and Jennifer Wood (orthopaedic chief resident) met with Dr. Irani on Monday, 21 NOV 11 to discuss his remediation process. We had a very frank discussion with Dr. Irani regarding his remediation measures. Dr. Irani stated that he believed he was doing well and improving in all areas.

Dr. Wood had several instances where she believed Dr. Irani was still performing below his level of training. These included failures to complete assigned tasks (eg. morning patient list).

I informed Dr. Irani that his email to me regarding the completion of a delinquent narrative summary was inappropriate. (see below)  His failure to timely complete assigned tasks, as well as his sense of entitlement, was unprofessional and inappropriate.

Dr. Irani has been verbally counseled regarding inappropriate patient care during a pain management problem with one of Dr. Walsh's post-operative patients.

Dr. Irani asked about the pending recommendations of the faculty re: his remediation. I informed him that the final decision had not been finalized, but I thought that we would transition him to level I remediation. After a long sigh and a rolling of the eyes, Dr. Irani informed us that this decision would only continue his "overhead." When questioned about this statement, he informed us that he had been "documenting" his activities and that he would have to continue this process until he was "off of probation." He appeared to be completing a "log" in order to disprove allegations of tardiness.

Dr. Irani failed to properly assess and manage a patient of Dr. Koon's with post-operative wound drainage and infection after she called twice over a three day weekend (25-27 NOV 11).

Dr. Irani failed to abide by his attending surgeon's instructions during Staff clinic (28 NOV 11) and was argumentative when confronted by his chief resident.

Dr. Irani continues to display behaviors which are inappropriate and unprofessional. His progress will be re-evaluated at our next faculty meeting on Monday, 05 DEC 11. We have asked for his presence at this meeting.


David E. Koon, Jr., MD
Program Director

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0800



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

RE: VA patient
David Koon
Sent: Thursday, November 03, 2011 9:39 PM
To: Afraaz Irani [afraaz.irani@gmail.com]; jhoov14@yahoo.com; Jennifer, Wood [jhwood23@gmail.com]; John Walsh

Dr. Irani -

I am well aware of the facts surrounding this patient's care and do not need you to remind me of the details.

I'm amazed that, as the junior resident of the PH team, you feel somehow inconvenienced by having to dictate a discharge summary on a patient that you "never actually participated" in his care. I guess that I'm supposed to be thankful that you "have gone ahead and dictated the discharge summary" for me. Absolutely incredible...I can assure you that I would have NEVER in a million years sent a response like this to my program director, especially when I was in the midst of academic remediation.  I would remind you that I had asked you THREE times to get this done. Instead of saying "No sweat Dr. Koon, I'll take care of it" and getting it done, I get this dribble.

I really am at a loss for words.  Jennifer / Justin - I'm open to any suggestions.

DK

---

From: Afraaz Irani [afraaz.irani@gmail.com]
Sent: Thursday, November 03, 2011 6:24 PM
To: David Koon
Subject: VA patient

Hey Dr. Koon,

Just to follow up regarding the VA patient. That patient was transferred from the VA. Hoover did the H&P. The patient was seen by Drs. Wood and Walker. I actually never participated in the patient's care, and am not sure how I am responsible for the discharge order. The only thing I can think of is that Dr. Wood asked me to put in the discharge order. Anyways I have gone ahead and dictated the discharge summary for your review.

Thanks,
Afraaz

---

**DEPARTMENT OF SURGERY**
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0801



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

29 NOV 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr.s David Koon and Jennifer Wood (orthopaedic chief resident) met with Dr. Irani on Monday, 21 NOV 11 to discuss his remediation process. We had a very frank discussion with Dr. Irani regarding his remediation measures. Dr. Irani stated that he believed he was doing well and improving in all areas.

Dr. Wood had several instances where she believed Dr. Irani was still performing below his level of training. These included failures to complete assigned tasks (eg. morning patient list).

I informed Dr. Irani that his email to me regarding the completion of a delinquent narrative summary was inappropriate. (see below)  His failure to timely complete assigned tasks, as well as his sense of entitlement, was unprofessional and inappropriate.

Dr. Irani has been verbally counseled regarding inappropriate patient care during a pain management problem with one of Dr. Walsh's post-operative patients.

Dr. Irani asked about the pending recommendations of the faculty re: his remediation.  I informed him that the final decision had not been finalized, but I thought that we would transition him to level I remediation.  After a long sigh and a rolling of the eyes, Dr. Irani informed us that this decision would only continue his "overhead." When questioned about this statement, he informed us that he had been "documenting" his activities and that he would have to continue this process until he was "off of probation."  He appeared to be completing a "log" in order to disprove allegations of tardiness.

Dr. Irani failed to properly assess and manage a patient of Dr. Koon's with  post-operative wound drainage and infection after she called twice over a three day weekend (25-27 NOV 11).

Dr. Irani failed to abide by his attending surgeon's instructions during Staff clinic (28 NOV 11) and was argumentative when confronted by his chief resident.

Dr. Irani continues to display behaviors which are inappropriate and unprofessional. His progress will be re-evaluated at our next faculty meeting on Monday, 05 DEC 11. We have asked for his presence at this meeting.

David E. Koon, Jr., MD
Program Director

DEPARTMENT OF SURGERY
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0802



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

RE: VA patient
David Koon
Sent: Thursday, November 03, 2011 9:39 PM
To: Afraaz Irani [afraaz.irani@gmail.com]; jhoov14@yahoo.com; Jennifer, Wood [jhwood23@gmail.com]; John Walsh

Dr. Irani -

I am well aware of the facts surrounding this patient's care and do not need you to remind me of the details.

I'm amazed that, as the junior resident of the PH team, you feel somehow inconvenienced by having to dictate a discharge summary on a patient that you "never actually participated" in his care. I guess that I'm supposed to be thankful that you "have gone ahead and dictated the discharge summary" for me. Absolutely incredible...I can assure you that I would have NEVER in a million years sent a response like this to my program director, especially when I was in the midst of academic remediation.  I would remind you that I had asked you THREE times to get this done. Instead of saying "No sweat Dr. Koon, I'll take care of it" and getting it done, I get this dribble.

I really am at a loss for words.  Jennifer / Justin - I'm open to any suggestions.

DK

_____

From: Afraaz Irani [afraaz.irani@gmail.com]
Sent: Thursday, November 03, 2011 6:24 PM
To: David Koon
Subject: VA patient

Hey Dr. Koon,

Just to follow up regarding the VA patient. That patient was transferred from the VA. Hoover did the H&P. The patient was seen by Drs. Wood and Walker. I actually never participated in the patient's care, and am not sure how I am responsible for the discharge order. The only thing I can think of is that Dr. Wood asked me to put in the discharge order. Anyways I have gone ahead and dictated the discharge summary for your review.

Thanks,
Afraaz

*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203**
**803-256-2657, FAX 803-933-9545**

USC(Irani)0803

To Whom it may concern:

The following are my recollection of events in reference to the 19 y/o hemophiliac that Orthopaedics was consulted on to rule out compartment syndrome:

I was called by Dr. Irani regarding the patient. He relayed the patient's history to me and his physical exam findings. I asked him to measure the patient's compartments so that we could have an objective number of his compartment pressures. He called me back to inform me of the patient's compartment pressures. I informed him that I thought we at least needed to admit him overnight for observation and came to evaluate the patient.

The patient was very comfortable in the ER at that time. Although his leg was swollen and I had concern for development of compartment syndrome, I did not feel he had compartment syndrome at that time. Dr Koon was the attending on call that night. I called Dr. Koon on the phone and spoke with him regarding the patient. It was agreed upon that we would admit the patient to observe him and ensure his exam did not worsen and he did not develop compartment syndrome.

I finished writing my consult note. I spoke with Dr. Irani at approximately 1:15 a.m. and informed him the patient needed to be admitted, and I would like the patient checked in a few hours, and I then further clarified to give a more specific time frame of 4a.m. I left the ER where the patient was at approximately 1:15a.m. I informed Dr. Irani of my physical exam findings and also told him that if patient had worsening of symptoms that I wanted to be contacted immediately.

At around 6am that morning I went to 8 west to check again on the patient. The patient was still comfortable and had continued to improve. I sat down at the 8 west nurses' station and opened the chart to write my note. I saw that Dr. Irani's original consult note was in the chart, my consult from earlier that morning was in the chart, a consult note from another service regarding the patient's hemophilia was in the chart, and no other notes. Since I did not see a second note from Dr. Irani in the chart, I assumed he had not reevaluated him. At that time, Dr. Irani was sitting across from me at the nurses' station on 8 west and I asked him if he had seen the patient at 4am as I had asked him to. He stated, no. I asked why not. He went on the state that he was sorry, and that he had forgotten. I informed him that this type of thing was not to ever happen again. He once again stated he was sorry. I then wrote my progress note on the patient and left the floor.

Later that morning, I spoke with Dr. Koon regarding the interaction that I had with Dr. Irani. My concern was that the patient was not reevaluated by Dr. Irani, and that this could have had serious implications if the patient had developed compartment syndrome.

I am aware that Dr. Irani was questioned about this patient encounter, and he has stated that he reevaluated the patient at 2:30a.m that morning. Dr. Irani did not indicate to me that he reevaluated the patient when I spoke to him regarding the issue. At approximately 6 a.m. when I reevaluated the patient, there was no documentation in the chart by Dr. Irani regarding a reevaluation of the patient.

Sincerely,

Jennifer Wood

USC(Irani)0804

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

USC(Irani)0805

**From:**            David Koon <David.Koon@uscmed.sc.edu>
**Sent:**            Monday, September 19, 2011 11:05 AM
**To:**              Afraaz.irani@gmail.com; Michelle Wehunt; John Walsh;
                     katherine.stephens@palmettohealth.org
**Subject:**         Remediation Updates

**Follow Up Flag:**  Follow Up
**Flag Status:**     Flagged


All -

Just to keep everyone on the same page - we will be having periodic updates re: the academic remediation measures for Dr. Irani.

15 AUG 11 - Koon / Athey / Irani -  initial meeting

07 SEP 11 - Koon / Irani - meeting re: the appeal / grievance process

10 SEP 12 - Walsh / Irani - meeting re: the appeal / grievance process

19 SEP 11 - Walsh / Grabowski / Irani - scheduled 6 month evaluation (missed 22 AUG 11 due to post-call status)

03 OCT 11 (7:45 am) - progress report re: remediation measures

07 NOV 11 (7:45 am) - progress report re: remediation measures

05 DEC 11 (7:45am) - meeting with faculty re: Level II Academic Remediation status (15 AUG - 01 DEC 11)

Thanks

DKoon

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0806

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Wednesday, December 07, 2011 5:55 PM |
| **To:** | Afraaz.irani@gmail.com; John Walsh; David Koon; Kathy.Stephens@PalmettoHealth.org; Jennifer, Wood |

Dr. Irani -

In an effort to better structure your academic remediation, you are required to attend an evaluation by Dr. Michele Parnell on Monday, 12 DEC at 4:30.

Her office contact information is:

Michele Marinkovic Parnell, PHD
1620 Lady Street Suite B
Columbia, SC 29201
Phone:
(803) 451-7600
Fax Number: (803) 451-7604

Her office has requested that you bring copies of any documentation that you have regarding your remediation thus far.

David Koon

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0807

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Thursday, December 15, 2011 10:46 AM |
| **To:** | John Walsh; katherine.stephens@palmettohealth.org; Afraaz.irani@gmail.com; Jennifer, Wood |
| **Subject:** | Evaluation |

Dr. Irani-

Per the recommendations of the Executive Committee of the GMEC, you are required to have a psychological evaluation. This evaluation is to be completed by 15 JAN 2012. This evaluation can be completed by any of the providers listed below:

Dr. Michele Parnell
451-7600

Dr. Mark Sloan
788-1440

Dr. Monica Wright
238-5239

Failure to complete this evaluation by 15 JAN 2012 will result in termination from the residency program.

Questions can be directed to myself or the GME office.

David Koon

-----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

USC(Irani)0808

**From:**         David Koon <David.Koon@uscmed.sc.edu>
**Sent:**         Wednesday, March 21, 2012 4:54 PM
**To:**           Carrie Jarrard; Kathy.Stephens@PalmettoHealth.org; John Walsh
**Subject:**      Irani memo
**Attachments:**  Scan 69.PDF

FYI

Carrie - please place this in his residency file.

thanks

DK

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

USC(Irani)0809



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS®

Meeting with Dr. Greg Grabowski and Dr. Afraaz Irani

Date:  Tuesday approximately two weeks ago.

Re:  Review of the circumstances under which Dr. Irani was delayed in evaluation of a
patient with new onset weakness after a recent spine surgery while still hospitalized.

We carefully reviewed the circumstances under which Dr. Irani was called by the nurse
where she informed him that the patient had a new foot drop in the morning.  Dr. Irani's
initial response was somewhat flippant to the nurse and told her that he would come by a
little bit later.  About 1-1/2 hours later, he came by, noted some of the weakness, and then
contacted Dr. Grabowski.  The further evaluation revealed fluid collection near the area of
the surgery that proved to be a CSF leak.  A repeat surgery fortunately stopped the CSF
leak and the patient gradually improved but the patient was watched extremely cautiously
over the weekend after the decompression surgery and there was reliance on physicians to
do very sensitive neurologic testing at regular intervals.  When Dr. Irani contacted Dr.
Grabowski and told him that the muscle strength had faded to 4+/5+ there was immediate
anxiety on the part of Dr. Grabowski that the patient's problem was recurring.  Dr.
Grabowski reviewed all of these issues with Dr. Irani and wondered whether Dr. Irani had
any insight into why these situations might cause anxiety for Dr. Grabowski.  Ultimately,
Dr. Irani did admit shortcoming in terms of the his assessment and compulsiveness about
thorough patient examination but I think he failed to have any true insight into the level of
concern that we would expect that he would demonstrate in the care of a patient who was at
risk for becoming paralyzed.  It seemed that Dr. Irani's description of the events was
consistent but there failed to be recognition or demonstration of true care for the patient's
condition in this situation.  The discussion session was largely conducted by Dr. Grabowski
with response by Dr. Irani.  My sentiment and that of Dr. Grabowski was that there was a
failure of recognition of the amount of care required for an orthopedic spine patient.  There
were still concerns about the level whether Dr. Irani could meet with the standards
expected of him.

Frank R. Voss, M.D.
FRV:tlg

Cc:  David Koon, M.D.

*DEPARTMENT OF ORTHOPAEDIC SURGERY*
**Two Medical Park, Suite 404, Columbia, SC 29203**
**803-434-6812, FAX 803-434-7306**

**From:**          David Koon <David.Koon@uscmed.sc.edu>
**Sent:**          Friday, January 27, 2012 6:11 AM
**To:**            Andy T. McGown; Christopher Mazoue; Frank R Voss; jagdr@aol.com; John Walsh; Greg
                   Grabowski; jhoov14@yahoo.com; Jennifer, Wood; Kathy.Stephens@PalmettoHealth.org
**Subject:**       Remediation
**Attachments:**   MoR 6 - 2012 Remediation final.docx

Please review and edit.

Thanks

DK

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0811



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

31 JAN 12

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG 11 to 01 DEC 11.

Dr. Irani was placed on Level III Academic Remediation from 09 DEC 11 to 31 JAN 12.

Dr. Irani proceeded thru the Grievance Process in both instances and his appeal was denied at each level.

I t is the recommendation of the faculty of the orthopaedic department that Dr. Irani be placed on Level II
Academic Remediation beginning 06 FEB 12 thru 14 AUG 12.

Assessment of factors impacting resident's performance:
    Attitude of the resident
    Commitment to lifelong learning and self improvement
    Intellectual honesty with patients, colleagues, and self
    Professional ethical standards

It is our recommendation that the following remediation plan be instituted:

***Review and adhere to the Palmetto Health Standards of Behavior.***

Patient Care:
1. Communicate effectively and demonstrate caring and respectful behaviors when interacting with
        patients and their families.
 2. Make informed decisions about diagnostic and therapeutic interventions based on patient information
        and preferences, up-to-date scientific evidence, and clinical judgment.
3. Develop and carry out patient management plans.

            Remediation Plan
    Display empathy and compassion in all patient encounters.
    Discuss injuries with patients and families in laymen terms.
    Follow patient care plan set out by attending and/or senior resident.  If plan needs to be altered in
    any way, inform attending and/or senior resident immediately of changes to patient care plan.
    Read and prepare appropriately for clinics and operative cases.
    Discuss all cases preoperatively with attending.
    Discuss every consult/patient/phone call taken while on call with attending or with chief resident.
    Check out immediately if urgent; check out the next morning if not urgent.
    Orthopaedic consults :  See patient.  Evaluate patient.  Order appropriate imaging and/or other
    studies as indicated. Provide timely and appropriate management to patients, including pain
    management. Obtain consents when necessary, mark patient when necessary, prepare patient for
    OR when necessary.  Devise appropriate plan of action for care.  Then call senior resident or
    attending.

*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203**
**803-256-2657, FAX 803-933-9545**

USC(Irani)0812



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

Medical Knowledge:

1. Resident must demonstrate knowledge of established and evolving biomedical, clinical,
   epidemiological and social/behavioral sciences, as well as the application of this knowledge
   to patient care.

   Remediation Plan
   Read all assigned articles/chapters for conference.  Be prepared to have interactive
   discussion/answer questions based on the assigned reading.
   When on call over weekend, be prepared and present patients at fracture conference. Be prepared
   to discuss fracture classification, treatment options, outcomes, etc.

Systems Based Practice:

1. Identify strengths, deficiencies, and limits in one's knowledge and expertise

   Remediation Plan
   Respond to constructive criticism in an appropriate and professional way.  Admit and apologize
   for mistakes and be willing to endorse personal flaws.  Take immediate action to correct
   deficiencies.

Interpersonal and Communication Skills:
1. Communicate effectively with patients, families, and the public, as appropriate, across a broad range of
   socioeconomic and cultural backgrounds;
2. Communicate effectively with physicians, other health professionals, and health related agencies;
3. Work effectively as a member or leader of a health care team or other professional group

   Remediation Plan:
   Morning list ready by specified time daily set by chief resident.  List includes up to date labs,
   vitals, patient plans, antibiotics, UOP, drain output, etc.
   All assigned patients appropriately rounded on before morning conference.
   Present to conference room by 6:25am every morning.
   Report to OR and/or clinic immediately after conference is concluded.
   Be on time to all assigned outpatient clinics.
   Check out every day at the end of the day with chief resident regarding inpatients.
   Communicate clearly and effectively with attending, ancillary staff, peers and families.
   Respond appropriately to text messages and emails in a timely fashion.
   Perform postoperative checks on all patients operated on, or needing postoperative checks at end
   of day.
   Perform discharge or transfer summaries in a timely fashion, including patients as instructed by
   chief resident and/or attending, regardless of your involvement in the patient's care.
   Perform other duties as assigned by attending / senior resident with a good attitude.
   If holding call pager during day, keep attending informed on whereabouts when seeing
   consults/attending to call issues.
   Return phone calls, pages in timely fashion.
   Work effectively and efficiently within the patient care team, including nurses and ancillary staff.

*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203**
**803-256-2657, FAX 803-933-9545**

USC(Irani)0813



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

Professionalism:
1. Commitment to excellence and ongoing professional development

Remediation Plan:
Commit to immediate and sustained improvement in all areas listed above.

Evaluation for each competency listed above will be accomplished by direct observation and feedback from faculty, attending(s), nurses, peers, and review of patient outcomes as applicable.

Dr. Irani is required to attend individual outpatient counseling thru the Palmetto Health E-CARE with Dr. Janice McMeekin on a weekly basis. He is responsible for arranging and attending these sessions. He is responsible for providing electronic verification of these sessions within 48 hours to the Program Director.

Dr. Irani will be placed on the Total Joint service with Dr. Frank Voss beginning Monday, 06 FEB 12. He is required to arrange and attend bi-weekly meetings with Dr. Voss to review his performance. He will also arrange and attend monthly meetings with his Program Director to review the progress with his remediation measures.

Dr. Irani will be required to make up all missed call days within the remediation period. He will adhere to all duty hour restrictions per the ACGME guidelines.

These recommendations will be reviewed with Dr. Irani on 31 JAN 12 during our faculty meeting and will be forwarded to the GMEC for review / approval on 14 FEB12

**Program Director signature and date:**

_____

*Resident verification:*

I have reviewed and discussed the contents of this form with my program director and understand that immediate and sustained improvement is required. Failure to correct the deficiencies noted above may result in further action up to, and including, dismissal from the residency program. I know where to get a copy of the Palmetto Health Grievance and Due Process Policy from the Palmetto Health web site at http://residency.palmettohealth.org/documents/Graduate%20Medical%20Education/Resident%20Manual%202011-2012.pdf

**Resident signature and date:**

_____

*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545**

USC(Irani)0814

**From:**          David Koon <David.Koon@uscmed.sc.edu>
**Sent:**          Wednesday, April 25, 2012 11:15 AM
**To:**            Katherine Stephens; Lin Hearne; John Walsh; Laura Rasmussen
**Cc:**            Donna Brown; AnneMarie Hyer
**Subject:**       RE: Grievance Comm

I'll be unable to attend the preparatory meeting on Friday afternoon.

I'll try to collate the documentation and have Dr. Walsh bring it to the meeting.

DK

_____
From: Katherine Stephens [Katherine.Stephens@palmettohealth.org]
Sent: Tuesday, April 24, 2012 9:05 AM
To: David Koon; Lin Hearne; John Walsh
Cc: Donna Brown; AnneMarie Hyer
Subject: RE: Grievance Comm

David,

Any actions throughout his residency that led up his dismissal may come up in the grievance committee mtg.  I am copying Donna Brown in H.R. and Anne Marie on this email.  Lin Hearne told me that Donna has been assigned to work with you, John, & me in preparing for "management" part of the grievance.  Gwen Hill will have to preside as interim VP for H.R., and Lin has been assigned to assist the resident with preparation.

Donna, I had expected to see a time on my calendar for you, Drs. Koon & Walsh, and me to prepare for Monday's mtg., but Anne Marie told me that nothing has been set yet.  I have asked her to contact you to get this done ASAP.

Kathy

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education & Research ACGME Designated Institutional Official Palmetto Health
3555 Harden Street Extension
15 Medical Park, Suite 202
Columbia, SC 29203

katherine.stephens@palmettohealth.org
Office: 803-434-6861
Fax: 803-434-4419

From: David Koon [mailto:David.Koon@uscmed.sc.edu]
Sent: Monday, April 23, 2012 1:35 PM
To: Katherine Stephens; AnneMarie Hyer; Lin Hearne
Subject: RE: Grievance Comm

Any update?

DK

1

USC(Irani)0815

From: David Koon
Sent: Tuesday, April 17, 2012 10:05 AM
To: Kathy.Stephens@PalmettoHealth.org; annemarie.hyer@palmettohealth.org; John Walsh;
Lin.Hearne@PalmettoHealth.org
Subject: Grievance Comm

Kathy -

Just a quick question regarding the upcoming grievance hearing...

It is my understanding that Dr. Irani has requested a grievance hearing regarding the last faculty/GMEC action - specifically his dismissal from the program.  That would involve the last set of remediation measures, the encounter with Dr. Grabowski's spine patient, and his encounter with the hemophiliac patient admitted for possible compartment syndrome.

The reason I bring this up is he has requested from me documentation regarding prior disciplinary actions, past patient encounters (as far back as December), and memorandums of record / emails.  Are these prior actions, which he has had the opportunity to appeal, fair game for discussion at this grievance?  It certianly changes the amount of my preparation for the committee meeting on the 30th.

Thanks for the help.

David

---------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.  --

-------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

---------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0816

**From:** David Koon <David.Koon@uscmed.sc.edu>
**Sent:** Monday, May 07, 2012 8:07 AM
**To:** Katherine Stephens; John Walsh; Laura Rasmussen
**Cc:** Donna Brown; AnneMarie Hyer
**Subject:** Grievance Comm Additional Information

I wanted to make sure that we were all on the same page regarding the additional information requested by the committee.

This would include:
- memorandum from Dr. Walsh and I regarding deficiencies in competencies.
- final summative statement from Dr. Voss.
- final summative statement from Dr. Guy
- most recent Faculty to Resident evaluations from Dr. Guy and Dr. Voss
- email thread from Dr. Guy and Dr. Irani regarding his solicitation to implant manufacturers

The last two items have not been forwarded to Donna Brown. These are available in Laura Rasmussen's office this morning. (434-7345) 2 Med park, Ste 404.

I appreciate the help. I'll be at SCDC this morning and only available thru their phone (896-1555) or thru my pager (654-6516).

Thanks

DK

---
From: David Koon
Sent: Wednesday, April 25, 2012 11:15 AM
To: Katherine Stephens; Lin Hearne; John Walsh; Laura Rasmussen
Cc: Donna Brown; AnneMarie Hyer
Subject: RE: Grievance Comm

I'll be unable to attend the preparatory meeting on Friday afternoon.

I'll try to collate the documentation and have Dr. Walsh bring it to the meeting.

DK

---
From: Katherine Stephens [Katherine.Stephens@palmettohealth.org]
Sent: Tuesday, April 24, 2012 9:05 AM
To: David Koon; Lin Hearne; John Walsh
Cc: Donna Brown; AnneMarie Hyer
Subject: RE: Grievance Comm

David,

Any actions throughout his residency that led up his dismissal may come up in the grievance committee mtg. I am copying Donna Brown in H.R. and Anne Marie on this email. Lin Hearne told me that Donna has been assigned to work

1

with you, John, & me in preparing for "management" part of the grievance.  Gwen Hill will have to preside as interim VP for H.R., and Lin has been assigned to assist the resident with preparation.

Donna, I had expected to see a time on my calendar for you, Drs. Koon & Walsh, and me to prepare for Monday's mtg., but Anne Marie told me that nothing has been set yet.  I have asked her to contact you to get this done ASAP.

Kathy

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education & Research ACGME Designated Institutional Official Palmetto Health
3555 Harden Street Extension
15 Medical Park, Suite 202
Columbia, SC 29203

katherine.stephens@palmettohealth.org
Office: 803-434-6861
Fax: 803-434-4419

From: David Koon [mailto:David.Koon@uscmed.sc.edu]
Sent: Monday, April 23, 2012 1:35 PM
To: Katherine Stephens; AnneMarie Hyer; Lin Hearne
Subject: RE: Grievance Comm

Any update?

DK

---

From: David Koon
Sent: Tuesday, April 17, 2012 10:05 AM
To: Kathy.Stephens@PalmettoHealth.org; annemarie.hyer@palmettohealth.org; John Walsh; Lin.Hearne@PalmettoHealth.org
Subject: Grievance Comm
Kathy -

Just a quick question regarding the upcoming grievance hearing...

It is my understanding that Dr. Irani has requested a grievance hearing regarding the last faculty/GMEC action - specifically his dismissal from the program.  That would involve the last set of remediation measures, the encounter with Dr. Grabowski's spine patient, and his encounter with the hemophiliac patient admitted for possible compartment syndrome.

The reason I bring this up is he has requested from me documentation regarding prior disciplinary actions, past patient encounters (as far back as December), and memorandums of record / emails.  Are these prior actions, which he has had the opportunity to appeal, fair game for discussion at this grievance?  It certianly changes the amount of my preparation for the committee meeting on the 30th.

Thanks for the help.

David

---------------------------------------

2

USC(Irani)0818

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.  --

---------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.


----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0819

**From:** David Koon <David.Koon@uscmed.sc.edu>
**Sent:** Thursday, August 11, 2011 7:07 AM
**To:** Allison.Turnley@palmettohealth.org
**Subject:** patient encounter

Allison -

Please forward this to Diane.  I would like to know if his explanation below matches their memory of Mr. B's care.  Also, if there were others in attendance (Mandy, Dr. Robinson) I would like to have their version as well.

Thanks

David Koon

_____

From: Afraaz Irani [afraaz.irani@gmail.com]
Sent: Wednesday, August 10, 2011 6:23 PM
To: David Koon
Cc: John Walsh
Subject: Re: FW: Fwd:

Drs. Koon and Walsh.

I remeber this pleasant gentleman very well.

My first steps with all such traumatic wounds are the same. The patient had already been given fentanyl before my arrival. Therefore my first step is to inspect wound, and see his pain level before approving a possible overdose of narcotics to an 80+ year old male. Accordingly I inspected the wound first. He had some pain, then I waited for the additional dose of additional pain meds. All the manipulation was done by Iaquinto as was outlined in the prior email

I did introduce myself to the patient. My back was to the nurses, so not sure if they heard me. It is true that I can mumble and so that cannot be clear. Indeed the nurse here does not know the correct pronunciation of my name so I can work on better enunciation when introduction myself

I spoke with Iaquinto in the trauma bay. I called and he told me to stay at bedside he is coming down directly. The admission plan, everything was unknown, and I was instructed to say at bedside, accordingly I did not feel it appropriate to talk to the family until he had arrived as I was instructed.

Often in the setting of a traumatic injury, when the orthpaedist arrived,  he/she is expected to immediately  talk to family. In that situation I am less likely to jump the gun and speak to family, since it is important to wait a few extra minutes to get details correct, since this could potentially be a major surgery/life altering event.

It was a  regrettable decision, but one that had to be done. Many of the staff were justifiably horrified at this, and wanted us to do more. However this was medically the correct decision. Indeed he had a heart attack during the procedure, and passed away a few days later. It is clear he could have not withstood a salvage procedure to his arm.

The patient was very thankful throughout and when I saw him on the floor we had great interactions. He remebered me from the trauma bay and shook my hand and thanked me again (although truth be told he was a real gentleman). I really did enjoy my time with him. It is a shame that he is no longer with us.

USC(Irani)0820

I remember we talked about how he was still able to do what he loved (metal/wood working) in his 80s. He was thankful that he was still there, and we talked about his family and how his children work with him in the shop. I do remeber Mr ███, and wish he was still with us.

Hope that clarifies things.

Thanks,
Afraaz


On Wed, Aug 10, 2011 at 2:34 PM, David Koon <David.Koon@uscmed.sc.edu<mailto:David.Koon@uscmed.sc.edu>> wrote:
Afraaz -

I'll need an explanation by the end of the day.

DK
_____
From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Wednesday, August 10, 2011 10:00 AM
To: David Koon; John Walsh
Subject: Re: Fwd: Pt. ███

John & David,

Pls. review for follow up.

Thank you,
Kathy

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research ACGME Designated Institutional Official Palmetto Health Fifteen Medical Park, Suite 202 Five Richland Medical Park Drive Columbia, SC  29203

803-434-6861<tel:803-434-6861> or 803-434-4476<tel:803-434-4476>

katherine.stephens@palmettohealth.org<mailto:katherine.stephens@palmettohealth.org>


>>> Allison Turnley 8/9/2011 2:14 PM >>>
Please see concern below.  I do not have an email address for Dr. Walsh.

Thanks -
Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376

USC(Irani)0821

Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org><mailto:Allison.Turnley@palmettohea lth.org<mailto:Allison.Turnley@palmettohealth.org>>


>>> Edward Catalano 7/19/2011 2:46 PM >>>
Allison, This note should be forwarded to: Dr. Gretta Harper ( VP responsible for employed MDs), Dr. Walsh ( Chair of the USC Dept. of Ortho), Kathy Stephens ( VP for education ) and Cheryl Coble. Thanks, EWC

Edward W. Catalano  M.D.
VP Medical Affairs
Palmetto Health Richland Hospital
5 Richland Medical Park Drive
Columbia, SC  29203
Phone: 803 434 2819<tel:803%20434%202819>  Fax: 434 6668
e-mail: edward.catalano@palmettohealth.org<mailto:edward.catalano@palmettohealth.org>

>>> Allison Turnley 7/14/2011 5:32 PM >>>
Dr. Catalano -

Please see below for information regarding a concern about an orthopedic resident and attending.  Diane refers to the resident as Dr. Orlani, however she pointed him out to me and he is actually Dr. Irani.

As a side note, I was in the trauma room before the orthopedic resident arrived, and I saw the injury to this man's arm.  It was an impressive injury.  And the patient is an elderly man, I believe in his 70s or 80s.

Please let Diane or me know if you need additional information.

Allison

Allison Turnley, RN BSN MSM
Director of Nursing
Emergency Services
Palmetto Health Richland
Office - 434-2945
Cell - 622-3376
Allison.Turnley@palmettohealth.org<mailto:Allison.Turnley@palmettohealth.org><mailto:Allison.Turnley@palmettohea lth.org<mailto:Allison.Turnley@palmettohealth.org>>


>>> Diane Savage 7/11/2011 9:39 PM >>>
Mr. ███ came to the ED with a traumatic partial amputation of his left forearm.   His left arm was angulated, hand rotated approximately 180 degrees, muscle, bone, tendons, arteries, etc exposed.  Dr. Orlani (?) from ortho was the consulting resident.  He enter the trauma room and barely acknowledged the pt, did not introduce himself and proceeded to manipulate the fractured arm.   Myself and Mandy, along with the ED resident asked him to wait before he moved the pt's arm so we could administer pain meds.   I had to ask him twice to stop so I could give the meds.  I had the meds in my hand.  He showed no compassion for what the pt was experiencing.  I asked Dr. Orlani to speak with the patients family and he was reluctant, but finally did speak with them.   Dr. Spencer Robinson irrigated the wound with 1L of NS.  When Dr. Orlani asked if the wound had been irrigated-I stated it had been irrigated with 1L.  He stated "2" and I stated "no, 1L".  He smiled and stated "2L" and I repeated "1".  He remarked "we will say it was 2".  I stated "no, it was 1.  During the entire encounter I felt Dr. Orlani was not concerned for the pt, but more for himself and the work he had ahead of him.   When Dr. Iaquinta entered the room, he too did not introduce himself to the pt and roughly removed the dressing and splint.  The pt grimaced and moaned out in pain.   Before myself or Mandy to ask

3

USC(Irani)0822

about pain meds, Dr. Iaquinta grabbed the pts partially amputated extremity and twisted it to the anatomically correct position.   The pt yelled out and came about a foot off of the stretcher.   We had the means to make this pt comfortable and we instead inflicted undue pain and duress.   Dr. Iaquinta very bluntly stated to the pt "we are going to have to cut off your arm".....a total lack of compassion or explanation.   I have had many similar encounters with both of these physicians and have also heard other nurses and residents state the same.   Please feel free to contact me for any needed information.   Thanks, Diane

---------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.


----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0823

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | 26 January, 2012 8:08 AM |
| **To:** | David Koon |
| **Subject:** | list |
| **Attachments:** | Remediation list.docx |

k

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0824

Review and adhere to the Palmetto Health Standards of Behavior.

Daily

Morning list ready by specified time daily set by chief resident. List includes up to date labs, vitals, patient plans, antibiotics, UOP, drain output, etc.

All assigned patients appropriately rounded on before morning conference.

Present to conference room by 6:25am every morning.

Read all assigned articles/chapters for conference. Be prepared to have interactive discussion/answer questions based on the assigned reading.

Report to OR and/or clinic immediately after conference is concluded.

Be on time to all assigned outpatient clinics.

Read and prepare appropriately for clinics and operative cases.

Discuss all cases preoperatively with attending.

Check out every day at the end of the day with chief resident regarding inpatients.

Communicate clearly and effectively with attending, ancillary staff, peers and families.

Respond appropriately to text messages and emails in a timely fashion.

Respond to constructive criticism in an appropriate and professional way. Admit and apologize for mistakes and be willing to endorse personal flaws. Take immediate action to correct deficiencies.

Follow patient care plan set out by attending and/or senior resident. If plan needs to be altered in any way, inform attending and/or senior resident immediately of changes to patient care plan.

Perform postoperative checks on all patients operated on, or needing postoperative checks at end of day.

Perform discharge or transfer summaries in a timely fashion, including patients as instructed by chief resident and/or attending, regardless of your involvement in the patient's care.

Perform other duties as assigned by attending / senior resident with a good attitude.

## Call issues

If holding call pager during day, keep attending informed on whereabouts when seeing consults/attending to call issues.

Discuss every consult/patient/phone call taken while on call with attending or with chief resident. Check out immediately if urgent; check out the next morning if not urgent.

Orthopaedic consults : See patient.  Evaluate patient.  Order appropriate imaging and/or other studies as indicated. Provide timely and appropriate management to patients, including pain management. Obtain consents when necessary, mark patient when necessary, prepare patient for OR when necessary. Devise appropriate plan of action for care.  Then call senior resident or attending.

Return phone calls, pages in timely fashion.

When on call over weekend, be prepared and present patients at fracture conference. Be prepared to discuss fracture classification, treatment options, outcomes, etc.

## Patient care

Display empathy and compassion in all patient encounters.

Discuss injuries with patients and families in laymen terms.

Work effectively and efficiently within the patient care team, including nurses and ancillary staff.

USC(Irani)0826

**From:**      David Koon <David.Koon@uscmed.sc.edu>
**Sent:**      Thursday, March 01, 2012 7:19 PM
**To:**        Andy T. McGown; Christopher Mazoue; Frank R Voss; jagdr@aol.com; Greg Grabowski
**Subject:**   Irani Update

---

From: David Koon
Sent: Thursday, March 01, 2012 6:52 PM
To: Katherine Stephens; AnneMarie Hyer; John Walsh
Cc: James Raymond
Subject: RE: Irani Update

All -

Dr. Walsh spoke with Dr. Irani this afternoon and confirmed the facts surrounding the care of the hemophiliac patient last night.

Dr. Hoover (chief resident) and I spoke with Dr. Irani tonight. I questioned him about the events lasts night and this morning. He had no excuse for his actions and admitted that he had failed to abide by Dr. Wood's instructions, did not document appropriately, and that he had shown up late for rounds.

I informed Dr. Irani that the department's recommendation to the GMEC would be that he be dismissed from the program. In discussion with Dr. Stephens and the Exec Comm of the GMEC, he would be suspended (without pay per HR) from clinical duties immediately. Our recommendation will be brought forth to the full GMEC for their consideration on 10 APR 12.

I informed Dr. Irani that he has the opportunity to appeal this decision thru the Grievance and Due Process Policy.

David Koon

---

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Thursday, March 01, 2012 11:23 AM
To: AnneMarie Hyer; David Koon; John Walsh
Cc: James Raymond
Subject: Re: Irani Update

David,

Pls proceed with meeting with Irani to get his side of story. Will arrive in Orlando around 1:30. Call me to discuss next steps after that. We cannot continue current path and termination may be next step.

(Jim, I have contracted H.R. and Labor atty already. Will be in touch later today shouls GMEC Exec Com action be needed.)

Kathy
-----Original Message-----
From: David Koon <David.Koon@uscmed.sc.edu>

1

To: Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
To: AnneMarie Hyer <AnneMarie.Hyer@PalmettoHealth.org>
To: John Walsh <John.Walsh@uscmed.sc.edu>

Sent: 3/1/2012 8:36:27 AM
Subject: Irani Update

Kathy / John -

Dr. Wood approached me this morning about another patient care issue that occurred last night while we were on trauma call.  A hemophiliac patient came in to be evaluated for leg pain which we thought could be a compartment syndrome (a limb threatening problem).  Dr. Irani evaluated the patient and Dr. Wood came in around midnight to see the patient with him. They called me shortly thereafter to give me an update.  Dr. Wood instructed Dr. Irani to evaluate the patient at 4:00 this morning to make sure that his conditioned had not worsened.  During rounds this morning, he admitted to Dr. Wood that he had "forgotten" to perform this evaluation.  Failure to perform this evaluation placed the patient at risk for further harm.  Also, Dr. Irani failed to report early for morning rounds (one of the remediation measures) and Dr. Hoover called into the call room and actually woke him up.

Despite the department's and the GMEC's actions to provide him with a reasonable remediation plan, I think that his actions over the past few days speak for themselves and he is putting our orthopaedic patients at risk.  I would recommend that we immediately suspend him from clinical duties.  I would recommend that we meet with him this afternoon to hear his side of the story.  If a reasonable explanation is not presented by him, I would think that we have "just cause" to begin the dismissal process.

I'll be at the VA all day in  clinic and will await your recommendations.

DK

_____

From: David Koon
Sent: Wednesday, February 29, 2012 7:34 PM
To: Kathy.Stephens@PalmettoHealth.org; John Walsh
Subject: FW:  Dr Irani patient encounter

Kathy -

Below is the email that I received from Dr. Grabowski for your review.  Dr. Grabowski (with Dr. Voss)  has discussed these issues with Dr. Irani.  He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing.  Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC.  We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety.  We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David

2

USC(Irani)0828

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.


----------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

USC(Irani)0829

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Saturday, August 27, 2011 9:50 AM |
| **To:** | Christopher Mazoue; John Walsh; Greg Grabowski; jagdr@aol.com; Frank R Voss; Paul Athey |
| **Subject:** | Dr. Irani |
| **Attachments:** | Irani MoR.docx |

Just a quick update on Dr. Irani.

He has been placed on Level II academic remediation until 01 DEC 11. Attached is the initial MoR.

Please review his response to Kathy Stephens.

I would appreciate your attention to his clinical performance and appropriate documentation as needed, especially on his NI rotation evaluations.

I would like to discuss this during our next faculty meeting.

Thanks

DK

_____

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Friday, August 26, 2011 10:26 AM
To: Afraaz Irani
Cc: David Koon
Subject: Re: Department of Orthopaedics.

Dr. Irani,

Thank you for your email and the commitment you expressed to improving in the areas identified. The goal of the academic remediation process is to ensure that a resident physician is provided an opportunity to improve in areas of concern and to achieve competence in these areas. I am certain that Dr. Koon will appreciate your positive attitude to constructive criticism with the goal of assisting you in achieving competence.


Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research ACGME Designated Institutional Official Palmetto Health Fifteen Medical Park, Suite 202 Five Richland Medical Park Drive Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 8/22/2011 10:01 PM >>>
Ms. Stephens,

I was recently informed by Dr. Koon, that he would be taking steps to suggest I be placed on academic remediation.

1

USC(Irani)0830

I was very surprised and disappointed to hear this given the positive comments from my peers.

I was handed a sheet with specific complaints against me and told to send you an email to explain the following issues. Please allow me to explain myself regarding the seven points outlined in Dr. Koon's letter:

1. Dr. Irani demonstrated significant lack of compassion and empathy in a patient's care in the initial trauma resuscitation. Mr B sustained a near forearm amputation and Dr. Irani failed to provide adequate pain medication and ignored nursing requests for same during his initial evaluation. During this encounter he request the nurse to lie about the initial irrigation / debridement of the traumatic wound.

I always demonstrate the highest level of compassion and empathy in a patient's care. There are many individuals involved in the resuscitation. My job as the orthopaedic resident is to manage the orthopaedic injury in conjunction with the attending. I was consulted on Mr. B after the ER physicians had evaluated the patient and I was at the patient's bedside within 10 minutes. At the time of my evaluation the patient had already received pain medication. Given the severity of the trauma in this 82 year old gentleman, the severity of the pain would not have been controlled to a level that the nurse in question was attempting to achieve by a safe level of pain medications.

As part of my initial assessment, I unwrapped the initial dressing and given the severity of what was discovered, I immediately consulted my attending for immediate patient care and plan for OR.

Regarding the accusation about lying about patient care; this is a misinterpretation of the nurse about my comments regarding irrigation. My comments to her were meant to say that usually we irrigate with two liters and I was surprised that an ER physician would irrigate with only one liter. So my statement that it was two liters was under the assumption that routine clinical practices were being followed. I did not irrigate as we already had a plan to go to the OR. My comments to nurse are meant to reinforce what is usually done. However I was not personally involved, nor did I document any irrigation in my note as I did not perform any irrigation, nor was I present during any irrigation.

2. He has repeatedly demonstrated poor communication with patients, families, peers, and attending physicians.

I appreciate the fact that these issues have been brought to my attention but as the incident with the nurse above illustrates, I may have been misunderstood. Therefore I will increase my efforts to ensure I am being properly understood, including repeating what I have requested when appropriate. I appreciate the opportunity to spend time focusing on improving my communications skills with the grand rounds presentation which will be prepared in the time provided, as that is important to patient care, regardless of the care giver.

As part of my effort to improve communication, I will notify the appropriate attendings or peers regarding patients who I have been contacted about on call, so that incidents such as the VA patient (below), who I was told by the ER attending that I do not need to see, do not recur. This will also reduce interruption in patient care. This would be along the same lines as patient care/sign outs and hand-offs and understanding what has been accomplished and what remains to be done with patient care.

3. He has repeatedly demonstrated poor time management with frequent tardiness to required conferences, clinics, and the operating room.

4. He does not demonstrate effective prioritization of clinical duties. This has resulted in additional duties for other residents.

Many of these items are likely related to times when I have been required by my supervisors and/or attending to remain in one location when I am expected in another location. I frequently contact the location where I am expected to be and notify the nurses so that they may appropriately coordinate patient care. In the future, I will instead speak directly with the physician who is expecting me so that there is no confusion regarding perceived tardiness.

Regarding the additional duties for other residents. I always complete my work that's been assigned to me, often staying beyond recommended work hours, as I do not think it appropriate to burden fellow residents. No resident has brought

2

to this my attention and when I requested that they do so, each of them stated there was no issue. If there are specific instances, I would be happy to help out whoever the resident who was burdened with my duties.

5. He has provided substandard care (e.g. closing wound with Vicryl suture; not evaluating a VA total joint patient with post-operative cellulitis).

Whenever I have been notified of errors. In the future I will proactively make my supervisors/attendings aware of a plan of care, and modify as guidance is provided to insure patients never receive substandard care.

6. He received substandard evaluation during his internship.

Once these evaluations were made known to me, I made significant improvements based on suggestions that were provided to me. Whenever my superiors raised issues I make every effort to address them and more recent evaluations reflect that. For example in my initial evaluation with trauma, I had the opportunity to discuss my performance with Dr. Bynoe. He offered good constructive suggestions for improvement, which I was glad to receive. I implemented them on my subsequent rotation, and my evaluation seems to reflect that.

7. He has displayed a significant lack of attention to detail in his initial PGY-2 rotation.

This might be related to perceived forgetfulness in the OR. Although I think that this too may be related to lack of communication. I am not just leaving things lying around. I am leaving them for specific individuals. I did not however mention that to the individual involved and that gets back to my need for improved communication.

I really appreciate your help and understanding in this matter. I take these allegations seriously as there are cases where an action like this precludes one from a fellowship, and results in significant difficulty obtaining a job.

I hope you will consider my statements above, and if there are any questions, I would be more than happy to provide third party references to substantiate the above statements, and/or speak with you in person or over the phone.

Thank you for your kind understanding.
Afraaz
650-353-8523<tel:650-353-8523>
-------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.


-------------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0832

**From:**          David Koon <David.Koon@uscmed.sc.edu>
**Sent:**          Monday, February 27, 2012 7:24 PM
**To:**            John Walsh
**Subject:**       FW:


Also ask him about his discussion with Afraaz about wrong site surgery...

dk

---

From: Greg Grabowski
Sent: Monday, February 27, 2012 1:49 PM
To: David Koon
Subject:

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week.  He had helped me with my cases last Tuesday and as a result was following them on the floor.  On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam.  I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit; per the nursing report, his initial response to this call was "aww, she has a foot drop?"  Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me.  He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time."  I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit.  I instructed him to order a stat MRI of the lumbar spine, and call me with the results.  I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam.  At that time, however, there was no documentation from Dr. Irani regarding the patient's condition.  Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record.  The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis.  The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

-----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged,

1

USC(Irani)0833

confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0834

**From:**          David Koon <David.Koon@uscmed.sc.edu>
**Sent:**          Monday, August 15, 2011 9:43 AM
**To:**            John Walsh
**Subject:**       Irani MoR
**Attachments:**   Irani MoR.docx

Please review and edit -

thx

dk

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0835



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

15 AUG 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

1. Dr. Irani demonstrated significant lack of compassion and empathy in a patient's care in the initial trauma resuscitation. Mr. B. sustained a near forearm amputation and Dr. Irani failed to provide adequate pain medication and ignored nursing requests for same during his initial evaluation. During this encounter he requested the nurse to lie about the initial irrigation / debridement of the traumatic wound.
2. He has repeatedly demonstrated poor communication skills with patients, families, peers, and attending physicians.
3. He has repeatedly demonstrated poor time management with frequent tardiness to required conferences, clinics, and the operating room.
4. He does not demonstrate effective prioritization of clinical duties. This has resulted in additional duties for other residents.
5. He has provided substandard patient care (e.g. closing wounds with Vicryl suture; not evaluating a VA total joint patient with immediate post-operative cellulitis).
6. He received substandard evaluations during his internship.
7. He has displayed a significant lack of attention to detail in his initial PGY-2 rotation.

These deficiencies have persisted despite several verbal counseling sessions from his chief resident, his attending physicians, and his program director.

The attending physicians of the Department of Orthopaedic Surgery would recommend that Dr. Afraaz Irani be place on level II academic remediation from 15 AUG 11 to 01 DEC 11.

Remediation measures would include:
1. Dr. Irani would provide improved patient care, including pain management and wound management / closure.
2. He will answer his pages appropriately and immediately.
3. He will see all orthopaedic consultations as soon as possible.
4. He will display improved communication to peers, ancillary staff, and attending surgeons.
5. He will develop a Grand Rounds presentation of Effective Communication Skills.
6. He will demonstrate improved organizational skills and prioritize clinical duties effectively.
7. He will demonstrate improved attention to detail while on clinical rotations.


David E. Koon, Jr., MD
Program Director

John J. Walsh, MD
Chair, Dept. of Orthopaedics

USC(Irani)0836

**From:**       David Koon <David.Koon@uscmed.sc.edu>
**Sent:**       Tuesday, August 16, 2011 5:09 PM
**To:**         John Walsh; Paul Athey
**Subject:**    FW: Secure: Fwd: Irani_ Afraaz Remediation

John -

Please see the approval of Dr.s Hoppman and Raymond and Kathy Stephens re: Dr. Irani's level II academic remediation.

Paul Athey and I met with Dr. Irani yesterday afternoon. I informed him that the faculty had serious concerns regarding his performance thus far in his training. I gave him the opportunity to share his thoughts on how his first 14 months here at PH had gone. I informed him that we were recommending that he be placed on academic remediation and let him read the MoR dated 15 AUG 11 re: his remediation.

He stated that he did not agree with some of the points and complained that some were too vague. He initially laughed about some of them and appeared not to take them very seriously. He then proceeded to offer excuses or rationalize each point that was noted in his deficiencies and argue that he was misunderstood at times. The only item with which he agreed with was item # 5 - in that he should not have closed the wound with Vicryl. He accused the ER/trauma nurse of lying about the events surrounding Mr. B's care in the trauma room.

Dr. Irani seemed to lack insight into his poor performance and failed to take any responsibility for his actions.

I informed Dr. Irani that these were the recommendations of the department to the GMEC and that the GMEC Executive Comm would probably approve these recommendations pending full GMEC voting in early September. I encouraged him to review the GME policy on academic remediation. He was allowed to respond to each item in the MoR and ask questions. I informed him that failure to improve his performance and meet the remediation measures could result in recommendations for continued probation and/or possible termination from the training program. I provided him a copy of the MoR dated 15 AUG 11 for his review and informed him that he could respond in writing to our recommendations.

Our meeting was concluded at 1330 hrs.

David Koon

_____
From: James Raymond [james.raymond@palmettohealth.
Sent: Monday, August 15, 2011 7:29 PM
To: Richard Hoppman
Cc: Katherine Stephens; David Koon
Subject: Re: Secure: Fwd: Irani_ Afraaz Remediation

Kathy,
I approve also.
Jim

Sent from my iPad

On Aug 15, 2011, at 6:44 PM, "Richard Hoppmann" <Richard.Hoppmann@uscmed.sc.edu> wrote:

1

USC(Irani)0837

> I approve Level II remediation to begin immediately – be sure to follow due process.
> Richard Hoppmann
>
> From: Katherine Stephens [mailto:Kathy.Stephens@PalmettoHealth.org]
> Sent: Monday, August 15, 2011 4:57 PM
> To: James Raymond; Richard Hoppmann
> Cc: David Koon
> Subject: Secure: Fwd: Irani_ Afraaz Remediation
>
> Jim & Dick,
>
> I will forward to you as a separate email the action that precipitated this request. I ask that the three of us as the GMEC executive committee, approve Level II remediation as a temporary action until the next GMEC mtg. I am also working with David to put the remediation plan into outcomes language with specific measures.
>
> Please let me know your approval/disapproval and any questions.
>
> Thank you,
>
> Kathy
>
> Katherine G. Stephens, MBA, FACHE
> Vice President, Medical Education and Research ACGME Designated
> Institutional Official Palmetto Health Fifteen Medical Park, Suite 202
> Five Richland Medical Park Drive Columbia, SC  29203
>
> 803-434-6861 or 803-434-4476
>
> katherine.stephens@palmettohealth.org
>
>
>>>> Michelle Wehunt <Michelle.Wehunt@uscmed.sc.edu> 8/15/2011 1:57 PM
>>>> >>>
> Good Afternoon Kathy,
>
> Please see attached remediation recommendations for Dr. Irani. Should you have any questions please or suggestions please let Dr. Koon know.
>
> Thank you,
>
>
>
> ----------------------------------------
> This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.  -----------------------------------------------------------------------------
> PALMETTO HEALTH CONFIDENTIALITY NOTICE This message is intended only
> for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended

2

USC(Irani)0838

recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.
>
> ----------------------------------------
> This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.
> <winmail.dat>
--------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


----------------------------------------


This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0839

**From:**      David Koon <David.Koon@uscmed.sc.edu>
**Sent:**      Sunday, December 11, 2011 6:51 PM
**To:**        John Walsh
**Subject:**   Irani MoR
**Attachments:**   Irani MoR 4.docx

pls edit as appropriate...

thx

dk

-----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0840



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

11 DEC 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

The faculty of the orthopaedic department met with Dr. Afraaz Irani on Monday, 05 DEC 11.
In attendance were Dr.s Walsh, Koon, Voss, Guy, Grabowski, McGown, McBryde, Hoover, and
Wood, as well as Paul Athey, MBA. We met Dr. Irani for over one hour.

We asked Dr. Irani many questions, ranging from his desire to be in an orthopaedic training
program to patient care issues. Dr. Irani admitted to secretly recording phone calls with attending
surgeons (Dr. Abell). He repeatedly refused to give direct answers to several questions and
failed to take responsibility for his actions in several patient care examples. Despite attending
direction and encouragement to take ownership of his actions, he steadfastly refused to admit any
wrongdoing, even when faced with overwhelming evidence to the contrary.

Dr. Irani could not admit agreement to any of the initial remediation issues which led to his
placement on Level II academic remediation.

Dr. Irani has displayed evidence of ongoing inadequate patient care. He has prescribed
inappropriate doses of narcotics, failed to evaluate post-operative patients with wound care
issues, and failed to abide by direct attending instructions during the care of clinic patients.

Dr. Irani has continued to display a lack of teamwork within the residency framework. He has
shown up late for morning rounds, been ineffective in preparing the morning "list", and has been
delinquent in assigned tasks.

Dr. Irani displayed inappropriate patient care in the case of Trauma,f375. He displayed a lack of
empathy and compassion, a lack of appropriate pain management, a neglect of appropriate
informed consent, poor interpersonal communication, and a lack of appropriate teamwork with
ancillary staff.

Dr. Irani has had multiple verbal and written counseling regarding his deficiencies and has
persisted in displaying a clear lack of insight into measures to improve these deficiencies.

It is the recommendation of the faculty of the orthopaedic department that Dr. Irani be placed on
immediate suspension from patient care. This would involve an unpaid leave of absence
beginning 09 DEC 11 thru (at least) 30 JAN 12. He would be restricted from any resident duties.
He is required to attend psychological evaluation with Dr. Parnell on Monday, 12 DEC and any
follow-up appointments she deems necessary. He would be required to attend any psychological
counseling sessions recommended by her evaluation.

*DEPARTMENT OF SURGERY*
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0841



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

Curriculum credit will be withheld during this leave of absence. The decision regarding his curriculum credit for the recent Level II remediation will also be withheld pending the outcome of his leave of absence.

The faculty will meet on/about 30 JAN 12 to evaluate his progress and determine the appropriate next step in Dr. Irani's academic remediation.

David E. Koon, Jr., MD
Program Director

John J. Walsh, MD
Chair, Dept. of Orthopaedics

USC(Irani)0842

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Monday, December 12, 2011 2:00 PM |
| **To:** | John Walsh; katherine.stephens@palmettohealth.org |
| **Attachments:** | Irani MoR 4.docx |

Kathy -

Please find the attached MoR re: Dr. Irani.  Please let me know if it needs to be amended.

I'll assume that this will be discussed at tomorrow's GMEC meeting.

Thanks

DK

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0843



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

12 DEC 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG – 01 DEC 11.

The faculty of the orthopaedic department met with Dr. Irani on Monday, 05 DEC 11.
In attendance were Dr.s Walsh, Koon, Voss, Guy, Grabowski, McGown, McBryde, Hoover, and
Wood, as well as Paul Athey, MBA. We met with Dr. Irani for over one hour.

We asked Dr. Irani many questions, ranging from his desire to be in an orthopaedic training
program to patient care issues. Dr. Irani admitted to secretly recording phone calls with an
attending surgeon (Dr. Abell). He repeatedly refused to give direct answers to several questions
and failed to take responsibility for his actions in several patient care examples. Despite
attending direction and encouragement to take ownership of his actions, he steadfastly refused to
admit any wrongdoing, even when faced with overwhelming evidence to the contrary. He
appeared to consistently lack insight into these issues.

Dr. Irani could not admit agreement to any of the initial remediation issues which led to his
placement on Level II academic remediation.

Dr. Irani has displayed evidence of ongoing inadequate patient care. He has prescribed
inappropriate doses of narcotics, failed to evaluate post-operative patients with wound care
issues, and failed to abide by direct attending instructions during the care of clinic patients.

Dr. Irani has continued to display a lack of teamwork within the residency framework. He has
repeatedly shown up late for morning rounds, been ineffective in preparing the morning "list",
and has been delinquent in assigned tasks.

Dr. Irani displayed inappropriate patient care in the case of Trauma,F375. He displayed a lack of
empathy and compassion, a lack of appropriate pain management, a neglect of appropriate
informed consent, poor interpersonal communication, and a lack of appropriate teamwork with
ancillary staff.

Dr. Irani has had multiple verbal and written counseling sessions regarding these deficiencies.

It is the recommendation of the faculty of the orthopaedic department that Dr. Irani be placed on
immediate suspension from patient care (Level III Academic Remediation). This would involve
a leave of absence beginning 09 DEC 11 thru (at least) 30 JAN 12. He would be restricted from
any resident duties. He is required to attend psychological evaluation with Dr. Parnell on

*DEPARTMENT OF SURGERY*
*Two Richland Medical Park, Suite 402, Columbia, SC 29203*
*803-256-2657, FAX 803-933-9545*

USC(Irani)0844



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

Monday, 12 DEC and any follow-up appointments she deems necessary.  He would be required to attend any psychological counseling sessions recommended by her evaluation.  Curriculum credit will be withheld during this leave of absence.

The faculty will meet on/about 30 JAN 12 to evaluate his progress and determine the appropriate next step in Dr. Irani's academic remediation.

A copy of this memorandum will be provided to Dr. Irani.  He is reminded of his option to appeal this action per the Grievance and Due Process policy in the Resident Manual.

David E. Koon, Jr., MD                              John J. Walsh, MD
Program Director                                     Chair, Dept. of Orthopaedics

USC(Irani)0845