# Exhibit KKK
## (PART II)

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|---|---|
| Sent: | 05 January, 2012 11:35 AM |
| To: | Katherine Stephens |
| Subject: | RE: Re: Suspension |

Kathy -

Would you forward to me his version of the patient's care?

Thanks

DK

---

**From:** Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
**Sent:** Thursday, January 05, 2012 10:37 AM
**To:** Kathy Helms; Gwen Hill; David Koon
**Subject:** Fwd: Re: Suspension

FYI.

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research
ACGME Designated Institutional Official
Palmetto Health
Fifteen Medical Park, Suite 202
Five Richland Medical Park Drive
Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org
-----------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

**From:** David Koon <David.Koon@uscmed.sc.edu>
**Sent:** Saturday, January 28, 2012 9:36 AM
**To:** Katherine Stephens
**Subject:** RE: Recommended Irani remediation form

We're going to meet with him on Tuesday...any chance I can get this form in it's final draft?

Thx

DK

_____

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Friday, January 27, 2012 5:37 PM
To: David Koon
Subject: Recommended Irani remediation form

David,

I basically used what you had and put it into a remediation plan form. You could have this ready to give to Afraaz on Tuesday. See what you think.

One important difference between attachment and my previous edits to the memo: Note at the end where I list additional remediation requirements. I changed the counseling sessions reference you had from weekly to what is recommended by E-CARE. They might recommend bi-weekly sessions, and I don't want a technicality to be an issue for us. Please edit the memo to remove "on a weekly basis" and replace it with "on the schedule recommended by E-CARE."

Have a good weekend!

Kathy


Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research ACGME Designated Institutional Official Palmetto Health Fifteen Medical Park, Suite 202 Five Richland Medical Park Drive Columbia, SC 29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

----------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

USC(Irani)0847

---------------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0848

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Wednesday, February 29, 2012 10:39 AM |
| **To:** | Kathy.Stephens@PalmettoHealth.org |
| **Cc:** | John Walsh |
| **Subject:** | Dr. Irani |

Kathy -
The Department of Orthopaedic Surgery will recommend to the GMEC that we not renew Dr. Irani's contract next year.
David


------------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0849

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|---|---|
| Sent: | Wednesday, February 29, 2012 7:34 PM |
| To: | Kathy.Stephens@PalmettoHealth.org; John Walsh |
| Subject: | FW: Dr Irani patient encounter |

Kathy -

Below is the email that I received from Dr. Grabowski for your review. Dr. Grabowski (with Dr. Voss) has discussed these issues with Dr. Irani. He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing. Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC. We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety. We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

1

USC(Irani)0850

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0851

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Saturday, March 10, 2012 9:03 AM |
| **To:** | Kathy.Stephens@PalmettoHealth.org |
| **Subject:** | FW: Recollection of events in reference to patient evaluated for possible compartment syndrome |

_____

From: jennifer wood [jhwood23@gmail.com]
Sent: Friday, March 09, 2012 8:26 PM
To: David Koon; John Walsh
Subject: Recollection of events in reference to patient evaluated for possible compartment syndrome

To Whom it may concern:

The following are my recollection of events in reference to the 19 y/o hemophiliac that Orthopaedics was consulted on to rule out compartment syndrome:

I was called by Dr. Irani regarding the patient. He relayed the patient's history to me and his physical exam findings. I asked him to measure the patient's compartments so that we could have an objective number of his compartment pressures. He called me back to inform me of the patient's compartment pressures. I informed him that I thought we at least needed to admit him overnight for observation and came to evaluate the patient.

The patient was very comfortable in the ER at that time. Although his leg was swollen and I had concern for development of compartment syndrome, I did not feel he had compartment syndrome at that time. Dr Koon was the attending on call that night. I called Dr. Koon on the phone and spoke with him regarding the patient. It was agreed upon that we would admit the patient to observe him and ensure his exam did not worsen and he did not develop compartment syndrome.

I finished writing my consult note. I spoke with Dr. Irani at approximately 1:15 a.m. and informed him the patient needed to be admitted, and I would like the patient checked in a few hours, and I then further clarified to give a more specific time frame of 4a.m. I left the ER where the patient was at approximately 1:15a.m. I informed Dr. Irani of my physical exam findings and also told him that if patient had worsening of symptoms that I wanted to be contacted immediately.

At around 6am that morning I went to 8 west to check again on the patient. The patient was still comfortable and had continued to improve. I sat down at the 8 west nurses' station and opened the chart to write my note. I saw that Dr. Irani's original consult note was in the chart, my consult from earlier that morning was in the chart, a consult note from another service regarding the patient's hemophilia was in the chart, and no other notes. Since I did not see a second note from Dr. Irani in the chart, I assumed he had not reevaluated him. At that time, Dr. Irani was sitting across from me at the nurses' station on 8 west and I asked him if he had seen the patient at 4am as I had asked him to. He stated, no. I asked why not. He went on the state that he was sorry, and that he had forgotten. I informed him that this type of thing was not to ever happen again. He once again stated he was sorry. I then wrote my progress note on the patient and left the floor.

Later that morning, I spoke with Dr. Koon regarding the interaction that I had with Dr. Irani. My concern was that the patient was not reevaluated by Dr. Irani, and that this could have had serious implications if the patient had developed compartment syndrome.

1

USC(Irani)0852

I am aware that Dr. Irani was questioned about this patient encounter, and he has stated that he reevaluated the patient at 2:30a.m that morning.   Dr. Irani did not indicate to me that he reevaluated the patient when I spoke to him regarding the issue. At approximately 6 a.m. when I reevaluated the patient, there was no documentation in the chart by Dr. Irani regarding a reevaluation of the patient.

Sincerely,
Jennifer Wood


--
Jennifer Wood
email:jhwood23@gmail.com<mailto:email%3Ajhwood23@gmail.com>

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0853

**From:**       David Koon <David.Koon@uscmed.sc.edu>
**Sent:**       Thursday, March 15, 2012 7:27 AM
**To:**         Kathy.Stephens@PalmettoHealth.org
**Subject:**    Irani grievance

Dr. Irani has initiated the grievance process and has met with me and Dr. Walsh, so I would think he will be contacting you in the near future.
The department's recommendations are unchanged.
DK

---------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Tuesday, June 19, 2012 6:36 AM |
| **To:** | Kathy.Stephens@PalmettoHealth.org; John Walsh; Tonya Holmes |
| **Subject:** | Irani Grievance |

Kathy -

Would you please forward to us the memo regarding Mr. Beaman's decision on Dr. Irani's grievance?

Thanks

David

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

USC(Irani)0855

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|---|---|
| Sent: | Tuesday, July 17, 2012 6:13 PM |
| To: | Kathy.Stephens@PalmettoHealth.org |
| Subject: | FW: Summative Evaluation_Non Graduate_ Irani |
| Attachments: | Draft 1_Irani.pdf; image001.jpg |

For your review and suggestions.

Thanks

DK

_____

From: Tonya Holmes
Sent: Tuesday, July 17, 2012 11:29 AM
To: David Koon
Subject: Summative Evaluation_Non Graduate_ Irani

Thank you,

Tonya Holmes

Tonya Holmes
Residency Program Coordinator
USC SOM Orthopaedic Surgery
Two Medical Park, Suite 404
Columbia, South Carolina 29203
(803) 434-6879- office
(803) 434-7306- fax

[cid:image001.jpg@01CD640F.65C356C0]


----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0856

 

## SUMMATIVE RESIDENT/FELLOW EVALUATION FORM (NON-GRADUATE)

Dr. Afraaz Irani

Program/Specialty: Orthopaedics

SSN: ███████

**VERIFICATION:** The above-named physician served in the following training program at Palmetto Health but **did not** complete the program.

| Type | Program Name (* if non-ACGME program) | From | To | Completed Program (Yes/No) | Months Successfully Completed |
|------|---------------------------------------|------|-----|-----------------------------|-------------------------------|
| Internship | | 07/01/2010 | 06/30/2011 | Yes | 12 |
| Residency | | 07/01/2011 | 04/10/2012 | No | 1 |
| Chief Resident Year | | | | | |
| Fellowship | | | | | |

**EVALUATION:** Based on demonstrated performance and evaluations by supervisors on file.

| | Superior | Good | Fair | Poor |
|---|----------|------|------|------|
| Basic Medical Knowledge | | X | | |
| Patient Care and Management | | | | X |
| Interpersonal and Communication Skills | | | | X |
| Professionalism | | X | | |
| Systems-based Practice | | X | | |
| Practice-based Learning and Improvement | | | X | |
| Overall Performance | | | | X |

**EXPLANATION OF WHY RESIDENT DID NOT COMPLETE THE PROGRAM:**

Dr. Irani failed to complete GMEC directed remediation measures.

_____

_____        _____David E. Koon, Jr._____

Program Director (Signature)                                Name (Printed/Typed)

_____

Date

I have reviewed this document and permit the release of this information to any third party who inquires about my professional background.

_____        _____

Resident/Fellow (Signature)                              Name (Printed/Typed)

_____

Date

USC(Irani)0857

I attest that the information supplied on this photocopy is a copy of an official evaluation on file in the department.

_____   _____
Signature                          Date

_____
Title

Revised 2/8/11

USC(Irani)0858

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|---|---|
| **Sent:** | Tuesday, December 18, 2012 6:03 PM |
| **To:** | Katherine Stephens; Margie Bodie; Tonya Holmes |
| **Subject:** | RE: Please call |

Kathy -

The summative evaluation was completed after Dr. Irani left the program and was not signed by him.

DK

_____
From: Katherine Stephens [Katherine.Stephens@palmettohealth.org]
Sent: Tuesday, December 18, 2012 3:45 PM
To: Margie Bodie; David Koon; Tonya Holmes
Subject: FW: Please call

Tonya,

Note:  Final summative evaluation form should be provided to Dr. Fukui per Common Prog. Req., which state: "Before accepting a resident who is transferring from another program, the program director must obtain written or electronic verification of previous educational experiences and a summative competency-based performance evaluation of the transferring resident. A program director must provide timely verification of residency education and summative performance evaluations for residents who leave the program prior to completion."

Margie Bodie's file has a copy signed by Dr. Koon but not by Dr. Irani.  Is there a copy signed by both in the Program files?

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education & Research ACGME Designated Institutional Official Palmetto Health
3555 Harden Street Extension
15 Medical Park, Suite 202
Columbia, SC 29203

katherine.stephens@palmettohealth.org
Office: 803-434-6861
Fax: 803-434-4419

-----Original Message-----
From: Margie Malone
Sent: Tuesday, December 18, 2012 3:29 PM
To: Margie Bodie; Katherine Stephens
Subject: FW: Please call

I think this is for your attention.  Thank you.

Margie Malone
Accreditation Standards Coordinator

1

USC(Irani)0859

New Innovations Liaison
Palmetto Health, Medical Education
803.434.2184
margie.malone@palmettohealth.org

-----Original Message-----
From: David Koon [mailto:David.Koon@uscmed.sc.edu]
Sent: Monday, December 17, 2012 2:03 PM
To: Margie Malone
Subject: FW: Please call
Importance: High

I have directed Dr. Fukui's inquiry to your office.

Thanks

DK

_____

From: Tonya Holmes
Sent: Wednesday, December 12, 2012 2:46 PM
To: David Koon
Subject: Please call

Dr. Koon,

Please call Dr. Melanie Fukui at 412.849.9530 regarding Dr. Irani. He's applied to her residency.

Thank you,

Tonya Holmes
Residency Coordinator Orthopaedic Surgery USC SoM Orthopaedic Surgery Two Medical Park, Suite 404 Columbia, South Carolina 29203
(803) 434-6879- office
(803) 434-7306- fax

[cid:image001.png@01CDD877.77A7DCD0]

-------------------------------------- This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.
----------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the

USC(Irani)0860

intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

-----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0861

**From:** David Koon <David.Koon@uscmed.sc.edu>
**Sent:** Thursday, March 01, 2012 2:09 PM
**To:** Katherine Stephens; AnneMarie Hyer; John Walsh
**Cc:** James Raymond
**Subject:** RE: Irani Update

Kathy -

Dr Walsh met with Afraaz around lunchtime and got his side of the story. He admitted to not seeing the patient at 4:00 am as directed. He also stated that he had seen the patient at 2:30 am, but did not document that evaluation. Dr. Walsh can give us the remaining details, but he did state that his/the department's recommendation would be unchanged.

DK

---

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Thursday, March 01, 2012 11:23 AM
To: AnneMarie Hyer; David Koon; John Walsh
Cc: James Raymond
Subject: Re: Irani Update

David,

Pls proceed with meeting with Irani to get his side of story. Will arrive in Orlando around 1:30. Call me to discuss next steps after that. We cannot continue current path and termination may be next step.

(Jim, I have contracted H.R. and Labor atty already. Will be in touch later today shouls GMEC Exec Com action be needed.)

Kathy
-----Original Message-----
From: David Koon <David.Koon@uscmed.sc.edu>
To: Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
To: AnneMarie Hyer <AnneMarie.Hyer@PalmettoHealth.org>
To: John Walsh <John.Walsh@uscmed.sc.edu>

Sent: 3/1/2012 8:36:27 AM
Subject: Irani Update

Kathy / John -

Dr. Wood approached me this morning about another patient care issue that occurred last night while we were on trauma call. A hemophiliac patient came in to be evaluated for leg pain which we thought could be a compartment syndrome (a limb threatening problem). Dr. Irani evaluated the patient and Dr. Wood came in around midnight to see the patient with him. They called me shortly thereafter to give me an update. Dr. Wood instructed Dr. Irani to evaluate the patient at 4:00 this morning to make sure that his conditioned had not worsened. During rounds this morning, he admitted to Dr. Wood that he had "forgotten" to perform this evaluation. Failure to perform this evaluation placed the patient at risk for further harm. Also, Dr. Irani failed to report early for morning rounds (one of the remediation measures) and Dr. Hoover called into the call room and actually woke him up.

USC(Irani)0862

Despite the department's and the GMEC's actions to provide him with a reasonable remediation plan, I think that his actions over the past few days speak for themselves and he is putting our orthopaedic patients at risk. I would recommend that we immediately suspend him from clinical duties. I would recommend that we meet with him this afternoon to hear his side of the story. If a reasonable explanation is not presented by him, I would think that we have "just cause" to begin the dismissal process.

I'll be at the VA all day in clinic and will await your recommendations.

DK

_____
From: David Koon
Sent: Wednesday, February 29, 2012 7:34 PM
To: Kathy.Stephens@PalmettoHealth.org; John Walsh
Subject: FW: Dr Irani patient encounter

Kathy -

Below is the email that I received from Dr. Grabowski for your review. Dr. Grabowski (with Dr. Voss) has discussed these issues with Dr. Irani. He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing. Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC. We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety. We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the

2

USC(Irani)0863

patient's condition.  Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record.  The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis.  The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.

USC(Irani)0864

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|---|---|
| Sent: | Thursday, March 01, 2012 8:36 AM |
| To: | AnneMarie Hyer; Katherine Stephens; David Koon; John Walsh |
| Subject: | Irani Update |
| Attachments: | Header |

Kathy / John -

Dr. Wood approached me this morning about another patient care issue that occurred last night while we were on trauma call. A hemophiliac patient came in to be evaluated for leg pain which we thought could be a compartment syndrome (a limb threatening problem). Dr. Irani evaluated the patient and Dr. Wood came in around midnight to see the patient with him. They called me shortly thereafter to give me an update. Dr. Wood instructed Dr. Irani to evaluate the patient at 4:00 this morning to make sure that his conditioned had not worsened. During rounds this morning, he admitted to Dr. Wood that he had "forgotten" to perform this evaluation. Failure to perform this evaluation placed the patient at risk for further harm. Also, Dr. Irani failed to report early for morning rounds (one of the remediation measures) and Dr. Hoover called into the call room and actually woke him up.

Despite the department's and the GMEC's actions to provide him with a reasonable remediation plan, I think that his actions over the past few days speak for themselves and he is putting our orthopaedic patients at risk. I would recommend that we immediately suspend him from clinical duties. I would recommend that we meet with him this afternoon to hear his side of the story. If a reasonable explanation is not presented by him, I would think that we have "just cause" to begin the dismissal process.

I'll be at the VA all day in clinic and will await your recommendations.

DK

_____
From: David Koon
Sent: Wednesday, February 29, 2012 7:34 PM
To: Kathy.Stephens@PalmettoHealth.org; John Walsh
Subject: FW: Dr Irani patient encounter

Kathy -

Below is the email that I received from Dr. Grabowski for your review. Dr. Grabowski (with Dr. Voss) has discussed these issues with Dr. Irani. He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing. Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC. We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety. We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David

1

USC(Irani)0865

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

-------------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

2

USC(Irani)0866

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Monday, March 05, 2012 9:03 AM |
| **To:** | Kathy.Stephens@PalmettoHealth.org; John Walsh |
| **Attachments:** | Irani MoR 7-dismissal.docx |

Please review the MoR draft.

thx

DK

------------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0867



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

05 MAR 12

Memorandum of Record                    Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG 11 to 01 DEC 11.

Dr. Irani was placed on Level III Academic Remediation from 09 DEC 11 to 31 JAN 12.

Dr. Irani was placed on Level II Academic Remediation beginning 06 FEB 12.

During his first month on this Level II Remediation, Dr. Irani was involved in two patient encounters that the faculty deemed below acceptable standards.

The first encounter involved a spine patient of Dr. Grabowski's. His email to me is included below for your review. Dr.s Grabowski and Voss met with Dr. Irani and discussed the situation with him on Tuesday, 28 FEB 12.

The following day Dr. Irani admitted a hemophiliac patient to the hospital. His senior resident (Dr. Wood) evaluated the patient and instructed Dr. Irani to re-evaluate the patient at 4:00 that morning. He failed to perform this examination and failed to appropriately document an evaluation earlier that morning. Upon questioning by Dr. Wood during morning rounds, he admitted to not performing this evaluation as instructed. This failure placed the patient's limb at risk. Dr. Hoover and I discussed this situation with Dr. Irani on Thursday, 01 MAR 12. He stated that he failed to follow Dr. Wood's instructions.

I have asked Dr. Irani to provide written documentation regarding the care of these two patients.

Dr. Irani has failed to demonstrate immediate and sustained improvement as required by his remediation measures. He has failed in the competencies of patient care, interpersonal skills and communication, and professionalism and the faculty is acutely concerned with our patient's safety.

It is the recommendation of the orthopaedic faculty to place Dr. Irani immediately on Level III academic remedation (effective 01 MAR 12) and suspend him from clinical duties. We will investigate these encounters thoroughly. If no reasonable explanation can be identified for his actions, the faculty will recommend to the GMEC on 10 APR 12 that Dr. Irani be dismissed from the program.


Dr. John Walsh                    Dr. David Koon              Dr. Frank Voss
Chair, Dept of Orthopaedic Surgery    Program Director          Vice-Chair, Dept of
                                                                Orthopaedic Surgery


*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203**
**803-256-2657, FAX 803-933-9545**

USC(Irani)0868



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

Dr. Grabowski to Dr. Koon (Monday, 27 FEB 12)

"I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication."

*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203**
**803-256-2657, FAX 803-933-9545**

USC(Irani)0869

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Wednesday, April 11, 2012 11:47 AM |
| **To:** | Kathy Stephens; John Walsh |
| **Subject:** | RE: book money |

I really am at a loss for words...
I spoke with Afraaz this AM, asked him if he had any questions about my email to him or the action of the GMEC, and all he wanted to know was why his book money request got denied...
DK

---

**From:** Afraaz Irani [afraaz.irani@hotmail.com]
**Sent:** Wednesday, April 11, 2012 10:09 AM
**To:** Kathy Stephens
**Cc:** David Koon
**Subject:** FW: book money

Ms. Stephens,

I just got off the phone with Dr. Koon. He said to contact you for clarification about getting my books requested with my book money. Could you please provide some clarification pursuant to my email below?

Thank you,
Afraaz

---

**From:** Afraaz Irani [mailto:afraaz.irani@hotmail.com]
**Sent:** Thursday, April 05, 2012 9:23 AM
**To:** Carrie Jarrard
**Cc:** David Koon; John Walsh; Tonya Holmes; kathy.stephens@palmettohealth.org; margie.bodie@palmettohealth.org
**Subject:** book money

Mr. Jarrard,

Thank you for your reply. I am a little puzzled, and hoping you can provide a little guidance as to why my request for using my educational funds was denied.

I am currently employed by Palmetto Health Richland. On page 48 of the resident manual it describes the benefits due to an employed resident, listing "education materials [including] allowances for journals, books and/or software" as one the benefits due to a resident. This same portion of the handbook makes allowances for several other benefits including, but not limited to health and dental insurance. I went ahead and checked, and it appears none of my other benefits have been similarly rescinded. Under the guidelines in the handbook, it seems I am therefore entitled to the education materials that were allocated for me at the beginning of this year.

Moreover, it would seem rather odd that I, as an employed physician, may still exercise all the other benefits enumerated in the resident handbook, with the striking exception of this one item? I tried to search the resident handbook for such a provision, but was unable to find such a provision.

I have some time now and I would like to study. My livelihood and income have been stripped from me, and I would think during difficult times like these, some understanding and due process would be in order.

From reading the resident handbook, it appears that I should be entitled to the allocated education funds. If I am mistaken, please accept my sincere apologies and point me in the direction of the proper documentation so I may educate myself as to the policies. Otherwise, I have listed the books below that I would like to purchase during this time.

Thank you,
Afraaz Irani
Books:

1

USC(Irani)0870

Surgical Anatomy and Techniques to the Spine + Image bank CD-ROM
ISBN-13: 9781416003137
($274)
Tachdjian's Pediaric Orthopaedics, 4th Edition 3-Volume Set with DVD
ISBN-13: 9781416022213
($580)
Handbook of Fractures: 4th Edition
ISBN-13: 9781605477602
($72)
Total is $926.
After 20% discount: $740.80
Total after 7% sales tax: $792.66

---

From: Carrie.Jarrard@uscmed.sc.edu
To: afraaz.irani@hotmail.com
CC: David.Koon@uscmed.sc.edu; John.Walsh@uscmed.sc.edu; Tonya.Holmes@uscmed.sc.edu
Date: Mon, 2 Apr 2012 08:25:30 -0400
Subject: RE: paycheck

Dr. Irani,
I apologize for any confusion, but I have been informed that at this time, you are suspended from use of educational funds. If reinstated, you will again have access to these funds. Sorry for the inconvenience and please let me know if you have any additional questions.
Carrie E. Jarrard, MBA
Business and Operations Manager
USC Dept. of Orthopaedic Surgery and Sports Medicine
(803) 434-7720 (office)
(864) 680-6718 (cell)
(803) 434-7306 (fax)

---

**From:** Afraaz Irani [mailto:afraaz.irani@hotmail.com]
**Sent:** Friday, March 30, 2012 1:22 PM
**To:** Carrie Jarrard
**Subject:** RE: paycheck
Hey Me. Jarrard,
Who is in charge of book money/book ordering? I spoke with the USC bookstore, since it's through the ortho department we get a 20% discount, they just need to be emailed (weber4@mailbox.sc.edu) the titles.
I know we have $800 in book money. I wanted to purchase the following three books with my book money:
Surgical Anatomy and Techniques to the Spine + Image bank CD-ROM
ISBN-13: 9781416003137
($274)
Tachdjian's Pediaric Orthopaedics, 4th Edition 3-Volume Set with DVD
ISBN-13: 9781416022213
($580)
Handbook of Fractures: 4th Edition
ISBN-13: 9781605477602
($72)
Total is $926.
After 20% discount: $740.80
Total after 7% sales tax: $792.66
Thank you for your help.
-Afraaz

------------------------------------------

2

USC(Irani)0871

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0872

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Thursday, March 01, 2012 6:52 PM |
| **To:** | Katherine Stephens; AnneMarie Hyer; John Walsh |
| **Cc:** | James Raymond |
| **Subject:** | RE: Irani Update |

All -

Dr. Walsh spoke with Dr. Irani this afternoon and confirmed the facts surrounding the care of the hemophiliac patient last night.

Dr. Hoover (chief resident) and I spoke with Dr. Irani tonight. I questioned him about the events lasts night and this morning. He had no excuse for his actions and admitted that he had failed to abide by Dr. Wood's instructions, did not document appropriately, and that he had shown up late for rounds.

I informed Dr. Irani that the department's recommendation to the GMEC would be that he be dismissed from the program. In discussion with Dr. Stephens and the Exec Comm of the GMEC, he would be suspended (without pay per HR) from clinical duties immediately. Our recommendation will be brought forth to the full GMEC for their consideration on 10 APR 12.

I informed Dr. Irani that he has the opportunity to appeal this decision thru the Grievance and Due Process Policy.

David Koon

---

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Thursday, March 01, 2012 11:23 AM
To: AnneMarie Hyer; David Koon; John Walsh
Cc: James Raymond
Subject: Re: Irani Update

David,

Pls proceed with meeting with Irani to get his side of story. Will arrive in Orlando around 1:30. Call me to discuss next steps after that. We cannot continue current path and termination may be next step.

(Jim, I have contracted H.R. and Labor atty already. Will be in touch later today shouls GMEC Exec Com action be needed.)

Kathy
-----Original Message-----
From: David Koon <David.Koon@uscmed.sc.edu>
To: Katherine Stephens <Kathy.Stephens@PalmettoHealth.org>
To: AnneMarie Hyer <AnneMarie.Hyer@PalmettoHealth.org>
To: John Walsh <John.Walsh@uscmed.sc.edu>

Sent: 3/1/2012 8:36:27 AM
Subject: Irani Update

1

USC(Irani)0873

Kathy / John -

Dr. Wood approached me this morning about another patient care issue that occurred last night while we were on trauma call. A hemophiliac patient came in to be evaluated for leg pain which we thought could be a compartment syndrome (a limb threatening problem). Dr. Irani evaluated the patient and Dr. Wood came in around midnight to see the patient with him. They called me shortly thereafter to give me an update. Dr. Wood instructed Dr. Irani to evaluate the patient at 4:00 this morning to make sure that his conditioned had not worsened. During rounds this morning, he admitted to Dr. Wood that he had "forgotten" to perform this evaluation. Failure to perform this evaluation placed the patient at risk for further harm. Also, Dr. Irani failed to report early for morning rounds (one of the remediation measures) and Dr. Hoover called into the call room and actually woke him up.

Despite the department's and the GMEC's actions to provide him with a reasonable remediation plan, I think that his actions over the past few days speak for themselves and he is putting our orthopaedic patients at risk. I would recommend that we immediately suspend him from clinical duties. I would recommend that we meet with him this afternoon to hear his side of the story. If a reasonable explanation is not presented by him, I would think that we have "just cause" to begin the dismissal process.

I'll be at the VA all day in clinic and will await your recommendations.

DK

_____

From: David Koon
Sent: Wednesday, February 29, 2012 7:34 PM
To: Kathy.Stephens@PalmettoHealth.org; John Walsh
Subject: FW: Dr Irani patient encounter

Kathy -

Below is the email that I received from Dr. Grabowski for your review. Dr. Grabowski (with Dr. Voss) has discussed these issues with Dr. Irani. He instructed Dr. Irani to see the patient each morning and evaluate her wound and change her dressing. Dr. Irani failed to do this either today or yesterday and did not have a good answer as to why this was left undone.

The department has struggled with what the next step should be and we request guidance from the Executive Comm of the GMEC. We think that Dr. Irani has failed certain aspects of his remediation plan (patient care, interpersonal skills and communication, and professionalism) and we are concerned with patient safety. We have recommended in a previous email that we intend not to renew his contract, but we would request guidance as to whether or not this behavior rises to the level of "just cause" for dismissal.

Thanks for your consideration in this matter.

David

David,

I just wanted to tell you about an experience that I had with Dr. Irani last week. He had helped me with my cases last Tuesday and as a result was following them on the floor. On Friday morning, his note on LO, one of my patients who had undergone a lumbar laminectomy and fusion, failed to include a neurological exam. I discussed this with Dr. Irani when I saw him in clinic that morning at approximately 10:00.

USC(Irani)0874

Subsequently, regarding the same patient, Dr. Irani was called by the nursing staff at 11:30 to be made aware of an acute neurological change and deficit. Dr. Irani alerted me of this in clinic at approximately 12:30, at which point in time, I instructed him to see and evaluate the patient and then report back to me. He did so, but called back saying that "the patient is in the bathroom and therefore I cannot examine her at this time." I instructed him to evaluate her as quickly as possible, then report back to me immediately.

He contacted me at approximately 1:30, saying that the patient had a profound neurological deficit. I instructed him to order a stat MRI of the lumbar spine, and call me with the results. I then saw and evaluated the patient myself at 2:00, corroborating Dr. Irani's exam. At that time, however, there was no documentation from Dr. Irani regarding the patient's condition. Upon completion of the MRI at 4:30, I left a detailed note describing the event in the patient's chart, and noted that Dr. Irani at that point still had not documented his findings within the patient's record. The patient was taken to the OR emergently for evacuation of a compressive fluid collection leading to paralysis. The patient was in the OR by 6:00 pm.

My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.

I have not yet discussed these issues with Dr. Irani and wanted to alert you of them prior to speaking with him.

Thank you,
Greg

-----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

-----------------------------------------------------------------------------------

PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

USC(Irani)0875

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Monday, December 17, 2012 2:03 PM |
| **To:** | Margie.Malone@palmettohealth.org |
| **Subject:** | FW: Please call |
| **Attachments:** | image001.png |

| | |
|---|---|
| **Importance:** | High |

I have directed Dr. Fukui's inquiry to your office.

Thanks

DK

_____

From: Tonya Holmes
Sent: Wednesday, December 12, 2012 2:46 PM
To: David Koon
Subject: Please call

Dr. Koon,

Please call Dr. Melanie Fukui at 412.849.9530 regarding Dr. Irani. He's applied to her residency.

Thank you,

Tonya Holmes
Residency Coordinator Orthopaedic Surgery USC SoM Orthopaedic Surgery Two Medical Park, Suite 404 Columbia, South Carolina 29203
(803) 434-6879- office
(803) 434-7306- fax

[cid:image001.png@01CDD877.77A7DCD0]


----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0876

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | 04 January, 2012 6:45 PM |
| **To:** | Kristen Nathe; Kathy.Stephens@PalmettoHealth.org; John Walsh |
| **Subject:** | RE: |

Kristen -

Thanks for the reply and for the conversation tonight. We discussed several things, including PH's Core values, which could be improved in future patient interactions. These would include better communication with patients and ancillary staff, earlier attending involvement, and improved patient care re: pain mgmt, earlier family consultation, and consent issues.

I appreciate your willingness to accept constructive advice and seek improvement in these areas.

DKoon

_____
From: Kristen Nathe [kristen.m.miller@gmail.com]
Sent: Sunday, December 11, 2011 6:43 PM
To: David Koon
Subject: Fwd:

Dr. Koon, I'm sorry this is so late. I sent it to Hoover first to make sure it was in line with what was expected. There may be things that I have missed or did not over hear, but this was my recollection of events. I apologize for the situation and have certainly learned the reiterated value of communication. I will always make an effort to improve my relationships with nursing staff and my patients in the future.

Kristen

Sent from my iPhone

Begin forwarded message:

From: Kristen Miller Nathe <kristen.m.miller@gmail.com<mailto:kristen.m.miller@gmail.com>>
Date: December 9, 2011 4:49:16 PM EST
To: "kristen.m.miller" <kristen.m.miller@gmail.com<mailto:kristen.m.miller@gmail.com>>

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1

USC(Irani)0877

**From:**        David Koon <David.Koon@uscmed.sc.edu>
**Sent:**        Saturday, January 28, 2012 10:00 AM
**To:**        David Koon; John Walsh; Frank R Voss; Kathy.Stephens@PalmettoHealth.org; jhoov14 @yahoo.com; Jennifer, Wood
**Subject:**        RE: Remediation Plan
**Attachments:**        MoR 6 - 2012 Remediation final.docx

All -

See attached for review.  Thanks for the suggestions.

dk

_____

From: David Koon
Sent: Saturday, January 28, 2012 9:37 AM
To: John Walsh; Frank R Voss; Kathy.Stephens@PalmettoHealth.org; jhoov14@yahoo.com; Jennifer, Wood; Afraaz.irani@gmail.com
Subject: Remediation Plan

Dr. Irani -

We will meet with you on Tuesday, 31 JAN 12 in the orthopaedic conference room at 5:30 pm to review the next step in your academic remediation.

Please acknowledge receipt of this message.  If you have any questions before then, please contact me or Kathy Stephens.

Thanks

DK

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

1



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

31 JAN 12

Memorandum of Record                    Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr. Afraaz Irani was placed on Level II Academic Remediation from 15 AUG 11 to 01 DEC 11.

Dr. Irani was placed on Level III Academic Remediation from 09 DEC 11 to 31 JAN 12.

Dr. Irani proceeded thru the Grievance Process in both instances through the DIO appeal level, and his appeal was denied both times. Dr. Irani did not appeal beyond the DIO level.

I t is the recommendation of the faculty of the orthopaedic department that Dr. Irani be placed on Level II Academic Remediation beginning 06 FEB 12 thru 15 JUN 12.

It is our recommendation that the Palmetto Health Academic Remediation plan be instituted. (see attached)

Dr. Irani is also required to attend individual outpatient counseling thru the Palmetto Health E-CARE with Dr. Janice McMeekin on the schedule recommended by E-CARE. He is responsible for arranging and attending these sessions. He is responsible for providing electronic verification of these sessions within 48 hours to the Program Director.

Dr. Irani will be placed on the Total Joint service with Dr. Frank Voss beginning Monday, 06 FEB 12. He is required to arrange and attend bi-weekly meetings with Dr. Voss to review his performance. He will also arrange and attend monthly meetings with his Program Director to review the progress with his remediation measures.

Dr. Irani will be required to make up all missed call days within the remediation period. He will adhere to all duty hour restrictions per the ACGME guidelines.

Dr. Irani will no longer secretly record any conversation or phone calls.

These recommendations will be reviewed with Dr. Irani on 31 JAN 12 and will be forwarded to the GMEC Executive Committee for review / temporary approval on 01 FEB 12. Review / approval by the GMEC will be on 14 FEB12.


Dr. John Walsh                  Dr. David Koon            Dr. Frank Voss
Chair, Dept of Orthopaedic Surgery    Program Director         Vice-Chair, Dept of
                                                            Orthopaedic Surgery

**DEPARTMENT OF SURGERY**
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0879



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

# Palmetto Health Academic Remediation

**Personal Data**

| Resident:  Afraaz Irani, MD | Dates of Action:  2/6/12 – 6/15/12 |
|---|---|
| Program:  Orthopaedic Surgery | Program Year level: 2 |
| Academic Remediation Action Proposed: | |

☐ Level I   ☒ Level II   ☐ Level III   ☐ Termination

| *History* | *Date* |
|---|---|
| Remediation, Level II | 8/15/11 – 12/1/11 |
| Remediation, Level III | 12/9/11 – 1/31/12 |

| *Procedures* | *Date* |
|---|---|
| Resident informed of recommendation | 1/31/12 |
| Projected GMEC Exec. Com. action | 2/1/12 |
| Projected date of GMEC action | 2/14/12 |
| Projected date of progress reports to GMEC | 4/10/12, 6/12/12 |

**Assessment of factors impacting Dr. Irani's performance:**

- Attitude of the resident
- Commitment to lifelong learning and self improvement
- Intellectual honesty with patients, colleagues, and self
- Professional ethical standards

*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203**
**803-256-2657, FAX 803-933-9545**

USC(Irani)0880



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

# Remediation Plan

**Resident:** *Afraaz Irani, MD*

## Timeline

| |
|---|
| Dates of Action:  2/6/12 – 6/15/12 |
| GMEC Executive Committee Temporary Action date: 2/1/12 |
| Projected GMEC Action date: 2/14/12 |
| GMEC Progress report(s) on: 4/10/12, 6/12/12 |

## Remediation plan for each competency not being met

| Competencies not being met | Remediation Plan | Evaluation Tools |
|---|---|---|
| Patient Care: <br> IV.A.5.a).(6).(a) communicate effectively and demonstrate caring and respectful behaviors when interacting with patients and their families; <br> IV.A.5.a).(6).(c) make informed decisions about diagnostic and therapeutic interventions based on patient information and preferences, up-to-date scientific evidence, and clinical judgment; <br> IV.A.5.a).(6).(d) develop and carry out patient management plans |    Display empathy and compassion in all patient encounters. <br>   Discuss injuries with patients and families in laymen terms. <br>   Follow patient care plan set out by attending and/or senior resident.  If plan needs to be altered in any way, inform attending and/or senior resident immediately of changes to patient care plan. <br>   Read and prepare appropriately for clinics and operative cases. <br>   Discuss all cases preoperatively with attending. <br>   Discuss every consult/patient/phone call taken while on call with attending or with chief resident. Check out immediately if urgent; check out the next morning if not urgent. <br>   Orthopaedic consults:  See patient. Evaluate patient.  Order appropriate imaging and/or other studies as indicated. Provide timely and appropriate management to patients, including pain management. Obtain consents when necessary, mark patient when necessary, prepare patient for OR when necessary. | Direct observation and feedback from faculty, attending(s), nurses, peers, and patients <br><br> Review of patient outcomes |

*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203**
**803-256-2657, FAX 803-933-9545**

USC(Irani)0881



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

|  | Devise appropriate plan of action for care. Then call senior resident or attending. |  |
|---|---|---|
| Medical Knowledge:<br>IV.A.5.b) Residents must demonstrate knowledge of established and evolving biomedical, clinical, epidemiological and social behavioral sciences, as well as the application of this knowledge to patient care. | Read all assigned articles/chapters for conference. Be prepared to have interactive discussion/answer questions based on the assigned reading.<br>When on call over weekend, be prepared and present patients at fracture conference. Be prepared to discuss fracture classification, treatment options, outcomes, etc. | Direct observation and feedback from faculty, attending(s), and peers |
| Systems Based Practice:<br>IV.A.5.c).(1) identify strengths, deficiencies, and limits in one's knowledge and expertise | Respond to constructive criticism in an appropriate and professional way. Admit and apologize for mistakes and be willing to endorse personal flaws. Take immediate action to correct deficiencies. | Direct observation by program director and faculty |
| Interpersonal and Communication Skills:<br>IV.A.5.d).(1) communicate effectively with patients, families, and the public, as appropriate, across a broad range of socioeconomic and cultural backgrounds;<br>IV.A.5.d).(2) communicate effectively with physicians, other health professionals, and health related agencies;<br>IV.A.5.d).(3) work effectively as a member or leader of a health care team or other professional group | Morning list ready by specified time daily set by chief resident. List includes up to date labs, vitals, patient plans, antibiotics, UOP, drain output, etc.<br>All assigned patients appropriately rounded on before morning conference.<br>Present to conference room by 6:25am every morning.<br>Report to OR and/or clinic immediately after conference is concluded.<br>Be on time to all assigned outpatient clinics.<br>Check out every day at the end of the day with chief resident regarding inpatients.<br>Communicate clearly and effectively with attending, ancillary staff, peers and families.<br>Respond appropriately to text messages and emails in a timely fashion.<br>Perform postoperative checks on all patients operated on, or needing postoperative checks at end of day.<br>Perform discharge or transfer summaries in a timely fashion, including patients as instructed by chief resident and/or attending, regardless of your involvement in the patient's care. | Direct observation and feedback from faculty, attending(s), nurses, peers, and patients |

*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203**
**803-256-2657, FAX 803-933-9545**

USC(Irani)0882



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

| | | |
|---|---|---|
| | Perform other duties as assigned by attending / senior resident with a good attitude.<br>If holding call pager during day, keep attending informed on whereabouts when seeing consults/attending to call issues.<br>Return phone calls, pages in timely fashion.<br>Work effectively and efficiently within the patient care team, including nurses and ancillary staff. | |
| Professionalism:<br>IV.A.5.e).(6) commitment to excellence and ongoing professional development | Commit to immediate and sustained improvement in all areas listed above. | Direct observation by attending(s) and faculty |
| Practice Based Learning and Improvement: | | |

### Additional remediation requirements

| Standards of Behavior | Dr. Irani to review and adhere to Palmetto Health's Standards of Behavior – available at http://residency.palmettohealth.org/documents/Graduate%20Medical%20Education/Resident%20Manual%202011-2012.pdf |
|---|---|
| Counseling support | Dr. Irani to arrange counseling sessions through PH's E-Care program; to attend sessions on schedule recommended by E-Care counselor; to provide recommended schedule of sessions to Program Director; and to provide electronic verification of attendance at each session to Program Director within 48 hours of each session. |

### Feedback on remediation progress

| Attending feedback | Formative feedback provided by attending(s) twice per month. Dr. Irani to arrange times with attending(s). |
|---|---|
| Program Director feedback | Monthly feedback sessions with Program Director. Dr. Irani to arrange times with program Director. |

**Program Director signature and date:**

_____

DEPARTMENT OF SURGERY
Two Richland Medical Park, Suite 402, Columbia, SC 29203
803-256-2657, FAX 803-933-9545

USC(Irani)0883



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

***Resident verification:*** I have reviewed and discussed the contents of this form with my program director and understand that immediate and sustained improvement is required. Failure to correct the deficiencies noted above may result in further action up to, and including, dismissal from the residency program. I know where to get a copy of the Palmetto Health Grievance and Due Process Policy from the Palmetto Health web site at http://residency.palmettohealth.org/documents/Graduate%20Medical%20Education/Resident%2 0Manual%202011-2012.pdf

**Resident signature and date:**

_____

USC(Irani)0884

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Friday, March 09, 2012 9:58 AM |
| **To:** | John Walsh; Kathy.Stephens@PalmettoHealth.org; Jennifer, Wood; Greg Grabowski; jhoov14@yahoo.com |
| **Subject:** | FW: Level III remediation |

FYI
dk

---

**From:** Afraaz Irani [afraaz.irani@hotmail.com]
**Sent:** Thursday, March 08, 2012 11:17 PM
**To:** David Koon
**Subject:** RE: Level III remediation

Dr. Koon,
Thank you for giving me the opportunity to respond to the events surrounding the two patients in question. Below is the description of events surrounding the patients:
Regarding the haemophiliac patient with LLE swelling:

The patient presented with swelling of his LLE. He had last been examined at about midnight and would be examined again at 6AM. I was asked to perform a serial exam on the patient at "about four o clock." I saw the patient for follow-up check at about halfway between the two projected exam points for possible eval for compartment syndrome (at about 2:30AM on 3/1/12). The patient was in no acute distress, but he did have a slight grimace on his face when I walked in (he was moving his left lower extremity at that time). I asked him if he was about the same, worse or better. He stated that he "felt the same." His LLE was elevated on 3 pillows. Compartments felt similar in pressure to before. Patient was able to wiggle his toes. Some pain on passive ROM of left ankle -- again unchanged from before. Mild numbness on the dorsum of foot -- similar to slightly improving from exam a few hours ago. Strong DP pulse. Foot was warm and well perfused.

Regarding L.O. (the spinal patient):

I was called sometime after 11:30AM on 2/24/12 by the nurse stating that the patient was having difficulty moving RLE with PT today. I knew the patient was having more pain of the RLE with activity, and asked the nurse to verify if there was a neuro deficit, or if this was compensation for pain (nurse had not assessed the patient, only saying what PT had said). I received repeat page from the nurse 20-30 minutes later saying the patient was unable to dorsiflex her foot. At that point I left clinic and went across the street to see the patient. She was in the restroom. I waited for several minutes, for her to finish. She remained on the toilet. I notified Dr. Grabowski that she was on the toilet and what happened. Several repeat attempts were made to see patient.
As soon as patient was done on the toilet, I personally assisted her from the bathroom to her bed. She was noted to have some difficulty dorsiflexing right foot while ambulating. She was dragging her right foot. I helped her to the bed. My exam revealed 2/5 R knee extension

1

USC(Irani)0885

strength. She was unable to flex her knee, ankle dorsiflex or plantar flex, but was able to wiggle her toes on the right. She maintained a good DP pulse. I completed my exam, and she became tearful and emotional, and I spent some time at bedside consoling and discussing my findings with her and attempting to let her know that we would do whatever needed to be done – I told her I would discuss all my findings with Dr. Grabowski and he would be by soon to see her.

I notified Dr. Grabowski of these findings. I notified him that the patient had difficulty walking and almost no motor function in the right quad/hamstring/gastroc/soleus muscle group. Dr. Grabowski informed me that my exam was incongruent with my observation of the patient walking, and that there was likely an error in my exam. Accordingly I did not write a note at that point; I had previously been directed to not write notes in the chart with findings that may be incongruent (this came up with regards to leg length discrepancy in a prior patient). Accordingly I did not write a note as I was led to believe that my physical exam findings were inaccurate, and I did not want to put something potentially damaging on the chart, until I could fully discuss this with my attending.

The patient was subsequently examined by Dr. Grabowski and he told me via phone to order a stat MRI. I placed the order for the MRI and called radiology and told them to expedite the scan as this was for a possible stat OR case. They informed me there were two patients currently in the scan or scanner area (one was a PICU patient). I told them to do whatever they could do to expedite this scan as there was potential permanent neurological damage at risk here. I stayed in touch with radiology. The scan was again slightly delayed when the patient was unable to be transferred over to the scanner from the stretcher because she required a push of IV morphine which I gave a verbal for the nurse to give. Subsequently, the scan was completed and as soon as the scan was done I communicated to Dr. Grabowski that the scan was completed, and what the findings were. The patient was then scheduled for an emergent decompression in the OR. There was obviously very real gravity to this case, and I did not ask any additional questions of the attending or say anything in addition to the information I was required to communicate. I scrubbed in on the case until Dr. Hoover scrubbed in and told me to break scrub.

Thanks,
Afraaz

> From: David.Koon@uscmed.sc.edu
> To: Afraaz.irani@gmail.com; John.Walsh@uscmed.sc.edu; Kathy.Stephens@PalmettoHealth.org
> Date: Mon, 5 Mar 2012 14:40:12 -0500
> Subject: Level III remediation
>
> Afraaz -
>
> Please review the attached memorandum.
>
> I would like to have your recollection of events surrounding both patients by the end of the week.
>
> Feel free to contact any of the faculty or Dr. Stephens if you have questions.
>
> DK
>
> -----------------------------------------

2

USC(Irani)0886

>
> This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0887

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|---|---|
| Sent: | Friday, March 16, 2012 6:20 PM |
| To: | Carrie Jarrard; Kathy.Stephens@PalmettoHealth.org; Margie Bodie |
| Subject: | RE: paycheck |

Carrie -

I'll forward this to Dr. Stephens and Margie Bodie for their input...

DK

---

From: Carrie Jarrard
Sent: Friday, March 16, 2012 12:16 PM
To: David Koon
Subject: FW: paycheck

Dr. Koon,

Sorry to bother you with this but could you confirm this is true, at least the part of when he was informed? I've spoken with Payroll and apparently the Change of Status form, or perhaps the email accompanying it, stated that he should be paid RETRO March 1st. Basically, I just need to know if he needs to be paid for March 1st or not.

Please advise. Thanks for your help.

Carrie E. Jarrard, MBA
Business and Operations Manager
USC Dept. of Orthopaedic Surgery and Sports Medicine
(803) 434-7720 (office)
(864) 680-6718 (cell)
(803) 434-7306 (fax)

From: Afraaz Irani [mailto:afraaz.irani@gmail.com]
Sent: Thursday, March 15, 2012 3:59 PM
To: Carrie Jarrard
Subject: paycheck

Hey are you in charge of submitting the weekly work hours since Michelle is no longer in charge? My last paycheck for the pay period ending 3/3/12 only paid me for 64 hours worth of work over the two weeks. I was post call on Thursday March first and completed my work day for the first.

I was informed that evening of Thursday March 1st, that I did not need to come in the next day (Friday march 2nd). As I worked a complete shift on the 1st, I only missed one day (one eight hour shift) -- I should have been paid for 72 hours not 64. Can we correct this on the next billing cycle?

Thanks,
Afraaz
650-353-8523

1

USC(Irani)0888

-------------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0889

| From: | David Koon <David.Koon@uscmed.sc.edu> |
|-------|---------------------------------------|
| Sent: | Friday, March 30, 2012 5:08 PM |
| To: | Carrie Jarrard; Kathy.Stephens@PalmettoHealth.org; John Walsh |
| Cc: | Tonya Holmes |
| Subject: | RE: paycheck |

Carrie / Tonya -

I'll forward this to Dr. Stephens and Dr. Walsh for their input.  Given that Dr. Irani is currently suspended without pay, I would assume that he is NOT allowed to use residency / departmental funds at this time.

Thanks

DK

_____

From: Carrie Jarrard
Sent: Friday, March 30, 2012 2:00 PM
To: David Koon
Cc: Tonya Holmes
Subject: FW: paycheck

Dr. Koon,

I wanted to forward this on to you before replying incorrectly.  I am not sure how his change of status affected his book money.  Please advise.

Thanks!

Carrie E. Jarrard, MBA
Business and Operations Manager
USC Dept. of Orthopaedic Surgery and Sports Medicine
(803) 434-7720 (office)
(864) 680-6718 (cell)
(803) 434-7306 (fax)

From: Afraaz Irani [mailto:afraaz.irani@hotmail.com]
Sent: Friday, March 30, 2012 1:22 PM
To: Carrie Jarrard
Subject: RE: paycheck

Hey Me. Jarrard,

Who is in charge of book money/book ordering? I spoke with the USC bookstore, since it's through the ortho department we get a 20% discount, they just need to be emailed (weber4@mailbox.sc.edu<mailto:weber4@mailbox.sc.edu>) the titles.

I know we have $800 in book money. I wanted to purchase the following three books with my book money:

1

USC(Irani)0890

Surgical Anatomy and Techniques to the Spine + Image bank CD-ROM
   ISBN-13: 9781416003137

                      ($274)

Tachdjian's Pediaric Orthopaedics, 4th Edition 3-Volume Set with DVD
   ISBN-13: 9781416022213

                      ($580)

Handbook of Fractures: 4th Edition
   ISBN-13: 9781605477602

                      ($72)


Total is $926.
After 20% discount: $740.80
Total after 7% sales tax: $792.66

Thank you for your help.

-Afraaz

_____
From: Carrie.Jarrard@uscmed.sc.edu<mailto:Carrie.Jarrard@uscmed.sc.edu>
To: afraaz.irani@gmail.com<mailto:afraaz.irani@gmail.com>
Date: Tue, 20 Mar 2012 09:02:31 -0400
Subject: FW: paycheck
Dr. Irani,
See the below email chain regarding your hours worked the week in question.  Apparently the change of status form stated "retro March 1st" which payroll took as only "up to".  I'm glad you caught that.  It appears that the right people now know about and are fixing the problem.  I'm not sure how long it will take to process, but please let me know if you don't hear/see anything by next week and I'll follow back up.
Thanks and best of luck.

Carrie E. Jarrard, MBA
Business and Operations Manager
USC Dept. of Orthopaedic Surgery and Sports Medicine
(803) 434-7720 (office)
(864) 680-6718 (cell)
(803) 434-7306 (fax)

From: Katherine Stephens [mailto:Kathy.Stephens@PalmettoHealth.org]
Sent: Monday, March 19, 2012 9:13 AM
To: Margie Bodie; Carrie Jarrard; David Koon
Subject: RE: paycheck

Carrie,

No retro pay was involved in this situation - just payment through, and including, March 1st and suspension without pay beginning March 2nd.  Not sure why the word "retro" was used. I'll ask Margie Bodie to contact you to make any necessary COS adjustments.  In the meantime, Dr. Irani should be paid for March 1st.

USC(Irani)0891

Katherine G. Stephens, PhD, MBA, FACHE
Vice President, Medical Education and Research ACGME Designated Institutional Official Palmetto Health Fifteen
Medical Park, Suite 202 Five Richland Medical Park Drive Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org<mailto:katherine.stephens@palmettohealth.org>

>>> David Koon
>>> <David.Koon@uscmed.sc.edu<mailto:David.Koon@uscmed.sc.edu>>
>>> 3/16/2012 6:19 PM >>>
Carrie -

I'll forward this to Dr. Stephens and Margie Bodie for their input...

DK

_____
From: Carrie Jarrard
Sent: Friday, March 16, 2012 12:16 PM
To: David Koon
Subject: FW: paycheck

Dr. Koon,

Sorry to bother you with this but could you confirm this is true, at least the part of when he was informed?  I've spoken
with Payroll and apparently the Change of Status form, or perhaps the email accompanying it, stated that he should be
paid RETRO March 1st.    Basically, I just need to know if he needs to be paid for March 1st or not.

Please advise.  Thanks for your help.

Carrie E. Jarrard, MBA
Business and Operations Manager
USC Dept. of Orthopaedic Surgery and Sports Medicine
(803) 434-7720 (office)
(864) 680-6718 (cell)
(803) 434-7306 (fax)

From: Afraaz Irani [mailto:afraaz.irani@gmail.com]
Sent: Thursday, March 15, 2012 3:59 PM
To: Carrie Jarrard
Subject: paycheck

Hey are you in charge of submitting the weekly work hours since Michelle is no longer in charge? My last paycheck for
the pay period ending 3/3/12 only paid me for 64 hours worth of work over the two weeks. I was post call on Thursday
March first and completed my work day for the first.

I was informed that evening of Thursday March 1st, that I did not need to come in the next day (Friday march 2nd). As I
worked a complete shift on the 1st, I only missed one day (one eight hour shift) -- I should have been paid for 72 hours
not 64. Can we correct this on the next billing cycle?

Thanks,
Afraaz

USC(Irani)0892

650-353-8523

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.
-------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message. --

USC(Irani)0893

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Saturday, August 27, 2011 9:40 AM |
| **To:** | John Walsh; Frank R Voss; Christopher Mazoue; jagdr@aol.com; Greg Grabowski |
| **Subject:** | Dr. Irani |

Just an update about Irani.  He has been placed on Level II academic remediation per the executive comm of the GMEC pending full vote at the GMEC next month.

He was given

---

From: Katherine Stephens [Kathy.Stephens@PalmettoHealth.org]
Sent: Friday, August 26, 2011 10:26 AM
To: Afraaz Irani
Cc: David Koon
Subject: Re: Department of Orthopaedics.

Dr. Irani,

Thank you for your email and the commitment you expressed to improving in the areas identified.  The goal of the academic remediation process is to ensure that a resident physician is provided an opportunity to improve in areas of concern and to achieve competence in these areas.  I am certain that Dr. Koon will appreciate your positive attitude to constructive criticism with the goal of assisting you in achieving competence.

Katherine G. Stephens, MBA, FACHE
Vice President, Medical Education and Research ACGME Designated Institutional Official Palmetto Health Fifteen Medical Park, Suite 202 Five Richland Medical Park Drive Columbia, SC  29203

803-434-6861 or 803-434-4476

katherine.stephens@palmettohealth.org

>>> Afraaz Irani <afraaz.irani@gmail.com> 8/22/2011 10:01 PM >>>
Ms. Stephens,

I was recently informed by Dr. Koon, that he would be taking steps to suggest I be placed on academic remediation.

I was very surprised and disappointed to hear this given the positive comments from my peers.

I was handed a sheet with specific complaints against me and told to send you an email to explain the following issues. Please allow me to explain myself regarding the seven points outlined in Dr. Koon's letter:

1. Dr. Irani demonstrated significant lack of compassion and empathy in a patient's care in the initial trauma resuscitation. Mr B sustained a near forearm amputation and Dr. Irani failed to provide adequate pain medication and ignored nursing requests for same during his initial evaluation. During this encounter he request the nurse to lie about the initial irrigation / debridement of the traumatic wound.

USC(Irani)0894

I always demonstrate the highest level of compassion and empathy in a patient's care. There are many individuals involved in the resuscitation. My job as the orthopaedic resident is to manage the orthopaedic injury in conjunction with the attending. I was consulted on Mr. B after the ER physicians had evaluated the patient and I was at the patient's bedside within 10 minutes. At the time of my evaluation the patient had already received pain medication. Given the severity of the trauma in this 82 year old gentleman, the severity of the pain would not have been controlled to a level that the nurse in question was attempting to achieve by a safe level of pain medications.

As part of my initial assessment, I unwrapped the initial dressing and given the severity of what was discovered, I immediately consulted my attending for immediate patient care and plan for OR.

Regarding the accusation about lying about patient care; this is a misinterpretation of the nurse about my comments regarding irrigation. My comments to her were meant to say that usually we irrigate with two liters and I was surprised that an ER physician would irrigate with only one liter. So my statement that it was two liters was under the assumption that routine clinical practices were being followed. I did not irrigate as we already had a plan to go to the OR. My comments to nurse are meant to reinforce what is usually done. However I was not personally involved, nor did I document any irrigation in my note as I did not perform any irrigation, nor was I present during any irrigation.

2. He has repeatedly demonstrated poor communication with patients, families, peers, and attending physicians.

I appreciate the fact that these issues have been brought to my attention but as the incident with the nurse above illustrates, I may have been misunderstood. Therefore I will increase my efforts to ensure I am being properly understood, including repeating what I have requested when appropriate. I appreciate the opportunity to spend time focusing on improving my communications skills with the grand rounds presentation which will be prepared in the time provided, as that is important to patient care, regardless of the care giver.

As part of my effort to improve communication, I will notify the appropriate attendings or peers regarding patients who I have been contacted about on call, so that incidents such as the VA patient (below), who I was told by the ER attending that I do not need to see, do not recur. This will also reduce interruption in patient care. This would be along the same lines as patient care/sign outs and hand-offs and understanding what has been accomplished and what remains to be done with patient care.


3. He has repeatedly demonstrated poor time management with frequent tardiness to required conferences, clinics, and the operating room.

4. He does not demonstrate effective prioritization of clinical duties. This has resulted in additional duties for other residents.

Many of these items are likely related to times when I have been required by my supervisors and/or attending to remain in one location when I am expected in another location. I frequently contact the location where I am expected to be and notify the nurses so that they may appropriately coordinate patient care. In the future, I will instead speak directly with the physician who is expecting me so that there is no confusion regarding perceived tardiness.

Regarding the additional duties for other residents. I always complete my work that's been assigned to me, often staying beyond recommended work hours, as I do not think it appropriate to burden fellow residents. No resident has brought to this my attention and when I requested that they do so, each of them stated there was no issue. If there are specific instances, I would be happy to help out whoever the resident who was burdened with my duties.

5. He has provided substandard care (e.g. closing wound with Vicryl suture; not evaluating a VA total joint patient with post-operative cellulitis).

Whenever I have been notified of errors. In the future I will proactively make my supervisors/attendings aware of a plan of care, and modify as guidance is provided to insure patients never receive substandard care.

6. He received substandard evaluation during his internship.

Once these evaluations were made known to me, I made significant improvements based on suggestions that were provided to me. Whenever my superiors raised issues I make every effort to address them and more recent evaluations reflect that. For example in my initial evaluation with trauma, I had the opportunity to discuss my performance with Dr. Bynoe. He offered good constructive suggestions for improvement, which I was glad to receive. I implemented them on my subsequent rotation, and my evaluation seems to reflect that.

7. He has displayed a significant lack of attention to detail in his initial PGY-2 rotation.

This might be related to perceived forgetfulness in the OR. Although I think that this too may be related to lack of communication. I am not just leaving things lying around. I am leaving them for specific individuals. I did not however mention that to the individual involved and that gets back to my need for improved communication.

2

USC(Irani)0895

I really appreciate your help and understanding in this matter. I take these allegations seriously as there are cases where an action like this precludes one from a fellowship, and results in significant difficulty obtaining a job.

I hope you will consider my statements above, and if there are any questions, I would be more than happy to provide third party references to substantiate the above statements, and/or speak with you in person or over the phone.

Thank you for your kind understanding.
Afraaz
650-353-8523<tel:650-353-8523>
------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law.  If you have received this communication in error, please notify me immediately.


----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0896

**From:** David Koon <David.Koon@uscmed.sc.edu>
**Sent:** Tuesday, November 29, 2011 7:14 PM
**To:** John Walsh; Jennifer, Wood; jhoov14@yahoo.com; Kathy.Stephens@PalmettoHealth.org
**Subject:** Dr. Irani
**Attachments:** Irani MoR 3.docx

Please see the attached MoR.

We will meet with Dr. Irani at our next faculty meeting on Monday, 05 DEC 11.

dk

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0897



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE
UNIVERSITY SPECIALTY CLINICS

29 NOV 11

Memorandum of Record

Re: Dr. Afraaz Irani (PGY-2 Orthopaedic Resident)

Dr.s David Koon and Jennifer Wood (orthopaedic chief resident) met with Dr. Irani on Monday, 21 NOV 11 to discuss his remediation process. We had a very frank discussion with Dr. Irani regarding his remediation measures. Dr. Irani stated that he believed he was doing well and improving in all areas.

Dr. Wood had several instances where she believed Dr. Irani was still performing below his level of training. These included failures to complete assigned tasks (eg. morning patient list).

I informed Dr. Irani that his email to me regarding the completion of a delinquent narrative summary was inappropriate. (see below) His failure to timely complete assigned tasks, as well as his sense of entitlement, was unprofessional and inappropriate.

Dr. Irani has been verbally counseled regarding inappropriate patient care during a pain management problem with one of Dr. Walsh's post-operative patients.

Dr. Irani asked about the pending recommendations of the faculty re: his remediation. I informed him that the final decision had not been finalized, but I thought that we would transition him to level I remediation. After a long sigh and a rolling of the eyes, Dr. Irani informed us that this decision would only continue his "overhead." When questioned about this statement, he informed us that he had been "documenting" his activities and that he would have to continue this process until he was "off of probation." He appeared to be completing a "log" in order to disprove allegations of tardiness.

Dr. Irani failed to properly assess and manage a patient of Dr. Koon's with post-operative wound drainage and infection after she called twice over a three day weekend (25-27 NOV 11).

Dr. Irani failed to abide by his attending surgeon's instructions during Staff clinic (28 NOV 11) and was argumentative when confronted by his chief resident.

Dr. Irani continues to display behaviors which are inappropriate and unprofessional. His progress will be re-evaluated at our next faculty meeting on Monday, 05 DEC 11. We have asked for his presence at this meeting.

David E. Koon, Jr., MD
Program Director

USC(Irani)0898



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS

RE: VA patient
David Koon
Sent: Thursday, November 03, 2011 9:39 PM
To: Afraaz Irani [afraaz.irani@gmail.com]; jhoov14@yahoo.com; Jennifer, Wood [jhwood23@gmail.com]; John Walsh

Dr. Irani -

I am well aware of the facts surrounding this patient's care and do not need you to remind me of the details.

I'm amazed that, as the junior resident of the PH team, you feel somehow inconvenienced by having to dictate a discharge summary on a patient that you "never actually participated" in his care. I guess that I'm supposed to be thankful that you "have gone ahead and dictated the discharge summary" for me. Absolutely incredible...I can assure you that I would have NEVER in a million years sent a response like this to my program director, especially when I was in the midst of academic remediation.  I would remind you that I had asked you THREE times to get this done. Instead of saying "No sweat Dr. Koon, I'll take care of it" and getting it done, I get this dribble.

I really am at a loss for words.  Jennifer / Justin - I'm open to any suggestions.

DK

_____
From: Afraaz Irani [afraaz.irani@gmail.com]
Sent: Thursday, November 03, 2011 6:24 PM
To: David Koon
Subject: VA patient

Hey Dr. Koon,

Just to follow up regarding the VA patient. That patient was transferred from the VA. Hoover did the H&P. The patient was seen by Drs. Wood and Walker. I actually never participated in the patient's care, and am not sure how I am responsible for the discharge order. The only thing I can think of is that Dr. Wood asked me to put in the discharge order. Anyways I have gone ahead and dictated the discharge summary for your review.

Thanks,
Afraaz

*DEPARTMENT OF SURGERY*
**Two Richland Medical Park, Suite 402, Columbia, SC 29203**
**803-256-2657, FAX 803-933-9545**

USC(Irani)0899

| From: | David Koon <David.Koon@uscmed.sc.edu> |
| Sent: | Wednesday, May 09, 2012 10:14 AM |
| To: | Tonya Holmes |
| Subject: | Irani rotation schedule |

Tonya -

Please forward a copy of Dr. Irani's rotation schedule for his PGY2 year to Dr. Walsh.

THX

dk

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0900

| | |
|---|---|
| **From:** | David Koon <David.Koon@uscmed.sc.edu> |
| **Sent:** | Tuesday, July 31, 2012 7:36 AM |
| **To:** | Tonya Holmes |
| **Subject:** | RE: Summative Evaluation_Non Graduate_ Irani |

Please print this out as a final and I'll sign it.

When I tried to print it the" Program Director " signature line was messed up.

DK

_____

From: Tonya Holmes
Sent: Tuesday, July 17, 2012 11:29 AM
To: David Koon
Subject: Summative Evaluation_Non Graduate_ Irani

Thank you,

Tonya Holmes

Tonya Holmes
Residency Program Coordinator
USC SOM Orthopaedic Surgery
Two Medical Park, Suite 404
Columbia, South Carolina 29203
(803) 434-6879- office
(803) 434-7306- fax

[cid:image001.jpg@01CD640F.65C356C0]

----------------------------------------

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law.  If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0901

| | |
|---|---|
| **From:** | Diane Savage <Diane.Savage@PalmettoHealth.org> |
| **Sent:** | Wednesday, April 04, 2012 3:43 PM |
| **To:** | David Koon |
| **Subject:** | Re: TF 375 |

I have pasted the e-mails. Let me know if you need anything else. Diane
To whom it may concern:

I am writing this letter because I had the privilege to provide care to the patient brave ████████████, Trauma Female 375 on Wednesday December 7, 2011. Unfortunately during her stay in the ED the treatment provided was less than adequate and not up to Palmetto Health Richland?s Policies or Standards of Care. Ms. ████████ was involved in a head on collision with prolonged entrapment, was flown in by Lifenet and sustained injuries which included: bilateral femur fractures, open right ankle fracture and open left humerus fracture with dislocation of the left elbow.

My care started in the Trauma Bay with the patient to the CT scanner, back to the trauma bay for additional x-rays, to my assigned room in the ED and ended in the block room in preparation of surgery. I felt that overall the treatment of the patient in the Trauma bay was adequate. We were able to stabilize the patient?s blood pressure there with fluid boluses and control her pain as best we could with fentanyl. The CT scans took longer than normal apparently there was an issue with the contrast dye but still the patient?s vital signs and pain was controlled. The patient was transported to trauma 1 for x-rays. At this time I met with the patient?s family and asked them if they had been updated by anyone. The mother and father of the patient said, ?no one had come and told them anything?. It was at that time I explained the injuries that I knew to the family and reassured them that she had stable vital signs and at that time and we were controlling the patient?s pain. I also told them there was a chance she might have to go to surgery that same day due to the nature of the injuries but that the physicians would talk to them more about that. I asked Dr Loflin to update the family and she said she couldn?t till all the films were back. I asked Dr. Loflin were I could bed board the patient for and she answered with, ?I can?t give you an answer till all the films are back?.

     The problems really began happening when the orthopedic resident arrived for the consult and met the patient in the trauma bay. While we were trying to get a Foley catheter in the patient, (she desperately had to urinate). Dr. Nathe began examining the patient?s right ankle by removing the splint and ace wrap in the trauma bay before even introducing herself to the patient. Blood was heavily flowing out of the patients open ankle. Bleeding had been controlled prior to removing the splint and ace wrap. Once the x-rays were completed the split was put back on and ace wrap re-applied and the patient was transferred to room 254. Shortly after the patient arrived to the ED room I became aware due that the patient?s hemoglobin had dropped from 10 to 7. An order for 4 units of PRBC was obtained from Dr. Loflin and I sent a tech down to retrieve 2 units at a time. I overheard Dr. Nathe on the phone trying to get in touch with some other ortho. resident to help her with ?the wash out and reduction?. Apparently she got in touch with Dr. Irani. Dr Nathe asked me to gather several supplies and for the reduction of the right ankle and left elbow. I told her at that time we needed to get a consent signed. She responded ?What? We are not doing a conscious sedation only a reduction?. I told her that I understood that but that we still needed to obtain consent for a procedure. Dr. Nathe stated, ?well I have never had to do that?. I filled out the consent for with the procedures she said we were doing and left it at the patient?s bedside. I gathered all the supplies and as I was coming around the corner to the room and heard Dr. Loflin tell Dr. Nathe, ?just do what she says?.

1

USC(Irani)0902

The patient requested that her mom be there in the room with her. I asked Dr. Nathe and she agreed it would be fine. When Dr. Irani arrived he said in front of the patient (after Dr. Nathe said it was okay) that her mom could not come back. This was all discussed at the patient?s bedside.

Again I inquired about obtaining consent. Dr. Irani said, ?Oh no we don?t need consent for this?. My consent form remained unsigned at the bedside. Dr Irani introduced himself and said to the patient, ?You know you have a broken ankle right; you know your arm is broken too, right?? Ms. ████ answered ?yes?. At this time the blood arrived and I could not get into the room to hang it. I said, ?Hey can I get around so I can hang the blood?. It was like I was invisible to Dr. Nathe and Dr. Irani. They had the C-arm blocking the end of the bed and doorway and had turned the patients bed so there was no way around to the pumps etc. Finally the Ortho Tech Toni pushed the C-arm so I could duck underneath it to get around. At this time the right ankle splint was removed and blood began gushing out of patient?s ankle all over the C-arm and onto floor. Dr Irani asked me, ?Can you get me chucks pads please?. I responded, ?I will as soon as I get this blood started?. At this time the patients systolic was hovering in the 90?s and she was obviously in need of pain meds. I continued to give patient the prn doses of fentanyl to control her pain during this procedure. Her blood pressure was too low to tolerate the Morphine PCA and Loflin told me to hold off. I was bolusing the PRBC?s with at warmer. At this time I was basically trapped in and was able to witness the cruel treatment of this patient. Dr. Irani and Dr. Nathe began working on the ankle washing out the open bleeding fracture with NS and soaking the patient and all her linens in the process. The patient was shivering. As Dr. Nathe was working on the ankle Dr. Irani unwrapped with left humerus to begin working on it. He said, ?Oh this is open?? Dr. Nathe said, ?No one told me?. Really you are the ortho. resident who has examined the patient and you aren?t clear on her injuries. I was in complete shock that they were talking about the patient as if she couldn?t hear them. She was totally awake, totally alert with tears in her eyes. Dr. Irani asked me if I would assist him with placing the patient?s hand in the finger trap. I did so, but did not understand why Nathe or the tech did not. Post right ankle reduction (while looking at the fracture with the c-arm), Dr. Nathe said, ?Uh look at this, that?s not good?. Dr. Irani said, ?Can you turn it to the left a little?. He said, ?Well it?s not going to get fixed down here?. They were talking again like the patient was not there. I managed to transfuse 3 units of the PRBC?s during this time and the patients BP was in the 120?s. Once ortho. left the room I got extra staff to help turn the patient to get her off the saline and blood soaked linens.

At this time I could tell the patient was worried and I asked her what was wrong. Ms. ████ told me, ?I have always gone to Palmetto Baptist before and it just seems like everything here is disorganized, and I am worried about the people taking care of me?. She said, ?Not you two? speaking to Marie B. PCT and myself. She said, ?The doctors, I am just worried I won?t be able to walk again?. I did the best I could to reassure the patient and make sure she was as comfortable as I could make her. I told her she was in good hands and I was sorry that it had felt disorganized. Although in my heart I couldn?t blame or contest anything that she was saying. Directly following the reduction in the ER Vicki RN from the OR called saying they were ready for the patient to come to the block room and wait for surgery.

I couldn?t believe it, an hour plus had gone by of pain and extensive bleeding for this patient in an ER room and the fractures were not even fixed and now the OR was ready to take the patient to surgery where all this should have been done in the first place. There the patient could have been unaware of the pain, not felt cold, not felt fear. She would have been comfortable. This is what I would have wanted for my family and friends. This is what our standards should be and what this facility is capable of. Don?t physicians take an oath to first do no harm? Well what were they doing? I don?t know but in my 5 years at PHR ER I have never felt so uneasy, so upset or like I had to help save the patient from what was going on.

Early on I had gotten the Charge RN, Arlene Vance and Diane Savage involved in what was happening. They were very supportive to me and made the appropriate phone calls. Before the patient went to the OR,

USC(Irani)0903

Dr. Jones came down and explained the surgery and the injuries to the patient. The patient verbalized her understanding. The AOD, Mike was present as well. Before the patient left for surgery the surgery checklist was obtained, consent signed and 4th unit of PRBC?s were hung.

My hope is that we can learn from this. Learn to work together for the patient. The Nurses are there to advocate for the patient and make sure things are done according to policy. Let?s not forget we are caring for a person not just fixing bones. We need to look at the whole picture. Let?s not forget about the family and the patients requests. I hope this never comes close to happening again.

Elaine Simon, RN

I was just writing this E-mail to let you know that I was working in pod 5 when the pt. came in, I actually helped Elaine Simons, RN take care of the pt. from the trauma bay 2 and continued through her stay in pod 5... We both, Elaine and I were in the room and she was getting her ready to go to the OR and she became very nervous and looked like she wanted to say something but not sure how she could say it..... Elaine asked her what she was thinking about and she stated that she was very uncomfortable with the Ortho Residents that were just in her room.... She said that she only gone to Baptist and that this was very unorganized and she was scared.. We tried to assure her that it was going to be ok but you could tell that she still felt very uncomfortable.... Elaine then left the room to speak with Diane about the way the pt. felt and I stayed with her for a little bit to see if I could calm her nerves a little by talking to her and she stated that she felt like she was just thrown around and it was very scary and she was very uncomfortable with the surgery doctors.... I then stated that I would let her nurse know and my charge Nurse at the time was Diane know and Im sure we would be addressing the situation and she smiled and said thank you so much for everything you have done for me today. The Doctors names were: Dr. Irani and Dr. Natche... Elaine, Diane, and Arlene were at her bedside talking with her... The next thing I know is that Dr. Jones the Attending was in the room and spoke with the family and the pt. and she felt better. When I went back in there Elaine, Diane and Arlene were with her and Diane was holding her hand and stated to her that she was in good hands.... She stated to me that she wanted to say thank you and that just talking was a big help... and to thank Elaine, Diane, Arlene and myself for understanding and making her feel better...
Marie Brady

>>> David Koon 04/04/12 7:39 AM >>>
Diane -

Do you happen to have a copy of your memorandum detailing your care of Trauma,F 375 (Dec 7, 2011). I had an earlier email from you to Dr. Raymond, but could not open your attachment.

Thanks

David

-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

-------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the

USC(Irani)0904

intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

-------------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0905

| | |
|---|---|
| **From:** | Diane Savage <Diane.Savage@PalmettoHealth.org> |
| **Sent:** | Wednesday, April 04, 2012 7:28 PM |
| **To:** | David Koon |
| **Subject:** | RE: TF 375 |

I just found the other e-mail....will paste below:

Dr Koon,

Attached is Elaine's detailed account of treatment for ███████████. As you and I discussed yesterday, I requested Dr Irani accompany me to update patient's family following the reduction as well as talk again to Ms ██████ with family present given her valid concerns about surgery and care received. We then contacted the AOD, Mike Rawl, who paged Dr T Jones. Dr Jones immediately came to the ED and talked with Ms ██████ and her family. He thoroughly explained all injuries, plan for care, and answered all questions. Following this, Ms ██████ was taken to the OR.

Reiterating Elaine's account, it was as if Drs Irani and Nathe were twisting and turning the limbs of a toy doll instead of a human being. Through this entire ordeal the patient was awake, oriented and fully aware about what was going on, as well as tearful. There were no visible or verbal compassionate efforts by either to provide comfort or lessen her fears.

If you need any further information or clarification, please do not hesitate to email or call. Arlene Vance, RN

**Arlene Vance, RN, BSN**

>>> David Koon 04/04/12 6:03 PM >>>
thx diane!

dk

_____

From: Diane Savage [Diane.Savage@PalmettoHealth.org]
Sent: Wednesday, April 04, 2012 3:43 PM
To: David Koon
Subject: Re: TF 375

I have pasted the e-mails. Let me know if you need anything else. Diane

To whom it may concern:
I am writing this letter because I had the privilege to provide care to the patient brave ███████████, Trauma Female 375 on Wednesday December 7, 2011. Unfortunately during her stay in the ED the treatment provided was less than adequate and not up to Palmetto Health Richland?s Policies or Standards of Care. Ms. ██████ was involved in a head on collision with prolonged entrapment, was flown in by Lifenet and sustained injuries which included: bilateral femur fractures, open right ankle fracture and open left humerus fracture with dislocation of the left elbow.
My care started in the Trauma Bay with the patient to the CT scanner, back to the trauma bay for additional x-rays, to my assigned room in the ED and ended in the block room in preparation of surgery. I felt that overall the treatment of the patient in the Trauma bay was adequate. We were able to stabilize the patient?s blood pressure there with fluid boluses and control her pain as best we could with fentanyl. The CT scans took longer than normal apparently there was an issue with the contrast dye but still the patient?s vital signs and pain was controlled. The patient was transported to trauma 1 for x-rays. At this time I met with the patient?s family and asked them if they had been updated by anyone. The mother and father of the patient said, ?no one had come and told them anything?. It was at that time I explained the injuries that I knew to the family and reassured them that she had stable vital signs and at that time and we were controlling the patient?s pain. I also told them there was a chance she might have to go to surgery that same day due to the nature of

1

the injuries but that the physicians would talk to them more about that. I asked Dr Loflin to update the family and she said she couldn?t till all the films were back. I asked Dr. Loflin were I could bed board the patient for and she answered with, ?I can?t give you an answer till all the films are back?.

The problems really began happening when the orthopedic resident arrived for the consult and met the patient in the trauma bay. While we were trying to get a Foley catheter in the patient, (she desperately had to urinate). Dr. Nathe began examining the patient?s right ankle by removing the splint and ace wrap in the trauma bay before even introducing herself to the patient. Blood was heavily flowing out of the patients open ankle. Bleeding had been controlled prior to removing the splint and ace wrap. Once the x-rays were completed the split was put back on and ace wrap re-applied and the patient was transferred to room 254. Shortly after the patient arrived to the ED room I became aware due that the patient?s hemoglobin had dropped from 10 to 7. An order for 4 units of PRBC was obtained from Dr. Loflin and I sent a tech down to retrieve 2 units at a time. I overheard Dr. Nathe on the phone trying to get in touch with some other ortho. resident to help her with ?the wash out and reduction?. Apparently she got in touch with Dr. Irani. Dr Nathe asked me to gather several supplies and for the reduction of the right ankle and left elbow. I told her at that time we needed to get a consent signed. She responded ?What? We are not doing a conscious sedation only a reduction?. I told her that I understood that but that we still needed to obtain consent for a procedure. Dr. Nathe stated, ?well I have never had to do that?. I filled out the consent for with the procedures she said we were doing and left it at the patient?s bedside. I gathered all the supplies and as I was coming around the corner to the room and heard Dr. Loflin tell Dr. Nathe, ?just do what she says?.

The patient requested that her mom be there in the room with her. I asked Dr. Nathe and she agreed it would be fine. When Dr. Irani arrived he said in front of the patient (after Dr. Nathe said it was okay) that her mom could not come back. This was all discussed at the patient?s bedside.

Again I inquired about obtaining consent. Dr. Irani said, ?Oh no we don?t need consent for this?. My consent form remained unsigned at the bedside. Dr Irani introduced himself and said to the patient, ?You know you have a broken ankle right; you know your arm is broken too, right?? Ms. ████ answered ?yes?. At this time the blood arrived and I could not get into the room to hang it. I said, ?Hey can I get around so I can hang the blood?. It was like I was invisible to Dr. Nathe and Dr. Irani. They had the C-arm blocking the end of the bed and doorway and had turned the patients bed so there was no way around to the pumps etc. Finally the Ortho Tech Toni pushed the C-arm so I could duck underneath it to get around. At this time the right ankle splint was removed and blood began gushing out of patient?s ankle all over the C-arm and onto floor. Dr Irani asked me, ?Can you get me chucks pads please?. I responded, ?I will as soon as I get this blood started?. At this time the patients systolic was hovering in the 90?s and she was obviously in need of pain meds. I continued to give patient the prn doses of fentanyl to control her pain during this procedure. Her blood pressure was too low to tolerate the Morphine PCA and Loflin told me to hold off. I was boIusing the PRBC?s with at warmer. At this time I was basically trapped in and was able to witness the cruel treatment of this patient. Dr. Irani and Dr. Nathe began working on the ankle washing out the open bleeding fracture with NS and soaking the patient and all her linens in the process. The patient was shivering. As Dr. Nathe was working on the ankle Dr. Irani unwrapped with left humerus to begin working on it. He said, ?Oh this is open?? Dr. Nathe said, ?No one told me?. Really you are the ortho. resident who has examined the patient and you aren?t clear on her injuries. I was in complete shock that they were talking about the patient as if she couldn?t hear them. She was totally awake, totally alert with tears in her eyes. Dr. Irani asked me if I would assist him with placing the patient?s hand in the finger trap. I did so, but did not understand why Nathe or the tech did not. Post right ankle reduction (while looking at the fracture with the c-arm), Dr. Nathe said, ?Uh look at this, that?s not good?. Dr. Irani said, ?Can you turn it to the left a little?. He said, ?Well it?s not going to get fixed down here?. They were talking again like the patient was not there. I managed to transfuse 3 units of the PRBC?s during this time and the patients BP was in the 120?s. Once ortho. left the room I got extra staff to help turn the patient to get her off the saline and blood soaked linens.

At this time I could tell the patient was worried and I asked her what was wrong. Ms. ████ told me, ?I have always gone to Palmetto Baptist before and it just seems like everything here is disorganized, and I am worried about the people taking care of me?. She said, ?Not you two? speaking to Marie B. PCT and myself. She said, ?The doctors, I am just worried I won?t be able to walk again?. I did the best I could to reassure the patient and make sure she was as comfortable as I could make her. I told her she was in good hands and I was sorry that it had felt disorganized. Although in my heart I couldn?t blame or contest anything that she was saying. Directly following the reduction in the ER Vicki RN from the OR called saying they were ready for the patient to come to the block room and wait for surgery.

I couldn?t believe it, an hour plus had gone by of pain and extensive bleeding for this patient in an ER room and the fractures were not even fixed and now the OR was ready to take the patient to surgery where all this should have been done in the first place. There the patient could have been unaware of the pain, not felt cold, not felt fear. She would have been comfortable. This is what I would have wanted for my family and friends. This is what our standards should be and what this facility is capable of. Don?t physicians take an oath to first do no harm? Well what were they doing? I don?t know but in my 5 years at PHR ER I have never felt so uneasy, so upset or like I had to help save the patient from what was going on.

USC(Irani)0907

Early on I had gotten the Charge RN, Arlene Vance and Diane Savage involved in what was happening. They were very supportive to me and made the appropriate phone calls. Before the patient went to the OR, Dr. Jones came down and explained the surgery and the injuries to the patient. The patient verbalized her understanding. The AOD, Mike was present as well. Before the patient left for surgery the surgery checklist was obtained, consent signed and 4th unit of PRBC?s were hung.

My hope is that we can learn from this. Learn to work together for the patient. The Nurses are there to advocate for the patient and make sure things are done according to policy. Let?s not forget we are caring for a person not just fixing bones. We need to look at the whole picture. Let?s not forget about the family and the patients requests. I hope this never comes close to happening again.

Elaine Simon, RN

I was just writing this E-mail to let you know that I was working in pod 5 when the pt. came in, I actually helped Elaine Simons, RN take care of the pt. from the trauma bay 2 and continued through her stay in pod 5... We both, Elaine and I were in the room and she was getting her ready to go to the OR and she became very nervous and looked like she wanted to say something but not sure how she could say it..... Elaine asked her what she was thinking about and she stated that she was very uncomfortable with the Ortho Residents that were just in her room.... She said that she has only gone to Baptist and that this was very unorganized and she was scared.. We tried to assure her that it was going to be ok but you could tell that she still felt very uncomfortable.... Elaine then left the room to speak with Diane about the way the pt. felt and I stayed with her for a little bit to see if I could calm her nerves a little by talking to her and she stated that she felt like she was just thrown around and it was very scary and she was very uncomfortable with the surgery doctors.... I then stated that I would let her nurse know and my charge Nurse at the time was Diane know and Im sure we would be addressing the situation and she smiled and said thank you so much for everything you have done for me today. The Doctors names were: Dr. Irani and Dr. Natche... Elaine, Diane, and Arlene were at her bedside talking with her... The next thing I know is that Dr. Jones the Attending was in the room and spoke with the family and the pt. and she felt better. When I went back in there Elaine, Diane and Arlene were with her and Diane was holding her hand and stated to her that she was in good hands.... She stated to me that she wanted to say thank you and that just talking was a big help... and to thank Elaine, Diane, Arlene and myself for understanding and making her feel better...

Marie Brady

>>> David Koon 04/04/12 7:39 AM >>>
Diane -

Do you happen to have a copy of your memorandum detailing your care of Trauma,F 375 (Dec 7, 2011). I had an earlier email from you to Dr. Raymond, but could not open your attachment.

Thanks

David

----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

-------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.

----------------------------------------

USC(Irani)0908

This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

--------------------------------------------------------------------------------
PALMETTO HEALTH CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please notify me immediately.


-----------------------------------------
This e-mail transmission, in its entirety and including all attachments, is intended solely for the use of the person or entity to whom it is addressed and may contain information, including health information, that is privileged, confidential, and the disclosure of which is governed by applicable law. If you are not the intended recipient, you are hereby notified that disclosing, distributing, copying or taking any action in relation to this e-mail is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify the sender immediately and destroy the related message.

USC(Irani)0909