IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Afraaz R. Irani, M.D., | ) | C/A No. 3:14-cv-03577-CMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S MOTION TO COMPEL** |
| Palmetto Health; University of South | ) | **THE U.S. DEPARTMENT OF** |
| Carolina School of Medicine; David E. | ) | **VETERANS AFFAIRS TO PRODUCE** |
| Koon, Jr., M.D., in his individual | ) | **DECLARANT, JOHN L. EADY, M.D.** |
| capacity; and John J. Walsh, IV, M.D., | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, Afraaz R. Irani, M.D., by and through his undersigned counsel, hereby files this Motion to Compel the U.S. Department of Veterans Affairs to Produce Declarant, John L. Eady, M.D.

In support of his Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, Plaintiff sought to attach and to rely upon a declaration completed by John L. Eady, M.D. Dr. Eady is a board-certified orthopaedic surgeon who currently serves as the Chief of the Orthopaedic Service at the Dorn VA Medical Center, a facility operated by the Department of Veterans Affairs ("DVA") in Columbia, SC. As will be previewed herein, Dr. Eady has personal knowledge central to this dispute that would be valuable in this Court's consideration of the Motions for Summary Judgment. Dr. Eady was prepared to sign the declaration attached as Exhibit A, but the DVA has refused to allow Dr. Eady to sign the declaration, citing authority under its "Touhy" regulations. For the reasons discussed herein, the DVA's decision under its Touhy regulations is

erroneous, and Plaintiff therefore seeks the Court's assistance in compelling the DVA to allow Dr. Eady to sign his declaration.

## I. Legal Standard for Review

5 U.S.C. § 301, often referred to as the "federal housekeeping statute," authorizes federal agencies to enact regulations concerning "the conduct of [their] employees, the distribution and performance of [their] business, and the custody, use and preservation of [their] records, papers and property." This includes the authority to promulgate regulations concerning the conditions under which agency employees may testify concerning their official work. See United States v. Soriano–Jarquin, 492 F.3d 495, 504 (4th Cir.2007). The U.S. Supreme Court upheld the legitimacy of these regulations in the case of United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), which, over the years, has led to the designation of these agency-enacted regulations as "Touhy regulations."

Relying on 5 U.S.C. § 301, the DVA has promulgated policies and procedures for (1) the "production or disclosure of official information or records" and (2) the "testimony of present or former VA personnel" as it relates to the performance of their official duties. See 38 C.F.R. § 14.800. DVA personnel may provide testimony or produce DVA records in legal proceedings covered by §§ 14.800 through 14.810 only as authorized in accordance with these regulations. The regulations state that DVA personnel are only permitted to provide testimony relating to official information or official duties if authorized by a DVA official after considering "the effect in this case, as well as in future cases generally, based on the factors set forth in § 14.804, which testifying or producing records not available for public disclosure will have on the ability of the agency or VA personnel to perform their official duties." 38 C.F.R. § 14.803. Section 14.804 lays out fifteen factors for the

responsible VA official to weigh in making his or her decision on whether to authorize employee testimony:

    (a)    The need to avoid spending the time and money of the United States for private purposes and to conserve the time of VA personnel for conducting their official duties concerning servicing the Nation's veteran population;

    (b)    How the testimony or production of records would assist VA in performing its statutory duties;

    (c)    Whether the disclosure of the records or presentation of testimony is necessary to prevent the perpetration of fraud or other injustice in the matter in question;

    (d)    Whether the demand or request is unduly burdensome or otherwise inappropriate under the applicable court or administrative rules;

    (e)    Whether the testimony or production of records, including release in camera, is appropriate or necessary under the rules of procedure governing the case or matter in which the demand or request arose, or under the relevant substantive law concerning privilege;

    (f)    Whether the testimony or production of records would violate a statute, executive order, regulation or directive;

    (g)    Whether the testimony or production of records, except when in camera and necessary to assert a claim of privilege, would reveal information properly classified pursuant to applicable statutes or Executive Orders;

    (h)    Whether the testimony would interfere with ongoing law enforcement proceedings, compromise constitutional rights, compromise national security interests, hamper VA or private health care research activities, reveal sensitive patient or beneficiary information, interfere with patient care, disclose trade secrets or similarly confidential commercial or financial information or otherwise be inappropriate under the circumstances;

    (i)    Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government favoring one litigant over another;

    (j)    Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government endorsing or supporting a position

advocated by a party to the proceeding;

(k)     The need to prevent the public's possible misconstruction of variances between personal opinions of VA personnel and VA or Federal policy;

(l)     he need to minimize VA's possible involvement in issues unrelated to its mission;

(m)     Whether the demand or request is within the authority of the party making it;

(n)     Whether the demand or request is sufficiently specific to be answered;

(o)     Other matters or concerns presented for consideration in making the decision.

38 C.F.R. § 14.804.

Federal agencies, including the DVA, are limited in applying their Touhy regulations and cannot prevent their employees from testifying in all circumstances. On the contrary, while federal agencies initially applied the Touhy decision expansively by flatly refusing to permit their employees to testify in litigation, federal courts have since limited this expansive reading of Touhy by clarifying that, while Touhy regulations may empower the head of a federal agency to decide whether the agency will comply or resist a subpoena, the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure. See, e.g., COMSAT Corp. v. Nat'l Sci. Found., 190 F.3d 269, 277 (4th Cir. 1999).

The Fourth Circuit is one of the few federal appellate courts to apply the Administrative Procedure Act's ("APA's") "arbitrary and capricious" standard, 5 U.S.C. § 706, in reviewing an agency's decision under its Touhy regulations.[1] While this standard affords a level of deference to

---

[1] The majority of the Circuits apply an even less deferential standard whereby an agency's Touhy decision must comply with the Federal Rules of Civil Procedure. See, e.g., Exxon Shipping Co. v. U.S. Dep't of the Interior, 34 F.3d 774 (9th Cir. 1994). The Fourth Circuit has not reevaluated its decision to apply the minority APA standard since 1999.

the agency decision, courts have regularly overturned Touhy decisions under the arbitrary and capricious standard. See, e.g., In re Vioxx Products Liab. Litig., 235 F.R.D. 334, 344 (E.D. La. 2006) (FDA's decision to refuse the deposition of a single employee was arbitrary and capricious when neither the individual nor cumulative effect on the agency would impose undue burden); OhioHealth Corp. v. U.S. Dep't of Veteran Affairs, No. 2:14CV292, 2014 WL 4660092, at *6 (S.D. Ohio Sept. 17, 2014) (DVA's refusal to produce employee-witnesses was arbitrary and capricious given boilerplate denial and lack of sufficient explanation for decision.); U.S. ex rel. Lewis v. Walker, No. 3:06CV16, 2009 WL 2611522, at *4 (M.D. Ga. Aug. 21, 2009) ("Court finds that the EPA's refusal to allow her to be deposed based solely on an unsubstantiated and subjective belief that she possesses no relevant information was arbitrary and capricious."); Cavanaugh v. Wainstein, No. CIV.A.05-123, 2007 WL 1601723, at *11 (D.D.C. June 4, 2007) (Department of Justice's denial of employee depositions was arbitrary and capricious given unreasonable application of its Touhy factors.); Louisiana Dep't of Transp. & Dev. v. United States Dep't of Transp., No. CV.A.15-2638, 2015 WL 7313876, at *8 (W.D. La. Nov. 20, 2015) (same); Williams v. C. Martin Co. Inc., No. CIV.A.07-6592, 2014 WL 3095161, at *5 (E.D. La. July 7, 2014) (same); Beckett v. Serpas, No. CIV.A. 12 910, 2013 WL 796067, at *8 (E.D. La. Mar. 4, 2013) (same); S.E.C. v. Chakrapani, No. 09 CIV.1043, 2010 WL 2605819, at *10 (S.D.N.Y. June 29, 2010) (same).

In reviewing an agency's decision pursuant to its Touhy regulations under the APA standard, this Court can set aside the agency''s decision it finds the decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). An agency decision is arbitrary and capricious when "the agency has relied on factors which Congress has not intended it to consider,

5

entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle, 463 U.S. at 29.

Under the APA standard, this Court cannot overturn the DVA's Touhy decision merely because it disagrees with the agency's rationale, but it also cannot "supply a reasoned basis for the agency's action that the agency itself has not given." Motor Vehicle, 463 U.S. at 43. The Court's review, therefore, looks to determine whether the agency examined the evidence before it, relied upon the relevant regulatory factors, and articulated a sufficient explanation for its action including a "rational connection between the facts found and the choice made." Id.

## II. Facts

Plaintiff is a physician, having earned his medical degree from Stanford Medical School in June 2010. This lawsuit arises out of Plaintiff's termination from the orthopaedic surgery residency program operated by Defendants Palmetto Health and USC School of Medicine, which he enrolled in following his graduation from medical school. Plaintiff has alleged that his treatment during his residency program, including his termination, amounts to unlawful discrimination, including at the hands of individual Defendant David E. Koon, Jr., M.D.

Other than the named parties, Dr. John L Eady may have more relevant personal knowledge than any other witness in this case. Dr. Eady has agreed that the declaration attached as Exhibit A is factually accurate, and he is willing and ready to sign the declaration. As he states in that declaration, Dr. Eady was formerly Chairman of the Orthopaedic Surgery Department for Defendant USC School of Medicine, and he formerly served as the Program Director for the orthopaedic surgery residency program from which Plaintiff was terminated. (Declaration ¶ 5). Dr. Eady is

intimately familiar with the operation of the orthopaedic surgery residency program. (Declaration ¶¶ 5, 8, 14). In his former roles, Dr. Eady regularly interacted with Defendant Dr. Koon and heard Dr. Koon use a racial slur in reference to an African-American resident. (Declaration ¶ 12). In his present role as Chief of the Orthopaedic Service at the Dorn VA Medical Center, Dr. Eady has continued to interact with Defendant Dr. Koon, and he worked with Plaintiff on several occasions during Plaintiff's participation in the residency program. (Declaration ¶¶ 7, 11). Dr. Eady witnessed an incident where Defendant Dr. Koon referred to Plaintiff as "Achmed the Terrorist," as is alleged in the Complaint. (Declaration ¶ 11). Dr. Eady also has knowledge relevant to the alleged deficiencies in Plaintiff's job performance that have been cited as the basis for Plaintiff's termination from the residency program, and he was specifically involved in a patient encounter for which Plaintiff was written up and placed on formal probation. (Declaration ¶ 12). In short, Dr. Eady has critical information that is not available from any other source, and he has therefore been listed by both sides as a potential witness in this case.

On January 12, 2016, undersigned counsel contacted Edith Lewis, an attorney in the DVA's Office of Regional Counsel. Counsel presented Ms. Lewis with Dr. Eady's proposed declaration and informed her that Dr. Eady was prepared to sign the declaration but wanted to be sure that his doing so was in compliance with DVA protocol. (E-mail string attached as Exhibit B). Ms. Lewis eventually responded that she had determined that Dr. Eady's declaration was subject to the DVA's Touhy regulations and that, under the DVA's Touhy factors, Dr. Eady could not sign the declaration. (Exhibit B, e-mail of 1/15/16). After additional communication and argument from counsel, Ms. Lewis clarified that her conclusion under the Touhy regulations was particularly based on her consideration of the factors found in 38 C.F.R. § 14.804(i) and (j): that Dr. Eady's declaration could

be expected to result in the appearance of the DVA favoring one litigant over another and in the appearance of the DVA endorsing or supporting a position advocated by a party. (Exhibit B, e-mail of 1/22/16). Ms. Lewis represented that she had final authority to decide Plaintiff's Touhy request. (Exhibit B, e-mail of 1/22/16).

### III. Discussion

The DVA's Touhy regulations guide the deciding official to consider several factors found in 38 C.F.R. § 14.804 in deciding whether to authorize the type of declaration attached hereto. For a number of reasons, the DVA's consideration of these factors here was plainly unreasonable. First of all, the DVA's analysis fails to account for the fact that Dr. Eady has already testified and been authorized to testify on several occasions concerning the same matters stated in his declaration. The DVA is apparently concerned that Dr. Eady's declaration will create the appearance that it favors Plaintiff and his position in this lawsuit. This concern has never been expressed in prior instances of Dr. Eady rendering comparable testimony, and Dr. Eady's prior testimony significantly undercuts the validity of the DVA's present concern. In effect, any potential damage in relation to 38 C.F.R. § 14.804(i) and (j) has already been done.

Dr. Eady's proposed declaration is very similar to the testimony he provided in Plaintiff's California Medical Board proceedings. Dr. Eady testified in those proceedings, without any Touhy objection from the DVA, pursuant to subpoena by both the California Deputy Attorney General and Plaintiff's attorney in that case. The proceedings before the California Medical Board sprung directly from the circumstances underlying this action (See Amended Complaint, ECF No. 49, ¶¶

48, 128, 131, 137), and Dr. Eady's testimony covered almost everything in his proposed declaration.[2] Indeed, the potential damage from DVA's perspective in relation to 38 C.F.R. § 14.804(i) and (j) was much greater in the California proceedings, as Dr. Eady was allowed to offer free-flowing testimony, as opposed to the constrained declaration sought here. The proposed declaration will do less than the California proceedings to create the appearance that the DVA favors Plaintiff and his position in this lawsuit.

Earlier in this very case, a different DVA attorney agreed to allow Dr. Eady's deposition to be taken in this case, despite the Touhy regulations. (See Exhibit B, e-mail of 1/15/16). In addition, in a matter involving multiple attorneys from this case, Dr. Eady was previously allowed to sign a similar declaration regarding a resident who had been terminated from the USC ophthalmology program. (Declaration attached as Exhibit D). The DVA has provided no explanation for why it is treating the proposed declaration different than the California proceedings, the ophthalmology matter, and the depositions in this case, other than to say as follows: "while Dr. Eady might have been approved for other or similar Touhy matters, each Touhy is case specific." (See Exhibit B, e-mail of 1/22/16). Courts have relied on an agency's inconsistent treatment of Touhy requests to rule against the agency under the APA standard. See, e.g., S.E.C. v. Chakrapani, No.09CIV.1043, 2010

---

[2]See transcript excerpts attached as Exhibit 3, including the following representative passages:

Dr. Eady: "I asked Dr. Kuhn [sic] if he was going to let me know about what was going to happen with Afraaz. Was he coming? And Dr. Kuhn's response to me, he said, 'Well, you mean Ahmed the Terrorist." (Tr. 149).

Q: " Have you heard Dr. Kuhn's [sic] racial prejudicial remarks about other residents besides Dr. Irani?"
Dr. Eady: "Yes, sir." (Tr. 152).

WL 2605819, at *10 (S.D.N.Y. June 29, 2010) (In response to the government producing documents in one matter, while objecting in another matter on the basis of Touhy: "Why could the government safely produce the documents to Koulouroudis and not to Contorinis? To date, the government has provided no satisfactory answer."). The DVA's reliance on 38 C.F.R. § 14.804(i) and (j) simply holds no water in light of Dr. Eady's history of testimony.

The DVA's Touhy decision is also unreasonable, arbitrary, and capricious because it represents a boilerplate denial without any meaningful consideration on the merits of Plaintiff's request. While the DVA's attorney casually cites two of the DVA's fifteen Touhy factors, she fails to give any consideration to a number of those factors that support authorization of the declaration. Critically, the DVA seemingly gives no weight to the fact that, because the declaration is prepared, approved, and ready for signature, Dr. Eady's involvement is not unduly burdensome (38 C.F.R. § 14.804(d)) and would not take Dr. Eady's time away from conducting his official duties concerning serving the Nation's veteran population (38 C.F.R. § 14.804(a)). Due to the nature of the involvement requested of Dr. Eady, the time and money burden imposed on the DVA is inconsequential, and this is a significant factor under both the DVA's Touhy regulations and related case law. As the Fourth Circuit has stated, "[w]hen an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." COMSAT, 190 F.3d at 278. Indeed, courts' inquiries under the APA standard have often turned on the burden that would be imposed on an agency denying a Touhy request. See, Williams 2014 WL 3095161, at *4 (In ordering FEMA to comply with deposition subpoenas, the court notes that "any burden on FEMA is significantly outweighed by the importance of this evidence to the litigation."); OhioHealth Corp., 2014 WL 4660092, at *6; In re Vioxx

Products Liab. Litig., 235 F.R.D. at 346 ("the Court finds that the FDA's refusal to produce Dr. Graham for a deposition was arbitrary and capricious and also finds that the deposition of Dr. Graham would not subject the FDA to an undue burden."). Here, practically no DVA resources are involved in Dr. Eady placing his signature on a completed declaration. The Plaintiff has intentionally pursued the least intrusive means to obtain Dr. Eady's statement in this case.

The DVA's Touhy factors also direct the decision-maker to consider whether authorizing the testimony "is appropriate or necessary under the rules of procedure governing the case or matter in which the demand or request arose." 38 C.F.R. § 14.804(e). Here, that means the DVA should have considered the propriety of the proposed declaration under the Federal Rules of Civil Procedure. It is significant that the DVA has absolutely no grounds to object to the proposed declaration under those Rules, and in many Circuits, that conclusion would end the inquiry in favor of authorization. See, e.g., Exxon Shipping Co., 34 F.3d at 780 ("district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action."). While not decisive in the Fourth Circuit, application of the Federal Rules of Civil Procedure is clearly a significant factor that the DVA has altogether failed to consider. Applying the analysis that the DVA did not: the proposed declaration is exactly the type of supporting material contemplated in Rule 56(c); DVA has no basis under Rule 45(d) to object to the declaration on the grounds of undue burden or expense or that it contains privileged or protected matter; and the content of the declaration is clearly relevant material subject to discovery under Rule 26.

In addition to all of the other weaknesses noted thus far, the two Touhy factors DVA's attorney does cite are particularly unpersuasive in light of the fact that they can be called upon any

11

time DVA is asked to authorize testimony or the disclosure of records in an adversarial proceeding. Any time DVA turns over documents or authorizes an employee to testify, the documents or testimony will inevitably benefit one party over another. In that way, the DVA decision-maker will always be able to cite concern under 38 C.F.R. § 14.804(i) and (j) that the agency's involvement will create the appearance that it favors a particular party or position in a lawsuit. Certainly, though, the function of DVA's Touhy regulations is not to allow the DVA to altogether forbid its employees' involvement in adversarial litigation. Therefore, the boilerplate recitation of 38 C.F.R. § 14.804(i) and (j), as DVA's attorney has made here, is inadequate and unreasonable, especially in the absence of any discussion or concern in relation to DVA's other Touhy factors. Dr. Eady's declaration merely provides a truthful account of factual matters that he witnessed during his involvement in the orthopaedic surgery residency program. Although his truthful statement will have the practical effect of benefitting one side in this litigation, Plaintiff is not asking the DVA to endorse anyone's position in the lawsuit, and the DVA's perfunctory conclusion to the contrary does not reflect any meaningful consideration.

The DVA's decision on Plaintiff's Touhy request relies exclusively on 38 C.F.R. § 14.804(i) and (j) and constitutes a boilerplate denial. A substantive review of the DVA's Touhy factors set forth in 38 C.F.R. § 14.804 weigh in favor of, not against, the DVA's authorization of Dr. Eady's declaration. The DVA failed to reach this conclusion because it failed to consider the critical Touhy factors. All of these considerations weigh heavily in favor of the conclusion that the DVA's decision was unreasonable, arbitrary, and capricious.[3]

---

[3]In 2014, a district court found Touhy decision by the DVA to be arbitrary and capricious on exactly the same grounds as stated in this paragraph. In OhioHealth Corp. v. U.S. Dept. of Veteran Affairs, the court described the plaintiffs' Touhy arguments as follows:

Finally, the DVA's <u>Touhy</u> decision is unreasonable, arbitrary, and capricious because it seeks to completely forbid Dr. Eady from entering a declaration in this case, when only part of his declaration relates to information Dr. Eady acquired in his official duties as an employee of the DVA. The DVA's <u>Touhy</u> regulations are clear that they only control the testimony of employees as to "official information acquired by any individual as part of that individual's performance of official duties, or by virtue of that individual's official status." 38 C.F.R. § 14.800. The declaration includes testimony about events occurring prior to Dr. Eady's employment at the DVA, including an incident wherein Dr. Koon made a racially disparaging remark about an African-American resident that showed similar animus to the remark Dr. Koon made about Plaintiff. At a minimum, this Court should compel the DVA to allow Dr. Eady to enter a declaration in this case containing all relevant material acquired outside of his employment with the DVA.

## IV. Conclusion

As is apparent in the e-mail string attached as Exhibit B, Plaintiff sought to include Dr. Eady's declaration in support of his Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, and that Memorandum is now incomplete on account of the DVA's unreasonable decision under <u>Touhy</u>. The Plaintiff asks the Court to reverse the DVA's <u>Touhy</u>

---

> Plaintiffs contend the VA's decision to deny their <u>Touhy</u> requests was arbitrary and capricious for two reasons. First, Plaintiffs argue that the VA's responses to their <u>Touhy</u> requests constituted a boilerplate denial without any meaningful consideration on the merits of their requests. Second, Plaintiffs assert that a substantive review of the regulatory factors set forth in 38 C.F.R. § 14.804 weigh in favor of, not against, the VA's participation in the requested depositions.

2014 WL 4660092, at *6. The court found in favor of the plaintiffs, concluding that the DVA had seized on <u>Touhy</u> factors of lesser importance: "In addition to paying only lip service to a majority of the factors set forth above, the Court also notes that the VA's denial letters completely ignored the factor on which Plaintiffs' Touhy requests and affidavits center..." <u>Id.</u>

13

decision, to compel the DVA to authorize Dr. Eady to sign his declaration, and to retroactively incorporate Dr. Eady's declaration into Plaintiff's summary judgment response by reference.

Respectfully submitted,

s/ David E. Rothstein
David E. Rothstein, Fed. ID No. 6695
ROTHSTEIN LAW FIRM, PA
1312 Augusta Street
Greenville, South Carolina  29605
Office: (864) 232-5870
Facsimile: (864) 241-1386
E-mail: drothstein@rothsteinlawfirm.com

Attorney for Plaintiff, Afraaz R. Irani, M.D.

January 25, 2016

Greenville, South Carolina.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he served a copy of the foregoing **PLAINTIFF'S MOTION TO COMPEL THE U.S. DEPARTMENT OF VETERANS AFFAIRS TO PRODUCE DECLARANT, JOHN L. EADY, M.D.**, upon third-party, U.S. Department of Veterans' Affairs, by e-mail and by depositing a copy of the same in United States Mail, proper first-class postage pre-paid, this 25th day of January, 2016, addressed as follows:

>Edith W. Lewis, Esq. (Edith.lewis@va.gov)
>Department of Veterans Affairs
>Office of Regional Counsel
>6439 Garners Ferry Road
>Columbia, SC 29209
>
>Frances C. Trapp, Esq. (Fran.trapp@usdoj.gov)
>U.S Attorney's Office
>1441 Main St., Suite 500
>Columbia, SC 29201

>s/ David E. Rothstein

Greenville, SC.