| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | |
| ) | UNSWORN DECLARATION OF JOHN L. |
| COUNTY OF RICHLAND ) | EADY, M.D. |

I, John L. Eady, M.D., hereby make this Unsworn Declaration pursuant to 28 U.S.C. § 1746, under penalty of perjury.

1. My name is John L. Eady. I am older than eighteen years of age and am otherwise competent to make this Declaration. The statements in this Declaration are based upon my own personal knowledge.

2. I currently serve as the Chief of the Orthopaedic Service at the Dorn VA Medical Center ("VAMC") in Columbia, SC. I have held this position continuously since August 2006.

3. Prior to coming to the Dorn VAMC, I was the Chairman of the Orthopaedic Surgery Department at the USC School of Medicine from 1998 to 2006. I also served as the Program Director for the Orthopaedic Surgery Residency Program jointly sponsored by the USC School of Medicine and Palmetto Health, from 1998 to 2006. I have been involved in graduate medical education, training doctors to become specialists in orthopaedic surgery for over 30 years.

4. On or about Friday, February 20, 2015, at approximately 12:30 p.m., as I was getting ready to go into surgery at the Dorn VAMC, putting on my shoe covers and hat, I overheard three male doctors talking in the hallway of the surgical area. The doctors were behind me at the time, and I did not turn around to look at them because I was so uncomfortable with the subject of their conversation. I believe that I recognized the voice of one of the doctors, Dr. Andrew Woldorf, who is an ophthalmologist at the Dorn VAMC I have known for several years; however, I cannot say for certain that Dr. Woldorf was actually involved in the conversation.

5.   One of the doctors asked the others what ever happened to the ophthalmology resident who had been terminated from the USC ophthalmology program several months earlier. Another doctor, whose voice I did not recognize, replied that the resident had won his grievance and was supposed to be reinstated into the program soon. The doctor then stated that the ophthalmology department (referring to the USC/Palmetto Health ophthalmology residency program, not the Dorn VAMC ophthalmology department) had created a list of requirements that the resident had to fulfill in order to graduate, but that the requirements were so demanding that he would never be able to meet them and would never successfully complete the program. Two of the doctors in the conversation had to be ophthalmologists because of their obvious familiarity with the details of the situation.

6.   The same doctor also stated that the resident had been given a proposal for his return to the program and that the resident had apparently waited until the last minute to sign the document. The doctor stated that the resident had until midnight that day to accept the proposal, but the doctor expressed doubt that the resident would actually accept the proposed contract.

7.   I was very surprised that physicians at the VA would discuss such a sensitive matter involving a resident in such a public space and loudly enough where others could easily overhear the conversation.

8.   At the next Surgical Services monthly meeting at the Dorn VAMC, I specifically mentioned the conversation that I had overheard about the ophthalmology resident and that I thought it was highly improper for such a conversation to have occurred in such a public area. I specifically recall that Dr. Woldorf was present during that monthly meeting. The new Chief of Surgical Services stated that he agreed with my concerns and reminded everyone in the meeting that we

should not be discussing residents in that manner.

9.     Coincidentally, a few days after I overhead the conversation, my former attorney, David Rothstein, called me to ask for the contact information for Dr. Dan Jorgenson, who Mr. Rothstein believed was the Chief of Surgery at the Dorn VAMC. Mr. Rothstein explained to me that he was trying to arrange a meeting between one of his clients (the ophthalmology resident), the Chief of Surgery, and himself to discuss the resident's upcoming return to the residency program. I told Mr. Rothstein that Dr. Jorgenson was no longer the Chief of Surgery. I also told Mr. Rothstein about the conversation I had overheard a few days earlier about the same ophthalmology resident.

10.    I have no interest in this matter other than to truthfully state what I heard on the day in question.

**I declare under penalty of perjury that the foregoing is true and correct. Signed on May _27_, 2015.**

_____
John L. Eady, M.D.