# EXHIBIT D

3:14-cv-03577-CMC   Date Filed 01/25/16   Entry Number 148-5   Page 1 of 4

STATE OF SOUTH CAROLINA    )
                           )
COUNTY OF RICHLAND         )

## AFFIDAVIT

PERSONALLY appeared before me Toni Pettiford-Smith, who, after being duly sworn, certifies and declares as follows:

1. I work as a cast tech at Palmetto Health Richland in Columbia, South Carolina.
2. I have been a cast tech at Palmetto Health for the past 11 years.
3. In my role as a cast tech I work closely with all the orthopaedic residents.
4. When there is an orthopaedic injury in the hospital, we are called to assist the orthopaedic resident in splinting and casting of patients in the ER and in the rest of the hospital.
5. We are present for almost all orthopaedic injuries in the hospital.
6. I have known Dr. Afraaz Irani since he was an intern at Palmetto Health.
7. He was always pleasant, professional, and a pleasure to deal with.
8. He was among the most well liked residents because of his ready smile and humor to brighten our days.
9. We often work in the middle of the night and his enthusiasm and pleasant demeanor were always appreciated by the staff.
10. I always observed Dr. Irani to be professional and courteous when dealing with staff and patients.
11. Many patients were nervous about their injury, but Dr. Irani was always able to make them feel comfortable and explained their injuries in a way that they could understand, before attempting to work on their injuries.
12. He often made patients feel at ease with his pleasant bedside manners.
13. As a cast tech we work closely with residents to communicate and coordinate patient care, often under challenging situations.
14. When coordinating patient care, Dr. Irani was always very clear about what was needed and why. He was an excellent, articulate, and reliable communicator who always put patient care first.
15. I observed all his care to be excellent and in keeping with the standards of care I have observed in the hospital.
16. As the cast tech we respond to all severe trauma cases.
17. I was present for the arrival of trauma Female 375 in December 2011 who arrived before noon.
18. As a cast tech, I am in the unique position of being an impartial observer to patient care.
19. In this particular case an orthopaedic physician from the Palmetto Health residency program (not Dr. Irani) was called to assist in the patient's care (the patient had multiple open fractures in need of reduction).
20. During the course of care, the patient began to become more frustrated and unhappy with her care, angrily demanding that she be transferred to a different hospital.

Irani000987

21. It was after this, and after the patient becoming more agitated, that Dr. Irani was called to help with the situation.
22. When Dr. Irani was called, nearly three hours after the initial trauma, the patient had already been moved out of the trauma bay and into a smaller room in the Emergency Room.
23. The patient was upset and agitated demanding transfer to a different hospital, prior to Dr. Irani's arrival.
24. Nursing staff was upset with how the situation was handled prior to Dr. Irani's arrival.
25. Upon arriving, Dr. Irani introduced himself to the patient and described her injuries and what needed to be done.
26. He also introduced himself to the nursing staff and asked if anything else needed to be done before beginning reducing the fractures.
27. Dr. Irani was in a tough situation as both the patients and nursing staff were upset prior to his arrival.
28. Dr. Irani calmed the patient down, explained each of her injuries, what needed to be done, and why she needed to have her open fractures washed out and reduced.
29. After she agreed, Dr. Irani waited for administration of pain medications, and assessed her pain level before he proceeded to wash out and reduce her fractures.
30. Dr. Irani, with the assistance of myself, and the other orthopaedic physician who was initially present proceeded to wash out and reduce multiple fractures.
31. It is noteworthy that I have never observed an orthopaedic resident obtain informed consent for a reduction/washout performed in the Emergency Room, and it was therefore not done in this situation either.
32. Every effort was made to make the patient comfortable.
33. During splinting of the patient's injuries, the patient fell into a restful sleep.
34. Dr. Irani made the best of a bad situation.
35. There were several factors that made this case especially difficult.
36. Dr. Irani was called to help nearly three hours after the patient initially presented to the hospital, and people were upset prior to his arrival.
37. The room was especially small making reductions, usually performed in the trauma bay, difficult to perform.
38. The addition of the mini c-arm for live fluoroscopy and the casting cart for splinting supplies further crowded a room where Dr. Irani and myself had to contort ourselves to work in a very small space.
39. Despite these limitations, Dr Irani showed great empathy and concern for the patient's injuries and acted in a professional and caring manner working to get input and respond to the concerns of other physicians, nurses, and staff.
40. It is also noteworthy, that only Dr. Irani, myself and the other orthopaedic trainee were in the room for the very large majority of the time during Dr. Irani's care, due to the radiation from the mini c-arm which prohibited other staff from being present during his administration of care.

Irani000988

41. At the conclusion of the case, Dr Irani took the extra step of personally asking all staff if anything else was needed.
42. He helped the nurses change the wet sheets, then personally spoke with the concerned parents, after which, he walked them back to see their daughter, and personally went over all xrays with the concerned family.
43. Having been present for hundreds if not thousands of orthopaedic cases in the Emergency Room, I observed Dr. Irani acting in an empathetic, compassionate and professional manner during the care of Trauma Female 375.
44. I was troubled when I heard false allegations about what happened.
45. Afterward I was told that Dr. Irani told the patient she would never walk again.
46. Fortunately, this was an allegation that I heard about and was able to forcefully deny.
47. This statement was never made by Dr. Irani, and he acted with compassion, professionalism and understanding in a difficult and challenging solution.
48. I am puzzled why such a statement was even alleged against Dr. Irani.
49. It was clear that the patient's complaints about staff were not directed at Dr. Irani, and I never heard her complain about his care.
50. In fact during the whole ordeal, the most calm and relaxed I saw her was when she was with Dr. Irani.
51. Dr. Irani spoke with family, escorted them back to see their daughter and answered all their questions, despite not being the primary team in charge of the patient.
52. Dr. Irani acted with compassion and empathy when treating his patients.
53. Dr. Irani was in that case like all my interactions with him, the consummate professional and a great team player within the healthcare framework.
54. He displays the best characteristics of a young physician.
55. He is well spoken, professional, and one of the best orthopaedic residents I have had the pleasure of working with.

I declare under penalty of perjury that the foregoing is true and correct.

_Antoinette Pettiford-Smith_
Antoinette Pettiford-Smith

State of South Carolina, County of Richland

Subscribed and sworn to (or affirmed) before me on this 19 day of June, 2014 by Antoinette Pettiford-Smith, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me

_Signature_
Signature of Notary Public

Notary Public for South Carolina

My commission expires: 07/06/2020

State of South Carolina
Notary Public
Chevanda M. Harville
My Commission Expires 7/6/2020

Page 3 of 3

Irani000989