# EXHIBIT FFF



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

02 MAY 12

Dear Grievance Committee:

Dr. Walsh and I appreciate the request from the Grievance Committee for additional information regarding the remediation process of Dr. Irani. Below is the requested information and we have explained the rationale underlying each item.

Drs. Voss and Guy have provided summative statements regarding Dr Irani. We have also included the most recent New Innovations evaluations of Dr. Irani's PGY-2 year by these two physicians. We would encourage you to review the Dr. Guy and Dr. Irani email thread from 02 FEB to 05 FEB 12 where Dr. Irani has solicited industry positions within one of our implant manufacturers and sought advice "into careers outside of medicine."

In an effort to be clear, understandable, specific, and thorough, the Executive Committee of the GME, the orthopaedic faculty, and both chief residents (Drs. Hoover and Wood) formulated the Remediation Measures which went into effect 06 FEB 12. Many of these measures addressed prior difficulties that Dr. Irani had in performing at the level expected of every resident at his level of training. For example, under "Patient Care" we listed that he would:

> *Follow patient care plan set out by attending and/or senior resident. If the plan needs to be altered in any way, inform attending and/or senior resident immediately of changes to patient care plan.*

Dr. Irani failed to follow his clinic attending's instructions regarding obtaining an MRI of a patient's extremity the same day, instead allowing the patient to leave the clinic and obtain the MRI at a later date. Not one month into the remediation process, Dr. Irani repeated this pattern of behavior by failing to evaluate a patient admitted for possible compartment syndrome on 01 MAR 12. Dr. Irani was instructed by Dr. Wood to evaluate the patient at 4:00 that morning and he failed to perform this evaluation and admitted as much the following morning. At the time he was first questioned about it (approximately 6 am), he stated that he did not evaluate the patient, and when asked why, he stated "I forgot". Only during a subsequent conversation with Dr Walsh several hours later did he make the statement that he had seen the patient at 2:30 am, yet never documented it. This failure put the patient's limb at risk. This encounter was documented by Dr. Wood shortly after the incident. Dr. Irani again failed to follow his attending's instructions regarding wound care of a post-operative spine surgery patient. Dr. Grabowski's email dated 20 MAR 12 states:

> *Due to concerns of creation of a dural-cutaneous fistula in the event of an ongoing leak, I specifically spoke with Dr. Irani regarding the need for him to personally perform dressing changes on this patient on a daily basis and noting any qound* (sic) *drainage. Despite these clear instructions, Dr. Irani failed to perform this duty.*

*DEPARTMENT OF ORTHOPAEDIC SURGERY*
Two Medical Park, Suite 404, Columbia, SC 29203
803-434-6812, FAX 803-434-7306



USC(Irani)0953



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

This occurred almost immediately after Drs. Grabowski and Voss had met with him on 28 FEB 12 regarding his care of the same patient. This has been documented in the email dated 27 FEB 12 by Dr. Grabowski which ends by stating:

> *My concern over this is the timing of Dr. Irani's evaluation given the severe nature of the issue surrounding this patient as well as his lack of documentation surrounding a significant post-operative complication.*

Dr Irani failed this competency by failing to perform an adequate history and physical examination of a pre-operative total joint arthroplasty patient. On 27 FEB 12, again not one month into his remediation process, he failed to note that the patient had significant past history issues including MRSA infection, chronic thrombocytopenia, psychiatric issues, Hepatitis C, lack of medical clearance, and the only imaging studies present were greater than two years old. All of these findings are considered extremely important in our pre-operative patients and certainly affect pre-operative planning. All residents at any level of training would be expected to adequately document these issues in a properly done history and physical. Dr. Irani had been counseled by Dr. Walsh during his Hand rotation regarding deficiencies in his H/Ps and yet his continuing inadequate documentation persisted. He has been informed of inadequacies involving documentation of patient care and has repeatedly failed to adequately document patient encounters involving post-operative strength deficits (see Dr. Grabowski memo dated 27 FEB 12) and compartment syndrome assessment (see Dr. Wood memo regarding hemophiliac patient).

Dr. Irani has also demonstrated deficiencies in the competency of Systems Based Practice. We included:

> *Respond to constructive criticism in an appropriate and professional way. Admit and apologize for mistakes and be willing to endorse personal flaws. Take immediate action to correct deficiencies.*

His pattern of evasiveness and refusal to admit responsibility for his actions is consistent with the results of his psychological testing (see page 6 of the testing results). Throughout his tenure here at Palmetto Health, Dr Irani has repeatedly failed to accept responsibility for his actions. His explanations and answers are frequently evasive and he attempts to rationalize his behaviors, even in the face of clear and convincing evidence to the contrary. Despite recently stating "I'm sorry," he does not demonstrate remorse for his mistakes and attempts to explain his shortcomings as other's misperception or his "miscommunication." This has been noted in the memorandum dated 12 DEC 12:

> *He repeatedly refused to give direct answers to several questions and failed to take responsibility for his actions in several patient care examples. Despite attending direction and encouragement to take ownership of his actions, he steadfastly refused to admit any wrongdoing, even when faced with overwhelming evidence to the contrary. He appeared to consistently lack insight into these issues.*

When confronted with the clear mishandling of the post-operative patient with new-onset lower extremity weakness and his lack of following instructions for the hemophiliac patient, he attempted to explain away his mistakes by later changing his version of the



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

events and entering a "delayed clinical note" in the electronic medical record over 48 hours later to "document" his findings.

Dr. Irani has failed in the competency of Interpersonal and Communication Skills. We included:
> *IV.A.5.d).(1) communicate effectively with patients, families, and the public, as appropriate, across a broad range of socioeconomic and cultural backgrounds; IV.A.5.d).(2) communicate effectively with physicians, other health professionals, and health related agencies; IV.A.5.d).(3) work effectively as a member or leader of a health care team or other professional group.*

His communication skills with the attending did improve after counseling by Dr. Guy. However, he has been unable to work effectively within the health care team. His frequent tardiness to clinics, the operating room, conferences, and rounds during the first one half of his PGY-2 year persisted despite the usual verbal counseling by the attending and senior residents. Therefore this item was added to his remediation measures. He was to be early to rounds each morning, round on each of his assigned patients, and have the list ready for the team. Not even one month into his remediation this pattern of behavior recurred. Dr. Hoover even had to call into the call room and wake him up on 01 MAR 12. This added additional work for other members of the orthopaedic team. Being on time for assigned duties is expected of each resident and was not considered a burdensome requirement of Dr. Irani.

Lastly, Dr. Irani has failed in the competency of Professionalism. He signed the document (memo dated 31 JAN 12) under the paragraph which required "immediate and sustained improvement." He was asked to make a commitment to excellence and ongoing professional development. During his third week of remediation Dr. Irani was quizzed on the relevant spinal anatomy during an operative case with Dr. Grabowski. Dr. Irani was informed that knowing the pertinent anatomical landmarks and confirming these with intra-operative radiographs would keep the surgeon from performing a procedure in the wrong location, the so-called "wrong site surgery." This is a major cause of malpractice litigation within the spine surgeon's realm. Dr. Irani then joked, "What's wrong with that? You just fuse the extra level (the "wrong site") and charge extra." Needless to say Dr. Grabowski found no humor in the comment and was very concerned that Dr. Irani had even broached the subject in this unprofessional manner. This episode in the midst of academic remediation only deepened the faculty's concern that Dr. Irani lacks enough insight into his shortcomings to commit to excellence and ongoing professional development.

In summary, the faculty of the department of orthopaedic surgery had indications very early in Dr. Irani's training of problematic behavior. We attempted multiple avenues of corrective actions including verbal and written counseling by residents and attendings. We sought mentorship and psychological testing. We provided Dr. Irani multiple opportunities for remediation and responded to his requests for measures that were clear, understandable, and specific. We included the psychological recommendation for

*DEPARTMENT OF ORTHOPAEDIC SURGERY*
Two Medical Park, Suite 404, Columbia, SC 29203
803-434-6812, FAX 803-434-7306

USC(Irani)0955



UNIVERSITY OF SOUTH CAROLINA
SCHOOL OF MEDICINE

UNIVERSITY SPECIALTY CLINICS®

counseling and provided him a venue for this in a confidential, non-threatening manner. We reminded him repeatedly that these measures were restorative in nature and not punitive. We provided him and he took advantage of access to the program director, the department chair, and the institutional DIO. We reminded him of, and he utilized, the GME policies regarding the appeals and due process which was afforded to him. Dr. Irani was not expected to behave or perform in any fashion that was not expected of all residents. Given the cumulative nature of these deficiencies, the potential harm to our orthopaedic patients, and the lack of any sustained improvement, the faculty had no other choice but to recommend to the GMEC that Dr. Irani be terminated from the program.

It was also clear that Dr Irani's answers to the committee during the grievance hearing confirm the patterns we have seen of evasiveness, deception, lack of responsibility for his behavior, and lack of insight into the gravity of the mistakes he has made.

We will be happy to provide additional information / documentation as necessary.


David E. Koon, Jr., MD
Program Director
PH / USC SOM Orthopaedic Residency Program


John J. Walsh
Chair, Department of Orthopaedic Surgery