# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| John L. Eady, M.D., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>David E. Koon, Jr., M.D., in his individual )<br>capacity; Frank R. Voss, M.D., in his )<br>individual capacity; John J. Walsh, IV, )<br>M.D., in his individual capacity; University )<br>of South Carolina School of Medicine; )<br>Palmetto Health, )<br>)<br>Defendants. )<br>_____ )<br>)<br>David E. Koon, Jr., M.D.; Frank R. Voss, )<br>M.D., and John J. Walsh, IV, M.D., )<br>)<br>Counterclaimants, )<br>)<br>v. )<br>)<br>John L. Eady, M.D., in his individual )<br>capacity, )<br>)<br>Counterdefendant. )<br>_____ ) | C.A. No. 3:12-cv-1671-CMC<br><br>OPINION AND ORDER<br>GRANTING MOTION TO<br>SUBSTITUTE AND DISMISS |

This matter is before the court on motion of the United States ("Government") to substitute itself as counterclaim Defendant for John L. Eady, M.D. ("Dr. Eady") and to dismiss the counterclaims against Dr. Eady with prejudice. Dkt. No. 27. The motion is supported by an initial (minimal) certification that the alleged actions forming the basis of the counterclaims were within the scope of Dr. Eady's federal employment at the Dorn Veterans Affairs Medical Center ("Dorn VAMC"). The Government and Dr. Eady provided more substantial evidentiary support and legal

argument after the certification was challenged. Dkt. Nos. 33, 38.

The counterclaims at issue are asserted by Defendants (counterclaim Plaintiffs) David E. Koon, Jr., M.D., Frank R. Voss, M.D., and John J. Walsh, IV, M.D., (collectively "U.S.C. Surgeons"). The U.S.C. Surgeons filed a memorandum in opposition to the Government's motion to substitute and dismiss. Supporting evidence attached to their opposition includes the documents that contain the allegedly defamatory statements on which the counterclaims are based. The U.S.C. Surgeons also filed a response to Dr. Eady's memorandum in support of certification, which also serves as a sur-reply to the Government's reply in support of the motion. Dkt. No. 40. In the alternative to immediate denial of the Government's motion with prejudice, the U.S.C. Surgeons seek denial without prejudice to allow for discovery before the court makes a final determination as to certification.

For the reasons set forth below, the court grants the Government's motion and directs that the United States be substituted as counterclaim Defendant. The court also directs that the claims against Dr. Eady be dismissed with prejudice. This leaves the Government as counterclaim Defendant.[1]

## BACKGROUND

**Parties.** During all times relevant to this action, Dr. Eady served as Chief of the Orthopaedic Service at Dorn VAMC. During the same timeframe, some or all of the U.S.C. Surgeons provided

---

[1] Defendants characterize the Government's motion as seeking dismissal of the counterclaims after substitution based on the Government's immunity from suit for defamation. *See* Dkt. No. 30 at 9. This may be the Government's ultimate intent, but is not requested in the current motion, which asks only that "counter-defendant John L. Eady, M.D., a federal employee acting within the scope of his employment, . . . be dismissed with prejudice and the United States substituted as the proper counter-defendant as to these counterclaims." Dkt. No. 27 at 3.

orthopaedic services to veterans at or in connection with Dorn VAMC, but not as employees. They were also linked to Dorn VAMC through their affiliation with the orthopaedic program at the University of South Carolina School of Medicine ("USC-SM"), which placed residents at Dorn VAMC for orthopaedic rotations.

**Dr. Eady's Suspensions.** In August 2011, some or all of Dr. Eady's surgical privileges at Dorn VAMC were suspended. Dkt. No. 30-8. The suspension ended in late November 2011. Dkt. No. 30-11. In February or March of 2012, Dr. Eady was informed that the issues giving rise to the suspension would be re-investigated. Dkt. No. 30-12. Dr. Eady's surgical privileges were again suspended in May 2012. Dkt. No. 30-2. The second suspension remains in effect. Despite his suspensions, Dr. Eady has retained his position and non-surgical responsibilities as Chief of the Orthopaedic Service at Dorn VAMC. Dkt. Nos. 30-2, 38-1 ¶ 13.

**Suspension-Related Statements.** In responding to the first suspension and threatened reopened investigation, Dr. Eady wrote several letters to his superiors at Dorn VAMC. *E.g.*, Dkt. No. 30-9 (August 29, 2011 letter to Drs. Brown and Boykin); Dkt. No. 30-10 (September 26, 2011 letter to Ms. Stackhouse and Drs. Brown and Boykin); Dkt. No. 30-12 (March 4, 2012 letter to Drs. Brown and Boykin regarding reopened investitation). These documents contain some of the allegedly defamatory statements on which the U.S.C. Surgeons rely for their counterclaims. Dr. Eady presumably made these statements because he attributed his suspensions and related investigations to complaints made by the U.S.C. Surgeons, some or all of whom he refers to as his "accusers" in at least one letter. Dkt. No. 30-9 at 1.

The allegedly defamatory statements in the suspension-related letters include negative statements regarding the U.S.C. Surgeons' surgical abilities, attitudes and actions towards patients

3

and staff at Dorn VAMC, and motivation for seeking Dr. Eady's suspension. Some of these statements relate to events which occurred a number of years before Dr. Eady's suspension. Most of the statements regarding the U.S.C. Surgeons' prior actions are, however, linked back to Dr. Eady's challenge of his suspension in one of two ways. First, a number of the challenged statements are offered in support of the premise that the U.S.C. Surgeons may be making accusations in retaliation for earlier actions by Dr. Eady. *See* Dkt. No. 30-9 at 3-5 (addressing belief U.S.C. Surgeons were making accusations in retaliation for questions Dr. Eady raised regarding U.S.C. Surgeons' actions or services at Dorn VAMC). Others are presented for purposes of comparison. Dkt. No. 30-10 at 1-2 (addressing relative infection rates and "placement of tibial tray in varus" by the U.S.C. Surgeons and Dr. Eady). The remaining negative statements are presented as a basis for raising concerns regarding how the U.S.C. Surgeons may act in the future with respect to Dorn VAMC. Dkt. No. 30-10 at 4.[2]

**Claims-Related Statements.** Dr. Eady also made allegedly defamatory statements about one of the U.S.C. Surgeons in correspondence to a claims administrator and an Assistant United States Attorney ("AUSA") who were investigating a malpractice claim against Dorn VAMC. Dkt.

---

[2] In his concluding his September 26, 2011 letter to his superiors, Dr. Eady expresses the following concerns:

> This documentation will convince the reasonable person, professional or layman, of the retaliatory acts Doctors Koon and Voss initiate when they are required to adhere to written policies and comply with appropriate procedures. While management of these acts of inappropriate behavior, especially Dr. Koon's, is within your purview, it is my duty to state that no action will embolden these two physician to acts of even worse conduct. Containment of the fallout will be extremely hard to accomplish should others expose their continued abuse, and probably won't be possible without the sacrifice of careers.

Dkt. No. 30-10 at 4.

Nos 30-3, 30-4, 30-6. In these communications, Dr. Eady insisted that the negative outcome was the sole responsibility of the U.S.C. Surgeon who performed the veteran's surgery. Dr. Eady continued to advance this position even after the AUSA indicated that his focus was on post-surgical care because that was the basis of the malpractice claim. Dkt. No. 30-4.

**Statements Relating to Residents.** Dr. Eady also made negative statements about one or more of the U.S.C. Surgeons in communications with an entity responsible for accreditation of the U.S.C. School of Medicine. Dkt. Nos. 30-5, 30-7. These comments related to concerns raised by residents regarding their rotations at Dorn VAMC.

**Assumptions.** For purposes of this order, the court assumes without deciding that Dr. Eady's statements about the U.S.C. Surgeons contained in the documents summarized above were, in fact, false and injurious to the U.S.C. Surgeions' professional reputations. The court also assumes without deciding that Dr. Eady exceeded any privilege he may have had to defend himself or advance the interests of Dorn VAMC in making such statements. Finally, the court assumes that all of the negative statements were at least partially motivated by Dr. Eady's personal animosity towards the U.S.C. Surgeons.

## DISCUSSION

### I.   Procedure for Challenging Certification

In *Maron v. United States*, 126 F.3d 317, 323 (4th Cir. 1997), the Fourth Circuit Court of Appeals explained the relevant burdens and procedures for challenging a certification as follows:

> We join with our sister circuits in placing the burden of proof on the [party challenging certification] to refute the certification of scope of employment issued by the Attorney General and to prove by a preponderance of the evidence that the [opposing parties] were not acting within the scope of their employment. We specifically hold that the certification satisfies the government's prima facie burden

but does not carry any evidentiary weight unless it details and explains the bases for its conclusions. If the [party opposing certification] presents persuasive evidence refuting the certification, the government must provide evidence and analysis to support its conclusion that the torts occurred within the scope of employment.

*Id.* at 323.

While the burden of production may shift, the burden of proof remains on the opponent of certification to persuade the court that the employee acted outside the scope of his employment. *Id.* Moreover, "[a]t all stages of the process, it is for the district court to weigh the sufficiency of the evidence, to determine whether genuine issues of fact exist, and ultimately to resolve these factual issues." *Borneman v. United States* 213 F.3d 819, 827 (4th Cir. 2000) (noting it may sometimes be necessary "to permit limited discovery or conduct an evidentiary hearing to resolve competing factual claims concerning the scope-of-employment issue").

## II.     Scope of Employment Determination

Whether a Government employee acted within the scope of his employment is decided by applying the law of *respondeat superior* of the state where the challenged actions occurred. In this case, it is undisputed South Carolina law controls.

In *Jones v. Elbert*, 34 S.E.2d 796 (S.C. 1945), the South Carolina Supreme Court held:

> Under the doctrine of *respondeat superior*, it is generally held that the master is liable for the wrongful acts of his servant while acting as such within the scope of his employment. The principle is adhered to that an act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business.

*Id.* at 799. An act may be within the scope of employment even if the employee exceeds his authority by committing unlawful actions such as an assault. *See id.* (finding employer responsible for employee's assault on supplier arising out of dispute over product); *Crittenden v. Thompson-*

*Walker Co., Inc.*, 341 S.E.2d 385 (S.C. Ct. App. 1986) (holding unauthorized assault fell within scope of employment where intended to aid in collection of debt owed to employer).

On the other hand, actions during even a short detour from the master's business for the purpose of purely individual interests fall outside the scope of employment. *See Armstrong v. Food Lion, Inc.*, 639 S.E.2d 50 (S.C. 2006) (distinguishing *Jones* and *Crittenden*). In *Armstrong*, the South Carolina Supreme Court upheld a directed verdict in favor of the employer in a case involving an assault by two employees on a customer where "the only reasonable inference . . . was that [the employees] attacked [the customer] for their own personal reasons and not for any reason related to their employment." *Id.* at 53. As the court summarized the law:

> An act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business. . . . The act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor. . . . Under these circumstances, the servant alone is liable for the injuries inflicted. . . . If a servant steps aside from the master's business for some purpose *wholly disconnected* with his employment, the relation of master and servant is temporarily suspended; this is so no matter how short the time, and the master is not liable for his acts during such time.

*Id.* at 52-53 (emphasis added).

Similarly, in *Hamilton v. J.D. Davis*, 389 S.E.2d 297, 298-99 (S.C. Ct. App. 1990), the Court of Appeals held that an individual hired to manage rental properties was not acting within the scope of his employment, even though present at the rental property to perform a job within the scope of his employment, when he engaged in a "dumb stunt" that "smeared" the renter along the side of a car. *Id.* (noting rental manager laughed, then dropped his truck into reverse, "smear[ing]" renter along the side of a car). In *Hamilton,* the court acknowledged that "doubts should be resolved

against the master, at least to the extent of requiring the issue to be submitted to the jury[,]" but held that this rule did not preclude summary judgment because the assault at issue was "clearly of a personal nature, indulged in for [the manager's] own personal amusement."[3]

Three older South Carolina cases applied these standards in the context of claims for defamation. Each of these cases found the alleged defamation fell outside the scope of employment because the statements at issue were not made with *any* purpose to serve the employer, even though some were made during the work day while the employee was otherwise performing work. *See Johnson v. Life Insurance Co. of Georgia*, 88 S.E.2d 260 (S.C. 1955) (finding insurance agent who made comment to one insured about why another insured's claim was denied acted outside the scope of his employment because he was not the agent for the insured whose claim was denied and did not have authority to speak for the company with respect to the denied claim); *Bosdell v. Dixie Stores Co.*, 167 S.E.2d 834, 837 (S.C. 1933) (finding employee was "not acting . . . within the scope of his authority" in making a defamatory statement where there was no evidence the employee "at the time was engaged in the performance of any duty committed by the company in connection with [the plaintiff's] employment or discharge, or that he had any authority to make any statement with reference to the matter on behalf of the defendant"); *Courtney v. American Ry Express Co.*, 113 S.E. 332, 335 (S.C. 1922) (finding casual comment by one railroad employee to another about why an employee was let go fell outside the scope of employment because the employee was not "engaged in the discharge of any duty committed to him" by the employer when the allegedly defamatory

---

[3] As explained above, factual issues relating to certification are resolved by the court, not a jury. *Borneman*, 213 F.3d at 827.

8

comment was made).[4]

### III. Allegedly Defamatory Statements

As summarized above, the allegedly defamatory statements fall into three categories: (1) statements made for the purpose of challenging suspension of Dr. Eady's surgical privileges at Dorn VAMC and related investigations; (2) statements relating to malpractice claims against Dorn VAMC; and (3) statements relating to residents' rotations at Dorn VAMC. For reasons explained below, all three categories of statement bear a sufficient connection to Dr. Eady's responsibilities as Chief of the Orthopaedic Service at Dorn VAMC to fall within the scope of his employment.

**Statements relating to suspension or investigation.** The majority of the alleged defamatory statements were made in Dr. Eady's letters challenging his initial suspension and anticipated re-investigation of the underlying allegations. Each of these documents is directed to Dr. Eady's superiors at Dorn VAMC and addresses whether Dr. Eady will be allowed to perform certain of his job duties.

As noted above, the court assumes for purposes of this motion that Dr. Eady went beyond what was strictly necessary (or subject to any applicable privilege) for these purposes. The court also assumes Dr. Eady was partially motivated by personal animus against the U.S.C. Surgeons. These assumptions do not, however, defeat the obvious link between the negative statements and Dr. Eady's purpose of challenging suspension of his surgical privileges. For example, his statements

---

[4] The U.S.C. Surgeons argue these cases suggest a narrower approach when defamation is involved than when assault is involved. They also argue that they place defamation outside the scope of employment if the matter about which the comment was made was "closed and ended" at the time the comment was made. Dkt. No. 30 at 15 quoting *Johnson*, 88 S.E.2d at 265. Thus, they argue comments Dr. Eady made about actions one or more of the U.S.C. Surgeons took years earlier fall outside the scope of his employment.

9

about the U.S.C. Surgeons' infection rates or surgical practices are presented in the context of explaining why Dr. Eady's own rates and practices do not support a suspension. Other negative statements regarding past actions by the U.S.C. Surgeons (and Dr. Eady's response) suggest that the U.S.C. Surgeons have personal reasons to pursue Dr. Eady's suspension.[5]

It follows that the challenged comments in these documents fall within the scope of Dr. Eady's employment *if* an employee's defense against a suspension of some or all of his duties is within the scope of his employment. While the court has found no South Carolina case on point, it concludes South Carolina would find an employee's defense of his ability to perform all duties assigned to him falls within the scope of his employment, at least where the employee (1) remains employed, (2) presents his defense to his superiors, and (3) his comments bear some relevance to his suspension. This is, in part, because an employer is best served by an employee able to perform all of his duties. Thus, even if an employee has a mixed motive, comments meeting these parameters fall within the scope of employment.

Most of the alleged defamatory statements in Dr. Eady's letters to his superiors at Dorn VAMC meet the criteria above. The remainder (statements of concern as to the U.S.C. Surgeons future actions with respect to Dorn VAMC) fall within the scope of Dr. Eady's continued responsibilities as Chief of the Orthopaedic Service. All of the alleged defamatory statements in these letters, therefore, fall within the scope of his employment.

**Statements relating to claims against Dorn VAMC.** In addressing the claim and lawsuit against Dorn VAMC, Dr. Eady was responding to inquiries directed to him as Chief of the

---

[5] Viewing the statements in this context, they are not simply comments related to a closed event as the U.S.C. Surgeons argue. Instead, the statements refer to prior events as explanations or support for particular action in a *current investigation*.

Orthopaedic Service. It follows that, even if he had a personal motive for casting blame on one of the U.S.C. Surgeons, he was acting within the scope of his duties in addressing the potential causes of the negative outcome and resulting malpractice claim.

**Statements relating to residents' rotations at Dorn VAMC.** Dr. Eady's communications with an accreditation entity on behalf of residents performing rotations at Dorn VAMC comes the closest to falling outside the scope of his employment. The language of at least one of his communications suggests recognition that he might be overstepping in raising the residents' concerns. *See* Dkt. No. 30-5 at 2 ("'Please forgive any actual or perceived impertinence this communication raises . . . .'"). Even these communications, however, are connected to serving the interest of his employer because his contact with the residents and his interest in having the residents perform rotations at Dorn VAMC existed because of his role as Chief of the Orthopaedic Service. Thus, even if Dr. Eady overstepped in initiating the communication, it is clear that he did so in his professional capacity as an employee of Dorn VAMC.

**Waiver and Fairness.** The court is not persuaded by the U.S.C. Surgeons' arguments regarding waiver and fairness. In consenting to the U.S.C. Surgeon's motion to amend the answer to assert counterclaims, Dr. Eady did not waive his (or the Government's) right to have the Government substituted as counterclaim Defendant. Instead, Dr. Eady specifically preserved any defenses or rights he might have to oppose the counterclaims. In any event, it is doubtful that Dr. Eady could waive the Government's right to substitution, which did not arise until the counterclaim was asserted. Certainly, no authority for such a waiver has been presented.

The U.S.C. Surgeons' fairness argument is, likewise, unpersuasive. The result, even if "unfair" in the abstract, is simply the result of application of the relevant legal standards.

11

**Request for Discovery.** The court has carefully reviewed the record and, for purposes of this motion, assumed that further discovery would reveal that Dr. Eady was motivated, in part, by personal animosity towards the U.S.C. Surgeons and said more than was necessary to defend against the suspensions or advance the legitimate interests of his employer. Such evidence could not, however, overcome the conclusions reached above that each of the allegedly defamatory statements, all of which are evidenced by a written document, was made at least in part for the purpose of serving the employer. Further discovery is, therefore, unwarranted because it would not change the result.

## CONCLUSION

For the reasons set forth above, the Government's motion is granted. The United States will, therefore, be substituted as counterclaim Defendant and the counterclaims against Dr. Eady will be dismissed with prejudice. This order does not address whether the counterclaims may proceed against the United States as no motion to dismiss the counterclaims against the United States has been made.

IT IS SO ORDERED.

                        s/ Cameron McGowan Currie
                        CAMERON MCGOWAN CURRIE
                        UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 21, 2013