IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Afraaz R. Irani, M.D., | ) | |
| | ) | C.A. No. 3:14-cv-3577-CMC-KDW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **UNIVERSITY DEFENDANTS'** |
| Palmetto Health; University of South Carolina | ) | **RESPONSE TO "PLAINTIFF'S** |
| School of Medicine; David E. Koon, Jr., M.D., in | ) | **MOTION TO COMPEL THE U.S.** |
| his individual capacity; and John J. Walsh, IV, | ) | **DEPARTMENT OF VETERANS** |
| M.D., in his individual capacity, | ) | **AFFAIRS TO PRODUCE** |
| | ) | **DECLARANT, JOHN L. EADY, M.D."** |
| Defendants. | ) | |
| | ) | |

On pages 6 and 7 of his motion (ECF #146), Plaintiff represents as follows:

> Other than the named parties, Dr. John L. Eady may have more relevant personal
> knowledge than any other witness in this case. . . . Dr. Eady . . . heard Dr. Koon
> use a racial slur . . .. Dr. Eady witnessed . . . Dr. Koon refer[] to Plaintiff as
> "Achmed the Terrorist" . . .. Dr. Eady also has knowledge relevant to the alleged
> deficiencies in Plaintiff's job performance that have been cited as the basis for
> Plaintiff's termination from the residency program, and he was specifically
> involved in a patient encounter for which Plaintiff was written up and placed on
> formal probation. . . . Dr. Eady has . . . been listed by both *[sic]* sides as a
> potential witness in this case.

All of these representations are demonstrably false.

Contrary to Plaintiff's representations, *none of the four defendants in this case has listed*

*Dr. Eady as a witness* – not in Rule 26.03 filings or in answers to interrogatories.  None of these

defendants believes Dr. Eady has witnessed any of the things he claims to have witnessed.  None

of these defendants believes a word uttered or written by Dr. Eady.  These defendants have a

history with Dr. Eady and certainly would *never* have presented Dr. Eady as a witness to testify

about *anything*.  [See paragraphs 69 and 70 of Dr. Koon's Reply Affidavit, filed as ECF #169-1,

which describes that history and addresses Dr. Eady's fabricated allegations.]  Dr. Eady

unabashedly has made it his personal mission to "completely discredit[]" these defendants.  [See ECF #136-7, p. 8 (Email from Dr. Eady to Dr. Irani:  "only by completely discrediting Drs. W,K, etc will you prevail")]  Plaintiff is complicit in presenting to the Court testimony that Plaintiff and Dr. Eady *know to be false*, but nevertheless present as part of their common goal of "totally discrediting Drs. W, K, etc."  [See ECF #136.7, p. 8 (See Dr. Eady's statement to Dr. Irani:  "only by completely discrediting Drs. W,K, etc will you prevail," and Dr. Irani's response to Dr. Eady:  "My assumption was that I would turn over my complaint to the RRC to help discredit Drs. W,K etc. in parallel with fighting this on the Palmetto Health level.")]

The representation that Dr. Eady "has knowledge relevant to the alleged deficiencies in Plaintiff's job performance" and "was specifically involved in a patient encounter for which Plaintiff was written up and placed on formal probation" is demonstrably false, *based on Dr. Eady's own representations, of which Plaintiff and his counsel are aware*.  Please see Dr. Eady's March 6, 2012, email communication with Dr. Irani (cc:  Mr. Rothstein) in which Dr. Eady responded to Dr. Irani's assistance with respect to his impending termination from the residency program.  In that communication, Dr. Eady stated:

> While I don't know the details of what happened to you, I can say that from what I have heard you were treated shamefully on an almost daily basis, and it is no surprise to me that you experienced difficulties with communication skills in several settings. . . .  I don't know how I can help you since I never got to supervise your performance except while you were at the VA on the General Surgery rotation and from your performance while doing your rotations on Orthopaedic night and weekend call at the VA.  However, I am very willing to do what I can.  I have heard through the grapevine . . . that you were terminated from the program recently. . . .

[ECF #136-7, pp. 2-3]  Particularly when the foregoing is read in the context of the other email exchanges between Dr. Eady and Dr. Irani (and Mr. Rothstein) in ECF #136-7, it is clear that all were aware that Dr. Eady admittedly lacked *at that time* knowledge of anything they have since

tried to pass off as Dr. Eady's *personal* knowledge that predated that email correspondence. Notably, at no point in those March-April email exchanges, when Dr. Eady was eager to help Dr. Irani any way he could, did Dr. Eady volunteer that he had heard Dr. Koon make any derogatory comment about Dr. Irani.  Based on Dr. Eady's admitted eagerness to "completely discredit[]" these defendants, if Dr. Eady had any such knowledge (or if he had thought the allegation helpful to their common goal to discredit Dr. Koon), Dr. Eady certainly would have volunteered such information in that timeframe.  In none of those communications, however, does Dr. Eady mention "Little Black Sambo" or "Achmed the Terrorist."  Nor did Dr. Eady mention either of those comments in the 98-paragraph Complaint he filed with the Court in March 2012, in which he detailed other allegations of impropriety.  Further, Dr. Irani's Intake Questionnaire with the EEOC in March 2013 – a year later – identified only two witnesses who allegedly heard Dr. Koon use a racial slur, neither of whom was Dr. Eady.  [See ECF #155-11 (Irani's EEOC Intake Questionnaire)]  Mr. Rothstein had been communicating with Dr. Eady and Dr. Irani for more than a year by March 2013, yet there was not any suggestion even at that time that Dr. Eady had heard a racial slur from Dr. Koon.  Moreover, from March 2012 through October 2013 during the course of Dr. Eady's lawsuit against these defendants, Dr. Eady was wildly accusing Dr. Koon (and the other defendants) of every despicable act he could imagine – yet there was never at any time during that litigation any suggestion that Dr. Eady had heard Dr. Koon utter "Little Black Sambo" or "Achmed the Terrorist."  In June 2014, Dr. Irani, represented by Mr. Rothstein, the same attorney who handled Dr. Eady's litigation, filed a 127-paragraph Complaint in this lawsuit, alleging in detail every despicable act they could imagine – yet still there is no mention of Dr. Eady's having any relevant knowledge or having heard Dr. Koon utter "Little Black Sambo" or "Achmed the Terrorist."  It was not until *after* Dr. Irani filed this lawsuit that Dr. Eady's

3:14-cv-03577-CMC    Date Filed 02/11/16    Entry Number 173    Page 4 of 8

fabricated allegations of events from years earlier began to take shape. Dr. Eady eagerly

volunteered to travel to California in the fall of 2014 – without DVA approval – for the specific

purpose furthering the common goal of "totally discrediting Drs. K,W etc." If the Court accepts

Dr. Eady's testimony in any form, it will reflect shamefully on our system of justice.[1]

On pages 8 and 9 of his motion, Plaintiff states, as the factual basis for his *Touhy*

argument for seeking authorization for Dr. Eady to file his proposed declaration:

> [T]he DVA's analysis fails to account for the fact that Dr. Eady has already
> testified *and been authorized to testify* on several occasions *concerning the same
> matters stated in his declaration*. The DVA is apparently concerned that Dr.
> Eady's declaration will create the appearance that it favors Plaintiff and his
> position in this lawsuit. *This concern has never been expressed in prior instances
> of Dr. Eady rendering comparable testimony*, and Dr. Eady's prior testimony
> significantly undercuts the validity of the DVA's present concern. *In effect, any
> potential damage in relation to 38 C.F.R. § 14.804 (i) and (j) has already been
> done.*
>
>    Dr. Eady's proposed declaration is *very similar to the testimony he provided in
> Plaintiff's California Medical Board proceedings. Dr. Eady testified in those
> proceedings, without any* <u>Touhy</u> *objection from the DVA*, pursuant to subpoena by
> both the California Deputy Attorney General and Plaintiff's attorney in that case.
> The proceedings before the California Medical Board sprung [*sic*] directly from
> the circumstances underlying this action . . . and Dr. Eady's testimony covered
> almost everything in his proposed declaration. Indeed, *the potential damage from
> DVA's perspective in relation to 38 C.F.R. § 14.804(I) and (j) was much greater
> in the California proceedings, as Dr. Eady was allowed to offer free-flowing
> testimony*, as opposed to the constrained declaration sought here. The proposed
> declaration will do less than the California proceedings to create the appearance
> that the DVA favors Plaintiff and his position in this lawsuit.

[Pl's motion pp. 8-9 (emphasis added)]

---

[1]Defendants may file a motion to disallow Dr. Eady's testimony in this case. The
disputes as to the truthfulness of Dr. Eady's proposed testimony do not present a "genuine issue
of material fact" with regard to Defendants' pending summary judgment motions, which should
be granted as a matter of law without ever having to reach that dispute. However, the manner
and motivation for Plaintiff's presenting Dr. Eady's proposed testimony must be addressed in
response to Plaintiff's current motion, which is interpreted as an effort to circumvent court rules
and to suborn perjury. Defendants apologize for the acerbic tone of this filing, but the matter
presented in the current motion is deplorable, and reflects more adversely on our judicial system
than calling out unethical conduct in a responsive court filing.

The clear and inescapable importance of these paragraphs from Plaintiff's motion is the representation and argument that the DVA *allowed Dr. Eady to testify in the California matter* yet is not allowing Dr. Eady to give the same testimony in this proceeding. The representation is repeated on page 9 of Plaintiff's memorandum, where Plaintiff argues "The DVA has provided no explanation for *why it is treating the proposed declaration different than the California proceedings . . . .*" [Pl's motion p. 9 (emphasis added)] Plaintiff thereafter argues the DVA has provided "inconsistent treatment" of Dr. Eady's *Touhy* requests as relate to matter involving Dr. Irani.

Such representations are demonstrably false. In fact, *Dr. Eady never sought or obtained the DVA's approval to testify in Dr. Irani's California proceedings*. Please see the attached correspondence from Attorney Edith Lewis of the DVA's Office of General Counsel, who has confirmed that Dr. Eady never obtained the required VA approval to testify in the California proceeding:

> Please accept this email as an official VA response regarding Dr. John Eady not having the required VA written or verbal approval per Touhy to testify in the California proceeding involving Dr. Irani. This has also been acknowledged by Dr. Eady and Attorney David Rothstein to me via email within the last day or so.

[February 11, 2016, email correspondence, attached] The undersigned has shared Ms. Lewis's email communication with Mr. Rothstein and offered him the opportunity to withdraw or correct his court filing, which he has declined to do.

The revelation that Dr. Eady admittedly never sought or obtained authority to testify in the California matter puts Plaintiff's motion in a brand new light. Plaintiff is arguing the "damage" from Dr. Eady's unauthorized California testimony "has already been done," and thus there is no additional harm that would result from presenting the same testimony from Dr. Eady in this matter. Plaintiff and Dr. Eady are now effectively asking the Court to condone a prior

5

*Touhy* violation, which surely is not within the terms or spirit of the *Touhy* regulations. The Court should deny Plaintiff's post hoc demand for authorization to use Dr. Eady's testimony.

While Plaintiff's motion is captioned as a motion directed to the DVA, Plaintiff's motion is essentially designed as an end-run around the discovery rules that apply *to this litigation between Plaintiff and these Defendants* in this action to which the DVA is not a party. The parties to this lawsuit were provided a specified period for conducting discovery in this case. Plaintiff, the only party who intended to rely on testimony from Dr. Eady, was well aware through his counsel of the requirements of the *Touhy* regulations. Mr. Rothstein, Dr. Eady, and these defendants all had to work within the *Touhy* regulations to obtain permission to depose Dr. Eady and VA personnel in Dr. Eady's lawsuit. Plaintiff's counsel represents that he believed during the discovery period that Dr. Eady had been authorized to testify, yet he admittedly never saw any authorization and he made no attempt during the discovery period to obtain authorization from the DVA to depose or otherwise to obtain testimony from Dr. Eady. Plaintiff's reason for his failure to depose Dr. Eady or to seek DVA authorization during the discovery period – *i.e.*, he neglected to do so because he expected Attorney Kathy Dudley Helms would depose Dr. Eady, and he assumed he could get a declaration later [ECF #146-2, p. 3][2] – is

---

[2]In his January 15, 2016 email correspondence to DVA Attorney Edith Lewis, Mr. Rothstein wrote:

> Jason Rudie previously agreed to allow Dr. Eady's deposition to be taken in this case, despite the Touhy regulations, when pressed by Palmetto Health attorney, Kathy Dudley Helms. The only reason Dr. Eady's deposition was not taken is because Ms. Helms did not schedule it before the discovery deadline. Had the deposition been taken, I am sure that Dr. Eady would have testified consistently with his statement in the Declaration  I did not seek to take Dr. Eady's deposition because I thought Ms. Helms was going to take it and because I believed that I would be able to obtain a Declaration from Dr. Eady.  I was not a party to the conversation between Ms. Helms and Mr. Rudie, but I understand that he was fully apprised of Dr. Eady's testimony before the California Medical Board.

[ECF #146-2, p. 3]

not a legitimate reason for his failure to make reasonable efforts during the discovery period to obtain authorization for testimony of a witness he considers one of his most important witnesses. Undisputedly, it was not until January 12, 2016 – months after the close of discovery – that Plaintiff first attempted to contact the DVA to seek compliance with DVA protocol.  [Pl's motion p. 7]

Regardless of the propriety of the DVA's determination in this matter, the Court should deny the relief sought by Plaintiff *in this litigation between these parties* because Plaintiff's 11th hour "motion to compel" – <u>literally</u>, at 10:37pm on January 25, 2016, the day Plaintiff's summary judgment responses were due[3] – is in effect an untimely discovery motion that unfairly prejudices Defendants.

Plaintiff's motion is also designed as an end-run around Rule 56.  Plaintiff has used his current motion, in response to Defendants' summary judgment motions, to present for the Court's consideration unsigned, unsworn, unauthorized, and prejudicial matter *that is not admissible testimony*.  If the Court were to grant Plaintiff's motion and require the DVA to authorize Dr. Eady to sign the proposed declaration, Plaintiff's next step would be then to seek to present Dr. Eady's testimony in a *belated response to Defendants' summary judgment motion*s. There is no legal or equitable justification for allowing Plaintiff that extraordinary relief.

Plaintiff's "motion to compel" the DVA is unjustified in this litigation, contains material misrepresentations, and has been presented in this litigation for improper purposes as an end-run around discovery rules and Rule 56.  Defendants are not to blame for Plaintiff's failures in this instance, and Defendants will be prejudiced by the relief Plaintiff seeks.  Regardless of whether

---

[3]Plaintiff first sought the DVA's authorization for Dr. Eady's declaration on January 12, 2016, almost a month after Defendants filed their summary judgment motions and less than two weeks before Plaintiff's extended deadline to respond to such motions.

or not the DVA properly handled Plaintiff's Touhy request, the Court should deny Plaintiff's

motion.

                                                   s/ Kathryn Thomas
                                            Kathryn Thomas (DCID #5134)
                                            Fred A. Williams (DCID #9934)

GIGNILLIAT, SAVITZ & BETTIS, LLP

900 Elmwood Avenue, Suite 100

Columbia, South Carolina  29201

February 11, 2016                    Ph: (803) 799-9311 / Fax:  (803) 254-6951

kthomas@gsblaw.net; fwilliams@gsblaw.net

ATTORNEYS FOR DEFENDANTS WALSH, KOON,
AND UNIVERSITY OF SOUTH CAROLINA SCHOOL OF
MEDICINE