IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Afraaz R. Irani, M.D., | ) | C/A No. 3:14-cv-03577-CMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPLY BRIEF IN SUPPORT OF** |
| vs. | ) | **PLAINTIFF'S MOTION TO COMPEL** |
| | ) | **U.S. DEPARTMENT OF VETERANS** |
| Palmetto Health; University of South | ) | **AFFAIRS TO PRODUCE** |
| Carolina School of Medicine; David E. | ) | **DECLARANT, JOHN L. EADY, M.D.** |
| Koon, Jr., M.D., in his individual | ) | |
| capacity; and John J. Walsh, IV, M.D., | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, Afraaz R. Irani, M.D., by and through his undersigned counsel, hereby submits this

Reply Brief in Support of Plaintiff's Motion to Compel U.S. Department of Veterans Affairs to

Produce Declarant, John L. Eady, M.D.  Despite Defendants' wild conspiracy theories and

unfounded accusations of malicious intent, Dr. Eady's proposed Declaration provides important,

relevant evidence of discriminatory animus on the part of Defendant Koon and also squarely refutes

the allegation that Dr. Irani provided sub-standard care to VA patients.  The Court should assess Dr.

Eady's credibility at the trial of this matter, not simply by accepting the unwarranted, ad hominem

attacks of Defendants' counsel.  The VA's refusal to allow Dr. Eady to testify in this matter, by way

of the proposed Declaration, is arbitrary and capricious and is not justified by the applicable Touhy

regulations.  Accordingly, the Court should grant Plaintiff's Motion to Compel and should allow Dr.

Eady to sign the proposed Declaration truthfully attesting to his personal observations in this matter.

Defendants focus their opposition to Dr. Eady's proposed Declaration on attempting to

discredit Dr. Eady and suggesting an ulterior motivation for Dr. Eady's testimony is this case. Defendants' attacks are way off the mark.

Dr. Eady has had a long and distinguished career in graduate medical education. (A copy of Dr. Eady's CV is attached hereto as Exhibit A).  He has devoted most of his medical career to training orthopaedic surgeons and to serving as an advocate for residents under his tutelage.  Dr. Eady was the only attending physician who supported then-fifth year resident Dr. Chad Lamoreaux, who was terminated from the orthopaedic surgery residency program in December 2008.  Dr. Eady was appointed to serve as the specially designated program director to shepherd Dr. Lamoreaux through the final six months of his training, after Dr. Koon adamantly stated that he would never sign Dr. Lamoreaux's final summative evaluation even if Dr. Lamoreaux were reinstated into the program.  Dr. Lamoreaux successfully completed the program and is now a successful, board-certified orthopaedic surgeon in Orlando, Florida.  Several years earlier, Dr. Eady was also a strong advocate for Dr. Rodney Alan, the first African-American resident in the Palmetto Health/USC School of Medicine Orthopaedic Surgery Residency Program, when Dr. Koon tried to have him dismissed from the program early in his training.  Now, Dr. Eady is attempting to support Dr. Irani, whose once-promising medical career has been completely derailed by bullying, hazing, and overt racial discrimination by his former program director, Dr. Koon.

To suggest that Dr. Eady "has a history of inserting himself into disputes and viciously attacking both the faculty and the orthopaedics residency program after his 2006 departure" (Def. PH's Br., at 3), or that Dr. Eady "unabashedly has made it his personal mission to 'completely discredit'" Drs. Koon and Walsh (USC Defs.' Br. at 2), is a gross distortion of the underlying events. Dr. Eady has no vendetta against Defendants, nor does he have a "personal mission" against anyone;

2

his only interest has been to serve this country's veterans and to further the cause of educating and supporting qualified orthopaedic surgery residents.

It is incredible that Defendants would accuse Dr. Eady of viciously attacking anyone, since he has been the victim of multiple efforts by Defendants Koon and Walsh to destroy his medical career and his professional reputation since 2006. The case of John L. Eady, M.D. v. David E. Koon, Jr. M.D. etc., et al., Civil Action No. 3:12-cv-01671-CMC, arose out of such an attack. The Court will recall that this was essentially a defamation case brought by Dr. Eady after Drs. Koon and Walsh accused him of operating below the standard of care at the Dorn VA Medical Center. Even after Dr. Eady was fully cleared in peer reviews by two well-respected, board certified orthopaedic surgeons with over thirty years' experience each, Drs. Koon and Walsh continued to pressure the Dorn VAMC to remove Dr. Eady from his position as Chief of Orthopaedics, by threatening to pull the orthopaedic surgery residents from rotating to the Dorn VAMC. Dr. Eady was ultimately vindicated completely after additional peer reviews were done beyond the seven or eight cases initially raised by Drs. Koon and Walsh. Dr. Eady's lawsuit was settled on terms very favorable to Dr. Eady, which included then-Dean of the USC School of Medicine, Dr. Richard Hoppman, and Executive Vice President for Education at Palmetto Health, Dr. Jim Raymond, issuing a public statement of appreciation in favor of Dr. Eady. (Exhibit B).

In Dr. Eady's lawsuit against Drs. Koon, Walsh, and others, he did not "hid[e] behind" the Touhy regulations, as asserted by Defendant Palmetto Health's counsel. In fact, as this Court well knows, Dr. Eady successfully fought the VA's Touhy regulations after the VA refused to honor Dr. Eady's subpoena commanding production of the peer reviews and the patient records relating to the unsubstantiated allegations that he had operated below the applicable standard of care as stated by

Drs. Koon and Walsh.  The Court's prompt dismissal of Defendants' ill-considered counterclaims against Dr. Eady was based on the Westfall Act, 28 U.S.C. § 2679, and the Federal Tort Claims Act, not the Touhy regulations as erroneously asserted by Defendant Palmetto Health's counsel.

Next, Dr. Eady reasonably believed that he had express permission from the appropriate officials at the VA to testify in Dr. Irani's administrative hearing before the California Medical Board in September 2014, pursuant to the subpoenas issued by both the California Deputy Attorney General and Dr. Irani's licensing attorney in California.  Dr. Eady explained that he received the California subpoena through the VA's inter-office mail system, which he believed had been routed to him by the Regional Counsel's office.  He subsequently provided to the regional counsel's office a copy of the subpoena he received from Dr. Irani's California attorney.  He heard nothing further from the regional counsel's office.  Thereafter, he believed that he followed applicable protocols by scheduling the time off to attend the hearing in California by obtaining approval through his supervisor, without objection by the regional counsel's office.  (Exhibit C).  Dr. Eady did not "waive" the California subpoena as asserted by Defendant Palmetto Health, nor did he in any way attempt to conceal his testimony in the California case from the VA regional counsel.  Dr. Eady has been very conscientious about following VA protocols for providing testimony, either in response to a subpoena or in the form of an affidavit or declaration.  In fact, his insistence on seeking permission from the regional counsel's office before signing the Declaration at issue here is what led to the instant motion to compel.

The undersigned counsel was not involved in Dr. Eady's testimony before the California Medical Board or in how the subpoenas in that matter were handled through the VA.  Dr. Eady's lawsuit against Drs. Koon, Walsh, and others was settled in late September 2013, approximately one

year prior to Dr. Eady's testimony in the administrative hearing for the California Medical Board. Dr. Eady did not seek any legal advice from the undersigned counsel about whether or not the subpoenas in that matter were enforceable under state or federal law. The undersigned counsel's apparently mistaken belief that the VA's Regional Counsel was involved in that process came directly from Dr. Eady's account of what had transpired. The VA regional counsel's office now indicates that it was not, in fact, involved or did not expressly authorize the subpoenas pursuant to the Touhy regulations.

The February 11, 2016 e-mail from Assistant VA Regional Counsel, Edith Lewis, which was attached to Defendant USC's brief, is not an accurate reflection of Dr. Eady's or the undersigned's previous e-mails on this issue. Attached hereto as Exhibit C is the actual e-mail thread between Dr. Eady and Ms. Lewis and between the undersigned and Ms. Lewis on February 10, 2016. Certainly, the Court can see for itself that there was no wrong-doing or malicious intent on Dr. Eady's part in connection with the California subpoenas or on Plaintiff's counsel's part in connection with the representations previously made in this case.

Dr. Eady's signed Declaration relating to ophthalmology resident, Dr. Ozgur Ozkan, was not submitted for any improper purpose or "to further inflame matters," as alleged by Defendant Palmetto Heath. Plaintiff has submitted that declaration to demonstrate the arbitrary and capricious nature of the VA's position here in refusing to allow Dr. Eady to sign the proposed Declaration regarding Dr. Irani's case. With regard to the Dr. Ozkan matter, Dr. Eady was not maliciously eavesdropping or intentionally spying on his VA colleagues from the ophthalmology department, as alleged by Defendant Palmetto Health; instead, he could not help but overhear what he believed to be an inappropriate conversation in the surgical suite at the Dorn VAMC as he was preparing to

scrub in for a surgical case.  Dr. Eady immediately brought this matter up at the next surgical services monthly meeting, as he felt was his obligation to do so.  The fact that Dr. Eady later revealed this conversation to the undersigned counsel, who coincidentally also happens to represent Dr. Ozkan in connection with his efforts to return to the ophthalmology residency program, does not mean there is some nefarious purpose behind Dr. Eady's observations.  The point in including Dr. Eady's Declaration about the Dr. Ozkan situation is to demonstrate the arbitrary and capricious nature of the decision not to allow Dr. Eady to sign a similar declaration relevant to Dr. Irani's case.

Defendant Palmetto Health asserts that "Dr. Eady does not and cannot address the expectations of the faculty as to whether Dr. Irani should have evaluated the [VA] patient in person." (Def. PH's Br., at 3).  This argument disregards not only Dr. Eady's 30-plus years of experience as a residency educator, including service as both the program director and the department chair for the Palmetto Health/USC School of Medicine Orthopaedic Surgery Residency Program, but also The Program Letter of Agreement between Palmetto Health and the Dorn VAMC.  (A true and accurate copy of the PLA is attached hereto as Exhibit D).  The PLA appointed Dr. Eady "as the qualified faculty (Site Director) who will assume overall supervisory, administrative, and educational responsibility for the resident(s) on rotation at [the Dorn VAMC]." (PLA, ¶ 1).  The PLA further provides, "While on rotation at the Participating Institution resident(s) will abide by applicable policies, procedures, rules and regulations of the Participating Institution." (PLA, ¶ 6).  The PLA also states that "the educational experiences of the resident(s) while on rotation at the Participating Institution will be provided in a manner consistent with the applicable Accreditation Council for Graduate Medical Education (ACGME) Institutional and Residency Review Committee (RRC) requirements (e.g. duty hours limits), and other federal, state and local laws, rules and regulations."

(Id.).  Clearly, Dr. Eady is qualified to testify about Dr. Irani's compliance with applicable VA standards, as well as the standards generally expected of a second-year orthopaedic surgery resident.

The motion to compel Dr. Eady's Declaration was not an attempted end-run around the discovery rules in this case.  Dr. Eady's testimony from the California administrative proceeding was produced very early in discovery in this case.  Dr. Eady was identified as a potential witness in this case from the time Plaintiff submitted his Rule 26.03 responses.  (Dkt. No. 12, at 4).  Although the USC Defendants assert that no Defendant has ever actually identified Dr. Eady as a potential witness, Defendant USC's Rule 26.03 responses state, "The University Defendants may call witnesses identified by other parties in response to Local Rule 26.03 interrogatories and otherwise identified in the course of discovery." (Dkt. No. 17, at 2).  Defendants had every opportunity to take Dr. Eady's deposition after the VA's Regional Counsel reconsidered his initial decision under the Touhy regulations.

Nor is Plaintiff attempting an "end run" around Rule 56, Fed. R. Civ. P.  Plaintiff's counsel did not foresee a need to obtain a declaration from Dr. Eady prior to the close of discovery in this case.  Frankly, it did not occur to the undersigned that the proposed Declaration would even implicate the Touhy regulations at all, especially after the VA Regional Counsel had allowed Dr. Eady to sign the Ozkan Declaration in May 2015.  Furthermore, Defendants' counsel had indicated that they intended to take Dr. Eady's deposition in a timely manner.

The United States Department of Veterans Affairs appears to base its entire opposition to Plaintiff's motion on its argument that refusing to allow Dr. Eady to sign the declaration "conserves government resources where the United States is not a party to a suit, and minimizes governmental involvement in controversial matters unrelated to official business." (USC Br., at 4).  It is important

to note that the VA Regional Counsel previously approved Defendant Palmetto Health's requests to take Dr. Eady's deposition. Surely, that would have involved a greater expenditure of government resources that the declaration at issue. Even if Dr. Eady is later requested to testify at trial pursuant to a trial subpoena, his testimony would likely involve less than a couple of hours worth of time, and Plaintiff's counsel could schedule his testimony to minimize patient care issues. The government's argument that it is being asked to become involved in "controversial matters unrelated to its official business" also disregards the PLA between Palmetto Health and the Dorn VAMC. Although the Dorn VAMC is no longer part of the orthopaedic surgery residency program following the unilateral withdraw of the residents in the summer of 2012, the Dorn VAMC was contractually obligated to provide educational experiences for residents consistent with ACGME requirements, as well as with federal and state laws. Dr. Eady's proposed testimony is supportive of Dr. Irani's hostile work environment claims in violation of Palmetto Health policies and federal anti-discrimination laws, including Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the United States Constitution.

Finally, there is no likelihood that Dr. Eady's signing the proposed Declaration will give the appearance of the VA or the federal government favoring one litigant over another or endorsing or supporting a position advocated by one party to the underlying lawsuit. Although Dr. Eady is the chair of the orthopaedic surgery service at the Dorn VAMC, he does not purport to testify on behalf of the Department of Veterans Affairs, nor is there any appearance of his doing so. The truthful testimony under penalty of perjury of a VA employee who observed an incident of unlawful, discriminatory animus on the part of a non-VA employee should not be suppressed under these circumstances.

For all of the foregoing reasons and for the reasons previously stated in Plaintiff's previous filing, Plaintiff's Motion to Compel U.S. Department of Veterans Affairs to Produce Declarant should be granted, and Dr. Eady should be permitted to sign his Declaration under penalty of perjury.

Respectfully submitted,


s/ David E. Rothstein
David E. Rothstein, Fed. ID No. 6695
ROTHSTEIN LAW FIRM, PA
1312 Augusta Street
Greenville, South Carolina  29605
Office: (864) 232-5870
Facsimile: (864) 241-1386
E-mail: drothstein@rothsteinlawfirm.com

Attorney for Plaintiff, Afraaz R. Irani, M.D.

February 22, 2016

Greenville, South Carolina.