IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Afraaz R. Irani, M.D., ) | C/A No. 3:14-cv-03577-CMC |
| ) | |
| Plaintiff, ) | |
| ) | **REPLY BRIEF IN SUPPORT OF** |
| vs. ) | **PLAINTIFF'S MOTION TO ALTER** |
| ) | **OR AMEND JUDGMENT AND FOR** |
| Palmetto Health; University of South ) | **RECONSIDERATION OF ORDER ON** |
| Carolina School of Medicine; David E. ) | **DEFENDANTS' MOTIONS FOR** |
| Koon, Jr., M.D., in his individual ) | **SUMMARY JUDGMENT** |
| capacity; and John J. Walsh, IV, M.D., ) | |
| in his individual capacity, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff, Afraaz R. Irani, M.D., by and through his undersigned counsel, hereby files this Reply Brief in Support of Plaintiff's Motion to Alter or Amend Judgment and for Reconsideration of Order on Defendants' Motions for Summary Judgment. Plaintiff stands by the arguments he raised in his initial Memorandum of Law, but submits this Reply Brief to address some of the specific arguments raised in Defendants' opposition briefs.

### A. Hostile Work Environment

With respect to Plaintiff's claims for hostile work environment,[1] Plaintiff's counsel stands corrected about whether Defendants completely disregarded the Fourth Circuit case of Boyer-Liberto v. Fontainblue Corp., 786 F.3d 264 (4th Cir. 2015) (en banc). Plaintiff's counsel overlooked Defendant Palmetto Health's brief discussion of the Boyer-Liberto case in its initial memorandum

---

[1]This discussion applies equally to both Plaintiff's claims against the institutional Defendants under 42 U.S.C. § 1981, as well as the claim against Defendant Koon in his individual capacity under 42 U.S.C. § 1983 for violation of the Equal Protection Clause.

in support of its motion for summary judgment, and its attempt to distinguish the facts of that case from those presented here.

Nevertheless, Defendant Palmetto Health continues to disregard the key holding of the Boyer-Liberto case–that the court must examine the totality of the circumstances to determine whether the conduct at issue was sufficiently severe and pervasive so as to create a hostile or abusive working environment.  The Court overlooked critical aspects of the hostile and intimidating environment in which the offensive statements at issue here were made, which included several episodes during the first half of Plaintiff's PGY-2 year in which he was ridiculed or was directly threatened with termination from the program.

The fact that Defendant Koon did not get in Plaintiff's face or spray him with spittle when referring to Plaintiff as "Achmed the Terrorist" is not determinative.  Defendant Palmetto Health's characterization of the Boyer-Liberto case, that "the actions of the supervisor were physically intimidating and constant" (Def. PH Br., at 4), is simply not an accurate depiction of the facts of that case.  The behavior at issue in Boyer-Liberto was anything but "constant"; it was an isolated incident that occurred during the plaintiff's very brief tenure with the hotel of only approximately seven weeks.  786 F.3d at 269.  Furthermore, the offensive, "porch monkey" comment at issue in that case was not made while Ms. Clubb was in Ms. Boyer-Liberto's face, but was made as Ms. Clubb turned to walk into the kitchen.  Id. at 270.  The critical issue there was not the physical nature of the confrontation by Ms. Clubb, but rather the threat Ms. Clubb made regarding the plaintiff's job security, where she stated "'[I'm] going to get [you]' and '[I'm] going to make [you] sorry.'"  On this issue, Ms. Clubb's position in the hotel actually pales in comparison to that of Defendant Koon here.  In fact, the plaintiff in the Boyer-Liberto case did not even believe that Ms. Clubb was a manager

(certainly not her manager), but instead thought that Ms. Clubb was merely a glorified hostess and a friend of the hotel's owner. Id. at 270-71. The Fourth Circuit actually stated, "we need not–and, in any event, on this record cannot–determine whether Clubb was actually Liberto's supervisor or simply her co-worker." Id. at 279.

Here, by contrast, Defendant Koon was undeniably the program director for the orthopaedic surgery residency program. Plaintiff clearly understood Defendant Koon's role within the program, and on at least two occasions during the early portion of Plaintiff's PGY-2 year, Defendant Koon specifically mentioned his power to terminate residents: (1) during the August 15, 2011 meeting, Defendant Koon mentioned terminating residents from the program, including a former fifth-year resident, Dr. Chad Lamoreaux, (Irani Decl., at ¶ 12); and (2) in November 2011 following the e-mail exchange about the VA patient, Defendant Koon told Plaintiff that he was lucky he was on vacation or he would have been fired on the spot. (Irani Decl., at ¶ 24). Strangely, Defendant Palmetto Health now argues, "it cannot be overlooked that Dr. Irani submitted no evidence that [Defendant Koon] is the highest ranking person in the program." (Def. PH Br., at 3). The most significant factor identified by the Boyer-Liberto court in analyzing the allegedly hostile work environment was the position or status of the harasser. Boyer-Liberto, 786 F.3d at 278 ("In measuring the severity of the harassing conduct, the status of the harasser may be a significant factor–e.g., 'a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.' Simply put, 'a supervisor's power and authority invests his or her harassing conduct with a particularly threatening character.'") (internal quotations omitted). Defendant Koon's indisputable position as program director made his atrocious remarks that much more toxic to the work environment that confronted Plaintiff.

Defendant Palmetto Health's discussion of the new Fourth Circuit case of Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208 (4th Cir. 2016), is also unpersuasive. The district court in the Guessous case erred "by circumscribing its analysis to just one comment without reviewing the totality of the circumstances." Id., 2016 WL 3615780, *15.  With all due respect, the outrageous comments made by Defendant Koon towards Plaintiff and in Plaintiff's presence were substantially worse than those at issue in Guessous.  Defendant Palmetto Health completely disregards the Guessous court's holding that "'whether harassment was sufficiently severe or pervasive is quintessentially a question of fact.'" Id. (quoting Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 208 (4th Cir. 2014)).

## B.  Contractual Documents

Both Defendant Palmetto Health and the USC Defendants assert that Plaintiff's contractual claims are foreclosed because some of the documents raised in both Plaintiff's opposition to summary judgment and Plaintiff's motion for reconsideration were produced during discovery in another lawsuit, Lamoreaux v. Palmetto Health et al., in which the undersigned also represented Dr. Lamoreaux. Discovery from the Lamoreaux case has absolutely nothing to do with Plaintiff's claims in this case, even though both cases involved the same lawyers and many of the same Defendants. First of all, the Lamoreaux case was settled in August 2009, almost six years before the relevant discovery responses in this case.  Second, the Lamoreaux case involved the exchange of many thousands of pages of documents from both sides, none of which has any bearing on any issues in the present case. In fact, Dr. Lamoreaux was terminated in late December 2008, well before any of the documents at issue here were even created.   The Affiliation Agreement currently at issue was not even signed until January 2009 and was plainly not an issue in the Lamoreaux case even if it was

4

produced by Defendant Palmetto Health during discovery in that case. Plaintiff's counsel cannot be deemed to have knowledge of documents that were immaterial in the case or that substantially pre-dated Dr. Irani's involvement with the Orthopaedic Surgery Residency Program.

The point of Plaintiff's motion for reconsideration on this issue is that Defendants were not unfairly surprised by Plaintiff's reliance on the Affiliation Agreement, the Program Letters of Agreement, or the USC Orthopaedic Department Resident Handbook, even though they were not specifically cited in the Verified Complaint or in the Amended Complaint in this case. The "notice pleading" requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The basic theory behind Plaintiff's claims for breach of contract and third-party breach of contract has clearly been pleaded: that the residency program is governed by contractual agreements that incorporate the accreditation standards of the ACGME and that Plaintiff was terminated in breach of those obligations. Plaintiff's counsel specifically indicated to opposing counsel his reasonable belief that the Amended Complaint was already sufficiently broad to include obligations under these three documents, which documents were only produced in discovery in this case after Plaintiff had already filed his motion to amend the complaint. Plaintiff repeatedly identified these documents to Defendants' counsel as an additional basis for his contractual claims in this case, not only in e-mail correspondence, but also in discovery requests and on the record during a hearing regarding discovery in this case. Defendants plainly knew what Plaintiff's theory of the case was and what documents formed the underlying basis for those claims.

The case-law cited in the University Defendants' brief is not particularly persuasive. In the unpublished, per curiam case of <u>Harris v. Reston Hosp. Cent., LLC</u>, 523 Fed. Appx. 938 (4th Cir.

2013), the court of appeals affirmed the district court's refusal to allow the plaintiff to raise a "record of impairment" claim in an ADA case, for the first time in response to defendant's motion for summary judgment and after the close of discovery. The plaintiff there had not raised that distinct theory prior to summary judgment, nor did Plaintiff exhaust his administrative remedies by including such a claim in her EEOC charge.

Similarly, in <u>Deasy v. Hill</u>, 833 F.2d 38 (4th Cir. 1987), which was a medical malpractice case, the plaintiff attempted to raise an entirely new theory of negligence against the defendant doctor on the eve of trial. Plaintiff's complaint originally alleged that the defendant doctor failed to notify the plaintiff's decedent about the abnormal results of a pap smear and failed to notify her about the need for re-examination. Shortly before trial, plaintiff sought to raise a new theory that the pap smear had actually been negligently performed. The district court refused to allow the amended complaint, because discovery had closed and because defendants would have been deprived of the right to have the case reviewed by a medical malpractice review panel under Virginia state law.

Here, by contrast, Plaintiff's counsel indicated to Defendants' counsel multiple times, before the close of discovery, what documents he intended to rely on in his claims for breach of contract and third-party beneficiary breach of contract. These are not new, secret documents, nor is Plaintiff's theory about the case different than that spelled out in the Amended Complaint. Defendants simply cannot argue with a straight face that they have been unfairly surprised or prejudiced by Plaintiff's not seeking to amend the complaint a second time to reference the three documents at issue. Plaintiff is not seeking to constructively amend the complaint; he is merely pointing out that the Amended Complaint is already sufficiently broad to encompass the additional documents at issue.

**C.  Other Claims**

The remaining issues raised in Plaintiff's Motion for Reconsideration are sufficiently addressed in Plaintiff's initial Memorandum of Law.  Plaintiff disputes the University Defendants' gross overreading of the unpublished, Sixth Circuit case of Murphy v. Lazarev, 589 Fed. Appx. 757 (6th Cir. 2014), regarding alleged abandonment of claims that were discussed in Plaintiff's opposition to summary judgment, but which were not specifically raised in Plaintiff's motion for reconsideration.

**Conclusion**

For all of the foregoing reasons and for the reasons previously set forth in Plaintiff's initial memorandum of law, Plaintiff respectfully requests the Court to reconsider its Order of June 1, 2016.

Respectfully submitted,

 s/ David E. Rothstein
David E. Rothstein, Fed. ID No. 6695
ROTHSTEIN LAW FIRM, PA
1312 Augusta Street
Greenville, South Carolina  29605
Office: (864) 232-5870
Facsimile: (864) 241-1386
E-mail: drothstein@rothsteinlawfirm.com

Attorney for Plaintiff, Afraaz R. Irani, M.D.

September 19, 2016

Greenville, South Carolina.